# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Carrier IQ, Inc. Consumer Privacy Litigation | **No. C-12-md-2330** |
| Andy Kacmarcik, On Behalf of Himself and All Others Similarly Situated, | **This Document Relates to:** |
| | Case No. 3:12-CV-02315 |
| Plaintiff, | |
| vs. | |
| Carrier IQ, Inc., HTC Corporation, HTC America, Inc., and Sprint Spectrum, L.P., Defendants. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Andy Kacmarcik ("Plaintiff"), by and through his attorneys, hereby brings this First Amended Class Action Complaint ("Class Action Complaint") on behalf of himself and all others similarly situated, and alleges as follows:

## INTRODUCTION

1.       Without disclosure to consumers, and without their permission, Carrier IQ software is installed on millions of smartphones and is used to capture an enormous amount of personal information of smartphone users. Carrier IQ software tracks users' keystrokes made on smartphones (such as HTTP strings directly from the smartphone's browser, as well as HTTPS strings that are supposed to be secure transmissions of data), tracks the user's geographic location, and monitors applications deployment, battery life, phone CPU output and data, and cell-site connectivity, among other things. This data is made available to the smartphone users' wireless carriers/service providers.

2.       This class action seeks to redress the invasion of privacy and violation of Federal Wiretap Act arising from Carrier IQ software. This lawsuit seeks damages for Plaintiff and the

Class, including, but not limited to:  damages for invasion of privacy; statutory damages and other available relief under the Federal Wiretap Act; Plaintiff's attorneys' fees; and the costs of this lawsuit.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this civil action under 28 U.S.C. § 1331 in that Plaintiff alleges violation of federal law, namely the Federal Wiretap Act as amended by the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.       Jurisdiction in this civil action is further authorized pursuant to The Class Action Fairness Act, 28 U.S.C. § 1332(d), as some class members' citizenship is diverse from Defendants, there are more than 100 putative class members, and the amount in controversy is in excess of $5,000,000.

5.      This Court has personal jurisdiction over the parties because Defendants conduct substantial business in this state, have systematic and continuous contact with this state, and have agents and representatives that can be found in this state.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### Parties

7.      Plaintiff Andy Kacmarcik is a resident of the State of Racine, Wisconsin.  Mr. Kacmarcik owns an Evo smartphone, which is manufactured by HTC. Plaintiff's smartphone has the Carrier IQ software installed on it. Mr. Kacmarcik currently has a cellular service contract with Sprint.

8.      Defendant Carrier IQ, Inc. ("CIQ" or "Carrier IQ") is a privately held Delaware corporation, headquartered in Mountainview, California, with additional offices in Chicago, Boston, London (UK), and Kuala Lumpur (Malaysia). On its website, CIQ has a running tally of the number of devices on which its software has been deployed, which, as of December 9, 2011, indicated over 141 million cellular devices.

9.      Defendant HTC Corporation ("HTC") is a Taiwan corporation and cellular device manufacturer located in Taoyuan, Taiwan. HTC has offices in the United States and sells its products throughout the United States, including throughout Wisconsin. It also is the parent to Defendant HTC America, Inc.

10.     Defendant HTC America, Inc. ("HTC America") is a Washington corporation with its principal place of business in Bellevue, Washington. HTC America sells its products throughout the United States, including throughout Wisconsin.

11.     Defendant Sprint Spectrum, L.P. ("Sprint") is a Delaware limited partnership.  On information and belief, it is the third largest United States provider of wireless services with approximately 51 million subscribers. Sprint offers its wireless cellular services throughout the United States, including throughout Wisconsin.

## Facts

12.     Carrier IQ states on its website that it is the "leading provider of Mobile Service Intelligence Solutions to the Wireless Industry. As the only embedded analytics company to support millions of devices simultaneously, we give Wireless Carriers and Handset Manufacturers unprecedented insight into their customers' mobile experience."

13.     According to Carrier IQ's website, "Mobile Service Intelligence is the process of analyzing data from phones to give you a uniquely powerful insight into mobile service quality and user behavior."

14.     Carrier IQ's software described herein is known as a rootkit. According to Wikipedia.com, a rootkit is "software that enables continued privileged access to a computer while actively hiding its presence from administrators by subverting standard operating system functionality or other applications." http://en.wikipedia.org/wiki/Rootkit.

15.     At the direction of wireless carriers, smartphone manufacturers embedded Carrier IQ's software in various models of smartphones. Smartphone purchasers are not told about the inclusion of this software/rootkit on their smartphone.

16.     In November 2011, Trevor Eckhart, a systems administrator in Connecticut,

exposed Carrier IQ's rootkit on his blog and made a video that he posted to YouTube that shows the extensive amount of data that Carrier IQ's software captures. *See* http://androidsecuritytest.com; https://www.youtube.com/watch?v=T17XQI_AYNo.

17.     The data that is logged by the rootkit includes keystrokes. A keystroke is defined, both generally in tech-speak and specifically by Mr. Eckhart in his incriminating Carrier IQ video, as "a character selected by the user on their keyboard." This means that every letter, number, and punctuation that a user enters on their smartphone's keyboard is logged by the rootkit, including web addresses, user names and passwords (even if a website is using a secure connection—HTTPS—which encrypts the usernames and passwords, the keystrokes still get logged by Carrier IQ), e-mails, texts, and other personal information. Furthermore, Carrier IQ also monitors some application usage.

18.     Carrier IQ's data sheet for its IQ Insight Experience Manager states that it "takes customer experience profiling to another level, enabling [the mobile service provider] to view experience data at any level of granularity from the entire population, to comparative groups, down to individual users, all at the touch of a button." Carrier IQ's data sheet can be found at http://www.carrieriq.com/overview/IQInsightExperienceManager/ExperienceManager.datasheet.pdf.

19.     The features of Carrier IQ Insight Experience Manager include the ability to "[c]apture a vast array of experience data including screen transitions, button presses, service interactions and anomalies." *Id.*

20.     The rootkit gathers the data from a person's smartphone and transmits it to either the wireless carriers' networks or other Carrier IQ facilities approved by the wireless carriers.

21.     Trevor Eckhart demonstrated in his YouTube video that the software cannot be turned off. https://www.youtube.com/watch?v=T17XQI_AYNo.

22.     Defendants HTC and HTC America produce smartphones that have the Carrier IQ software embedded in them.

23.     Plaintiff owns and uses an HTC Evo smartphone operating on the Sprint mobile network. This device is embedded with the CIQ software. Plaintiff regularly used his smartphone to send and receive text messages and emails, place and receive calls, access websites (including secure "HTTPS" websites), use various applications, etc.

24.     Until the reports in the media about Carrier IQ's surreptitious software, Plaintiff was unaware that his phone had this software and that his personal data was being logged, transmitted, and used. By virtue of the unknown, not assented-to, automatic, and unpreventable functions of the CIQ software, Plaintiff's private and personal communications have been illegally intercepted and transmitted by and to Defendants. In addition, Plaintiff has not been able to use his smartphone device at the performance levels it is capable of and advertised for because the CIQ software is always operating in the background.

### Class Action Allegations

25.     Plaintiff brings this action on behalf of himself and, additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all persons throughout the United States who own a smartphone with Carrier IQ's software installed on it and whose keystrokes and other personal information were logged, transmitted and used through said software.

26.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of any Defendant; any entity in which any Defendant has or had a controlling interest, or which any Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of any of the Defendants.

27.     This action satisfies the requirements for class certification: numerosity, commonality, typicality, adequacy, predominance, and superiority.

28.     This action has the requisite numerosity. The Carrier IQ software is on millions of smartphones. Thus, the Class consists of millions of persons, and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.

29.     There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including, among others:

a)      Whether Carrier IQ software logs, collects, and stores keystrokes and other personal information of Plaintiff and putative Class members;

b)      Which keystrokes are logged, transmitted or used through Carrier IQ software;

c)      Whether Carrier IQ software can be turned off on a smartphone;

d)      Whether wireless carriers, including Defendant Sprint, collect and use the keystrokes and other personal information of their customers that is logged and transmitted through Carrier IQ software;

e)      Whether Defendants' conduct is a violation of the Federal Wiretap Act;

f)      Whether Defendants' conduct is an invasion of privacy;

g)      Whether members of the Class have sustained damages and other compensable losses and, if so, the proper measure thereof; and

h)      Whether Class members are entitled to statutory damages.

30.     The claims asserted by Plaintiff are typical of the claims of the members of the Class because they are similarly affected by the Carrier IQ software.

31.     Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class action litigation involving invasions of privacy and data breaches.

32.     Predominance and superiority exist here for at least the following reasons:

a)      Absent a class action, Class members, as a practical matter, will be unable to obtain redress for Defendants' illegal conduct;

b)      It would be a substantial hardship for individual members of the Class if they were forced to prosecute individual actions;

c)      When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

d)      A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

e)      The lawsuit presents no difficulties that would impede its management by the Court as a class action;

f)      Defendants have acted on grounds generally applicable to Class members, making class-wide relief appropriate; and

g)      The prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for Defendants and of inconsistent or varying adjudications for all parties.

## CAUSES OF ACTION

### COUNT I
### INVASION OF PRIVACY

33.     Plaintiff repeats and re-alleges the allegations contained in each of the paragraphs of this Class Action Complaint, as if fully set forth herein.

34.     Carrier IQ's software is embedded on Plaintiff's smartphone and the smartphones of other consumers and cannot be turned off by the user.

35.     Unbeknownst to Plaintiff and consumers, upon information and belief, the Carrier IQ software was buried in the smartphone's operating system by the manufacturer at the direction of Sprint.

36.     Upon information and belief, Carrier IQ's software logs the smartphone user's keystrokes and other personal information and transmits it to Sprint's networks or in other Carrier IQ facilities approved by Sprint, where it is accessible to Sprint and smartphone manufacturers.

37.     Plaintiff and other Sprint wireless customers did not give their authorization for Carrier IQ's software to log, transmit, and make available for use their personal information.

38.    Plaintiff and other Sprint wireless customers have suffered damages because their privacy has been invaded and the Carrier IQ software is embedded on the smartphone and cannot be turned off, thereby, upon information and belief, degrading the smartphone's performance level and devaluing the smartphone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

A.    Certifying the proposed Class under Federal Rule of Civil Procedure 23, and appointing Plaintiff and Plaintiff's counsel of record to represent the Class;

B.    Finding that Defendants have committed an invasion of privacy, as alleged herein;

C.    Awarding Plaintiff and Class members damages;

D.    Awarding Plaintiff and Class members the reasonable costs and expenses of suit, including attorneys' fees and filing fees; and

E.    Granting additional legal or equitable relief as this Court may find just and proper.

## COUNT II
## FEDERAL WIRETAP ACT

39.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

40.    Under the Federal Wiretap Act, it is unlawful for any person to "intentionally intercept[], endeavor[] to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C.A. §2511 (a).

41.    The Act also makes it unlawful for any person to disclose or use the contents of any electronic communication "knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C.A. §2511 (c) and (d).

42.    Through Carrier IQ software, Defendants intentionally intercepted the contents of smartphone users' electronic communications and then disclosed and used the communications,

as the software logs, stores, and transmits the users' keystrokes and other personal information to Carrier IQ and Sprint.

43.     Statutory damages, punitive damages, reasonable attorneys' fees, litigation costs reasonably incurred, and other appropriate relief is available in a civil action for any person whose electronic communication is intercepted, disclosed, or intentionally used in violation of the Act. 18 U.S.C. § 2520(b). The Court may assess statutory damages of "whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

A.     Certifying the proposed Class under Federal Rule of Civil Procedure 23, and appointing Plaintiff and Plaintiff's counsel of record to represent the Class;

B.     Finding that Defendants have violated the Federal Wiretap Act, as alleged herein;

C.     Awarding Plaintiff and Class members statutory damages, punitive damages, and other appropriate relief against Defendants in an amount to be determined at trial;

D.     Awarding Plaintiff and Class members the reasonable costs and expenses of suit, including attorneys' fees; and

E.     Granting additional legal or equitable relief as this Court may find just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury.


Dated:  May 17, 2012                    Respectfully submitted,

                                         _/s/ Corey Mather_____
                                        One of the attorneys for Plaintiff


                                        Guri Ademi (SBN 1021729)
                                        Shpetim Ademi (SBN 1026793)
                                        David J Syrios (SBN 1045779)
                                        Corey Mather (SBN 1046210)
                                        **ADEMI & O'REILLY, LLP**
                                        3620 East Layton Avenue
                                        Cudahy, WI 53110
                                        Tel:  (414) 482-8000
                                        Fax: (414) 482-8001

                                        Ben Barnow
                                        Blake A. Strautins
                                        **BARNOW AND ASSOCIATES, P.C.**
                                        One North LaSalle, Suite 4600
                                        Chicago, IL 60602
                                        Tel.: (312) 621-2000

                                        ***Counsel for Plaintiff and the Proposed Class***

10