Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Bruce L. Simon (96241)
PEARSON SIMON WARSHAW & PENNY, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswplaw.com

*Attorneys for the Proposed Class and
Proposed Interim Co-Lead Counsel*

[*Additional Counsel Listed on
Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CARRIER IQ PRIVACY LITIGATION | No. 12-md-2330-EMC |
| | NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF HAGENS BERMAN SOBOL SHAPIRO LLP AND PEARSON, SIMON, WARSHAW & PENNY, LLP AS INTERIM CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | Date:        July 12, 2012<br>Time:        2:30 p.m.<br>Courtroom: 5 - 17th Floor<br>Judge:       Hon. Edward M. Chen |
| | DATE ACTION FILED: Dec. 1, 2011 |
| This Document Relates to:<br><br>ALL ACTIONS | |

1

2
## NOTICE OF MOTION AND MOTION

3
       PLEASE TAKE NOTICE that on July 12, 2012, at 2:30 p.m. or as soon thereafter as the

4
matter may be heard by the Honorable Edward M. Chen of the United States District Court of the

5
Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San

6
Francisco, California, Courtroom 5, 17th Floor, Hagens Berman Sobol Shapiro LLP and Pearson,

7
Simon, Warshaw & Penny, LLP will and hereby do move the Court pursuant to Federal Rule of

8
Civil Procedure 23(g)(3) for an order appointing interim co-lead counsel.

9
       This motion is based on this Notice of Motion and Motion for Appointment of Hagens

10
Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead

11
Counsel, the following memorandum of points and authorities, the declarations in support thereof,

12
the pleadings and the papers on file in this action, and such other matters as the Court may

13
consider.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010285-11  526047 V1

TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................1

II.   PROCEDURAL HISTORY .................................................................................2

A.   The CIQ controversy and the firms' responses on behalf of consumers......................2

1.   Revelations regarding CIQ and the firms' complaints on behalf
of consumers.................................................................................................2

2.   Engagement of Mr. Eckhart as a consulting expert.........................................4

B.   MDL transfer proceedings...............................................................................4

III.   ARGUMENT .......................................................................................................5

A.   The proposed interim co-lead class counsel are willing and available to
commit to the time-consuming project of leading this case. .........................................6

B.   The proposed interim co-lead class counsel affirm that they are able to work
cooperatively with others in this matter. ...................................................................6

C.   The proposed interim co-lead class counsel have substantial experience
handling complex consumer class actions; they have served as co-lead
counsel in numerous consumer class actions; and they are knowledgeable
about the applicable law. ......................................................................................7

1.   Hagens Berman Sobol Shapiro.........................................................................7

2.   Pearson, Simon, Warshaw & Penny.................................................................9

D.   Hagens Berman and Pearson Simon have done significant work in identifying
and investigating current and potential claims. .......................................................10

E.   Hagens Berman and Pearson Simon have and will dedicate the resources
necessary to prosecute this action.........................................................................11

F.   Hagens Berman and Pearson Simon's anticipated litigation and discovery plan .......12

G.   Hagens Berman and Pearson Simon's proposed procedures and guidelines to
maximize efficiency ...........................................................................................12

H.   Hagens Berman and Pearson Simon's proposed fee structure and anticipated
costs ................................................................................................................13

I.   Hagens Berman and Pearson Simon's plan for allocation of work...........................14

J.   Hagens Berman and Pearson Simon's proposed executive committee.......................14

IV.   CONCLUSION ..................................................................................................15

- ii -

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Coleman v. General Motors Acceptance Corp.*,
220 F.R.D. 64 (M.D. Tenn. 2004) ....................................................................................5

5

*Donaldson v. Pharmacia Pension Plan*,
2006 U.S. Dist. LEXIS 28607 (S.D. Ill. May 10, 2006) ..................................................5

6

7

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006).........................................................................................5

8

9

*In re Amino Acid Lysine Antitrust Litig.*,
918 F. Supp. 1190 (N.D. Ill. 1996)..................................................................................13

10

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...........................................................................................13

11

12

*In re Oracle Sec. Litig.*,
131 F.R.D. 688 (N.D. Cal. 1990) ....................................................................................13

13

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ...........................................................................................13

14

15

*In re Wells Fargo Sec. Litig.*,
156 F.R.D. 223 (N.D. Cal. 1994) ....................................................................................13

16

*Wenderhold v. Cylink Corp.*,
188 F.R.D. 577 (N.D. Cal. 1999) ...............................................................................13, 14

17

18

### OTHER AUTHORITIES

19

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 ..............................................5, 15

20

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 40.22 ......................................................15

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and this Court's orders of May 1, 2012, and May 24, 2012, Steve W. Berman of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Bruce L. Simon of Pearson, Simon, Warshaw & Penny, LLP ("Pearson Simon") seek appointment as interim co-lead class counsel for the proposed class in this consolidated multidistrict litigation ("MDL").  The essential inquiry for the Court is to determine which lawyers will best represent the interests of the class while meeting the goals of efficiency and economy.  The two firms proposed here, in cooperation with a thoughtfully selected executive committee, are particularly well-suited to this task.

*First*, these firms have a proven track record of experience, knowledge, commitment of resources, and success in large consumer class-action cases.  Both firms have been recognized repeatedly for their tireless efforts on behalf of plaintiffs in numerous landmark cases, and Mr. Berman and Mr. Simon are well-recognized as national leaders in the field.  In fact, the movants have been involved in many of the largest consumer class actions in America, and they have recovered some of the most significant settlements in history on behalf of various classes.

*Second*, the teams of attorneys that Hagens Berman and Pearson Simon have assigned to this matter include members with substantial experience in privacy and high-tech related litigation.  Further, all team members are well-experienced in the prosecution of large consumer class-action cases with multiple defendants and difficult issues at their core.  Thus, both firms bring the substantive skills necessary to lead this legally and technically complex case.  Additionally, Hagens Berman alone has retained Trevor Eckhart, the independent researcher whose investigation broke the Carrier IQ story, as a consulting expert.  His retention adds greatly to the technical expertise that Hagens Berman and Pearson Simon will bring to the table as co-leads.

Hagens Berman and Pearson Simon were among the first firms to which defendants reached out when requesting a stay pending the JPML decision-making process, when preparing the pleadings to effect that stay, and when working out the terms of the joint report presented to the Court in advance of the initial case management conference.  And since the early days of this litigation, these firms have coordinated conferences among plaintiffs' counsel to discuss

substantive and procedural issues important to this case.  They have been active leaders in this

matter since its inception.  As this Court has recognized, appointing lead counsel will assist in

streamlining the prosecution of this complex matter.  Hagens Berman and Pearson Simon, which

have a long history of working together effectively, stand ready and able to act as co-lead counsel

in this matter.  They ask respectfully that the Court appoint them to serve in this capacity.[1]

## II.      PROCEDURAL HISTORY

### A.      The CIQ controversy and the firms' responses on behalf of consumers

#### 1.      Revelations regarding CIQ and the firms' complaints on behalf of consumers

The suits at issue were filed on behalf of mobile phone users whose devices bear software

designed and sold by Carrier IQ, Inc. (sometimes "CIQ").  News that CIQ software was enabling

serious breaches of privacy broke in November 2011, thanks to the work of an independent

researcher, Trevor Eckhart.

In November 2011 Mr. Eckhart published via his website,

http://www.androidsecuritytest.com, his discovery of CIQ software on his HTC brand cellular

smartphone.  Mr. Eckhart described the CIQ software as a "rootkit," which, by a *Wikipedia*

definition, "is software that enables continued privileged access to a computer while actively

hiding its presence from administrators by subverting standard operating system functionality or

other applications."[2]

Mr. Eckhart revealed that the CIQ software on his device provided no notice that it was

embedded and operating.  He also showed that his CIQ-bearing phone was logging keystrokes,

numbers dialed, SMS text messages, and secure, *i.e.*, HTTPS, website log-ins and search terms.[3]

---

[1] Because of their history of effective cooperation in large, complex matters such as this one, the firms ask respectfully that the Court approve their leadership slate as offered.  They believe that if the Court instead were to marry lawyers from competing leadership applications into a single leadership structure, there is a good chance that efficiencies and effectiveness would be lost.

[2] Declaration of Steve W. Berman in Support of Motion for Appointment of Hagens Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead Counsel ("Berman Decl.") Ex. A (Kenny Complaint), ¶ 22.

[3] Berman Decl. Ex. A, ¶ 23.

On November 16, 2011, CIQ sent Mr. Eckhart a cease-and-desist letter, in which it demanded that he retract his description of its software as a rootkit, accused him of copyright infringement for posting material he found on its website, and threatened severe legal action if he did not capitulate to its demands.  In response, the Electronic Frontier Foundation ("EFF") stepped up to Mr. Eckhart's defense and countered with a letter demonstrating that CIQ's accusations were baseless.  The EFF demanded on Mr. Eckhart's behalf that CIQ withdraw its letter and that it cease threatening Mr. Eckhart with legal action.[4]

On November 23, 2011, CIQ released a statement in which it indicated that it was withdrawing its cease-and-desist letter.  It called its letter "misguided," and it indicated that it had reached out to Mr. Eckhart and the EFF to apologize.  It said it was "deeply sorry for any concern or trouble that [its] letter may have caused Mr. Eckhart."[5]

In that same statement, CIQ also described what its software purportedly "does not do and what it does."  Among claims of what it supposedly did not do was to "record your keystrokes" or "inspect or report on the content of [] communications, such as the content of emails and SMSs."[6]

Mr. Eckhart was not convinced of the truth of these claims, so he analyzed further.  On November 28, 2011, Mr. Eckhart published on his website a follow-up report entitled *Carrier IQ Part 2*.  His report included a 17 minute video[7] in which he stepped through proof that his CIQ-bearing phone did, in fact, log his keystrokes; capture the content of his SMS text messages; record dialed numbers; and track his Internet access, including data transmitted via the HTTPS protocol.[8]

After publication of *Carrier IQ Part 2* and Mr. Eckhart's video, the press began to report widely on CIQ software and Mr. Eckhart's work.  This ignited a firestorm among mobile phone users throughout the country, who took to the Internet to raise serious questions and concerns.[9]

---

[4] Berman Decl. Ex. A, ¶ 24.

[5] Berman Decl. Ex A, ¶ 25.

[6] Berman Decl. Ex. A, ¶ 26.

[7] This video continues to be available on the YouTube service.  As of today's date, it has garnered well over 2 million views.  *See* http://www.youtube.com/watch?v=T17XQI_AYNo.

[8] Berman Decl. Ex. A, ¶¶ 27-28.

[9] *See*, *e.g.*, Berman Decl. Ex. A, ¶¶ 29-33.

1    Following intense investigation by Hagens Berman and Pearson Simon of the underlying

2    facts and law, on December 1, 2011, Hagens Berman filed *Kenny v. Carrier IQ, Inc.*, the first case

3    filed nationally in this litigation,[10] in the Northern District of California.  In the coming days, it

4    filed two more suits in this district:  *Thomas v. Carrier IQ, Inc.* and *Fischer v. Carrier IQ, Inc.*  All

5    told, Hagens Berman represents 22 plaintiffs in these suits – more than any other single firm

6    involved –from all regions of the country.

7    On December 2, 2011, Pearson Simon filed *Pipkin v. Carrier IQ, Inc.* in this judicial

8    district.  Pearson Simon brought *Pipkin* on behalf of two California residents.[11]  And other

9    plaintiffs in the days, weeks, and months to follow filed other suits now transferred to this Court

10   for MDL proceedings.

11   **2.    Engagement of Mr. Eckhart as a consulting expert**

12   The firms have continued their investigative work since filing their clients' complaints.

13   Naturally, part of this effort was to reach out to Mr. Eckhart.  Because of relationships that Hagens

14   Berman attorneys have cultivated with lawyers at the EFF, Hagens Berman was able to reach out to

15   the EFF for an introduction to Mr. Eckhart.  While other plaintiffs' firms reached out to Mr.

16   Eckhart as well, Hagens Berman alone succeeded in retaining Mr. Eckhart as a consulting expert.[12]

17   **B.    MDL transfer proceedings**

18   On December 2, 2011, Pearson Simon, on behalf of the *Pipkin* plaintiffs, filed a motion to

19   transfer the CIQ related cases to the Northern District of California – where more suits than any

20   other judicial district had been filed; where CIQ is located; and where relevant witnesses and

21   documents are located – for coordinated or consolidated pretrial proceedings.  On December 27,

22   2011, Hagens Berman, on behalf of the *Kenny*, *Thomas*, and *Fischer* plaintiffs, filed a

23   memorandum in support of that motion and in opposition to competing motions to transfer the

24

25   [10] That same day, the *Janek* and *Elliott* cases also were filed in the Northern District of Illinois
     and the Eastern District of Missouri, respectively, by other plaintiffs and counsel.

26   [11] Declaration of Bruce L. Simon in Support of Motion for Appointment of Hagens Berman
     Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead Counsel
27   ("Simon Decl."), Ex. A (*Pipkin* complaint).

     [12] Berman Decl., ¶ 2.
28

1    cases to the Central District of California, the Northern District of Illinois, and the District of

2    Delaware.  The JPML issued its decision on April 16, 2012, selecting this Court to oversee

3    coordinated or consolidated pretrial matters in this case.[13]

4                                   **III.    ARGUMENT**

5            Fed. R. Civ. P. 23(g)(3) provides that a court "may designate interim counsel to act on

6    behalf of the putative class before determining whether to certify the action as a class action."  The

7    goal is to determine who best will represent the interests of the class, and who best will be able to

8    accomplish the goals of efficiency and economy in doing so.[14]  Where, as here, multiple cases are

9    pending, appointment of class counsel is necessary to protect the interests of class members.[15]

10           Rule 23 and the pertinent orders of this Court provide a number of specific factors that will

11   be considered in selecting interim class counsel.[16]  These factors include:  (a) counsel's willingness

12   and availability to commit to a time-consuming project; (b) counsel's ability to work co-

13   operatively with others; (c) counsel's qualifications, including experience in managing complex

14   litigation and knowledge of the subject matter; (d) counsel's efforts in researching and

15   investigating the claims before the court; (e) the resources that can be contributed to the litigation;

16   (f) counsel's anticipated litigation and discovery plan for the MDL; (g) steps, procedures, and

17   guidelines counsel intend to implement to control fees and costs, minimize duplication, and

---

18           [13] In spite of every reasonable vector pointing to the Northern District of California as the
     proper place for MDL consolidation, the plaintiffs represented by Strange & Carpenter, which is
19   contesting for leadership, filed a brief opposing consolidation in this judicial district and seeking
     consolidation in the Central District of California, where Strange & Carpenter's only office is
20   located.  These plaintiffs indicated their belief that CIQ has "an incestuous business relationship"
     with a non-party company based in the Central District of California that supposedly justified
21   transfer of these cases there, where only a few cases were pending (and nowhere near the number
     filed here).  (Clark Br. at 4 (MDL 2330 ECF No. 11).)  But CIQ responded to these plaintiffs'
22   beliefs and speculation with a declaration stating unequivocally that it has no business relationship
     with the Orange County company referenced by these plaintiffs.  (*See generally* CIQ Coward Decl.
23   (MDL 2330 ECF No. 73-3).)  In the end, the JPML ignored these plaintiffs' contentions and instead
     transferred the related cases to this district, where the true center of gravity of this litigation lies.

24           [14] *See Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004);
25   *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 10.221 (2004) ("MANUAL").

             [15] *Donaldson v. Pharmacia Pension Plan*, 2006 U.S. Dist. LEXIS 28607, at *2-3 (S.D. Ill. May
26   10, 2006); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y.
     2006).

27           [16] *See* FED. R. CIV. P. 23(g)(1)(A); Pretrial Order, ECF No. 20, May 1, 2012; Order re Briefing
     on Plaintiffs' Motion to Appoint Lead Counsel, ECF No. 60, May 24, 2012.
28

maximize efficiency; (h) counsel's fee structure and anticipated costs; (i) counsel's plan for allocating work among the leadership team and with other counsel; and (j) counsel's proposed structure of the executive committee.[17]   Hagens Berman and Pearson Simon satisfy these criteria.

**A.   The proposed interim co-lead class counsel are willing and available to commit to the time-consuming project of leading this case.**

More than most, Hagens Berman and Pearson Simon have demonstrated they are willing to commit the resources and time necessary to litigate a complex class action such as this one.  For over a decade, Hagens Berman has acted as co-lead counsel in the *In re Pharm. Indus. Average Wholesale Price* MDL litigation, and it acted as lead counsel in the time-and-resource intensive *Schwab* securities litigation discussed below.  Pearson Simon is serving as co-lead counsel in the longstanding *In re TFT-LCD (Flat Panel) Antitrust Litig.*, which after more than five years of litigation is currently in trial in this judicial district.  Also, Hagens Berman and Pearson Simon both have held leadership roles in the long-running *DRAM* and *SRAM* cases in this district.[18]   As these few of many available examples illustrate, Hagens Berman and Pearson Simon are willing and able to commit to the time-consuming project of leading this case.

**B.   The proposed interim co-lead class counsel affirm that they are able to work cooperatively with others in this matter.**

While the two firms proposed here believe they can provide the most fair and adequate leadership structure for the class, they have an inclusive management style whereby they will seek the participation of the many other firms involved in this litigation.  Proposed interim co-lead class counsel are committed to a cooperative approach among all counsel and, with the permission of the Court, they will work to establish an executive committee of counsel to ensure that the class is

---

[17] The Court's May 1, 2012 pretrial order also requested that the parties address the ability to maintain reasonable fees and expenses. Because this factor is subsumed in the Court's more specific categories in the May 24, 2012 order, the movants do not address it separately.

[18] These references are to *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 02-cv-1486PJH (N.D. Cal.) and *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 07-cv-01819-CW (N.D. Cal.).  In *DRAM*, which was filed in October 2002 and concluded in approximately 2006, Hagens Berman acted as co-lead counsel for direct purchasers and Pearson Simon acted as an executive committee member.  As of the end of 2011, *DRAM* had resulted in the recovery of over $325 million in settlement funds.  And in *SRAM*, which was filed in February 2007 and concluded in approximately 2010, both firms acted as executive committee members.  As of the end of 2011, *SRAM* had resulted in the recovery of over $75 million in settlement funds.

1    adequately represented.  In doing so, proposed interim co-lead class counsel will use all efforts to

2    avoid waste and duplication in favor of efficiency.

3    **C.      The proposed interim co-lead class counsel have substantial experience handling**
         **complex consumer class actions; they have served as co-lead counsel in numerous**
4        **consumer class actions; and they are knowledgeable about the applicable law.**

5              As the following discussion and the attachments to the Berman and Simon declarations

6    illustrate, Hagens Berman and Pearson Simon have substantial experience handling complex

7    consumer class actions; they have served as lead or co-lead counsel in numerous consumer class

8    actions; and they are highly knowledgeable regarding the applicable law.

9              **1.      Hagens Berman Sobol Shapiro**

10             Hagens Berman is a fifty-five lawyer firm, with offices in New York, Seattle, Washington

11   D.C., Boston, Berkeley, Los Angeles, Phoenix, Minnesota, and Colorado.  Since its founding in

12   1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex, multi-party

13   antitrust cases.  The firm has been recognized in courts throughout the United States for its ability

14   and experience in handling major class litigation.[19]  Hagens Berman will devote the resources

15   necessary to prepare this matter aggressively for trial.  To do so, the firm will rely on several of the

16   firm's most experienced litigators and trial lawyers, including:

17             ➢  **Steve W. Berman:**

18             Mr. Berman helped found the firm in 1993, and he is its managing partner.  He has served

19   as lead or co-lead counsel in antitrust, securities, consumer, and products liability litigation, as well

20   as other complex litigation, including MDL actions, throughout the country.  For example, Mr.

21   Berman was the lead trial lawyer in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No.

22   1456 (D. Mass.).  He tried the class case against four manufacturers and successfully argued the

23   appeal from the trial before the First Circuit.  Mr. Berman was also the lead counsel in *New*

24   *England Carpenters v. First DataBank*, *et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a

25   nationwide class of private payors that purchased prescription brand-name drugs.  In that case,

26   Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start.

27   _____
         [19]   *See generally* Berman Decl. Ex. B.

28
     MOT. FOR APPT OF HAGENS BERMAN AND PEARSON SIMON   - 7 -
     AS INTERIM CO-LEAD COUNSEL – No. 12-md-2330-EMC
     010285-11  526470 V1

Additionally, Mr. Berman was lead counsel in *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.), a recent securities class action before the Hon. William Alsup, that settled on the eve of trial, while the parties were arguing *in limine* motions, for some $235 million.  This resulted in a 42.5% recovery for the federal class and an 80% recovery for the California class.

Recently, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 8:10ML2151 JVS (FMOx) (C.D. Cal.), Judge James V. Selna *sua sponte* identified Mr. Berman as a presumptive co-lead counsel when Judge Selna was assigned the Toyota MDL.[20]  And even more recently, Mr. Berman and Hagens Berman were appointed co-lead counsel in the *In re Electronic Books Antitrust Litigation*, No. 1:11-md-02293(DLC) (S.D.N.Y.).

Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark Tobacco Litigation.  That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris, et al.*

> **Jeff D. Friedman:**

Mr. Friedman is a member of Hagens Berman and former Assistant United States Attorney ("AUSA"), Criminal Division, for the United States Attorney's Office, Central District of California.  As an AUSA, Mr. Friedman tried numerous jury trials and prosecuted complex white collar fraud cases and cases against large narcotics organizations.  Mr. Friedman's experience as lead or co-lead counsel in cases in the media and technology sector includes:  *In re Electronic Books Antitrust Litig.*, No. 11-mc-02293 (S.D.N.Y.); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-cv-2143-CW (N.D. Cal.); *Pecover v. Electronic Arts, Inc.*, No. 08-cv-2820-RS (N.D. Cal.); and *In re eBay Sellers Antitrust Litig.*, No. 07-cv-1882-JF (N.D. Cal.).  Mr. Friedman has participated in numerous cases involving consumers' privacy rights, including the ground breaking case *In re National Security Agency Telecomm. Record Litig.,* No. 3:06-md-1791 (N.D. Cal.) and the *In re Sony BMG Audio Compact Disc Litig.*, 1:05-cv-09575-NRB (S.D.N.Y.).

---

[20] Strange & Carpenter sought a lead position as well, but its request was denied.

1

    **2.**       **Pearson, Simon, Warshaw & Penny**

2

        Pearson Simon is a civil litigation firm that specializes in class actions, with offices in San

3

Francisco and Los Angeles.  Pearson Simon handles national and multi-national class actions that

4

present cutting-edge issues in both substantive and procedural areas.  The firm's attorneys have

5

expertise in litigating difficult and large cases in an efficient and cost-effective manner.

6

Recognized as national leaders in the field of class actions, they have obtained hundreds of millions

7

of dollars in settlements and verdicts on behalf of their clients.  Attorneys at PSWP currently serve

8

as co-lead counsel in such prominent cases as *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No.

9

3:07-md-01827-SI (N.D. Cal.) and *Wolph v. Acer Am. Corp.*, No. C-09-01314 (N.D. Cal.), and

10

hold, or have held, leadership roles in various other notable complex litigation and class-action

11

cases.[21]  The attorneys who will be primarily responsible for the adjudication of this case are:

12

          ➢ **Bruce L. Simon:**

13

        Mr. Simon specializes in complex cases involving antitrust, securities, and consumer

14

protection laws.  Mr. Simon has served as lead or co-lead counsel in several nationwide class

15

actions, including *In re Sodium Gluconate Antitrust Litigation*, MDL No. 1226 (N.D. Cal.), an

16

antitrust case involving a food additive product; *In re Methionine Antitrust Litigation*, MDL No.

17

1311 (N.D. Cal.), an antitrust class action that resulted in over $100 million in settlements; and *In*

18

*re Citric Acid Antitrust Litigation*, MDL No. 1092 (N.D. Cal.), which resulted in over $80 million

19

in settlements for direct purchasers.  Mr. Simon also served as co-chair of discovery and as a

20

member of the trial preparation team in *In re Dynamic Random Access Memory (DRAM) Antitrust*

21

*Litigation*, MDL No. 1486 (N.D. Cal.), which settled for over $325 million to the direct purchaser

22

class.  In that case, Mr. Simon was one of the principal attorneys involved in supervising the

23

review of a multi-million page electronic document production and the taking of over 100

24

depositions, all in coordination with the indirect purchaser plaintiffs and the government.

25

        Currently, Mr. Simon is serving as co-lead counsel for the direct purchaser plaintiffs in *In*

26

*re TFT-LCD (Flat Panel) Antitrust Litigation*, which has partially settled for $405 million and is

27

---

28

      [21] *See generally* Simon Decl. Ex. B.

1    currently in trial with the last remaining defendant, Toshiba.  He also recently has been appointed

2    interim co-lead counsel in *In re Hawaiian and Guamanian Cabotage Antitrust Litigation*, MDL

3    No. 1972 (W.D. Wash.), and *In re Potash Antitrust Litigation (II)*, MDL No. 1996 (N.D. Ill.).

4    Most recently, Mr. Simon was appointed chairman of a five-firm committee serving as interim co-

5    lead counsel in *Sledge v. Warner Music Group Corp.*, No. 12-cv-00559-RS (N.D. Cal.).

6                    ➢ **Daniel L. Warshaw:**

7           Mr. Warshaw is a partner at Pearson Simon who has significant experience in complex

8    cases involving high-technology and consumer issues.  Mr. Warshaw currently serves as co-lead

9    counsel in *Wolph v. Acer America Corp.*, a nationally certified class action involving defective

10   Acer computers, and as interim co-lead counsel in *James v. UMG Recordings, Inc.*, No. 11-cv-

11   01613-SI (N.D. Cal.), and *Sledge v. Warner Music Group Corp.*, cases involving complex disputes

12   about record companies' payments of royalties to artists.  In fact, Mr. Warshaw was recently

13   profiled in the *Daily Journal* for his instrumental role in bringing such royalties cases on behalf of

14   artists across the country.  Mr. Warshaw has also held integral roles in the *In Re CRT Antitrust*

15   *Litigation* and *In re TFT-LCD (Flat Panel) Antitrust Litigation* matters.

16   **D.    Hagens Berman and Pearson Simon have done significant work in identifying and
            investigating current and potential claims.**

17          At the end of November 2011, news broke hard regarding Trevor Eckhart's work to

18   uncover the privacy issues at the core of this case.  Before filing *Kenny*, *Thomas*, *Fischer*, and

19   *Pipkin*, Hagens Berman and Pearson Simon undertook intense investigation and analysis of the

20   available evidence and intense study of pertinent law for the purpose of identifying the claims to be

21   brought in those initial complaints.

22          These firms' work has continued.  By way of example, Hagens Berman submits a

23   description of some of its continued investigatory efforts in the *Ex Parte In Camera* Declaration of

24   Steve W. Berman in Support of Application to Appoint Hagens Berman and Pearson Simon as

25   Interim Co-Lead Counsel.  This declaration is submitted *ex parte in camera*, along with a motion to

26   seal, because the firm's efforts involve privileged work-product and confidential information.

27

28

1      Furthermore, Hagens Berman's engagement of Mr. Eckhart as a consulting expert will

2  provide vital ongoing assistance in the prosecution of class claims against the defendants.  Already,

3  consultation with Mr. Eckhart has strengthened the firm's grasp on the technical matters at issue

4  here, which will add greatly to the movants' ability early-on to lead in the fashioning of the

5  consolidated amended complaint and the best possible discovery requests, as well as in the ongoing

6  conduct of this case.[22]

7  **E.      Hagens Berman and Pearson Simon have and will dedicate the resources necessary to
8          prosecute this action.**

      As illustrated in the firm resumes attached as Exhibits B to the Berman and Simon

9  declarations, the proposed lead firms have many years of litigation experience and numerous
10
   attorneys in offices around the country.  They have performed substantial work in investigating the
11
   merits of this case, and they have the resources to continue to do so through motion practice,
12
   discovery, class certification, and trial.  They have an unparalleled reputation in representing
13
   nationwide classes and are well-equipped to do so here.  Furthermore, both Hagens Berman and
14
   Pearson Simon are located in the Bay Area, which will further facilitate the efficient scheduling of
15
   hearings, conferences, and other activities with the Court and defense counsel.
16
      With specific regard to having the resources and will to take cases to trial when necessary,
17
   both firms can support their claims with concrete evidence.  As of the time of submittal of this
18
   memorandum, Mr. Simon and his firm are in trial as co-lead counsel in *In re TFT-LCD (Flat*
19
   *Panel) Antitrust Litigation* before Judge Ilston of this judicial district.  Many believe this case to be
20
   one of the largest antitrust price-fixing cases currently pending in the United States.
21
      As for Hagens Berman, it is one of the few plaintiffs' firms in the United States that often
22
   has taken complex civil litigation, including class actions, to trial.  Recent cases that Hagens
23
   Berman has tried include *In re Neurontin Mktg., Sales Practices, and Prods. Liab. Litig.* (D. Mass.
24
   MDL No. 1629); *Williams v. The Boeing Company*, No. C98-761 P (W.D. Wash.); *In re Burlington*
25
   *N. & Santa Fe Railway Co. Emp. Settlement Agreements Litigation* (W.D. Wash.); and *In re*
26

27  ───────────────
    [22] Other counsel, including Strange & Carpenter, have no relationship with Mr. Eckhart, so that
28  if Strange & Carpenter's leadership bid were granted, the class would be disadvantaged.

1    *Pharm. Indus. Average Wholesale Price Litig.*, where Hagens Berman faced four major

2    pharmaceutical manufacturers as opponents.[23]

3    **F.      Hagens Berman and Pearson Simon's anticipated litigation and discovery plan**

4            Hagens Berman and Pearson Simon have decades of experience in organizing and

5    conducting litigation and discovery in multi-party litigation such as this.  The firms propose the

6    following types of mechanisms to ensure efficient coordination of these actions.

7    •   all parties must attend and participate in discovery meetings, when requested, to ensure
8        efficient planning and phasing of discovery and maximum coordination between
         parties;

9    •   within 14 days of the filing of amended pleadings, each party must serve:  (i) initial
10       disclosures; (ii) a list of custodians whose files will be searched for responsive
         documents, including the name, employer, current title, and dates of employment; and
11       (iii) if any party intends to use search terms, a list of the proposed search terms and a
         means for testing the adequacy of any such terms;
12

13   •   within 30 days of the filing of amended pleadings, counsel will meet and confer
         regarding:  (i) a protective order to govern the production of confidential information;
14       (ii) a protocol for the production of electronically stored information; (iii) if any party
         intends to use search terms, a list of the proposed search terms and a means for testing
15       the adequacy of any such terms; (iv) the adequacy of each party's custodian list; and (v)
         the adequacy of any proposed search terms.
16

17   If appointed, the firms will, at the appropriate time, negotiate with defendants and present to the

18   Court a pretrial order and schedule proposing exactly these types of efficient procedures.

19   **G.      Hagens Berman and Pearson Simon's proposed procedures and guidelines to
             maximize efficiency**

20           Hagens Berman and Pearson Simon commit to staff and litigate this action efficiently.  For

21   example, with respect to the efficient and cost-effective review of electronically stored information,

22   Hagens Berman has a commercial relationship with an online document-review company that will

23   enable online review of documents from anywhere in the country, ensuring the adequate staffing of

24   document reviews through the use of different offices of the co-lead counsel as well as the possible

25   use of contract attorneys.  This commercial vendor has guaranteed to match the lowest bid of a

26

27   _____

         [23] By contrast, the resume that Mr. Strange has posted to his firm's website reveals no class-
28   action trial experience.  http://www.strangeandcarpenter.com/Attorneys/Brian-R-Strange.shtml

1  comparable vendor after a market survey of online document review tools.  In past cases, this

2  commercial relationship has provided savings of tens of thousands of dollars to class members.

3  **H.      Hagens Berman and Pearson Simon's proposed fee structure and anticipated costs**

4         Employing bidding procedures for the position of lead counsel fosters competition amongst

5  counsel by attempting to replicate the private marketplace for legal services.  *See In re Oracle Sec.*

6  *Litig.*, 131 F.R.D. 688, 690 (N.D. Cal. 1990).  In the competitive bidding process, the Court's task

7  is to "approximate as closely as possible the attorney selection and fee bargain that the class itself

8  would strike if it were able to do so."[24]  The Court stands "in the position of an intermediary acting

9  for the class members in establishing rates."[25]  In considering competitive bids from counsel,

10 "[j]udges don't look for the lowest bid; they look for the best bid – Just as any private individual

11 would do in selecting a law firm, an advertising firm, or a construction company."[26]  But the

12 relationship between attorneys' fees and recovery to the class is a complex one, where courts often

13 strive to align the interests of counsel and the class.

14        *Proposed fee structure*:  In accordance with the belief "that a 'percentage of recovery fee'

15 calculation holds the best promise of harmonizing the interests of the class and its future

16 counsel,"[27] counsel here propose that they will not seek in excess of the 25 percent benchmark

17 followed in the Ninth Circuit.[28]

18        *Anticipated costs*:  Hagens Berman and Pearson Simon believe that the largest anticipated

19 costs in this case will be the costs of electronic discovery and the costs of experts in this litigation.

20 As outlined above, Hagens Berman has a commercial relationship with an online vendor that will

21 ensure the lowest prices possible for the class on a quality online document-review tool.

22

23        [24]   *In re Wells Fargo Sec. Litig.*, 156 F.R.D. 223, 225 (N.D. Cal. 1994) (citation omitted).

24        [25]   *In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190, 1194 (N.D. Ill. 1996).

25        [26]   *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 720 (7th Cir. 2001).

26        [27]   *Wenderhold v. Cylink Corp.*, 188 F.R.D. 577, 587 (N.D. Cal. 1999).

27        [28]   *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)
   ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reason-able fee award,
   providing adequate explanation in the record of any 'special circumstances' justifying a
28 departure.") (citations omitted).

1    Moreover, because the firms already have devoted significant time to investigation in this matter,

2    many of the costs inherent to a case such as this already have been incurred.

3    **I.      Hagens Berman and Pearson Simon's plan for allocation of work**

4            Hagens Berman and Pearson Simon make this proposal as proposed co-lead counsel.  Given

5    the long-standing history and cooperation between them, counsel propose to allocate work between

6    the two co-lead firms equally.  They also propose to select four firms (named below) to assist, as

7    they determine is necessary and efficient, for prosecuting this matter on behalf of the class.  These

8    firms, which will form an executive committee, will be paid from lead counsel's fees.[29]

9            Respectfully, the firms submit that liaison counsel is not needed in this case.  In its order

10   dated May 5, 2012, this Court contemplated the appointment of liaison counsel to receive order and

11   notices from the Court, to maintain complete files with copies of all documents, and to receive

12   orders from the MDL Panel.[30]  With the advent of the Court's Electronic Case Filing system, the

13   MDL Panel's movement to the same system, and the ability of all counsel to maintain electronic

14   files, the appointment of liaison counsel is unnecessary.  And to the extent that this Court

15   envisioned a liaison counsel to be a "tiebreaker," as referenced at the May 24, 2012, case

16   management conference,[31] Hagens Berman and Pearson Simon believe that no such tiebreaker vote

17   is required.  Should these two firms be unable to reach agreement on litigation strategy (an unlikely

18   event), they pledge to consult the executive committee for the tiebreaking vote.

19           Finally, in its May 5, 2012 order, the Court outlined the proposed duties of lead counsel.[32]

20   Hagens Berman and Pearson Simon agree with the proposed duties as outlined in the Court's order.

21   **J.      Hagens Berman and Pearson Simon's proposed executive committee**

22           This Court has requested counsel's views on the size and specific role of the executive

23   committee.  The MANUAL FOR COMPLEX LITIGATION recognizes that there can be multiple lead

24

25   _____

26   [29]    *See Wenderhold*, 188 F.R.D. at 587-88.

27   [30]    Pretrial Order, ECF No. 20, filed May 5, 2012 at 6.

     [31]    Transcript, May 24, 2012 Case Management Conference at 16:6-12.

28   [32]    Pretrial Order, ECF No. 20, filed May 5, 2012 at 7.

MOT. FOR APPT OF HAGENS BERMAN AND PEARSON SIMON     - 14 -
AS INTERIM CO-LEAD COUNSEL – No. 12-md-2330-EMC

010285-11 526047 V1

counsel and an executive committee, particularly in large cases.[33]  This is a large case.  Also, there can be no question that the factual and legal issues in this case are complex.  Plaintiffs allege electronic privacy violations.  The legal theories and evidence in support thereof will require technical expertise as well as extensive legal analysis.

Hagens Berman and Pearson Simon propose an executive committee of four firms:  (1) Arias Ozzello & Gignac LLP; (2) Levin, Fishbein, Sedran & Berman; (3) Finkelstein Thompson LLP; and (4) Kiesel, Boucher Larson LLP.  These firms have been selected on the basis of their expertise not only in class actions, but also in privacy and complex consumer actions.[34]  In accordance with the MANUAL FOR COMPLEX LITIGATION, the executive committee will:  "from time to time consult with plaintiffs' lead . . . counsel in coordinating the plaintiffs' pretrial activities and in planning for trial."[35]  This will include direct assignments from co-lead counsel (both by defendant and subject matter), but will also include consultation for large strategic decisions.

Hagens Berman and Pearson Simon propose to collect reports of contemporaneously prepared attorney and paralegal time and expense records from the executive committee members.  The collection and review of these records will ensure not only that the time expended by counsel was at the direction of lead counsel, but also that the time expended by any firm was reasonable.

## IV.     CONCLUSION

For the foregoing reasons, Steve W. Berman of Hagens Berman and Bruce L. Simon of Pearson Simon respectfully request appointment as interim co-lead class counsel.

---

[33]   *See* MANUAL, § 10.221.

[34]  For details of these firms' expertise, *see generally* the Declaration of J. Paul Gignac in Support of Motion for Appointment of Hagens Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead Counsel; the Declaration of Charles E. Schaffer in Support of Motion for Appointment of Hagens Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead Counsel; the Declaration of Rosemary M. Rivas in Support of Motion for Appointment of Hagens Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead Counsel; and the Declaration of Paul R. Kiesel in Support of Motion for Appointment of Hagens Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP as Interim Co-Lead Counsel, together with their exhibits, filed concurrently herewith.

[35]   MANUAL, § 40.22.

1  DATED: June 8, 2012                    HAGENS BERMAN SOBOL SHAPIRO LLP

2
                                          By   /s/ Steve W. Berman
3                                              STEVE W. BERMAN

4                                         Robert F. Lopez (*Pro Hac Vice*)
                                          Thomas E. Loeser (202724)
5                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                          1918 Eighth Avenue, Suite 3300
6                                         Seattle, WA 98101
                                          Telephone: (206) 623-7292
7                                         Facsimile:  (206) 623-0594
                                          steve@hbsslaw.com
8                                         robl@hbsslaw.com
                                          toml@hbsslaw.com
9
                                          Jeff D. Friedman (173886)
10                                        Shana E. Scarlett (217895)
                                          HAGENS BERMAN SOBOL SHAPIRO LLP
11                                        715 Hearst Avenue, Suite 202
                                          Berkeley, CA 94710
12                                        Telephone: (510) 725-3000
                                          Facsimile: (510) 725-3001
13                                        jefff@hbsslaw.com
                                          shanas@hbsslaw.com
14

15  DATED: June 8, 2012                    PEARSON SIMON WARSHAW & PENNY, LLP

16
                                          By   /s/ Bruce L. Simon
17                                             BRUCE L. SIMON

18                                        44 Montgomery Street, Suite 1200
                                          San Francisco, CA 94104
19                                        Telephone: (415) 433-9000
                                          Facsimile:  (415) 433-9008
20                                        bsimon@pswplaw.com

21                                        Daniel L. Warshaw (185365)
                                          PEARSON SIMON WARSHAW & PENNY, LLP
22                                        15165 Ventura Blvd., Suite 400
                                          Sherman Oaks, CA 91403
23                                        Telephone: (818) 788-8300
                                          Facsimile:  (818) 788-8104
24                                        dwarshaw@pswplaw.com

25                                        *Proposed Interim Co-Lead Counsel*

26

27

28
    MOT. FOR APPT OF HAGENS BERMAN AND PEARSON SIMON  - 16 -
    AS INTERIM CO-LEAD COUNSEL – No. 12-md-2330-EMC
    010285-11  526047 V1

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 8, 2012, I electronically filed the foregoing document using the

3

CM/ECF system which will send notification of such filing to the e-mail addresses registered in the

4

CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have

5

cause to be e-mailed a copy of the foregoing document to the non-CM/ECF participants indicated

6

on the Manual Notice List generated by the CM/ECF system.

7

                                        /s/ Steve W. Berman

8

                                       STEVE W. BERMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL ORDER 45 ATTESTATION**

I am the ECF User whose ID and password are being used to file this Motion.  In accordance with General Order 45, concurrence in the filing of this document has been obtained from each of the signatories and I shall maintain records to support this concurrence for subsequent production for the court if so ordered or for inspection upon request by a party.

Dated: June 8, 2012                                    HAGENS BERMAN SOBOL SHAPIRO LLP


By:  _____/s/ Steve W. Berman_____
                                                   Steve W. Berman

Attorneys for Plaintiffs