Brian R. Strange (Cal. Bar. No. 103252)
lacounsel@earthlink.net
David A. Holop (Cal. Bar. No. 280475)
dholop@strangeandcarpenter.com
STRANGE & CARPENTER
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
T: (310) 207-5055; F: (310) 826-3210

*Proposed Interim Lead Class Counsel*

*Proposed Executive Committee:*
Warren T. Burns
wburns@susmangodfrey.com
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, Texas 75202
T: (214) 754-1928; F: (214) 754-1933

*Proposed Chair*

Peter J. McNulty (Cal. Bar. No. 89660)
peter@mcnultylaw.com
McNULTY LAW FIRM
827 Moraga Drive
Los Angeles, California 90049
T: (310) 471-2707

*Proposed Member*

Robert Rothman
rrothman@rgrdlaw.com
Mark J. Dearman
mdearman@rgrdlaw.com
ROBBINS GELLER RUDMAN &
DOWD LLP
655 West Broadway, Suite 1900
San Diego, California 92101
T: (619) 231-1058; F: (619) 231-7423

*Proposed Interim Lead Class Counsel*

Matthew L. Tuccillo
mltuccillo@pomlaw.com
POMERANTZ HAUDEK GROSSMAN
& GROSS LLP
100 Park Avenue, 26th Floor
New York, New York 10017
Tel: (212) 661-1100; F: (212) 661-8665

*Proposed Member*

Ira P. Rothken (Cal. Bar. No. 160029)
ndca@techfirm.com
ROTHKEN LAW FIRM, LLP
3 Hamilton Landing, Suite 280
Novato, California 94949
T: (415) 924-4250; F: (415) 924-2905

*Proposed Liaison Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CARRIER IQ, INC. CONSUMER PRIVACY LITIGATION | Case No. 12-md-2330-EMC |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO ALL CASES | **NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF INTERIM LEAD CLASS COUNSEL AND PLAINTIFFS' LEADERSHIP STRUCTURE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date: July 12, 2012<br>Time: 2:30pm<br>Courtroom: 5 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 12, 2012, at 2:30 p.m. or as soon thereafter as the matter may be heard by the Honorable Edward M. Chen of the United States District Court of the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 5, 17th Floor, Strange & Carpenter; Robbins Geller Rudman & Dowd LLP; Susman Godfrey LLP; Pomerantz Haudek Grossman & Gross LLP; McNulty Law Firm; and Rothken Law Firm LLP will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23(g)(3) for an order appointing Strange & Carpenter and Robbins Geller Rudman & Dowd LLP as Interim Lead Class Counsel; an Executive Committee consisting of:  Susman Godfrey LLP as Chair, and Pomerantz Haudek Grossman & Gross LLP and McNulty Law Firm as Members; and Rothken Law Firm, LLP as Liaison Counsel, as proposed by this motion.

This motion is based on this Notice of Motion and Motion for Appointment of Interim Lead Class Counsel and Plaintiffs' Leadership Structure, the following memorandum of points and authorities, the declaration of Brian R. Strange in support thereof, the pleadings and the papers on file in this action, the arguments of counsel, and any other matters that the Court may properly consider.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . v

I.  INTRODUCTION . . . . . . . . . 1

II.  LEGAL STANDARD. . . . . . . . 3

III.  ARGUMENT . . . . . . . . . 4

    a.  Proposed Interim Lead Class Counsel's Extensive Investigation of the CIQ Software and Their Substantial Work Developing the Legal Claims Involved in the Action (Rule (g)(1)(A)(i)) . . . 4

    b.  Proposed Interim Lead Class Counsel's and Movants' Experience in Handling Class Actions and Other Complex Litigation, as Well as Their Knowledge of the Subject Matter, Supports Approval of Their Requested Leadership Structure (Rule 23(g)(1)(A)(ii) and (iii)) . 5

        1.  Proposed Interim Lead Class Counsel . . . 6

            a.  Strange & Carpenter . . . . . 6

            b.  Robbins Geller Rudman & Dowd LLP . . 7

        2.  Proposed Executive Committee . . . . 8

        3.  Proposed Liaison Counsel:  Rothken Law Firm, LLP . 10

    c.  Proposed Interim Lead Class Counsel's Willingness and Availability to Commit to a Time-Consuming Project . . . . 10

    d.  Ability to Cooperatively Work with Others . . . 11

    e.  Qualifications, Including Experience and Managing Complex Litigation and Knowledge of the Subject Matter . . 12

    f.  Counsel's Anticipated Litigation and Discovery Plan for the MDL . 12

    g.  Counsel's Fee Structure and Anticipated Costs . . 13

    h.  Guidelines to Control Fees and Costs. . . . 14

    i.  Counsel's Plan for Allocating Work Among the Leadership Team and With Other Counsel . . . . . . 14

    j.  Counsel's Views of Size and a Specific Role of the Executive Committee . . . . . . 14

1

IV. CONCLUSION         .         .         .         .         .         .         .         .         15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air Cargo Shipping Serv. Antirust Litigation*,
240 F.R.D. 56 (E.D.N.Y. 2006) ........................................................................3

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1994) ........................................................................13

*Harrington v. City of Albuquerque*,
222 F.R.D. 505 (D.N.M. 2004) ........................................................................4

*Kehoe v. Fidelity Federal Bank & Trust*,
421 F.3d 1209 (11th Cir. 2005), *cert denied*, 547 U.S. 1051 (2006) ...........................8

*Parkinson v. Hyundai Motor America, No.*
2006 U.S. Dist. LEXIS 59055 (C.D. Cal. Aug. 7, 2006) ........................................3

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ........................................................................13

*In re Terazosin Hydrochloride Antitrust Litigation*,
220 F.R.D. 672 (S.D. Fla. 2004) ........................................................................5

*In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Products
Liability Litigation*,
828 F. Supp. 2d 1150 (C.D. Cal. 2011) ........................................................9, 12

## STATE CASE

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) ........................................................................7

## DOCKETED CASES

*Am. Medical Ass'n v. United Healthcare Corp.*,
Master File No. 00-CV-2800-LLM-GWG (S.D.N.Y.) ........................................9

*Anthony v. Yahoo! Inc.*,
No. CV 05-04175 RMW ........................................................................9

*In Re: Apple iPhone 3G and 3GS MMS*,
No. 2:09-md-02116-CJB-JWL ........................................................................7

*In re iPhone 4S Consumer Litig.*,
Master File No. 4:12-cv-01127-CW (N.D. Cal.) ........................................8

*In re Apple iPhone 4 Prods. Liability Litig.*,
Case No. 5:10-md-02188-RMW (N.D. Cal.) ........................................8, 9

*In re Comverse Tech. Sec. Litig.*,
No. 06-CV-1825 (E.D.N.Y.) ........................................................................9

*In re DoubleClick, Inc. Privacy Litigation*,

No. 00-CIV0641 (NRB)..................................................................................2, 6, 10

*Eckert v. Samsung Telecommunications America LLC,*
Los Angeles Superior Court Case Number BC 474540. ...........................................3, 11

*In re: Facebook, Inc. Internet Tracking Litigation,*
No. 12-md-02314-EJD (N.D. Cal.).................................................................6, 9

*Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al.,*
Case No. 07-05325 (JLL) ..............................................................................7

*Kim et al. v. Space Pencil, Inc. et al.,*
No. 3:11-cv-03796-LB (N.D. Cal.)...................................................................6

*In re Michaels Stores, Inc., Pin Pad Litigation,*
No. 1:11-cv-03350 (N.D. Ill.) .........................................................................6

*In re Palm Treo 600 and 650 Litig.,*
No. C-05-03774 (RMW) (N.D. Cal.)...............................................................2, 10

*Parke, et al. v. CardSystems Solutions, Inc., et al.,*
No. CGC-05-442624 (San Francisco Superior Court)..............................................6

*In re Sony Gaming Networks & Customer Data Sec. Breach Litigation,*
Case No. 3:11-md-02258-AJB-MDD (S.D. Cal.).......................................2, 6, 7, 8, 11

*In re T-Mobile Sidekick Litig.,*
No. C- 09-04854 JW (N.D. Cal.) ………………………………………...............…………..…6

*Toyota Motor Cases,*
J.C.C.P. 4621 (L.A. Sup. Ct.) .........................................................................7

*In re Trans Union Corp. Privacy Litig.,*
Case No. 00-CV-4729, MDL Dkt. No. 1350 (E.D. Ill.) ..........................................7, 8

*In re Zappos Security Breach Litigation,*
No. 12-cv-00182-ECR-VCF (D. NV)................................................................9

**FEDERAL RULES**

Federal Rules of Civil Procedure, Rule 23(g)……...…............................... 1, 3-5, 11

Federal Rules of Civil Procedure, Rule 23(g)(1) ................................................ 1, 3-5

Federal Rules of Civil Procedure, Rule 23(g)(3)  .................................................3

**FEDERAL CODE**

28 U.S.C. § 1407 .......................................................................................4

**OTHER**

Manual for Complex Litigation, Fourth Edition § 10.224..........................................4

Manual for Complex Litigation, Fourth Edition § 21.11 ...........................................3

Manual for Complex Litigation, Fourth Edition § 21.271 ...........................................................1

Pursuant to this Court's May 1, 2012 Pretrial Order, and its May 24, 2012 Order on Briefing on Plaintiffs' Motion to Appoint Lead Counsel ("Orders"), and pursuant to Fed. R. Civ. P. 23(g)(1), this joint application respectfully requests that this Court designate Strange & Carpenter and Robbins Geller Rudman & Dowd LLP as Interim Lead Class Counsel, and appoint an Executive Committee consisting of:  Susman Godfrey LLP as Chair, Pomerantz Haudek Grossman & Gross LLP and McNulty Law Firm as Members, and Rothken Law Firm, LLP as Liaison Counsel (hereinafter "Movants"), in the above-titled litigation (the "Action").[1]

## I.    <u>INTRODUCTION</u>

"The judge must choose the class counsel when more than one class action has been filed and consolidated or centralized. . . . If there are multiple applicants, the court's task is to select the applicant best able to represent the interests of the class." *Manual for Complex Litigation*, Fourth Edition ("*Manual*" or "*MCL 4th*"), § 21.271.  In evaluating the leadership appointment factors set forth in the applicable case law, Rule 23(g), and the *Manual*, a court should consider the work that will be required to prosecute the particular class action lawsuit.  This consideration is, in part, to avoid overstaffing a case and incurring unnecessary fees.

This Action involves the use of specialized software created by Carrier IQ, Inc. ("Carrier IQ") placed on mobile devices, which secretly tracked consumers' personal information.  It involves the design, application, and capabilities of the Carrier IQ software, and the conduct of not only Carrier IQ itself, but also at least eight different mobile device manufacturer Defendants,[2] as to alleged violations of both federal and state privacy and wiretapping laws.

---

[1]  This application is supported by at least 19 other law firms, excluding Movants' own firms: Glancy Binkow & Goldberg LLP; Law Offices of Susan Yoon; Kirtland & Packard LLP; Kershaw Cutter & Ratinoff, LLP; Rosman & Germain, LLP; Blood Hurst & O'Reardon LLP; The Law Offices of David I. Pankin, P.C.; Wites & Kapetan, P.A.; Lynch Daskal & Emery LLP; Law Offices of Joseph Malley; Morelli Ratner PC; Steyer Lowenthal Boodrookas Alvarez & Smith LLP; Goldfard Branham, LLP; Zimmerman Reed, PLLP; Seeger Weiss LLP; Stewarts Law US LLP; Keefe Bartels LLC; Litigation Partners P.L.; and Haggard Parks Haggard & Lewis.  Movants respectfully submit that the number of law firms as opposed to number of cases is more indicative of support since filing of multiple cases by the same firms is not meaningful.

[2]  Apple, Inc. ("Apple"); HTC America, Inc. and HTC Corporation (together, "HTC"); Huawei Technologies Co., Ltd., and Huawei Devices USA, Inc. (together, "Huawei"); LG Electronics U.S.A., Inc., LG Electronics MobileComm U.S.A., Inc., and LG Electronics Mobile Research U.S.A., LLC (together, "LG"), Motorola Mobility, Inc. ("Motorola"); Pantech Wireless, Inc. ("Pantech"); Research in Motion Corporation ("RIM"); and Samsung Electronics Co. Ltd. (a

1

This proposed leadership and the supporting firms bring an unparalleled level of multidistrict litigation ("MDL") experience and technical expertise to effectively and efficiently litigate the Action.  The attorneys have been recognized in the field of Internet privacy and data breach class action litigation, having commenced and litigated seminal cases in the field, including *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, MDL No. 3:11-md-02258-AJB-MDD (S.D. Cal.) ("*Sony Data Security Breach Litigation*"), *In re DoubleClick, Inc. Privacy Litig.*, No. 00-CIV0641 (NRB) (S.D.N.Y.), and *In re Palm Treo 600 and 650 Litig.*, No. C-05-03774 (RMW) (N.D. Cal.), to name a few.  Indeed, the expertise of these lawyers in the areas of computer forensics, computer systems, privacy/data breach litigation and class action practice is unmatched.  It is the jurisprudence arising from the cases they have litigated on which this type of case rests.  Using their expertise and their knowledge of the applicable law, they have worked extensively to identify and investigate the facts and claims asserted in this case.[3]

Movants have proven experience successfully leading multidistrict litigations, including managing cases and lawyers in similar cases.  Lawyers who can cooperate with others and can take into account and manage, but still consider, often competing interests and viewpoints are essential to a successful MDL prosecution.  As more fully set forth below, the Proposed Interim Lead Class Counsel have already been instrumental in the MDL to date and are committed to continuing to consider viewpoints from all Plaintiffs while leading the case.

Finally, Movants are fully committed to this litigation and have more than adequate capital and personnel to prosecute this Action against their well-funded and deep-pocketed adversaries.  Their actions to date evidence this expertise and commitment to the success of this litigation.  Indeed, Proposed Interim Lead Class Counsel have already:

- Investigated facts and circumstances surrounding the existence of the Carrier IQ software at issue in this case prior to the time the news broke.  (Declaration of Brian R. Strange, ¶ 2 (hereinafter "Strange Decl.").);
- Retained and consulted with the leading computer security experts in the United

Korean company), Samsung Electronics America, Inc., and Samsung Telecommunications America, LLC (together, "Samsung").

[3]  In addition to their expertise in this area, Movants are a geographically diverse group having firms in Atlanta, Boca Raton, Chicago, Dallas, Houston, Los Angeles, Novato, New Orleans, New York, Philadelphia, San Diego, Washington, D.C., and of course, San Francisco.

States, including that members of their team interviewed the expert who broke the news, Trevor Eckhart, and having an analysis and forensic breakdown of the software on a phone performed by an <u>independent</u> expert to verify <u>before</u> filing a lawsuit, instead of simply relying on the technician who broke the news story. (Strange Decl., ¶ 3.);

•   Filed the first class action complaint, and in some cases the only class action complaint, against some of the mobile phone manufacturer Defendants, including Defendants Pantech and Huawei;

•   Participated in the coordination and consolidation under 28 U.S.C. § 1407 before the Judicial Panel on Multidistrict Litigation;[4]

•   Drafted and served an e-discovery data preservation notice upon Carrier IQ;

•   Created a state-of-the-art electronic document repository to enable  the  efficient sharing of encrypted litigation documents among all Plaintiffs' counsel;

•   Arranged with all Plaintiffs' counsel and with all Defense counsel a Joint Proposed Agenda for this Court's Initial Case Management Conference on May 24, 2012;

•   Initiated extensive discussions with all Plaintiffs' counsel on the issue of leadership and organized Plaintiffs' counsel to help preserve evidence;

•   Engaged in confidential, substantive exchanges with two manufacturers thus far regarding their conduct at issue, in preparation for the consolidated pleading; and

•   Coordinated with California State Court plaintiffs in *Eckert v. Samsung Telecommunications America LLC*, Los Angeles Superior Court Case Number BC 474540.

For these reasons and those detailed below responding to the issues raised by this Court in its May 24, 2012 Order, Movants respectfully request their appointment as requested herein.

## II.   <u>LEGAL STANDARD</u>

Rule 23(g)(3) authorizes the court to "designate interim class counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  While Rule 23(g)(3) does not set forth the standards to be applied in choosing interim class counsel, courts have applied the factors set forth in Rule 23(g)(1).  *Parkinson v. Hyundai Motor Am.,* No. SACV 06-345 AHS (MLGx), 2006 U.S. Dist LEXIS 59055, at *6 (C.D. Cal. Aug. 7, 2006) (citing MCL 4th § 21.11); *In re Air Cargo Shipping Serv. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006).[5]

---

[4] Movant Strange & Carpenter moved for consolidation in the Central District of California, based on the relationship between Carrier IQ and Core Mobility, Inc. and its Orange County-based parent company, Smith Micro Software, Inc., including that Carrier IQ and Core Mobility, Inc. were founded by the same parties and have linked IP addresses (an IP address linked to the hostname "collector.argus.coremobility.com" actually goes to the hostname "collector.argus.carrieriq.com.").  However, based on representations by Carrier IQ, Strange & Carpenter agreed at the MDL hearing in the spirit of cooperation to send the case to the Northern District, but note this issue warrants further discovery and shows Movants attention to detail.

[5] These factors are: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv)

This Court has addressed these factors and others in its Orders, all of which are addressed below. "In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case." Advisory Committee Notes to the 2003 Amendments to Rule 23(g). A court may also consider "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court." MCL 4th § 10.224, p. 27. Movants satisfy all of the Rule 23(g) factors and are the counsel best able to represent the interests of the proposed class in the Action.[6]

## III.   ARGUMENT

Movants' significant efforts in the early stages of this litigation, their experience in consumer rights class action litigation, including multidistrict litigation and electronic privacy matters, their ability and willingness to commit the resources required to effectively prosecute this Action, and their expressed interest in working with others make them the clear choice for leadership selection here, based on factors set forth by the Court's Orders.

### a.   Proposed Interim Lead Class Counsel's Extensive Investigation of the Carrier IQ Software and Their Substantial Work Developing the Legal Claims Involved in the Action (Rule 23(g)(1)(A)(i))

In considering a motion for appointment of lead counsel or interim class counsel, a court must consider the work undertaken by that counsel in the case. *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004) (appointing class counsel who had "done significant work in [the] case"). This criterion was addressed by the Court in paragraph 15(d) in its Pretrial Order. In this litigation, Proposed Interim Lead Class Counsel satisfies that requirement far more than any competing applicant group. Indeed, Proposed Interim Lead Class Counsel have been at the forefront of this litigation from the outset and are the primary force

---

the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

[6] Significantly, Movants do not have standing alliances with one another, on this case or otherwise. In fact, these attorneys and firms independently filed their respective cases, advocated divergent MDL transferee venues, and at times, opposed each others' respective positions up to and including at the March 29, 2012 JPML hearing at which the 28 U.S.C. § 1407 motion was heard and adjudicated. In the ensuing weeks, however, much analysis and discussion occurred among these attorneys and, after careful consideration, they decided to collaborate with one another because of their collective belief that doing so would result in the best representation of Plaintiffs' and other class members' interests in this litigation.

behind the substantive achievements made in this case to date.

Proposed Interim Lead Class Counsel's work to investigate and develop the claims at issue went far beyond merely learning about the existence of the Carrier IQ software through media reports, confirming the reported events, and filing a case. The investigation began in October 2011, about six weeks prior to filing of the initial complaint in this Action. After the news reports broke, Movants did not race to the Courthouse. Rather, <u>before</u> filing any lawsuit, Movants raced to discover the facts. Proposed Interim Lead Class Counsel hired a consultant to deconstruct a phone and perform a forensic analysis of the Carrier IQ software, instead of relying on Mr. Eckhart,[7] and verified, among other information, that the mobile device could be remotely configured to collect and transmit user data off of the device, and that information could be collected and transmitted without any notice to the operator of the device. (Strange Decl., ¶ 4.) Proposed Interim Lead Class Counsel also determined the types of information that could be stored on the device, what information was available in real-time, what information could be transmitted off of the device, the collection points of the data, and the unencrypted nature of the data. (Strange Decl., ¶ 5.)

As part of their ongoing efforts to develop the claims in this litigation, Proposed Interim Lead Class Counsel have also developed a comprehensive, secure, state-of-the-art online document repository, which will facilitate the sharing of documents among Plaintiffs' counsel.

**b.      Proposed Interim Lead Class Counsel's and Movants' Experience in Handling Class Actions and Other Complex Litigation, as Well as Their Knowledge of the Subject Matter, Supports Approval of Their Requested Leadership Structure  (Rule 23(g)(1)(A)(ii) and (iii))**

Courts applying Rule 23(g) have placed great emphasis on proposed lead class counsel's experience with and knowledge of the applicable law – considering it to be the "most persuasive" factor in the Rule 23(g) analysis. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004). Proposed Interim Lead Class Counsel, and the Movants more broadly, include recognized and proven leaders of the complex litigation bar,

---

[7] Robins Geller attorneys, through their longstanding relationship with Electronic Frontier Foundation ("EFF"), spoke with EFF early on in the process and were told that Mr. Eckhart would be willing to work with any of the plaintiffs in the case.

have substantial experience litigating claims similar to those here, possess knowledge of the applicable law, and have experience and expertise in handling class actions and other complex litigation, including Internet privacy and data breach cases.

Here, for example, Proposed Interim Lead Class Counsel have served in leadership positions and been involved in similar Internet-related litigation, including *Sony Data Security Breach Litigation* (alleging breach of consumer data and security breach of Sony's gaming networks); *In re DoubleClick, Inc. Privacy Litig.*, No. 00-CIV0641 (NRB) (S.D.N.Y.) (alleging improper use of invisible web bugs and cross website cookies); *Kim et al. v. Space Pencil, Inc. et al.*, No. 3:11-cv-03796-LB (N.D. Cal.) (involving tracking "cookies"); *In re T-Mobile Sidekick Litig.*, No. C- 09-04854 JW (N.D. Cal.) (loss of consumer data and security breach of Microsoft Servers); *Parke, et al. v. CardSystems Solutions, Inc.*, *et al.*, No. CGC-05-442624 (San Francisco Superior Court) (among the largest breaches of consumer credit card data in the United States); *In re Michaels Stores, Inc., Pin Pad Litig.*, No. 1:11-cv-03350 (N.D. Ill.) (nationwide data breach case); and *In re Facebook Inc. Internet Tracking Litig.*, No. 12-MD-02314-EJD (N.D. Cal.).

Each applicant has the expertise and skill sets that qualify him to lead this litigation. Combined, the group of lawyers comprising Movants here is best-suited to lead this Action.

### 1.    Proposed Interim Lead Class Counsel

### (a)    Strange & Carpenter

Strange & Carpenter is an experienced and respected class action and complex business litigation firm led by trial lawyer Brian R. Strange.[8]  Of particular significance in the context of this litigation, Mr. Strange recently authored an article entitled *"Modern wiretapping": Can the federal Wiretap Act protect consumers from the latest methods of online and mobile tracking?* (anticipated release July/August 2012).  Mr. Strange also authored *Into the Breach - Plaintiffs have been increasingly successful in gaining injunctive relief for online security breaches* (Los Angeles Lawyer, February 2012) and has been involved in several recent cases involving

---

[8]  Mr. Strange has lectured on class actions before numerous organizations, including the California State Bar, the Practicing Law Institute, and various consumer attorneys organizations, and is frequently quoted on class actions.  Mr. Strange has significant trial experience as described in the firm's resume attached as Exhibit A to Strange Decl..

Internet-related issues, including domain names, data security, and personal privacy. Mr. Strange's firm resume is attached as Exhibit A to Strange Decl.

Mr. Strange has been involved in settlements with the nation's largest corporations, and has organized and coordinated numerous slates of plaintiffs' counsel in various MDLs across the country. Strange & Carpenter was chosen, among 16 applicants, by District Judge Anthony Battaglia (S.D. Cal.) to serve as one of the members of the plaintiffs' leadership team in *Sony Data Security Breach Litigation*, arising from one of the largest data security breaches in United States history. He has been at the forefront of many multidistrict and class action cases, including arguing *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), before the California Supreme Court on the issue of arbitration clauses, which will be important in this case. Mr. Strange has also been appointed lead counsel in numerous national class actions, including: (a) a nationwide settlement against AT&T Mobility LLC regarding flat-rate early termination fees for mobile phones, *Hall, et al. v. AT&T Mobility LLC f/k/a Cingular Wireless LLC, et al.*, Case No. 07-05325 (JLL) (D. N.J.); (b) *In Re: Apple iPhone 3G and 3GS MMS Marketing and Sales Practices Litig.*, MDL No. 2116 (E.D. La.) (Executive Committee member in lawsuit concerning the operation of the Apple iPhone on AT&T's 3G network); (c) *Toyota Motor Cases*, J.C.C.P. 4621 (L.A. Sup. Ct.) (Mohr, J.) (appointed Co-Lead Class Counsel in the California state coordinated proceeding involving allegations of unintended acceleration in Toyota vehicles); and is involved in the pending MDL *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, MDL No. 2358 (pursuing digital privacy class claims related to the alleged circumvention of browser privacy controls).

### (b)    Robbins Geller Rudman & Dowd LLP

As the nation's largest law firm devoted to prosecuting class action lawsuits, Robbins Geller has achieved a remarkable level of success. *See* Firm Resume of Robbins Geller, attached as Exhibit B to Strange Decl. Robbins Geller attorneys have been responsible for recoveries of more than $45 billion for hundreds of thousands of class members. Some of Robbins Geller's noteworthy consumer and privacy class actions include: (a) *Drivers' Privacy Protection Act*: In this cutting-edge consumer privacy case, Robbins Geller attorneys represented a class of half-a-

million Florida drivers against a national bank for purchasing the drivers' private information from the state department of motor vehicles for marketing purposes. *Kehoe v. Fid. Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), *cert. denied*, 547 U.S. 1051 (2006); and (b) *In re Trans Union Corp. Privacy Litig.*, Case No. 00-CV-4729, MDL No. 1350 (E.D. Ill.): Robbins Geller served as class counsel in MDL proceedings against Trans Union's sale of personal and financial consumer credit-related information to third parties for target marketing purposes. Robbins Geller is also involved in the following pending consumer technology matters: (a) *Sony Data Security Breach Litigation*: Robbins Geller was also chosen to serve as one of the members of the plaintiffs' leadership team in this MDL. (b) *In re Apple iPhone 4 Prods. Liability Litig.*, Case No. 5:10-md-02188-RMW (N.D. Cal.): Robbins Geller currently serves as Class Counsel with three other firms in this MDL litigation pending in this District concerning the sale and marketing of Apple's iPhone 4.[9] Further, Robbins Geller has served as lead counsel in numerous other class actions, including *In re Enron Corp. Sec. Derivative & ERISA Litig.*, where they secured the largest recovery ever obtained in a shareholder class action (over $7 billion). The firm also achieved the highest ***jury verdict*** ever returned in favor of a shareholder class following a six-week jury trial in *Jaffe v. Household Int't, Inc.*, No. 02-C005893 (N.D. Ill.).

### 2.    Proposed Executive Committee

The Proposed Executive Committee consists of three members. Susman Godfrey LLP will serve as Chair of the proposed Executive Committee. Susman Godfrey's experience is not confined to a single practice area. Since the firm's founding in 1980, Susman Godfrey has served as lead counsel in hundreds of antitrust class actions and complex commercial disputes throughout the country. Susman Godfrey's practice is dedicated exclusively to litigating and trying lawsuits. The firm has represented clients in some of the largest and most complex cases ever litigated and has demonstrated that it has the ability and resources to handle those cases effectively and efficiently. Susman Godfrey's unparalleled experience is more fully detailed in

---

[9]   Also, in *In re iPhone 4S Consumer Litig.*, Master File No. 4:12-cv-01127-CW (N.D. Cal.), Judge Wilken of this District appointed Robbins Geller and two other law firms interim class counsel in litigation concerning the sale and marketing of Apple's iPhone 4S smartphone with a defective and predominant feature known as "Siri," a voice-activated assistant.

1     its firm resume attached as Exhibit C to Strange Decl.  Finally, Susman Godfrey has over 90

2     lawyers in five different offices stretching from coast to coast.  Susman Godfrey will fully

3     commit the necessary resources to assist in the efficient prosecution of this case.

4                 Committee member Pomerantz Haudek Grossman & Gross LLP, a 27-lawyer firm with

5     three offices, was founded in 1936 by a recognized pioneer of class action practice.  It has a

6     consistent record of landmark decisions for plaintiffs, often achieved as lead or co-lead counsel

7     of complex class action litigation.  The *National Law Journal* named Pomerantz to its prestigious

8     2011 Plaintiffs' Hot List for its "cutting edge" work, including $575 million in negotiated

9     securities and ERISA settlements in 2010 on cases such as *In re Comverse Tech. Sec. Litig.*, No.

10    06-CV-1825 (E.D.N.Y.) ($225 million settlement) and *Am. Medical Ass'n v. United Healthcare

11    Corp.*, Master File No. 00-CV-2800-LLM-GWG (S.D.N.Y.) ($350 million settlement).

12    Pomerantz has been active in the Carrier IQ litigation thus far, having already engaged in

13    confidential informal discovery with multiple device manufacturer Defendants.  Pomerantz's

14    extensive firm resume, highlighting the firm's class action expertise across securities, antitrust,

15    insurance, and other types of litigation, is attached as Exhibit D to Strange Decl.[10]

16                Committee Member McNulty Law Firm,[11] with offices in Los Angeles and Hong Kong,

17    has substantial trial and class action experience, specializing in the preparation and trial of

18    catastrophic personal injury actions and complicated commercial actions with a special emphasis

19

20    [10]  Pomerantz has co-counseled with Glancy Binkow & Goldberg LLP, which has offices in Los
      Angeles and San Francisco, and has pertinent Internet privacy/data breach litigation experience

21    in cases such as *In re Zappos Security Breach Litig.*, No. 12-cv-00182-ECR-VCF (D. NV)
      (leadership role) and *In re: Facebook, Inc. Internet Tracking Litig.*, No. 12-md-02314-EJD (N.D.

22    Cal.), and has successfully argued against the enforceability of arbitration provisions in *In re
      Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Products Liability Litig.*, 828

23    F.supp.2d 1150 (C.D. Ca. 2011).  The Glancy firm supports Movants' application as set forth
      herein.

24    [11]  The proposed participation of the McNulty Law Firm on the Executive Committee will include
      support from four additional law firms: (1) Stewarts Law, (2) Keefe Bartels, (3) Eichen,

25    Crutchlow, Zaslow & McElroy, and (4) Litigation Partners, P.L.  These firms have substantial
      experience with class action practice and digital privacy actions in particular.  For example,

26    Stewarts Law is co-lead counsel (and Keefe Bartels and Eichen Crutchlow are on the plaintiffs'
      steering committee) in the high-profile privacy action against Facebook related to alleged

27    improper tacking of users' internet browsing, *In re: Facebook Internet Tracking Litig.*, 5:12-md-
      2314-EJD (N.D. Cal.), a case which involves many of the same causes of action and legal

28    theories likely to be at issue in this Action.

in Class Action/Mass Tort Litigation.  Mr. McNulty has tried over 100 cases to verdict and has been involved in multiple nationwide class actions, including privacy litigation such as *Anthony v. Yahoo! Inc.,* Case No. CV 05-04175 RMW (N.D. Cal.).   McNulty Law Firm's resume is attached as Exhibit E to Strange Decl.

### 3.      Proposed Liaison Counsel: Rothken Law Firm, LLP

The Rothken Law Firm, led by Ira P. Rothken, a former medical researcher and computer scientist, began the Northern California-based Rothken Law Firm in 1993, and the firm has evolved from the beginning of the modern internet in 1995 to emphasize complex high technology-related litigation.  The firm has been involved in a number of groundbreaking mass action high technology cases requiring the blend of both technical and legal skills.[12]

Mr. Rothken is actively involved in handling cutting edge issues in electronic discovery both in complex data-centric cases and in a legal think tank.  Mr. Rothken is an active member of the cutting edge Sedona Conference® Working Group 1, and assisted in the drafting of the *Sedona Conference Cooperation Proclamation* on E-Discovery for the Judiciary.[13]    Mr. Rothken's firm resume is attached as Exhibit F to Strange Decl.

### c.      Proposed Interim Lead Class Counsel's Willingness and Availability to Commit to a Time-Consuming Project

Proposed Interim Lead Class Counsel's track record of effectively prosecuting complex class actions reflects their willingness to commit the resources and time necessary to effectively prosecute this Action. On many occasions, Proposed Interim Lead Class Counsel, and the

---

[12]   Mr. Rothken, while serving as Liaison Counsel, will also participate in the substantive work in light of his expertise as set forth herein.   Mr. Rothken was also co-lead class counsel representing owners of Palm Treo 600 and 650 Smartphones in a nationwide federal class action lawsuit entitled *In re Palm Treo*, claiming the devices are inherently defective, resulting in a multi-million dollar nationwide class recovery; co-lead representing owners of the T-Mobile Sidekick Smartphones in a nationwide federal class action entitled *In re Sidekick,* claiming a massive corruption of data integrity and interruption of consumer data access; co-lead class counsel and court-ordered liaison counsel representing owners of the Apple iPhone 4 Smartphones in a nationwide federal class action entitled *In re Apple iPhone 4* (also known as "Antenna-gate") claiming defective antenna design; and co-lead settlement class counsel in a nationwide consumer privacy lawsuit brought against DoubleClick for allegedly intruding on web user privacy in *In re DoubleClick*, resulting in a nationwide class settlement.

[13]   *See* p. 3, http://www.fjc.gov/public/pdf.nsf/lookup/SedonaRes.pdf/$file/SedonaRes.pdf.   Mr. Rothken also co-edited a leading Commentary on the issues of preserving, managing, and identifying not reasonably accessible electronically stored information or "NRA ESI".

Movants more broadly, have prosecuted cases lasting many years and requiring a significant commitment of resources.

Proposed Interim Lead Class Counsel have the capital and personnel necessary to represent Plaintiffs and the proposed class and have already demonstrated a willingness to expend these resources to effectively and efficiently prosecute this Action.  Indeed, based on their experience in filing and successfully litigating data breach and other class actions, Proposed Interim Lead Class Counsel fully understand the substantial investment of time and resources necessary to properly pursue and lead such litigation and are committed to devoting the necessary resources to this case.  Indeed, collectively, each of the Movants is a well-capitalized firm, and together they have over 300 lawyers in 20 offices, making it the only moving group with the resources necessary to compete against the firms hired by Defendants, which are among the largest in the world.

In addition to the specific Rule 23(g) appointment criteria, which, as explained above Proposed Interim Lead Class Counsel readily satisfy, there are several other material factors that further strengthen Proposed Interim Lead Class Counsel's appointment request here:

> **d.    Ability to Cooperatively Work with Others**

A key factor in choosing counsel is that the court-appointed leadership of a case will not only effectively lead the MDL, in terms of task-managing and advancing litigation strategy, but also that it inclusively works with *all* counsel toward a fair and efficient resolution.  Movants are supported by numerous firms listed herein in Footnote 1.  Significantly, however, Movants will work cooperatively with *any* counsel selected by the Court,[14] and do not believe that the Court must pick one proposed leadership slate to the total exclusion of the other.[15]

As another example of the ability to work cooperatively with others, Proposed Interim

---

[14] Movants note that Steve W. Berman filed his Declaration in Support of Hagens Berman Sobol Shapiro LLP and Pearson, Simon, Warshaw & Penny, LLP's Motion for Appointment as Interim Co-lead Counsel with the Court under seal (*see* Dkt. No. 67).

[15]  In fact, in *Sony Data Security Breach Litigation*, Judge Battaglia chose Strange & Carpenter from one group and Robbins Geller from another, and they are now submitting this joint application together, evidencing their ability to work cooperatively with different camps.

Lead Class Counsel has been in contact with the only other state court action raising similar claims (remanded by Judge Feess), *Eckert v. Samsung Telecommunications America LLC*, Los Angeles Superior Court Case Number BC 474540.  Movants are coordinating this MDL thus far with counsel in *Eckert,* who are also in support of the leadership group, to promote efficiency and avoid duplication.  (Strange Decl., ¶ 7.)  Movants respectfully submit that reaching out and coordinating with state court counsel is exactly the type of cooperation that will advance this Action in an effective and efficient manner.

e.      **Qualifications, Including Experience Managing Complex Litigation and Knowledge of the Subject Matter**

Like the many fine firms seeking a leadership role in this Action, Movants have extensive experience in managing complex litigation.  Movants respectfully submit however, that their knowledge of the subject matter is unparalleled, for example, having written very recent articles on this specific subject matter, *supra*, and litigating recent class actions on the same claims.

Defendants indicated at the May 24, 2012 Initial Case Management Conference that they will file a motion to compel arbitration.  Movants have been at the forefront of arbitration issues in the consumer context for years, as set forth herein.[16]  Since the Defendants have announced this is one of their defenses front and center, this becomes an important part of the Action.

f.      **Counsel's Anticipated Litigation and Discovery Plan for the MDL**

Discovery should be conducted in phases and include the software code, software installation/update methods and timing, data flow, interface design, data use, data storage, data analytics, contractual arrangements regarding the software and data, and data lifecycle at issue. At least with respect to some mobile devices (*e.g.*, HTC Android phones), the software is installed and configured prior to the device being connected to the mobile network.  The first order of business will be researching these issues and drafting a consolidated amended complaint that includes only the proper parties, including certain additional defendants that Movants are

---

[16]     Here, too, counsel supporting Movants have extensive experience arguing against the enforceability of arbitration clauses.  For instance, Glancy Binkow successfully argued against enforceability of such clauses by a non-party to the retail sales contracts containing them in *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Products Liability Litig.*, 828 F.Supp.2d 1150 (C.D. Cal. 2011).

1    currently investigating. The participants in this leadership structure are particularly well-versed

2    since they have named the two manufacturers who had the Carrier IQ software placed in them

3    that were not named by other Plaintiffs' groups.[17]   Moreover, Proposed Interim Lead Class

4    Counsel's analysis of Carrier IQ software performed prior to the filing of any complaints will be

5    helpful in filing the consolidated amended complaint.  (*See* discussion *supra*, Sec. III(a).).  The

6    Civil Minutes dated May 24, 2012 for procedures requiring filing of the consolidated amended

7    complaint, protective orders and Rule 26 disclosures were proposed by Strange & Carpenter.

8         The first phase of discovery will likely center on the class members' arbitration clauses

9    (in their wireless communications service contracts) and their relationship with each of the

10   Defendant device manufacturers will be critical.[18]  Following a decision on the motion to compel

11   arbitration, Movants propose that the second phase of discovery include both class certification

12   and merits based discovery so as to maximize efficiencies.  Movants maintain that class and

13   merits discovery bifurcation is unnecessary.

14        After a firm understanding is gained of these issues, and appropriate class certification

15   discovery is completed, Movants would respectfully suggest that a schedule be set for class

16   certification briefing and argument, dispositive motions, and trial.

17        **g.    Counsel's Fee Structure and Anticipated Costs**

18        Movants respectfully submit that, as to the matter of an appropriate percentage-of-

19   common-fund award, in the event a class judgment is obtained, or a class settlement is approved,

20   the Ninth Circuit's well-developed common fund jurisprudence provides guidance and an

21   adjustable benchmark, within which the Court's discretion in awarding fees may be predictably

22   exercised. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1994) (citing *Paul,*

23   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  Movants have made no

24   promises of fee splitting, either amongst themselves or among the broader Plaintiffs' group.

25

26   [17]   Pantech and Huawei have only been named in suits filed by Movants.  Movants have also
     identified the following device manufacturers as having the Carrier IQ software installed, but
27   which have not been named in any federal lawsuits: Audiovox, Kyocera, Sanyo, Sony Mobile,
     PalmOne, ZTE, Franklin Wireless, Novatel, and Sierra Wireless.

28   [18]   A sample of such arbitration-related discovery is attached to Strange Decl. as Exhibit I.

1   Anticipated costs at this point are primarily expert costs and depositions.  These should not be

2   out of the ordinary in this case.

3       **h.      Guidelines to Control Fees and Costs**

4       Movants will implement a system of contemporaneous periodic time and expense

5   reporting requirements imposed on all counsel so that the costs, expenses, and time for attorneys'

6   services incurred in this Action so that the same may be monitored and supervised on an ongoing

7   basis.  Movants will further institute controls over work that may be the subject of application for

8   fees, including a requirement that all work for which such compensation will be sought be

9   authorized in advance.  Monthly reports of time to a centralized party for review by designated

10  counsel to eliminate any unauthorized or excessive time or costs would facilitate any fee request

11  at the end of the case.  Thus, at any given time, Movants would know how much time and effort

12  was and is being spent by each firm.  Attached as Exhibit H to Strange Decl. are General

13  Guidelines for Fee and Expense Allocation, which can be implemented to ensure compliance at

14  the outset with billing policies.  Use of paralegals, when appropriate, and of predictive coding of

15  e-discovery can also save time.

16      **i.      Counsel's Plan for Allocating Work Among the Leadership Team and With
                  Other Counsel**

17

18      Proposed Interim Lead Class Counsel would be responsible for allocating work for the

    common benefit of the class, to the Executive Committee and also to other counsel in the case

19
    who are not on the Executive Committee.  Any firm assigned specific assignments by Proposed

20
    Interim Lead Class Counsel would have to accept and agree to the General Guidelines for Fee

21
    and Expense Allocation (Ex. H, Strange Decl.)  By way of example, it is Movants' experience

22
    that allocating discovery regarding a specific defendant to a specific plaintiff's firm or group of

23
    firms is helpful and will avoid duplicative effort.  Likewise, briefing on certain motions can be

24
    delegated amongst a subset of firms to ensure efficient generation of work product.  Weekly

25
    telephone conferences to discuss work allocation are helpful.

26      **j.      Counsel's Views of Size and a Specific Role of the Executive Committee**

27      Movants respectfully submit that given the large scope of this litigation, and the extensive

28  work required at each phase, an Executive Committee of three firms whose members can more

closely oversee discrete pieces of the litigation and work by non-committee firms will greatly enhance the ability of Proposed Interim Lead Class Counsel to advance this Action expeditiously to resolution.

Executive Committee Members will play an active role in the leadership of the case and assist in overseeing work on discrete pieces of this litigation. For example, Executive Committee Members can oversee: (1) work by firms concentrating on the technological workings of the Carrier IQ software; and (2) work by firms tasked with device manufacturer-specific investigation and discovery. Utilizing a three-person Executive Committee in this way, given the number of named and potential Defendants, would add much-needed accountability and attention, while freeing Proposed Interim Lead Class Counsel to focus on overall leadership of the case. Utilizing a three-person Executive Committee in this way, given the number of named and potential Defendants, would be extremely helpful so that Proposed Interim Lead Class Counsel can focus on overall leadership of the case.

Proposed Interim Lead Class Counsel can minimize any duplication of fees and costs resulting from this additional level of governance by a regular monthly review of fees and costs, as set forth above, and by a weekly teleconference with the Executive Committee firms to review their work and the work by any other firms that they are overseeing. This approach ensures that more Plaintiffs' lawyers are involved in the case, but that it is handled in an efficient management style, as if handled by one firm. The benefits include utilizing a larger group of talented lawyers who bring significant resources and different perspectives to solving the case.

## IV.    **CONCLUSION**

Movants respectfully request this Court grant the appointment of the firms in this application, or in the alternative, Movants will work cooperatively with any firm the Court chooses to appoint and will work efficiently within any structure the Court decides to create. Movants would be happy to respond to any additional questions posed by the Court.

DATED: June 8, 2012                                  Respectfully submitted,

                                                     /s/ Brian R. Strange
                                                     STRANGE & CARPENTER

1    Brian R. Strange
     lacounsel@earthlink.net
2    STRANGE & CARPENTER
     12100 Wilshire Boulevard, Suite 1900
3    Los Angeles, California 90025
     Tel:  (310) 207-5055; F: (310) 826-3210
4    *Proposed Interim Lead Class Counsel*

5

6    Robert Rothman
     rrothman@rgrdlaw.com
7    Mark J. Dearman
     mdearman@rgrdlaw.com
8    ROBBINS GELLER RUDMAN &
     DOWD LLP
9    655 West Broadway, Suite 1900
     San Diego, California 92101
10   T:  (619) 231-1058; F:  (619) 231-7423
     *Proposed Interim Lead Class Counsel*
11

12   *Proposed Executive Committee:*

13   Warren T. Burns
     wburns@susmangodfrey.com
14   SUSMAN GODFREY LLP
     901 Main Street, Suite 5100
15   Dallas, Texas 75202
     T:  (214) 754-1928; F:  (214) 754-1933
16   *Proposed Chair*

17

18   Matthew L. Tuccillo
     mltuccillo@pomlaw.com
19   POMERANTZ HAUDEK GROSSMAN
     & GROSS LLP
20   100 Park Avenue, 26th Floor
     New York, New York 10017
21   Tel:  (212) 661-1100; F: (212) 661-8665
     *Proposed Member*
22

23   Peter J. McNulty (Cal. Bar. No. 89660)
     peter@mcnultylaw.com
24   McNULTY LAW FIRM
     827 Moraga Drive
25   Los Angeles, California 90049
     T:  (310) 471-2707
26   *Proposed Member*

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ira P. Rothken (Cal. Bar. No. 160029)
ndca@techfirm.com
ROTHKEN LAW FIRM, LLP
3 Hamilton Landing, Suite 280
Novato, California 94949
T:  (415) 924-4250; F:  (415) 924-2905
*Proposed Liaison Counsel*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that this document is being filed through the ECF system and will be sent

3   electronically to the registered participants as identified on the Electronic Mail Notice List, and

4   paper copies will be sent to those indicated as non-registered participants.

5   Dated: June 8, 2012                                    Respectfully submitted,

6

7                                                          /s/ Brian R. Strange
                                                           STRANGE & CARPENTER
8
                                                           Brian R. Strange
9                                                          lacounsel@earthlink.net
                                                           STRANGE & CARPENTER
10                                                         12100 Wilshire Boulevard, Suite 1900
                                                           Los Angeles, California 90025
11                                                         Tel:  (310) 207-5055; F: (310) 826-3210
                                                           *Proposed Interim Lead Class Counsel*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00038269