United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE

CARRIER IQ, INC.,
CONSUMER PRIVACY LITIGATION.

_____/

No. C-12-md-2330 EMC

**ORDER RE JOINT LETTER OF MARCH 21, 2013**

**(Docket No. 155)**

The parties have submitted a joint letter, dated March 21, 2013, regarding a discovery dispute. In essence, the dispute is what, if any, arbitration-related discovery is permissible. Having considered the joint letter and its attachments, the Court hereby orders the parties to further meet and confer as both parties have taken, at least in part, untenable positions.

The meet and confer must be in person. A telephonic meet and confer or a written meet and confer is not sufficient. Counsel with full and complete authority on discovery matters (*i.e.*, counsel need not check in with lead counsel or other attorneys) must participate. After the meet and confer, the parties' shall file a joint letter (**no later than April 11, 2013**) reporting back on the results of the meet and confer. Where there are any disputes remaining, the parties shall identify what the dispute is and provide their respective positions on the dispute. In providing its position, each party shall state what its last offer of compromise was. The parties are forewarned that sanctions may be imposed on any party that takes a position that is not substantially justified.

To assist the parties' in their meet and confer, the Court provides the following guidance.

///

A.  Motorola

Any arbitration-related discovery as to Motorola is premature as it has not yet moved to compel arbitration.

B.  Unconscionability

The Court rejects Defendants' assertion that unconscionability may always be determined based on the face of an arbitration agreement alone. *See* Joint Letter at 7-8 (suggesting that "an unconscionability determination may be made without any further arbitration-related discovery where 'the only relevant document -- the agreement between the plaintiff and [a wireless carrier] -- was readily available to the court'"). As a general matter, evidence related to the rules used in arbitration, the costs of arbitration, and the outcomes of arbitration is relevant to the issue of unconscionability. *See, e.g.*, *Newton v. Clearwire Corp.*, No. 2:11-CV-00783-WBS-DAD, 2011 WL 4458971, at *7 (E.D. Cal. Sept. 23, 2011) (allowing interrogatories with respect to the number of instances and outcomes in which, *e.g.*, defendant initiated arbitration or a current or former customer of defendant initiated arbitration); *O'Brien v. American Express Co.*, No. 11-CV-1822-BTM (BGS), 2012 WL 1609957, at *5-6 (S.D. Cal. May 8, 2012) (noting that "the procedures, rules and costs of arbitrators, and [defendant's] relationships with the arbitrators are relevant to substantive unconscionability," *i.e.*, "whether the arbitration agreement at issue is one-sided"; also allowing discovery on the outcomes of arbitration). The Court acknowledges *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994 (N.D. Cal. 2011), where Judge Breyer denied similar discovery, but that decision may have been informed by the fact that the plaintiff was making solely document requests. As discussed below, document requests may not be the most efficient way of obtaining the relevant discovery.

While the Court has some agreement with Plaintiffs' position, as identified above, it also has some agreement with Defendants' position, in particular, that some of the discovery requested by Plaintiffs is overbroad. For example, it does not appear that Plaintiffs have put any time constraints on their discovery requests. Furthermore, for some of the requests, Plaintiffs have not tailored the discovery to information regarding the rules, cost, and outcomes of arbitration. For instance, in HTC RFP No. 5, Plaintiffs broadly ask for "ALL DOCUMENTS RELATING to ANY arbitration

proceedings between YOU and ANY PERSON regarding CARRIER IQ SOFTWARE." The broader a request, the greater the undue burden.

Finally, the Court questions whether the general discovery approach Plaintiffs have adopted is the most efficient. While the Court does not wish to prolong arbitration-related discovery, it may make sense for Plaintiffs to first pose interrogatories regarding the rules, costs, and outcomes of arbitration and then use the information gleaned therefrom to serve more targeted document requests. *Cf. Newton*, 2011 WL 4458971, at *7 (where plaintiff asked for all documents "'that relate to the policies and procedures [defendant] has implemented regarding any arbitration provision found in any alleged Terms of Service,'" concluding that the document request was "overly broad" and "unduly burdensome" and therefore denying the request "at this time"). Alternatively, and more effectively, the parties could and should meet and confer to agree on a more focused approach.

C.      Scope

Plaintiffs contend that they need not only unconscionability discovery but also scope discovery -- *i.e.*, discovery targeted to determine the claims brought by Plaintiffs fall within the scope of the carrier arbitration provisions. Plaintiffs' theory seems to be that, if a transmission takes place by a means other than over the carrier networks -- *e.g.*, over Wi-Fi instead -- then a challenge to such a transmission cannot fall within the scope of the carrier arbitration provisions. In response, Defendants argue that, to determine whether a claim falls within the scope of an arbitration provision, all that the Court has to do is look at the arbitration agreement and the claim as pled in Plaintiffs' complaint -- *i.e.*, no discovery at all is necessary. *See* Joint Letter at 7.

Given Plaintiffs' theory, the Court does not agree with Defendants that all discovery is off limits. However, much of the discovery identified by Plaintiffs does not appear to be targeted to the issue of how data is sent over Plaintiffs' mobile devices, particularly with respect to data captured by the Carrier IQ software. For example, Plaintiffs have not explained why "the type of data contemplated or requested by carriers" is relevant to the *means* of transmission; nor have they explained why the kind of data and to whom it was sent is relevant. Joint Letter at 5. To the extent Plaintiffs seek information about the functionality of the Carrier IQ software, *see, e.g.*, HTC RFP No. 12 (asking for "ALL DOCUMENTS . . . provided to you by CARRIER IQ, INC., RELATING

to the functions, operations . . . , and capabilities of (a) CARRIER IQ SOFTWARE and (b) ALL related software or code such as porting code or porting layers, whether written by YOU or anyone else"), functionality is relevant to the matter at hand only to the extent it is informative of the means of transmission.

      This order disposes of Docket No. 155.

      IT IS SO ORDERED.

Dated: April 1, 2013

_____
EDWARD M. CHEN
United States District Judge