# ATTACHMENT B

1   RODGER R. COLE (CSB No. 178865)
    rcole@fenwick.com
2   MOLLY R. MELCHER
    (CSB No. 272950)
3   mmelcher@fenwick.com
    FENWICK & WEST LLP
4   Silicon Valley Center
    801 California Street
5   Mountain View, CA  94041
    Telephone:  650.988.8500
6   Facsimile:  650.938.5200

7   TYLER G. NEWBY (CSB No. 205790)
    tnewby@fenwick.com
8   JENNIFER J. JOHNSON
    (CSB No. 252897)
9   jjjohnson@fenwick.com
    FENWICK & WEST LLP
10  555 California Street, 12th Floor
    San Francisco, CA 94104
11  Telephone:  415.875.2300
    Facsimile:  415.281.1350

12

13  *Attorneys for Defendant*
    *Carrier IQ, Inc.*

14

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17               SAN FRANCISCO DIVISION

18

19  *In re Carrier IQ, Inc. Consumer Privacy*        Case No.:  3:12-md-2330-EMC
    *Litigation*
20                                                   **DEFENDANT CARRIER IQ, INC.'S**
    *[This Document Relates to All Cases]*           **OBJECTIONS AND RESPONSES TO**
21                                                   **PLAINTIFFS' FIRST SET OF**
                                                     **INTERROGATORIES REGARDING**
22                                                   **UNCONSCIONABILITY AND SCOPE**
                                                     **ISSUES**
23

24  **PROPOUNDING PARTY:**          **PLAINTIFFS**

25  **RESPONDING PARTY:**           **DEFENDANT CARRIER IQ, INC.**

26  **SET NO.:**                    **ONE (NOS. 1 -13)**

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Carrier IQ, Inc. ("Carrier IQ") hereby timely objects and responds to each of Plaintiffs' First Set of Interrogatories Regarding Unconscionability and Scope Issues (collectively, the "Interrogatories"), dated April 22, 2013, as follows:

## GENERAL OBJECTIONS

Carrier IQ makes the following General Objections to each of Plaintiffs' Interrogatories:

1.      Carrier IQ has not yet completed its investigation of the facts relating to this case and has only just begun formal discovery in this matter.  Any and all responses to the following Interrogatories are therefore based solely on information presently known to Carrier IQ. Accordingly, Carrier IQ reserves its right to change any of its responses to the Interrogatories if new information is discovered.  Carrier IQ also reserves its right to conduct further discovery and investigation and to use at trial or any other proceeding evidence of any subsequently discovered facts, documents, or information.

2.      Carrier IQ objects to the Interrogatories and their accompanying Definitions ("Definitions") to the extent that they are vague, ambiguous, unintelligible, fail to describe the information sought with the required reasonable particularity, are so unintelligible that Carrier IQ cannot respond or must speculate as to the information Plaintiffs seek or seek to impose obligations that exceed those imposed by the Federal Rules of Civil Procedure, local rules of this Court, or applicable case law.  Unless instructed otherwise, Carrier IQ shall give the terms of these Interrogatories their ordinary and plain meanings.  Carrier IQ shall not be held responsible where its interpretation of these Interrogatories does not comport with Plaintiffs' intentions.

3.      Carrier IQ objects to the Interrogatories and their accompanying Definitions to the extent they are overly broad, unduly burdensome, oppressive, improper, and unreasonable in scope, including by seeking information beyond the scope of appropriate arbitration-related discovery permitted by the Federal Arbitration Act and as ordered by this Court in its Civil Minutes, dated May 24, 2012, (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated April 1, 2013, (Dkt. No. 157).

4.      Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

Fenwick & West LLP
Attorneys at Law
Mountain View

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  extent that they seek information that is confidential and/or proprietary, or information that is

2  subject to any protective order, privacy interest, contractual obligation or confidentiality

3  obligation, or otherwise prohibited from disclosure by law.  Such information shall be produced

4  only subject to the terms of the protective order entered in this action.

5      5.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

6  extent they seek information that is irrelevant, immaterial, and/or not directly related to a claim or

7  defense of any party in the above-entitled action, nor reasonably calculated to lead to the

8  discovery of admissible evidence.

9      6.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

10  extent they seek electronically-stored information that is not reasonably accessible by Carrier IQ

11  because of undue burden or cost, or otherwise.

12      7.    Carrier IQ objects to the Interrogatories and their accompanying Definitions as

13  unduly burdensome to the extent the burden or expense of the discovery sought outweighs any

14  likely benefit.

15      8.    Carrier IQ objects to the Interrogatories and their accompanying Definitions as

16  unduly burdensome to the extent they seek discovery that is unreasonably cumulative or

17  duplicative.

18      9.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

19  extent they seek information already in Plaintiffs' possession, custody or control, publicly

20  available or otherwise obtainable from some other source that is more convenient, less

21  burdensome, or less expensive.

22      10.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

23  extent they seek information outside of Carrier IQ's possession, custody or control or which

24  cannot be found in the course of a reasonable search.  Carrier IQ reserves the right to conduct

25  further investigation and discovery as to any issue raised or suggested by any discovery

26  Interrogatory and to rely on any subsequently discovered information or documents at trial or any

27  other proceeding.

28      11.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

1   extent that they call for a legal conclusion or interpretation.  Carrier IQ's responses pursuant to

2   these Interrogatories shall not be construed as agreement with or admission of any legal

3   conclusion concerning the meaning or application of any terms used in such Interrogatories.

4       12.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

5   extent that they are compound, conjunctive or disjunctive statements, or otherwise unintelligible.

6       13.    Carrier IQ objects to the Interrogatories and their accompanying Definitions to the

7   extent they seek information protected by the attorney-client privilege, attorney work-product

8   doctrine, joint defense privilege, common interest exception, or any other applicable privilege,

9   immunity, doctrine or protection.  Nothing in these objections and responses is intended to be or

10  is a waiver of any attorney-client privilege, attorney work product immunity, or any other

11  applicable privilege, immunity, doctrine or protection.

12      14.    No incidental or implied admissions are intended by any objection or response by

13  Carrier IQ to any Interrogatory.  That Carrier IQ has objected or responded to any Interrogatory is

14  not an admission that Carrier IQ accepts or admits the existence of any alleged facts set forth in or

15  assumed by such Interrogatory, or that any objection or response thereto constitutes admissible

16  evidence.

17      15.    Carrier IQ reserves the right to modify or supplement these objections and

18  responses to the extent allowed by the Federal Rules of Civil Procedure, local rules of this Court,

19  or any other applicable law.

20      16.    Carrier IQ hereby incorporates by reference each and every General Objection set

21  forth above into each and every specific response set forth below, whether or not separately set

22  forth therein.  A specific response may repeat a General Objection for emphasis or for some other

23  reason.  Failure to include any General Objection in any specific response is not a waiver of any

24  General Objection to that response.

25      17.    The fact that Carrier IQ has responded to part or all of an Interrogatory is not

26  intended to and shall not be construed as a waiver by Carrier IQ of any objection to such

27  Interrogatory.

28      18.    Carrier IQ makes these objections and responses subject to the reservation of all

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   rights to object to the introduction into evidence, in this or any other action, any information

2   provided upon grounds of competence, relevance, materiality, propriety, hearsay and/or

3   admissibility, or other applicable ground.

4          19.    Carrier IQ objects to the definition of "YOU," and "YOUR" as vague, ambiguous,

5   uncertain, overbroad, unduly burdensome and oppressive, and calling for information that is

6   neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of

7   admissible evidence and/or calling for information that is not within Carrier IQ's possession,

8   custody, or control.

9          20.    Carrier IQ objects to the definition of "CARRIER IQ SOFTWARE" as vague,

10  ambiguous, uncertain, overbroad, unduly burdensome and oppressive.

11         21.    Carrier IQ objects to the definition of "CELLULAR PROVIDER" and

12  "CELLULAR PROVIDERS" as vague, ambiguous, uncertain, overbroad, unduly burdensome

13  and oppressive.

14         22.    Carrier IQ objects to the definition of "COMMUNICATION" as vague,

15  ambiguous, uncertain, overbroad, unduly burdensome and oppressive, and calling information

16  that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the

17  discovery of admissible evidence and/or calling for information that is not within Carrier IQ's

18  possession, custody, or control.

19         23.    Carrier IQ objects to the definition of "MATERIALLY" as vague, ambiguous,

20  uncertain, overbroad, unduly burdensome and oppressive.

21         24.    Carrier IQ objects to the definition of "RELEVANT LAWS" as vague, ambiguous,

22  uncertain, overbroad, unduly burdensome and oppressive.

23         25.    Carrier IQ objects to each Interrogatory to the extent that it contains subparts

24  and/or compound questions.

25         26.    Carrier IQ objects to each and every Interrogatory insofar as they incorporate by

26  reference Definitions that render each Interrogatory vague, ambiguous, unduly broad, uncertain,

27  unintelligible, compound, conjunctive, disjunctive and/or as having improper subparts.

28         Subject to and without waiving the foregoing General Objections, Carrier IQ provides its

CARRIER IQ'S OBJS. AND RESPS. TO PLS'          4          CASE NO.:  3:12-md-2330-EMC
FIRST SET OF ROGS

and his, her, or their mobile device(s); please describe ALL such transmissions, including ALL types of information or data transmitted; and please identify ALL recipients of ALL such information or data transmitted.

**RESPONSE TO INTERROGATORY REQUEST NO. 8:**

Carrier IQ incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Carrier IQ further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related discovery.  Carrier IQ objects to this Interrogatory as overbroad and unduly burdensome in that it seeks identification of "ALL" transmissions, types of information or data transmitted, and recipients.  Carrier IQ objects to the definitions of "CARRIER IQ SOFTWARE," "CELLULAR PROVIDER," and "YOUR" for the reasons set forth in ¶¶ 19-21.  Carrier IQ further objects to the terms and phrases "transmit or cause the transmission of," "transmissions," "transmitted," "user," "information," "data," "disconnected," "network," "direct connection," "plaintiff(s)," "Internet-capable," "affected," and "recipients" as vague, ambiguous, and undefined.  For the purpose of responding to this Interrogatory, Carrier IQ interprets the phrase "transmit or cause the transmission of" to mean Carrier IQ software sending data from a mobile device on which it is installed to a location external to that mobile device.  Carrier IQ further objects to this Interrogatory to the extent it seeks information not in its possession, custody, control or knowledge.  Carrier IQ further objects to this Interrogatory to the extent that it contains subparts and compound questions.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER:**

Subject to and without waiving the foregoing general and specific objections, Carrier IQ responds as follows:  Carrier IQ lacks knowledge of the means by which IQ Agent software embedded on Plaintiffs' mobile devices, if any, transmitted data collected by the IQ Agent to Plaintiffs' wireless carriers or to servers hosted by Carrier IQ for Plaintiffs' wireless carriers.  However, Carrier IQ understands that the IQ Agent software installed on devices for use on Sprint's network ████████████████████████████████████████████████████

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1 ███████████████████████████████████████████████████

2 ██████████████████████████████████████████

3 ████ According to the Declaration of Stephanie Miller (Dkt. # 135), the mobile devices used

4 by individual plaintiffs Leron Levy, Dao Phong, Clarissa Portales, Ryan McKeen, Shawn

5 Grisham, Bobby Cline, Michael Allen, Matthew Hiles, Eric Thomas, Colleen Fischer, Brian

6 Sandstrom, Luke Szulczewski, and Patrick Kenny (together, the "Sprint Plaintiffs") operated on

7 Sprint's network.  For the reasons stated above, to the extent the Carrier IQ IQ Agent software on

8 the Sprint Plaintiffs' devices transmitted data collected by the IQ Agent off of the Sprint

9 Plaintiffs' devices, it is Carrier IQ's understanding that the transmission was on Sprint's cellular

10 network.

11 According to the Declaration of Chenell Cummings in Support of Defendants' Motion to

12 Compel Arbitration (Dkt. # 132) and the Declaration of Stacie Dobbs in Support of Defendants'

13 Motion to Compel Arbitration (Dkt. # 130), plaintiff Mark Laning is an authorized user of a

14 Pantech Link II P5000 device on the AT&T wireless account of Diane Laning.  The Pantech

15 P5000 device is not Wi-Fi capable.  To the extent any data collected by the Carrier IQ IQ Agent

16 software on Laning's Pantech P5000 device was sent to Carrier IQ or AT&T, it would have been

17 transmitted on AT&T's cellular network.

18 According to the Declaration of Chenell Cummings in Support of Defendants' Motion to

19 Compel Arbitration (Dkt. # 132), plaintiffs Gary Cribbs and Daniel Pipkin were users of Samsung

20 Galaxy S II Skyrocket SGH-i727 mobile devices on AT&T's wireless network.  Analytics

21 collected by the IQ Agent on AT&T network devices are transmitted to a data center operated by

22 AT&T, and are not in the possession, custody or control of Carrier IQ.  However, Carrier IQ

23 understands that the IQ Agent software embedded on Galaxy S II Skyrocket Devices at the time

24 of manufacture was never activated, and therefore did not transmit analytics data from the

25 devices.  Carrier IQ understands that AT&T did not task profiles to activate the IQ Agent

26 software on the devices assigned to the Samsung Galaxy S II mobile devices associated with

27 Cribbs' and Pipkin's accounts.  Carrier IQ further understands from AT&T that AT&T has

28 received data from the AT&T "Mark the Spot" application installed on a mobile device assigned

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  a mobile SIM number associated with Cribbs' account.  AT&T's Mark the Spot application is an

2  opt-in application that users may install and use on their devices to report service problems to

3  AT&T.  For AT&T to receive reports of service problems from the Mark the Spot application, a

4  user must voluntarily open the application and submit a report to AT&T.  Mark the Spot uses the

5  Carrier IQ OTA Agent, a reduced functionality version of Carrier IQ's IQ Agent software.

6  Carrier IQ lacks knowledge of the means by which AT&T Mark the Spot application transmitted

7  data to AT&T.

8          According to the Declaration of Rick Baughman in Support of Defendants' Motion to

9  Compel Arbitration (Dkt. # 134), plaintiff Douglas White has been a user of a Huawei Ascend II

10  m865 mobile phone on Cricket Communications, Inc.'s wireless network since October 2011.

11  Carrier IQ lacks knowledge of the means by which IQ Agent software embedded on White's

12  mobile device transmitted data collected by the IQ Agent to servers hosted by Carrier IQ for

13  Cricket.

14  **INTERROGATORY REQUEST NO. 9:**

15          Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the

16  plaintiffs' mobile devices transmit or cause the transmission of user information or data over the

17  network of the CELLULAR PROVIDER whose arbitration provision(s) YOU seek to invoke

18  against ANY plaintiff in this LITIGATION when such mobile device(s) was or is no longer in

19  contract with such CELLULAR PROVIDER?  If YOUR answer is yes, please identify the

20  plaintiff(s) affected and his, her, or their mobile device(s); please describe ALL such

21  transmissions, including ALL types of information or data transmitted; and please identify ALL

22  recipients of ALL such information or data transmitted.

23  **RESPONSE TO INTERROGATORY REQUEST NO. 9:**

24          Carrier IQ incorporates by reference each of the General Objections set forth above as if

25  fully set forth herein.  Carrier IQ further objects to this Interrogatory as overbroad and unduly

26  burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to

27  the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related

28  discovery.  Carrier IQ objects to this Interrogatory as overbroad and unduly burdensome in that it

1   seeks identification of "ALL" transmissions, types of information or data transmitted, and

2   recipients.  Carrier IQ objects to the definitions of "CARRIER IQ SOFTWARE," "CELLULAR

3   PROVIDER," and "YOUR" for the reasons set forth in ¶¶ 19-21.  Carrier IQ further objects to the

4   terms and phrases "transmit or cause the transmission of," "transmissions," "transmitted," "user,"

5   "information," "data," "network," "no longer in contract," "plaintiff(s)," "affected," and

6   "recipients" as vague, ambiguous, and undefined.  For the purpose of responding to this

7   Interrogatory, Carrier IQ interprets the phrase "transmit or cause the transmission of" to mean

8   Carrier IQ software sending data from a mobile device on which it is installed to a location

9   external to that mobile device.  Based on Carrier IQ's meet and confer with Plaintiffs on this

10  topic, Carrier IQ understands this Interrogatory to inquire whether any Carrier IQ software

11  installed on a Plaintiff's mobile device transmitted data over a Plaintiff's wireless service

12  provider's cellular network after the Plaintiff discontinued service with that wireless service

13  provider.  Carrier IQ further objects to this Interrogatory to the extent it seeks information not in

14  its possession, custody, control or knowledge.  Carrier IQ further objects to this Interrogatory to

15  the extent that it contains subparts and compound questions.

16  **CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER:**

17          Subject to and without waiving the foregoing general and specific objections, Carrier IQ

18  responds as follows:  Carrier IQ lacks actual knowledge as to whether a Plaintiff has terminated

19  its service with its wireless carrier.  However, Carrier IQ understands from the Declaration of

20  Chenell Cummings in Support of Defendants' Motion to Compel Arbitration (Dkt. # 132), the

21  Declaration of Stacie Dobbs in Support of Defendants' Motion to Compel Arbitration (Dkt.

22  # 130), the Declaration of Rick Baughman in Support of Defendants' Motion to Compel

23  Arbitration (Dkt. # 134), and the Declaration of Stephanie Miller (Dkt. # 135), that plaintiffs other

24  than Plaintiffs Michael Allan and Matthew Hiles have not discontinued service with their

25  respective wireless service providers on the devices identified in those declarations.  Based on

26  these declarations, Carrier IQ understands and believes Plaintiffs' respective wireless carriers

27  have not received data transmissions from any Carrier IQ software installed on their phones after

28  the termination of those Plaintiffs service agreements with their carriers.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    With respect to Plaintiffs Allan and Hiles, Carrier IQ understands from the Declaration of

2    Stephanie Miller that Plaintiff Allan's Sprint service was terminated for non-payment on August

3    2, 2012 and Plaintiff Hiles' Sprint service was terminated for non-payment on May 7, 2012.  On

4    December 10, 2011, many months before these Plaintiffs' service was terminated, ███████████

5    ████████████████████████████████████████████████ disabled the ability of

6    the Carrier IQ software to transfer diagnostic data from the devices to Sprint.

7    **INTERROGATORY REQUEST NO. 10:**

8    Was the Carrier IQ product known as IQ Experience Insight Manager installed at ANY

9    time on ANY of the plaintiffs' mobile devices at issue in this LITIGATION? If so, please identify

10   the plaintiff(s) affected and his, her, or their mobile device(s).

11   **RESPONSE TO INTERROGATORY REQUEST NO. 10:**

12   Carrier IQ incorporates by reference each of the General Objections set forth above as if

13   fully set forth herein.  Carrier IQ objects to this Interrogatory as overbroad and unduly

14   burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to

15   the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related

16   discovery.  Carrier IQ further objects to this Interrogatory to the extent it seeks information

17   already in Plaintiffs' possession, custody or control, publicly available or otherwise obtainable

18   from some other source that is more convenient, less burdensome, or less expensive.  Carrier IQ

19   further objects to this Interrogatory to the extent that it contains subparts and compound

20   questions.

21   Subject to and without waiving the foregoing general and specific objections, Carrier IQ

22   responds as follows:  No.  The IQ Experience Insight Manager was not installed on mobile

23   devices, and none of plaintiffs' device manufacturers or wireless service providers – AT&T,

24   Cricket, and Sprint – have used IQ Experience Insight Manager.

25   **INTERROGATORY REQUEST NO. 11:**

26   Did or does CARRIER IQ SOFTWARE installed at ANY time on ANY of the plaintiffs'

27   mobile devices ever see, access, process, filter, store, or transmit from the mobile device: ANY

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

SMS text messages, whether sent by or to the plaintiff or other user of the device; ANY URLs containing HTTP or HTTPS strings embedded with information such as search terms, user names, passwords, and geo- or GPS-based location data; media viewing history; telephone numbers dialed and attached to calls received; dialer keypad presses; or application purchases and uses? If YOUR answer to ANY of the foregoing is yes, please identify the plaintiff(s) affected and his, her, or their mobile device(s); please specify the information or data involved; and please identify the recipient of ANY such information or data transmitted.

**RESPONSE TO INTERROGATORY REQUEST NO. 11:**

Carrier IQ incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Carrier IQ objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related discovery.  *See* Judge Chen's Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) ("To the extent Plaintiffs seek information about the functionality of the Carrier IQ software . . . functionality is relevant to the matter at hand only to the extent it is informative of the means of transmission.").  Carrier IQ further objects to the definition of "CARRIER IQ SOFTWARE," and "YOUR" for the reasons set forth in ¶¶ 19-20.  Carrier IQ further objects to the terms and phrases "installed," "see," "access," "filter," "store," "transmit," "plaintiff," "other user," "HTTP or HTTPS strings embedded with information," "media viewing history," "telephone numbers dialed and attached to calls received," "dialer keypad presses," "application purchases and uses," "affected," "information," "data," and "recipient" as vague, ambiguous, and undefined.  Carrier IQ further objects to this Interrogatory to the extent it seeks information not in its possession, custody, control or knowledge.  Carrier IQ further objects to this Interrogatory to the extent that it contains subparts and compound questions.

**INTERROGATORY REQUEST NO. 12:**

For ANY information or data identified in your answer to Interrogatory No. 11 that is seen, accessed, processed, filtered, stored, or transmitted by the CARRIER IQ SOFTWARE, please identify with specificity ANY term(s) or provision(s) of the CELLULAR PROVIDER

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   terms and conditions of service or other agreement(s) whose arbitration provisions YOU invoke

2   as to ANY plaintiff that YOU contend permits or addresses the seeing, accessing, processing,

3   filtering, storage, or transmission thereof.

4   **RESPONSE TO INTERROGATORY REQUEST NO. 12:**

5        Carrier IQ incorporates by reference each of the General Objections set forth above as if

6   fully set forth herein.  Carrier IQ objects to this Interrogatory as overbroad and unduly

7   burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to

8   the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related

9   discovery.  *See* Judge Chen's Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. #

10  157) ("To the extent Plaintiffs seek information about the functionality of the Carrier IQ software

11  . . . functionality is relevant to the matter at hand only to the extent it is informative of the means

12  of transmission.").  Carrier IQ further objects to the definition of "CARRIER IQ SOFTWARE,"

13  "CELLULAR PROVIDER," and "YOU" for the reasons set forth in ¶¶ 19-21.  Carrier IQ further

14  objects to the terms and phrases "information," "data," "seen," "accessed," "processed,"

15  "filtered," "stored," "transmitted," "plaintiff," "permits," "addresses," "seeing," "accessing,"

16  "processing," "filtering," "storage," and "transmission" as vague, ambiguous, and undefined.

17  Carrier IQ further objects to this Interrogatory to the extent it seeks information not in its

18  possession, custody, control or knowledge.  Carrier IQ further objects to this Interrogatory to the

19  extent that it contains subparts and compound questions.

20  **INTERROGATORY REQUEST NO. 13:**

21       Has the CARRIER IQ SOFTWARE been removed from, or disabled on, ANY mobile

22  device belonging to ANY plaintiff by YOU or ANY CELLULAR PROVIDER? If so, please

23  identify the plaintiff(s) affected and his, her, or their mobile device(s), and please describe the

24  contents of ALL COMMUNICATIONS explaining the reasons for, or demanding, that the

25  CARRIER IQ SOFTWARE be removed or disabled, including ANY such COMMUNICATIONS

26  advising or explaining that the CARRIER IQ SOFTWARE was not operating as contemplated,

27  specified, or agreed-to by ANY of the plaintiff(s)' CELLULAR PROVIDERS or YOU, or as

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    purportedly contemplated by ANY of the plaintiff(S)' terms and conditions of service, or other

2    agreements, with ANY such CELLULAR PROVIDER.

3    **RESPONSE TO INTERROGATORY REQUEST NO. 13:**

4           Carrier IQ incorporates by reference each of the General Objections set forth above as if

5    fully set forth herein. Carrier IQ objects to this Interrogatory to the extent that it contains

6    subparts and compound questions. Carrier IQ further objects to this Interrogatory as overbroad

7    and unduly burdensome in that it seeks information that is irrelevant, immaterial, or not

8    calculated to lead to the discovery of admissible evidence and is beyond the scope of appropriate

9    arbitration-related discovery. *See* Judge Chen's Order re Joint Letter of March 21, 2013, dated

10   April 1, 2013 (Dkt. # 157) ("To the extent Plaintiffs seek information about the functionality of

11   the Carrier IQ software . . . functionality is relevant to the matter at hand only to the extent it is

12   informative of the means of transmission."). Carrier IQ objects to this Interrogatory to the extent

13   that it seeks disclosure of information that is privileged, confidential and/or proprietary, or

14   information that is subject to any joint defense privilege, common interest exception, or any other

15   applicable privilege, immunity, doctrine or protection. Carrier IQ further objects to the definition

16   of "CARRIER IQ SOFTWARE," "COMMUNICATIONS," "CELLULAR PROVIDER," and

17   "YOU" for the reasons set forth in ¶¶ 19-22. Carrier IQ further objects to the terms and phrases

18   "removed," "disabled," "plaintiff," "affected," "contents," and "not operating as contemplated,

19   specified, or agreed-to" as vague, ambiguous, and undefined. Carrier IQ further objects to this

20   Interrogatory to the extent it seeks information not in its possession, custody, control or

21   knowledge.

22   Dated: May 28, 2013                          FENWICK & WEST LLP

23

24                                               By: Tyler G. Newby /mm

25                                                   Tyler G. Newby

26                                               Attorneys for Defendant CARRIER IQ, INC.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Simon J. Frankel (Bar No. 171552)
Mali B. Friedman (State Bar No. 247514)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California  94111
Telephone:     (415) 591-6000
Facsimile:     (415) 591-6091
Email: sfrankel@cov.com

Attorneys for Defendant
HUAWEI DEVICES USA, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CARRIER IQ, INC., CONSUMER PRIVACY LITIGATION | Civil Case No.: 12-MD-2330-EMC **DEFENDANT HUAWEI DEVICES USA, INC.'S RESPONSES TO PLAINTIFF'S INTERROGATORIES REGARDING UNCONSCIONABILITY AND SCOPE ISSUES** |

**REQUESTING PARTY:**     **PLAINTIFFS**

**RESPONDING PARTY:**     **Defendant HUAWEI DEVICES USA, INC.**

**SET NO.:**     **ONE**

DEFENDANT HUAWEI DEVICES USA, INC.'S RESPONSES
TO PLAINTIFF'S INTERROGATORIES REGARDING
UNCONSCIONABILITY AND SCOPE ISSUES

Civil Case No.: 12-MD-2330-EMC

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Huawei Devices USA, Inc. ("Huawei") hereby responds and objects as follows to Plaintiff's First Set of Interrogatories Related to Unconscionability and Scope Issues ("Interrogatories"), dated April 22, 2013.

## GENERAL OBJECTIONS

1.      The following responses are based only upon facts known to Huawei at this time. During the course of discovery, Huawei's may become aware of supplemental, additional, or other responsive information.  Huawei expressly reserves the right to update, amend, or supplement its responses to these Interrogatories, but assumes no obligation to do so beyond those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of the U.S. District Court for the Northern District of California ("Local Rules").  In addition, these objections are made without prejudice to Huawei's right to present further additional or other evidence or contentions in a motion for summary judgment, at trial, or otherwise, based upon information hereafter identified, obtained, or developed.

2.      Huawei objects to each of the Huawei Plaintiff's instructions, definitions, and Interrogatories to the extent they are unduly burdensome and overbroad in scope, including the scope of proper arbitration-related discovery permitted by the Federal Arbitration Act and as ordered by this Court in its Civil Minutes, dated May 24, 2012, (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated April 1, 2013, (Dkt. No. 157), and insofar as they seek to impose obligations on Huawei beyond that set forth in the Federal Rules of Civil Procedure or the Local Rules, or any order of the Court.

3.      Huawei objects to the Interrogatories under Federal Rule of Civil Procedure 26 to the extent that they seek information that is not relevant, not material, and/or not directly related to the claims or defenses of any party asserted in this litigation, and to the extent that they are not likely to lead to the discovery of admissible evidence.

4.      Huawei objects to the Interrogatories to the extent that the information sought is unreasonably cumulative, duplicative, overbroad in scope, constitutes an undue burden, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.

5. Huawei objects to the Interrogatories to the extent they seek electronically-stored information that is not reasonably accessible by Huawei because of undue burden or cost, or otherwise.

6. Huawei objects to the Interrogatories to the extent they seek information subject to the attorney-client privilege, the work product doctrine, the joint-defense privilege, the self-evaluative privilege, or any other applicable privilege or protection. Subject to these objections, Huawei responds to these Interrogatories based on information known to it from non-privileged sources. By providing such information, Huawei does not waive any claim of privilege or other exemption. To the extent that an interrogatory may be construed as seeking such privileged or protected information or documents, Huawei hereby claims such privilege and invokes such protection. The fact that Huawei does not specifically object to an individual interrogatory on the ground that it seeks such privileged or protected information or documents shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

7. Huawei's objections and responses to the Interrogatories are made without in any way waiving or intending to waive but, rather, to the contrary, preserving and intending to preserve: (a) any questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of the responses to the Interrogatories, or subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action; (b) the right to object on any ground to the use of these responses, or the subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action; (c) the right to object at any time to a demand for further responses to these or any other discovery involving or related to the subject matter of the Interrogatories; (d) the right at any time to revise, supplement, correct, amend, or clarify these objections and responses; and (e) the right to object on any ground to any other or future discovery requests.

8. Huawei objects to the Interrogatories to the extent they seek information not within Huawei's possession, custody, or control, and to the extent that they seek information

from and/or purport to require Huawei to respond on behalf of former officers, former employees, or any other persons, subsidiaries, affiliates, or entities, including but not limited to third parties unrelated to Huawei (such as consultants).

9.      Huawei generally objects to each interrogatory to the extent that it is vague, ambiguous, or requires Huawei to speculate as to the information the Huawei Plaintiff seeks. Where possible, however, Huawei will make reasonable assumptions as to the Huawei Plaintiff's intended meaning and will respond accordingly, while preserving its objections as to vagueness, ambiguity, and uncertainty.

10.     Huawei objects to the definition of "materially" as vague, ambiguous, overly broad, and unduly burdensome.

11.     Huawei objects to the definition of "relate" and "relating" and associated terms as vague and ambiguous and overly broad and unduly burdensome.

12.     Huawei objects to the definition of "communication" as vague, ambiguous, overly broad, and unduly burdensome, and calling for information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence and/or calling for information that is not within Huawei's possession, custody, or control.

13.     Huawei objects to the definition of "relevant laws" as vague, ambiguous, overly broad, and unduly burdensome.

14.     Huawei objects to the Interrogatories to the extent that they are compound, conjunctive or disjunctive statements, or otherwise unintelligible.

15.     Huawei objects that the discovery sought is not relevant to a claim or defense in the action because the issues of whether or not the relevant arbitration agreement is enforceable and whether or not claims asserted against Huawei in the action are within the scope of the arbitration agreement are matters for the arbitrator, not the Court, to decide.  In particular, Paragraph 20(c) of the Terms and Conditions of Service of Cricket Communications, Inc. contains a delegation provision providing that, "Any past, present or future claim, dispute or controversy . . . including (without limitation) statutory, tort and contract Claims and Claims

regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall

be resolved, upon the election by you or us, by binding arbitration." Accordingly, all matters

regarding this dispute must be resolved by an arbitrator and so no discovery, including these

Interrogatories, is proper at this stage of the case. *See Rent-A-Center v. Jackson,* 130 S. Ct.

2772 (2010).

16.    These General Objections set forth above are incorporated in each response

below and apply to each discovery request as though restated in full therein. The failure to

mention any of the foregoing General Objections in the specific responses set forth below shall

not be deemed a waiver of such objection or limitation. Any responses to these Interrogatories

are made without waiver of, or prejudice to, any objections Huawei may raise now or in the

future and all such objections are hereby expressly preserved.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

## INTERROGATORY NO. 1:

For ALL instances in which YOU have been a party in ANY prior arbitration under

ANY of the CELLULAR PROVIDER arbitration provisions you have invoked in this

LITIGATION or ANY MATERIALLY similar arbitration provisions, where such arbitration

related to CARRIER IQ SOFTWARE or involved claims under ANY of the RELEVANT

LAWS, please identify ALL such arbitrations by arbitration service, case name, and case

number, and please describe the outcomes thereof.

## RESPONSE TO INTERROGATORY NO. 1:

Huawei hereby incorporates each of its General Objections as if set forth herein.

Huawei further objects to this interrogatory as overly broad or unduly burdensome as set out in

General Objection 2, in particular with respect to the phrase, "or involved claims under ANY of

the RELEVANT LAWS." Huawei also objects to the defined term "materially" as set out in

General Objection 10. Huawei further objects that this interrogatory is vague and ambiguous as

set out in General Objection 9. Huawei also objects that no discovery is proper here for the

1  reasons set out above in General Objection 15.  Subject to and without waiver of these

2  objections and the General Objections, Huawei responds as follows:

3        Huawei has not previously sought to compel arbitration under Cricket's arbitration

4  provision.

5

6  **INTERROGATORY NO. 8:**

7        Did or does the CARRIER IQ SOFTWARE installed at ANY time on the HUAWEI

8  PLAINTIFF'S mobile device transmit or cause the transmission of user information or data

9  when it is disconnected from the network of the CELLULAR PROVIDER whose arbitration

10  provision(s) you seek to invoke against him in this LITIGATION, particularly over Wi-Fi or by

11  direct connection to an Internet-capable device (*e.g.*, via USB, Firewire, or Bluetooth

12  connection to an Internet-capable computer)?  If YOUR answer is yes, please describe ALL

13  such transmissions, including ALL types of information or data transmitted; and please identify

14  ALL recipients of ALL such information or data transmitted.

15  **RESPONSE TO INTERROGATORY NO. 8:**

16        Huawei hereby incorporates each of its General Objections as if set forth herein.

17  Huawei further objects to this interrogatory as overly broad or unduly burdensome, as set out in

18  General Objection 2, in part because it seeks "all" transmissions, types of information or data

19  transmitted, and recipients.  Huawei also objects to the terms "transmit," "cause the

20  transmission of," "transmission(s)," "user," "information," "data," "disconnected," "network,"

21  "direct connection," "Internet-capable," "affected," and "recipients" as vague, ambiguous, and

22  undefined.  For the purpose of responding to this Interrogatory, Huawei interprets the phrase

23  "transmit or cause the transmission of" to mean Carrier IQ software sending data from a mobile

24  device on which it is installed to a location external to that mobile device.  Huawei further

25  objects that this interrogatory is vague and ambiguous as set out in General Objection 9.

26  Huawei also objects that this interrogatory calls for information outside of Huawei's possession,

27  custody, or control, as set out in General Objection 8.  Huawei further objects to this

28

                    11                    Civil Case No.: 12-MD-2330-EMC

1    Interrogatory to the extent that it contains subparts and compound questions.  Huawei also

2    objects that no discovery is proper here for the reasons set out above in General Objection 15.

3    Subject to and without waiver of these objections and the General Objections, Huawei responds

4    as follows:

5          Based on information within Huawei's possession, custody, or control, Huawei believes

6    the Carrier IQ software installed on the Huawei Ascend II m865 only could transmit data with

7    an active cellular connection.  However, Huawei lacks actual knowledge of the means by which

8    Carrier IQ software embedded on Plaintiff White's mobile device transmitted or could transmit

9    data collected by the Carrier IQ software to servers hosted by Carrier IQ for Cricket.

10

11   **INTERROGATORY NO. 9:**

12         Did or does the CARRIER IQ SOFTWARE installed at ANY time on the HUAWEI

13   PLAINTIFF'S mobile device transmit or cause the transmission of user information or data over

14   the network of the CELLULAR PROVIDER whose arbitration provision(s) YOU seek to

15   invoke against him in this LITIGATION when such mobile device was or is no longer in

16   contract with such CELLULAR PROVIDER?  If YOUR answer is yes, please describe ALL

17   such transmissions, including ALL types of information or data transmitted; and please identify

18   ALL recipients of ALL such information or data transmitted.

19   **RESPONSE TO INTERROGATORY NO. 9:**

20         Huawei hereby incorporates each of its General Objections as if set forth herein.

21   Huawei further objects to this interrogatory as overly broad or unduly burdensome, as set out in

22   General Objection 2, in part because it seeks "all" transmissions, types of information or data

23   transmitted, and recipients.  Huawei also objects to the terms "transmit," "cause the

24   transmission of," "transmission(s)," "user," "information," "data," "disconnected," "network,"

25   "direct connection," "Internet-capable," "affected," and "recipients" as vague, ambiguous, and

26   undefined.  For the purpose of responding to this Interrogatory, Huawei interprets the phrase

27   "transmit or cause the transmission of" to mean Carrier IQ software sending data from a mobile

28

device on which it is installed to a location external to that mobile device. Huawei further objects that this interrogatory is vague and ambiguous as set out in General Objection 9. Huawei also objects that this interrogatory calls for information outside of Huawei's possession, custody, or control, as set out in General Objection 8. Huawei further objects to this Interrogatory to the extent that it contains subparts and compound questions. Huawei also objects that no discovery is proper here for the reasons set out above in General Objection 15. Subject to and without waiver of these objections and the General Objections, Huawei responds as follows:

Based on a meet and confer conducted between Carrier IQ's counsel and Plaintiffs' counsel on this topic, Huawei understands this interrogatory to inquire whether any Carrier IQ software installed on Plaintiff White's mobile device transmitted data over Cricket's cellular network after Plaintiff White discontinued service with Cricket and/or switched service to another wireless service provider. Huawei understands from the declaration of Rick Baughman in Support of Defendants' Motion to Compel Arbitration (Dkt. # 134) that Plaintiff White had not discontinued service with Cricket on the Huawei Ascend II m865 as of November 2012 (and Huawei is informed and believes that Plaintiff White had not discontinued service with Cricket as of the date of service of these interrogatories).

**INTERROGATORY NO. 10:**

Was Carrier IQ product known as IQ Experience Insight Manager installed at ANY time on the HUAWEI PLAINTIFF'S mobile device at issue in this LITIGATION?

**RESPONSE TO INTERROGATORY NO. 10:**

Huawei hereby incorporates each of its General Objections as if set forth herein. Huawei further objects to this interrogatory to the extent that it contains subparts and compound questions. Huawei also objects that no discovery is proper here for the reasons set out above in General Objection 15. Subject to and without waiver of these objections and the General Objections, Huawei responds as follows:

DEFENDANT HUAWEI DEVICES USA, INC.'S
RESPONSES TO PLAINTIFF'S INTERROGATORIES
REGARDING UNCONSCIONABILITY AND SCOPE
ISSUES

13

Civil Case No.: 12-MD-2330-EMC

1    The "IQ Experience Insight Manager" was not installed on the Huawei Ascend II m865

2    cellphone at any time.

3

4    **INTERROGATORY NO. 11:**

5    Did or does CARRIER IQ SOFTWARE installed at ANY time on the HUAWEI

6    PLAINTIFF'S mobile device ever see, access, process, filter, store, or transmit from the mobile

7    device: ANY SMS text messages, whether sent by or to the HUAWEI PLAINTIFF or other user

8    of the device; ANY URLs containing HTTP or HTTPS strings embedded with information such

9    as search terms, user names, passwords, and geo- or GPS-based location data; media viewing

10   history; telephone numbers dialed and attached to calls received; dialer keypad presses; or

11   application purchases and uses?  If YOUR answer to ANY of the foregoing is yes, please

12   specify the information or data involved; and please identify the recipient of ANY such

13   information or data transmitted.

14   **RESPONSE TO INTERROGATORY NO. 11:**

15   Huawei hereby incorporates each of its General Objections as if set forth herein.

16   Huawei further objects to this interrogatory as overly broad or unduly burdensome, as set out in

17   General Objection 2.  Huawei also objects that this interrogatory is vague and ambiguous as set

18   out in General Objection 9.  Huawei further objects that this interrogatory calls for information

19   outside of Huawei's possession, custody, or control, as set out in General Objection 8.  Huawei

20   also objects to the extent this interrogatory calls for privileged or confidential information, as set

21   out in General Objection 6.  Huawei further objects to the terms and phrases "installed," "see,"

22   "access," "filter," "store," "transmit," "other user," "HTTP or HTTPS strings embedded with

23   information," "media viewing history," "telephone numbers dialed and attached to calls

24   received," "dialer keypad presses," "application purchases and uses," "affected," "information,"

25   "data," and "recipient" as vague, ambiguous, and undefined.  Huawei also objects to this

26   interrogatory to the extent that it contains subparts and compound questions.  Huawei further

27   objects that this interrogatory is outside the scope of appropriate arbitration-related discovery

28

1   identified in Judge Chen's order of April 1, 2013 because the information sought is not

2   "relevant to the *means* of transmission."  *See* Order Re Joint Letter Of March 21, 2013 (Dkt. No.

3   155) (emphasis in original).  Huawei also objects that no discovery is proper here for the reasons

4   set out above in General Objection 15.

5

6   **INTERROGATORY NO. 12:**

7         For ANY information or data identified in your answer to Interrogatory No. 11 that is

8   seen, accessed, processed, filtered, stored, or transmitted by the CARRIER IQ SOFTWARE,

9   please identify with specificity ANY term(s) or provision(s)  of the CELLULAR PROVIDER

10  terms and conditions of service or other agreement(s) whose arbitration provisions YOU invoke

11  as to the HUAWEI PLAINTIFF that YOU contend permits or addresses the seeing, accessing,

12  processing, filtering, storage, or transmission thereof.

13  **RESPONSE TO INTERROGATORY NO. 12:**

14        Huawei hereby incorporates each of its General Objections as if set forth herein.

15  Huawei further objects to this interrogatory as overly broad or unduly burdensome, as set out in

16  General Objection 2.  Huawei also objects that this interrogatory is vague and ambiguous as set

17  out in General Objection 9.  Huawei further objects that this interrogatory calls for information

18  outside of Huawei's possession, custody, or control, as set out in General Objection 8.  Huawei

19  also objects to the extent this interrogatory calls for privileged or confidential information, as set

20  out in General Objection 6.  Huawei further objects to the terms and phrases "installed," "see,"

21  "access," "filter," "store," "transmit," "other user," "HTTP or HTTPS strings embedded with

22  information," "media viewing history," "telephone numbers dialed and attached to calls

23  received," "dialer keypad presses," "application purchases and uses," "affected," "information,"

24  "data," and "recipient" as vague, ambiguous, and undefined.  Huawei also objects to this

25  interrogatory to the extent that it contains subparts and compound questions.  Huawei further

26  objects that this interrogatory is outside the scope of appropriate arbitration-related discovery

27  identified in Judge Chen's order of April 1, 2013 because the information sought is not

28

"relevant to the *means* of transmission."  *See* Order Re Joint Letter Of March 21, 2013 (Dkt. No. 155) (emphasis in original).  Huawei also objects that no discovery is proper here for the reasons set out above in General Objection 15.

**INTERROGATORY NO. 13:**

Has the CARRIER IQ SOFTWARE been removed from, or disabled on, ANY mobile device belonging to the HUAWEI PLAINTIFF by YOU or ANY CELLULAR PROVIDER?  If so, please describe the contents of ALL COMMUNICATIONS explaining the reasons for, or demanding, that the CARRIER IQ SOFTWARE be removed or disabled, including ANY such COMMUNICATIONS advising or explaining that the CARRIER IQ SOFTWARE was not operating as contemplated, specified, or agreed-to by the HUAWEI PLAINTIFF'S CELLULAR PROVIDERS or CARRIER IQ itself, or as purportedly contemplated by the HUAWEI PLAINTIFF'S terms and conditions of service, or other agreements, with ANY such CELLULAR PROVIDER.

**RESPONSE TO INTERROGATORY NO. 13:**

Huawei hereby incorporates each of its General Objections as if set forth herein. Huawei further objects to this interrogatory as overly broad or unduly burdensome, as set out in General Objection 2.  Huawei also objects that this interrogatory is vague and ambiguous as set out in General Objection 9.  Huawei further objects that this interrogatory calls for information outside of Huawei's possession, custody, or control, as set out in General Objection 8.  Huawei also objects to the extent this interrogatory calls for privileged or confidential information, as set out in General Objection 6.  Huawei further objects to the terms and phrases "installed," "see," "access," "filter," "store," "transmit," "other user," "HTTP or HTTPS strings embedded with information," "media viewing history," "telephone numbers dialed and attached to calls received," "dialer keypad presses," "application purchases and uses," "affected," "information," "data," and "recipient" as vague, ambiguous, and undefined.  Huawei also objects to this interrogatory to the extent that it contains subparts and compound questions.  Huawei further

DEFENDANT HUAWEI DEVICES USA, INC.'S
RESPONSES TO PLAINTIFF'S INTERROGATORIES
REGARDING UNCONSCIONABILITY AND SCOPE
ISSUES

16

Civil Case No.: 12-MD-2330-EMC

objects that this interrogatory is outside the scope of appropriate arbitration-related discovery identified in Judge Chen's order of April 1, 2013 because the information sought is not "relevant to the *means* of transmission." *See* Order Re Joint Letter Of March 21, 2013 (Dkt. No. 155) (emphasis in original).  Huawei also objects that no discovery is proper here for the reasons set out above in General Objection 15.

DATED:  May 28, 2013                              COVINGTON & BURLING LLP

By:_____
Simon J. Frankel
Attorneys for Defendant

HENRY WEISSMANN (State Bar No. 132418)
henry.weissmann@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 94105-2907
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendant HTC America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CARRIER IQ, INC. CONSUMER PRIVACY LITIGATION, | Case No. 12-MD-2330-EMC<br><br>**DEFENDANT HTC AMERICA, INC.'S RESPONSES TO PLAINTIFFS' INTERROGATORIES REGARDING UNCONSCIONABILITY AND SCOPE ISSUES** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant HTC America, Inc. ("HTCA") hereby objects and responds to Plaintiffs' Interrogatories to HTC America, Inc. Regarding Unconscionability and Scope Issues (the "Interrogatories") dated April 22, 2013.

## GENERAL OBJECTIONS

1.      HTCA objects to each and every Interrogatory and Definition to the extent it seeks information that is neither relevant to arbitrability nor reasonably calculated to lead to the discovery of admissible evidence on arbitrability as beyond the scope of permissible discovery at this stage of the litigation.  *See* Order Re Joint Letter of March 21, 2013 (Dkt. No. 157); Minute Order dated May 24, 2012 (Dkt. No. 59).

2.      HTCA objects to each and every Interrogatory and Definition to the extent it is inconsistent with applicable law, or attempts to impose any burdens inconsistent with or in addition to the obligations under applicable law, including the Federal Rules of Civil Procedure and the Civil Local Rules of this Court.  HTCA will respond to the Interrogatories consistent with applicable law.

3.      HTCA objects to each and every Interrogatory, Definition, and Instruction on the ground that it seeks discovery of documents or information not authorized under the Federal Arbitration Act, 9 U.S.C. § 2, which calls for a summary and speedy disposition of motions to enforce arbitration clauses with only restricted inquiry into factual issues.  Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that the requested discovery is required.

4.      HTCA objects to each and every Interrogatory and Definition to the extent it is vague, ambiguous, unintelligible, and fails to describe the information sought with reasonable particularity.

5.      HTCA objects to each and every Interrogatory and Definition to the extent it is overbroad or unduly burdensome, including but not limited to because it seeks information relating to time periods not relevant to the issue of arbitrability.  In particular, HTCA objects that

Plaintiffs' request for information for the time period of December 1, 2007 through the present is overbroad and unduly burdensome.

6.   HTCA objects to each and every Interrogatory and Definition to the extent that it is compound, conjunctive, disjunctive, or contains improper subparts.

7.   HTCA objects to each and every Interrogatory and Definition to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, joint defense privilege, common interest privilege, or any other applicable privilege, doctrine, immunity, or protection.

8.   HTCA objects to each and every Interrogatory and Definition to the extent that it seeks information that is confidential and/or proprietary, or information that is subject to any protective order, privacy interest, contractual obligation or confidentiality obligation or protection, or otherwise protected from disclosure by law.

9.   HTCA objects to each and every Interrogatory and Definition to the extent that it seeks information that is not within HTCA's possession, custody, or control.

10.   HTCA objects to each and every Interrogatory and Definition to the extent that it seeks information that is already in the Plaintiffs' possession, custody, or control, available in the public domain, or otherwise may be obtained from a source other than HTCA that is more convenient, less burdensome, and/or less expensive.

11.   HTCA objects to the definition of the term "CARRIER IQ" on the ground that it is vague, ambiguous, overbroad, unduly burdensome, and oppressive.  HTCA further objects to this definition on the ground that it calls for a legal conclusion.  In responding to the Interrogatories, HTCA will interpret the term "CARRIER IQ" to mean Defendant Carrier IQ, Inc.

12.   HTCA objects to the definition of the term "CARRIER IQ SOFTWARE" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

13.   HTCA objects to the definition of the term "COMMUNICATION" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

14.   HTCA objects to the definition of the term "MATERIALLY" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

15.     HTCA objects to the definition of the terms "YOU" and "YOUR" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.  HTCA further objects to this definition on the ground that it calls for a legal conclusion.  In responding to the Interrogatories, HTCA will interpret the terms "YOU" and "YOUR" to mean Defendant HTC America, Inc. and will respond on behalf of only HTC America, Inc.

16.     HTCA objects to each and every Interrogatory and Definition as unduly burdensome to the extent it seeks discovery that is unreasonably cumulative or duplicative.

17.     No incidental or implied admissions are intended by the objections herein. The assertion of any objection to any Interrogatory is not intended to mean, and shall not be construed as acknowledging or suggesting, that any responsive information exists or that HTCA has possession, custody, or control over any such information.  Nor shall the fact that HTCA has objected to any Interrogatory be taken as an admission that HTCA accepts or admits the existence of any fact set forth or assumed by such Interrogatory.

18.     HTCA's failure to object to any Interrogatory or Definition on any particular ground shall not be construed as a waiver of its right to object on that ground or any other ground at any time, including following any meet and confer with Plaintiffs' counsel concerning these responses.

19.     By responding to the Interrogatories, HTCA does not waive, and hereby expressly reserves, any objection that may be applicable to:  (a) the use, for any purpose, by Plaintiffs of any information provided in response to the Interrogatories; or (b) the admissibility, relevance, or materiality of any such information to any issue in this action or any other action.

20.     HTCA reserves the right to modify or supplement these objections and responses to the extent allowed by law.

21.     Each and every General Objection shall be deemed to be incorporated in full into each of the individual responses set forth below.  From time to time a specific response may repeat a General Objection.  The omission of any General Objection in any specific response to any Interrogatory is not intended to be and should not be construed as a waiver or limitation of any General Objection to any Interrogatory.  Likewise, the inclusion of any specific objection in

**INTERROGATORY NO. 8:**

Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the HTC PLAINTIFFS' mobile devices transmit or cause the transmission of user information or data when it is disconnected from the network of the CELLULAR PROVIDER whose arbitration provision(s) you seek to invoke against ANY HTC PLAINTIFF in this LITIGATION, particularly over Wi-Fi or by direct connection to an Internet-capable device (e.g., via USB, Firewire, or Bluetooth connection to an Internet-capable computer)? If YOUR answer is yes, please identify the HTC PLAINTIFF(S) affected and his, her, or their mobile device(s); please describe ALL such transmissions, including ALL types of information or data transmitted; and please identify ALL recipients of ALL such information or data transmitted.

**RESPONSE TO INTERROGATORY NO. 8:**

HTCA incorporates by reference its General Objections.  HTCA further objects to this Interrogatory on the ground that it is not authorized under the Federal Arbitration Act, 9 U.S.C. § 2 because Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that the requested discovery is required.  HTCA further objects to this Interrogatory on the ground that it is vague and ambiguous with respect to the phrase "transmit or cause the transmission of."  For the purpose of responding to this Interrogatory, HTCA interprets that phrase to mean Carrier IQ software sending data from a mobile device on which it is installed to a location external to that mobile device.  HTCA further objects to this Interrogatory on the ground that it is vague and ambiguous with respect to the term "user information or data."  HTCA further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome, and seeks information beyond the permissible scope of discovery at this stage of the litigation as set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157), particularly because it seeks information "describe[ing] ALL such transmissions, including ALL types of information or data transmitted; and please identify ALL recipients of ALL such information or data transmitted."  HTCA further objects to this Interrogatory to the extent it contains subparts and compound questions.  HTCA further objects to this interrogatory on the ground that it is vague and ambiguous with respect to the

phrase "ANY of the HTC PLAINTIFFS' mobile devices."  For the purpose of responding to this Interrogatory, HTCA interprets that phrase to mean the HTC Evo owned by Plaintiff Brian Sandstrom (Miller Decl. ¶ 35), the HTC Evo owned by Plaintiff Luke Szulczewski (*Id.* ¶ 63), the HTC A9292 WT Bar (Evo) owned by Plaintiff Clarissa Portales (*Id.* ¶ 77), the HTC Evo owned by Plaintiff Michael Allan (*Id.* ¶ 88), and the HTC Evo owned by Plaintiff Dao Phong (*Id.* ¶ 111). Subject to and without waiving the foregoing objections, and as HTCA understands this Interrogatory, HTCA responds as follows:  HTCA does not have knowledge of whether and by what means Carrier IQ software did or does send data from the HTC Plaintiffs' mobile devices to locations external to those mobile devices.  Based on representations made by Carrier IQ, however, HTCA understands that Carrier IQ software is not designed to send data from the HTC Plaintiffs' mobile devices to locations external to the mobile devices unless the devices are connected to the Sprint network.

**INTERROGATORY NO. 9:**

Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the HTC PLAINTIFFS' mobile devices transmit or cause the transmission of user information or data over the network of the CELLULAR PROVIDER whose arbitration provision(s) YOU seek to invoke against ANY HTC PLAINTIFF in this LITIGATION when such mobile device(s) was or is no longer in contract with such CELLULAR PROVIDER? If YOUR answer is yes, please identify the HTC PLAINTIFF(S) affected and his, her, or their mobile device(s); please describe ALL such transmissions, including ALL types of information or data transmitted; and please identify ALL recipients of ALL such information or data transmitted.

**RESPONSE TO INTERROGATORY NO. 9:**

HTCA incorporates by reference its General Objections.  HTCA further objects to this Interrogatory on the ground that it is not authorized under the Federal Arbitration Act, 9 U.S.C. § 2 because Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that the requested discovery is required.  HTCA further objects to this Interrogatory on the ground that it is vague and ambiguous with respect to the term "user information or data."  HTCA further objects to this Interrogatory on the ground that it is vague and ambiguous with respect to the

phrase "transmit or cause the transmission of."  For the purpose of responding to this

Interrogatory, HTCA interprets that phrase to mean Carrier IQ software sending data from a

mobile device on which it is installed to a location external to that mobile device.  HTCA further

objects to this Interrogatory on the ground that the phrase "was or is no longer in contract with" is

vague and ambiguous.  For the purpose of responding to this Interrogatory, HTCA interprets that

phrase as "no longer a party to the 2011 Sprint Terms & Conditions of Service attached to the

Declaration of Stephanie Miller ("Miller Decl.") as Exhibit B 2011 or any prior versions of

Sprint's Terms & Conditions of Service that are materially similar."  HTCA further objects to the

portion of the Interrogatory asking HTCA to "describe ALL such transmissions, including ALL

types of information or data transmitted; and please identify ALL recipients of ALL such

information or data transmitted" on the ground that it is overbroad, unduly burdensome, and

beyond the scope of discovery permissible at this stage of the litigation as set forth by the Court in

its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re Joint Letter of March 21,

2013, dated April 1, 2013 (Dkt. No. 157).  HTCA further objects to this Interrogatory to the extent

it contains subparts and compound questions.  HTCA further objects to this Interrogatory on the

ground that it is vague and ambiguous with respect to the phrase "ANY of the HTC PLAINTIFFS'

mobile devices."  For the purpose of responding to this Interrogatory, HTCA interprets that phrase

to mean the HTC Evo owned by Plaintiff Brian Sandstrom (Miller Decl. ¶ 35), the HTC Evo

owned by Plaintiff Luke Szulczewski (*Id.* ¶ 63), the HTC A9292 WT Bar (Evo) owned by

Plaintiff Clarissa Portales (*Id.* ¶ 77), the HTC Evo owned by Plaintiff Michael Allan (*Id.* ¶ 88), and

the HTC Evo owned by Plaintiff Dao Phong (*Id.* ¶ 111).  Subject to and without waiving the

foregoing objections, and as HTCA understands this Interrogatory, HTCA responds as follows:

For any of the HTC Plaintiffs not in contact with Sprint, HTCA does not have knowledge of

whether Carrier IQ software did or does send data from their mobile devices to locations external

to those mobile devices over Sprint's network.

1  **INTERROGATORY NO. 10:**

2      Was the Carrier IQ product known as IQ Experience Insight Manager installed at ANY

3  time on ANY of the HTC PLAINTIFFS' mobile devices at issue in this LITIGATION? If so,

4  please identify the HTC PLAINTIFF(S) affected and his, her, or their mobile device(s).

5  **RESPONSE TO INTERROGATORY NO. 10:**

6      HTCA incorporates by reference its General Objections.  HTCA further objects to this

7  Interrogatory on the ground that it is not authorized under the Federal Arbitration Act, 9 U.S.C.

8  § 2 because Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that

9  the requested discovery is required.  HTCA further objects to the Interrogatory on the ground that

10 it is overbroad, unduly burdensome, and seeks information beyond the scope of discovery

11 permissible at this stage of the litigation as set forth by the Court in its Civil Minutes dated May

12 24, 2012 (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt.

13 No. 157).  HTCA further objects to this Interrogatory to the extent it contains subparts and

14 compound questions.  HTCA further objects to this Interrogatory on the ground that it is vague

15 and ambiguous with respect to the phrase "ANY of the HTC PLAINTIFFS' mobile devices."  For

16 the purpose of responding to this Interrogatory, HTCA interprets that phrase to mean the HTC Evo

17 owned by Plaintiff Brian Sandstrom (Miller Decl. ¶ 35), the HTC Evo owned by Plaintiff Luke

18 Szulczewski (*Id.* ¶ 63), the HTC A9292 WT Bar (Evo) owned by Plaintiff Clarissa Portales (*Id.* ¶

19 77), the HTC Evo owned by Plaintiff Michael Allan (*Id.* ¶ 88), and the HTC Evo owned by

20 Plaintiff Dao Phong (*Id.* ¶ 111).  Subject to and without waiving the foregoing objections, and as

21 HTCA understands this Interrogatory, HTCA responds as follows: The IQ Experience Insight

22 Manager was not installed on any of the HTC Plaintiffs' mobile devices.

23 **INTERROGATORY NO. 11:**

24      Did or does CARRIER IQ SOFTWARE installed at ANY time on ANY of the HTC

25 PLAINTIFFS' mobile devices ever see, access, process, filter, store, or transmit from the mobile

26 device:  ANY SMS text messages, whether sent by or to the HTC PLAINTIFF or other user of the

27 device; ANY URLs containing HTTP or HTTPS strings embedded with information such as

28 search terms, user names, passwords, and geo- or GPS-based location data; media viewing history;

1   telephone numbers dialed and attached to calls received; dialer keypad presses; or application

2   purchases and uses? If YOUR answer to ANY of the foregoing is yes, please identify the HTC

3   PLAINTIFF(S) affected and his, her, or their mobile device(s); please specify the information or

4   data involved; and please identify the recipient of ANY such information or data transmitted.

5   **RESPONSE TO INTERROGATORY NO. 11:**

6         HTCA incorporates by reference its General Objections.  HTCA further objects to this

7   Interrogatory on the ground that it is not authorized under the Federal Arbitration Act, 9 U.S.C. §

8   2 because Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that the

9   requested discovery is required.  HTCA further objects to this Interrogatory on the ground that it is

10  overbroad, unduly burdensome, and beyond the scope of discovery permissible at this stage of the

11  litigation as set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its

12  Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).  HTCA further

13  objects to this Interrogatory to the extent it contains subparts and compound questions.  HTCA

14  further objects to this interrogatory on the ground that it is vague and ambiguous with respect to

15  the phrase "ANY of the HTC PLAINTIFFS' mobile devices."

16  **INTERROGATORY NO. 12:**

17        For ANY information or data identified in your answer to Interrogatory No. 11 that is seen,

18  accessed, processed, filtered, stored, or transmitted by the CARRIER IQ SOFTWARE, please

19  identify with specificity ANY term(s) or provision(s) of the CELLULAR PROVIDER terms and

20  conditions of service or other agreement(s) whose arbitration provisions YOU invoke as to ANY

21  HTC PLAINTIFF

22  **RESPONSE TO INTERROGATORY NO. 12:**

23        HTCA incorporates by reference its General Objections.  HTCA further objects to this

24  Interrogatory on the ground that it is not authorized under the Federal Arbitration Act, 9 U.S.C. §

25  2 because Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that the

26  requested discovery is required.  HTCA further objects to this Interrogatory on the ground that it

27  seeks information beyond the scope of discovery permissible at this stage of the litigation as set

28  forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re Joint

1    Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).  To the extent any provisions of

2    Sprint's Terms & Conditions of Service other than the Dispute Resolution provision are relevant

3    to the Motion to Compel Arbitration, those provisions are identified in the Memorandum of Points

4    and Authorities in support of the motion.  *See, e.g.* pp. 4-5, 13-16, 27, 35.

5    **INTERROGATORY NO. 13:**

6         Has the CARRIER IQ SOFTWARE been removed from, or disabled on, ANY mobile

7    device belonging to ANY HTC PLAINTIFF by YOU or ANY CELLULAR PROVIDER? If so,

8    please identify the HTC PLAINTIFF(S) affected and his, her, or their mobile device(s), and please

9    describe the contents of ALL COMMUNICATIONS explaining the reasons for, or demanding,

10   that the CARRIER IQ SOFTWARE be removed or disabled, including ANY such

11   COMMUNICATIONS advising or explaining that the CARRIER IQ SOFTWARE was not

12   operating as contemplated, specified, or agreed to by ANY of the HTC PLAINTIFFS'

13   CELLULAR PROVIDERS or CARRIER IQ itself, or as purportedly contemplated by ANY of the

14   HTC PLAINTIFFS' terms and conditions of service, or other agreements, with ANY such

15   CELLULAR PROVIDER.

16   **RESPONSE TO INTERROGATORY NO. 13:**

17        HTCA incorporates by reference its General Objections.  HTCA further objects to this

18   Interrogatory on the ground that it is not authorized under the Federal Arbitration Act, 9 U.S.C. §

19   2 because Plaintiffs have not demonstrated and cannot demonstrate a compelling showing that the

20   requested discovery is required.  HTCA further objects to this Interrogatory on the ground that it is

21   overbroad, unduly burdensome, and beyond the scope of discovery permissible at this stage of the

22   litigation as set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its

23   Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).  HTCA further

24   objects to this Interrogatory to the extent it contains subparts and compound questions.  HTCA

25   further objects to this interrogatory on the ground that it is vague and ambiguous with respect to

26   the phrase "ANY mobile device belonging to ANY HTC PLAINTIFF."

27

28

James Donato (SBN 146140)
Jiyoun Chung (SBN 226900)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111-5994
Telephone:   (415) 616-1100
Facsimile:   (415) 616-1199
Email:       jdonato@shearman.com
             jchung@shearman.com

Attorneys for Defendant
LG ELECTRONICS MOBILECOMM U.S.A., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE | CASE NO. 3:12-md-2330-EMC |
| CARRIER IQ, INC.,<br>CONSUMER PRIVACY LITIGATION | **DEFENDANT LG ELECTRONICS MOBILECOMM U.S.A., INC.'S RESPONSES TO PLAINTIFFS' INTERROGATORIES REGARDING UNCONSCIONABILITY AND SCOPE ISSUES** |

RESPONDING PARTY:      DEFENDANT LG ELECTRONICS MOBILECOMM U.S.A., INC.

REQUESTING PARTY:      PLAINTIFFS

SET NUMBER:            ONE

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and Civil Local Rule

2    33-1 of the United States District Court for the Northern District of California, defendant LG

3    Electronics MobileComm U.S.A., Inc. ("LGEMUSA") provides the following responses and

4    objections to Plaintiffs Gary Cribbs, Mark Laning, Daniel Pipkin, Patrick Kenny, Luke

5    Szulczewski, Brian Sandstrom, Colleen Fischer, Eric Thomas, Matthew Hiles, Michael Allan,

6    Bobby Cline, Shawn Grisham, Ryan McKeen, Clarissa Portales, Dao Phong, Leron Levy, and

7    Douglas White's (collectively, "Plaintiffs") Interrogatories to Defendant LG Electronics

8    MobileComm U.S.A., Inc. Regarding Unconscionability and Scope Issues ("Interrogatories").

9    LGEMUSA sets forth the following objections and limitations while reserving the right to

10   revise, supplement, correct or add to this response.  LGEMUSA's counsel is willing to meet and

11   confer with Plaintiffs' counsel, at a mutually agreeable time and place, in order to try to resolve

12   any of the objections set forth herein and to clarify the vague or overbroad terms used by

13   Plaintiffs.

14                        **GENERAL RESPONSES AND OBJECTIONS**

15   LGEMUSA hereby incorporates by reference the following General Responses and

16   Objections and Objections to Definitions (collectively, the "General Objections") set forth below

17   into each and every Specific Response and Objection to each Interrogatory as if fully set forth

18   therein.

19   1.    LGEMUSA objects to the Interrogatories to the extent that they seek information

20   that is irrelevant to the arbitrability of this matter and are therefore beyond the scope of

21   permissible discovery at this stage of the litigation as ordered by the Court in its Civil Minutes

22   dated May 24, 2012 (Dkt. No. 59) and as clarified in the Order re Joint Letter of March 21, 2013,

23   dated April 1, 2013 (Dkt. No. 157).

24   2.    LGEMUSA objects to each Interrogatory to the extent that it purports to impose

25   on LGEMUSA obligations inconsistent with, or beyond, those provided by the Federal Rules of

26   Civil Procedure and Civil Local Rules of the United States District Court for the Northern

27   District of California.

28

---

3.      LGEMUSA objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, the privacy rights of any individuals potentially encompassed by the Interrogatories, or any other applicable privilege or protection. LGEMUSA further objects to the Interrogatories to the extent that they seek disclosure of information protected from discovery by constitutional, statutory, or judicial guarantees of privacy, including under Article 1, Section 1 of the California Constitution.

4.      LGEMUSA objects to the Interrogatories to the extent that they seek the disclosure of trade secrets or sensitive, confidential or proprietary commercial, business, financial or personal information.

5.      LGEMUSA objects to the Interrogatories to the extent that they seek information that is neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence.

6.      LGEMUSA objects to the Interrogatories to the extent they seek information that is a matter of public record, or is otherwise accessible or available to Plaintiffs.

7.      LGEMUSA objects to the Interrogatories to the extent that they seek information contained in documents previously produced to Plaintiffs or information that is otherwise in Plaintiffs' possession.

8.      LGEMUSA objects to the Interrogatories to the extent they seek information more properly sought from parties other than the LGEMUSA.

9.      LGEMUSA objects to the Interrogatories to the extent they purport to require LGEMUSA to disclose information that is not within LGEMUSA's possession, custody or control.

10.     The General Objections set forth above and below are hereby incorporated into each specific response set forth below, as if fully set forth, and shall be deemed to be continuing even though not specifically referred to in each response to each specific Interrogatory.  No such objection is waived by answering the Interrogatory in whole or in part.  Any response provided herein is subject to and limited by all General Objections stated herein.

**OBJECTIONS TO DEFINITIONS**

1.      LGEMUSA objects to Definition B, "CARRIER IQ," on the grounds that it is overbroad, vague and ambiguous.

2.      LGEMUSA objects to Definition E, "COMMUNICATION," on the grounds that it is overbroad, vague and ambiguous.

3.      LGEMUSA objects to Definition I, "MATERIALLY," on the grounds that it is vague and ambiguous.

4.      LGEMUSA objects to Definition K, "RELATE" and "RELATING," on the grounds that it is overbroad, vague and ambiguous.

5.      LGEMUSA objects to Definition M, "YOU" and "YOUR," on the grounds that it is overbroad, vague and ambiguous insofar as it purports to encompass natural persons and entities other than LGEMUSA.  LGEMUSA has construed the terms "YOU" and "YOUR" to mean LG Electronics MobileComm U.S.A., Inc. and responds herein solely on behalf of that entity.

**SPECIFIC RESPONSES AND OBJECTIONS**

**INTERROGATORY NO. 1:**

For ALL instances in which YOU have been a party in ANY prior arbitration under ANY of the CELLULAR PROVIDER arbitration provisions you have invoked in this LITIGATION or ANY MATERIALLY similar arbitration provisions, where such arbitration related to CARRIER IQ SOFTWARE or involved claims under ANY of the RELEVANT LAWS, please identify ALL such arbitrations by arbitration service, case name, and case number, and please describe the outcomes thereof.

**RESPONSE TO INTERROGATORY NO. 1:**

LGEMUSA objects to Interrogatory No. 1 on the ground that it is vague and ambiguous with respect to the phrase "ANY MATERIALLY similar arbitration provisions."  LGEMUSA further objects to this Interrogatory on the ground that it is overbroad to the extent it is not limited to proceedings involving mobile device end-users.

Subject to and without waiving the General and Specific Objections set forth above, LGEMUSA responds that there are no arbitrations responsive to this Interrogatory, as LGEMUSA has not previously been a party in any arbitrations under Sprint's arbitration

1   seeks information relating to "matters involving ANY of the RELEVANT LAWS," and it seeks

2   information that goes beyond the permissible scope of discovery at this stage of the litigation as

3   set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re

4   Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).

5            Subject to and without waiving the General and Specific Objections set forth above,

6   LGEMUSA responds that it has not previously made any attempt to compel arbitration under

7   Sprint's arbitration provision in any other case.

8   **INTERROGATORY NO. 8:**

9            Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the LG
    PLAINTIFFS' mobile devices transmit or cause the transmission of user information or data
10  when it is disconnected from the network of the CELLULAR PROVIDER whose arbitration
    provision(s) you seek to invoke against ANY LG PLAINTIFF in this LITIGATION, particularly
11  over Wi-Fi or by direct connection to an Internet-capable device (e.g., via USB, Firewire, or
12  Bluetooth connection to an Internet-capable computer)?  If YOUR answer is yes, please identify
    the LG PLAINTIFF(S) affected and his, her, or their mobile device(s); please describe ALL such
13  transmissions, including ALL types of information or data transmitted; and please identify ALL
    recipients of ALL such information or data transmitted.
14

15  **RESPONSE TO INTERROGATORY NO. 8:**

16           LGEMUSA objects to Interrogatory No. 8 on the ground that it is compound and includes

17  subparts which relate to separate topics.  LGEMUSA further objects to this Interrogatory on the

18  ground that it is vague and ambiguous with respect to the phrases "transmit or cause the

19  transmission of" and "user information or data."  LGEMUSA will construe the phrase "transmit

20  or cause the transmission of" to mean Carrier IQ software sending data from a mobile device on

21  which it is installed to a location external to that mobile device.  LGEMUSA also objects to this

22  Interrogatory on the ground that some of its subparts, specifically those relating to the "types of

23  information or data transmitted" and "recipients of ALL such information or data transmitted,"

24  seek information that goes beyond the permissible scope of discovery at this stage of the

25  litigation as set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its

26  Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).  LGEMUSA also

27  objects to this Interrogatory on the ground that it is more properly directed to the carriers, which

28

1    set what information or data is to be collected by the Carrier IQ software and how that

2    information or data is to be transmitted.

3         Subject to and without waiving the General and Specific Objections set forth above,

4    LGEMUSA responds that to the best of its knowledge, it understands and believes that the CIQ

5    software could not and would not have transmitted or caused the transmission of any user

6    information or data over a Wi-Fi connection, and furthermore, that the CIQ software could not

7    and would not have transmitted or caused the transmission of any user information or data to any

8    server when a mobile device was disconnected from Sprint's network.

9    **INTERROGATORY NO. 9:**

10        Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the LG

11   PLAINTIFFS' mobile devices transmit or cause the transmission of user information or data over
     the network of the CELLULAR PROVIDER whose arbitration provision(s) YOU seek to invoke

12   against ANY LG PLAINTIFF in this LITIGATION when such mobile device(s) was or is no
     longer in contract with such CELLULAR PROVIDER?   If YOUR answer is yes, please identify

13   the LG PLAINTIFF(S) affected and his, her, or their mobile device(s); please describe ALL such
     transmissions, including ALL types of information or data transmitted; and please identify ALL

14   recipients of ALL such information or data transmitted.

15   **RESPONSE TO INTERROGATORY NO. 9:**

16        LGEMUSA objects to Interrogatory No. 9 on the ground that it is compound and includes

17   subparts which relate to separate topics.  LGEMUSA further objects to this Interrogatory on the

18   ground that it is vague and ambiguous with respect to the phrases "transmit or cause the

19   transmission of" and "user information or data."  LGEMUSA will construe the phrase "transmit

20   or cause the transmission of" to mean Carrier IQ software sending data from a mobile device on

21   which it is installed to a location external to that mobile device.  LGEMUSA also objects to this

22   Interrogatory on the ground that some of its subparts, specifically those relating to the "types of

23   information or data transmitted" and "recipients of ALL such information or data transmitted,"

24   seek information that goes beyond the permissible scope of discovery at this stage of the

25   litigation as set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its

26   Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).  LGEMUSA also

27   objects to this Interrogatory on the grounds that it is vague and ambiguous with respect to the

28

---

1    phrase "in contract," and in any event this Interrogatory is more properly directed to the carriers

2    who should have this information and who maintain the contract records for their customers,

3    including the LG Plaintiffs.

4          Subject to and without waiving the General and Specific Objections set forth above,

5    LGEMUSA responds that it understands that the LG Plaintiffs were in contract with Sprint at all

6    pertinent times, as evidenced by the Declaration of Stephanie Miller (Dkt. No. 135) and

7    accompanying exhibits that relate to the LG Plaintiffs.

8    **INTERROGATORY NO. 10:**

9          Was the Carrier IQ product known as IQ Experience Insight Manager installed at ANY
     time on ANY of the LG PLAINTIFFS' mobile devices at issue in this LITIGATION?  If so,
10   please identify the LG PLAINTIFF(S) affected and his, her, or their mobile device(s).

11   **RESPONSE TO INTERROGATORY NO. 10:**

12         Subject to and without waiving the General Objections set forth above, LGEMUSA

13   responds that to the best of its knowledge, the Carrier IQ product known as IQ Experience

14   Insight Manager was not installed on any of the LG Plaintiffs' mobile devices at issue in this

15   litigation.

16   **INTERROGATORY NO. 11:**

17         Did or does CARRIER IQ SOFTWARE installed at ANY time on ANY of the LG
     PLAINTIFFS' mobile devices ever see, access, process, filter, store, or transmit from the mobile
18   device: ANY SMS text messages, whether sent by or to the LG PLAINTIFF or other user of the
     device; ANY URLs containing HTTP or HTTPS strings embedded with information such as
19   search terms, user names, passwords, and geo- or GPS-based location data; media viewing
     history; telephone numbers dialed and attached to calls received; dialer keypad presses; or
20   application purchases and uses?  If YOUR answer to ANY of the foregoing is yes, please identify
     the LG PLAINTIFF(S) affected and his, her, or their mobile device(s); please specify the
21   information or data involved; and please identify the recipient of ANY such information or data
22   transmitted.

23   **RESPONSE TO INTERROGATORY NO. 11:**

24         LGEMUSA objects to Interrogatory No. 11 on the ground that it seeks information that

25   does not relate to the arbitrability of the present dispute between LGEMUSA and the LG

26   Plaintiffs, and the Interrogatory therefore improperly seeks information that goes beyond the

27   permissible scope of discovery at this stage of the litigation as set forth by the Court in its Civil

28   Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated

April 1, 2013 (Dkt. No. 157). LGEMUSA further objects to this Interrogatory on the ground that

it is compound and includes subparts which relate to separate topics. LGEMUSA also objects to

this Interrogatory on the ground that it is vague and ambiguous with respect to the phrases "see,

access, process, filter, store or transmit," "media viewing history," "telephone numbers . . .

attached to calls received," "dialer keypad presses," and "application purchases and uses."

**INTERROGATORY NO. 12:**

For ANY information or data identified in your answer to Interrogatory No. 11 that is
seen, accessed, processed, filtered, stored, or transmitted by the CARRIER IQ SOFTWARE,
please identify with specificity ANY term(s) or provision(s) of the CELLULAR PROVIDER
terms and conditions of service or other agreement(s) whose arbitration provisions YOU invoke
as to ANY LG PLAINTIFF that YOU contend permits or addresses the seeing, accessing,
processing, filtering, storage, or transmission thereof.

**RESPONSE TO INTERROGATORY NO. 12:**

LGEMUSA objects to Interrogatory No. 12 on the ground that it seeks information that

does not relate to the arbitrability of the present dispute between LGEMUSA and the LG

Plaintiffs, and the Interrogatory therefore improperly seeks information that goes beyond the

permissible scope of discovery at this stage of the litigation as set forth by the Court in its Civil

Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated

April 1, 2013 (Dkt. No. 157). LGEMUSA further objects to this Interrogatory on the ground that

it is vague and ambiguous with respect to the phrases "seen, accessed, processed, filtered, stored

or transmitted" and "the seeing, accessing, processing, filtering, storage, or transmission thereof."

Subject to and without waiving the General Objections set forth above, LGEMUSA

responds that this Interrogatory is not applicable, per its Response to Interrogatory No. 11 above.

**INTERROGATORY NO. 13:**

Has the CARRIER IQ SOFTWARE been removed from, or disabled on, ANY mobile
device belonging to ANY LG PLAINTIFF by YOU or ANY CELLULAR PROVIDER? If so,
please identify the LG PLAINTIFF(S) affected and his, her, or their mobile device(s), and please
describe the contents of ALL COMMUNICATIONS explaining the reasons for, or demanding,
that the CARRIER IQ SOFTWARE be removed or disabled, including ANY such
COMMUNICATIONS advising or explaining that the CARRIER IQ SOFTWARE was not
operating as contemplated, specified, or agreed-to by ANY of the LG PLAINTIFFS'
CELLULAR PROVIDERS or CARRIER IQ itself, or as purportedly contemplated by ANY of

the LG PLAINTIFFS' terms and conditions of service, or other agreements, with ANY such CELLULAR PROVIDER.

**RESPONSE TO INTERROGATORY NO. 13:**

LGEMUSA objects to Interrogatory No. 13 on the ground that it seeks information that does not relate to the arbitrability of the present dispute between LGEMUSA and the LG Plaintiffs, and the Interrogatory therefore improperly seeks information that goes beyond the permissible scope of discovery at this stage of the litigation as set forth by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and its Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157). LGEMUSA further objects to this Interrogatory on the ground that it is compound and includes subparts which relate to separate topics. LGEMUSA also objects to this Interrogatory on the ground that it is vague and ambiguous with respect to the phrase "removed from, or disabled on," as well as to the extent the Interrogatory seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable protection from disclosure.

Dated: May 28, 2013

SHEARMAN & STERLING LLP

By: _____
Jiyoun Chung

Attorneys for Defendant
LG ELECTRONICS MOBILECOMM U.S.A., INC.

1  Wayne M. Helge (*pro hac vice*)
2  H. C. PARK & ASSOCIATES, PLC
   1894 Preston White Drive
3  Reston, VA 20191
   Telephone: (703) 288-5105
4  Facsimile:   (703) 288-5139
   whelge@park-law.com
5
6  Attorney for Defendant
   PANTECH WIRELESS, INC.
7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10         **SAN FRANCISCO DIVISION**

11

12  IN RE                                )
    CARRIER IQ, INC.,                    )   Civil Case No.: 12-MD-2330-EMC
13  CONSUMER PRIVACY LITIGATION          )
                                         )   **PANTECH WIRELESS, INC. 'S**
14                                       )   **OBJECTIONS AND RESPONSES TO**
                                         )   **PLAINTIFFS'INTERROGATORIES**
15                                       )   **REGARDING UNCONSCIONABILITY**
                                         )   **AND SCOPE ISSUES**
16                                       )
17                                           Hon:  Edward M. Chen
18  _____

19

20  REQUESTING PARTY:     PLAINTIFFS
21  RESPONDING PARTY:     Defendant PANTECH WIRELESS, INC.
    SET NO.:              ONE (NOS. 1-13)
22

23          Pursuant to Federal Rule of Civil Procedure 26 and 33, and Civil Local Rule 33-1 of the

24  United States District Court for the Northern District of California, Defendant Pantech Wireless,

25  Inc., ("Pantech"), by and through its undersigned attorneys, provides the following responses and

26  objections to Plaintiffs' Interrogatories to Pantech Wireless, Inc. Regarding Unconscionability

27

28

and Scope Issues ("Interrogatories"), dated April 22, 2013. These responses are made solely in response to these Interrogatories, and only in relation to this action.

Pantech sets forth the following objections and limitations while reserving the right to revise, supplement, correct or add to this response. Pantech's counsel is willing to meet and confer with Plaintiffs' counsel, at a mutually agreeable time and place, in order to try to resolve any of the objections set forth herein and to clarify the vague or overbroad terms used by Plaintiffs.

## GENERAL RESPONSES AND OBJECTIONS

1.      Pantech has not completed its investigation, discovery, analysis, legal research, and preparation in this matter. Pantech's responses are based only upon the information and documentation that is presently available and known to Pantech after a reasonable investigation. Further investigation, discovery, analysis, legal research, and/or preparation may reveal additional information or documentation, or provide additional meaning to known factual conclusions and legal contentions, all of which may result in the modification of these objections and responses. Accordingly, Pantech reserves the right to modify, supplement, or amend these objections and responses based upon subsequently ascertained, identified, or developed information, opinions, facts, or contentions, in accordance with the Federal Rules of Civil Procedure, and the Local Rules in this action. Pantech hereby incorporates by reference the following General Responses and Objections and Objections to Definitions (collectively, the "General Objections") set forth below into each and every Specific Response and Objection to each Interrogatory as if fully set forth therein.

2.      At this time, the Court has not yet ruled on Defendants' Consolidated Motion to Compel Arbitration and to Stay Litigation (the "Motion"), which was filed on November 20, 2012. Pursuant to the Court's Orders of May 24, 2012 and July 16, 2012, discovery at this stage of the litigation is limited exclusively to that which is appropriate in the context of a motion to

compel arbitration and that relates directly to the issues raised in the Motion.  (May 24, 2012 Minute Order, (Dkt. No. 59); July 16 Order at 2, ¶ 4.)  Therefore, discovery that exceeds the appropriate bounds of arbitration-related discovery under the law, such as discovery that goes to the merits of the case, is not appropriate at this time.  Consequently, Pantech objects to the Interrogatories to the extent that they seek information that is irrelevant to the arbitrability of this matter and to the extent the Interrogatories are therefore beyond the scope of permissible discovery at this stage of the litigation as ordered by the Court in its Civil Minutes dated May 24, 2012 (Dkt. No. 59) and as clarified in the Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).

3.     Pantech objects to the Interrogatories and their accompanying Definitions ("Definitions") to the extent that they are vague, ambiguous, unintelligible, fail to describe the information sought with the required reasonable particularity, are so unintelligible that Pantech cannot respond, or must speculate as to the information Plaintiffs seek or seek to impose obligations that exceed those imposed by the Federal Rules of Civil Procedure, local rules of this Court, or applicable case law.  Unless instructed otherwise, Pantech shall give the terms of these Interrogatories their ordinary and plain meanings.  Pantech objects to the extent such plain and ordinary meanings do not comport with Plaintiffs' intentions in these Interrogatories.

4.     Pantech objects to the Interrogatories and their accompanying Definitions to the extent they seek information that is irrelevant, immaterial, and/or not directly related to a claim or defense of any party in the above-entitled action, nor calculated to lead to the discovery of admissible evidence.

5.     Pantech objects to the Interrogatories and their accompanying Definitions to the extent that they seek information that is confidential and/or proprietary, or information that is subject to any protective order, privacy interest, contractual obligation, or confidentiality obligation, or otherwise prohibited from disclosure by law.  Such information shall be produced only subject to the terms of the protective order entered in this action.

6.     Pantech objects to the Interrogatories and their accompanying Definitions insofar

as they seek to impose requirements or obligations on Pantech in addition to, or different from, those imposed by the Federal Rules of Civil Procedure, the Local Rules, any applicable Order of this Court, or any stipulation or agreement between the parties. Pantech expressly reserves the right to update, amend, or supplement its responses to these Interrogatories, but assumes no obligation to do so beyond those imposed by the Federal Rules of Civil Procedure and/or the Local Rules.  In addition, these objections are made without prejudice to Pantech's right to present further additional or other evidence or contentions in a motion for summary judgment, at trial, or otherwise, based upon information hereafter identified, obtained, or developed.

7.    Pantech generally objects to the Interrogatories to the extent that they assume facts that Pantech disputes, or to the extent that they are phrased in such a way as to be argumentative or lacking in foundation.

8.    Pantech objects to Interrogatories and their accompanying Definitions insofar as they purport to impose any obligation to provide information that is not in Pantech's possession, custody, or control, and/or insofar that they call for Pantech to prepare documents and/or things that do not already exist; that is on behalf of any third party, or that is equally available to Plaintiffs as it is to Pantech.

9.    Pantech objects to the Interrogatories and their accompanying Definitions to the extent that they are vague, ambiguous, fail to describe the information sought with the required reasonable particularity, or are so unintelligible that Pantech cannot respond or must speculate as to the information Plaintiffs seek.

10.    Pantech objects to the Interrogatories and their accompanying Definitions insofar as they purport to impose any obligation to provide information that is already in Plaintiffs' possession, custody, or control, or that is a matter of public record.

11.    Pantech objects to the Interrogatories and their accompanying Definitions as unduly burdensome insofar as they seek discovery that is cumulative or duplicative.

12.    Pantech objects to the Interrogatories and their accompanying Definitions to the extent they seek electronically-stored information that is not accessible by Pantech because of

undue burden or cost, or otherwise.

13. Pantech objects to the Interrogatories and their accompanying Definitions insofar as they seek information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine, joint-defense privilege, or any other applicable privileges, protections, or immunities, including, but not limited to, communications generated after commencement of this litigation. Nothing in these objections and responses is intended to be or is a waiver of any attorney-client privilege, attorney work product immunity, or any other applicable privilege, immunity, doctrine, or protection.

14. Pantech objects to these Interrogatories and their accompanying Definitions to the extent that they seek information that is confidential and/or proprietary or information that is subject to any protective order, privacy interest, contractual obligation or confidentiality obligation or protection, or otherwise protected by law.

15. Pantech objects to these Interrogatories and their accompanying Definitions to the extent that they call for legal conclusions or otherwise attempt to re-cast legal issues as factual matters. Pantech's responses pursuant to these Interrogatories shall not be construed as agreement with or admission of any legal conclusion concerning the meaning or application of any terms used in such Interrogatories. See, e.g., Martin v. Safeco Ins. Co. of Am., No. 2:11-cv-01063 (E.D. Cal. 2012) (citing Playboy Enters., Inc. v. Welles, 60 F. Supp. 2d 1050, 1057 (S.D. Cal. 1999); see also, In re Enron Corp. Sec. Lit., 762 F. Supp. 2d 942, 959 (S.D. Tex. 2010) (citing In re Carney, 258 F.3d 415, 419 (5th Cir. 2001); EEOC v. Bloomberg L.P., No. 07-cv-8383, 2010 WL 3260150, at *2 (S.D.N.Y. Aug. 4, 2010).

16. Pantech's analysis in this action is continuing. As a result, Pantech's responses are limited to information obtained and reviewed to date. Consequently, Pantech reserves the right to amend or supplement its responses after considering information obtained or reviewed through further discovery or objections.

17. Pantech hereby incorporates by reference each and every General Objection set forth above into each and every specific response set forth below, whether or not separately set

forth therein. A specific response may repeat a General Objection for emphasis or for some other reason. Failure to include any General Objection in any specific response is not a waiver of any General Objection to that response.

18.     The fact that Pantech has responded to part or all of an Interrogatory is not intended to and shall not be construed as a waiver by Pantech of any objection to such Interrogatory.

19.     Pantech objects to the definition of the term "CARRIER IQ" on the ground that it is vague, ambiguous, overbroad, unduly burdensome, and oppressive. Pantech further objects to this definition on the ground that it calls for a legal conclusion. In responding to the Interrogatories, Pantech will interpret the term "CARRIER IQ" to mean Defendant Carrier IQ, Inc.

20.     Pantech objects to the definition of the term "CARRIER IQ SOFTWARE" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

21.     Pantech objects to the definition of the term "CELLULAR PROVIDER" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

22.     Pantech objects to the definition of the term "COMMUNICATION" as vague, ambiguous, overbroad, unduly burdensome, and oppressive. Pantech further objects to the definition of "COMMUNICATION" to the extent it includes communications protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine, joint-defense privilege, or any other applicable privileges, protections, or immunities. Pantech further objects to the definition of "COMMUNICATION" to the extent it includes information that is confidential and/or proprietary, or information that is subject to any protective order, privacy interest, contractual obligation, or confidentiality obligation, or otherwise prohibited from disclosure by law.

23.     Pantech objects to the definition of the term "MATERIALLY" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

24.     Pantech objects to the definition of the term "PERSON" as vague, ambiguous,

overbroad, unduly burdensome, and oppressive.

25.    Pantech objects to the definition of the term "YOU" or "YOUR" (which is purportedly "Defendant Pantech Wireless, Inc. and ANY partner, employee, independent contractor, representative, attorney, agent, accountant, investigator, subsidiary, parent, affiliate, predecessor-in-interest, successor, or other PERSON or entity acting on its behalf or as a fictitious business name for any of the above") where "PERSON" is in turn defined as "any natural person or entity, INCLUDING partnerships, corporations, limited liability companies, associations, governmental agencies, organizations of ANY kind, and ANY agent of the foregoing" on the grounds that the convoluted and multi-part definition is compound, overbroad, vague and ambiguous, calls for a legal conclusion and includes entities that have not been named as defendants in this action and/or are not subject to Pantech's control.  Pantech further objects to the definition because, on its face, the term calls for information and or the production of documents protected by the attorney-client and work product privileges.  In responding to the Requests, Pantech interprets the term "YOU" to mean Pantech Wireless, Inc.

26.    No incidental or implied admissions are intended by the objections herein. The assertion of any objection to any Interrogatory is not intended to mean, and shall not be construed as acknowledging or suggesting, that any responsive information exists or that Pantech has possession, custody, or control over any such information.  Nor shall the fact that Pantech has objected to any Interrogatory be taken as an admission that Pantech accepts or admits the existence of any fact set forth or assumed by such Interrogatory.

27.    Pantech generally objects to the definitions contained in the Interrogatories to the extent that they impose conditions that are vague, ambiguous, overly broad, and unduly burdensome, and to the extent such conditions exceed the requirements of the Federal Rules of Civil Procedure.

28.    Pantech objects to the definition of "PERSON" as vague, ambiguous, uncertain, overbroad, calls for a legal conclusion, and includes entities that have not been named as defendants in this action and/or are not subject to Pantech's control.  The definition includes

"ANY natural person or entity, INCLUDING partnerships, corporations, limited liability companies, associations, governmental agencies, organizations of ANY kind, and ANY agents of the foregoing."  "Requests are 'limited to persons and documents within the responding party's control' as determined by reasonable inquiry, which 'does not require the responding party to interview or subpoena records from independent third parties in order to admit or deny a request for admission.'" <u>AmeriPride Services, Inc. v. Valley Indus. Services, Inc.</u>, 2011 WL 1321873 *2 (E.D. Cal. Apr. 1, 2011).

29.     Pantech objects to the definition of the term "RELEVANT LAWS" as vague, ambiguous, overbroad, unduly burdensome, and oppressive.

30.     Pantech objects to each and every Interrogatory insofar as they incorporate by reference Definitions that render each Interrogatory vague, ambiguous, unduly broad, uncertain, unintelligible, compound, conjunctive, and or disjunctive.

Without waiving or departing from its General Objections, and specifically incorporating the General Objections into each of the Specific Objections below, Pantech makes the following additional objections to specific paragraphs of the Interrogatory.

**INTERROGATORY NO. 1**:

For ALL instances in which YOU have been a party in ANY prior arbitration under ANY of the CELLULAR PROVIDER arbitration provisions you have invoked in this LITIGATION or ANY MATERIALLY similar provisions, where such arbitration related to CARRIER IQ SOFTWARE or involved claims under ANY of the RELEVANT LAWS, please identify ALL such arbitrations by arbitration service, case name, and case number, and please describe the outcomes thereof.

**SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1**

Pantech incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Pantech objects to this Interrogatory to the extent it seeks discovery of information that is beyond the scope of discovery permitted by this Court's April 1, 2013 Order.

Pantech objects to Interrogatory No. 1 as overbroad, unduly burdensome, vague, and

Subject to and without waiving any of the preceding objections, Pantech responds that it has not previously attempted to compel arbitration under the arbitration provisions invoked by Pantech in this litigation, or arbitration provisions similar to those invoked by Pantech in this litigation.

**INTERROGATORY NO. 8**:

Did or does the CARRIER IQ SOFTWARE installed at ANY time on the PANTECH PLAINTIFF's mobile device transmit or cause the transmission of user information or data when it is disconnected from the network of the CELLULAR PROVIDER whose arbitration provision(s) you seek to invoke against him in this LITIGATION, particularly over Wi-Fi or by direct connection to an Internet-capable device (*e.g.* via USB, Firewire, or Bluetooth connection to an Internet-capable computer?) If YOUR answer is yes, please describe all such transmissions, including ALL types of information or data transmitted; and please identify ALL recipients of ALL such information or data transmitted.

**SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8**

Pantech incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Pantech objects to this Interrogatory to the extent it seeks discovery of information that is beyond the scope of discovery permitted by this Court's April 1, 2013 Order.

Pantech objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence.  Pantech objects to Interrogatory No. 8 as overbroad, unduly burdensome, vague, and ambiguous to the extent that the interrogatory calls for information that is not relevant or material to arbitration-related discovery, or seeks information beyond the scope of appropriate arbitration-related discovery permitted by the Federal Arbitration Act.

Pantech objects to this Interrogatory to the extent it seeks information not in Pantech's possession, custody, or control.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence.

Pantech further objects to the terms and phrases "transmit," "transmission(s)," "user," "information," "data," "disconnected," "network," "direct connection," "plaintiff(s)," "Internet-capable," and "recipients" as vague, ambiguous, and undefined. Pantech further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation.

For the purpose of responding to this Interrogatory, Pantech interprets the PANTECH PLAINTIFF's mobile device to refer to the device specifically identified as a Pantech Link II P5000 device. Cummings Decl. ¶10, Defendants' Motion to Compel Arbitration (Dkt. # 132).

For the purpose of responding to this Interrogatory, Pantech interprets the phrase "transmit or cause the transmission" to refer to the act of sending data off the mobile device.

Subject to and without waiving any of the preceding objections, Pantech responds as follows: No. According to the Declaration of Chenell Cummings in Support of Defendants' Motion to Compel Arbitration (Dkt. # 132), Plaintiff Mark Laning is an authorized user of a Pantech Link II P5000 device on the AT&T wireless account of Diane Laning. The Pantech P5000 device is not Wi-Fi capable. To the extent any data collected by the Carrier IQ Agent software on Laning's Pantech P5000 device was transmitted, it would have been transmitted on AT&T's cellular network.

To the best of its knowledge based on its investigations to date, in accordance with the technical specifications AT&T provided to Pantech, Pantech is unaware of any additional capabilities of the Carrier IQ software on the Pantech Plaintiff's mobile device to transmit any mobile device end user data when disconnected from the AT&T cellular network or whether AT&T tasked any of the profiles for the Carrier IQ software installed on the Pantech Plaintiff's mobile device to collect metrics via other means of transmission besides the AT&T cellular network.

**INTERROGATORY NO. 9**:

Did or does the CARRIER IQ SOFTWARE installed at ANY time on the PANTECH PLAINTIFF's mobile device transmit or cause the transmission of user information or data over

the network of the CELLULAR PROVIDER whose arbitration provision(s) YOU seek to invoke against him in this LITIGATION when such mobile device(s) was or is no longer in contract with such CELLULAR PROVIDER? If YOUR answer is yes, please describe all such transmissions, including ALL types of information or data transmitted; and please identify ALL recipients of ALL such information or data transmitted.

## SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9

Pantech incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Pantech objects to this Interrogatory to the extent it seeks discovery of information that is beyond the scope of discovery permitted by this Court's April 1, 2013 Order.

Pantech objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence.  Pantech objects to Interrogatory No. 9 as overbroad, unduly burdensome, vague, and ambiguous to the extent that the interrogatory calls for information that is not relevant or material to arbitration-related discovery, or seeks information beyond the scope of appropriate arbitration-related discovery permitted by the Federal Arbitration Act.

Pantech objects to this Interrogatory to the extent it seeks information not in Pantech's possession, custody, or control. Pantech further objects to the terms and phrases "transmit," "transmission(s)," "user," "information," "data," "network," "no longer in contract," "plaintiff(s)," and "recipients" as vague, ambiguous, and undefined.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation.

Based on Pantech's meet and confer with Plaintiffs on this topic, Pantech understands this Interrogatory to inquire whether any Carrier IQ software installed on a Plaintiff's mobile device transmitted data over a Plaintiff's wireless service provider's cellular network after the Plaintiff discontinued service with that wireless service provider.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant,

immaterial, or is not calculated to lead to the discovery of admissible evidence.

For the purpose of responding to this Interrogatory, Pantech interprets the PANTECH PLAINTIFF's mobile device to refer to the device specifically identified as a Pantech Link II P5000 device.  Cummings Decl. ¶10, Defendants' Motion to Compel Arbitration (Dkt. # 132).

For the purpose of responding to this Interrogatory, Pantech interprets the phrase "transmit or cause the transmission" to refer to the act of sending data off the mobile device.

Subject to and without waiving any of the preceding objections, Pantech responds as follows: Pantech understands from the Declaration of Chenell Cummings in Support of Defendants' Motion to Compel Arbitration (Dkt. # 132) that Plaintiff Mark Laning has not discontinued service with his wireless service provider on the device identified in the declaration. To the extent that he may have discontinued his service with his wireless service provider, whether the Carrier IQ software transmits any data after a mobile device end user has terminated his network service with a wireless service provider is controlled by the profile set by the wireless service provider.  Therefore, to the best of its knowledge based on its investigation to date, Pantech is unaware of whether Plaintiff Mark Laning's mobile device transmitted or caused the transmission of data over the AT&T network in the event that he discontinued service with AT&T.

**INTERROGATORY NO. 10**:

Was the Carrier IQ product known as IQ Experience Insight Manager installed at ANY time on the PANTECH PLAINTIFF's mobile device at issue in this LITIGATION?

**SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10**

Pantech incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Pantech objects to this Interrogatory to the extent it seeks discovery of information that is beyond the scope of discovery permitted by this Court's April 1, 2013 Order.

Pantech objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence.  Pantech objects to Interrogatory No. 10 as overbroad, unduly burdensome,

vague, and ambiguous to the extent that the interrogatory calls for information that is not relevant or material to arbitration-related discovery, or seeks information beyond the scope of appropriate arbitration-related discovery permitted by the Federal Arbitration Act.

Pantech objects to this Interrogatory to the extent it seeks information not in Pantech's possession, custody, or control.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation.

Pantech further objects to this Interrogatory because the phrase "PANTECH PLAINTIFF'S mobile device at issue in this LITIGATION" is vague and ambiguous.  For the purpose of responding to this Interrogatory, Pantech interprets the PANTECH PLAINTIFF's mobile device to refer to the device specifically identified as a Pantech Link II P5000 device. Cummings Decl. ¶10, Defendants' Motion to Compel Arbitration (Dkt. # 132).

Subject to and without waiving any of the preceding objections, Pantech responds as follows: No.

## INTERROGATORY NO. 11:

Did or does the CARRIER IQ SOFTWARE installed at ANY time on the PANTECH PLAINTIFF's mobile device ever see, access, process, filter, store, or transmit from the mobile device: ANY SMS text messages, whether sent by or to the PANTECH PLAINTIFF or other user of the device; ANY URLS containing HTTP or HTTPS strings embedded with information such as search terms, user names, passwords, and geo-or GPS-based location data; media viewing history; telephone numbers dialed and attached to calls received; dialer keypad presses; or application purchases and uses? If YOUR answer to ANY of the foregoing is yes, please specify the information or data involved; and please identify the recipient of ANY such information or data transmitted.

## SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11

Pantech incorporates by reference each of the General Objections set forth above as if

fully set forth herein.

Pantech objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence. Pantech objects to Interrogatory No. 11 as overbroad, unduly burdensome, vague, and ambiguous to the extent that the interrogatory calls for information that is not relevant or material to arbitration-related discovery, or seeks information beyond the scope of appropriate arbitration-related discovery permitted by the Federal Arbitration Act.

Pantech objects to this Interrogatory to the extent it seeks information not in Pantech's possession, custody, or control. Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence. Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related discovery. See Judge Chen's Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) (specifically noting that plaintiffs have failed to explain why the type of data and to whom the data was sent was relevant to the issue of arbitrability and instructing that "[t]o the extent Plaintiffs seek information about the functionality of the Carrier IQ software . . . functionality is relevant to the matter at hand only to the extent it is informative of the means of transmission.").

Pantech further objects to the terms and phrases "installed," "see," "access," "filter," "store," "transmit," "plaintiff," "other user," "HTTP or HTTPS strings embedded with information," "media viewing history," "telephone numbers dialed and attached to calls received," "dialer keypad presses," "application purchases and uses," "information," "data," and "recipient" as vague, ambiguous, and undefined. Pantech further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation. Pantech further objects to this Interrogatory to the extent that it contains subparts and compound questions.

**INTERROGATORY NO. 12**:

For ANY information or data identified in your answer to Interrogatory No. 11 that is seen, accessed, processed, filtered, stored, or transmitted by the CARRIER IQ SOFTWARE, please identify with specificity ANY term(s) or provision(s) of the CELLULAR PROVIDER terms and conditions of service or other agreement(s) whose arbitration provisions YOU invoke as to the PANTECH PLAINTIFF that YOU contend permits or addresses the seeing, accessing, processing, filtering, storage, or transmission thereof.

**SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12**

Pantech incorporates by reference each of the General Objections set forth above as if fully set forth herein.

Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related discovery.  See Judge Chen's Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) (specifically noting that plaintiffs have failed to explain why the type of data and to whom the data was sent was relevant to the issue of arbitrability and instructing that "[t]o the extent Plaintiffs seek information about the functionality of the Carrier IQ software . . . functionality is relevant to the matter at hand only to the extent it is informative of the means of transmission.").

Pantech objects to this Interrogatory to the extent it seeks information not in Pantech's possession, custody, or control.  Pantech further objects to this Interrogatory as vague, overbroad, and unduly burdensome to the extent it seeks information regarding "ANY term(s) or provision(s) of the CELLULAR PROVIDER terms and conditions of service."

Pantech further objects to the terms and phrases "information," "data," "seen," "accessed," "processed," "filtered," "stored," "transmitted," "plaintiff," "permits," "addresses," "seeing," "accessing," "processing," "filtering," "storage," and "transmission" as vague, ambiguous, and undefined.  Pantech further objects to this Interrogatory to the extent it seeks information not in its possession, custody, control or knowledge.  Pantech further objects to this

Interrogatory to the extent that it contains subparts and compound questions.

Subject to and without waiving the preceding objections, Pantech responds as follows: This Interrogatory is not applicable per Pantech's Response to Interrogatory No. 11 above.

**INTERROGATORY NO. 13:**

Has the CARRIER IQ SOFTWARE been removed from, or disabled on, the mobile device belonging to the PANTECH PLAINTIFF by YOU or any CELLULAR PROVIDER? If so, please describe the contents of ALL COMMUNICATIONS explaining the reasons for, or demanding, that the CARRIER IQ SOFTWARE be removed or disabled, including ANY such COMMUNICATIONS advising or explaining that the CARRIER IQ SOFTWARE was not operating as contemplated, specified, or agreed-to by the PANTECH PLAINTIFF's CELLULAR PROVIDE or CARRIER IQ itself, or as purportedly contemplated by the PANTECH PLAINTIFF's terms and conditions of service, or other agreements, with his CELLULAR PROVIDER.

**SPECIFIC OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13**

Pantech incorporates by reference each of the General Objections set forth above as if fully set forth herein.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information that is irrelevant, immaterial, or not calculated to lead to the discovery of admissible evidence and is beyond the scope of appropriate arbitration-related discovery.  See Judge Chen's Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) (specifically noting that plaintiffs have failed to explain why the type of data and to whom the data was sent was relevant to the issue of arbitrability and instructing that "[t]o the extent Plaintiffs seek information about the functionality of the Carrier IQ software . . . functionality is relevant to the matter at hand only to the extent it is informative of the means of transmission.").

Pantech objects to this Interrogatory to the extent that it seeks disclosure of information that is privileged, confidential and/or proprietary.  Pantech objects to this Interrogatory to the extent it seeks information not in Pantech's possession, custody, or control.  Pantech further objects to this Interrogatory as overbroad and unduly burdensome in that it seeks information

that is irrelevant, immaterial, or is not calculated to lead to the discovery of admissible evidence. Pantech further objects to this Interrogatory as vague, overbroad, and unduly burdensome in that it seeks "ALL COMMUNICATIONS" and "ANY such COMMUNICATIONS".

Pantech specifically objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine, joint-defense privilege, common interest privilege, or any other applicable privileges, protections, or immunities, including, but not limited to, communications generated after commencement of this litigation.

Pantech further objects to the terms and phrases "removed," "disabled," "plaintiff," "contents," and "not operating as contemplated, specified, or agreed-to" as vague, ambiguous, and undefined. Pantech further objects to this Interrogatory to the extent it seeks information not in its possession, custody, control, or knowledge. Pantech further objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation.

Dated: May 28, 2013

Respectfully submitted,

_____/wayne m. helge/_____
Wayne M. Helge (*pro hac vice*)
H. C. PARK & ASSOCIATES, PLC
1894 Preston White Drive
Reston, VA 20191
Telephone: (703) 288-5105
Facsimile: (703) 288-5139
whelge@park-law.com

ATTORNEY FOR DEFENDANT
PANTECH WIRELESS, INC.

1  LANCE A. ETCHEVERRY (State Bar No. 199916)
   Lance.Etcheverry@skadden.com
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
3  Los Angeles, California 90071
   Telephone:    (213) 687-5000
4  Facsimile:    (213) 687-5600

5  S. SHERYL LEUNG (State Bar No. 238229)
   Sheryl.Leung@skadden.com
6  KERRY S. KUMABE (State Bar No. 273552)
   Kerry.Kumabe@skadden.com
7  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
8  Palo Alto, California 94301
   Telephone:    (650) 470-4500
9  Facsimile:    (650) 470-4570

10 Attorneys for Defendant
   SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

11

12            **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
13              **SAN FRANCISCO DIVISION**

14 | *In re Carrier IQ, Inc. Consumer Privacy* | ) | **CASE NO. 3:12-md-02330-EMC** |
   *Litigation*

15                                              ) **DEFENDANT SAMSUNG**
                                                ) **TELECOMMUNICATIONS AMERICA,**
16    *[This Document Relates to All Cases]*    ) **LLC'S RESPONSES AND OBJECTIONS**
                                                ) **TO PLAINTIFFS' INTERROGATORIES**
17                                              ) **REGARDING UNCONSCIONABILITY**
                                                ) **AND SCOPE ISSUES**
18                                              )
                                                ) Hon.  Edward M. Chen
19 _____ )

20

21 **PROPOUNDING PARTY:  Plaintiffs**

22 **RESPONDING PARTY:    Defendant Samsung Telecommunications America, LLC**

23 **SET:                One (1)**

24

25

26

27

28

1   Pursuant to Federal Rules of Civil Procedure 26 and 33 and all applicable Local

2   Rules, Defendant Samsung Telecommunications America, LLC ("Samsung"), by and through its

3   attorneys as set forth below, hereby objects and responds to Plaintiffs' First Set of Interrogatories

4   (the "Interrogatories").

5   **<u>PRELIMINARY STATEMENT</u>**

6   Samsung's responses and objections to the Interrogatories are set forth below.  At

7   this time, the Court has not yet ruled on Defendants' Consolidated Motion to Compel Arbitration

8   and to Stay Litigation (the "Motion"), which was filed on November 20, 2012.  Pursuant to the

9   Court's Orders of May 24, 2012 and July 16, 2012, discovery at this stage of the litigation is limited

10  exclusively to that which is appropriate in the context of a motion to compel arbitration and that

11  relates directly to the issues raised in the Motion.  (May 24 Minute Order, July 16 Order at 2, ¶ 4.)

12  Therefore, discovery that exceeds the appropriate bounds of arbitration-related discovery under the

13  law, such as discovery that goes to the merits of the case, is not appropriate at this time.  Moreover,

14  Samsung's investigation is ongoing.  Consequently, Samsung reserves its right to amend, modify or

15  supplement the objections below as new information becomes available should such amendments,

16  modifications or supplements become appropriate.  Additionally, because Samsung's responses are

17  based on facts and documents that Samsung has identified to date, they do not preclude Samsung

18  from later relying on facts or documents discovered or generated pursuant to subsequent

19  investigation or discovery.  Samsung's responses to the Interrogatories are not to be construed as a

20  waiver of any of its objections or rights to object to any other request.  Likewise, Samsung's

21  objections to the disclosure of any information requested by the Interrogatories are not and shall

22  not be construed as an admission by Samsung that any such information exists.

23  **<u>GENERAL OBJECTIONS</u>**

24  The following General Objections are hereby incorporated into each of the specific

25  responses as if they were set forth in full in the response.  The Specific Objections following

26  individual interrogatories are intended to amplify these General Objections and neither limit the

27  applicability of any of the General Objections nor waive any objections which may, in addition to

28  those set forth below, be applicable to an individual interrogatory.

1.      Samsung generally objects to the Interrogatories and their accompanying definitions to the extent that they purport to impose obligations or requirements beyond those contained in the Federal Rules of Civil Procedure or the Local Civil Rules of the United States District Court for the Northern District of California.  Samsung will respond to the Interrogatories consistent with the applicable Federal and Local Rules.

2.      Samsung generally objects to the Interrogatories to the extent they seek the disclosure of information (1) not currently within its possession, custody or control; (2) that Samsung cannot locate after a reasonably diligent search; or (3) that refer to persons, entities, or events not known to Samsung.

3.      Samsung generally objects to the Interrogatories and their accompanying definitions to the extent that they purport to require disclosure of information that is protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, confidentiality rights and obligations, doctrine, or immunity.  Nothing contained in these responses is intended to be or may be construed as a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, confidentiality rights and obligations, doctrine or immunity.  The inadvertent disclosure or production of attorney work product, confidential material and/or attorney-client privileged material is not intended to be a waiver of any applicable privilege or protection.

4.      Samsung generally objects to these Interrogatories to the extent they seek information that is neither relevant to the question of arbitrability nor reasonably calculated to lead to the discovery of admissible evidence regarding arbitration issues, and thus are beyond the scope of arbitration-related discovery permitted by the Federal Arbitration Act and as ordered by this Court in its Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. No. 157).  *See* 9 U.S.C. § 4; *see also*, *e.g., Meyer v. T-Mobile USA Inc*., 836 F. Supp. 2d 994, 1007 (N.D. Cal. 2011) (confining arbitration-related discovery to the issues of the making and performance of the arbitration agreement and the validity of the arbitration agreement); *Hodsdon v. DirecTV, LLC*, C 12-02827 JSW, 2012 WL 5464615, at *8 (N.D. Cal. Nov. 8, 2012) (denying discovery requests related to the merits of the parties' underlying dispute).

5.     Samsung generally objects to these Interrogatories to the extent they seek information which is already in Plaintiffs' possession or is equally or more available to Plaintiffs.

6.     Samsung generally objects to providing responses to Interrogatories that can be derived from documents that have or will be produced by third parties and where the burden to derive such information is substantially the same for Plaintiffs as it is for Samsung.

7.     Samsung generally objects to the Interrogatories to the extent they seek private, confidential, commercially sensitive, trade secret, information subject to non-disclosure agreements and confidentiality provisions, or proprietary business information that has been maintained in confidence.

8.     Samsung reserves the right to object in any subsequent proceeding, including the trial of this or any other action, to the use of these responses and objections and information produced in response to the Interrogatories on any ground, including but not limited to objections concerning competency, relevance, materiality, and admissibility.

9.     Samsung generally objects to the Interrogatories to the extent that they assume facts that Samsung disputes, or to the extent they are phrased in such a way as to be argumentative or lacking in foundation.

10.     To the extent these Interrogatories call for Samsung to provide information concerning the legal basis regarding its defense of this matter, Samsung generally objects on the grounds that the Interrogatories impermissibly call for mental impressions, conclusions, opinions and/or legal theories of its attorneys.

11.     Samsung generally objects to the definitions contained in the Interrogatories to the extent that they impose conditions that are vague, ambiguous, overly broad and unduly burdensome, and to the extent such conditions exceed the requirements of the Federal Rules of Civil Procedure.  In responding to the Interrogatories, Samsung does not adopt, embrace or accept any of the terms Plaintiffs have employed, including:

a.     Samsung objects to the definition of the term "CARRIER IQ" (Definitions ¶ B).  The definition includes "partner, employee, independent contractor, representative, attorney, agent, accountant, investigator, subsidiary, parent, affiliate, predecessor-in-interest, successor, or

3

**DEFENDANT SAMSUNG'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' INTERROGATORIES REGARDING UNCONSCIONABILITY AND SCOPE ISSUES                                    CASE NO. 3:12-MD-02330-EMC**

other PERSON or entity acting on its behalf or as a fictitious business name for any of the above" where "PERSON" (Definitions ¶ I) is in turn defined as "any natural person or entity, INCLUDING partnerships, corporations, limited liability companies, associations, governmental agencies, organizations of any kind, and any agent of the foregoing." Samsung objects to the definition on the grounds that the convoluted and multi-part term is compound, overbroad and unduly burdensome, vague and ambiguous, calls for a legal conclusion and includes entities that have not been named as defendants in this action and/or are not subject to Samsung's control. In responding to the Interrogatories, Samsung will interpret the term "CARRIER IQ" to refer to Defendant Carrier IQ, Inc.

        b.      Samsung objects to the definition of the term "CARRIER IQ SOFTWARE" (Definitions ¶ C) as vague, ambiguous, overbroad and unduly burdensome. The definition includes "IQ Experience Insight Manager," a term that is not further defined and further purports to include "any implementing or interfacing software or code." In responding to the Interrogatories, Samsung interprets the term "CARRIER IQ SOFTWARE" to refer to the software identified in Samsung's letter of December 14, 2011 to Senator Al Franken.

        c.      Samsung objects to the definition of the term "COMMUNICATION" (Definitions ¶ E) as vague, ambiguous, overbroad, unduly burdensome and oppressive. The definition includes "any and ALL communications of any kind, INCLUDING any and ALL conversations, discussions, inquiries, correspondence, notes (handwritten or otherwise), message slips, logs, e-mail (or other similar electronic communication), or other such transmittal of information, whether written, oral, or by any other means . . . [and] internal communications." The term "internal communications" is vague and ambiguous because it does not specify the reference point, *i.e.,* to what group or entity the communication is internal and could be interpreted as requiring information concerning communications internal to other companies or organizations outside of Samsung and beyond Samsung's custody, possession or control. In responding to the Interrogatories, Samsung shall interpret "COMMUNICATION" to refer to information exchanged by speech, writing or gesture.

        d.      Samsung objects to the definition of the term "RELEVANT LAWS"

4

1  (Definitions ¶ K) on the grounds that the term is overbroad and unduly burdensome.  The definition

2  includes "ANY of the laws at issue in this LITIGATION, including the Federal Wiretap Act, the

3  federal Stored Communications Act, the federal Computer Fraud and Abuse Act, state wiretap and

4  privacy acts, state consumer protection or consumer fraud acts, the federal Magnuson-Moss

5  Warranty Act, and/or state implied warranty of merchantability laws."  Samsung further objects to

6  the term on the grounds that it is vague and ambiguous because Plaintiffs failed to identify the

7  wiretap and privacy acts, consumer protection or consumer fraud acts, or state implied warranty of

8  merchantability laws of the state(s) at issue.

9          e.     Samsung objects to the definition of the term "YOU" or "YOUR"

10  (Definitions ¶ M) (which is purportedly "defendant Samsung Telecommunications America, LLC.

11  and ANY partner, employee, independent contractor, representative, attorney, agent, accountant,

12  investigator, subsidiary, parent, affiliate, predecessor-in-interest, successor, or other PERSON or

13  entity acting on its behalf or as a fictitious business name for ANY of the above" where

14  "PERSON" (Definition ¶ I) is in turn defined as "any natural person or entity, INCLUDING

15  partnerships, corporations, limited liability companies, associations, governmental agencies,

16  organizations of any kind, and any agent of the foregoing") on the grounds that the convoluted and

17  multi-part definition is compound, overbroad, vague and ambiguous, calls for a legal conclusion

18  and includes entities that have not been named as defendants in this action and/or are not subject to

19  Samsung's control.  Samsung further objects to the definition because, on its face, the term calls for

20  information protected by the attorney-client and work product privileges.  In responding to the

21  Interrogatories, Samsung interprets the term "YOU" or "YOUR" to refer to Samsung

22  Telecommunications America, LLC.

23          12.     Samsung generally objects to the Interrogatories, and each and every request for

24  information contained therein because the parties have not finished discovery, and Samsung's

25  investigation is ongoing.  Samsung reserves the right to supplement or amend its responses set

26  forth below should additional responsive or relevant information or documents be discovered as its

27  investigation proceeds.

28

1  **INTERROGATORY NO. 8:**

2          Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the

3  SAMSUNG PLAINTIFFS' mobile devices transmit or cause the transmission of user information

4  or data when it is disconnected from the network of the CELLULAR PROVIDER whose

5  arbitration provision(s) you seek to invoke against ANY SAMSUNG PLAINTIFF in this

6  LITIGATION, particularly over Wi-Fi or by direct connection to an Internet-capable device (e.g.,

7  via USB, Firewire, or Bluetooth connection to an Internet-capable computer)?  If YOUR answer is

8  yes, please identify the SAMSUNG PLAINTIFF(S) affected and his, her, or their mobile device(s);

9  please describe ALL such transmissions, including ALL types of information or data transmitted;

10  and please identify ALL recipients of ALL such information or data transmitted.

11  **RESPONSE TO INTERROGATORY NO. 8:**

12          Samsung incorporates by reference its General Objections above as though fully set

13  forth herein.  Samsung objects to this Interrogatory on the grounds that it exceeds the scope of

14  arbitration-related discovery as defined by the applicable law and does not seek information

15  relevant to the issue of arbitrability set forth in the pending motion to compel arbitration.  Samsung

16  further objects to this Interrogatory as overbroad, unduly burdensome, vague and ambiguous,

17  including but not limited to its use of the defined terms "CARRIER IQ SOFTWARE," "YOUR"

18  and the undefined terms and/or phrase "ANY of the SAMSUNG PLAINTIFFS' mobile devices,"

19  "transmit or cause the transmission," "user information or data," and "affected."  Samsung objects

20  to this Interrogatory as overbroad and unduly burdensome because it seeks information without any

21  time limitation.  Samsung further objects to this Interrogatory to the extent it calls for the

22  disclosure of information not in Samsung's possession, custody or control or information regarding

23  third parties.  Samsung further objects to this Interrogatory because it contains subparts and

24  compound questions.

25          In responding to this Interrogatory, Samsung interprets the phrase "ANY of the

26  SAMSUNG PLAINTIFFS' mobile devices" to refer to the devices specifically identified below:

27

28

| No. | Plaintiff | Make | Model | Carrier |
|---|---|---|---|---|
| 1 | Thomas, Eric | Samsung | Replenish (Miller Decl. ¶ 28) | Sprint |
| 2 | Levy, Leron | Samsung | Moment (Miller Decl. ¶ 17) | Sprint |
| 3 | Cribbs, Gary | Samsung | Galaxy S II Skyrocket SGH-i727 (Cummings Decl. ¶ 5) | AT&T |
| 4 | Pipkin, Daniel | Samsung | Galaxy S II Skyrocket SGH-i727 (Cummings Decl. ¶ 12) | AT&T |
| 5 | Kenny, Patrick | Samsung | Epic 4G (Miller Decl. ¶ 52) | Sprint |
| 6 | McKeen, Ryan | Samsung | Epic (Miller Decl. ¶ 97) | Sprint |
| 7 | Grisham, Shawn | Samsung | Epic 4G (Miller Decl. ¶ 119) | Sprint |

In responding to this Interrogatory, Samsung interprets the phrase "transmit or cause the transmission" to refer to Carrier IQ software sending data from a mobile device on which it is installed to a location external to that mobile device.

Subject to and without waiving the foregoing General and Specific Objections, Samsung responds as follows:

According to the Declaration of Stephanie Miller (Dkt. # 135), the mobile devices used by plaintiffs Eric Thomas, Leron Levy, Patrick Kenny, Ryan McKeen and Shawn Grisham (together, the "Samsung Sprint Plaintiffs") operated on Sprint's network.  To the best of its knowledge based on its investigations to date, in accordance with the technical requirements Sprint provided to Samsung, Samsung did not program the Samsung Sprint Plaintiffs' mobile devices to enable the transmission of data collected by the Carrier IQ software when those devices are disconnected from the Sprint network.  Samsung is unaware of any additional capabilities of the Carrier IQ software on the Samsung Plaintiffs' mobile devices to transmit any mobile device end-user data when disconnected from the Sprint cellular network or whether Sprint tasked any of the profiles for the Carrier IQ software installed on the Samsung Sprint Plaintiffs' mobile devices to collect metrics via Wi-Fi or other means of transmission besides the Sprint cellular network.

According to the Declaration of Chenell Cummings in support of Defendants' Motion to Compel Arbitration (Dkt. # 132), both Plaintiffs Gary Cribbs and Daniel Pipkin (together, the "Samsung AT&T Plaintiffs") used the Samsung Galaxy S II Skyrocket SGH-i727 on

16

1  AT&T's wireless network.  Based on Plaintiffs' own allegations, Samsung understands that the

2  Carrier IQ software has not been activated in Samsung Skyrocket devices, (see, e.g., FCAC ¶ 53),

3  and therefore could not have transmitted or caused the transmission of data through AT&T's

4  cellular network or while disconnected from AT&T's cellular network, including through Wi-Fi.

5  Samsung is unaware of whether AT&T tasked any of the profiles for the Carrier IQ software

6  installed on the Samsung AT&T Plaintiffs' mobile devices to collect metrics via Wi-Fi or through

7  other means of transmission besides the AT&T cellular network.

8  **INTERROGATORY NO. 9:**

9          Did or does the CARRIER IQ SOFTWARE installed at ANY time on ANY of the

10  SAMSUNG PLAINTIFFS' mobile devices transmit or cause the transmission of user information

11  or data over the network of the CELLULAR PROVIDER whose arbitration provision(s) YOU seek

12  to invoke against ANY SAMSUNG PLAINTIFF in this LITIGATION when such mobile device(s)

13  was or is no longer in contract with such CELLULAR PROVIDER?  If YOUR answer is yes,

14  please identify the SAMSUNG PLAINTIFF(S) affected and his, her, or their mobile device(s);

15  please describe ALL such transmissions, including ALL types of information or data transmitted;

16  and please identify ALL recipients of ALL such information or data transmitted.

17  **RESPONSE TO INTERROGATORY NO. 9:**

18          Samsung incorporates by reference its General Objections above as though fully set

19  forth herein.  Samsung objects to this Interrogatory on the grounds that it exceeds the scope of

20  arbitration-related discovery as defined by the applicable law and does not seek information

21  relevant to the issue of arbitrability set forth in the pending motion to compel arbitration.  Samsung

22  further objects to this Interrogatory as overbroad, unduly burdensome, vague and ambiguous,

23  including but not limited to its use of the defined terms "CARRIER IQ SOFTWARE," "YOUR"

24  and the undefined terms and/or phrase "ANY of the SAMSUNG PLAINTIFFS' mobile devices,"

25  "transmit or cause the transmission," "user information or data," and "affected."  Based on Carrier

26  IQ's meet and confer with Plaintiffs on this topic, Samsung understands this Interrogatory to

27  inquire whether any Carrier IQ software installed on a Plaintiff's mobile device transmitted data

28  over a Plaintiff's wireless service provider's cellular network after the Plaintiff discontinued service

with that wireless service provider.  Samsung objects to this Interrogatory as overbroad and unduly burdensome because it seeks information without any time limitation.  Samsung further objects to this Interrogatory to the extent it calls for the disclosure of information not in Samsung's possession, custody or control or information regarding third parties.  Samsung objects to this Interrogatory because it contains subparts and compound questions.

In responding to this interrogatory, Samsung interprets the phrase "ANY of the SAMSUNG PLAINTIFFS' mobile devices" to refer to the devices specifically identified below:

| No. | Plaintiff | Make | Model | Carrier |
|-----|-----------|------|-------|---------|
| 1 | Thomas, Eric | Samsung | Replenish (Miller Decl. ¶ 28) | Sprint |
| 2 | Levy, Leron | Samsung | Moment (Miller Decl. ¶ 17) | Sprint |
| 3 | Cribbs, Gary | Samsung | Galaxy S II Skyrocket SGH-i727 (Cummings Decl. ¶ 5) | AT&T |
| 4 | Pipkin, Daniel | Samsung | Galaxy S II Skyrocket SGH-i727 (Cummings Decl. ¶ 12) | AT&T |
| 5 | Kenny, Patrick | Samsung | Epic 4G (Miller Decl. ¶ 52) | Sprint |
| 6 | McKeen, Ryan | Samsung | Epic (Miller Decl. ¶ 97) | Sprint |
| 7 | Grisham, Shawn | Samsung | Epic 4G (Miller Decl. ¶ 119) | Sprint |

In responding to this interrogatory, Samsung interprets the phrase "transmit or cause the transmission" to refer to Carrier IQ software sending data from a mobile device on which it is installed to a location external to that mobile device.

Subject to and without waiving the foregoing General and Specific Objections, Samsung responds as follows:

Samsung understands from the Declaration of Chenell Cummings in Support of Defendants' Motion to Compel Arbitration (Dkt. # 132), the Declaration of Stacie Dobbs in Support of Defendants' Motion to Compel Arbitration (Dkt. # 130), and the Declaration of Stephanie Miller (Dkt. # 135), that the SAMSUNG PLAINTIFFS have not discontinued their service with their respective wireless service providers on the devices identified in those

1   declarations, and therefore this Interrogatory is inapplicable.  To the extent that any SAMSUNG

2   PLAINTIFF may have discontinued his service with his wireless service provider, whether the

3   Carrier IQ software transmits any data after a mobile device end-user has terminated his network

4   service with a wireless service provider is controlled by the profile set by the wireless service

5   provider.  Therefore, to the best of its knowledge based on its investigation to date, Samsung is

6   unaware as to whether any of the above listed Samsung mobile devices transmitted or caused the

7   transmission of data over the AT&T or Sprint network in the event that any of the SAMSUNG

8   PLAINTIFFS discontinued service with his respective wireless service provider.

9   **INTERROGATORY NO. 10:**

10   Was the Carrier IQ product known as IQ Experience Insight Manager installed at

11   ANY time on ANY of the SAMSUNG PLAINTIFFS' mobile devices at issue in this LITIGATION?

12   If so, please identify the SAMSUNG PLAINTIFF(S) affected and his, her, or their mobile

13   device(s).

14   **RESPONSE TO INTERROGATORY NO. 10:**

15   Samsung incorporates by reference its General Objections above as though fully set

16   forth herein.  Samsung further objects to this Interrogatory on the grounds that it is overbroad and

17   unduly burdensome to the extent it seeks information beyond the relevant time period.  Samsung

18   further objects to this Interrogatory because the phrase "SAMSUNG PLAINTIFFS' mobile devices

19   at issue in this LITIGATION" is vague and ambiguous.

20   In responding to this Interrogatory, Samsung interprets the phrase "SAMSUNG

21   PLAINTIFFS' mobile devices at issue in this LITIGATION" to refer to the devices specifically

22   identified below:

23

| No. | Plaintiff | Make | Model | Carrier |
|-----|-----------|------|-------|---------|
| 1 | Thomas, Eric | Samsung | Replenish (Miller Decl. ¶ 28) | Sprint |
| 2 | Levy, Leron | Samsung | Moment (Miller Decl. ¶ 17) | Sprint |
| 3 | Cribbs, Gary | Samsung | Galaxy S II Skyrocket SGH-i727 (Cummings Decl. ¶ 5) | AT&T |

| | 4 | Pipkin, Daniel | Samsung | Galaxy S II Skyrocket SGH-i727 (Cummings Decl. ¶ 12) | AT&T |
|---|---|---|---|---|---|
| | 5 | Kenny, Patrick | Samsung | Epic 4G (Miller Decl. ¶ 52) | Sprint |
| | 6 | McKeen, Ryan | Samsung | Epic (Miller Decl. ¶ 97) | Sprint |
| | 7 | Grisham, Shawn | Samsung | Epic 4G (Miller Decl. ¶ 119) | Sprint |

Subject to, and without waiving the foregoing General and Specific Objections, Samsung responds as follows:

To the best of its knowledge based on its investigation to date, Samsung did not install, and is not aware of another party installing, a Carrier IQ product known as IQ Experience Insight Manager on any of the SAMSUNG PLAINTIFFS' mobile devices at issue in this litigation.

Samsung's investigation is ongoing and may reveal additional information that may be responsive to this Interrogatory.

**INTERROGATORY NO. 11:**

Did or does CARRIER IQ SOFTWARE installed at ANY time on ANY of the SAMSUNG PLAINTIFFS' mobile devices ever see, access, process, filter, store, or transmit from the mobile device: ANY SMS text messages, whether sent by or to the SAMSUNG PLAINTIFF or other user of the device; ANY URLs containing HTTP or HTTPS strings embedded with information such as search terms, user names, passwords, and geo- or GPS-based location data; media viewing history; telephone numbers dialed and attached to calls received; dialer keypad presses; or application purchases and uses? If YOUR answer to ANY of the foregoing is yes, please identify the SAMSUNG PLAINTIFF(S) affected and his, her, or their mobile device(s); please specify the information or data involved; and please identify the recipient of ANY such information or data transmitted.

**RESPONSE TO INTERROGATORY NO. 11:**

Samsung incorporates by reference its General Objections above as though fully set forth herein.  Samsung objects to this Interrogatory on the grounds that it exceeds the scope of arbitration-related discovery as defined by the applicable law and does not seek information relevant to the issue of arbitrability set forth in the pending motion to compel arbitration.  *See*

20

1  Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) (specifically noting that

2  Plaintiffs have failed to explain why the type of data and to whom the data was sent was relevant to

3  the issue of arbitrability and instructing that "[t]o the extent Plaintiffs seek information about the

4  functionality of the Carrier IQ software . . . functionality is relevant to the matter at hand only to

5  the extent it is informative of the means of transmission.").  Samsung further objects to this

6  Interrogatory because the defined terms "CARRIER IQ SOFTWARE," "YOUR" and undefined

7  terms and/or phrases "ANY of the SAMSUNG PLAINTIFFS' mobile devices," "see," "access,"

8  "process," "filter," "store" "other user of the device," "HTTP or HTTPS strings embedded with

9  information," "media viewing history," "telephone numbers . . . attached to calls received," "dialer

10  keypad presses," "application purchases and uses," "affected," and "information or data involved"

11  are vague and ambiguous.  Samsung objects to this Interrogatory as overbroad and unduly

12  burdensome because it seeks information without any time limitation.  Samsung further objects to

13  this Interrogatory to the extent it calls for the disclosure of information not in Samsung's possession,

14  custody or control or information regarding third parties.  Samsung further objects to this

15  Interrogatory because it contains subparts and compound questions.

16  **INTERROGATORY NO. 12:**

17  For ANY information or data identified in your answer to Interrogatory No. 11 that

18  is seen, accessed, processed, filtered, stored, or transmitted by the CARRIER IQ SOFTWARE,

19  please identify with specificity ANY term(s) or provision(s) of the CELLULAR PROVIDER terms

20  and conditions of service or other agreement(s) whose arbitration provisions YOU invoke as to

21  ANY SAMSUNG PLAINTIFF that YOU contend permits or addresses the seeing, accessing,

22  processing, filtering, storage, or transmission thereof.

23  **RESPONSE TO INTERROGATORY NO. 12:**

24  Samsung incorporates by reference its General Objections above as though fully set

25  forth herein.  Samsung objects to this Interrogatory on the grounds that it exceeds the scope of

26  arbitration-related discovery as defined by the applicable law and does not seek information

27  relevant to the issue of arbitrability set forth in the pending motion to compel arbitration.  *See*

28  Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) (specifically noting that

1  Plaintiffs have failed to explain why the type of data and to whom the data was sent was relevant to

2  the issue of arbitrability and instructing that "[t]o the extent Plaintiffs seek information about the

3  functionality of the Carrier IQ software . . . functionality is relevant to the matter at hand only to

4  the extent it is informative of the means of transmission.").  Samsung further objects to this

5  Interrogatory because the defined terms "CARRIER IQ SOFTWARE," "YOU" and undefined

6  terms "seen," "accessed," "processed," "filtered," "stored," "permits," "seeing," "accessing,"

7  "processing," "filtering," and "storage" are vague and ambiguous.  Samsung further objects to this

8  Interrogatory because it contains subparts and compound questions.

9        Subject to, and without waiving the foregoing General and Specific Objections,

10  Samsung responds as follows:

11        This Interrogatory is not applicable per Samsung's Response to Interrogatory No. 11

12  above.

13  **INTERROGATORY NO. 13:**

14        Has the CARRIER IQ SOFTWARE been removed from, or disabled on, ANY

15  mobile device belonging to ANY SAMSUNG PLAINTIFF by YOU or ANY CELLULAR

16  PROVIDER?  If so, please identify the SAMSUNG PLAINTIFF(S) affected and his, her, or their

17  mobile device(s), and please describe the contents of ALL COMMUNICATIONS explaining the

18  reasons for, or demanding, that the CARRIER IQ SOFTWARE be removed or disabled, including

19  ANY such COMMUNICATIONS advising or explaining that the CARRIER IQ SOFTWARE was

20  not operating as contemplated, specified, or agreed-to by ANY of the SAMSUNG PLAINTIFFS'

21  CELLULAR PROVIDERS or CARRIER IQ itself, or as purportedly contemplated by ANY of the

22  SAMSUNG PLAINTIFF(S)' terms and conditions of service, or other agreements, with ANY such

23  CELLULAR PROVIDER.

24  **RESPONSE TO INTERROGATORY NO. 13:**

25        Samsung incorporates by reference its General Objections above as though fully set

26  forth herein.  Samsung objects to this Interrogatory on the grounds that it exceeds the scope of

27  arbitration-related discovery as defined by the applicable law and does not seek information

28  relevant to the issue of arbitrability set forth in the pending motion to compel arbitration.  *See*

22

1  Order re Joint Letter of March 21, 2013, dated April 1, 2013 (Dkt. # 157) ("To the extent Plaintiffs

2  seek information about the functionality of the Carrier IQ software . . . functionality is relevant to

3  the matter at hand only to the extent it is informative of the means of transmission.").  Samsung

4  further objects to this Interrogatory because the defined terms "CARRIER IQ," "CARRIER IQ

5  SOFTWARE," "COMMUNICATIONS," "YOUR" and undefined terms and phrases "ANY mobile

6  device belonging to ANY SAMSUNG PLAINTIFF," "removed," "disabled," "not operating as

7  contemplated, specified, or agreed-to," and "as purportedly contemplated by ANY of the

8  SAMSUNG PLAINTIFF(S)' terms and conditions of service, or other agreements with ANY such

9  CELLULAR PROVIDER" are vague and ambiguous, overbroad and unduly burdensome.

10  Samsung objects to this Interrogatory to the extent that it seeks disclosure of information that is

11  protected from discovery by the attorney-client privilege, the attorney work product doctrine, or

12  any other applicable privilege, confidentiality rights and obligations, doctrine or immunity.

13  Samsung further objects to this Interrogatory to the extent it calls for the disclosure of information

14  not in Samsung's possession, custody or control or information regarding third parties.  Samsung

15  further objects to this Interrogatory because it contains subparts and compound questions.

16  DATED:  May 28, 2013

17                                      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

18

19                                      By:  _____/s/ Lance A Etcheverry_____
20                                                  LANCE A. ETCHEVERRY

21                                          Attorneys for Defendant
                                        SAMSUNG TELECOMMUNICATIONS AMERICA, LLC

22

23

24

25

26

27

28