JOINT SUBMISSION
*In re Carrier IQ, Inc. Consumer Privacy Litigation*, Case No. 3:12-md-2330-EMC

September 6, 2013

**VIA ECF**

Honorable Edward M. Chen
United States District Court
San Francisco, CA  94102

Dear Judge Chen:

      Pursuant to the Court's order of August 23, 2013, the plaintiffs and Google Inc. ("Google") respectfully submit this joint letter brief regarding their dispute as to plaintiffs' pending subpoena.  Notwithstanding their efforts to resolve this dispute voluntarily, they have been unable to do so.  The signatures of counsel on this letter attest that their clients have reached an impasse and require the Court's assistance to resolve this matter.

**A.**    **Plaintiffs' Position on the Disputed Matters**

      Plaintiffs propounded a document subpoena to Google on December 7, 2012. (Attachment A.)  Google served its objections by letter on January 4, 2013.  Google's primary objection seemed to be that in its view, the subpoena called for the production of material not related to defendants' pending motion to compel arbitration.  Accordingly, Google's view was and remains that the requests are barred by the general stay of discovery in this matter.  Among Google's other objections was that plaintiffs ought to try to obtain whatever they needed from the defendants.  All told, plaintiffs and Google have conferred at least five times regarding plaintiffs' discovery requests.  The present dispute is based on plaintiffs' last offer of compromise to Google, which is described in further detail below.  But in short, plaintiffs seek limited information and production involving the question of whether Google has received consumer data from mobile devices equipped with Carrier IQ software.

      Following the Court's issuance of its order of April 1, 2013, plaintiffs propounded interrogatories to all appearing defendants, except Motorola, on April 22, 2013.  Plaintiffs hopefully awaited defendants' answers to the interrogatories, in the hope that they would obviate or lessen the need to obtain material and information from Google.  When it became clear that defendants' answers were not adequate to overcome the need for non-party discovery, plaintiffs renewed their efforts to obtain discovery from Google, and, by way of a letter dated July 1, 2013, offered to narrow the scope of their requests in a further attempt to reach voluntary resolution of the dispute regarding production.

      In plaintiffs' July 1 letter, they offered to accept a simple declaration (or declarations) from Google: (1) stating whether it is aware of having received mobile device user data or content (as defined in Item 1 to Exhibit A of plaintiffs' subpoena), whether by way of crash, de-bugging, or other reports related to the Android mobile operating system or any application, that it believes or suspects was transmitted because of the presence of Carrier IQ software on the device; and (2) if any such data or content was received, setting forth limited pertinent information regarding that data or content.  Plaintiffs also asked Google to produce communications with the defendants regarding any such transmittals.  Plaintiffs limited their requests to the time period dating from January 1, 2010 to the present, and advised Google that it

Judge Edward M. Chen
September 6, 2013
Page 2

should limit the scope, if reasonably possible, to transmittals from devices manufactured by the OEM defendants. Unfortunately, Google summarily rejected plaintiffs' reasonable proposal.

In the words of Google's counsel, it is "inconceivable that any information in the possession of Google, a third party, could possibly inform the determination whether the arbitration clauses in contracts between Plaintiffs and their service providers cover the claims in the case." But as plaintiffs have explained to counsel repeatedly, they are defending against defendants' motion on the basis, *inter alia*, that plaintiffs' claims are not subject to arbitration because they are outside the scope of the carrier-consumer arbitration provisions that the defendants seek to invoke. For example, if Carrier IQ software-equipped devices were logging and sending the content of text messages to the wholly unrelated entity Google, then defendants cannot force plaintiffs to arbitrate claims based in part on those facts. Any such transmittals were not contemplated by carriers and consumers when they entered into contracts for cellular service, and, accordingly, the parties to the contracts never had in mind that they would arbitrate disputes based on such transmittals.

And there is good reason to believe that such transmittals to Google may well have occurred. For example, the FTC's June 25, 2013 order regarding defendant HTC indicates that certain programming led to the logging of consumer information, including SMS text messages, such that the information was available for transmittal to third-parties. (*See* www.ftc.gov/os/caselist/1223049/130702htcdo.pdf (last visited Aug. 28, 2013) at 9 ("As a result of the active debug code, covered information was written to the Android system log, and was accessible to any third-party application with permission to read the system log, and in many instances, was also sent to HTC.").) Actual transmittals may have occurred via Android operating system crash reports.

Underpinning the plaintiffs' theory that claims based in part on transmittals to uncontemplated third-parties are not arbitrable is the foundational principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Put another way, "[a] court may order arbitration of a particular dispute *only where the court is satisfied that the parties agreed to arbitrate that dispute.*" *Granite Rock Co. v. International Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010) (emphasis added).

The limited discovery sought from Google will aid the Court in determining arbitrability under the carrier arbitration provisions. "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation *or applicability* of the specific arbitration clause that a party seeks to have the court enforce." *Id.* (emphasis added). Thus, the Court must determine "whether [the dispute] falls within the scope of the parties' agreement to arbitrate." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The inquiry as to scope entails discovery given the burden placed on the plaintiffs to show that the carrier arbitration provisions are not applicable to their claims. *See Livingston v. Assocs. Fin., Inc.*, 2001 U.S. Dist. LEXIS 8678, at *10 (N.D. Ill. June 22, 2001) ("[I]t seems axiomatic that, if the Supreme Court places a burden of proof [regarding arbitrability] on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove."). In fact, there is a summary judgment-like standard applicable to

defendants' motion that also contemplates discovery. *See Taleb v. AutoNation USA Corp.*, 2006 U.S. Dist. LEXIS 83044, at *6-7 (D. Ariz. Nov. 13, 2006) (noting that an arbitration agreement is put "in issue" under the FAA "only if Plaintiff can identify 'a triable issue concerning the . . . scope of the agreement'" and further noting that "the burden is properly upon the Plaintiff to produce specific facts showing that such a triable issue exists.") (citations omitted).

Indeed, the Court in its order of April 1 stated that it did "not agree with Defendants that all [such] discovery is off limits." Plaintiffs have targeted their pending proposal to Google to fall within the principles of that decision.

Finally, while Google until recentlyhas offered no real details regarding the effort it purportedly would take to respond as requested, it is difficult to believe that the creator of the world's pre-eminent search engine would face any significant difficulty searching its own data for the answers to the narrow questions posed. Indeed, as plaintiffs have suggested to Google's counsel, the information is likely readily known to individuals working in the department handling Android crash reports. It also may be known to various managers or executives at Google, given all the press surrounding Carrier IQ. Where the stakes are such that defendants seek to deny plaintiffs and millions of putative class members their day in court, Google ought not to be able to evade plaintiffs' good-faith requests for answers to simple, very pertinent questions.

Plaintiffs' narrowed request to Google seeks information relevant to plaintiffs' reasonable contention that their claims are not arbitrable under carrier-consumer arbitration provisions. Respectfully, Google should be compelled to answer the simple questions posed and to make a very limited production as requested. *See*, *e.g.*, *Livingston*, 2001 U.S. Dist. LEXIS 8678, at *10.[1]

**B.     Google's Position on the Disputed Matters**

Plaintiffs' motion should be denied outright for three independent reasons. *First*, Plaintiffs' repeated lack of diligence alone supports denial: their failure to move on a dispute that was ripe in February until the Friday before the Labor Day holiday, giving Google—a third party with no stake in this action—three business days to respond, alone justifies denial. *Second*, the discovery Plaintiffs seek is plainly beyond the scope of arbitration-related discovery, as the Court has already held: Plaintiffs' position on this issue, to the extent they present one at all, appears to be nothing more than that this Court got it wrong. And *third*, the requested third-party discovery is burdensome in the extreme.

    **1.     Plaintiffs have not been diligent.**

Plaintiffs sat on these requests for months. Plaintiffs served their requests nine months ago. Google immediately objected in writing, and in subsequent meet and confer discussions advised Plaintiffs that it would not produce either documents or a deposition witness in subsequent meet and confer discussions. Those discussions ended, at an impasse ripe for motion

---

[1] The Court noted in its April 1 order that "Plaintiffs have not explained why . . . the kind of data and to whom it was sent is relevant." Plaintiffs submit that the rationale cited by the Court in allowing mode-of-transmittal discovery is equally applicable to discovery related to transmittals of consumers' private content to wholly uncontemplated entities such as Google.

Judge Edward M. Chen
September 6, 2013
Page 4

practice, on March 5, 2013, with Plaintiffs advising Google that they intended to file motion papers by March 18, 2013. No such filing occurred, and Google then heard nothing for three months, until June 10, 2013, when at Plaintiffs' request we met and conferred again, and again advised them, after reviewing this Court's April 1, 2013 Order, that we did not see how anything sought from Google could be relevant to the arbitrability of their claims. We further advised them that we read the Court's Order as unambiguously supporting that position. Again, the issue was ripe for motion practice.

After Google, at Plaintiffs' request, agreed to present any dispute to the Court via letter brief, Plaintiffs on July 3 proposed a schedule for that briefing, advising Google that they would provide us with their half of the letter brief in July "18th or 19th," with Google responding a week later. Google agreed to that schedule. July then came and went, with no brief and no further contact from Plaintiffs. It was not until late last Friday afternoon, on the eve of the Labor Day holiday, that Plaintiffs finally moved, demanding this response by 11 a.m. Friday, September 6, thus giving Google three work days to prepare a response. This repeated, prolonged lack of diligence places Google—a third party with no stake in this matter—in the midst of a "fire drill" schedule for no good reason. On that basis alone, this Court should deny the motion outright.

> 2.  **Plaintiffs' demands have already been rejected by this Court as beyond the scope of permissible discovery**

At each step of the "Groundhog's Day"-like meet and confer process, Google has asked Plaintiffs to explain how any information in Google's possession could possibly inform the question whether their dispute fell within the scope of an arbitration provision to which Google is not a party. The contracts say what they say, and the Complaint says what it says: it should be a relatively straightforward matter of comparing the claims to the arbitration agreement and determining whether the former fall within the latter. Plaintiffs have never provided a response that made sense to us.

It appears the Court shares Google's view. In response to the same argument, the Court determined that the *only* discovery needed to determine whether the claims are arbitrable is discovery concerning the *means* by which the user's phone transmits the data at issue: "Plaintiffs' theory seems to be that, if a transmission takes place by a means other than over the carrier networks—*e.g.*, over Wi-Fi instead—then a challenge to such a transmission cannot fall within the scope of the carrier arbitration provisions." April 1, 2013 Order (Dkt. No. 157) at 3.

Such information is available, if at all, from the parties themselves and the carriers: Carrier IQ and the carriers should know how the Carrier IQ software on the users' phones transmits data over the carriers' networks. More to the point, none of the discovery Plaintiffs seek from Google relates in any way to the *means* by which data was transmitted from users' phones to carriers or anyone else. Although it is difficult to discern whether Plaintiffs are asking the Court to order (1) responses to the original document requests, (2) a deposition, or (3) service of the compromise declaration proposed in July, none of their requests seeks information within the scope of the Court's order. Instead (assuming the request is now for the declaration described above), Plaintiffs ask for identification of any data received as a result of the use of Carrier IQ software (sorted to limit the data to a set of particular manufacturers), the types of

data received from Carrier IQ software, the devices at issue, the dates on which data were received, the means by which Google can determine whether data were sent by the Carrier IQ software, and the contents of any communications between Google and any of the phone manufacturers concerning and such transmittals.

Putting aside the immense burden of searching years of bug reports and call logs covering hundreds of millions of devices (discussed below), not *one* of these requests has anything to do with the *means* by which any user's device transmitted that data (i.e., via cell or Wi-Fi), and thus none is within the scope of permitted discovery. These requests go—if at all—purely to merits issues that are stayed. As this Court has already ruled:

> [M]uch of the discovery identified by Plaintiffs does not appear to be targeted to the issue of how data is sent over Plaintiffs' mobile devices, particularly with respect to data captured by the Carrier IQ software. For example, Plaintiffs have not explained why "the type of data contemplated or requested by carriers" is relevant to the *means* of transmission; nor have they explained why the kind of data and to whom it was sent is relevant. [] To the extent Plaintiffs seek information about the functionality of the Carrier IQ software . . . **is relevant to the matter at hand only to the extent it is informative of the means of transmission.**

*Id.* at 3-4. (italics in original, bold emphasis added).

Nothing has changed in the intervening five months. Plaintiffs ignore entirely the Court's Order, relegating to a footnote their sole argument that "mode-of-transmittal discovery" is equally legitimate from a third party such as Google. But this misses the point: none of the discovery at issue in this motion is "mode-of-transmission" discovery, because that discovery is easily obtained from the transmitter (be it Carrier IQ or the carriers using it). The requests to Google have nothing to do with mode-of-transmittal, and are thus beyond the scope of arbitrability-related discovery.

### 3. Compliance would be burdensome

Notwithstanding Plaintiffs' kind words concerning Google's "pre-eminent" search engine, this is a very different matter. Google, through years of research and design and billions of dollars of investment, has indexed the Internet. Searching through years of unindexed, archived bug and crash reports from hundreds of millions of phones is a very different matter. Google estimates that it would take two to three weeks of full-time work by a qualified engineer simply to search through archives of bug reports, crash reports, and the like to locate any that were generated by Carrier IQ software. This is a conservative estimate, which assumes that there would be a single, easily-searchable "tell tale" that can identify CarrierIQ reports across reports from multiple carriers and devices; it could be considerably more complex and time consuming if different carriers or manufacturers used different formats. Note also that this would only be

Judge Edward M. Chen
September 6, 2013
Page 6

the first step in the process—collecting the universe of data to review. It does not address the subsequent analysis of that data to answer Plaintiffs' substantive questions.[2]

### C. Rebuttal to Google's Position on Disputed Matters

With regard to plaintiffs' supposed lack of diligence, the fact is that the delays to which Google cites are a function of plaintiffs' attempts to obtain the requested information from the defendants or the carriers — which is among the requests that Google has made during meet-and-confer sessions. Indeed, Google has never moved to quash plaintiffs' subpoena.

The same day the Court issued its Order requiring submittal of all disputes by September 6, 2013, plaintiffs forwarded the order to counsel for Google and requested a telephone conference. Plaintiffs and Google had that conference early the following week, and plaintiffs proposed that they get their sections of a joint letter brief to Google's counsel by Friday, August 30, 2013. Google agreed. Plaintiffs sent Google their sections as planned, on August 30, along with a further request to reach a compromise.

Far from "demanding" that Google produce its sections by 11 am on September 6, plaintiffs asked politely and added: "As with this entire matter, if that will not work for Google, please email or call us, and we will work with you toward a reasonable plan." But Google did not suggest a different timeline. Moreover, Google did not actually send plaintiffs its sections until 4:48 pm today, September 6. And plaintiffs did not complain.

What Google derisively refers to as "Groundhog Day" meet-and-confers are instead plaintiffs' repeated attempts to reach a compromise resolution with Google. The last of these occurred on Wednesday, September 4, 2013, when plaintiffs once more made plain in a telephone conference with counsel for Google that they had no desire or intent to cause Google any undue burden. Plaintiffs stated again that their requests need not entail a search through years of crash reports, but that plaintiffs would be satisfied at this time if Google conducted a simple inquiry of the appropriate personnel in the department handling Android crash reports, to determine if they had received word that transmittals of consumer content were being received from Carrier IQ-equipped devices. Google refused even to consider such a course of action.

As to the substance of Google's response, Google's focus on the Court's April 1 order is misplaced. Plaintiffs submit that the rationale cited by the Court in allowing mode-of-transmittal discovery is equally applicable to discovery related to transmittals of consumers' private content to wholly uncontemplated entities such as Google. Plaintiffs' out-of-scope theory is grounded on activity that neither party to the carrier-consumer contracts contemplated. As with Wi-Fi transmittals of the sort addressed in the Court's April 1 order, transmittals of consumer data to Google were never contemplated by the parties to the contracts whose arbitration provisions seek to invoke. Accordingly, plaintiffs' theory is that the arbitration provisions do not apply to claims based in part on such activity. Google's argument misses this point entirely.

*****

---

[2] Plaintiffs' "Rebuttal" statement below was added after Google submitted its portion of the joint letter to Plaintiffs. Accordingly, Google has not addressed anything raised therein. We are of course available to provide a further response if requested by the Court.

Judge Edward M. Chen
September 6, 2013
Page 7

    The parties look forward to addressing these issues with the Court.


                          Respectfully submitted,

Dated: September 6, 2013        By:   /s/ Robert F. Lopez
                        Steve W. Berman (*pro hac vice*)
                        HAGENS BERMAN SOBOL SHAPIRO LLP
                        Robert F. Lopez (*pro hac vice*)
                        Thomas E. Loeser (202724)
                        HAGENS BERMAN SOBOL SHAPIRO LLP
                        1918 Eighth Avenue, Suite 3300
                        Seattle, WA 98101
                        Telephone: (206) 623-7292
                        Facsimile: (206) 623-0594
                        steve@hbsslaw.com
                        robl@hbsslaw.com
                        toml@hbsslaw.com

                        By:   /s/ Daniel L. Warshaw
                        Daniel L. Warshaw (SBN 185365)
                        PEARSON SIMON & WARSHAW, LLP
                        15165 Ventura Blvd., Suite 400
                        Sherman Oaks, CA 91403
                        Telephone: (818) 788-8300
                        Facsimile: (818) 788-8104
                        dwarshaw@pswlaw.com

                        Bruce L. Simon (SBN 96241)
                        William J. Newsom (SBN 267643)
                        44 Montgomery Street, Suite 2450
                        PEARSON SIMON & WARSHAW, LLP
                        San Francisco, CA 94104
                        Telephone: (415) 433-9000
                        Facsimile: (415) 433-9008
                        bsimon@pswlaw.com
                        wnewsom@pswlaw.com

                        *Plaintiffs' Interim Co-Lead Counsel*

Judge Edward M. Chen
September 6, 2013
Page 8

                                      By: */s/ Michael H. Page*
                                             Michael H. Page (CSB No. 154913)
                                             MPage@durietangri.com
                                             DURIE TANGRI LLP
                                             217 Leidesdorff Street
                                             San Francisco, CA 94111
                                             Ph:   (415) 362-6666
                                             Fax:  (415) 236-6300

                                      *Counsel for Google Inc.*

### **ATTESTATION**

     I, William J. Newsom, am the ECF user whose identification and password are being used to file the instant document.  Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that all counsel whose electronic signatures appear above provided their authority and concurrence to file this document.

                                      By:      /s/ *William J. Newsom*
                                             William J. Newsom (SBN 267643)
                                             44 Montgomery Street, Suite 2450
                                             PEARSON SIMON & WARSHAW, LLP
                                             San Francisco, CA 94104
                                             Telephone: (415) 433-9000
                                             Facsimile:  (415) 433-9008
                                             wnewsom@pswlaw.com