Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Bruce L. Simon (CSB No. 96241)
PEARSON SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Carrier IQ, Inc. Consumer Privacy Litigation | No. 3:12-md-2330-EMC |
| | PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS |
| This Document Relates to: | |
| ALL CASES | Date: March 13, 2014 |
| | Time: 1:30 p.m. |
| | Place: Courtroom 5, 17th Floor |
| | Judge: Hon. Edward M. Chen |

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

010285-11 668526 V1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF RELEVANT FACTS ...........................................................3

    A.    The consolidated cases .............................................................................3

    B.    Plaintiffs' Allegations ..............................................................................4

    C.    Defendants' efforts to compel plaintiffs to arbitrate pursuant to carrier contract provisions ...............................................................................................6

III.  ARGUMENT .......................................................................................................7

    A.    Applicable Legal Standard .......................................................................8

    B.    Defendants' equitable estoppel arguments fail as a matter of law. ...........9

        1.    Defendants fail to meet their burden to show that equitable estoppel should be applied under the relevant state laws, resulting in waiver. .............................9

        2.    Even under the generic federal law approach applied by the defendants, their motion fails. ...............................................................................................10

            a.    Plaintiffs' claims are not intertwined with the wireless carrier agreements. ......................................................................................12

                (1)    Intertwining cannot be shown by pointing to potential defenses. ...............................................................................12

                (2)    Plaintiffs' statutory privacy and consumer fraud claims are not intertwined with the carrier agreements. ...............................13

                (3)    Plaintiffs' implied warranty claims are not intertwined with the carrier agreements. ..............................................................15

            b.    Even if defendants could show intertwining of plaintiffs' claims with the carrier agreements, they cannot demonstrate a sufficient relationship among the involved parties to justify equitable estoppel.16

                (1)    Plaintiffs do not allege interdependent and concerted misconduct by the defendants and carriers. ..........................16

                (2)    Plaintiffs' claims do not require analysis of the carriers' conduct. ..................................................................................20

            c.    Equity and public policy weigh against compelling plaintiffs to arbitrate with these non-signatories. ...................................................21

        3.    Under the state-by-state analysis required by the Supreme Court and Ninth Circuit, defendants cannot demonstrate that equitable estoppel should apply.23

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

010285-11  668526 V1

C.     Defendants cannot overcome contract formation and unconscionability defects. ....30

    1.    Plaintiffs did not agree to arbitrate with their carriers................................30

        a.    ATTM plaintiffs. .......................................................31

        b.    Sprint plaintiffs .......................................................32

        c.    Cricket plaintiff .......................................................34

        d.    Formation Has Not Been Established...............................34

    2.    The carrier arbitration provisions are unenforceable under state law. .........36

        a.    Unconscionability is governed by state standards...........................36

        b.    The contracts at issue are procedurally unconscionable...................38

            (1)    The arbitration provisions are contained in contracts of adhesion and are oppressive. .................................................38

            (2)    The arbitration provisions demonstrate surprise. .................39

            (3)    The Sprint and Cricket arbitration clauses are substantively unconscionable. ...............................................................41

                (a)    Sprint .......................................................41

                (b)    Cricket's contract is likewise substantively unconscionable. ...............................................................43

    3.    The unconscionable terms are not severable. ...............................................43

    4.    The claims here are outside the scope of the relevant arbitration provisions.44

        a.    Plaintiffs never agreed to arbitrate with defendants. ........................44

        b.    Plaintiffs' warranty claims and allegations unrelated to transmission over the carrier networks are outside the scope of the arbitration clauses..........................................................................................45

D.     Even if defendants' motion were not subject to denial, this matter should not be stayed.................................................................................................................45

IV.    CONCLUSION ...........................................................................................46

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Adler v. Dell, Inc.,
   2008 WL 5351042 (E.D. Mich. Dec. 18, 2008) ......................................................36

Adler v. Fred Lind Manor,
   103 P.3d 773 (Wash. 2004) ......................................................................................38

Amisil Holdings Ltd. v. Clarium Capital Mgmt.,
   622 F. Supp. 2d 825 (N.D. Cal. 2007).............................................................14, 15

Armendariz v. Foundation Health Psychcare Servs.,
   24 Cal. 4th 83 (2000).........................................................................................41, 43

Arthur Andersen LLP v. Carlisle,
   556 U.S. 624 (2009) .............................................................................................1, 9

AT&T Techs., Inc. v. Commc'ns Workers of Am.,
   475 U.S. 643 (1986).......................................................................................passim

AT&T v. Concepcion,
   131 S. Ct. 1740 (2011) .............................................................................................36

Avid Eng'g, Inc. v. Orlando Marketplace Ltd.,
   809 So. 2d 1 (Fla. App. 5 Dist. 2001)......................................................................42

B.C. Rogers Poultry, Inc. v. Wedgeworth,
   911 So.2d 483 (Miss. 2005) ..............................................................................28, 29

Bartlett Grain Co., L.P. v. Sheeder,
   829 N.W. 2d 18 (Iowa 2013)..............................................................................37, 38

Bellsouth Mobility LLC v. Christopher,
   819 So. 2d 171 (Fla. App. 2002) .......................................................................41, 42

Besta v. Beneficial Loan Co. of Iowa,
   855 F.2d 532 (8th Cir. 1988) ...................................................................................40

Bruszewski v. Motley Rice, LLC,
   2012 WL 6691643 (E.D. Ky. Dec. 21, 2012)..........................................................36

Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,
   622 F.3d 996, 1002 (9th Cir. 2010) .........................................................................23

Caplin Enters., Inc. v. Arrington,
   2013 WL 1878879 (Miss. Ct. App. May 7, 2013), cert. granted, 125 So. 3d 658 (Miss.
   2013)...................................................................................................................37, 42

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Carll v. Terminix Int'l Co.*,
 793 A.2d 921 (Pa. Super. Ct. 2002) ................................................................42

*Case Handyman & Remodeling Servs., LLC v. Schuele*,
 183 Md. App. 44, 959 A.2d 833, *vacated on other grounds, Schuele v. Case Handyman &*
 *Remodeling Servs., LLC*, 412 Md. 555, 989 A.2d 210 (2010) .................................28

*CD Partners, LLC v. Grizzle*,
 424 F.3d 795 (8th Cir. 2005) ...........................................................................27

*Chavarria v. Ralphs Grocery Co.*,
 733 F.3d 916 (9th Cir. 2013) ................................................................37, 39, 40

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
 207 F.3d 1126 (9th Cir. 2000) .....................................................................44, 45

*Circuit City Stores, Inc. v. Adams*,
 279 F.3d 889 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002) .........................42

*City of Detroit Police and Fire Ret. Sys. v. GSC CDO Fund, Ltd.*,
 2010 WL 1875758 (Ct. App. Mich. May 11, 2010) .............................................28

*City of Vasalia v. Chartis Inc.*,
 2013 WL 144959 (E.D. Cal. Jan. 11, 2013) ......................................................45

*Clark v. DaimlerChrysler Corp.*,
 268 Mich. App. 138 (2005) .........................................................................40, 41

*Concat LP v. Unilever, PLC*,
 350 F. Supp. 2d 796 (N.D. Cal. 2004)................................................................8

*Coneff v. AT &T Corp.*,
 673 F.3d 1155 (9th Cir. 2012) .........................................................................36

*Conseco Fin. Servicing Corp. v. Wilder*,
 47 S.W.3d 335 (Ky. Ct. App. 2001) .................................................................38

*Cottonwood Fin., Ltd. v. Estes*,
 339 Wis. 2d 472 (Wis. App. 2012)....................................................................37

*Coup v. Scottsdale Plaza Resort, LLC*,
 823 F. Supp. 2d 931 (D. Ariz. 2011) ................................................................36

*Crewe v. Rich Dad Educ., LLC*,
 884 F. Supp. 2d 60 (S.D.N.Y. 2012) ................................................................37

*D'Antuono v. Service Rd. Corp.*,
 789 F. Supp. 2d 308 (D. Conn. 2011) ..........................................................36, 37

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

010285-11  668526 V1

*Davis v. O'Melveny & Meyers*,
 485 F.3d 1066 (9th Cir. 2006) ...................................................................40

*Delfingen US-Texas, L.P., v. Valenzuela*,
 407 S.W.3d 791 (Tex. App. 2013) .........................................................37, 41

*Deutsche Bank Nat'l Trust Co. v. Belizaire*,
 2011 WL 3586487 (Conn. Super. Ct. July 13, 2011).............................38, 41

*Dorward v. Macy's Inc.*,
 2011 WL 2893118 (M.D. Fla. July 20, 2011) .............................................36

*Doyle v. Finance Am., LLC*,
 173 Md. App. 370 (2007) .............................................................................37

*Ehlen Floor Covering, Inc. v. Lamb*,
 2010 WL 2813369 (M.D. Fla. July 14, 2010) .................................12, 17, 20

*Ervin v. Nokia*,
 812 N.E.2d 534 (Ill. 5th Dist. 2004)............................................................26

*Everett v. Paul Davis Restoration, Inc.*,
 2012 WL 4128016 (E.D. Wis. Sept. 18, 2012) ............................................30

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995) .......................................................................................9

*Fitz v. NCR Corp.*,
 118 Cal. App. 4th 702 (2004).......................................................................41

*Flores v. Transamerica HomeFirst, Inc.*,
 93 Cal. App. 4th 846 (2001) ...........................................................38, 40, 41

*Forsyth v. Humana, Inc.*,
 114 F.3d 1467 (9th Cir. 1997) ........................................................................7

*Freedman v. Comcast Corp.*,
 190 Md. App. 179 (2010) .............................................................................37

*Frost v. LG Elecs. MobileComm U.S.A., Inc.*,
 2013 WL 5409906 (Cal. Ct. App. Sept. 27, 2013)......................................25

*Gainesville Health Care Ctr., Inc. v. Weston*,
 857 So. 2d 278 (Fla. Dist. Ct. App. 2003)...................................................38

*Galitski v. Samsung Telecomms. Am., LLC*,
 2013 U.S. Dist. LEXIS 171908 (N.D. Tex. Dec. 5, 2013)...........................25

*Gandee v. LDL Freedom Enters., Inc.*,
 176 Wash. 2d 598 (2013) .............................................................................37

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Gandee v. LDL Freedom Enters., Inc.*,
   293 P.3d 1197 (Wash. 2013) ................................................................36, 43

*Garcia v. Stonehenge, Ltd.*,
   1998 WL 118177 (N.D. Cal. Mar. 2, 1998) ...........................................14

*GATX/Airlog Co. v. United States*,
   79 F. Supp. 2d 1208 (W.D. Wash. 1999), *aff'd*, 234 F.3d 1089 (W.D. Wash. 2000) ............10

*Gonzalez v. Citigroup, Inc.*,
   2011 WL 4374997 (E.D. Cal. Sept. 19, 2011) ......................................30

*Graham Oil Co. v. ARCO Prods. Co.*,
   43 F.3d 1244 (9th Cir. 1994) ...................................................................41

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   130 S. Ct. 2847 (2010) ............................................................................44

*Grigson v. Creative Artists Agency, L.L.C.*,
   210 F.3d 524 (5th Cir. 2004) .........................................................*passim*

*Hafer v. Vanderbilt Mortg.& Fin., Inc.*,
   793 F. Supp. 2d 987 (S.D. Tex. 2011)....................................................36

*Hansen v. KPMG, LLP*,
   2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) ................................12, 13

*Hoffman v. Citibank, N.A.*,
   546 F.3d 1078 (9th Cir. 2008) ................................................................40

*Household Fin. Corp. II v. King*,
   2010 WL 3928070 (Ky. Ct. App. Oct. 8, 2010) ....................................28

*In re Apple & AT&TM Antitrust Litig.*,
   826 F. Supp. 2d 1168 (N.D. Cal. 2011).....................................11, 12, 14

*In re Apple iPhone 3G and 3GS "MMS" Mktg. and Sales Pracs. Litig.*,
   864 F. Supp. 2d 451 (E.D. La. 2012) ............................................*passim*

*In re Apple iPhone 3G Prods. Liab. Litig.*,
   2011 WL 6019217 (N.D. Cal. Dec. 1, 2011) ...................................18, 19

*In re Apple iPhone 3G Prods. Liab. Litig.*,
   859 F. Supp. 2d 1084 (N.D. Cal. 2012).........................................*passim*

*In re Marriage of Shanks*,
   758 N.W.2d 506 (Iowa 2008) .................................................................41

*In re Merrill Lynch Trust Co. FSB*,
   235 S.W.3d 185 (Tex. 2007) ...................................................................29

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*In re Rangel*,
  45 S.W.3d 783 (Tex. App. 2001) ..................................................................40

*In re Toyota Motor Corp. Hybrid Brakes*,
  828 F. Supp. 2d 1150 (C.D. Cal. 2011) .......................................................15

*In re Toyota Motor Corp. Unintended Acceleration*,
  838 F. Supp. 2d 967 (C.D. Cal. 2012) .........................................................15

*In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ...........................................................7

*In re Zappos Inc., Customer Data Sec. Breach Litig.*,
  893 F. Supp. 2d 1058 (D. Nev. 2012) .....................................................41, 42

*Ingle v. Circuit City*,
  328 F.3d 1165 (9th Cir. 2003) ......................................................................41

*Kilgore v. Keybank Nat'l Ass'n*,
  673 F.3d 947 (9th Cir. 2012) ........................................................................40

*Kisner v. Bud's Mobile Homes*,
  512 F. Supp. 2d 549 (S.D. Miss. 2007) ........................................................36

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 62 (2013) ...............*passim*

*Lara v. Onsite Health, Inc.*,
  896 F. Supp.2d 831 (N.D. Cal. 2012) ...........................................................39

*Lou v. Ma Labs.*,
  2013 WL 2156316 (N.D. Cal. May 17, 2013) ...............................................42

*Maldonado v. Mattress Firm, Inc.*,
  2013 WL 2407086 (M.D. Fla. June 3, 2013) ................................................25

*Meyer v. T-Mobile U.S.A., Inc.*,
  2012 WL 2906051 (N.D. Cal. July 13, 2012) ...............................................41

*Morselife Found., Inc. v. Merrill Lynch Bank & Trust Co., FSB*,
  2010 WL 2889932 (S.D. Fla. July 21, 2010) ................................................20

*Mortgage Elec. Registration Sys., Inc. v. Amber*,
  260 S.W.3d 351 (Ky. Ct. App. 2008) ...........................................................42

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ...............................................................*passim*

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ...........................................................9, 23, 25

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Newton v. American Debt Services, Inc.*,
    854 F. Supp. 2d 712 (N.D. Cal. 2012)........................................................*passim*

*Newton v. American Debt Servs., Inc.*,
    2013 WL 6501391 (9th Cir. Dec. 12, 2013)...............................................*passim*

*Noodles Dev. LP v. Latham Noodles, LLC*,
    2009 WL 2710137 (D. Ariz. Aug. 26, 2009) ......................................................19

*Noohi v. Toll Bros., Inc.*,
    708 F.3d 599 (4th Cir. 2013) ............................................................................42

*NS Holdings LLC Inc. v. American Int'l Grp., Inc.*,
    2010 WL 4718895 (C.D. Cal. Nov. 15, 2010) ..................................................13

*Olshan Found. Repair & Waterproofing v. Otto*,
    276 S.W.3.d (Ky. Ct. App. 2009)..............................................................27, 28

*Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*,
    877 P.2d 1345 (Ariz. Ct. App. 1994) ...............................................................38

*Powertel, Inc. v. Bexley*,
    743 So. 2d 570 (Fla. Dist. Ct. App. 1999)........................................................42

*Rajagopalan v. NoteWorld, LLC*,
    718 F.3d 844 (9th Cir. 2013) ....................................................................*passim*

*Resource Servs., LLC v. Bridgeport Housing Auth.*,
    2011 WL 2739544 (Sup. Ct. Conn. June 13, 2011) ..........................................26

*Richmond Am. Homes of W.V., Inc. v. Sanders*,
    717 S.E.2d 909 (W. Va. Nov. 21, 2011) ..........................................................42

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal.4th 394 (1996)................................................................................30, 35

*Sanchez v. Valencia Holding Co., LLC*,
    201 Cal. App. 4th 74 (2011) ............................................................................31

*Schnuerle v. Insight Commc'ns Co., L.P.*,
    376 S.W.3d 561 (Ky. 2012)..............................................................................37

*Schoneberger v. Oelze*,
    208 Ariz. 591, 96 P.3d 1076 (Ariz. App. 2004) ...............................................24

*Shupe v. Cricket Commc'ns, Inc.*,
    2013 WL 68876 (D. Ariz. Jan. 7, 2013) ...........................................................37

*Smith v. Jem Grp., Inc.*,
    737 F.3d 636 (9th Cir. 2013) ...........................................................................38

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
   542 F.3d 354 (2d Cir. 2008) ........................................................................ 11

*Spring Lake NC, LLC v. Beloff*,
   110 So. 3d 52 (Fla. Dist. Ct. App. 2013) .................................................... 37

*Todd v. Steamship Mut. Underwriting Ass'n*,
   601 F.3d 329 (5th Cir. 2010) ........................................................................ 9

*United States v. Romm*,
   455 F.3d 990 (9th Cir. 2006) ...................................................................... 10

*Valentine v. Wideopen West Fin., LLC*,
   2012 WL 1021809 (N.D. Ill. Mar. 26, 2012) ....................................... 36, 37

*Veal v. Orkin Exterminating Co.*,
   2001 U.S. Dist. LEXIS 4846 (W.D. Mich. Apr. 9, 2001) ........................... 42

*Velazquez v. Sears, Roebuck, & Co.*,
   2013 WL 4525581 (S.D. Cal. Aug. 26, 2013) ............................................ 40

*Vis v. American Family Life Assur. Co. of Columbus*,
   778 F. Supp. 2d 971 (N.D. Iowa 2011) ...................................................... 36

*Walther v. Sovereign Bank*,
   872 A.2d 735 (Md. 2005) ............................................................................ 36

*Washington Mut. Bank v. Superior Ct.*,
   15 P.3d 1071, 1077 (Cal. 2001) .................................................................. 23

*Wells Enters. v. Olympic Ice Cream*,
   903 F. Supp. 2d 740 (N.D. Iowa 2012) ...................................................... 27

*West Virginia ex rel. Dunlap v. Berger*,
   567 S.E.2d 265 (W. Va. 2002) .................................................................... 42

*Whirlpool Corp. v. Grigoleit Co.*,
   713 F.3d 316 (6th Cir. 2013) ...................................................................... 37

*Woebse v. Health Care & Ret. Corp. of Am.*,
   977 So. 2d 630 (Fla. Dist. Ct. App. 2008) ............................................ 38, 40

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
   111 Cal. App. 4th 784, 4 Cal. Rptr. 3d 179 (2003) ......................... 30, 34, 35

*Zaborowski v. MHN Gov't Servs., Inc.*,
   926 F. Supp. 2d 1145 (N.D. Cal. 2013) ...................................................... 42

*Zephyr Haven Health & Rehab Ctr., Inc. v. Hardin ex rel. Hardin*,
   122 So. 3d 916 (Fla. Dist. Ct. App. 2013) .................................................. 40

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

010285-11  668526 V1

**STATUTES**

California Civil Code Section 1670.5 ............................................................. 43

Federal Arbitration Act.......................................................................... 7, 9

**OTHER AUTHORITIES**

*Samuel Williston, Treatise on the Law of Contracts,*
§ 18:13 (Richard A. Lord ed. 4th ed. 1998) ................................................. 42

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION
010285-11 668526 V1

# I. INTRODUCTION

Plaintiffs, who hail from all corners of the United States, have brought this suit in order to seek redress for defendants' infringement of their private, confidential, and sensitive communications. Before this Court is defendants' motion to compel arbitration — an attempt to extinguish this proposed nationwide class action suit before it begins. The stakes are high. If defendants' motion were granted, not only would the named plaintiffs lose their day in court, but preemptively, so would millions of proposed class members. In reality, though, the stakes are even higher. Defendants' true aim is a knockout punch. If this motion were granted, the defendants would escape answering to consumers for their conduct. The masses of affected mobile telephone users will never be able to find counsel who will help them arbitrate their claims individually, so the prospect of justice will fade away.

But defendants have a critical problem: the arbitration provisions they seek to invoke are not their own. Instead, the provisions appear in the contracts of wireless carriers that provided cellular service to plaintiffs, and defendants are not parties to these agreements. In fact, plaintiffs never agreed to arbitrate *any* disputes with defendants. So defendants must rely on the doctrine of equitable estoppel in order to attempt to enforce these carrier arbitration provisions as if they were their own.

This reliance is misplaced. Plaintiffs do not base their claims on duties owed under the carrier contracts. They do not seek to benefit in this suit from the carrier contracts while at the same time seeking to avoid those contracts' arbitration provisions. Thus, plaintiffs have not acted in such a way as to be estopped from declining to arbitrate their disputes with the non-signatory defendants.

In this most basic respect, defendants' motion is unfounded. As plaintiffs will show, it should be denied for the following reasons:

*First*, defendants have failed to meet their fundamental burden as moving parties seeking the application of equitable estoppel. Parties seeking to compel arbitration by equitable estoppel are required to analyze under applicable state laws whether estoppel should apply with respect to the opposing parties' claims. *E.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION
010285-11  668526 V1

Defendants failed to perform this analysis. Instead, they performed a muddled, generic federal-law analysis. Consequently, defendants have waived their right to assert equitable estoppel under each applicable state law. For this reason alone, their motion should be denied.

*Second*, even under the inappropriate federal-law approach that defendants took, they misstate precedent and fail to meet their prescribed burdens. For example, defendants seek to turn what their own authorities deem to be a two-part test into two separate tests, in order to give themselves two chances to win. But even with two chances to win, defendants cannot demonstrate: (1) that plaintiffs' claims are intertwined with the carrier contract; or (2) that there are the requisite relationships among the parties and carriers here that would justify equitable estoppel, whether based on allegations of concerted and interdependent misconduct involving the carriers (there are none here) or some other supposed state of affairs. *See In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1096 (N.D. Cal. 2012) (describing bi-partite test) (citations omitted).

*Third*, defendants cannot point to any of plaintiffs' actions that form a basis for estoppel. Only a few months ago, in similar circumstances, the Ninth Circuit observed that it had "never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013). In *NoteWorld*, as in this case, the plaintiff "had 'statutory claims that [we]re separate from the [] contract'" whose arbitration provision the defendant sought to invoke." *Id.* As the Ninth Circuit put it: "Because [the plaintiff's] statutory claims 'd[o] not arise out of or relate to the contract that contained the arbitration agreement' . . . , [the defendant] may not compel [the plaintiff] to arbitrate his claims on the basis of equitable estoppel." *Id.* at 848 (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009)). Given that, as in *NoteWorld*, plaintiffs in this matter do not seek any benefits from the carrier contracts while at the same time seeking to avoid those contracts' arbitration terms, the same result should obtain here under all applicable state laws. *See id.*; *cf. Mundi*, 555 F.3d at 1047 ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation omitted).

*Fourth*, even if equitable estoppel were available to the defendants, the carrier arbitration

provisions that defendants seek to enforce remain subject to applicable state law principles of formation and unconscionability.  As demonstrated below, all three of these provisions face grave issues with formation, rendering them unenforceable against the plaintiffs.  Plus, two of the three agreements, which are adhesive like the third agreement, face grave issues with surprise, oppression, and one-sidedness, such that they are both procedurally and substantively unconscionable under the applicable state laws.  For these reasons, too, they are unenforceable against plaintiffs.

*And fifth*, even if equitable estoppel properly applied here, plaintiffs' claims fall outside the scope of the carrier arbitration provisions.  For example, the capture of confidential consumer content and its transmittal to third-parties such as Google Inc. ("Google") or Android operating system ("Android OS") developers, without consumer knowledge or consent, was in no way contemplated by the carrier agreements.  If not even plaintiffs and the carriers agreed to arbitrate claims based on such allegations, then defendants cannot force plaintiffs to arbitrate them.  *See, e.g.*, *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation and quotations omitted).

## II.     STATEMENT OF RELEVANT FACTS

### A.     The consolidated cases

Following the widespread revelation in late 2011 that various mobile devices bore privacy-infringing software, consumers around the country began filing suit against the producer of the software, Carrier IQ, and the manufacturers of their devices, including HTC, Huawei, LG, Motorola, Pantech, and Samsung.  These are the defendants here.  In their Consolidated Amended Complaint ("CAC"), plaintiffs allege violations by defendants of the Federal Wiretap Act, the Stored Communications Act, the Computer Fraud and Abuse Act, State Wiretap and Privacy Acts, State Consumer Protection Acts, the Magnuson-Moss Warranty Act, and the Implied Warranty of Merchantability.  (CAC, ¶¶ 100-173.)

## B.    Plaintiffs' Allegations

Plaintiffs hail from 13 states: Arizona, California, Connecticut, Florida, Iowa, Illinois, Kentucky, Maryland, Michigan, Mississippi, Texas, Washington, and Wisconsin.  (CAC, ¶¶ 9-26.)  Each purchased a mobile device in one of those states that was manufactured and marketed by one of the manufacturer defendants, and each of these devices is embedded with Carrier IQ software together with additional implementing software coded by the manufacturers or Carrier IQ (or both).

As of November 2011, the Carrier IQ website indicated by way of a rolling tally that its software was installed on over 140,000,000 mobile devices worldwide."  (*Id.*, ¶ 41.)  Plaintiffs allege that the defendant manufacturers installed this software on millions of mobile devices, without consumers' knowledge, and without offering ways to delete the software or to opt-out of its functions.  (*Id.*, ¶ 51.)

Plaintiffs allege that "Carrier IQ software intercepts and processes data that includes: URLs containing HTTP and HTTPS query strings embedded with information such as search terms, user names, passwords, and geo-location information; geo-location information apart from that transmitted in URLs; text messages; telephone numbers dialed and received; other keystrokes; and application purchases and uses."  (CAC, ¶ 2.)  In an online article dated December 8, 2011, Eric Schmidt, the Executive Chairman of Google, was quoted as stating at a conference  that "Carrier IQ's software is a keylogger that 'actually does keep your keystrokes.' … 'We certainly don't work with them and we certainly don't support it.'"  Schmidt continued: "Android is an open platform, so it's possible for people to build software that's actually not very good for you, and this appears to be one."  Google is the creator of the Android OS that powers plaintiffs' mobile phones.  (*Id.*, ¶ 73.)

Plaintiffs also have alleged that with some deployments, including but perhaps not limited to those on HTC mobile devices, a copy of data and content intercepted for Carrier IQ software purposes was also sent in unencrypted, human-readable form to the debug logs of affected devices.  The capture of this information in human-readable form, via so-called verbose logging, is shown in a widely viewed YouTube video published by an independent security researcher, Trevor Eckhart.  (*Id.*, ¶ 67.)

Plaintiffs allege that this logged data and content — material including URLs embedded with HTTP/S query strings carrying web search terms, user names and passwords, and geo-location information; text message content; telephone numbers; other keystrokes; and data related to application purchases and uses — lies vulnerable to anyone with access to these debug logs, including those with malicious intent. As a direct consequence of the deployment of Carrier IQ software, the described logging of such personal, private, confidential, and sensitive information is occurring or has occurred on a massive scale. (*Id.*, ¶ 68.)

Also, because device and application crash reports call on information stored in device logs, plaintiffs allege that this personal, private, confidential, and sensitive data and content described above was sent regularly to Google,[1] as author and publisher of the Android OS, and to third-party application developers and vendors, as part of crash reports.[2] Plaintiffs allege that these actions were the result of the deployment of Carrier IQ software on mobile devices. (*Id.*, ¶ 69.)



[2] Since the plaintiffs filed their complaint, the Federal Trade Commission ("FTC") has investigated HTC regarding various security issues, including Carrier IQ-related issues, pertaining to its mobile devices. In its June 25, 2013 Decision and Order in *In the Matter of HTC America, Inc.*, the FTC confirmed that certain Carrier IQ-related programming led to the logging of consumer information, including SMS text messages, such that the information was available for transmittal to outsiders. *See* www.ftc.gov/os/caselist/1223049/130702htcdo.pdf (last visited January 16, 2014) at 9 ("As a result of the active debug code, covered information was written to the Android system log, and was accessible to any third-party application with permission to read the system log, and in many instances, was also sent to HTC.") (copy attached).) Among the FTC's findings is that

> [d]uring the development of its CIQ interface for its Android-based devices, HTC activated "debug code" in order to help test whether the CIQ Interface was functioning as intended, but then failed to deactivate the code before its devices shipped for sale to consumers. As a result of the active debug code, covered information was written to the Android system log, and was accessible to any third-

Additionally, plaintiffs allege that at least some mobile devices bearing Carrier IQ software appear to be capable of transmitting confidential consumer content even if the consumer is no longer a customer of a wireless carrier. They allege that so long as the software remains on the mobile device, it is functioning and transmitting even when the consumer is using the device solely on his or her home Wi-Fi network. They also allege that mobile device owners were unaware of this functionality of their CIQ software-bearing devices. (*Id.*, ¶ 72.)

## C.  Defendants' efforts to compel plaintiffs to arbitrate pursuant to carrier contract provisions

Defendants move to compel plaintiffs to arbitrate their claims pursuant to provisions in plaintiffs' service agreements with their wireless carriers. (Defs. Mot. at 1-2.) Defendants are not parties to these agreements. Nonetheless, they contend that plaintiffs are equitably estopped from bringing claims against them in court, even though plaintiffs do not seek the benefit of their service agreements here, and they have not engaged in conduct warranting estoppel. (*Id.*)

Defendants erroneously attempt to recast this case as being about wrongdoing by the carriers. First, they argue that plaintiffs dropped the carriers from this case when filing the CAC. (Defs. Mot. at 3.) But none of the named plaintiffs in the CAC ever brought claims against the carriers, notwithstanding defendants' misleading implications to the contrary. (*See* Defs. Mot. at 7-8.)

---

party application with permission to read the system log, and in many instances, was also sent to HTC.

*Id.* "Covered information" is defined in the decision and order as including a host of private information, including but not limited to names, addresses, "a Social Security number," "a financial institution account number," "credit or debit card information," "text messages," and location information. *Id.* at 2.

Also noteworthy is the FTC's comment in its July 2013 order that "[i]n order to embed the Carrier IQ software on its mobile devices, HTC developed a 'CIQ Interface' that would pass along the necessary information to the Carrier IQ software." *Id.* at 9 (emphasis added). In other words, the Carrier IQ software itself was calling for the sorts of information identified in the order, or it would not have been there for the HTC implementing software to pass along.

It is not yet known whether HTC's implementing software was based on a prototype programmed and disseminated by Carrier IQ, which may itself have been flawed.

As plaintiffs discuss below in Section III.D, allegations covering the unanticipated and unauthorized transmittal of their private content to manufacturers such as HTC are outside the scope of the carrier arbitration provisions.

Second, defendants argue that the individual complaints initially filed by plaintiffs Hiles, Allan, Grisham, and Cline "admit the central role" of the carriers in this action. (*Id.*).) Defendants, however, fail to inform the Court that none of these plaintiffs sued the carriers. They also ignore these plaintiffs' original complaints, in which they alleged that the defendants' *own actions* violate the law independently, regardless of the carriers' conduct.[3] In any event, the CAC supersedes their initial individual complaints. *See, e.g., In re WellPoint, Inc. Out-of-Network "UCR" Rates Litig.*, 903 F. Supp. 2d 880, 893 (C.D. Cal. 2012) ("[T]he law is clear in this Circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as nonexistent.' *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997).").

Furthermore, none of the plaintiffs, including these, has claimed that defendants breached positive duties owed to them by way of their agreements with the carriers. Plaintiffs' claims are not dependent on, or derivative of, any term of the carrier contracts. For this reason, defendants fail to identify how plaintiffs seek the benefits of those contracts while simultaneously seeking to avoid the burdens of their arbitration provisions. This is a fatal flaw in defendants' motion.

## III.   ARGUMENT

The Federal Arbitration Act ("FAA") does not require arbitration of a dispute with a party that is a stranger to the arbitration agreement. *See, e.g., NoteWorld*, 718 F.3d at 846-47 ("However, '[t]he question here is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite.'") (emphasis in original) (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n. 11 (9th Cir. 2006)). So defendants resort to equitable estoppel. But defendants cannot demonstrate that plaintiffs should be estopped from denying the applicability of

---

[3] *See, e.g., Hiles v. Carrier IQ, Inc., et al.*, No. 3:11-cv-06641-EMC, Dkt. No. 1 (N.D. Cal. Dec. 23, 2011), ¶¶ 72, 82-86, 88-90, 92-96, and 98-100; (asserting violations of law on the part of defendants Carrier IQ and LG); *Allan v. Carrier IQ, Inc., et al.*, No. 3:11-cv-06613-EMC, Dkt. No. 1 (N.D. Cal. Dec. 22, 2011), ¶¶ 1, 72, 77-90; and *Grisham v. Carrier IQ, Inc., et al.*, No. 3:12-cv-01400-EMC, Dkt. No. 1 (N.D. Cal. Mar. 20, 2012), ¶¶ 6, 36, 47, 50-51, and 58-60 (asserting violations of the law on the part of defendants Carrier IQ, Samsung, and LG).

010285-11  668526 V1

the carrier arbitration provisions, even under the erroneous federal-law approach they undertook. Moreover, they have waived the state-law arguments they were required to make.

Furthermore, even if plaintiffs were estopped from denying the general applicability of the carrier arbitration provisions in this case, defendants still would have to show that plaintiffs' claims fall within the scope of those provisions. *See*, *e.g.*, *AT&T Techs.*, 475 U.S. at 648 ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"). As described below, they do not. And even if defendants could show that plaintiffs' claims were covered by the carrier arbitration provisions, they still could not enforce any provision that fails state law tests of formation and unconscionability. Defendants have insurmountable issues there, too.

## A.      Applicable legal standard

In deciding whether equitable estoppel should be applied, the Court considers the allegations of plaintiffs' complaint and whether plaintiffs by way of their claims seek to benefit from the contract containing the arbitration provision sought to be invoked while simultaneously denying the applicability of that arbitration provision. *See*, *e.g.*, *Mundi*, 555 F.3d at 1046 (referring to the "wrongs" alleged by the plaintiffs and the plaintiffs' "claims").

More generally, "[w]hen considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting *McCarthy v. Providential Corp.*, 1994 WL 387852, at *2, 1994 U.S. Dist. LEXIS 10122, at *6 (N.D. Cal. 1994)). "In considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate was made, a district court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* "Only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). Defendants cannot show that equitable estoppel should be ordered. But even if defendants could, they nonetheless would be unable to enforce the carrier arbitration

agreements against plaintiffs because of the formation, unconscionability, and scope issues discussed below in Sections III.C and III.D.  As to these matters, there are at the least genuine issues of material fact that would preclude the relief that defendants seek here.

**B.    Defendants' equitable estoppel arguments fail as a matter of law.**

     **1.    Defendants fail to meet their burden to show that equitable estoppel should be applied under the relevant state laws, resulting in waiver.**

Defendants have not met their burden as moving parties to show that equitable estoppel should be applied under each applicable state law, as required by Supreme Court and Ninth Circuit precedent.  Instead, they undertook an inapposite federal law approach.  Consequently, defendants have waived the appropriate state-law arguments.

In *Carlisle*, a case defendants themselves cite, the Supreme Court made plain that claims of equitable estoppel must be analyzed under applicable *state* law.  *Carlisle*, 556 U.S. at 630-31 ("'[S]tate law,' therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 [of the FAA] '*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'") (citing *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 (1987); *First Options of Chicago*, *Inc. v. Kaplan*, 514 U.S. 938, 944  (1995)) (emphasis in original).  Estoppel is one of the state law doctrines to which the Supreme Court cited.  *Id.* at 632.

The Ninth Circuit also has confirmed that equitable estoppel must be analyzed under applicable state law.  *See*, *e.g.*, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 62 (2013) (citing *Carlisle*, 556 U.S. at 632, and "look[ing] to California contract law to determine whether Toyota, as a nonsignatory, can compel arbitration").  It has underscored that "a litigant who is not party to an arbitration agreement may invoke arbitration *if the relevant state contract law* allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1130 n.5 (emphasis added); *see also Murphy v. DirecTV*, *Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (same); *accord*, *Todd v. Steamship Mut. Underwriting Ass'n*, 601 F.3d 329, 3336 (5th Cir. 2010) ("[T]he Supreme Court made clear [in *Carlisle*] that state law controls whether an arbitration clause can apply to nonsignatories.").

010285-11  668526 V1

Defendants have ignored their burden to show that equitable estoppel applies under each governing state law. For this reason alone, the Court should deny their motion. *Cf. GATX/Airlog Co. v. United States*, 79 F. Supp. 2d 1208, 1213 (W.D. Wash. 1999), *aff'd*, 234 F.3d 1089 (W.D. Wash. 2000) (denying motion to dismiss in part because "The parties do not agree whether the law of Georgia or Washington applies, and defendant has not provided enough information to enable the Court to make such a determination. Therefore, defendant has not satisfied its burden on this point."). Nor can defendants seek to redeem this state of affairs via their reply brief. "[A]rguments not raised by a party in its opening brief are deemed waived." *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).

### 2. Even under the generic federal law approach applied by the defendants, their motion fails.

What is more, defendants' efforts to invoke equitable estoppel fail even under their own erroneous, generic federal-law approach. "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi*, 555 F.3d at 1045-46 (citing *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quotations omitted)). Relying on various federal cases, defendants contend that "courts have ordered parties to arbitrate disputes with non-parties to the agreement (also referred to as non-signatories) in at least two circumstances." (Defs. Mot. at 25 (citation omitted).)

Defendants argue that a non-party may compel arbitration where: (1) "a signatory's claims against a non-party are intertwined with a contract containing the arbitration agreement"; or (2) "there is a sufficiently close 'relationship' between the nonsignatory and a party to the agreement. … Such a relationship exists where there are allegations of 'substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" (*Id.* (citations omitted).) Defendants' description of the test as disjunctive mischaracterizes the Ninth Circuit's holding in *Mundi*, which would govern their approach if it were the correct one. There, the Ninth Circuit:

> examined two types of equitable estoppel in the arbitration context. In the first, a nonsignatory may be held to an arbitration clause "where the nonsignatory

010285-11 668526 V1

'knowingly exploits the agreement containing the arbitration clause despite never having signed the agreement.'" [] Under the second, a signatory may be required to arbitrate a claim brought by a nonsignatory "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations."

555 F.3d at 1046 (citations omitted).

The first "type" of equitable estoppel discussed in *Mundi* does not apply here because signatories (plaintiffs) are not attempting to compel non-signatories (the defendants) to arbitrate. It is only the second, *conjunctive* "type" that might possibly apply here, where non-signatories seek to compel signatory plaintiffs to arbitrate under the carrier arbitration provisions. Further, the Ninth Circuit found "no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated in those two lines of cases." *Id.*

*Mundi* cited the Second Circuit's decision in *Sokol Holdings*, *Inc. v. BMB Munai*, *Inc.*, 542 F.3d 354 (2d Cir. 2008), which considered whether a non-signatory could compel arbitration of a signatory's claim based on estoppel. *Sokol Holdings* first required that the subject matter of the dispute be intertwined with the contract providing for arbitration.'" 555 F.3d at 1046 (citing *Sokol Holdings*, 542 F.3d at 361). But "*in addition* to the requirement that the factual issues be intertwined, the [Second Circuit] required 'a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Id.* (emphasis added) (citing *Sokol Holdings*, 542 F.3d at 359).[4] Thus, (1) intertwining and (2) the necessary type of relationship are two parts of the same test, not two independent tests.

As the court stated in *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011) — a case defendants heavily rely on — *both* parts of the test must be met for equitable

---

[4] The Fourth Circuit authorities cited in *Mundi* required that for equitable estoppel to apply, the plaintiffs' claims must "depend[] on" or "arise out of or relate to the contract that contained the arbitration agreement." *See Mundi*, 555 F.3d at 1046-47 (citing *American Bankers Ins. Grp.*, *Inc. v. Long*, 453 F.3d 623, 630 (4th Cir. 2006) and *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005)). Because no such situation obtains here with respect to plaintiffs' claims here, defendants did not invoke this line of authority.

010285-11 668526 V1

estoppel to apply under *Mundi*.  *Id.* at 1177 ("a non-signatory defendant many 'compel a signatory to

arbitrate based on estoppel,' so long as the two requirements outlined above — namely, that the

subject matter of the dispute is 'intertwined' with the contract and that there is a sufficient

'relationship' between the parties — are met") (citing *Mundi*, 555 F.3d 1046); *see also In re Apple

iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d at 1096 (same).  Although both prongs of this generic

federal-law test must be met under defendants' interpretation of the law, they fail to satisfy either.

> **a.    Plaintiffs' claims are not intertwined with the wireless carrier agreements.**

Defendants attempt to show intertwining by three means.  Each fails.

> **(1)    Intertwining cannot be shown by pointing to potential defenses.**

First, defendants argue that plaintiffs' claims are intertwined with the carriers' service

agreements "because Plaintiffs' claims turn on whether they consented in their service agreements to

the collection and use of data by their Service Providers."  (Defs. Mot. at 26 (citations omitted).)  But

defendants fail to cite any case supporting this contention.  Plaintiffs' claims are not "intertwined"

with the service agreements simply because *defendants* want to advance a *defense* based on certain

terms in those agreements.  *See Ehlen Floor Covering*, *Inc. v. Lamb*, 2010 WL 2813369, at *2 (M.D.

Fla. July 14, 2010) ("An issue raised as a defense, however, is not attributable to the non-party in

determine whether the nonparty may be compelled to arbitrate.") (citing *Granite Rock Co. v. Int'l

Bhd. of Teamsters*, 561 U.S. 287 (2010)).  Rather, the focus must be on plaintiffs' *claims*.  *E.g.*,

*Mundi*, 555 F.3d at 1046 (referring to the "wrongs" alleged by the plaintiffs and the plaintiffs'

"claims").

*Hansen v. KPMG, LLP*, 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) does not support

defendants' argument.  The *Hansen* court did not analyze the motion to compel in terms of

intertwining.  Instead, it allowed a non-signatory to invoke the arbitration provision because plaintiff

had alleged a conspiracy between a signatory and non-signatory defendants.  *Id.* at *3.  According to

the court, the plaintiff had "describe[d] the non-signatory Defendants as one team involved in a

single course of misconduct, and s[ought] to hold them jointly liable for each other's conduct."  *Id.*

For this reason, the court found that plaintiff's "allegations plead interdependent and concerted misconduct," meriting application of the arbitration provision as requested. *Id.* But in this case, plaintiffs allege no conspiracy or single course of misconduct among defendants and the carriers, nor do they seek to hold them jointly liable for each other's conduct. Thus, *Hansen* offers no support for defendants' intertwining theory.

*NS Holdings LLC Inc. v. American Int'l Grp., Inc.*, 2010 WL 4718895 (C.D. Cal. Nov. 15, 2010), is also unavailing. That case involved denials of claims under an insurance policy issued under the name of AISLIC, which was one of a consecutive series of policies from AILSIC and AIG. *Id.* at *1, 4. Another company, Chartis, acted as AISLIC's claims administrator. *Id.* Plaintiffs sued AISLIC, AIG, and Chartis. *Id.* "All claims were to be submitted to Defendant AIG, but the policies were under the name of Defendant AISLIC." *Id.* at *1.

AIG and Chartis sought to invoke an arbitration provision in the AISLIC contract by way of equitable estoppel. *Id.* at *4. The court explained that equitable estoppel precludes a plaintiff from "invok[ing] an agreement and claim[ing] the benefit of his status under it while attempting to escape its consequences.'" *Id.* (citation and quotation omitted). The court held that AIG and Chartis could compel arbitration because "Plaintiffs' claims . . . invoke the benefits of the insurance policy and involve issues that are intertwined with the policy agreement." *Id.* (citation omitted). This case is inapposite. Plaintiffs have not sued the carriers whose arbitration provisions defendants seek to invoke; they do not seek to "invoke the benefits" of the carrier contracts; and the defendants are not related to one another like the two insurers were in *NS Holdings*. *See id.* at *1. As with *Hansen*, *NS Holdings* does not aid defendants in showing intertwining.

         **(2)**     **Plaintiffs' statutory privacy and consumer fraud claims are not intertwined with the carrier agreements.**

Second, defendants argue that plaintiffs' claims are intertwined with the service agreements, because they "disclose and obtain user consent for the collection of data." (Defs. Mot. at 27.) But again, defendants' authorities do not support this proposition.

010285-11 668526 V1

In *In re Apple & AT&TM Antitrust Litig.*, the court granted Apple's motion to compel arbitration, though *not* because, in the words of defendants here, "Plaintiff's antitrust and related claims would require the Court to *interpret* the wireless service agreements between ATTM and its customers containing the arbitration provision." (*See* Defs. Mot. at 29 (emphasis in original).) *That proposition does not appear in the case.* Rather, the court determined that "intertwining" was present there because "Plaintiffs themselves ha[d] contended throughout this litigation that their antitrust and related claims against Defendant ATTM and Defendant Apple ar[ose] from their respective ATTM service contracts." 826 F. Supp. 2d at 1178. At plaintiffs' request, the court had "certified a single unified class" which had as part of its definition the entry by class members "into a two-year agreement with [Defendant ATTM] for iPhone voice and data service . . . ." *Id.* Under these circumstances, the court held that "Plaintiffs are now estopped from contending otherwise." *Id.* But here, plaintiffs have never contended that their claims arose from a contract with their carriers; plaintiffs have not sued their carriers; and plaintiffs have not proposed a class defined by entry into a contract with a carrier. There is no intertwining in this matter such as that found by the court in *In re Apple & AT&TM Antitrust Litig.*

Defendants also cite *Garcia v. Stonehenge, Ltd.*, 1998 WL 118177, at *3, 6 (N.D. Cal. Mar. 2, 1998), but that case is similarly distinguishable. There, the movant sought enforcement of an arbitration provision under a third-party beneficiary theory, not equitable estoppel. Defendants mischaracterize the holding (Defs. Mot. at 29) as going to the enforceability of the arbitration provision, when in fact, it goes to the provision's scope. Further, unlike in *Garcia*, plaintiffs' claims in this matter do not depend on a determination of contractual rights to ascertain "if the defendants misrepresented them."[5]

---

[5] *See also In re Apple iPhone 3G Prod. Liab. Litig.*, 859 F. Supp. 2d at 1096 (unlike here, plaintiffs had initially named carrier as a defendant, and the carrier was found to be a necessary party that was added back as a defendant after voluntary dismissal; "plaintiffs themselves ha[d] contended throughout this litigation that their claims against Defendant Apple and Defendant ATTM arise from their service agreements with ATTM"; plaintiffs requested class whose membership depended upon entry into ATTM service agreements; and plaintiffs' claims were based on "core allegation that the ATTM 3G network could not accommodate iPhone 3G users"); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 828, 840-41 (N.D. Cal. 2007) (finding equitable estoppel lay because the resisting plaintiff "c[ould] not use the Agreement as a sword and at the same time choose to ignore it as a shield," and ordering arbitration with individual defendants, in addition to LLC defendant and signatory, where

010285-11 668526 V1

**(3)**     **Plaintiffs' implied warranty claims are not intertwined with the carrier agreements.**

Third, there is no merit to defendants' argument that plaintiffs' implied warranty claims are intertwined with the carrier agreement because plaintiffs supposedly rely on terms of the service agreements.[6] Plaintiffs' implied warranty claims cannot be intertwined with the carrier agreements because the carriers disclaimed any such warranties. (*See* Declaration of Stacie Dobbs ("Dobbs Decl."), (Dkt. No. 130) Ex. 2 at 6-7; Declaration of John Throckmorton ("Throckmorton Decl."), (Dkt. No. 131) Ex. 2 at 19-20; Declaration of Stephanie Miller ("Miller Decl."), (Dkt. No. 135) Exs. A and B at 12 and 7-8, respectively; Declaration of Rick Baughman ("Baughman Decl."), (Dkt. No. 134) Exs. 1 and 2 at 4 and 8-9, respectively).) As the court observed in the same situation in *In re Toyota Motor Corp. Hybrid Brake Mktg.*, *Sales*, *Pracs.*, *and Prods. Liab. Litig.*, "[I]n the FAC, Plaintiffs clearly assert a breach of the manufacturer's implied warranty against Toyota, not against the dealerships that sold the car. Nor could Plaintiffs bring such a claim against the dealerships under the Purchase Agreements, given the disclaimer that 'the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.'" *In re Toyota Motor Corp. Hybrid Brake Mktg.*, *Sales*, *Pracs.*, *and Prods. Liab. Litig.*, 828 F. Supp. 2d 1150, 1162 (C.D. Cal. 2011) (citations omitted). Accordingly, the court found no intertwining of plaintiffs' implied warranty claims with the retailers' agreements containing the arbitration provisions at issue. *Id.*[7]

_____

individual defendants were a managing member, CFO, and managing director, respectively, of the signatory LLC defendant; where the plaintiff had sued both the individuals and the LLC; where the plaintiff had alleged concerted misconduct by the defendants, including joint breach of the agreement containing the arbitration provision, and had sued all of them in the same action; and where arbitration against signatory defendant would be rendered meaningless if "substantially interdependent" conduct of non-signatories were not addressed at that same arbitration).

[6] Contrary to defendants' contention, not all plaintiffs purchased their phones from a carrier. (*Cf.* Defs. Mot. at 30 ("Plaintiffs purchased their mobile devices *from the wireless Service Providers* and the contracts that govern Plaintiffs' purchase of the mobile device are the wireless service agreements.") (emphasis in original).) Some, including plaintiffs Szulczewski, Portales, and Fischer purchased them from retailers such as Radio Shack. (*See* Miller Decl., ¶¶ 59-87.) Another, plaintiff McKeen, purchased his phone "through an Internet dealer." (*Id.*, ¶ 97.)

[7] *See also In re Toyota Motor Corp. Unintended Acceleration*, 838 F. Supp. 2d 967, 993 (C.D. Cal. 2012) (court found no intertwining and "no basis to compel the Plaintiffs to arbitrate [their warranty claims] on the basis of equitable estoppel" where the "customer agreements containing the arbitration provision disclaim express and implied warranties" and where "Plaintiffs [we]re not seeking to avail

010285-11 668526 V1

Further, the notion that the claims are intertwined because plaintiffs supposedly must rely on the carrier agreements to prove the fact and circumstances of their purchases is as unfounded factually as it is legally unavailing. Plaintiffs themselves can attest to these facts. (*See*, *e.g.*, Declaration of Luke Szulczewski in Opposition to Defendants' Motion to Compel Arbitration ("Szulczewski Decl.), ¶ 2.) Defendants have as well. (*See*, *e.g.*, Miller Decl., ¶¶ 17-58, 63-124 (attesting to plaintiffs' purchases of their devices and the dates on which those purchases were made).)

> **b.**  **Even if defendants could show intertwining of plaintiffs' claims with the carrier agreements, they cannot demonstrate a sufficient relationship among the involved parties to justify equitable estoppel.**

Nor can defendants satisfy the second part of the federal-law test they invoke--they cannot show that they have the types of relationships with the carriers that justify equitable estoppel. Defendants were not agents, subsidiaries, or corporate affiliates of the carriers.[8] Rather, defendants argue that they can satisfy the relationship prong of the approach they advocate by showing that "there are allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." (Defs. Mot. at 25 (citation omitted).) But again, their authorities demonstrates otherwise.

> **(1)**  **Plaintiffs do not allege interdependent and concerted misconduct by the defendants and carriers.**

Plaintiffs allege that each defendant violated the law by its own activities, not by concerted action with any of the carriers. The questions raised by plaintiffs' allegations are whether the defendants programmed and loaded software on their mobile devices that violated plaintiffs'

---

themselves of any advantage of the purchase agreement" — "[a]t most," the court held, "the breach of warranty claims b[ore] a mere tangential or nominal relation to the underlying contractual obligations.").

[8] Nor do the plaintiffs so contend. Misleadingly, defendants state that "Plaintiffs themselves allege an agency relationship between the Service Providers and the OEM defendants." (Defs. Mot. at 33 n.23 (citing CAC, ¶ 164).) The paragraph to which defendants refer reads as follows: "Though privity is not required under the law of the referenced states, plaintiffs and the class were in privity with the Device Manufacturers in that they purchased their mobile devices from actual or apparent agent of the Device Manufacturers, such as the Device Manufacturers' authorized dealers." (CAC, ¶ 164) In other words, plaintiffs allege that authorized dealers, whoever they were, acted as *the device manufacturers' agents* for purposes of the sale. Defendants do *not* allege that the device manufacturers were *the carriers'*, or in defendants' parlance, *the service providers'*, agents. (*Id.*)

- 16 -
PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION
3:12-md-2330-EMC
010285-11 668526 V1

statutory privacy and warranty rights, including intercepting private content when the devices were not connected to cellular networks and transmitting their private content to third-parties such as Google or application developers.  (CAC, *e.g.*, ¶¶ 27-39, 61-62, 69-72, 96, 100-173.)

Carrier IQ and the manufacturer defendants may wish to raise *defenses* to plaintiffs' claims based on provisions of the carrier agreements, but that is not the test here.  (Defs' Mot. at 32-36 (discussing possible defenses to plaintiffs' claims).)  Rather, the focus is on *plaintiffs'* claims and actions, and whether *plaintiffs* have done anything to estop them from denying the applicability of arbitration provisions to which defendants are strangers.  *See Ehlen Floor Covering*, *Inc. v. Lamb*, 2010 WL 2813369, at *2 (M.D. Fla. July 14, 2010) ("An issue raised as a defense, however, is not attributable to the non-party in determine whether the nonparty may be compelled to arbitrate.") (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)); *NoteWorld*, 718 F.3d at 847 ("Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'") (citing *Mundi*, 555 F.3d at 1045); *see also Kramer*, 705 F.3d at 1134 ("By contrast, in this case, Plaintiffs do not seek to simultaneously invoke the duties and obligations of [the non-signatory] under the Purchase Agreement, as it has none, while seeking to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is designed to address are not present.").

There also is no merit to defendants' argument that paragraphs 1, 71, 113, 128, 134, 143, 146, 154, and 168 of the CAC allege that defendants acted in concert with plaintiffs' service providers.  (Defs. Mot. at 32.)  These allegations are not directed at the carriers.  They reference transmittals of plaintiff content to third-parties including Google and independent application developers.  They also discuss the vulnerability of plaintiffs' intercepted and logged content to unknown third-parties, such as hackers or data thieves — *not to the carriers*.  (*See*, *e.g.*, CAC, ¶¶ 71 (regarding transmission to Google and third-party application developers), 113 (seeking equitable relief aimed at "cessation of defendant Carrier IQ's intrusions" and "fixes to the software").)  Whatever the carriers may or may not have done with respect to Carrier IQ software and its deployment on mobile devices, plaintiffs'

allegations are not directed to carrier activity. They are directed to activities and omissions on the part of the named defendants, Carrier IQ and the device manufacturers.

Defendants' authorities again do not help to them. In *In re Apple iPhone 3G and 3GS "MMS" Mktg. and Sales Pracs. Litig.*, 864 F. Supp. 2d 451 (E.D. La. 2012) ("*Apple MMS Mktg.*"), the court quoted the general, overarching principle that "a signatory to [an] agreement *cannot* . . . 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory. . . ." *Id.* at 459 (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527-28 (5th Cir. 2004) (emphasis in original). This does not describe the situation here, where none of plaintiffs' claims is founded on duties owed under the carrier arbitration provisions.

Moreover, in *Apple MMS Mktg.*, plaintiffs actually sued the carrier, AT&T, along with Apple which sought to enforce the carrier arbitration provision. Before AT&T's dismissal, plaintiffs had alleged extensive concerted conduct on the part of AT&T and Apple, including a co-marketing campaign and an exclusivity contract that bound iPhone purchasers to AT&T. *Id.* at 461. They also had alleged that both AT&T and Apple together "did not provide MMS service, did not tell consumers they would not receive MMS service, and did not tell consumers that they nonetheless would be paying for a service that would not be made available to them on their iPhones." *Id.* at 461-62. The court found that these allegations of substantially interdependent and concerted misconduct by Apple and AT&T "satisf[ied] the second basis of applying equitable estoppel." *Id.* at 462. Defendants can point to no such allegations of interdependent and concerted misconduct involving the carriers in this case.

The *Apple MMS Mktg.* plaintiffs' case was about what they were allegedly promised — Multimedia Messaging Service (a service permitting the transmittal of pictures or short videos) — by way of AT&T (and Apple) marketing and AT&T contracts for service, and what AT&T allegedly withheld. *Id.* at 453-54. It was not about defects in Apple iPhones. *Id.* at 454. Thus, the court held that plaintiffs' excision from its complaint of references to AT&T, following AT&T's dismissal,

were merely cosmetic and "d[id] not alter the 'gravamen of their allegations.'" *Id.* at 463 (citing *In re Apple iPhone 3G Prods. Liab. Litig.*, 2011 WL 6019217, at *3 (N.D. Cal. Dec. 1, 2011)).[9] In this matter, however, there are *no* allegations of misconduct by the carriers themselves.

Likewise, in *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084 (N.D. Cal. 2012), the court granted Apple's motion to compel arbitration on the basis that, as Apple contended, the "core theory" of plaintiffs' complaint was that both "Defendants Apple and ATTM 'allegedly misrepresented the speed of the iPhone 3G running on ATTM's 3G network, with the result that [Plaintiffs] allegedly overpaid for service under the [ATTM wireless service agreement] and for their phones.'" *Id.* at 1093 (citation omitted). There are no such allegations, let alone "core" allegations, involving performance of the carriers' networks in this case, nor are there allegations that plaintiffs overpaid for service under the carrier service agreements. Further, the allegations in this matter are distinguishable from those in *In re Apple iPhone 3G Prods. Liab. Litig.*, where plaintiffs alleged that "Apple and ATTM entered into a 'fraudulent scheme' whereby they conspired together to engage in 'racketeering activity.'" *Id.* at 1096-97. Plaintiffs here have never alleged that the defendants and carriers engaged in a "joint[]" campaign of misrepresentation, or "acted in concert with one another," or that they "have a 'close relationship' predicated on a 'joint agreement.'" *Id.* at 1097. Accordingly, *In re Apple iPhone 3G Prods. Liab. Litig.* does not support defendants' contention that plaintiffs have alleged concerted and interdependent misconduct by the carriers that would signify the type of "relationship" necessary to justify equitable estoppel.[10]

---

[9] As the *Apple MMS Mktg.* court acknowledged, this decision it cited is not about equitable estoppel. 864 F. Supp. 2d at 463 n.5. But also, it is factually distinct from this case because, according to the deciding court, the defendants' initial and amended allegations demonstrated that the case was "based on the core allegation that [ATTM's] 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." 2011 WL 6019217, at *3. Again, plaintiffs' claims in this matter are not based on any failings or violations of law by the carriers. They are based on violations of law on the part of defendants alone.

[10] Nor does *Noodles Dev. LP v. Latham Noodles, LLC*, 2009 WL 2710137 (D. Ariz. Aug. 26, 2009), another of defendants' authorities. *Id.* at *3 (finding concerted and interdependent misconduct where plaintiff alleged that the non-signatory defendant and signatory defendant attempted to induce franchisees into breaching their respective agreements with plaintiff).

3:12-md-2330-EMC

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

010285-11 668526 V1

### (2) Plaintiffs' claims do not require analysis of the carriers' conduct.

Defendants' contention that the Court must analyze the services providers' conduct to adjudicate plaintiffs' claims also is erroneous. (Defs. Mot. at 33.) Defendants' interception, logging, and transmittal to third-parties of consumer content, in violation of federal and state law, must be assessed on its own terms under the terms of plaintiffs' complaint. *Cf. NoteWorld*, 718 F.3d at 847-48 (the plaintiff had "'statutory claims that are separate from the [] contract itself'"; therefore, the defendant could not compel the plaintiff "to arbitrate his claims on the basis of equitable estoppel").

Defendants' authority again is distinguishable. In *Morselife Found.*, *Inc. v. Merrill Lynch Bank & Trust Co.*, *FSB*, 2010 WL 2889932 (S.D. Fla. July 21, 2010), the defendant, MLTC, which had explicitly identified Merrill Lynch as its affiliate, sought to compel arbitration under a contract between the plaintiff and Merrill Lynch to which it was not a party. *Id.* at *1-2. The plaintiff alleged that MLTC "through Lacy ["a Merrill Lynch vice president"], and others began providing additional and unrelated services to [plaintiff] . . . ." *Id.* at *3 (citation omitted). Additionally, "Plaintiff acknowledged at the hearing that it [wa]s suing MLTC for the acts of Lacy and the LLH Group [which was "comprised of Merrill Lynch financial advisors" including Lacy], who Plaintiff admits, are agents of Merrill Lynch, not MLTC." *Id.*; *see also id.* at *1 (identifying the LLH group as being comprised of Merrill Lynch advisors, including Lacy). Thus, the *Morselife* court's statement that "none of [the signatory plaintiffs'] allegations against [the non-signatory defendant] can be considered without analyzing the alleged conduct of employees of the other signatory," *see* Defs. Mot. at 33, was simply a function of the claims and admissions made by the plaintiff in that case. It is of no aid to defendants here.

Also of no aid to defendants is their purported plan to invoke a "provider exception" defense to plaintiffs' statutory wiretap claims. (Defs. Mot. at 34-36.) As all of their own authorities illustrate, the inquiry is based on what the *plaintiffs* allege and on the *plaintiffs'* conduct, for the question is whether the *plaintiffs* have acted in such a manner that they should be estopped from denying the applicability of the arbitration provisions that the non-signatories seek to invoke. *See*

Ehlen Floor Covering, 2010 WL 2813369, at *2 ("An issue raised as a defense, however, is not attributable to the non-party in determine whether the nonparty may be compelled to arbitrate.").

Apple MMS Mktg. does not say otherwise. Defendants cite to two parts of the case. First, the court stated that if the matter were not arbitrated against Apple, then ATTM, the carrier signatory, would lose time and money "because of its *required participation* in the proceeding." 864 F. Supp. 2d at 465 (emphasis added). That statement is inapplicable here. It is a function of a "federal law test" advanced by the Fifth Circuit, in spite of *Carlisle's* and the Ninth Circuit's commands that the appropriate *state* law must be applied. Moreover, plaintiffs' claims do not *require* the participation of the carriers in this suit as they did in *Apple MMS Mktg.*, because unlike in *Apple MMS Mktg.*, plaintiffs' claims here are not based on the carriers' performance of their duties under their service agreements.

Defendants' second quotation reads: "[ATTM's] participation would be required in this case, as Plaintiffs' 'primary claims' against Apple require[d] determining [ATTM]'s obligations and performance under its contract." (Defs. Mot. at 36 (quoting 864 F. Supp. 2d at 465-66).) But defendants omit the all-important final clause from the quoted sentence. The full sentence actually reads: "Plaintiffs' 'primary claims' against Apple require[d] determining [ATTM]'s obligations and performance under its contract *and Plaintiffs allege interdependent and concerted misconduct*." 864 F. Supp. 2d at 466 (emphasis added). To reiterate, plaintiffs here do not "allege interdependent and concerted misconduct." *Apple MMS Mktg.* does not apply.

c.   **Equity and public policy weigh against compelling plaintiffs to arbitrate with these non-signatories.**

Additionally, defendants argue that "[s]trong public policy interests justify enforcing Plaintiffs' arbitration agreements with their Service Providers under the doctrine of equitable estoppel." (Defs. Mot. at 36.) But as the Ninth Circuit observed recently, "whether a particular *party* is bound by the arbitration agreement . . . the liberal federal policy regarding the scope of arbitrable issues is inapposite." *NoteWorld*, 718 F.3d at 847 (citation omitted). Public policy does

not favor compelling plaintiffs' claims against non-signatories to arbitration under the carrier service agreements.

Defendants then argue that plaintiffs' "core theory of liability depends on the propriety of the *Service Providers'* alleged use of the software," which in their view amounts to estoppable unfairness. (Defs. Mot. at 36 (emphasis added). But plaintiffs allege no such "core theory of liability. Their claims are not about "the propriety of the Service Providers' alleged use of the software." (*See generally* CAC.)

Next, defendants argue that public policy favoring arbitration would be thwarted "[i]f a signatory to an arbitration agreement could avoid arbitration simply by filing suit only against a party he alleged acted 'at the behest' of the signatory and that developed the software allegedly used by the signatory to engage in alleged misconduct" First, however, plaintiffs nowhere allege that defendants' actionable conduct was done "at the behest" of the carriers. Rather, they allege that defendants engaged in conduct in violation of the law on their own. (*See, e.g.*, CAC, ¶¶ 100-173.) Second, plaintiffs do not allege that the signatory carriers used the software at issue to engage in alleged misconduct. Plaintiffs' case is about *these defendants'* malfeasance. (*See, e.g.*, CAC, *id.*) And third, allowing plaintiffs to have their day in court does not thwart public policy favoring arbitration ongoing among plaintiffs and the carriers that "would be rendered meaningless" if this case proceeds in court. (*See* Defs Mot. at 36.)

Defendants also argue that plaintiffs' allegations are a ruse to avoid the carrier arbitration provisions. They misleadingly state that "some of the earlier non-consolidated complaints "name[d] the carriers as defendants — *though none of the plaintiffs' initial complaints ever did.* And defendants cite to *Grigson*, 210 F.3d at 525-26, a case relied upon by *Apple MMS Mktg.*, where, in the defendants' words, "movie producers who entered a film distribution agreement with a studio sued a non-signatory, alleging that the non-signatory had influenced the studio's limited distribution of the film." (Defs Mot. at 37.) But here, unlike in that case, plaintiffs' claims are not designed to address action or inaction on the part of a signatory to an arbitration provision. Accordingly, plaintiffs did not attempt to bypass the carrier arbitration provisions, because their claims are not

010285-11  668526 V1

about the carriers' conduct. *Cf. Grigson*, 210 F.3d at 527-28, 530. *Grigson* is not binding authority here, but even if it were, equitable estoppel still would not lie.

### 3. Under the state-by-state analysis required by the Supreme Court and Ninth Circuit, defendants cannot demonstrate that equitable estoppel should apply.

Defendants' motion should be denied for their failure to articulate their arguments under applicable state law, as they were required to do. Plaintiffs reside, or resided at the pertinent time, in 13 different states, where they purchased their mobile phones. If the Court were to speculate on defendants' arguments under state law, it would find them meritless. The following synopsis of applicable state law supports a denial of the application of equitable estoppel.[11]

---

[11] Plaintiffs reside, or resided at the pertinent time, in 13 different states. These are also the states where the plaintiffs purchased their mobile phones. As *Kramer* and other courts hold, the equitable estoppel issue must be decided under the applicable state law. 705 F.3d at 1128, 1130 n.5; *DirecTV*, 724 F.3d at 1229. Because defendants' did not perform the proper state-law analysis at all, they also failed to perform any sort of choice-of-law analysis.

Since this action is pending in California, California's choice-of-law rules would be applied. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). California uses two different analyses for choosing which law should be applied in an action that involves parties from different states. Where, as here, there is no contractual agreement on applicable law, the court applies a test whereby it analyzes the governmental interests of the various states involved to select the most appropriate law. *Washington Mut. Bank v. Superior Ct.*, 15 P.3d 1071, 1077 (Cal. 2001).

California follows a three-step governmental interest analysis in resolving conflict of law issues. *Id.* at 1080. First, the court will look to the relevant foreign states' rule of law and determine if any materially differs from California law. *Id.* If there is no material difference, that is the end of the analysis and California law may be applied. *Id.* But if a material difference exists, the court will look to see what interest, if any, each foreign state has in having its own laws applied to the case. *Id.* at 1081. If there is no real conflict or no identifiable interest by another state, it is appropriate to apply California law. *Id.* If, however, the trial court determines that the laws of the foreign state are materially different and that the foreign state has an interest in having its own law applied, the court should select "the law of the state whose interests would be more impaired if its law were not applied." *Id.*

There are material differences among the states' laws on equitable estoppel. For example, as illustrated below, Illinois and Mississippi law do not permit the application of equitable estoppel to compel a signatory to arbitrate claims against a non-signatory absent a showing by the non-signatory of detrimental reliance. This makes it virtually impossible for a non-signatory to prevail. Also, Texas law does not permit non-signatories to compel signatories to arbitrate via equitable estoppel. These states' laws differ materially from California law because California law does sometimes permit the application of equitable estoppel in the arbitration context, albeit in limited circumstances not present here. Furthermore, other states' laws that sometimes permit the application of equitable estoppel differ materially from California law. These material variations are evident below. Surely defendants will not disagree with the proposition that each state has an interest in having its own law applied with respect to the equitable estoppel question as it pertains to transactions, and carrier

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Arizona*. Plaintiff Kenny purchased his phone in Arizona. In certain circumstances, Arizona law permits non-signatories to compel signatories to arbitrate under the theory of equitable estoppel, but only if the party to be estopped stands to benefit from the contract containing the arbitration clause. *See Schoneberger v. Oelze*, 208 Ariz. 591, 96 P.3d 1076, 1081 n.5 & 6 (Ariz. App. 2004). (superseded on other grounds by statute as stated in *In re Estate of Heinery*, Ariz. App. Div. 1, Apr. 30, 2013) "Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed." *Id.* at n.6. In *Oelze*, defendants argued that the plaintiffs could "not pick and choose between paragraphs of the Trust agreement and seek to claim benefits under one paragraph and ignore the express arbitration requirements of a second paragraph." *Id.* at 1082. Arizona law does not allow equitable estoppel under the circumstances here, where plaintiffs do not seek to enforce benefits under the carrier contracts while simultaneously seeking to avoid their arbitration provisions.

*California*. Plaintiffs Phong and Pipkin purchased their mobile devices in California. Like the defendants in *DirecTV*, *Kramer*, and two cases in which defendants Samsung and LG sought as non-signatories to compel signatories to arbitrate, all defendants here fail to make the case that equitable estoppel ought to apply under California law. Plaintiffs do not endeavor to enforce the carrier provisions in this suit while seeking also to avoid its arbitration provision. *See Kramer*, 705 F.3d at 1134 (in affirming the denial of the non-signatory defendants' motion to compel arbitration on the basis of equitable estoppel, noting "Plaintiffs do not seek to simultaneously invoke the duties and obligations of [the non-signatory] under the Purchase Agreement, as it has none, while seeking to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is designed to address are not present."). Also, plaintiffs' "'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [wireless carrier] agreements'"; their claims are all statutory; they do not charge "substantially interdependent and concerted" conduct (*see* Sec. III.B.b,

---

agreements tendered, within its borders. Thus, the plaintiffs offer a brief analysis of defendants' request for relief under the 13 pertinent state laws, even though defendants have waived their arguments under these laws by not making them in their motion.

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

*supra*); and defendants are not agents of the carriers, nor do they make that claim. Because the Ninth Circuit reversed an order compelling arbitration under these same circumstances, defendants' motion likewise should be denied here. *See DirecTV*, 724 F.3d at 1229-33 (applying California law and affirming denial of motion to compel based on equitable estoppel theory).

*Galitski v. Samsung Telecomms. Am., LLC*, 2013 U.S. Dist. LEXIS 171908, at *14 (N.D. Tex. Dec. 5, 2013), also is illustrative. There, phone manufacturers sought to compel consumer claims to arbitration under carrier agreements. The court determined that equitable estoppel was not available under California law, noting that merely referring to an agreement with an arbitration clause does not justify equitable estoppel. *Id*. at *11-21. There, as here, plaintiffs' complaint did "not rely on any of the terms of the [carrier] agreements as a foundation for any claim," nor, as here, did it even mention them. *Id*. at *16. "[E]ven if the court assume[d] that plaintiffs allege[d] substantially and interdependent and concerted misconduct" by the phone manufacturer and the carriers, these allegations were "not founded in or intimately connected with the obligations of the service agreements." *Id*. at *18. Accordingly, equitable estoppel was inapplicable. *Id*. at *14 (applying California law: "'merely "mak[ing] reference to" an agreement with an arbitration clause is not enough" to justify equitable estoppel); *Frost v. LG Elecs. MobileComm U.S.A., Inc.*, 2013 WL 5409906, at *7-8 (Cal. Ct. App. Sept. 27, 2013) (unpublished) (denying LG's motion to compel arbitration under California law pursuant to a carrier arbitration provision because "plaintiffs ha[d] not relied on the underlying wireless service contract to bring their claims, and there [wer]e no facts showing plaintiffs' claims were 'intertwined' with the MetroPCS agreement," and plaintiffs' allegations did "not reflect any allegation of concerted *wrongful* conduct by these two entities") (emphasis in original).[12]

---

[12] The court also addressed additional points germane to arguments the defendants make here. First, as to intertwining, it noted that any argument that warranty claims were intertwined with the carrier agreement "would be undermined by the MetroPCS Service Agreement's provision expressly stating that MetroPCS is not legally responsible for the phone equipment and that the consumer should look to the manufacturer's warranty for any relief." *Id*. at *5. The same holds true with respect to the instant plaintiffs' warranty claims, where the carriers similarly disclaim liability. Second, defendants here argue that because the carriers "would likely be subject to extensive and burdensome third-party discovery" if this case proceeded in court, they would be denied the benefit of arbitration agreements with the plaintiffs. (Defs. Mot. at 37.) This, they contend, is a public policy reason why plaintiffs should be required to arbitrate with them. (*Id.*) LG made a similar argument in *Frost*. But the court rejected it,

010285-11 668526 V1

*Connecticut.* Plaintiff McKeen purchased his phone in Connecticut. In *Resource Servs., LLC v. Bridgeport Housing Auth.*, 2011 WL 2739544 (Sup. Ct. Conn. June 13, 2011) (unpublished), the court appeared to adopt the *Grigson* test of intertwined claims or substantially interdependent and concerted misconduct. *See id.* at *7-8; *see also* Sec. III.B.2.b.(1) and III.B.2.c, *supra* (discussing *Grigson*). Because there are no such claims or conduct alleged in this case, defendants' motion fails under Connecticut law.

*Florida.* Plaintiff Levy purchased his phone in Florida. Under Florida law, "Equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by the non-signatory and one or more of the signatories to the contract." *Maldonado v. Mattress Firm, Inc.*, 2013 WL 2407086, at *4 (M.D. Fla. June 3, 2013) (citations and quotations omitted). The court in *Maldonado* found that equitable estoppel applied under its Florida law analysis because the plaintiff's allegations failed to distinguish among all the defendants, including the moving defendant, and because he had posed "no independent claim" against the moving party alone. *Id.* Defendants' motion fails under Florida law because plaintiffs have not sued any of the carriers, such that all of plaintiffs' claims are against the defendants only.

*Illinois.* Plaintiff Szulczewski purchased his phone in Illinois. Illinois law does not permit equitable estoppel to be invoked under the instant circumstances.

> Illinois law is as follows: "A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable."

*Ervin v. Nokia*, 812 N.E.2d 534, 541 (Ill. 5th Dist. 2004) (internal citations omitted). "Although estoppel may involve an involuntary relinquishment, it also requires a showing by clear, concise, and unequivocal evidence of prejudicial reliance." *Id.* In *Ervin*, the Illinois court denied a phone maker's request that it order arbitration pursuant to a carrier's service agreement based on equitable estoppel, because the phone maker could not demonstrate detrimental reliance—which is the same situation

noting, *inter alia*, that "LG has no standing to asset the rights of a nonparty to the litigation." 2013 WL 5409906, at *8.

here.  The court explicitly "decline[d] to follow federal decisions that adopt [an] expanded interpretation of equitable estoppel, because they are inconsistent with the basic principle of arbitration that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id*. at 542 (citation omitted).  Defendants cannot force a plaintiff under Illinois law to arbitrate under the instant circumstances.

*Iowa.*  Plaintiff Hiles purchased his phone in Iowa.  In *Wells Enters. v. Olympic Ice Cream*, 903 F. Supp. 2d 740 (N.D. Iowa 2012), the court stated that it did not appear that the Iowa Supreme Court had addressed the situation where a non-signatory sought to compel a signatory to arbitrate. *Id*. at 750.  In ruling that the non-signatory before it could not compel arbitration, the court predicted that the Iowa Supreme Court would follow a similar analysis to the test for "alternative estoppel" performed in *CD Partners*, *LLC v. Grizzle*, 424 F.3d 795 (8th Cir. 2005).  There, the court held that two situations could give rise to alternative estoppel:  (1) where the relationship between the signatory and non-signatory defendants is sufficiently close that only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided; and (2) when "*each* of a signatory's claims against a non-signatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, *and* arbitration is appropriate." *Id.* at 798 (citations omitted) (emphasis added).  Because none of these factors is present here, let alone all of them, equitable (or alternative) estoppel is not warranted under Iowa law.

*Kentucky.*  Plaintiff Allan purchased his mobile device in Kentucky.

In some circumstances, a non-signatory to an arbitration agreement may both bind, or be bound by, a signatory to the agreement. *Olshan Found. Repair and Waterproofing v. Otto*, 276 S.W.3d 827, 831 (Ky. Ct. App. 2009). In *Olshan*, this Court recognized five ways in which a non-signatory may enforce arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; (5) estoppel. *Id*. (citing *Javitch v. First Union Secs.*, *Inc*., 315 F.3d 619, 629 (6th Cir. 2003), *Arnold v. Arnold Corp*., 920 F.2d 1269, 1281 (6th Cir. 1990), and *Thompson–CSF v. American Arbitration Assoc*., 64 F.3d 773, 776 (2d Cir. 1995)).

In *Olshan*, the Court upheld an arbitration provision based on an estoppel theory and compelled arbitration involving a non-signatory to the underlying arbitration agreement. The Court found that one cannot receive the benefits of an agreement

010285-11 668526 V1

while at the same time evading the dispute resolution procedures contained in the same agreement. *Olshan*, 276 S.W.3d at 831–32.

*Household Fin. Corp. II v. King*, 2010 WL 3928070, at *3 (Ky. Ct. App. Oct. 8, 2010) (setting forth Kentucky law). In *King*, the court found that equitable estoppel was appropriate under Kentucky law because there, the non-moving parties were "attempting to enforce the Loan Agreement . . . but they also wish[ed] to avoid the Arbitration Rider in the same Loan Agreement." *Id.* at *4. This is the opposite situation to the instant one. Kentucky law does not support equitable estoppel in this case.

*Maryland.* Plaintiff Cribbs purchased his mobile device in Maryland. In *Case Handyman & Remodeling Servs., LLC v. Schuele*, 183 Md. App. 44, 62, 959 A.2d 833, *vacated on other grounds*, *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 567, 989 A.2d 210 (2010), the court held that principles of estoppel permitted a nonsignatory to a contract to enforce the contract's arbitration clause against a signatory to the agreement "*when the signatory's claims against the non-signatory rely on the written agreement*.[]" *Id.* (emphasis added) (footnote omitted). As shown here, the signatory plaintiffs' claims do not rely on the carrier agreements; therefore, equitable estoppel may not be invoked under Maryland law.

*Michigan.* Plaintiff Cline purchased his phone in Michigan. In *City of Detroit Police and Fire Ret. Sys. v. GSC CDO Fund, Ltd.*, 2010 WL 1875758 (Ct. App. Mich. May 11, 2010) (unpublished), the court adopted as Michigan law the Fifth Circuit's *Grigson* test for equitable estoppel. *Id.* at *5-7 (citations omitted). Accordingly, defendants' motion fails under Michigan law because plaintiffs neither rely on the terms of the carrier agreements to assert their claims against defendants, nor raise "allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." *Id.* at *6.

*Mississippi.* Plaintiff Grisham purchased his phone in Mississippi. In *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So.2d 483 (Miss. 2005), the Supreme Court of Mississippi stated that under Mississippi law, "equitable estoppel exists where there is a (1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position." *Id.* at 492 (citations omitted). It refused to "expand[] its application to deny litigants their constitutional right to a jury trial" without "consider[ing] th[ose] traditional elements

first." *Id.* Because there was no detrimental reliance or change of position present, it refused to apply equitable estoppel on behalf of a non-signatory seeking to compel a signatory to arbitrate. *Id.* at 492-93. The court refused to apply *Grigson* principles where — as in the instant case — there were no "allegations of substantially interdependent and concerted misconduct between a non-signatory and a signatory who have a close legal relationship," making plain that "the Mississippi law of equitable estoppel should first be examined to determine if conditions are present where equity should allow a non-signatory to compel arbitration." *Id.* at 492. Here, defendants can show no detrimental reliance or change of position as required under the Mississippi law of equitable estoppel, so their motion must fail.

*Texas.* Plaintiffs Laning, Portales, Thomas, and White purchased their phones in Texas. In *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185 (Tex. 2007), the Supreme Court of Texas declined to adopt as Texas law a "concerted misconduct" rule of cases such as *Grigson* that would require affiliate non-signatories to arbitrate with signatories under an estoppel theory. *Id.* at 191-95. Thus, even if defendants here could show that plaintiffs had alleged concerted misconduct — which they cannot — their request for equitable estoppel would fail under Texas law. As the court noted, "other contracts do not become binding on nonparties due to concerted misconduct, [so] allowing arbitration contracts to become binding on that basis would make them easier to enforce than other contracts, contrary to the Arbitration Act's purpose." *Id.* at 194. And insofar as an "intertwined relationship test" might be concerned, the court noted that Texas law has a "close relationship requirement" for an "intertwined claims test," consistent with that articulated by the Second Circuit. *Id.* (citation and quotations omitted). If the intertwined-claims test were adopted under Texas law, defendants could not meet it.

*Washington.* Plaintiff Sandstrom purchased his mobile device in Washington. As the Ninth Circuit determined in *NoteWorld*, which was decided under Washington law, a non-signatory cannot compel arbitration against a signatory where the plaintiff "has statutory claims that are separate from the [] contract itself," because such claims "'d[o] not arise out of or relate to the contract that

contained the arbitration agreement." 718 F.3d at 847-84 (citations and quotations omitted). The same situation obtains here; the defendants cannot invoke equitable estoppel under Washington law.

*Wisconsin.* Plaintiff Fischer purchased her phone in Wisconsin. Plaintiffs could find no case where the Supreme Court of Wisconsin ruled on the equitable estoppel raised by defendants here. But in *Everett v. Paul Davis Restoration, Inc.*, 2012 WL 4128016 (E.D. Wis. Sept. 18, 2012), the court, which was otherwise applying Wisconsin law, articulated these principles: "[a] nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause"; but "the benefit must be direct — which is to say, flowing directly from the agreement"; moreover, "[t]he use of equitable estoppel is within a district court's discretion.'" *Id.* at *5 (citations and quotations omitted). Plaintiffs are not seeking benefits from the carrier contracts in this suit, let alone any "flowing directly from the agreement." *Id.* Under Wisconsin law, like all other state laws applicable here, defendants' motion must be denied.

**C.     Defendants cannot overcome contract formation and unconscionability defects.**

It is unnecessary for the Court to conduct an analysis of the contract formation and unconscionability issues because, as established above, defendants cannot prevail on their equitable estoppel theory. However, assuming arguendo that equitable estoppel is applicable, plaintiffs analyze these issues below.

**1.     Plaintiffs did not agree to arbitrate with their carriers.**

Defendants failed to meet their burden to establish enforceable agreements with plaintiffs. The party seeking to compel arbitration has the burden of proving its existence by a preponderance of the evidence. *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996); *Gonzalez v. Citigroup, Inc.*, 2011 WL 4374997, at *2 (E.D. Cal. Sept. 19, 2011) (denying motion to compel arbitration as defendant did not meet its summary judgment level burden).

"For the terms of another document to be incorporated ... the reference must be clear and unequivocal … and the terms of the incorporated document must be known or easily available to the contracting parties." *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 790, 4 Cal. Rptr. 3d 179 (2003) (citation omitted).

The arbitration clauses here were "hidden in a prolix printed form drafted by the party [who would normally be] seeking to enforce them." *Newton v. American Debt Servs.*, *Inc.*, 854 F. Supp. 2d 712, 723 (N.D. Cal. 2012). Plaintiffs had no opportunity to negotiate the contracts, no bargaining power, and no meaningful choice other than to blindly accept the adhesion contracts offered. "The general rule that one who signs an instrument may not avoid the imposition of its terms on the ground that he failed to read the instrument before signing it applies only in the absence of overreaching or imposition. Thus, it does not apply to an adhesion contract." *Sanchez v. Valencia Holding Co.*, *LLC*, 201 Cal. App. 4th 74, 92-93 (2011). As shown below, plaintiffs never had a meaningful choice; the contracts are all contracts of adhesion and therefore procedurally unconscionable.

### a. ATTM plaintiffs.

Defendants assert that each of the ATTM plaintiffs reviewed the arbitration clauses in the ATTM Wireless Customer Agreement and "manifested agreement to its terms before ATTM activated service on his or her mobile device." (Defs. Mot. at 10:14-16.) The mere assertion that each plaintiff "reviewed" the arbitration clause is not enough to render such clauses valid, and is contradicted by the facts.

*Gary Cribbs and Daniel Pipkin.* Plaintiffs Cribbs and Pipkin acquired their ATTM wireless service at ATTM retail stores. (Cummings Decl., ¶¶ 5, 6.) Defendants claim that both reviewed ATTM's agreement on the stores' electronic signature-capture devices, and agreed to its terms by placing electronic signatures on the devices. (Defs. Mot. at 10:22-11:4 (citing to Cummings Decl., ¶¶ 8, Ex. 3 and 12, Ex. 8).) However, neither carefully reviewed nor understood the arbitration or limitation of liability language. (*See* Declaration of Daniel Pipkin in Opposition to Motion to Compel ("Pipkin Decl."), ¶¶ 5-7; Declaration of Gary Cribbs in Opposition to Motion to Compel ("Cribbs Decl."), ¶¶ 5-6.) Cribbs and Pipkin purportedly then received a "Customer Service Summary" which referenced the arbitration clause and limitation of liability which, despite defendants' assertion, were not emphasized in bold. (*See* Cummings Decl., ¶ 8, Ex. 3 and ¶ 12, Ex.

010285-11  668526 V1

8.)  Neither recalls reviewing nor understanding any limitation of liability or an arbitration clause. (Pipkin Decl., ¶¶ 5-7; Cribbs Decl., ¶¶ 5-6.)

*Mark Laning*.  Mr. Laning does not have a contract with ATTM; Diane Laning does. (Declaration of Mark Laning in Opposition to Defendants' Motion to Compel Arbitration ("Laning Decl."), ¶¶ 2, 3, 8.  Mr. Laning *never agreed to anything*, though defendants argue he and all "authorized or unauthorized users" are equally bound to a contract they never signed.  (*Id.*; Defs Mot. at 12:15-16.)

### b.      Sprint plaintiffs.

Sprint purportedly included Terms and Conditions ("Ts&Cs") "in the box of every phone" purchased by plaintiffs.  (*See* Miller Decl., ¶ 15.)  These Ts&Cs claim that plaintiffs agree to them when they "open any package or start any program."  (*Id.* at Ex. A.)  This leads to the absurd result that, to view the Ts&Cs, one would have to first open the package, thus agreeing to those same Ts&Cs before being able to review them.  No actual signature is needed to create a binding contract. Sprint also claims to provide customers with a Transaction Summary and an "RMS receipt" that reference the Ts&Cs, including "mandatory arbitration."  Miller Decl., ¶¶ 12-14.  The Transaction Summary and RMS receipt only reference arbitration in small capital type amidst other legalese, near the end of the documents.  (*See*, *e.g.*, Miller Decl. Exs. O, P.)  Sprint's in-store electronic document review system contains only references to a "binding arbitration provision."  Plaintiffs are not contemporaneously provided with, nor do they sign, a copy of an arbitration agreement.  In fact, Sprint's arbitration clause resides on pages 14 and 15 of a lengthy contract filled with legalese.  (*See* Miller Decl. Ex. A, pp. 14-15.)

Plaintiffs who use Sprint's network ("Sprint Plaintiffs")[13] share a similar experience with respect to their lack of actual exposure to the arbitration provision in that:

---

[13] Leron Levy, Eric Thomas, Bobby Cline, Patrick Kenny, Brian Sandstrom, Luke Szulczewski, Clarissa Portales, Colleen Fischer, Michael Allan, Ryan McKeen, Matthew Hiles, Dao Phong, and Shawn Grisham

010285-11  668526 V1

(1)     Sprint purportedly provided them with a copy of the 2010 Ts&Cs in the box containing their mobile devices in 2010.  (Miller Decl., ¶¶ 17-22, 28, 30, 35-36, 42-43, 52-53, 63-64, 69, 71, 77, 79, 81-82, 94, 100, 107, 112, 121.)

(2)     They deny or do not recall reviewing the terms.  (Declaration of Michael Allan in Opposition to Defendants' Motion to Compel Arbitration ("Allan Decl."), ¶ 3; Declaration of Bobby Cline in Opposition to Defendants' Motion to Compel Arbitration ("Cline Decl."), ¶ 5; Declaration of Colleen Fischer in Opposition to Defendants' Motion to Compel Arbitration ("Fischer Decl."), ¶ 2; Declaration of Shawn Grisham in Opposition to Defendants' Motion to Compel Arbitration ("Grisham Decl."), ¶ 3; Declaration of Patrick Kenny in Opposition to Defendants' Motion to Compel Arbitration ("Kenny Decl."), ¶ 3; Declaration of Leron Levy in Opposition to Defendants' Motion to Compel Arbitration ("Levy Decl."), ¶ 4; Declaration of Ryan McKeen in Opposition to Defendants' Motion to Compel Arbitration ("McKeen Decl."), ¶ 3; Declaration of Dao Phong in Opposition to Defendants' Motion to Compel Arbitration ("Phong Decl."), ¶ 3; Declaration of Clarissa Portales in Opposition to Defendants' Motion to Compel Arbitration ("Portales Decl."), ¶ 3; Declaration of Brian Sandstrom in Opposition to Defendants' Motion to Compel Arbitration ("Sandstrom Decl."), ¶ 9; Szulczewski Decl., ¶¶ 3-5; Declaration of Eric Thomas in Opposition to Defendants' Motion to Compel Arbitration ("Thomas Decl."), ¶¶ 3-4.))

(3)     Sprint's documentation referred some Sprint Plaintiffs to Ts&Cs on the Sprint website but the Sprint Plaintiffs do not recall visiting the website or receiving a physical copy of the Ts&Cs. (*See, e.g.*, Levy Decl., ¶¶ 3-4; Thomas Decl., ¶ 4; Cline Decl., ¶ 5; Kenny Decl., ¶¶ 3-4; Fischer Decl., ¶ 2.)

(4)     Sprint argues that many of the Sprint Plaintiffs received a 2011 invoice with a link to changes in the Ts&Cs, but the invoice contains no mention of arbitration. (Sandstrom Decl., ¶ 11; Levy Decl., ¶ 5; Thomas Decl., ¶ 7; Cline Decl., ¶ 6; Kenny Decl., ¶ 7; Phong Decl., ¶ 4; Allan Decl., ¶ 5; Fischer Decl., ¶ 7; Portales Decl., ¶ 4).

(5)     Sprint argues that several Sprint Plaintiffs signed a Subscriber Agreement that referenced mandatory arbitration, limitations of disputes and disclaimers of warranties.  (Miller

010285-11  668526 V1

Decl., ¶¶ 65, Ex. JJ; 74-76, 78, Ex. MM (General Page 5), 83, Ex. OO (General Page 5), 88, 97, 102.) However, these clauses are buried in small print under the heading "Other Important Information," they are referenced as "other important terms," and the Sprint Plaintiffs do not recall reviewing the terms. *See id.* (Szulczewski Decl., ¶ 3; Fischer Decl., ¶ 2.)

(6)    Spring argues that plaintiffs Michael Allan, Ryan McKeen, and Matthew Hiles, all of whom conducted business on the Sprint website, clicked on boxes to acknowledge assent to the Subscription Agreement.  (Miller Decl., ¶¶ 88, 97, 102.)  Sprint claims that the Ts&Cs were purportedly available by a link during the "click-through" process.  (*Id.* at ¶¶ 74-76, 90, 98, 103-104.)  These plaintiffs however deny reviewing the linked Ts&Cs.  (*See* Allan Decl., ¶ 3, McKeen Decl., ¶ 4.)

(7)    Plaintiffs Brian Sandstrom and Dao Phong were not parties to the relevant contract with Sprint because their service is provided via other consumers' contracts.  (*See* Miller Decl., ¶¶ 110-118, 119-124.)

Sprint argues that the contracting party's signature (electronic or otherwise) binds all users on the account.  (Miller Decl., ¶ 113.)  However, defendants fail to offer any legal support for the attenuated proposition that non-signatory consumers can be forced to arbitrate their privacy claims against corporate defendants who are also not parties to the agreements.

### c.    Cricket plaintiff.

*Douglas White*.  Defendants claim that the Cricket Ts&Cs were provided with plaintiff Douglas White's Huawei Ascend II m865 mobile device.  (Baughman Decl., ¶¶ 4-6.)  Use of the phone is apparently all that is needed to signal assent to these Ts&Cs.  (Baughman Decl. Ex. 1, 2 at Section 1(b).)  The arbitration clause is the 22nd clause of the Ts&Cs, is located on the fourth of five pages, contains seven subsections, and intermittently makes use of bold or capitalized letters, as do many other sections of the contract.  *Id.*  Even if Mr. White had reviewed the relevant sections, they are so confusing and contain so many terms as to be incomprehensible to a non-lawyer.

### d.    Formation Has Not Been Established.

Defendants claim that each of the plaintiffs thus "reviewed" and agreed to the terms in each

of their contracts.  Not so.  First, at least four plaintiffs: Phong, Grisham, Laning, and Sandstrom, were not even parties to contracts, instead being added as users to the contracts of others.  Of those four, only Grisham ever indicated any form of consent, and that was verbal with no reference to an arbitration clause.  (*See* Miller Decl. Ex. DDD.)  Defendants fail to meet their burden to show that each of these four plaintiffs agreed to relevant contracts and their arbitration clauses.

As to the remaining plaintiffs, one (Douglas White) is only alleged to have agreed to his contract by using his mobile device, and by receiving the Ts&Cs in the box that his mobile device came in.  (*See* Baughman Decl., ¶¶ 4-6.)  Seven (Levy, Thomas, Sandstrom [through his account holder], Cline, Kenny, Pipkin, and Cribbs) purportedly reviewed electronic documents in a retail store and indicated acceptance of the agreement electronically, but only signed a physical summary that merely references arbitration.  Four (Cline, Grisham, Laning [through his account holder] and Pipkin) are also alleged to have assented verbally through a voice system.  Another four (Portales, Fischer, Phong [through her account holder], and Szulcsewski) allegedly signed summaries referencing arbitration.  And four (Szulcsewski, Allan, McKeen, and Hiles) are alleged to have assented by "click-through" online.

Furthermore, plaintiffs did not have access to arbitration clauses at the time they purportedly assented to their service contracts.  *Wolschlager*, 111 Cal. App. 4th at 790.  Only vague references were made to some plaintiffs on summary documents or in electronic format.  The plaintiffs who allegedly verbally assented were not presented with a copy of the arbitration agreement.  Plaintiffs who were on other people's accounts signed nothing and were not presented with arbitration clauses.  Even those plaintiffs who supposedly had contemporaneous access to the arbitration clauses were only directed to review them by reference, or by scrolling through an electronic version.  In other words, none of the plaintiffs had a physical copy of the arbitration clause that they "knowingly" signed.

Defendants have not met their burden of proving the existence of a binding contract by a preponderance of the evidence.  *Rosenthal*, 14 Cal. 4th at 413.  Defendants have only demonstrated that several plaintiffs were coerced into signifying some assent to a contract of adhesion without

reading or understanding the relevant arbitration clauses. As to the provision of actual copies of the contracts, defendants have only presented evidence that the standard practice of third-party carriers was to provide or make available copies of Ts&Cs containing the relevant clauses, not that plaintiffs actually received copies or reviewed them. This is not enough.

## 2. The carrier arbitration provisions are unenforceable under state law.

Under the relevant state law analysis, the Sprint and Cricket Terms and Conditions are not only procedurally unconscionable, but also substantively unconscionable.[14] The Supreme Court in *Concepcion* expressly noted that the FAA's saving clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability…." 131 S. Ct. at 1746 Since *Concepcion*, several courts have invalidated arbitration clauses on unconscionability grounds, including this Court. *See*, *e.g.*, *Newtown v. American Debt Servs.*, *Inc.*, 854 F. Supp. 2d 712, 733 (N.D. Cal. 2012), *aff'd*, 2013 WL 6501391 (9th Cir. Dec. 12, 2013). Here, Sprint's and Cricket's arguments are unconscionable and unenforceable.

## a. Unconscionability is governed by state standards.

Because courts apply state contract law, the law of the states where plaintiffs reside controls whether the contracts are unconscionable: in Arizona, California, Connecticut, Florida, Illinois, Iowa, Kentucky, Maryland, Michigan, Mississippi, Texas, Washington and Wisconsin. Unconscionability defenses to the enforcement of arbitration clauses are available in all states of plaintiffs' residence.[15]

---

[14] Plaintiffs are not asserting a substantive unconscionability argument with respect to ATTM. *See Coneff v. AT &T Corp.*, 673 F.3d 1155 (9th Cir. 2012); *see also AT&T v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). Therefore all references to unconscionability exclude ATTM. Also, as set forth above, the Court need never reach this analysis if the plaintiffs prevail on their equitable estoppel arguments.

[15] *See*, *e.g.*, *Coup v. Scottsdale Plaza Resort*, *LLC*, 823 F. Supp. 2d 931, 947 (D. Ariz. 2011) (Arizona law); *D'Antuono v. Service Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011) (Connecticut law); *Dorward v. Macy's Inc.*, 2011 WL 2893118, at *4 (M.D. Fla. July 20, 2011) (Florida law); *Vis v. American Family Life Assur. Co. of Columbus*, 778 F. Supp. 2d 971, 979-80 (N.D. Iowa 2011) (Iowa law); *Valentine v. Wideopen West Fin.*, *LLC*, 2012 WL 1021809, at *3 (N.D. Ill. Mar. 26, 2012) (Illinois law); *Bruszewski v. Motley Rice*, *LLC*, 2012 WL 6691643, at *3-4 (E.D. Ky. Dec. 21, 2012) (Kentucky law); *Walther v. Sovereign Bank*, 872 A.2d 735, 741-49 (Md. 2005) (Maryland law); *Adler v. Dell*, *Inc.*, 2008 WL 5351042, at *3, 9 (E.D. Mich. Dec. 18, 2008) (Michigan law); *Kisner v. Bud's Mobile Homes*,

010285-11 668526 V1

While the laws of these states are distinct, most adhere to roughly the same unconscionability analysis, with one important exception. In Arizona, Illinois, Kentucky, Mississippi, Texas and Washington, either a showing of procedural <u>or</u> substantive unconscionability is needed to support a defense of unconscionability.[16] In California, Connecticut, Florida, Iowa, Maryland, Michigan, and Wisconsin, however, a showing of both procedural <u>and</u> substantive unconscionability is required to demonstrate that a contract clause is unconscionable.[17]

Of the states that require both procedural and substantive unconscionability, California and Wisconsin utilize a "sliding scale" approach where the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required and vice versa. *See Newton*, 854 F. Supp. 2d at 722; *Cottonwood Fin.*, *Ltd.*, 339 Wis. 2d. at 479. Connecticut, Florida, Iowa, Maryland and Michigan analyze all the pertinent facts to determine whether both procedural and substantive unconscionability are present. *See D'Antuono*, 789 F. Supp. 2d at 327; *Crewe v. Rich Dad Educ.*, *LLC*, 884 F. Supp. 2d 60, 81 (S.D.N.Y. 2012) (analyzing Florida law); *Bartlett Grain Co.*, *LP*, 829 N.W.2d at 27 (Iowa); *Doyle v. Finance Am.*, *LLC*, 173 Md. App. 370, 383 (2007); *Whirlpool Corp.*, 713 F.3d at 321. The standards for both procedural and substantive unconscionability vary slightly state-by-state, but are in essence uniform. The Cricket and Sprint arbitration agreements that Defendants claim apply are unconscionable and unenforceable under the laws of plaintiffs' home states.

512 F. Supp. 2d 549, 555 (S.D. Miss. 2007) (Mississippi law); *Hafer v. Vanderbilt Mortg. & Fin.*, *Inc.*, 793 F. Supp. 2d 987, 1001-02 (S.D. Tex. 2011) (Texas law); and *Gandee v. LDL Freedom Enters.*, *Inc.*, 293 P.3d 1197, 1199 (Wash. 2013) (Washington law).

[16] *See Shupe v. Cricket Commc'ns*, *Inc.*, 2013 WL 68876, at *5 (D. Ariz. Jan. 7, 2013) (substantive unconscionability alone sufficient); *Valentine*, 2012 WL 1021809, at *3 (either procedural or substantive unconscionability sufficient); *Schnuerle v. Insight Commc'ns Co.*, *L.P.*, 376 S.W.3d 561, 567 n. 12 (Ky. 2012) (same); *Caplin Enters.*, *Inc. v. Arrington*, 2013 WL 1878879, at *7 (Miss. Ct. App. May 7, 2013), *cert. granted*, 125 So. 3d 658 (Miss. 2013) (same); *Delfingen US-Texas*, *L.P.*, *v. Valenzuela*, 407 S.W.3d 791, 797-98 (Tex. App. 2013) (same); *Gandee v. LDL Freedom Enters.*, *Inc.*, 176 Wash. 2d 598, 603 (2013) (*en banc*) (same).

[17] *See Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (Cal.); *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011); *Spring Lake NC, LLC v. Beloff*, 110 So. 3d 52, 54-55 (Fla. Dist. Ct. App. 2013); *Bartlett Grain Co.*, *L.P. v. Sheeder*, 829 N.W. 2d 18, 27 (Iowa 2013); *Freedman v. Comcast Corp.*, 190 Md. App. 179, 208 (2010); *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 321 (6th Cir. 2013); *Cottonwood Fin.*, *Ltd. v. Estes*, 339 Wis. 2d 472, 479 (Wis. App. 2012).

010285-11 668526 V1

As described above, all of the carrier contracts are contracts of adhesion, and procedurally unconscionable. The plaintiffs' declarations about their experience bear this out. The Sprint and Cricket contracts are also procedurally unconscionable. Substantive unconscionability focuses on contract terms. *See*, *e.g.*, *Newton v. American Debt Servs.*, *Inc.*, 2013 WL 6501391, at *2 (9th Cir. Dec. 12, 2013).

### b.      The contracts at issue are procedurally unconscionable.

Procedural unconscionability concerns how the contract was made, including factors such as the manner in which the parties entered the contract, whether they had a reasonable opportunity to understand the terms, and whether the contract's terms were hidden in a "maze of fine print." *See*, *e.g.*, *Smith v. Jem Grp.*, *Inc.*, 737 F.3d 636, 640-41 (9th Cir. 2013) (citation omitted); *see also Deutsche Bank Nat'l Trust Co. v. Belizaire*, 2011 WL 3586487, at *8 (Conn. Super. Ct. July 13, 2011); *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 632 (Fla. Dist. Ct. App. 2008); *Bartlett Grain Co.*, *LP*, 829 N.W.2d at 27. Procedural unconscionability focuses on "oppression" or "surprise." "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them." *Newton*, 854 F. Supp. 2d at 723; (quoting *Flores v. Transamerica HomeFirst*, *Inc.*, 93 Cal. App. 4th 846, 853 (2001)).[18]

### (1)      The arbitration provisions are contained in contracts of adhesion and are oppressive.

Analysis of procedural unconscionability begins with an inquiry into whether the contract is one of adhesion. *Flores*, 93 Cal. App. 4th at 853. In California, contracts of adhesion are at least minimally procedurally unconscionable simply by their nature. *Newton*, 854 F. Supp. 2d at 723. Thus, in California, an adhesion contract alone fulfills the requirement of procedural

---

[18] While each state maintains its own standards, each of the states in question here focuses on similar factors, as demonstrated in the analysis below.

010285-11  668526 V1

unconscionability. *Id.* In the other states, the existence of a contract of adhesion, while not necessarily dispositive, weighs in favor of a finding of procedural unconscionability.[19]

There is no question that each of the agreements here is a contract of adhesion. Each is a form contract offered on a "take it or leave it" basis with no opportunity to negotiate, and each was enclosed in the box of the mobile device purchased. It is also oppressive because of the complete inequality of bargaining power. Accordingly, as oppressive contracts of adhesion, each of the contracts in question is procedurally unconscionable on that basis alone, or is strongly indicative of procedural unconscionability. *Newton*, 854 F. Supp. 2d at 723.

### (2)    The arbitration provisions demonstrate surprise.

Further bolstering the procedurally unconscionable nature of the contracts is the element of surprise, which may be determined by the arbitration clause's location. *Id.* at 712 (surprise where arbitration clause was on the back side of agreement and was not highlighted relative to other terms).

Here several plaintiffs either did not sign the contract containing the arbitration clause, or the arbitration clause was hidden in a prolix printed form drafted by the party in whose shoes defendants seek to stand to enforce it. *Id.* at 723. The arbitration clause is buried amongst legalese. Only Sprint makes use of a box around the arbitration clause. (*See* Miller Decl. Ex. A (pp. 14-15).) But that clause is buried at the end of the document, and does not otherwise stand out. *Id.* Plaintiffs were surprised by the arbitration clause. *Newton*, 854 F. Supp. 2d at 724.

The Sprint contracts involve surprise because, while customers are informed of the mandatory arbitration clause at checkout (Miller Decl., ¶¶ 8-11), the actual provisions are set forth in a multipage contract amongst several paragraphs of legalese. None of the plaintiffs signed the agreements containing those clauses. Further, simply referencing arbitration is insufficient, particularly where the rules of arbitration are not specified. In the case of the Sprint's 2010 Ts&Cs,

---

[19] *See, e.g.*, *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 285 (Fla. Dist. Ct. App. 2003); *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 877 P.2d 1345, 1349 (Ariz. Ct. App. 1994) (quoting *Broemmer v. Abortion Servs.*, 840 P.2d 1013, 1015 (Ariz. 1992) (*en banc*)).*Adler v. Fred Lind Manor*, 103 P.3d 773, 782-83 (Wash. 2004) (*en banc*) (quoting *Yakima Cnty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 858 P.2d 245 (Wash. 1993) (*en banc*)); *Meyer v. State Farm Fire & Cas. Co.*, 85 Md. App. 83, 582 A.2d 275 (1990); *Home Fed. Sav. & Loan Ass'n of Algona*, 357 N.W.2d 613, 619 (1984); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. Ct. App. 2001).

010285-11  668526 V1

which was the one purportedly provided to all plaintiffs but Hiles, no specific arbitration rules are specified. Rather, the arbitration rules are chosen by the arbitrator. *See* Miller Decl. Ex. A (p. 14). The failure to attach arbitration rules (by reference only) is procedurally unconscionable. *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 841 (N.D. Cal. 2012). Further, procedural unconscionability is enhanced when the contract is provided after the fact, as here. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013).

Cricket's arbitration clause, while in bold, is contained in a document rife with bolded and capitalized text. *See* Baughman Decl. Ex. 1. Rather than singling out the arbitration clause as an important part of the document, the bold treatment of the text simply makes it blend into the rest of the terms. *See id.* Moreover, the arbitration clause is situated near the end of a multi-page agreement. *Id.* Further, the presence of an opt-out clause does not save Cricket's contract. Although some courts have found that an opt-out clause forecloses a finding of procedural unconscionability (*see Velazquez v. Sears, Roebuck, & Co.*, 2013 WL 4525581, at *6 (S.D. Cal. Aug. 26, 2013)), the Ninth Circuit has made it clear that an opt-out clause must be meaningful to render a contract conscionable. *See Davis v. O'Melveny & Meyers*, 485 F.3d 1066, 1074 (9th Cir. 2006), *overruled on other grounds*, *Kilgore v. Keybank Nat'l Ass'n*, 673 F.3d 947, 960 (9th Cir. 2012). This was not the case here. Cricket's opt-out clause is not highlighted, and is only one of seven subsections to the nearly incomprehensible section of the Ts&Cs entitled "Arbitration; Dispute Resolution," and uses the capitalized term "Rejection Notice," which is undefined and suggests some required format for such a notice. A clause that is inconspicuous, difficult to understand, only available for a short time, and which no one uses is not meaningful. *See Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1084-85 (9th Cir. 2008) (discovery into the nature of the opt-out clause is necessary to determine whether it was meaningful).

Further Cricket's agreement was purportedly included in the package containing Mr. White's mobile device. Baughman Decl., ¶ 4. Thus, Mr. White received the terms after his purchase, supporting a finding of procedural unconscionability. *Chavarria*, 733 F.3d at 923. Nor does the existence of 30 or 60 day return policies insulate defendants. *See Hoffman*, 546 F.3d at 1085 (noting

3:12-md-2330-EMC

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

courts had found "ability to rescind a contract within 21 or 30 days does not necessarily insulate class arbitration waivers within such contracts from procedural unconscionability").

### (3) The Sprint and Cricket arbitration clauses are substantively unconscionable.

In addition to being procedurally unconscionable, the contracts in question are substantively unconscionable. Contract terms are substantively unconscionable if they are "unfairly one-sided," or "shock the conscience."[20] Substantive unconscionability focuses on "the effects of the contractual terms and whether they are overly harsh or one-sided." *Flores*, 93 Cal. App. 4th at 853. California courts have also found substantive unconscionability where an arbitration clause limits the types of remedies that would be available under the statute, thus violating the "principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees." *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83, 103 (2000); *see also Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994). Here, several contract terms render the Sprint and Cricket contracts substantively unconscionable.

### (a) Sprint

First, the right to unilaterally modify the terms of the service agreements renders them illusory and unenforceable. *In re Zappos Inc.*, *Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065-66 (D. Nev. 2012) (citing cases). Sprint's Ts&Cs specifically allow it to do that. Miller Decl. Ex. A. Such a unilateral right to modify the contract is substantively unconscionable. *Ingle v. Circuit City*, 328 F.3d 1165, 1179 (9th Cir. 2003) ("unilateral power to terminate or modify the contract is substantively unconscionable").

Sprint "can take any action to: (1) protect [its] network, [its] rights or interests, or the rights of others[.]" (Miller Decl. Ex. A.) This includes filing actions against people who buy its phones for injunctive relief in federal court, which Sprint has done, despite the presence of an arbitration

---

[20] *See, e.g.*, *Woebse*, 977 So. 2d at 632; *accord Besta v. Beneficial Loan Co. of Iowa*, 855 F.2d 532, 535 (8th Cir. 1988); *Zephyr Haven Health & Rehab Ctr.*, *Inc. v. Hardin ex rel. Hardin*, 122 So. 3d 916, 920 (Fla. Dist. Ct. App. 2013); *In re Rangel*, 45 S.W.3d 783, 786 (Tex. App. 2001); *Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 143-44 (2005); *Deutsche Bank Nat'l Trust Co.*, 2011 WL 3586487, at *8 (Conn.); *see also In re Marriage of Shanks*, 758 N.W.2d 506, 515-16 (Iowa 2008); *see also Caplin Enters.*, *Inc.*, 2013 WL 1878879, at *5 (Miss.); *Delfingen US-Texas*, *L.P.*, 407 S.W.3d at 797-98 (Texas).

agreement. *See*, *e.g.*, *Sprint v. Pacific Cellupage, Yousef Saghian, et al.*, Case No. 13-07862 (C.D. Cal. 2013). Sprint can haul its customers into court, but the customers can only arbitrate their claims. This lack of mutuality renders Sprint's Ts&Cs substantively unconscionable. *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 724 (2004) (finding provision in adhesion contract requiring arbitration of all claims by employees, but not employer, substantively unconscionable); *Meyer v. T-Mobile U.S.A., Inc.*, 2012 WL 2906051, at *4 (N.D. Cal. July 13, 2012) (substantive unconscionability found where agreement allowed T-Mobile to sue persons who bought its phones in court, but forced customers to arbitrate); *Bellsouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. App. 2002) (substantive unconscionability where defendant has the option of litigating some claims); *Lou v. Ma Labs.*, 2013 WL 2156316, at *4 (N.D. Cal. May 17, 2013 (lack of mutuality because party who drafted contract could seek injunctive relief while other person could not; substantively unconscionable).

Likewise, the provision that customers must first provide Sprint with notice prior to filing any complaint or dispute supports a finding of substantive unconscionability. *See Noohi v. Toll Bros., Inc.*, 708 F.3d 599 (4th Cir. 2013). Further, Sprint limits its liability in its Ts&Cs to the service charges and disclaims "incidental, consequential, punitive or special damages of any nature…" (Miller Decl. Ex. A.) These provisions deprive plaintiffs of their statutory rights to recover monetary damages under several applicable statutes. This renders the contract substantively unconscionable. *See Newton*, 854 F. Supp. 2d at 725.[21]

---

[21] *See also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002), *cert. denied*, 535 U.S. 1112 (2002); *Zaborowski v. MHN Gov't Servs., Inc.*, 926 F. Supp. 2d 1145, 1155 (N.D. Cal. 2013) (elimination of punitive damages available under statutory claims and fee and cost shifting substantive unconscionable); *Mortgage Elec. Registration Sys., Inc. v. Amber*, 260 S.W.3d 351, 355 (Ky. Ct. App. 2008); *Richmond Am. Homes of W.V., Inc. v. Sanders*, 717 S.E.2d 909 (W. Va. Nov. 21, 2011) (limitations on remedies substantively unconscionable); *Avid Eng'g, Inc. v. Orlando Marketplace Ltd.*, 809 So. 2d 1, 5 (Fla. App. 5 Dist. 2001) (suggesting waiver of damages that could be obtained in court would be substantively unconscionable); *Powertel, Inc. v. Bexley*, 743 So. 2d 570 (Fla. Dist. Ct. App. 1999); *West Virginia ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002); *Samuel Williston, Treatise on the Law of Contracts*, § 18:13 (Richard A. Lord ed. 4th ed. 1998). *But see Veal v. Orkin Exterminating Co.*, 2001 U.S. Dist. LEXIS 4846 (W.D. Mich. Apr. 9, 2001) (rejecting argument); *Carll v. Terminix Int'l Co.*, 793 A.2d 921 (Pa. Super. Ct. 2002) (same).

3:12-md-2330-EMC

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

010285-11 668526 V1

**(b)** **Cricket's contract is likewise substantively unconscionable.**

Cricket's Ts&Cs are substantively unconscionable for many of the same reasons that Sprint's Ts&Cs are unconscionable. First, Cricket may unilaterally change the contract. (Baughman Decl. Ex. 1.); *see In re Zappos*, 893 F. Supp. 2d at 1065-66. Second, Cricket's Ts&Cs render arbitration cost-prohibitive, as its coverage of fees and costs is illusory.[22] Third, Cricket also limits its liability.[23] (Baughman Decl. Ex. 1.) Fourth, Cricket artificially limits the statute of limitations to two years from when the claim arose. This is substantively unconscionable, since the statutes under plaintiffs' claims exceed two years. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197 (Wash. Oct. 18, 2012). Finally, Cricket's Ts&Cs do not specify the location of arbitration. *See* Baughman Decl. Ex. 1 ("Any arbitration hearing that you attend will be at a place chosen by the arbitrator or arbitration administrator at the time the claim is filed."). Cricket's ability to force the arbitration at a distant venue supports a finding that the contract is substantively unconscionable as cost-prohibitive. *See*, *e.g.*, *Newton*, 854 F. Supp. 2d at 726.

**3.** **The unconscionable terms are not severable.**

The California Supreme Court confirmed that California Civil Code section 1670.5 gives courts discretion to determine whether to sever or restrict an unconscionable provision or refuse to enforce an arbitration agreement in its entirety. *Armendariz*, 24 Cal. 4th at 122. The court must consider whether the interests of justice would be furthered by severance. Moreover, courts must have the capacity to cure the unlawful contract through severance or restriction of the offending clause, which ... is not invariably the case." *Id*. at 124. The agreements here are permeated by

---

[22] Cricket's Ts&Cs state: "At your written request, we will consider any requests to advance or reimburse any arbitration filing fee, administrative and hearing fees that you are required to pay to pursue a Claim in arbitration." (Baughman Decl. Ex. 1.)

[23] Cricket's contracts states, "Unless the law forbids it in any particular case, you agree to limit claims for damages or other monetary relief against Cricket and its vendors and suppliers to the lesser of: (A) your direct damages or (B) one month's service charges. This limitation and waiver will apply regardless of the theory of liability, whether fraud, misrepresentation, breach of contract, personal injury, negligence, products liability, or any other theory. Additionally, under no circumstances are we liable for any incidental, consequential, punitive or special damages of any nature whatsoever arising out of or related to providing or failing to provide services in connection with a device, including, but not limited to, lost profits, loss of business, or cost of replacement produces and services. (C) By using the service(s), you agree that the remedies provided under this Agreement are exclusive, and you waive your right to any remedies that may be available to you at law or in equity."

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

several unconscionable clauses, and their removal would require the Court to insert its own clauses, essentially rewriting the contract. The Court should not use its discretion to do so, and should instead find the contracts unconscionable as a whole.

**4.      The claims here are outside the scope of the relevant arbitration provisions.**

Even assuming the plaintiffs agreed to arbitrate something with the carriers, the claims in this matter are outside the scope of the arbitration provisions. Accordingly, plaintiffs cannot be compelled to arbitrate. *See, e.g., AT&T Techs.*, 475 U.S. at 648. The present dispute is outside the scope of the carrier contracts. First, defendants are not signatories to the agreements, are not contemplated or intended beneficiaries of the arbitration clauses in question, and indeed are expressly excluded from the contracts. Second, plaintiffs' warranty claims are excluded from the carrier contracts, and plaintiffs' allegations of transmission of information by means other than over the wireless networks of the carriers do not implicate any activity by the carriers.

**a.      Plaintiffs never agreed to arbitrate with defendants.**

Defendants make much of their argument that plaintiffs agreed to arbitrate all disputes relating to their use of cellular devices and cellular services. What they conveniently pass over is the explicit language in these agreements describing with *whom* they agreed to arbitrate disputes. Each of the arbitration clauses cited in defendants' motion and the supporting declarations calls for the arbitration of disputes *only* between the customer and the service provider, or its agents or assigns.[24] No defendants have claimed to be the agent or assign of the service providers in question as it relates to the matters at issue herein. Thus, claims against third parties are beyond the scope of the arbitration clauses. The Cricket and Sprint arbitration agreements also have clauses expressly stating that the agreement is not for the benefit of any third party. (Miller Decl. Ex. A (Sprint); Baughman Decl. Ex. 2 at paragraph 22(c) and (e) (Cricket).) Defendants ignore the plain language of the

---

[24] For example, the relevant ATTM clause states "AT&T and you agree to arbitrate all disputes and claims *between us*." Dobbs Decl. Ex. 2 at 2.2 (emphasis added). Sprint's clause likewise states "We each agree to finally settle all disputes . . . only by binding arbitration . . . 'Disputes' are any claims or controversies *against each other*[.]" Miller Decl. Ex. A. Cricket's clause is no different, reading "[a]ny past, present or future claim, dispute or controversy ('Claim') by either *you or us against the other*, or against the employees, agents successors or assigns of the other, arising from or relating in any way to this Agreement or Services provided to you under this Agreement, . . . *upon the election by you or us*, by binding arbitration." Baughman Decl. Ex. 2 (emphasis added).

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION

arbitration clauses, which only cover disputes between the customer and the carrier. None of the Service agreements cover disputes with nonsignatory third parties, such as defendants.

        **b.**     **Plaintiffs' warranty claims and allegations unrelated to transmission over the carrier networks are outside the scope of the arbitration clauses.**

"A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2856 (2010). "To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Id.* Thus, a court must determine "whether [the dispute] falls within the scope of the parties' agreement to arbitrate." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Plaintiffs' privacy claims are not subject to arbitration because they are outside the scope of the carrier-consumer arbitration provisions. All of the carrier arbitration provisions expressly exclude warranty liability for the manufacturer defendants' devices; therefore, plaintiffs' warranty claims cannot fall within the scope of those agreements. Also, plaintiffs' allegations that Carrier IQ software-equipped devices were (a) transmitting or capable of transmitting consumer content even when the devices were operating over Wi-Fi only, rather than via the carriers' networks, or (b) logging and sending the content of text messages to Google or various application developers were never contemplated by the parties to the arbitration agreements, because the subject of those agreements is the provision of cellular service to consumers.

**D.**     **Even if defendants' motion were not subject to denial, this matter should not be stayed.**

Even if defendants had met their burdens and shown that they could compel plaintiffs to arbitrate all claims, this matter would best be dismissed in the Court's discretion rather than stayed. *City of Vasalia v. Chartis Inc.*, 2013 WL 144959, at *3 (E.D. Cal. Jan. 11, 2013) . Under these circumstances, where not only plaintiffs but masses of consumers would be denied the ability to vindicate their privacy rights in court, and ordered instead to arbitrate their claims individually under contracts they never entered into with the defendants, plaintiffs submit that the most reasonable approach would be to dismiss their claims outright, so an appeal can be taken promptly. *Id.* at *4.

# IV. CONCLUSION

For all of the foregoing reasons, defendants' motion should be denied in its entirety.

Dated: January 21, 2014.                    HAGENS BERMAN SOBOL SHAPIRO LLP


By: ___/s/ Steve W. Berman_____
    Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com


PEARSON SIMON &WARSHAW, LLP


By: ___/s/ Bruce L. Simon_____
    Bruce L. Simon (CSB No. 96241)
William J. Newsom (CSB No. 267643)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com
wnewsom@pswlaw.com

Daniel L. Warshaw (CSB No. 185365)
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pswlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

PLAINTIFFS' OPPOSITION TO MOTION TO COMPEL ARBITRATION