1  RODGER R. COLE (CSB No. 178865)
   rcole@fenwick.com
2  MOLLY R. MELCHER (CSB No. 272950)
   mmelcher@fenwick.com
3  FENWICK & WEST LLP
   Silicon Valley Center
4  801 California Street
   Mountain View, CA 94041
5  Telephone: 650.988.8500
   Facsimile: 650.938.5200

6

7  TYLER G. NEWBY (CSB No. 205790)
   tnewby@fenwick.com
8  JENNIFER J. JOHNSON (CSB No. 252897)
   jjjohnson@fenwick.com
9  FENWICK & WEST LLP
   555 California Street, 12th Floor
10 San Francisco, CA 94104
   Telephone: 415.875.2300
11 Facsimile: 415.281.1350

12 *Attorneys for Defendant*
   *Carrier IQ, Inc.*
13

14 [*Additional Counsel listed on Signature Page*]

15              UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17              SAN FRANCISCO DIVISION

18

19 *In re Carrier IQ, Inc. Consumer Privacy*     Case No.: 3:12-md-02330-EMC
   *Litigation,*
20                                               **DEFENDANTS' CONSOLIDATED**
                                                 **REPLY IN SUPPORT OF MOTION TO**
21 [*This Document Relates to All Cases*]        **COMPEL ARBITRATION AND TO**
                                                 **STAY LITIGATION**
22
                                                 Date:    March 13, 2014
23                                               Time:    1:30 p.m.
                                                 Place:   Courtroom 5, 17th Floor
24                                               Judge:   Edward M. Chen

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...........................................................................................................1

ARGUMENT ...............................................................................................................1

I.    EQUITABLE ESTOPPEL REQUIRES PLAINTIFFS TO ARBITRATE THEIR CLAIMS. ......................................................................................................1

    A.    Plaintiffs' Claims Are Intertwined with the Wireless Service Agreements. ...................................................................................2

    B.    Plaintiffs Allege Substantially Interdependent and Concerted Misconduct That Is Intimately Connected with the Service Agreements. .............5

    C.    State Contract Law Also Requires Plaintiffs to Arbitrate Their Claims.................6

II.    DEFENDANTS HAVE ESTABLISHED THE EXISTENCE OF THE ARBITRATION AGREEMENT BY A PREPONDERANCE OF EVIDENCE................8

    A.    As a Matter of Law, Plaintiffs Cannot Avoid Their Contracts by Claiming That They Failed to Read the Terms. ......................................................8

    B.    Plaintiffs' Purported Inability to Remember Receiving Their Contracts Does Not Allow Them To Evade the Arbitration Agreement. .................9

    C.    Plaintiffs Cannot Deny Their Manifestations of Assent........................................10

        1.    Plaintiffs Signed Agreements Manifesting Consent to Arbitration...................................................................................10

        2.    Plaintiffs Electronically Assented to the Arbitration Agreement. .............11

        3.    Plaintiffs Assented to the Arbitration Agreement Verbally. ....................12

        4.    Plaintiffs Saw Documents Referencing the Arbitration Agreement....................................................................................12

    D.    Authorized Users are Parties to the Terms of ATTM and Sprint's Contracts. ...................................................................................13

III.    PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION PROVISIONS....................................................................................14

IV.    THE CRICKET AND SPRINT PLAINTIFFS' CHALLENGES TO ENFORCEABILITY ARE ISSUES THAT HAVE BEEN DELEGATED TO THE ARBITRATOR. ............................................................................15

V.    PLAINTIFFS CANNOT DEMONSTRATE UNCONSCIONABILITY. ......................16

    A.    Plaintiffs Cannot Demonstrate Procedural Unconscionability. ...........................17

        1.    Adhesion Alone Does Not Render the Agreements Unconscionable.........................................................................17

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

CASE NO. 3:12-md-02330-EMC

2.    Plaintiffs Have Failed to Demonstrate Unfair Surprise. ...........................18

a.    Sprint's Contracts Do Not Involve Surprise. ................................18

(1)    The Arbitration Provision Was Prominently Displayed. ...........................................................18

(2)    There is No Requirement to Attach Arbitration Rules. ................................................................20

b.    Cricket's Contracts Do Not Involve Surprise. ..............................20

B.    Plaintiffs Have Failed to Demonstrate that Sprint's and Cricket's Arbitration Provisions are Substantively Unconscionable. ...................21

1.    Sprint. .................................................................................................21

a.    Unilateral Modification Terms Are Fully Enforceable. ................21

b.    The Sprint Arbitration Provision Does Not Lack Mutuality. ....................................................................................22

c.    A Pre–Suit Notice Requirement is Not Unconscionable. .............23

d.    The Limitation of Liability Does Not Render Sprint's Arbitration Provision Substantively Unconscionable ...................24

2.    Cricket. ...............................................................................................24

VI.    CONCLUSION. ..............................................................................................25

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

ii

CASE NO. 3:12-md-02330-EMC

# **TABLE OF AUTHORITIES**

**CASES**

*3A Indus., Inc. v. Turner Constr. Co.,*
   71 Wash. App. 407 (1993) ................................................................................................ 10

*Allen v. Regions Bank,*
   389 F. App'x 441 (5th Cir. 2010) (per curiam) ............................................................... 15

*Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co.,*
   No. 09-CV-09033 DDP AJWX, 2010 WL 749876 (C.D. Cal. Mar. 1, 2010) *aff'd,*
   470 F. App'x 652 (9th Cir. 2012) ...................................................................................... 1

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.,*
   844 F.2d 1174 (5th Cir. 1988) ......................................................................................... 17

*Armas v. Prudential Sec., Inc.,*
   842 So.2d 210 (Fla. Dist. Ct. App. 2003) .......................................................................... 6

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (2011) ............................................................................. 17, 20, 22, 23

*Avatar Props., Inc. v. Greetham,*
   27 So. 3d 764 (Fla. Dist. Ct. App. 2010) ......................................................................... 10

*Avid Eng'g, Inc. v. Orlando Marketplace Ltd.,*
   809 So.2d 1 (Fla. Dist. Ct. App. 2001) ............................................................................ 24

*B.C. Rogers Poultry, Inc. v. Wedgeworth,*
   911 So. 2d 483 (Miss. 2005) .............................................................................................. 7

*Bartlett Grain Co. LP v. Sheeder,*
   829 N.W.2d 18 (Iowa 2013) ............................................................................. 9, 10, 16, 19

*Bates v. Laminack,*
   No. 2:12-CV-387, 2013 WL 4735402 (S.D. Tex. Sept. 3, 2013) ........................................ 9

*Bhim v. Rent-A-Center, Inc.,*
   655 F. Supp. 2d 1307 (S.D. Fla. 2009) ...................................................................... 16, 17

*Briceno v. Sprint Spectrum, L.P.,*
   911 So. 2d 176 (Fla. Dist. Ct. App. 2005) ................................................................. 13, 19

*Brooks v. Prestige Fin. Servs., Inc.,*
   827 F. Supp. 2d 509 (D. Md. 2011) ................................................................................. 17

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

CASE NO. 3:12-md-02330-EMC

*Bryant v. Am. Express Fin. Advisors, Inc.*,
  595 N.W. 2d 482 (Iowa 1999) ...........................................................................11, 13

*Cantella & Co. v. Goodwin*,
  924 S.W.2d 943 (Tex. 1996) .............................................................................20, 21

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991), superseded ............................................................................9

*Carrick v. Aquent, Inc.*,
  294 F. Supp. 2d 1012 (E.D. Wis. 2003) ................................................................17

*Case Handyman & Remodeling Servs., LLC v. Schuele*,
  183 Md. App. 44 (2008) *judgment vacated, appeal dismissed*,
  412 Md. 555 (2010) ..................................................................................................7

*Caspi v. Microsoft Network, LLC*,
  732 A.2d 528 (1999) ...............................................................................................11

*CD Partners, LLC v. Grizzle*,
  424 F.3d 795 (8th Cir. 2005) ...................................................................................6

*Celaya v. Am. Pinnacle Mgmt. Servs., LLC*,
  No. 3:13-CV-1096-D, 2013 WL 4603165 (N.D. Tex. 2013) ...............................25

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013) .................................................................................20

*Chicago Pac. Corp. v. Canada Life Assurance Co.*,
  850 F.2d 334 (7th Cir. 1988) ..............................................................................9, 10

*Cinel v. Barna*,
  206 Cal. App. 4th 1383 (2012) ..............................................................................23

*Circuit City Stores, Inc. v. Curray*,
  946 S.W.2d 486 (Tex. App. 1997) .........................................................................21

*Cirilli v. Country Ins. & Fin. Servs.*,
  776 N.W.2d 272 (Wis. Ct. App. 2009) ..................................................................16

*City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*,
  No. 289185, 2010 WL 1875758 (Mich. Ct. App. May 11, 2010) .............................7

*Clark v. DaimlerChrysler Corp.*,
  706 N.W.2d 471 (Mich. Ct. App. 2005) ................................................................19

*Collins v. Diamond Pet Food Processors, LLC*,
  No. 2:13-CV-00113-MCE-KJN, 2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) ....................20

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

iv

CASE NO. 3:12-md-02330-EMC

*Coneff v. AT&T Corp.*,
    673 F.3d 1155 (9th Cir. 2012) ............................................................................22

*Conseco Fin. Servicing Corp. v. Wilder*,
    47 S.W.3d 335 (Ky. Ct. App. 2001) ....................................................................19

*Coup v. Scottsdale Plaza Resort, LLC*,
    823 F. Supp. 2d 931 (D. Ariz. 2011) ...................................................................17

*D'Antuono v. Serv. Road Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011) ................................................9, 16, 17, 19

*Davis v. Sprint Nextel Corp.*,
    No. 12-CV-01023-W-DW, 2012 WL 5904327 (W.D. Mo. Nov. 26, 2012) ....................19, 23

*Deminsky v. Arlington Plastics Mach.*,
    259 Wis. 2d 587, 657 N.W.2d 411 (Wisc. 2003) .................................................9

*Doctor's Assocs. Inc. v. Casarotto*,
    517 U.S. 681 (1996)............................................................................................19

*Dombrowski v. Gen. Motors Corp.*,
    318 F. Supp. 2d 850 (D. Ariz. 2004) ...................................................................16

*East West Bank v. Bingham*,
    No. 13-CV-1394 RAJ, 2014 WL 129386 (W.D. Wash. Jan. 14, 2014) ...................7

*Edwards v. Wurster Oil Co.*,
    688 So. 2d 772 (Miss. 1997)...............................................................................12

*Ehlen Floor Covering, Inc. v. Lamb*,
    No. 2:07-CV-666-FTM29DNF, 2010 WL 2813369 (M.D. Fla. July 14, 2010) ...................4, 6

*Emilio v. Sprint Spectrum, LP*,
    315 F. App'x 322 (2d Cir. 2009) .........................................................................16

*Emilio v. Sprint Spectrum, LP*,
    508 F. App'x 3 (2d Cir. 2013) .............................................................................16

*Ernst & Young LLP v. Clark*,
    323 S.W.3d 682 (Ky. 2010)................................................................................10

*Everett v. Paul Davis Restoration, Inc.*,
    No. 10-CV-634, 2012 WL 4128106 (E.D. Wis. Sept. 18, 2012) ............................7

*Fall v. High-Tech Institute*,
    559 F.3d 874 (8th Cir. 2009) ..............................................................................16

*Falls v. 1CI, Inc.*,
    208 Md. App. 643 (2012) ....................................................................................16

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

v

CASE NO. 3:12-md-02330-EMC

*Forrest v. Verizon Commc'ns, Inc.*,
    805 A.2d 1007 (D.C. 2002) ...................................................................11

*Garcia v. Stonehenge, Ltd.*,
    No. C-97-4368, 1998 WL 118177 (N.D. Cal. Mar. 2, 1998) .....................3

*Gonzalez v. Citigroup, Inc.*,
    No. 11-CV-0795 LKK/GGH, 2011 WL 4374997, at *2
    (E.D. Cal. Sept. 19, 2011) ................................................................9, 10

*Gonzalez v. Citigroup, Inc.*,
    No. 11-CV-0795 LKK/GGH, 2011 WL 5884250, at *2
    (E.D. Cal. Nov. 23, 2011) ........................................................................9

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287, 130 S. Ct. 2847 (2010) .....................................................4

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000) .................................................................................16

*Grigson v. Creative Artists Agency, L.L.C.*,
    210 F.3d 524 (5th Cir. 2000) ....................................................................7

*Guidewire Software, Inc. v. Chookaszian*,
    No. 12-CV-3224-LHK, 2012 WL 5379689 (N.D. Cal. Oct. 31, 2012) ......16

*Harby ex rel. Brooks v. Wachovia Bank, N.A.*,
    172 Md. App. 415 (Md. Ct. Spec. App. 2007) .....................................9, 10

*Hathaway v. Eckerle*,
    336 S.W.3d 83 (Ky. 2011) ........................................................................9

*Hodsdon v. Bright House Networks, LLC*,
    No. 1:12-CV-01580-AWI-JLT, 2013 WL 1091396 (E.D. Cal. Mar. 15, 2013)...............20, 22

*Hodson v. Bright House Networks, LLC*,
    No. 1:12-CV-1580, 2013 WL 1499486 (E.D. Cal. Apr. 11, 2013) ............22

*Household Fin. Corp. II v. King*,
    No. 2009-CA-001472-MR, 2010 WL 3928070 (Ky. Ct. App. Oct. 8, 2010) ..........................6

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) ..................................................................25

*In re Apple & AT&TM Antitrust Litig.*,
    826 F. Supp. 2d 1168 (N.D. Cal. 2011) ....................................................3

*In re Apple iPhone 3G & 3GS MMS Mktg. & Sales Practices Litig.*,
    864 F. Supp. 2d 451 (E.D. La. 2012).....................................................3, 6

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

vi

CASE NO. 3:12-md-02330-EMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*In re Bank One, N.A.*,
    216 S.W.3d 825 (Tex. 2007) ................................................................................. 10

*In re Olshan Found. Repair Co., LLC*,
    328 S.W.3d 883 (Tex. 2010) ................................................................................. 25

*In re Palm Harbor Homes, Inc.*,
    195 S.W.3d 672 (Tex. 2006) ........................................................................... 17, 19

*In re Poly-Am., L.P.*,
    262 S.W.3d 337 (Tex. 2008) ................................................................................. 25

*In re State Police Litig.*,
    888 F. Supp. 1235 (D. Conn. 1995) ........................................................................ 2

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices., and Prods. Liab.*
    *Litig.*,
    828 F. Supp. 2d 1150 (C.D. Cal. 2011) .................................................................. 4

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and*
    *Prods Liab. Litig.*,
    838 F. Supp. 2d 967 (C.D. Cal. 2012) .................................................................... 4

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    300 F. Supp. 2d 1107 (D. Kan. 2003) .................................................................. 19

*In re Zappos.com*,
    893 F. Supp. 2d 1058 (D. Nev. 2012) .............................................................. 21, 22

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ........................................................................ 21, 22

*Jones v. Gen. Motors Corp.*,
    640 F. Supp. 2d 1124 (D. Ariz. 2009) .................................................................. 19

*Jones v. Sallie Mae, Inc.*,
    No. 3:13-CV-837-J-99MMH-MCR, 2013 WL 6283483 (M.D. Fla. Dec. 4,
    2013) ..................................................................................................................... 9, 10

*Kilgore v. KeyBank, Nat'l Assoc'n*,
    718 F.3d 1052 (9th Cir. 2013) ............................................................................... 19

*Klein v. Verizon Commc'ns Inc.*,
    920 F. Supp. 2d 670 (E.D. Va. 2013) .............................................................. 18, 22

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ............................................................................. 1, 2

*Lara v. Onsite Health Inc.*,
    896 F. Supp. 2d 831 (N.D. Cal. 2012) .................................................................. 20

*Mance v. Mercedes-Benz USA,*
   901 F. Supp. 2d 1147 (N.D. Cal. 2012) ...................................................................17

*Matl Constr. Co. v. Jim Connelly Masonry, Inc.,*
   No. 03-CV-08-00559, 2009 WL 2341891 (Tex. Ct. App. July 31, 2009) ................7

*McKee v. AT&T Corp.,*
   164 Wash.2d 372 (2008) ......................................................................................16

*Mech. Power Conversion, LLC v. Cobasys, L.L.C.,*
   500 F. Supp. 2d 716 (E.D. Mich. 2007) .........................................................10, 13

*Michak v. Transnation Title Ins. Co.,*
   148 Wash. 2d 788 (2003) .......................................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985) ............................................................................................14

*Momot v. Mastro,*
   652 F.3d 982 (9th Cir. 2011) ...............................................................................15

*Morselife Found., Inc. v. Merrill Lynch Bank & Trust Co.,* No. 09-CV-81143 CIV,
   2010 WL 2889932 (S.D. Fla. Jul. 21, 2010) ..........................................................5

*Mortgage Elec. Registration Sys., Inc. v. Amber,*
   260 S.W.3d 351 (Ky. Ct. App. 2008) ..................................................................24

*Moss v. McLucas,*
   No. 12-CV-2368, 2013 WL 1680483 (S.D. Cal. Apr. 16, 2013) ............................16

*Mundi v. Union Sec. Life Ins. Co.,*
   555 F.3d 1042 (9th Cir. 2009) .............................................................................2, 7

*Murphy v. DirecTV, Inc.,*
   724 F.3d 1218 (9th Cir. 2013) .............................................................................2, 6

*Nat'l Bank of Wash. v. Equity Investors,*
   81 Wash.2d 886 (1973), .........................................................................................9

*Newton v. Am. Debt Servs., Inc.,*
   854 F. Supp. 2d 712 (N.D. Cal. 2012), *aff'd*, No. 12-CV-15549, 2013 WL
   6501391 (9th Cir. Dec. 12, 2013) .................................................................9, 18, 24

*Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
   509 F. Supp. 2d 752 (W.D. Wis. 2007) ...............................................................19

*Noohi v. Toll Bros. Inc.,*
   708 F.3d 599 (4th Cir. 2013) ...............................................................................23

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

viii

CASE NO. 3:12-md-02330-EMC

*Norwest Fin Miss., Inc. v. McDonald*,
　　905 So. 2d 1187 (Miss. 2005)....................................................................16, 17

*NS Holdings LLC Inc. v. Am. Int'l Grp. Inc.*,
　　No. 10-CV-1132 DOC, 2010 WL 4718895 (C.D. Cal. Nov. 15, 2010).....................25

*One Beacon Ins. Co. v. Crowley Marine Servs. Inc.*,
　　No. H-08-2059, 2010 WL 1463451 (S.D. Tex. Apr. 12, 2010), *aff'd*, 648 F.3d
　　258 (2011)..................................................................................................13

*Pacheco v. PCM Constr. Servs. LLC*,
　　No. 3:12-cv-4057-L, 2014 WL 145147 (N.D. Tex. Jan. 15, 2014)............................16

*Phillips v. Sprint PCS*,
　　209 Cal. App. 4th 758 (2012) ......................................................................19

*Phx Ins. Co. v. Rosen*,
　　242 Ill.2d 48 (2011) ....................................................................................17

*Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*,
　　55 Cal. 4th 223 (Cal. Ct. App. 2012)............................................................13

*Prouty v. Gores Tech. Grp*,
　　121 Cal. App. 4th 1225 (2004) ....................................................................23

*R.J. O'Brien & Assoc., Inc. v. Pipkin*,
　　64 F.3d 257 (7th Cir. 1995) ........................................................................10

*Rajagopalan v. NoteWorld, LLC*,
　　718 F.3d 844 (9th Cir. 2013) ........................................................................2

*Regions Bank v. Herrington*,
　　630 F. Supp. 2d 722 (S.D. Miss. 2009) ........................................................10

*Rembert v. Ryan's Family Steak Houses, Inc.*,
　　596 N.W.2d 208 (Mich. Ct. App. 1999), *appeal denied*, 605 N.W.2d 318
　　(Mich. 1999) ..............................................................................................16

*Rent-A-Center, West Inc. v. Jackson*,
　　561 U.S. 63, 130 S. Ct. 2772 (2010)......................................................15, 21, 24, 25

*Res. Servs., LLC v. Bridgeport Hous. Auth.*,
　　No. HHDCV106020108S, 2011 WL 2739544 (Conn. Super. Ct. June 13,
　　2011) ........................................................................................................6

*Reuben H. Donnelley Corp. v. Krasny Supply Co.*,
　　227 Il. App. 3d 414 (1991) ..........................................................................16

*Rivera v. AT&T Corp.*,
　　420 F. Supp. 2d 1312 (S.D. Fla. 2006) ........................................................19

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

ix

CASE NO. 3:12-md-02330-EMC

*Rocz v. Drexel Burnham Lambert, Inc.*,
  154 Ariz. 462 (Ariz. Ct. App. 1987) ................................................................9

*Rory v. Cont'l Ins. Co.*,
  703 N.W.2d 23 (Mich. 2005) ......................................................................17

*Rosenthal v. Great West. Fin. Sec. Corp.*,
  14 Cal. 4th 394 (1996) ..............................................................................16

*Russell v. Performance Toyota, Inc.*,
  826 So. 2d 719 (Miss. 2002) .......................................................................9

*Sanchez v. Valencia Holding Co., LLC*,
  201 Cal. App. 4th 74 (2011) .....................................................................8, 9

*Sanchez v. Valencia Holding Co., LLC*,
  272 P.3d 976 (Cal. 2012) ...........................................................................9

*Schnuerle v. Insight Commc'ns Co., L.P.*,
  376 S.W.3d 561 (Ky. 2012) .................................................................16, 17

*Scholz v. Montgomery Ward & Co.*,
  468 N.W.2d 845 (Mich. 1991) .....................................................................9

*Schoneberger v. Oelze*,
  96 P.3d 1078 & 6 (Ariz. Ct. App. 2004) ........................................................7

*Shegog v. Union Planters Bank, N.A.*,
  332 F. Supp. 2d 945 (S.D. Miss. 2004) .......................................................19

*Sherman v. AT&T, Inc.*,
  No. 11-CV-5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ..........................11

*Shupe v. Cricket Commc'ns, Inc.*,
  No. 12-CV-634-TUC-CKJ, 2013 WL 68876 (D. Ariz. Jan. 7, 2013) ....................17

*Sprint v. Pac. Cellupage, et. al.*,
  C.D. Cal. No. 13-07862 ............................................................................23

*State v. P.G. Miron Constr. Co.*,
  512 N.W.2d 499 (Wis. 1994) .....................................................................16

*Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Properties, Inc. v. Robson*,
  294 P.3d 125 (Ariz. Ct. App. 2012) ..............................................................7

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .........................................................11

*Tickanen v. Harris & Harris, Ltd.*,
  461 F. Supp. 2d 863 (E.D. Wis. 2006) (Wisconsin) ........................................7

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPILE ARBITRATION AND STAY LIT.

x

CASE NO. 3:12-md-02330-EMC

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..................................................................12

*Tillman v. Macy's Inc.*,
735 F.3d 453 (6th Cir. 2013) ..................................................................................12

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) ...........................................................................10, 13

*Town of Berlin v. Nobel Ins. Co.*,
60 Conn. App. 56 (Conn. App. Ct. 2000) ...............................................................10

*Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc.*,
No. 3:07-CV-139-H, 2007 WL 3118482 (W.D. Ky. Oct. 22, 2007)......................11

*Ulbrich v. Overstock.com Inc.*,
887 F. Supp. 2d 924 (N.D. Cal. 2012) ...................................................................20

*Vallejo v. Garda CL SW, Inc.*,
No. H-12-0555, 2013 WL 391163 (S.D. Tex. Jan. 30, 2013) .................................15

*Veal v. Orkin*,
No. 1:00-CV-920, 2001 U.S. Dist. LEXIS 4846 (W.D. Mich. Apr. 9, 2001) .........24

*Vernon v. Qwest Commc'ns, Int'l., Inc.*,
857 F. Supp. 2d 1135 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d. 1185 (2013) ........22

*Via Viente Taiwan L.P. v. United Parcel Serv. Inc.*,
No. 4:08-CV-301, 2009 WL 398729 (E.D. Tex. 2009)..........................................14

*Villalobos v. EZCorp, Inc.*,
No. 12-CV-852-scl, 2013 WL 3732875 (W.D. Wis. July 15, 2013)........................25

*Vis v. Am. Family Life Assurance Co. of Columbus*,
778 F. Supp. 2d 971 (N.D. Iowa 2011) .............................................................16, 17

*Wade v. Austin*,
524 S.W.2d 79, 86 (Tex. Civ. App. 1975) ...............................................................17

*Walther v. Sovereign Bank*,
386 Md. 412 (Md. Ct. App. 2005) ..........................................................................19

*Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*,
214 Ariz. 344 (Ariz. Ct. App. 2007) .......................................................................10

*Wells Enters., Inc. v. Olympic Ice Cream*,
903 F. Supp. 2d 740 (N.D. Iowa 2012) .....................................................................6

*Williams v. TCF Nat'l. Bank*,
No. 12-CV-05115, 2013 WL 708123 (N.D. Ill. Feb. 26, 2013) .............................13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPILE ARBITRATION AND STAY LIT.

xi

CASE NO. 3:12-md-02330-EMC

*Winchek v. Am. Express Travel Related Servs. Co.*,
    232 S.W.3d 197 (Tex. App. 2007)...................................................................12, 13

*Wolschlager v. Fidelity Nat'l Title Ins. Co.*,
    111 Cal.App.4th 784 (Cal. Ct. App. 2003) .......................................................10, 13

*Wynn Resorts, Inc. v. Atlantic-Pacific Capital, Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ..............................................................................16

*Zuver v. Airtouch Commc'ns, Inc.*,
    153 Wash.2d 293 (2004)......................................................................................17, 19

**STATUTES**

9 U.S.C. § 2...........................................................................................................................12

46 U.S.C. § 30509..................................................................................................................9

Cal. Civ. Code § 1633.14(a)(1) ..........................................................................................12

Cal. Com. Code § 2314..........................................................................................................4

Conn. Gen. Stat. Ann. § 1-279 (2) .....................................................................................11

Iowa Code § 554D.108 .........................................................................................................11

T.C.A. § 51.016 ....................................................................................................................10

**RULES**

Cal. R. Ct. 8.1105(e)(1) ........................................................................................................9

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

xii

CASE NO. 3:12-md-02330-EMC

# TABLE OF ABBREVIATIONS

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

| | |
|---|---|
| Allan Decl. | Declaration of Michael Allan in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 216) |
| ATTM | AT&T acquired Cingular in 2005 and renamed the company AT&T Mobility, LLC in 2007. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744 n.1 (2011) (citation omitted). |
| ATTM Plaintiffs | Plaintiffs Cribbs, Laning, and Pipkin |
| Baughman Decl. | Declaration of Rick Baughman in Support of Defendants' Motion to Compel Arbitration (Dkt. No. 134) |
| CAC | First Consolidated Amended Complaint (Dkt. No. 107) |
| Cline Decl. | Declaration of Bobby Cline in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 217) |
| Cribbs Decl. | Declaration of Gary Cribbs in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 218) |
| Cummings Decl. | Declaration of Chenell Cummings in Support of Defendants' Motion to Compel Arbitration (Dkt. No. 132) |
| Defendants | Defendants Carrier IQ, Inc., HTC America, Inc., Huawei Devices USA, Inc., LG Electronics MobileComm U.S.A, Inc., Motorola Mobility LLC, Pantech Wireless, Inc., and Samsung Telecommunications America, LLC |
| Dobbs Decl. | Declaration of Stacie Dobbs in Support of Defendants' Motion to Compel Arbitration (Dkt. No. 130) |
| Grisham Decl. | Declaration of Shawn Grisham in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 220) |
| McKeen Decl. | Declaration of Ryan McKeen in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 224) |
| Miller Decl. | Declaration of Stephanie Miller (Dkt. No. 135) |
| Motion | Defendants' Consolidated Motion to Compel Arbitration and to Stay Litigation (Dkt. No. 129) |
| Newby Decl. | Declaration of Tyler G. Newby in Support of Defendants' Consolidated Motion to Compel and Stay Arbitration (Dkt. No. 129-2) |
| Newby Reply Decl. | Reply Declaration of Tyler G. Newby in Support of Defendants' Consolidated Motion to Compel and Stay Arbitration, filed herewith |

| | |
|---|---|
| OEM Defendants | Defendants HTC America, Inc., Huawei Devices USA, Inc., LG Electronics MobileComm U.S.A, Inc., Motorola Mobility LLC, Pantech Wireless, Inc., and Samsung Telecommunications America, LLC |
| Opp. | Plaintiffs' Memorandum in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 215) |
| Phong Decl. | Declaration of Dao Phong in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 225) |
| Pipkin Decl. | Declaration of Daniel Pipkin in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 226) |
| Service Providers | ATTM, Sprint, and Cricket |
| Sprint Plaintiffs | Plaintiffs Allan, Cline, Fischer, Grisham, Hiles, Kenny, Levy, McKeen, Phong, Portales, Sandstrom, Szulczewski, and Thomas |
| Szulczewksi Decl. | Declaration of Luke Szulczewksi in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings (Dkt. No. 229) |
| Throckmorton Decl. | Declaration of John Throckmorton in Support of Defendants' Motion to Compel Arbitration (Dkt. No. 131) |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

American consumers have choices.  Over fifty companies offer wireless communications services.  *See* Newby Reply Decl. ¶ 2.  Plaintiffs chose ATTM, Sprint and Cricket when they obtained devices manufactured by the OEM Defendants.  Plaintiffs may have chosen these companies based on price, service quality or the product features of the OEM Defendants' devices.  Whatever the reason, it was Plaintiffs who chose ATTM, Sprint and Cricket.  And part of Plaintiffs' selection of their Service Providers was the choice to accept the terms under which the Service Providers would provide wireless communications.  One of those terms was that any and all disputes arising out of the services would be arbitrated on an individual basis, and not in a class action in federal court.  This term was as important to the Service Providers as receiving the service was to the Plaintiffs.  Plaintiffs are right:  the stakes are high.  The stakes are whether Plaintiffs, when they have complaints about the service, can choose to assert claims against the phone manufacturers and a software provider, instead of the Service Providers, to avoid Plaintiffs' choice to submit any disputes to individual arbitration.  Plaintiffs chose the Service Providers and the terms offered by the Service Providers.  Plaintiffs' choices should be respected and they should be compelled to abide by the choices they made.

# ARGUMENT

## I.    EQUITABLE ESTOPPEL REQUIRES PLAINTIFFS TO ARBITRATE THEIR CLAIMS.

In the fourteen months since Defendants filed their Motion, the Ninth Circuit has on three occasions considered efforts by nonsignatories to compel signatories to arbitrate a dispute under the doctrine of equitable estoppel.  In the first case, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), the court held for the first time that courts must analyze equitable estoppel arguments under the state law governing the relevant contract—California in that case.[1]

---

[1] Whether courts should apply state or federal standards for equitable estoppel was addressed by the Ninth Circuit only following Defendants' Motion.  Thus, Plaintiffs' assertion that Defendants waived their right to argue that state law standards require this Court to compel arbitration is baseless.  Prior to the Ninth Circuit's clarification, the applicable standard was unclear.  Opp. 9; *see, e.g., Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co.*, No. CV 09-09033 DDP AJWX, 2010 WL 749876, at *3 (C.D. Cal. Mar. 1, 2010) *aff'd*, 470 F. App'x 652 (9th Cir. 2012) ("the question of whether a nonsignatory to an arbitration agreement can compel a signatory to submit to arbitration is answered not by state law, but by the federal substantive law of arbitrability").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  Next, the court applied a federal standard for equitable estoppel in *Rajagopalan v. NoteWorld,*

2  *LLC*, 718 F.3d 844, 847-48 (9th Cir. 2013) (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d

3  1042, 1045-46 (9th Cir. 2009)).  Most recently, in *Murphy v. DirecTV, Inc.,* 724 F.3d 1218 (9th

4  Cir. 2013), the court applied California contract law, holding that a nonsignatory to a contract

5  containing an arbitration provision may compel a signatory to arbitrate a dispute under principles

6  of equitable estoppel in two circumstances:

7     (1) when a signatory must rely on the terms of the written agreement in asserting
       its claims against the nonsignatory or the claims are intimately founded in
8     and intertwined with the underlying contract, and (2) when the signatory alleges
       substantially interdependent and concerted misconduct by the nonsignatory and
9     another signatory and the allegations of interdependent misconduct are founded in
       or intimately connected with the obligations of the underlying agreement.
10

11 *DirecTV,* 724 F.3d at 1229[2] (citing *Kramer*, 705 F.3d at 1128-29).

12     The *DirecTV* standard is the most onerous of the state law standards for a party attempting

13 to compel arbitration on the grounds of equitable estoppel and, at most, applies to the three

14 California Plaintiffs.  *See* Ex. A attached hereto.  Even if the California or other state standards

15 were applied, Plaintiffs must arbitrate their claims.

16     **A.**     **Plaintiffs' Claims Are Intertwined with the Wireless Service Agreements.**

17     Plaintiffs' claims are intertwined with their wireless service contracts, turning on whether

18 Plaintiffs consented in those agreements to data collection from their phones while using their

19 Service Providers' networks.  *See* Motion 26-29.  Plaintiffs argue their claims are not intertwined

20 with their service agreements because consent is a "defense."  Opp. 12-13.  That argument lacks

21 merit because lack of consent is an essential element to each of Plaintiffs' non-warranty causes of

22 action.  *See* Motion 26-27; *see In re State Police Litig.*, 888 F. Supp. 1235, 1262 (D. Conn. 1995)

23 ("*[P]laintiffs must prove* … [interception of] a wire, oral or electronic communication *without the*

24

---

25 [2] *DirecTV* affirmed the district court's order as to DirecTV, compelling consumers to arbitrate
   claims alleging that DirecTV and Best Buy, the retailer, had misrepresented the lease of DirecTV
26 equipment as a sale because the consumers had a service agreement with DirecTV providing for
   arbitration.  The court reversed the district court's order as to nonsignatory Best Buy, finding that
27 allegations that Best Buy misrepresented the terms of sale *at the point of sale* were not
   inextricably bound with the obligations of the ongoing service agreement between DirecTV and
28 its users.  Conversely, here, Plaintiffs' allegations against Defendants relate to Plaintiffs' ongoing
   use of their wireless carriers' service under their service agreements.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  *callers' consent*.") (emphases added).  Indeed, the CAC is replete with allegations that Carrier IQ

2  software was installed and used "without the knowledge or authorization of consumers."  CAC ¶

3  3; *see also id.* at ¶¶ 1, 4, 41, 51, 65, 68, 75-92, 96(a), 96(b), 102, 142, 144.  These allegations and

4  the claims they attempt to support are intertwined with the service agreements because the

5  agreements must be interpreted to determine whether Plaintiffs' consent extends to the conduct at

6  issue here.[3]

7       Plaintiffs fail to distinguish *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168

8  (N.D. Cal. 2011), by arguing that the plaintiffs in that case conceded that their claims arose from

9  the ATTM service agreements.  Opp. 14.  The court there held that because antitrust claims

10  against Apple would require interpretation of AT&T's service agreements, plaintiffs' claims

11  against nonsignatory Apple should be arbitrated on equitable estoppel grounds.  Here, similarly,

12  each non-warranty claim will require interpreting the service agreements to determine whether

13  Plaintiffs consented to the collection of data by the service providers.  In the *Apple & AT&TM*

14  *Antitrust* case, the plaintiffs argued for class treatment by advancing a common question as to

15  whether the putative class had agreed to give monopoly power to defendants because the entire

16  class entered the same contract with AT&T for the use of an Apple iPhone.  826 F.Supp.2d at

17  1178 n.22.  Yet, Plaintiffs' efforts here to plead around any similar reference to their service

18  agreements and Service Providers do not change the nature of their claims or the similarity to

19  those asserted in *In re Apple & AT&TM Antitrust Litig.  See, e.g., In re Apple iPhone 3G & 3GS*

20  *MMS Mktg. & Sales Practices Litig.,* 864 F. Supp. 2d 451, 462 (E.D. La. 2012) ("[r]emoving

21  explicit references to AT&T's contract obligations and allusions to interdependent and concerted

22  misconduct does not make the claims against Apple any less intertwined with the claims against

23  AT&T.").[4]

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25  [3] The ATTM service agreement and incorporated privacy policy makes clear that ATTM collects
data from users' devices to improve its networks and may share that data with its service

26  providers.  Motion 8, 28; Newby Decl. Ex. 5 at 3.  Sprint and Cricket's user agreements and
privacy policies contain similar disclosures.  Motion 9, 28, 35; Miller Decl. Ex. GGG at 1.

27  [4] Plaintiffs also fail to distinguish *Garcia v. Stonehenge, Ltd.*, No. C-97-4368, 1998 WL 118177
(N.D. Cal. Mar. 2, 1998).  Opp. 14.  Although *Garcia* did involve third-party beneficiary theory,

28  the court also held that equitable estoppel was a basis to enforce the arbitration clause.  1998 WL
118177, at *5.  Plaintiffs' argument that *Garcia* involved a commercial misrepresentation claim is

Even if consent were only a "defense" to the claims here, equitable estoppel nevertheless applies because the service agreements remain central to resolving those claims. The sole case cited by Plaintiffs, *Ehlen Floor Covering, Inc. v. Lamb*, No. 2:07-CV-666-FTM29DNF, 2010 WL 2813369, at *2 (M.D. Fla. July 14, 2010), relied entirely on an unexplained and incorrect citation to *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847 (2010). *Granite Rock* actually held that the parties' dispute relating to the ratification date of an agreement (which affected a defense) required judicial resolution to determine whether certain claims were within the scope of the arbitration agreement. *Granite Rock*, 561 U.S. 287, 130 S. Ct. at 2860-61. *Granite Rock* did not address equitable estoppel, much less establish a principle that a defense may not be a basis for equitable estoppel.

Plaintiffs' implied warranty claims are also intertwined with the service agreements. A basic requirement of an implied warranty claim under Cal. Com. Code § 2314 is a contract of sale. *See* Cal. Com. Code § 2314(1). Regardless of some Plaintiffs' assertions that they purchased their devices from third party retailers or online (Opp. 15 n.6), the contract governs the purchase. Nor is it any answer for Plaintiffs to note that the service agreements disclaim implied warranties. Plaintiffs must rely on those agreements if they are to prove, as they must, (1) that they are the buyer(s), (2) the date of purchase, and (3) the amount they paid. *See* Motion 30-31.

Plaintiffs' reliance on the two Toyota cases they cite (Opp. 15 & n.7) is misplaced, as Toyota did not argue, and the courts did not address, whether the court would need to interpret the purchase agreement to decide the warranty claims. Rather, Toyota argued that there would have been no warranty but for the mere *existence* of the purchase agreement. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods Liab. Litig.*, 838 F. Supp. 2d 967 (C.D. Cal. 2012); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices., and Prods. Liab. Litig.*, 828 F. Supp. 2d 1150 (C.D. Cal. 2011); Newby Reply Decl. Exs. A at 11, 13, B at 16-18.

of no matter. Opp. 14. What matters is, as here, whether the court must analyze the contract to evaluate the claims.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**B.** **Plaintiffs Allege Substantially Interdependent and Concerted Misconduct That Is Intimately Connected with the Service Agreements.**

To distract from the obvious nature of their claims, Plaintiffs suggest their case centers upon allegations that Defendants collected and transmitted sensitive data to parties *other* than the wireless carriers. *See* Opp. 16-17. But those allegations are only a subset of what the CAC alleges. The core allegations are grounded in alleged concerted action with the Service Providers.

Plaintiffs allege that the Service Providers required the OEM Defendants to install Carrier IQ software on phones manufactured for use on their networks and that Defendants used the software to intercept and collect data from users' mobile devices, including private text messages, without their knowledge, consent, or authorization. *See* Motion 17-19, 36-38, 42; CAC ¶¶ 1, 3, 4, 41, 51, 65, 68, 75-92, 96, 102, 142, 144. As revealed in the arbitration-related discovery, the Service Providers specified the types of data to be collected and were the recipients of data sent off the phones by the Carrier IQ software. *Id.* at 42:17-23; *see* Dkt. No. 172-2 at 14-16 (containing excerpts from Defendant Carrier IQ, Inc.'s Objections and Responses to Plaintiffs' First Set of Interrogatories Regarding Unconscionability and Scope Issues); Newby Reply Decl. Ex. C at 5. In the case of Sprint and Cricket subscribers, Carrier IQ hosted the data for Sprint and Cricket, and in the case of ATTM subscribers, ATTM did so in its own datacenter. *See* Dkt. No. 172-2 at 15–16.[5] Therefore, the operation of the Carrier IQ software to gather and then send data off Plaintiffs' phones happened at the direction of and in conjunction with the Service Providers. Motion 43. Because Plaintiffs' claims cannot be considered without analyzing the conduct of the Service Providers, estoppel requires arbitration. *See Morselife Found.*, *Inc. v. Merrill Lynch Bank & Trust Co., FSB*, No. 09-81143-CIV, 2010 WL 2889932, at *4 (S.D. Fla. Jul. 21, 2010) (compelling arbitration where "none of [signatory plaintiffs'] allegations against [non-signatory defendant] can be considered without analyzing the alleged conduct of employees of the other signatory");[6] *see also* Motion 32-34.

---

[5] The Carrier IQ software was not activated on the Samsung Galaxy S II Skyrocket SGH-i727 devices used by Plaintiffs Cribbs and Pipkin on AT&T's network. *Id.*

[6] Plaintiffs' effort to distinguish *Morselife* on its facts makes no legal difference. The allegations in the CAC and the information uncovered in arbitration-related discovery demonstrate the Service Providers' crucial role in the conduct alleged. That the plaintiffs in *Morselife* were less

The Service Providers are at issue for the additional reason that the Wiretap Act includes a "provider exception" that may permit the Service Providers to engage in the conduct alleged. *See In re Apple MMS Mktg.*, 864 F. Supp. 2d at 465-66; Motion. 34-36.[7] Plaintiffs argue that the Service Providers would not be required to participate in this litigation because the claims "are not based on carriers' performance of their duties under the service agreement." Opp. 21. But that begs exactly the question Defendants raise in arguing the provider exception will immerse the carriers in this suit: Does the provider exception permit the carriers to use the Carrier IQ software in the way alleged in the course of "performance of their duties under the service agreement" (*id.*)? Whatever the answer to that question, reaching it will involve the carriers.

### C.    State Contract Law Also Requires Plaintiffs to Arbitrate Their Claims.

Because the standard for equitable estoppel under California law articulated in *DirecTV* is the most restrictive of the state law standards for equitable estoppel in this case, no further analysis is required. As discussed below, however, application of other states' equitable estoppel principles leads to the same conclusion.

Several of Plaintiffs' states of residence apply nearly identical equitable estoppel doctrines that require Plaintiffs to arbitrate where (1) the plaintiff must rely on the terms of the agreement, the claims reference or are intertwined with the agreement, or the claims presumes the existence of a contract such that the claims arise out of and relate directly to the agreement; *or* (2) the Plaintiff raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and a signatory to the agreement. *See, e.g., Res. Servs., LLC v. Bridgeport Hous. Auth.*, No. HHDCV106020108S, 2011 WL 2739544 (Conn. Super. Ct. June 13, 2011); *Armas v. Prudential Sec., Inc.*, 842 So.2d 210, 212 (Fla. Dist. Ct. App. 2003); *Wells Enters., Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740, 746, 750 (N.D. Iowa 2012)[8]; *Household Fin. Corp. II*

coy about the involvement of the signatory there should not be determinative.

[7] Plaintiffs' misguided reliance on *Ehlen* for the proposition that Defendants cannot rely on defenses as a basis for equitable estoppel (Opp. 28) is addressed above.

[8] Plaintiffs misstate the test in *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005). Opp. 27. That decision requires the non-signatory to establish only one prong of the standard. *CD Partners*, 424 F.3d at 798; *see Wells Enters.*, 903 F. Supp. 2d at 747 ("To justify a stay of this case, Olympic must show that one or both of these situations is present").

*v. King*, No. 2009-CA-001472-MR, 2010 WL 3928070 (Ky. Ct. App. Oct. 8, 2010); *Case Handyman & Remodeling Servs., LLC v. Schuele*, 183 Md. App. 44, 62-63 (2008) *judgment vacated, appeal dismissed,* 412 Md. 555 (2010) (articulating standard encompassing first factor); *City of Detroit Police & Fire Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010 WL 1875758, at *6-7 (Mich. Ct. App. May 11, 2010); *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491-93 (Miss. 2005)[9]; *Matl Constr. Co. v. Jim Connelly Masonry, Inc.*, No. 03-08-00559-CV, 2009 WL 2341891 (Tex. Ct. App. July 31, 2009) (applying the first factor); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 869-70 (E.D. Wis. 2006) (Wisconsin).[10] Defendants may compel Plaintiffs from each of these states to arbitrate under their respective state laws as, for reasons already explained, their claims turn on whether they consented in the wireless service agreements, and the core allegations of the CAC are grounded in alleged concerted conduct.

Washington and Arizona apply a slight variation on California equitable estoppel law that does not lead to a different result. Like the California Plaintiffs, Plaintiffs from these states are required to arbitrate because (1) their claims are intertwined with the wireless service agreements and (2) the core allegations of the CAC are grounded in alleged concerted conduct of the Service Providers and Defendants. *See, e.g., Sun Valley Ranch 308 Ltd. P'ship ex rel. Englewood Properties, Inc. v. Robson*, 294 P.3d 125, 133-35 (Ariz. Ct. App. 2012)[11]; *East West Bank v. Bingham*, No. C13-1394 RAJ, 2014 WL 129386, at *1-2 (W.D. Wash. Jan. 14, 2014) ("the court believes that Washington courts would apply the same standard recited in [*Mundi,* 555 F.3d at 1046]").

---

[9] Although Plaintiffs contend that Mississippi law requires detrimental reliance by the non-signatory (Opp. 23 n. 11), the Supreme Court in *B.C. Rogers Poultry* did not examine whether defendant relied to its detriment that plaintiff would arbitrate any claim he had against defendant until after deciding that defendant could not meet either prong of the standard articulated in *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524 (5th Cir. 2000). *B.C. Rogers*, 911 So. 2d at 492. Nonetheless, Defendants have demonstrated detrimental reliance.

[10] *Everett v. Paul Davis Restoration, Inc.*, No. 10-C-634, 2012 WL 4128106 (E.D. Wis. Sept. 18, 2012) (Opp. 30) is inapposite as it involved a signatory's attempt to compel a non-signatory to arbitrate.

[11] Plaintiffs' reliance on *Schoneberger v. Oelze*, 96 P.3d 1078, 1081 nn. 5 & 6 (Ariz. Ct. App. 2004) (*superseded on other grounds* by statute as stated in *In re Estate of Heinery*, Ariz. App. Div. 1, April 30, 2013) (Opp. 24) is misplaced because: (1) the discussion of equitable estoppel was dictum; and (2) the court denied defendants' motion to compel arbitration because the trust containing the provision was not an agreement under Arizona law.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Finally, even if Illinois law requires non-signatories to demonstrate detrimental reliance (Opp. 26), Defendants do so here; they detrimentally relied on the arbitration clauses because they did not require end users to assent to a separate arbitration agreement. Each wireless carrier works with and relies on numerous third party service providers. Requiring each service provider to form independent relationships and create separate agreements with each consumer is an illogical and implausible result, either within the wireless service context or in any other, and it is reasonable for them to rely on the agreements the carriers have with their customers.

## II. DEFENDANTS HAVE ESTABLISHED THE EXISTENCE OF THE ARBITRATION AGREEMENT BY A PREPONDERANCE OF EVIDENCE.

Many (but not all) Plaintiffs challenge the formation of their arbitration agreements, claiming that they do not recall reading or agreeing to any of the arbitration clauses. These Plaintiffs deny having "access" to the arbitration clause when they assented to their contracts because: (1) they do not recall receiving copies of the arbitration agreement; and/or (2) the "summary" documents they signed did not contain the full arbitration clause but only referenced it. Opp. 31-35. Some Plaintiffs also seek to avoid arbitration because they are not account holders with the Service Providers. *Id.* at 35. These arguments are baseless and ignore the well-established line of cases enforcing agreements packaged with a product. Motion 14-15, 18-19 (citing authorities). Even if the Court does not consider Plaintiffs' many other manifestations of assent, Plaintiffs cannot avoid the arbitration agreements contained in the wireless service agreements packaged with their phones[12] because they used the Service Providers' services and did not return the phones after an ample opportunity to read the contracts. Throckmorton Decl. ¶¶ 3-5; Baughman Decl. ¶¶ 4-6; Miller Decl. ¶ 15 at 5.

### A. As a Matter of Law, Plaintiffs Cannot Avoid Their Contracts by Claiming That They Failed to Read the Terms.

Plaintiffs rely improperly on *Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74, 92-93 (2011), to argue that they did not assent to the arbitration agreements because the wireless service agreements containing them were adhesion contracts, which Plaintiffs did not

---

[12] Plaintiffs Cribbs and Pipkins did not receive a contract in the packaging of their phones because they had the option to print the Wireless Service Agreement from the electronic signature capture device. Dobbs Decl. ¶ 5.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    read.  Opp. 31.  But the California Supreme Court has granted review in *Sanchez* (*see* 272 P.3d

2    976 (Cal. 2012)), and it is no longer citable (*see* Cal. R. Ct. 8.1105(e)(1)).[13]  Instead, in all

3    eighteen Plaintiffs' states, failure to read or understand a contract does not prevent formation.[14]

4    Even *Newton v. Am. Debt Servs., Inc.*, 854 F. Supp. 2d 712 (N.D. Cal. 2012), *aff'd*, No. 12-

5    15549, 2013 WL 6501391 (9th Cir. Dec. 12, 2013), on which Plaintiffs rely heavily, concluded

6    that "Plaintiff's failure to read the terms does not permit Plaintiff to avoid its effect where neither

7    party had any reason to doubt they were entering into a contract."  854 F. Supp. 2d at 722.

8        **B.    Plaintiffs' Purported Inability to Remember Receiving Their Contracts**
             **Does Not Allow Them To Evade the Arbitration Agreement.**
9
         Many Plaintiffs claim not to recall receiving the service agreements, which they assert

10   raises a triable issue of fact barring arbitration.[15]  Opp. 31-33.  They base this argument on

11   *Gonzalez v. Citigroup, Inc.*, No. CIV. S-11-0795 LKK/GGH, 2011 WL 4374997, at *2 (E.D. Cal.

12   Sept. 19, 2011), which has since been reconsidered.  Indeed, the court in *Gonzalez* ordered

13   plaintiff's claims to arbitration on the basis of company records referencing the plaintiff's

14   account, which – *despite the plaintiff's declaration* that she did not "recall ever receiving a notice

15   of change of terms and conditions to [her] . . . credit card" – extinguished any question of whether

16   there was an applicable arbitration agreement.  *Id.* at *3; *Gonzalez v. Citigroup, Inc.*, No. CIV S-

17

18   _____
     [13] Because the Plaintiffs' billing addresses are located outside of California, *Sanchez* would not
19   apply to them even if it were good law.  *See* Motion 20-22.
     [14] *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-98 (1991) (enforcing forum-
20   selection clause in small print on back of plaintiffs' ticket over plaintiffs' objection they did not
     read clause), superseded by statute on other grounds by 46 U.S.C. § 30509; *Rocz v. Drexel*
21   *Burnham Lambert, Inc.*, 154 Ariz. 462, 466 (Ariz. Ct. App. 1987); *D'Antuono v. Serv. Road*
     *Corp.*, 789 F. Supp. 2d 308, 322-23 (D. Conn. 2011) (compelling arbitration under Connecticut
22   law); *Bates v. Laminack*, No. 2:12-CV-387, 2013 WL 4735402, at * 9 (S.D. Tex. Sept. 3, 2013)
     (Texas); *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002); *Jones v. Sallie*
23   *Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 WL 6283483, at *5 (M.D. Fla. Dec. 4, 2013)
     (Florida); *Harby ex rel. Brooks v. Wachovia Bank, N.A.,* 172 Md. App. 415, 423-24 (Md. Ct.
24   Spec. App. 2007) (Maryland); *Hathaway v. Eckerle*, 336 S.W.3d 83, 89-90 (Ky. 2011); *Chicago*
     *Pac. Corp. v. Canada Life Assurance Co.*, 850 F.2d 334, 337-38 (7th Cir. 1988) (Illinois law);
25   *Michak v. Transnation Title Ins. Co.*, 148 Wash. 2d 788, 799 (2003) (citation omitted); *Nat'l*
     *Bank of Wash. v. Equity Investors*, 81 Wash.2d 886, 912 (1973), superseded by statute on other
26   grounds by RCW 60.04.220; *Bartlett Grain Co. LP v. Sheeder*, 829 N.W.2d 18, 23, 28 (Iowa
     2013); *Deminsky v. Arlington Plastics Mach.*, 259 Wis. 2d 587, 657 N.W.2d 411 (Wisc. 2003);
27   *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848-49 (Mich. 1991).
     [15] Some Plaintiffs concede seeing "documents" and "paperwork" inside the box.  Grisham Decl. ¶
28   3; Phong Decl. ¶ 3; Cline Decl. ¶ 5.

1  11-0795 LKK/GGH, 2011 WL 5884250, at *2 (E.D. Cal. Nov. 23, 2011); *see also Jones*, 2013

2  WL 6283483 at *5 ("failure to recall receipt [of an arbitration provision], without more, is not

3  sufficient to create a jury issue").  Here, as in *Gonzalez* and *Jones*, Defendants have introduced

4  ample evidence that Plaintiffs received the agreements at issue.  *See* Motion 10-19.[16]

5  ### C.    Plaintiffs Cannot Deny Their Manifestations of Assent.

6       Relying on *Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal.App.4th 784 (Cal. Ct.

7  App. 2003), Plaintiffs argue they did not assent to the arbitration clause because "none of the

8  plaintiffs had a physical copy of the arbitration clause that they 'knowingly' signed."  Opp. 35.  In

9  *Wolschlager*, however, the court held that "nothing further [is] needed to bind [a] plaintiff" when

10  the document he received and approved identified the contract containing the arbitration

11  provision by name and directed him to where he could inspect it "even if plaintiff did not know

12  about the arbitration clause."  111 Cal.App.4th at 791.  Other states are in accord.[17]  Here,

13  Defendants have established that Plaintiffs received notice of and assented to the arbitration

14  agreement.

15  ### 1.    Plaintiffs Signed Agreements Manifesting Consent to Arbitration.

16       ATTM Plaintiffs Pipkin and Cribbs do not deny that they signed the contract after it was

17  presented on an electronic screen at the ATTM store.  Pipkin Decl. ¶ 5; Cribbs Decl. ¶ 5.  Instead,

18  they claim that they *could have* skipped to the end of the contract without reading the arbitration

19

20  [16] Plaintiffs claim, without any support, that Defendants' evidence of formation is inadequate
    because they rely on the Service Providers' standard business practices of providing documents to
21  Plaintiffs.  Opp. 35-36.  Defendants need not set forth more.  The *Gonzalez* court compelled
    arbitration based on similar declarations setting forth records created in the ordinary course of
22  business.  *See Gonzalez*, 2:11-cv-00795-LKK-GGH, Dkt. No. 28-1, Moilanen Decl. ¶ 3 (Sept. 30,
    2011).  Moreover, Plaintiffs Hiles and White submitted no disputing declarations at all.

23  [17] *See Avatar Props., Inc. v. Greetham*, 27 So. 3d 764, 766-67 (Fla. Dist. Ct. App. 2010); *Harby*,
    172 Md. App. at 421-24; *Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 214 Ariz. 344,
24  347-48 (Ariz. Ct. App. 2007); *Town of Berlin v. Nobel Ins. Co.*, 60 Conn. App. 56, 62 (Conn.
    App. Ct. 2000); *Regions Bank v. Herrington*, 630 F. Supp. 2d 722, 726 (S.D. Miss. 2009); *In re
25  Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007), superseded by statute on other grounds by
    T.C.A. § 51.016; *R.J. O'Brien & Assoc., Inc. v. Pipkin*, 64 F.3d 257 (7th Cir. 1995); *Chicago
26  Pacific Corp.*, 850 F.2d at 337-38 (Illinois law); *Ernst & Young LLP v. Clark*, 323 S.W.3d 682,
    694-95 (Ky. 2010); *3A Indus., Inc. v. Turner Constr. Co.*, 71 Wash. App. 407, 418 (1993); *Tinder
27  v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002); *Mech. Power Conversion, LLC v.
    Cobasys, L.L.C.*, 500 F. Supp. 2d 716, 718-21 (E.D. Mich. 2007); *Bartlett Grain*, 829 N.W. 2d at
28  23.

provision. *Id.* But the signature screen itself made clear that they were agreeing to an agreement containing an arbitration provision (Dobbs Decl. ¶ 7), and failure to read is no excuse anyway.

Sprint Plaintiffs Levy, Thomas, Kenny, Sandstrom, Szulcsewski, and Cline viewed electronic screens Transaction Summaries directing them to the full T&Cs and reminding them of the "MANDATORY ARBITRATION" agreement under which "any legal or equitable claim, controversy or dispute of any kind" must be resolved by "final and binding arbitration." Miller Decl. Exs. E at 4, H at 5, K at 5, O at 6, T at 5, AA at 5, GG at 6. They signed at the end.

Similarly, Plaintiffs Portales and Fischer signed Sprint Subscriber Agreements that explained they were agreeing to "mandatory arbitration of disputes," referenced the T&Cs, and listed the URL where they were available. *Id.* at Exs. JJ at 3, MM at 4, OO at 4, ZZ at 5.

### 2. Plaintiffs Electronically Assented to the Arbitration Agreement.

Plaintiffs Szulcsewski, Phong, Allan, McKeen, and Hiles also formed binding contracts by agreeing to Sprint's T&Cs via the Internet.[18] During the course of these transactions, consumers were presented with the entire T&Cs and could not complete the transaction until they clicked the statement "Yes, I acknowledge that I have read, understand and agree to the" T&Cs. Miller Decl. ¶¶ 75, 89, 98, 103, 117, Ex. SS. These Plaintiffs cannot claim the contract was not "available" to

---

[18] *See* Conn. Gen. Stat. Ann. § 1-279 (2); Unif. Elec. Transactions Act §14, cmt. 3 (explaining that by clicking "I agree," a party "adopted a process with the intent to 'sign,' i.e., bind [himself] to a legal obligation"; *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011) ("providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient"); *Sherman v. AT&T, Inc.*, No. 11C5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) (consumer bound by terms when he checked box next to hyperlink to terms of service and labeled and the box was labeled "I have read and agree to" terms of service); *Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc.*, No. 3:07-CV-139-H, 2007 WL 3118482, at *1 (W.D. Ky. Oct. 22, 2007) (concluding, based on "a survey of cases from other jurisdictions" that "Kentucky courts would likely uphold" a clickwrap agreement in which consumer clicked "accept" button after terms appeared on screen); Iowa Code § 554D.108 ("A contract shall not be denied legal effect or enforceability solely because an electronic record was used in its formation."); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010-11 (D.C. 2002) (holding that a clickwrap agreement is enforceable where users were required to click that they "Accept" its terms in order to subscribe and the agreement appeared in a scroll box with only portions visible at any given time); *Caspi v. Microsoft Network*, LLC, 732 A.2d 528, 532 (1999) (upholding under Washington law a forum selection clause included in lower case letters at the end of an agreement users could have scrolled through, and users could not complete their transaction until they clicked "I agree" to the agreement); *Bryant v. Am. Express Fin. Advisors, Inc.*, 595 N.W. 2d 482, 486 (Iowa 1999) ("An agreement to arbitrate is to be treated like any other contract, . . . and a failure to fully read and consider the contract cannot relieve [a person] of its provisions.").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

11

CASE NO. 3:12-md-02330-EMC

them at time of purchase, and they do not deny that: (1) they clicked to approve the statement, (2) the webpage presented them with a link to Sprint's T&Cs, and (3) they understood the T&Cs to be a contract. *See* Allan Decl.;[19] McKeen Decl.; Phong Decl.; Szulczewksi Decl.

### 3. Plaintiffs Assented to the Arbitration Agreement Verbally.

Plaintiffs Cline, Grisham, Laning, and Pipkin cite no law in support of their argument that manifesting assent "through a voice system" is somehow insufficient to form a contract. Opp. 35. They find no authority for this position because "'acceptance of a contract . . . may be shown by . . . any definite and unequivocal course of conduct disclosing that the party has acceded or assented to it.'"[20] *Edwards v. Wurster Oil Co.*, 688 So. 2d 772, 775 (Miss. 1997) (citations omitted).[21] It makes no difference that Plaintiff Pipkin assented to the ATTM agreement by pushing a button on his telephone keypad, without which he could not have received service on his phone. Cummings Decl. ¶ 17. In California, "a contract may be formed by the interaction of an electronic agent and an individual." Cal. Civ. Code § 1633.14(a)(1).[22]

### 4. Plaintiffs Saw Documents Referencing the Arbitration Agreement.

Although Plaintiffs claim they "did not have access" to the arbitration provisions, Plaintiffs received them in the packaging of their mobile phones and received (and often executed) many other documents referencing the arbitration provisions. Plaintiffs Cribbs, Pipkin, and Laning[23] received Customer Service Summaries that expressly referenced the arbitration clause in bold letters twice on the same page and directed customers to the AT&T website for details on the terms of their agreement. Cummings Decl. ¶¶ 10-11, Exs. 1 at 3, 5 at 3, 9 at 3; Throckmorton Decl. ¶¶ 3-4, Exs. 1-2. Similarly, Plaintiffs Levy, Thomas, Kenny, Grisham,

---

[19] Notably, Plaintiff Hiles filed no declaration disputing his assent to the T&Cs. Although Plaintiff Allan claims that he does not recall seeing the link or clicking on it, (Allan Decl. ¶ 3), as discussed *supra* § II.B, this lack of memory does not raise a triable issue of fact as to his assent.

[20] Further, the FAA contains no requirements regarding the form or specificity of arbitration agreements except that the agreements to be in writing – the agreements need even not be signed. *See* 9 U.S.C. § 2.

[21] *See also Tillman v. Macy's Inc.*, 735 F.3d 453, 460 (6th Cir. 2013) (Michigan law); *Winchek v. Am. Express Travel Related Servs. Co.*, 232 S.W.3d 197, 204 (Tex. App. 2007).

[22] *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007) (finding highly likely that defendant assented under analogous facts).

[23] ATTM sent the Customer Service Summary via email to Diane Laning. Cummings Decl. ¶¶ 10-11 & Ex. 5 at 3; Throckmorton Decl. ¶¶ 3-4, Exs. 1-2.

Sandstrom, Portales, Allan, Szulczewski, Phong, Cline, and Fischer received invoices alerting

them that Sprint had updated the T&Cs and directing them to the URL where the updated

document was posted.[24] They all continued using their phones. *See Briceno v. Sprint Spectrum,*

*L.P.*, 911 So. 2d 176, 179-80 (Fla. Dist. Ct. App. 2005) (affirming order compelling arbitration

under updated Sprint T&Cs on identical notice to consumers).[25] In addition, Plaintiffs Levy,

Thomas, Sandstrom, Kenny, and Kline signed and received register receipts describing the

"MANDATORY ARBITRATION" clause and incorporating the full T&Cs on Sprint's website,

which is itself sufficient to render the T&Cs binding. Miller Decl. Exs. I, L, P, BB, U.[26]

### D. Authorized Users are Parties to the Terms of ATTM and Sprint's Contracts.

Plaintiffs Phong, Grisham, Laning, and Sandstrom argue that they never entered into any

contract because they are authorized users and not accountholders. Opp. 35. This argument rests

on a false assumption that a contract with Sprint or ATTM may be formed only by becoming an

accountholder. But it is black letter law that a party's acceptance of an agreement to arbitrate

"may be implied by fact" by a party's conduct. *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt.*

*Dev. (US), LLC*, 55 Cal. 4th 223, 236 (Cal. Ct. App. 2012); *see Winchek*, 232 S.W.3d at 204

(party manifested intent to make contract effective by using credit card and making payments on

the account).

Here, the ATTM and Sprint terms expressly extended to anyone who used ATTM's or

Sprint's services. Dobbs Decl. Ex. 2 at 4; Throckmorton Decl. Ex. 2 at 15; Miller Decl. Exs. A at

---

[24] Miller Decl. Exs. G at 2, M at 2, X at 2, CC at 2, LL at 3, NN at 3, RR at 2, UU at 3, BB at 3, FFF at 2.

[25] Plaintiffs Sandstrom, Levy, Thomas, Cline, Kenny, Phong, Allan, Fischer, and Portales also appear to complain that the invoices "contain[] no mention of arbitration." Opp. 22-25. But "[t]here is no authority requiring the defendant to specify that the incorporated document contains an arbitration clause in order to make the incorporation valid." *Wolschlager*, 111 Cal. App. 4th at 791 (failure to attach entire policy did not prevent formation of a valid arbitration agreement).

[26] *See Tinder*, 305 F.3d at 735-36 (applying Wisconsin law, and holding that a plaintiff's inability to recall receiving an arbitration agreement and unfamiliarity with its terms does not defeat formation); *Williams v. TCF Nat'l. Bank*, No. 12 C 05115, 2013 WL 708123, at *4 (N.D. Ill. Feb. 26, 2013) (distinguishing *Newton* and rejecting the argument that referenced document must be attached); *One Beacon Ins. Co. v. Crowley Marine Servs. Inc.*, No. H-08-2059, 2010 WL 1463451, at *9, *12-*13 (S.D. Tex. Apr. 12, 2010), *aff'd*, 648 F.3d 258 (2011) (enforcing terms incorporated by reference into purchase orders); *Mech. Power Conversion, L.L.C.*, 500 F. Supp. 2d at 718-721 (applying Michigan law and upholding an arbitration clause incorporated by reference); *Bryant*, 595 N.W.2d at 486-87 (same).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2, B. at 10.  Plaintiff Grisham *personally agreed* to Sprint's T&Cs, was informed where he could obtain an electronic and booklet copy of Sprint's T&Cs, and then used his phone without returning it.[27]  And Plaintiffs Phong, Laning, and Sandstrom also continued using the wireless service after they and their accountholders had the opportunity to review the terms.  It would be an absurd result if they could avoid the obligations attached to their wireless service simply by signing up for it through someone else's account.  *Cf. Via Viente Taiwan L.P. v. United Parcel Serv. Inc.*, No. 4:08-cv-301, 2009 WL 398729, at *2 (E.D. Tex. 2009) (company bound by arbitration provision that vendor accepted when installing software on the company's computers).

## III.   PLAINTIFFS' CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION PROVISIONS.

Plaintiffs' arguments that their claims are outside the scope of their arbitration agreements do not withstand scrutiny.  As an initial matter, Plaintiffs' assertion that the arbitration provisions cover disputes only between customers and Service Providers is nothing more than an attempt to circumvent equitable estoppel.  Opp. 44-45.

Plaintiffs' argument that the substance of their claims removes them from the arbitration provision's scope also fails, as it is premised on the incorrect assumption that the agreement to arbitrate extends only so far as the substantive terms of the service agreement.  In this regard, Plaintiffs ignore the weight of authority Defendants cited in their Motion, which holds that broad "all disputes" language present here must be interpreted to its full extent.  *See* Motion 24.  Indeed, federal policy in favor of arbitration requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted).  Plaintiffs fare no better with their argument that their warranty claims should be treated differently because the agreements disclaim warranty liability.  Instead, because the Court must analyze Plaintiffs' service agreements to assess whether data collection breached a warranty, the warranty claims are related to their agreements with the service providers.  *See supra* § I.A.  In light of the federal policy requiring resolution of doubts in favor of arbitration and the broad language of the arbitration provisions,

---

[27] *See* Miller Decl. ¶¶ 119-120, Ex. DDD at 5.  Plaintiff Grisham does not dispute that he orally agreed to the Sprint wireless service agreement.  Grisham Decl. ¶ 2.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Plaintiffs fail to demonstrate that their claims are not within the provisions' scope.  Motion 4-6 (arbitration provisions cover any dispute "relating" to service).

## IV.  THE CRICKET AND SPRINT PLAINTIFFS' CHALLENGES TO ENFORCEABILITY ARE ISSUES THAT HAVE BEEN DELEGATED TO THE ARBITRATOR.

As a threshold matter, arbitration must be compelled for the Cricket and Sprint Plaintiffs because the parties agreed to delegate questions of enforceability to the arbitrator.  *Rent-A-Center, West Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 2778 (2010).  Where an agreement to arbitrate threshold issues of arbitrability is "clear and unmistakable," the court must enforce it unless the plaintiff raises a challenge targeted specifically to the delegation provision, which Plaintiffs have not done here.  *Id.* at 2777-79 n.1.

Cricket's T&Cs provide that "[a]ny past, present or future claim, dispute or controversy . . . including (without limitation) . . . Claims *regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved . . . by binding arbitration*."  Baughman Decl. Exs. 1, 2 (emphasis added).  Courts have compelled arbitration based on similar "clear and unmistakable" clauses, and this Court should do the same with Plaintiff White's claims.  *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Allen v. Regions Bank*, 389 F. App'x 441, 443 (5th Cir. 2010) (per curiam) ("a dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability and any dispute over the scope or validity of this agreement to arbitrate disputes or of this entire Agreement, shall be decided by the arbitrator(s)" held clear and unmistakable); *Vallejo v. Garda CL SW, Inc.*, No. H-12-0555, 2013 WL 391163 (S.D. Tex. Jan. 30, 2013) (arbitrator should resolve dispute where delegation clause unambiguously provided arbitrator should resolve any dispute about the "interpretation or application" of the agreement and plaintiff challenged agreement as a whole).

Sprint's arbitration clause (which by its terms must be "broadly interpreted") incorporates the JAMS Comprehensive Arbitration Rules & Procedures. Miller Decl. Ex. B at 14.  The JAMS rules provide that "disputes over formation, existence, validity, interpretation, or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator." Rule 11(c).[28]  This

---

[28] *See* Newby Reply Decl. Ex. E.

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPILE ARBITRATION AND STAY LIT.

15

CASE NO. 3:12-md-02330-EMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

incorporation by reference establishes a clear and unmistakable delegation of the Sprint Plaintiff's

unconscionability arguments to the arbitrator. *See Emilio v. Sprint Spectrum, LP*, 508 F. App'x 3,

*5-*7 (2d Cir. 2013); *Emilio v. Sprint Spectrum, LP*, 315 F. App'x 322, 324 (2d Cir. 2009);[29] *see*

*also Wynn Resorts, Inc. v. Atlantic-Pacific Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012)

(JAMS rule); *Moss v. McLucas*, No. 12-2368, 2013 WL 1680483, at *2-3 (S.D. Cal. Apr. 16,

2013) (JAMS rule); *Fall v. High-Tech Institute*, 559 F.3d 874, 877-78 (8th Cir. 2009) (similar

AAA rule); *Guidewire Software, Inc. v. Chookaszian*, No. 12-3224-LHK, 2012 WL 5379689, at

*3-4 (N.D. Cal. Oct. 31, 2012) (similar AAA rule).  The Court therefore should compel

arbitration of claims raised by Plaintiffs Hiles, Cline, Fischer, Phong, Portales, Allan, Sandstrom

and Szulczewski.

## V.  PLAINTIFFS CANNOT DEMONSTRATE UNCONSCIONABILITY.

Alternatively, if the Court weighs unconscionability, Plaintiffs' arguments fail.  Plaintiffs

complain that a hodgepodge of allegedly offensive provisions renders Sprint's and Cricket's

T&Cs unconscionable,[30] but they cannot prove these claims by a preponderance of evidence.

*Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).[31]

The parties agree that both procedural and substantive unconscionability are required to

find unconscionability in California, Connecticut, Florida, Iowa, Maryland, Michigan, and

---

[29] *See also* Newby Reply Decl. Ex. D at 3, Sprint's reply in the underlying district court case, setting out the language used to incorporate the JAMS rules, which mirrors that in the 2011 T&Cs.

[30] Plaintiffs concede that ATTM's provision is not unconscionable. Opp. 36 n.14 ("[A]ll references to unconscionability exclude ATTM.").

[31] Plaintiffs bear this burden in all applicable jurisdictions. *See Pacheco v. PCM Constr. Servs. LLC*, No. 3:12-cv-4057-L, 2014 WL 145147, at * 4 (N.D. Tex. Jan. 15, 2014); *Vis v. Am. Family Life Assurance Co. of Columbus*, 778 F. Supp. 2d 971, 980 (N.D. Iowa 2011); *D'Antuono v. Serv. Road Corp.*, 789 F. Supp. 2d 308, 319-20 (D. Conn. 2011); *Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1313 (S.D. Fla. 2009); *Dombrowski v. Gen. Motors Corp.*, 318 F. Supp. 2d 850, 850-51 (D. Ariz. 2004); *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 574-75 (Ky. 2012); *McKee v. AT&T Corp.*, 164 Wash.2d 372, 383 (2008); *Norwest Fin Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005); *Bartlett Grain Co.*, 829 N.W. 2d at 23; *Rosenthal v. Great West. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996); *State v. P.G. Miron Constr. Co.*, 512 N.W.2d 499, 504 (Wis. 1994); *Falls v. 1CI, Inc.*, 208 Md. App. 643, 674 (2012); *Cirilli v. Country Ins. & Fin. Servs.*, 776 N.W.2d 272, 277-78 (Wis. Ct. App. 2009); *Rembert v. Ryan's Family Steak Houses, Inc.*, 596 N.W.2d 208, 213 (Mich. Ct. App. 1999), *appeal denied*, 605 N.W.2d 318 (Mich. 1999); *Reuben H. Donnelley Corp. v. Krasny Supply Co.*, 227 Il. App. 3d 414, 418-19 (1991).

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

16

CASE NO. 3:12-md-02330-EMC

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Wisconsin, and that in Arizona[32], Illinois, Kentucky, Mississippi, and Washington either

2    procedural or substantive unconscionability can demonstrate unconscionability.  Opp. 37.

3    Plaintiffs, however, are incorrect in asserting that Texas law requires only one form of

4    unconscionability – it requires both.  *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. Westinghouse*

5    *Elec. Corp.*, 844 F.2d 1174, 1184 (5th Cir. 1988) (citing *Wade v. Austin*, 524 S.W.2d 79, 86 (Tex.

6    Civ. App. 1975)).  Plaintiffs cannot meet their burden regardless of which standard applies.

7              **A.      Plaintiffs Cannot Demonstrate Procedural Unconscionability.**

8         Plaintiffs assert that the arbitration provisions are procedurally unconscionable because

9    the carrier contracts are (1) adhesion contracts and (2) demonstrate surprise.  Both arguments fail.

10             **1.      Adhesion Alone Does Not Render the Agreements Unconscionable.**

11        "[T]he times in which consumer contracts were anything other than adhesive are long

12   past."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011).  The courts from each

13   of Plaintiff's jurisdictions outside of California, applying law that governs the majority of

14   Plaintiffs, have concluded that adhesion contracts are not per se procedurally unconscionable.[33]

15   Even in California, contrary to Plaintiffs' contention otherwise, courts in this district have

16   observed that, after *Concepcion*, "California law is unclear whether a finding that a contract is

17   adhesive is also a finding of procedural unconscionability."  *Mance v. Mercedes-Benz USA*, 901

18   F. Supp. 2d 1147, 1160-62 (N.D. Cal. 2012) (post-*Concepcion*, holding that a court cannot find

19   an "adhesive sales contract [] procedurally unconscionable").

20

21

22   _____

[32] In Arizona, substantive unconscionability alone is sufficient.  *Shupe v. Cricket Commc'ns, Inc.*,
23   No. CIV 12-634-TUC-CKJ, 2013 WL 68876, at *5 (D. Ariz. Jan. 7, 2013) (not addressing
     whether procedural unconscionability alone is sufficient).
24   [33] *See D'Antuono*, 789 F. Supp. 2d at 328 (Connecticut law); *Vis*, 778 F. Supp. 2d at 980-81
     (Iowa law); *Carrick v. Aquent, Inc.*, 294 F. Supp. 2d 1012, 1020 (E.D. Wis. 2003) (Wisconsin
25   law); *Brooks v. Prestige Fin. Servs., Inc.*, 827 F. Supp. 2d 509, 514 (D. Md. 2011) (Maryland
     law); *Bhim*, 655 F. Supp. 2d at 1313 n.3 (Florida law); *Schnuerle*, 376 S.W. 3d at 576-77
26   (Kentucky law); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678-79 (Tex. 2006); *Rory v.
     Cont'l Ins. Co.*, 703 N.W.2d 23, 41-42 (Mich. 2005) (Michigan law); *Norwest*, 905 So. 2d at
27   1194 (Mississippi law); *Phx Ins. Co. v. Rosen*, 242 Ill.2d 48, 72-73 (2011) (Illinois law); *Zuver v.
     Airtouch Commc'ns, Inc.*, 153 Wash.2d 293, 304-07 (2004) (Washington law); *Coup v. Scottsdale
28   Plaza Resort, LLC*, 823 F. Supp. 2d 931, 944; 946-47 (D. Ariz. 2011).

**2.** **Plaintiffs Have Failed to Demonstrate Unfair Surprise.**

**a.** **Sprint's Contracts Do Not Involve Surprise.**

Plaintiffs fail to offer any meaningful arguments that Sprint's arbitration provision was a "surprise" because the provision was prominently displayed and referenced many times in documents Plaintiffs received.

**(1)** **The Arbitration Provision Was Prominently Displayed.**

Plaintiffs rely upon *Newton*, 854 F. Supp. 2d 712, in which an arbitration clause was procedurally unconscionable, due in part to its location. In *Newton*, the Court found "actual surprise" where the arbitration clause was printed on the back of a document that was incorporated by reference into the consumer contract and was not highlighted within the incorporated document. 854 F. Supp. 2d at 724. There is no indication in *Newton* that the contract itself mentioned an arbitration provision. *See id.* at 717-18, 724.

Here, as already explained, Sprint went to great lengths to inform Plaintiffs about the existence of an arbitration provision before consumers purchased their phones (and well before they lost the opportunity to return them). *See supra* § II.D. On the document itself, Sprint framed the arbitration provision in a box to set it apart from the rest of the T&Cs. Miller Decl. Ex. A at 14-15. Nor is the arbitration provision in the 2011 T&Cs a surprise. The top of the first page of the updated terms stated: "THIS CONTRACT CONTAINS A MANDATORY ARBITRATION PROVISION THAT DISALLOWS CLASS ACTIONS, A CLASS ACTION WAIVER PROVISION, AND A JURY WAIVER PROVISION." *Id.* at Ex. B at 9. Sprint notified each of the Sprint Plaintiffs of the updated T&Cs through their bills, a method of notice each Plaintiff previously agreed upon.[34] *See id.* at Ex. A at 15-16.

Given all these factual differences between Plaintiffs' contracts and those at issue in *Newton*, that decision does not support a finding of procedural unconscionability here. Moreover, since *Newton*, the *en banc* Ninth Circuit has clarified California law on procedural

---

[34] The use of an agreed upon method to notify Plaintiffs of these updates cuts against Plaintiffs' argument that the modification was procedurally unconscionable. *Klein v. Verizon Commc'ns Inc.*, 920 F. Supp. 2d 670, 684 (E.D. Va. 2013) (modification adding an arbitration agreement not procedurally unconscionable when sent to users via a "previously agreed upon method").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

unconscionability in *Kilgore v. KeyBank, Nat'l Assoc'n*, 718 F.3d 1052 (9th Cir. 2013). In *Kilgore*, the court found no surprise and upheld an arbitration provision because, as here, it was not buried but identified by boldface headings and set off in a separate section of the document. 718 F.3d at 1059. The law in states outside of California where Plaintiffs subscribe to the cellular service even more clearly forecloses any finding of surprise on these facts.[35]

It is therefore no surprise that courts have upheld Sprint's dispute resolution clause. *See Davis v. Sprint Nextel Corp.*, No. 12-01023-CV-W-DW, 2012 WL 5904327, at *3 (W.D. Mo. Nov. 26, 2012); *Phillips v. Sprint PCS*, 209 Cal. App. 4th 758 (2012); *Briceno*, 911 So. 2d at 179-81 (2003 T&Cs); *see also In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1126 (D. Kan. 2003) (Sprint landline customers).[36]

---

[35] *See Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 509 F. Supp. 752, 759 (W.D. Wis. 2007) (applying Wisconsin law and rejecting claim that because plaintiffs were "laypersons," the contract was procedurally unconscionable); *Bartlett Grain*, 829 N.W. 2d at 27-28 (no unfair surprise under Iowa law); *In re Palm Harbor Homes Inc.*, 195 S.W.3d at 679 (no surprise under Texas law); *Kinkel*, 223 Ill. 2d at 26 (no surprise under Illinois law); *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 475 (Mich. Ct. App. 2005) (no surprise under Michigan law); *Zuver*, 153 Wash.2d at 306 (no surprise under Washington law where arbitration agreement had a bolded, underlined title and was otherwise in normal font); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 343 (Ky. Ct. App. 2001) (no surprise under Kentucky law); *Jones v. Gen. Motors Corp.*, 640 F. Supp. 2d 1124, 1131 (D. Ariz. 2009) (no surprise where, "the print is entirely readable, and the presentation of the text does not affect the legibility or comprehensibility of the document"); *D'Antuono*, 789 F. Supp. 2d at 328 (no surprise where "[t]he arbitration clause was written in ordinary-size type, in bold, capital letters, and underlined. It could hardly have been any less hidden.") (citation omitted); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1321–22 (S.D. Fla. 2006) (no procedural unconscionability where "AT&T . . . used bold-faced, all-caps print to delineate the arbitration clause from the rest of the agreement."); *Walther v. Sovereign Bank*, 386 Md. 412, 428 (Md. Ct. App. 2005) (no procedural unconscionability where arbitration clause was only paragraph that had "been underlined in the original agreement" and therefore "*conspicuously distinct*") (emphasis in original); *Shegog v. Union Planters Bank, N.A.*, 332 F. Supp. 2d 945, 950 (S.D. Miss. 2004) (no surprise where "the provision in both the note and the security agreement are headed in bold print 'Arbitration Agreement,' and both provisions are entirely readable").

[36] Plaintiffs also argue that the arbitration provision was "buried amongst legalese," because they would not have understood the heading "Dispute Resolution" to refer to "arbitration" even if they had read the arbitration clause. Opp. 39-40. This argument is not reasonable and should be rejected. *See Davis*, 2012 WL 5904327, at *3 ("The arbitration agreement is titled 'Dispute Resolution' in large, bold font, and is printed in the same text size as the other contract terms. Any reasonable person would expect disputes would be arbitrated under the contract."). In any event, the FAA forbids states from imposing requirements regarding how parties must call out an arbitration provision. *See Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681 (1996).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**(2)** **There is No Requirement to Attach Arbitration Rules.**

Relying on a single California case, *Lara v. Onsite Health Inc.*, 896 F. Supp. 2d 831 (N.D. Cal. 2012), Plaintiffs also complain that the Sprint T&Cs did not physically attach a copy of the applicable arbitration rules. This argument, however, has been squarely rejected by courts as being in direct violation of the Supreme Court's admonition in *Concepcion*. *See Collins v. Diamond Pet Food Processors, LLC*, No. 2:13-cv-00113-MCE-KJN*, 2013 WL 1791926, at *5 (E.D. Cal. Apr. 26, 2013) (rejecting claim that arbitration agreements must physically attach rules because it would set stricter rules for arbitration agreements than for other contracts).[37]

Finally, Plaintiffs rely on *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013), to argue that the Sprint provision is unconscionable because Plaintiffs received the contract "after the fact." Opp. 40. But in *Chavarria*, the employee was given the arbitration policy three weeks after it came into effect. *Chavarria*, 733 F.3d at 923. Here, Plaintiffs Cline, Fischer, and Hiles had access to the T&Cs *before* they purchased the phones and activated service, and all Sprint Plaintiffs had thirty days to reject any material changes to their T&Cs by cancelling their service without incurring a termination fee. *Infra* III.C.1; Miller Decl. Ex. A at 3.

**b.** **Cricket's Contracts Do Not Involve Surprise.**

Plaintiffs' challenges to Cricket's T&Cs as procedurally unconscionable also fails. First, Plaintiffs' argument that the arbitration clause is "hidden" because it is not the only T&C clause in bold and all capitals is not supportable by any case law. *See* Opp. 40. Second, Plaintiffs incorrectly contend that surprise may be determined by the arbitration clause's location alone. *Id*. at 39. Not so. Courts have held that many factors are relevant in determining surprise, of which the clause's location within the document is only one. *See, e.g.*, *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (enforcing arbitration clause on back of contract). Plaintiffs acknowledge that the arbitration provision *was* highlighted (*see* Opp. 40), and they cannot deny that the *first sentences* of Cricket's T&Cs notified Plaintiff White, in bold and all capitals, of the

---

[37] *See also Ulbrich v. Overstock.com Inc.*, 887 F. Supp. 2d 924, 932 (N.D. Cal. 2012) (rejecting argument that arbitration agreements should be treated differently from other contracts with respect to incorporation by reference); *Hodsdon v. Bright House Networks, LLC*, No. 1:12-cv-01580-AWI-JLT, 2013 WL 1091396, at *4 (E.D. Cal. Mar. 15, 2013) (rejecting argument that agreement's lack of details rendered arbitration agreement procedurally unconscionable).

mandatory arbitration provision. *See* Baughman Decl., Ex. 1 at 1 ("these terms []include . . . a MANDATORY ARBITRATION of disputes provision"); *id.* at Ex. 2 at 2 ("**These Terms and Conditions of Service . . . contain an arbitration clause**"). Texas courts decline to find such highlighted clauses procedurally unconscionable. *Cantella*, 924 S.W.2d at 944 (arbitration clause not "hidden" on back of document because clause was in bold).

That Plaintiff White received the T&Cs after his purchase does not render the arbitration provision procedurally unconscionable. *See* Opp. 40-41. Texas courts find no procedural unconscionability where, as here, a contract binds customers after purchase only if they do not return the item or opt-out. *See Circuit City Stores, Inc. v. Curray*, 946 S.W.2d 486 (Tex. App. 1997) (contract containing an arbitration clause is not unconscionable where employee is given opportunity to opt out of arbitration). White does not dispute that he received and read the T&Cs. He had sixty days after he activated his phone to reject arbitration, but did not do so. Baughman Decl. Exs. 1 at 4-5 (§ 20(b)), 2 at 12 (§ 20(d)). Thus, there was no surprise.

**B. Plaintiffs Have Failed to Demonstrate that Sprint's and Cricket's Arbitration Provisions are Substantively Unconscionable.**

**1. Sprint.**

**a. Unilateral Modification Terms Are Fully Enforceable.**

Plaintiffs effectively challenge the enforceability of every consumer contract by claiming that any contract containing a unilateral modification term is unconscionable. Opp. 41. Relying on *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) and *In re Zappos.com*, 893 F. Supp. 2d 1058 (D. Nev. 2012), Plaintiffs argue that Sprint's arbitration provision is substantively unconscionable because the T&Cs permit Sprint to unilaterally modify its terms. *Id.* These cases do not support Plaintiffs' argument.

First, the modification term is not part of the arbitration provision, and Plaintiffs do not argue that applying the term to the arbitration provision renders arbitration substantively unconscionable. *See id.* Thus, the unilateral modification term is irrelevant to whether the arbitration provision is enforceable. *See Rent-A-Center*, 130 S.Ct at 2780 (a term outside an

1 arbitrary provision bears on the enforceability of the arbitration provision only if a party argues

2 that the term "*as applied* to the" provision renders "*that provision* unconscionable").

3     Further, in *Ingle*, the Ninth Circuit expressly disclaimed that a "unilateral authority to

4 modify or terminate" could alone render an agreement unconscionable, and limited its finding of

5 unconscionability to the unique facts of the case. *Ingle*, 328 F.3d at 1179 n.23. To the extent

6 Plaintiffs claim under *Ingle* that unilateral modification creates substantive unconscionability, that

7 holding is no longer valid. The Supreme Court has expressly upheld an arbitration agreement that

8 authorized a service provider to "make unilateral amendments." *Concepcion*, 131 S.Ct. at 1744;

9 *see also Coneff v. AT&T Corp.*, 673 F.3d 1155, 1160 (9th Cir. 2012) (same).

10     Nor is *In re Zappos.com* relevant. *Zappos* interpreted Nevada contract law, which is not

11 implicated here. *Zappos*, 893 F. Supp. 2d at 1062, n.5. It is further inapposite because the

12 contract at issue provided Zappos the right to change the terms *without notice* (*id.* at 1066),

13 whereas Sprint's T&Cs requires Sprint to give notice of material changes and allow a thirty day

14 window for consumers to cancel service. Motion 13-16. Courts have upheld similar unilateral

15 modification terms. *See Hodsdon*, 2013 WL 1091396, at *6 (enforcing cable television contract

16 requiring notice and allowing thirty days to reject unilateral modification), adopted by *Hodson v.*

17 *Bright House Networks, LLC*, No. 1:12-cv-1580, 2013 WL 1499486 (E.D. Cal. Apr. 11, 2013).[38]

18     **b.    The Sprint Arbitration Provision Does Not Lack Mutuality.**

19     Plaintiffs mischaracterize Sprint's T&Cs to support of their argument that mutuality is

20 lacking. Plaintiffs cite a single provision in Sprint's T&Cs, which they claim allows Sprint to

21 "take any action to: (1) protect [its] network, [its] rights or interests, or the rights of others."

22 Miller Decl. Exs. A. at 7, B at 14. The provision appears in a section titled "Protecting Our

23 Network & Services" and contemplates *technical* actions Sprint might take to ensure the security

24 and quality of its services, such as "message filtering/blocking software to prevent SPAM or

25 viruses, limiting throughput, limiting access to certain websites, applications or other Data

---

[38] *See also Klein*, 920 F. Supp. 2d at 682-83 (rejecting argument that unilateral modification of Terms of Service was substantively unconscionable); *Vernon v. Qwest Commc'ns, Int'l., Inc.*, 857 F. Supp. 2d 1135, 1155-56 (D. Colo. 2012) (unilateral modification clause conditioned upon prior notice and subscriber's right to reject those changes not illusory or unenforceable), *aff'd*, 925 F. Supp. 2d. 1185 (2013).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Content, [and] prohibitions on unintended uses." *Id.* at Exs. A. at 7, B at 14.[39] Even if the Court

finds that this provision preserves Sprint's right to sue to protect its network, the Court should

find that the specific language in the arbitration provision, requiring Sprint and its customers to

arbitrate "all disputes," trumps general language relating to technical activities to protect network

security. *See, e.g.*, *Prouty v. Gores Tech. Grp*, 121 Cal. App. 4th 1225, 1235 (2004) ("[U]nder

well established principles of contract interpretation, when a general and a particular provision

are inconsistent, the particular and specific provision is paramount to the general provision").

The Court must reject Plaintiffs' claim that the Sprint provision lacks mutuality.[40]

### c.    A Pre–Suit Notice Requirement is Not Unconscionable.

Without any analysis, Plaintiffs baldly assert that requiring customers to provide notice

prior to filing a dispute is substantively unconscionable. Opp. 42. Plaintiffs are wrong. At least

one court has upheld Sprint's pre-dispute requirement, citing the Supreme Court's decision in

*Concepcion*, which itself upheld an arbitration provision including a notification requirement.

*See Davis*, 2012 WL 5904327, at *3 (citing *Concepcion*, 131 S.Ct. at 1744). Plaintiffs also

mischaracterize *Noohi v. Toll Bros. Inc.*, 708 F.3d 599 (4th Cir. 2013), which does not hold that a

provision requiring notice prior to filing a dispute is substantively unconscionable. Rather, *Noohi*

found an arbitration provision unconscionable because its notice provision required *only one

party* to give notice. 708 F.3d at 610-11. Here, the Sprint notice provision is mutual and

---

[39] Plaintiffs also cite to a complaint filed by Sprint last year in the Central District of California, claiming that it is an example of Sprint's "filing actions against people who buy its phones for injunctive relief in federal court" and therefore evidence that Sprint can "haul its customers into court." Opp. 41-42. In reality, the complaint was filed against a retail store, its owner, and an alleged group of co-conspirators who were fraudulently buying Sprint phones at subsidized prices and then immediately deactivating the phones, such that Sprint would never capture the monthly billings that supported the subsidy. *See Sprint v. Pac. Cellupage, et. al.*, C.D. Cal. No. 13-07862. Furthermore, Defendants have not answered the complaint in that case, and may in fact fully intend to litigate the claims. "Arbitration is a creature of contract," and parties may mutually agree to waive arbitration in favor of litigation." *Cinel v. Barna*, 206 Cal. App. 4th 1383, 1389 (2012) (parties mutually repudiated their arbitration agreement by refusing to agree over payment of arbitration fees).

[40] To the extent that there is any concern remains, the "Protecting Our Network & Services" clause may be severed from the arbitration agreement. *See* Miller Decl. Exs. A at 10 ("if any part of the Agreement is held invalid or unenforceable, the rest of this Agreement remains in full force and effect"), B at 15 (same).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    therefore not substantively unconscionable.  *See* Miller Decl. Ex. A at 14 ("If either of us wants to

2    arbitrate a dispute, we agree to send written notice to the other . . . .").

### d.    The Limitation of Liability Does Not Render Sprint's Arbitration Provision Substantively Unconscionable.

5        Plaintiffs' challenge to Sprint's liability limitation provision as substantively

6    unconscionable also fails.  As an initial matter, Plaintiffs assert that this limitation renders the

7    T&Cs unconscionable, not that the limitation "as applied" to the arbitration provision renders

8    arbitration unconscionable.  Accordingly, Plaintiffs' challenge to the limitation is irrelevant to the

9    court's enforceability analysis.  *See Rent-A-Center*, 130 S. Ct at 2780.  Moreover, Plaintiff's

10   reliance on *Newton* is misplaced.[41]  The challenged provision at issue provided that "*[u]nder no*

11   *circumstances* shall Global or the Bank ever be liable for any special, incidental, consequential,

12   exemplary or punitive damages."  *Newton*, 854 F. Supp. at 725 (emphasis added).  The clause in

13   *Newton* was unconscionable because it conflicted with statutory law that allowed customers to

14   recover the specific types of damages.  *Id.*  Here, however, Sprint's contract provides for

15   limitation of liability only, "*[t]o the extent allowed by law.*"  Miller Decl. Ex. B at 8 (emphasis

16   added).  Thus, not only are Plaintiffs' arguments against the limitation on liability irrelevant, but

17   the clause is also not substantively unconscionable.

### 2.    Cricket.

19       Plaintiff White's argument that Cricket's arbitration provision is substantively

20   unconscionable fails for similar reasons.  *See supra* § D.1.  As with the Sprint Plaintiffs, the

21   majority of his argument focuses on terms outside the arbitration provision and is therefore

---

22   [41] Plaintiffs cite a number of other cases in footnote 21 of their brief, none of which supports a
23   finding of substantive unconscionability here.  As Plaintiffs admit, *Veal v. Orkin*, No. 1:00-cv-
     920, 2001 U.S. Dist. LEXIS 4846, at *10 (W.D. Mich. Apr. 9, 2001) undermines their argument
24   by compelling arbitration and explaining the fact that "the arbitration provision prohibits the
     recovery of exemplary, treble, liquidated or punitive damages does not of itself render the
25   contract substantively unconscionable."  The Court in *Avid Eng'g, Inc. v. Orlando Marketplace
     Ltd.*, 809 So.2d 1, 5 (Fla. Dist. Ct. App. 2001), similarly compelled arbitration under the facts of
26   that case.  In the footnote, Plaintiffs also cite several cases that are irrelevant because they apply
     the laws of inapplicable jurisdictions.  The remaining cases analyzed limitation provisions that
27   conflicted with statutory or other rights to certain damages, whereas the Sprint provision here
     disclaims any limitation of remedies not "allowed by law."  Although the clause at issue in
28   *Mortgage Elec. Registration Sys., Inc. v. Amber*, 260 S.W.3d 351, 355 (Ky. Ct. App. 2008),
     included a similar provision, the court did not address it.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

irrelevant to the court's determination.  *See Rent-A-Center*, 130 S. Ct at 2780.

Moreover, the possibility of unilateral modification does not render the T&Cs substantively unconscionable.  Opp. 43.  Cricket provides notice of any changes, and Texas courts interpret such notice as an invitation to enter into a new relationship governed by the new terms, which the customer accepts by continuing service.  *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 172-73 (5th Cir. 2004).  Second, Plaintiffs provide no legal authority for their argument that Cricket's T&Cs render arbitration cost prohibitive.  Opp. 43.  To the contrary, arbitration may save costs, as Cricket may cover a customer's fees.  *See* Baughman Decl. Exs. 1 at 5 (§ 20(e)), 2 (§ 20(e)).  And, Texas courts have held that speculation about costs cannot support unconscionability.  *See In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 895 (Tex. 2010) ("Evidence of the 'risk' of possible costs of arbitration is insufficient evidence of the prohibitive cost of the arbitration forum.'").  Third, a limitation on liability does not render the T&Cs unconscionable under Texas law.  *See* Opp. 43; *see also Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, No. 3:13-CV-1096-D, 2013 WL 4603165, at *3 (N.D. Tex. 2013) ("under Texas law, 'a shortened statute of limitations will not necessarily render an arbitration provision unconscionable'") (citation omitted); *In re Poly-Am., L.P.*, 262 S.W.3d 337, 359 (Tex. 2008) (arbitration provision shortening statute of limitations is not substantively unconscionable).[42]  Last, allowing the arbitrator to select the forum is not substantively unconscionable.  *See* Opp. 43; *Villalobos v. EZCorp, Inc.*, No. 12-cv-852-scl, 2013 WL 3732875, at *8 (W.D. Wis. July 15, 2013) (allowing arbitrator to choose "any other place" for arbitration held not unconscionable).

## VI.    **CONCLUSION.**

Plaintiffs chose ATTM, Sprint and Cricket as their wireless providers when they obtained their devices from the OEM Defendants.  Plaintiffs accepted the terms governing those services.  Plaintiffs should be compelled to honor their arbitration agreements and individually arbitrate any disputes relating to the service provided by the Service Providers.

---

[42] *See NS Holdings LLC Inc. v. Am. Int'l Grp. Inc.*, No. SACV 10-1132 DOC, 2010 WL 4718895, at *3 (C.D. Cal. Nov. 15, 2010) (rejecting claim that arbitration provision was unconscionable because it precluded injunctive relief, punitive damages, and attorney's fees).

Dated: February 20, 2014

By: /s/ Rodger R. Cole

Rodger R. Cole (CSB No. 178865)
rcole@fenwick.com
Molly R. Melcher (CSB No. 272950)
mmelcher@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Ph:  (650) 988-8500
Fax:  (650) 938-5200

Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
Jennifer J. Johnson (CSB No. 252897)
jjjohnson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Ph: (415) 875-2300
Fax:  (415) 281-1350

*Attorneys for Defendant Carrier IQ, Inc.*

By: /s/ Rosemarie T. Ring

Rosemarie T. Ring (SBN 220769)
Rose.Ring@mto.com
Jonathan H. Blavin (SBN 230269)
Jonathan.Blavin@mto.com
Bryan H. Heckenlively (SBN 279140)
Bryan.Heckenlively@mto.com
MUNGER, TOLLES & OLSON, LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA  94105-2907
Phone: (415) 512-4000
Fax: (415) 512-4077

Henry Weissmann (SBN 132418)
Henry.Weissmann@mto.com
MUNGER, TOLLES & OLSON, LLP
355 South Grand Avenue,
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

*Attorneys for Defendant HTC America, Inc.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

26

CASE NO. 3:12-md-02330-EMC

By: /s Simon J. Frankel
Simon J. Frankel
sfrankel@cov.com
Mali B. Friedman
mfriedman@cov.com
COVINGTON & BURLING LLP
1 Front St., 35th Floor
San Francisco, CA 94111
Phone: (415) 591-6000
Fax: (415) 591-6091

*Attorneys for Defendant Huawei Devices USA, Inc.*

By: /s/ Jeff E. Scott
Jeff E. Scott (SBN 126308)
ScottJ@gtlaw.com
Lori Chang (SBN 228142)
ChangL@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700
Fax: 310-586-7800

Ian C. Ballon (SBN 141819)
Ballon@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel: 650-328-8500
Fax: 650-328-8508

*Attorneys for Defendant LG Electronics MobileComm U.S.A., Inc.*

By: /s/ Oluwaseun O. Ajayi
Oluwaseun Ajayi (SBN 250903)
oajayi@park-law.com
Alan A. Wright
awright@park-law.com
H.C. Park & Associates, PLC
1894 Preston White Drive
Reston, VA 20191
Phone: (703) 288-5105
Fax: (703) 288-5139

*Attorneys for Defendant Pantech Wireless, Inc.*

By: /s/ Lance A. Etcheverry
Lance A. Etcheverry (SBN 199916)
lance.etcheverry@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &

DFS' CONSOLIDATED REPLY ISO MTN TO
COMPEL ARBITRATION AND STAY LIT.

27

CASE NO. 3:12-md-02330-EMC

FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Phone: (213) 687-5000
Fax: (213) 687-5600

S. Sheryl Leung (SBN 238229)
sheryl.leung@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Ave. Suite 1400
Palo Alto, CA 94301
Phone: (650) 470-4544
Fax: (650) 798-6605

*Attorneys for Defendant Samsung
Telecommunications America, LLC*

## ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)

I, Rodger R. Cole, am the ECF User whose identification and password are being used to file this **DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION**.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

Dated:   February 20, 2014          /s/ Rodger R. Cole
                                    Rodger R. Cole

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW