**GREENBERG TRAURIG, LLP**
Ian C. Ballon (SBN 141819)
*Ballon@gtlaw.com*
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel:  650-328-8500; Fax: 650-328-8508

**GREENBERG TRAURIG, LLP**
Jeff E. Scott (SBN 126308)
*ScottJ@gtlaw.com*
Karin L. Bohmholdt (SBN 234929)
*BohmholdtK@gtlaw.com*
Lori Chang (SBN 228142)
*ChangL@gtlaw.com*
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel:  310-586-7700; Fax: 310-586-7800

Attorneys for defendant LG Electronics MobileComm U.S.A., Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE<br><br>CARRIER IQ, INC.,<br>CONSUMER PRIVACY LITIGATION<br><br>[This Document Relates to Referenced Related Cases] | Case No.:   3:12-md-02330-EMC<br><br>**NOTICE OF APPEAL**<br><br>Related Case Numbers:<br>CV-11 06160 (EMC ); CV 11-6199 (EMC);<br>CV-11-06641 (EMC); CV 12-1400 (EMC) |

1    TO THE HONORABLE COURT, CLERK OF THE COURT, AND ALL PARTIES AND

2  THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that LG Electronics MobileComm U.S.A., Inc. hereby appeals to the

4  United States Court of Appeals for the Ninth Circuit from the Court's March 28, 2014, Order Denying

5  Defendants' Motion to Compel Arbitration, which was entered on the docket in this action on March 28,

6  2014.

7    A copy of the Order Denying the Motion to Compel Arbitration is attached hereto as

8  Attachment A.

9    In compliance with Federal Rule of Appellate Procedure 12 and Ninth Circuit Rule 3-2, a

10  Representation Statement identifying all parties to this action, along with the names, addresses, and

11  telephone numbers of their respective counsel is attached hereto as Attachment B.

12  DATED:  April 28, 2014                    GREENBERG TRAURIG, LLP
                                              JEFF E. SCOTT
13                                            IAN C. BALLON
                                              KARIN L. BOHMHOLDT
14                                            LORI CHANG
                                              REBEKAH S. GUYON
15
                                              By:   _/s/  Jeff E. Scott_____
16                                                   Jeff E. Scott
17                                            *Attorneys for Defendant LG Electronics MobileComm
                                              U.S.A., Inc.*

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

United States District Court

For the Northern District of California

1
2
3
4
5                      UNITED STATES DISTRICT COURT
6                     NORTHERN DISTRICT OF CALIFORNIA
7
8    IN RE                                    No. C-12-md-2330 EMC
9    CARRIER IQ, INC. CONSUMER
     PRIVACY LITIGATION.                      **ORDER DENYING DEFENDANTS'**
10                                            **MOTION TO COMPEL ARBITRATION**
11                                            **(Docket No. 129)**
12   _____/
13          Plaintiffs (eighteen individuals from thirteen different states) have filed a consolidated

14   amended class action complaint ("CAC" or "complaint") against the following Defendants:

15   (1)    Carrier IQ, Inc. ("CIQ");

16   (2)    HTC America, Inc. and HTC Corporation (collectively, "HTC");

17   (3)    Huawei Device USA, Inc.;

18   (4)    LG Electronics MobileComm U.S.A., Inc. and LG Electronics, Inc. (collectively, "LG");

19   (5)    Motorola Mobility LLC;

20   (6)    Pantech Wireless, Inc.; and

21   (7)    Samsung Telecommunications America, Inc. and Samsung Electronics Co., Ltd.

22          (collectively, "Samsung").

23   All defendants, except for CIQ, are manufacturers of mobile devices (collectively, "Device

24   Defendants" or "OEM Defendants").  Plaintiffs have asserted claims against Defendants pursuant to

25   both federal and state law.  Essentially, Plaintiffs' claims are for (1) unauthorized interception and

26   transmittal of their private information and (2) breach of the implied warranty of merchantability.

27
28

United States District Court

For the Northern District of California

1  Currently pending before the Court is a motion to compel arbitration, which has been

2  brought by all Defendants except Motorola.[1]  For purposes of this order, the Court shall hereinafter

3  refer to the moving defendants as "Defendants," even though Motorola is not a party to the motion.

4  Having considered the parties' briefs and accompanying submissions, as well as the oral

5  argument of counsel, the Court hereby **DENIES** the motion to compel arbitration.

6  ## I.    FACTUAL & PROCEDURAL BACKGROUND

7  A.    Complaint

8  As indicated above, Plaintiffs' claims against Defendants are, in essence, for (1)

9  unauthorized interception and transmittal of their private information and (2) breach of the implied

10  warranty of merchantability.  The primary factual allegations underlying Plaintiffs' claims are as

11  follows.

12  CIQ is the author and vendor of certain software which has the capability of intercepting and

13  processing data on mobile devices.  *See* CAC ¶ 63.  The CIQ software is "ostensibly a network

14  diagnostics tool."  CAC ¶¶ 27, 41, 63.

15  Defendants maintain, and Plaintiffs do not materially dispute, that (1) three wireless carriers

16  – namely, ATTM, Sprint, and Cricket – licensed the CIQ software from CIQ and that (2) the

17  wireless carriers instructed the Device Defendants to install the software on the mobile devices they

18  manufactured – which the wireless carriers or their agents would then sell to consumers in

19  conjunction with the provision of wireless service.  As a result, the CIQ software has been installed

20  on millions of mobile devices, but without the knowledge of the vast majority of consumers.  *See*

21  CAC ¶ 41.  In fact, "[t]he typical user has no idea that [the software] is running, nor can he or she

22  turn it off."  CAC ¶ 62.

23  "Though touted . . . as a benign and simple service-improvement tool," the CIQ software has

24  been used to intercept private information on mobile devices (*e.g.*, user names, passwords, geo-

25

26  _____

[1] In the opening motion, Defendants state: "At this time, Motorola is not moving to compel
27  arbitration with respect to Plaintiff Jennifer Patrick subject to further investigation. . . . Motorola
does, however, intend to rely upon the ATTM arbitration clauses with respect to unnamed putative
class members.  Motorola and Carrier IQ reserve the right to compel Plaintiff Patrick to arbitration at
28  a later time."  Mot. at 3-4 n.4.

**United States District Court**
For the Northern District of California

1  location information, text messages, application purchases and uses) and transmit the same to others.

2  *See* CAC ¶¶ 63-65.  On the face of the CAC, it is not entirely clear who those others are.  That is, it

3  is not clear whether Plaintiffs are suing Defendants based on interception for and transmittal to the

4  wireless carriers themselves or whether the alleged misconduct by Defendants consists of

5  interception for and transmittal to others – in particular, CIQ itself, the device manufacturers,

6  Google, and application vendors or developers.  *See, e.g.*, CAC ¶¶ 3, 61, 66 (alleging that

7  "information is or has been transmitted to Google . . . and probably to application vendors and

8  developers, too, as part of device or application crash reports"; that information has been sent to

9  CIQ's servers or the servers of its customers; and that information is sometimes sent to device

10  manufacturers which "specify which data they want from among that assembled pursuant to

11  [specific] metrics").

12        The Court asked Plaintiffs, at the hearing, to provide clarification.  In response, Plaintiffs

13  explained that they are *not* claiming any misconduct on the part of Defendants because of

14  interception for/transmittal to the wireless carriers (*i.e.*, the wire carriers were essentially using the

15  CIQ software for benign purposes only, namely, as a network diagnostics tool).  Rather, Plaintiffs

16  were bringing suit because, *e.g.*, CIQ and the Device Defendants were using the CIQ software to

17  intercept private information for their own purposes (*i.e.*, not on behalf of the wireless carriers) and

18  because this private information was being transmitted to Google and/or application vendors or

19  developers as a result of device or application crash reports.

20        Aside from privacy issues, Plaintiffs maintain that the CIQ software is problematic because it

> necessarily degrades the performance of any device on which it is
> installed.  The CIQ software is always operating and cannot be turned
> off.  It necessarily uses system resources, thus slowing performance
> and decreasing battery life.  As a result, because of the CIQ software,
> in addition to having their private communications intercepted,
> plaintiffs and prospective class members are not getting the optimal
> performance of the mobile devices that they purchased, and which are
> marketed, in part, based on their speed, performance, and battery life.

26  CAC ¶ 74.

27        Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following class

28  claims:

United States District Court

For the Northern District of California

(1)     Violation of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act (against CIQ and the Device Defendants).

(2)     Violation of the Stored Communications Act (against CIQ only).

(3)     Violation of the Computer Fraud and Abuse Act (against CIQ only).

(4)     Violation of state wiretap and privacy acts (against CIQ and the Device Defendants).[2]

(5)     Violation of state consumer protection acts (against CIQ and the Device Defendants).

(6)     Violation of the Magnuson-Moss Warranty Act (against the Device Defendants only).

(7)     Violation of the implied warranty of merchantability under state law (against the Device Defendants only).

B.     <u>Arbitration Agreements</u>

In the pending motion, Defendants ask that all of the above claims be compelled to arbitration. Defendants admit that they have no agreements themselves with Plaintiffs which contain an arbitration clause. However, Defendants point out that there are arbitration provisions in the agreements the wireless carriers (ATTM, Sprint, and Cricket) have with their own customers. According to Defendants, although Defendants are not signatories to these customer agreements, they have are entitled to invoke the benefit of the arbitration provisions based on an equitable estoppel theory. Below is the basic agreement to arbitrate for each wireless carrier.

1.     <u>ATTM</u>

ATTM's Wireless Customer Agreement § 2.2 provides that "AT&T and you agree to arbitrate **all disputes and claims** between us." Dobbs Decl., Ex. 2 (ATTM Agreement § 2.2).

The ATTM Agreement further provides that the arbitration agreement "is intended to be broadly interpreted [and] includes . . . claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory." Dobbs Decl., Ex. 2 (ATTM Agreement § 2.2).

---

[2] For all state-based claims, Plaintiffs have implicated multiple states – and not simply the states where Plaintiffs were residing during the relevant period.

United States District Court

For the Northern District of California

1      2.    <u>Sprint</u>

2  Sprint's Terms and Conditions of Service ("Ts&Cs") provide that "[w]e each agree to

3  arbitrate all Disputes between us."  Miller Decl., Ex. B (Sprint 2011 Ts&Cs at 14).  "Disputes" is

4  defined to mean "any claims or controversies against each other related in any way to or arising out

5  of in any way our Services or the Agreement, including, but not limited to, coverage, Devices,

6  billing services and practices, policies, contract practices (including enforceability), service claims,

7  privacy, or advertising."  Miller Decl., Ex. B (Sprint 2011 Ts&Cs at 14).  "Disputes" also include

8  "claims related in any way to or arising out of in any way any aspect of the relationship between us,

9  whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory."  Miller

10  Decl., Ex. B (Sprint 2011 Ts&Cs at 14).  "The agreement to arbitrate is intended to be broadly

11  interpreted."  Miller Decl., Ex. B (Sprint 2011 Ts&Cs at 14).

12      3.    <u>Cricket</u>

13  Cricket's Ts&Cs provide that

> [a]ny past, present or future claim, dispute or controversy . . . by either you or us against the other . . . arising from or relating in any *way* to this Agreement or Services provided to you under this Agreement, including (without limitation) statutory, tort and contract Claims and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved, upon the election by your or us, by binding arbitration.

18  Baughman Decl., Ex. 1 (Cricket Ts&Cs § 20(c)).

19  **II.   DISCUSSION**

20  Plaintiffs have offered two main arguments in opposition to the motion to compel arbitration:

21  (1) because Defendants' equitable estoppel theory is not viable given the circumstances in this case

22  and (2) because, even if the theory were viable, Plaintiffs never agreed to arbitration in the first place

23  (formation) and the arbitration agreements are unconscionable.  The Court need not address

24  Plaintiffs' second argument because, even assuming in Defendants' favor that there are no formation

25  or conscionability problems, the Court concludes that Defendants cannot prevail on their equitable

26  estoppel theory.

27

28

A.      Legal Standard

"[A]n agreement to arbitrate is a matter of contract: 'it is a way to resolve those disputes . . . that the parties have agreed to submit to arbitration.'"  *Chiron Corp. v. Ortho Diag. Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Because the wireless carrier customer agreements are contracts involving interstate commerce, the agreements are subject to the Federal Arbitration Act ("FAA").  *See id.*; *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (stating that, "[w]ith limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce").  Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

For purposes of this opinion, the Court assumes that the arbitration agreements at issue are valid, irrevocable, and enforceable.  The only question is *who* can compel arbitration – in other words, may Defendants compel arbitration as against the Plaintiffs even though Defendants are not signatories to the wireless carrier customer agreements containing the arbitration provisions they seek to enforce.

While generally, as a matter of federal law, doubts concerning the scope of arbitration should be resolved in favor of arbitration, where the issue is whether a particular party is bound by the arbitration agreement, the federal policy favoring arbitration does not apply.  *See Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (stating that the liberal federal policy regarding scope of arbitration does not apply to the question "whether a particular *party* is bound by the arbitration agreement").

> Generally, the contractual right to compel arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration."  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993).  Accordingly, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."

United States District Court

For the Northern District of California

1    *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). *Cf. BG Group PLC v.*

2    *Republic of Arg.*, No. 12-138, 2014 U.S. LEXIS 1785, at *17 (Mar. 5, 2014) (noting that "courts

3    presume that the parties intend courts, not arbitrators, to decide what we have called disputes about

4    'arbitrability'" which "include questions such as 'whether the parties are bound by a given

5    arbitration clause'").

6          As to the specific question here – *i.e.*, whether a non-signatory may enforce the arbitration

7    agreements – the parties largely agree that the materials to be considered consists of the allegations

8    in the operative complaint, along with the wireless carrier customer agreements themselves. *See,*

9    *e.g.*, *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1096-97 (N.D. Cal. 2012)

10   (looking at the allegations in the complaint to determine whether plaintiffs had adequately alleged a

11   basis for equitable estoppel). Although Defendants stated at the hearing that the Court should also

12   consider the declarations submitted by both parties, those declarations largely focus on formation

13   and conscionability issues, not the issue of equitable estoppel.

14         To the extent either party contends that this Court should apply a summary-judgment-type

15   standard in evaluating the pending motion,[3] the Court questions whether that standard is entirely

16   appropriate, especially because courts have generally employed that standard in deciding whether or

17   not there was an agreement to arbitrate in the first place. That would be relevant to, *e.g.*, formation

18   but not equitable estoppel. *See, e.g.*, *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d

19   1136, 1141 (9th Cir. 1991) (indicating agreement with Third Circuit that, where there is a doubt as to

20   whether an agreement to arbitrate exists, the matter should be submitted to a jury and "'[o]nly when

21   there is no genuine issue of fact concerning the formation of the agreement should the court decide

22   as a matter of law that the parties did or did not enter into such an agreement'"); *Concat LP v.*

23   *Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (Illston, J.) (indicating that, where a

24   motion to compel arbitration "is opposed on the ground that no agreement to arbitrate was made," a

25   court should apply a standard similar to the Rule 56 summary judgment standard – *i.e.*, the court

26

27         [3] *Cf. Xinhua Holdings Ltd. v. Electronic Recyclers Int'l, Inc.*, No. 1:13-CV-1409 AWI SKO,

28   2013 WL 6844270, at *5 (E.D. Cal. Dec. 26, 2013) (stating that, for purposes of deciding a motion
     to compel arbitration, a court may consider documents outside the pleadings)

should give to the opposing party the benefit of all reasonable doubts and inferences that may arise

and "[o]nly when there is no genuine issue of material fact concerning the formation of an

arbitration agreement should a court decide as a matter of law that the parties did or did not enter

into such an agreement"). Even if a summary-judgment-type standard were applicable, Defendants

have the burden of establishing equitable estoppel, *see Just Film, Inc. v. Merch. Servs.*, No. C 10-

1993 CW, 2011 U.S. Dist. LEXIS 96613, at *24 (N.D. Cal. Aug. 29, 2011) (stating such in the

context of arbitration and equitable estoppel), and, in light of that burden, allegations and facts must

be resolved and construed in Plaintiffs' favor.

B.    Equitable Estoppel

      Generally, one who is not signatory to an agreement has no right to enforce it.

> [A]s a general matter, a contractual right to arbitration "may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993). However, there are legal theories, such as agency and estoppel, in which non-signatories to an arbitration agreement may compel or be compelled to arbitration. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229-34 (9th Cir. 2013); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *DMS Services, Inc. v. Superior Ct.*, 205 Cal. App. 4th 1345, 1353, 140 Cal. Rptr. 3d 896 (2012).

*Xinhua*, 2013 WL 6844270, at *5. Here, Defendants do not rely on agency or third-party beneficiary

theories to compel arbitration pursuant to the agreements to which they are not signatories. Instead,

they assert solely equitable estoppel as the ground for their ability to enforce arbitration.

      Equitable estoppel is a doctrine that "precludes a party from claiming the benefits of a

contract while simultaneously attempting to avoid the burdens that contract imposes." *Murphy v.

DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Federal courts recognized that the doctrine of

equitable estoppel could have applicability in the arbitration context. For example, in *Mundi v.

Union Security Life Insurance Co.*, 555 F.3d 1042 (9th Cir. 2009), the Ninth Circuit noted:

> We have examined two types of equitable estoppel in the arbitration context. In the first, a nonsignatory may be held to an arbitration clause "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" Under the second, a signatory may be required to arbitrate a claim brought by a nonsignatory "because of the close relationship between the entities involved, as well as the relationship

8

United States District Court
For the Northern District of California

of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations."

*Id.* at 1046.  Notably, while the Ninth Circuit acknowledged that equitable estoppel could apply in the arbitration context, it cautioned that, "in light of the general principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated in these two lines of cases." *Id.*

After the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624 (2009), it is clear that state law, and not federal law, determines the applicability of equitable estoppel in the arbitration context.[4]  *See Kramer*, 705 F.3d at 1128.  And in two post-*Carlisle* cases, the Ninth Circuit has emphasized that the doctrine of equitable estoppel is a narrow one and should not be expanded, regardless of what underlying state law applies.  *See, e.g.*, *Murphy*, 724 F.3d at 1229 (in California case, stating that, "[b]ecause generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined"); *Rajagopalan*, 718 F.3d at 847 (in Washington case, stating that "[w]e have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here").  Defendants have failed to point to any case law, federal or state, indicating to the contrary.  Accordingly, the Court heeds the approach taken by the Ninth Circuit – *i.e.*, it shall consider whether equitable estoppel is appropriate under the narrow framework that has been recognized by the courts.

The chart below reflects the relevant state laws the narrow circumstances under which a nonsignatory to an agreement containing an arbitration clause can compel a signatory to the agreement to arbitration under an equitable estoppel theory.

---

[4] Plaintiffs contend Defendants waived any argument that state, as opposed to federal, law on equitable estoppel applies.  However, any such waiver by Defendants of state law makes no material difference because federal is substantially similar to state law.  *See Kramer*, 705 F.3d at 1130 n.5 (nothing that, although Ninth Circuit in *Mundi* cited federal equitable estoppel cases, the court applied the same substantive law on equitable estoppel that a California court would have applied).

9

**United States District Court**
For the Northern District of California

| | A nonsignatory to an agreement containing an arbitration clause can compel a signatory to the agreement to arbitrate: | | | |
|---|---|---|---|
| 1 | Only under traditional equitable estoppel principles. | IL | *Peach v. CIM Ins. Corp.*, 816 N.E.2d 668, 674 (Ill. Ct. App. 2004). |
| | | MS | *B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 492 (Miss. 2005) (stating that, "*[a]bsent* allegations of substantially interdependent and concerted misconduct between a non-signatory and a signatory who have a close legal relationship," traditional equitable estoppel law should apply) (emphasis added) |
| 2 | Only when the signatory seeks to enforce benefits under the agreement containing the arbitration clause. | None[5] | |

---

[5] Plaintiffs contend that Arizona and Wisconsin belong in this category. While Plaintiffs' position is not without any merit, the Court has – out of an abundance of caution – placed these states in other categories that are more favorable to Defendants. Even with this "benefit," the Court concludes that Defendants still cannot establish equitable estoppel as appropriate in the case at bar.

United States District Court
For the Northern District of California

| A nonsignatory to an agreement containing an arbitration clause can compel a signatory to the agreement to arbitrate: | | | |
|---|---|---|---|
| **3** | Only when the signatory relies on the terms of the agreement in asserting its claims against the nonsignatory or when the signatory's claims against the nonsignatory are intertwined with the agreement. | AZ | *Schoneberger v. Oelze*, 96 P.2d 1078, 1081 n.5 (Az. Ct. App. 2004) (favorably citing *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir. 2000), where the Fourth Circuit stated that, where claims against a nonsignatory are intimately founded in and intertwined with a contract containing an arbitration clause, the signatory is estopped from refusing to arbitrate those claims). |
| | | WA | *Rajagopalan v. Noteworld, LLC*, 718 F.3d 844, 847-48 (9th Cir. 2013) (where plaintiffs sued under both federal and Washington state law, applying the "intertwined claims" test in deciding whether the nonsignatory could compel the signatory to arbitrate). |
| **4** | Only when the signatory to the agreement raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the other signatories to the agreement. | MS | *Qualcomm Inc. v. Am. Wireless License Grp., LLC*, 980 So. 2d 261, 269 (Miss. 2007) (citing *B.C. Rogers* for the proposition that "a non-signatory may be able to enforce an arbitration agreement against a signatory where the non-signatory has a close legal relationship with a signatory of the agreement"). |

United States District Court

For the Northern District of California

| A nonsignatory to an agreement containing an arbitration clause can compel a signatory to the agreement to arbitrate: | | | |
|---|---|---|---|
| **5** | In *either* situation (3) or (4) above.<br><br>(This test has often been referred to as the *MS Dealer* test or the *Grigson* test. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999); *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000).) | CA | *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 221 (2009)). |
| | | CT[6] | *Res. Servs., LLC v. Bridgeport Hous. Auth.*, No. HHDCV106020108S, 2011 Conn. Super. LEXIS 1487, at *21 (Conn. Super. Ct. June 13, 2011) |
| | | FL | *Marshall-Amaya & Anton v. Arnold-Dobal*, 76 So. 3d 998, 1004 (Fla. Ct. App. 2011). |
| | | IA | *Wells Enterprises, Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740, 798 (N.D. Ohio 2012) (predicting how the Iowa Supreme Court would rule). |
| | | KY | *Household Fin. Corp. II v. King*, No. 2009-CA-001472-MR, 2010 Ky. App. Unpub. LEXIS 780, at *10-11 (Ky. Ct. App. Oct. 8, 2010). |
| | | MD | *Griggs v. Evans*, 43 A.3d 1081, 1093 (Md. Ct. Spc. App. 2012); *see also Westbard Apts., LLC v. Westwood Joint Venture, LLC*, 181 Md. App. 37, 51-52 (2007). |
| | | MI | *City of Detroit Police & Fire Retirement System v. Gsc Cdo Fund*, No. 289185, 2010 Mich. App. LEXIS 843, at *15 (Mich. Ct. App. May 11, 2010). |
| | | WI | *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 869 (E.D. Wisc. 2006) (pre-*Carlisle* decision). |
| **6** | Only if *both* (3) and (4) are applicable.<br><br>(This is the federal test applied by the Ninth Circuit before the Supreme Court decided *Carlisle* in May 2009. *See, e.g.*, *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009).) | CT | *Kuryla v. Coady*, No. AANCV126009961, 2013 Conn. Super. LEXIS 647, at *30 (Conn. Super. Ct. Mar. 22, 2013). |
| | | TX | *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191, 193-94 (Tex. 2007) (not foreclosing this test). |

---

[6] Connecticut has cases both in category (5) and category (6).

**United States District Court**
For the Northern District of California

C.    Unlawful Interception and Transmittal

The Court addresses first whether Defendants, as nonsignatories to the wireless carrier customer agreements, can compel Plaintiffs to arbitration pursuant to those agreements with respect to their claims for unlawful interception and transmittal. Defendants argue they can, under each of the equitable estoppel tests identified above. The Court does not agree.

1.    Traditional Equitable Estoppel

Where a traditional equitable estoppel test is applicable, Defendants' motion to compel arbitration clearly no merit. Under a traditional approach,

> "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. The party asserting a claim of estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable."

*Peach v. CIM Ins. Corp.*, 816 N.E.2d 668, 674 (Ill. App. Ct. 2004); *see also B.C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 492 (Miss. 2005) (stating that "equitable estoppel exists where there is a (1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position").

Here, when Plaintiffs entered into the wireless carrier customer agreements which contained the arbitration clauses,[7] they did not make any statements or take any actions *vis-a-vis Defendants specifically* which Defendants could then have reasonably relied on to their detriment – *i.e.*, that Plaintiffs would arbitrate any claim they had against Defendants. *See Peach*, 816 N.E.2d at 674. Indeed, Plaintiffs did not even know about the existence of CIQ and its software, so, at the very least, they could not have made any representations to CIQ itself.

Furthermore, each of the arbitration agreements refers to a customer making an agreement with the *wireless carrier* (*i.e.*, ATTM, Sprint, or Cricket) and *not* any other person or entity. *See, e.g.*, Dobbs Decl., Ex. 2 (ATTM Agreement at 1) (providing that "'AT&T' or 'we,' 'us' or 'our' refers to AT&T Mobility LLC"); Miller, Ex. B (Sprint 2011 Ts&Cs at 3) (providing that "'we,' 'us,'

---

[7] As noted above, the Court assumes for purposes of this order that there are no problems with formation and conscionability.

13

'our,' 'Nextel,' and 'Sprint' mean Sprint Solutions, Inc."); Baughman Decl., Ex. 1 (Cricket Ts&Cs §

1(a)) (indicating that the terms "'us,' 'we,' 'our' or 'Cricket'" all refer to Cricket Communications,

Inc.).

      The Court notes that although Defendants appeared briefly to address traditional equitable

estoppel in their reply papers, *see* Reply at 8 (arguing that Defendants detrimentally relied on the

arbitration clauses because they did not require end users to assent to a separate arbitration

agreement), Defendants conceded at the hearing they were not asserting traditional equitable

estoppel herein.

      2.     "Rely" or "Intertwined" Test

      The "rely"/"intertwined" test has been framed slightly differently depending on the state.

For example, in California, a nonsignatory can compel a signatory to arbitration "'when [the]

signatory must rely on the terms of the written agreement in asserting its claims against the

nonsignatory or the claims are intimately founded in and intertwined with the underlying contract.'"

*Murphy*, 724 F.3d at 1229. In Florida, a nonsignatory can compel a signatory to arbitration "when

the signatory . . . 'must rely on the terms of the written agreement in asserting [its] claims' against

the nonsignatory. When each of a signatory's claims against a nonsignatory 'makes reference to' or

'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[]

directly to the [written] agreement,' and arbitration is appropriate." *Marshall-Amaya & Anton v.*

*Arnold-Dobal*, 76 So. 3d 998, 1004 (Fla. Ct. App. 2011). But regardless of the slight differences in

framing, the fundamental policy underlying equitable estoppel is not in dispute – specifically, "a

plaintiff may not, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed

by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's

applicability because the defendant is a non-signatory." *Murphy*, 724 F.3d at 1229 (internal

quotation marks omitted).

      The doctrine of equitable estoppel is thus predicated on the unfairness of allowing a party to

rely on part of a contract in asserting a claim while, at the same time, disavowing another part of the

same contract. Yet, Defendants do not contend that, in asserting their claims herein, Plaintiffs must

rely – as a legal matter – on the terms of the wireless carrier customer agreements. The legal claims

United States District Court

For the Northern District of California

1    against Defendants are not in any legal way founded upon and do not arise out of the contracts with

2    the wireless carriers.  Instead, they are based on statutory rights not dependent upon the terms of

3    those contracts.  Equitable estoppel does not apply in such circumstances.  *See Murphy*, 724 F.3d at

4    1231 n.7 (indicating that "equitable estoppel is particularly inappropriate where plaintiffs seek the

5    protection of consumer protection laws against misconduct that is unrelated to any contract except to

6    the extent that a customer service agreement is an artifact of the consumer-provider relationship

7    itself").

8           Defendants contend, nevertheless, that the unlawful interception/transmission claims rely on

9    or are "intertwined" with the agreements because, to prevail on the claims, Plaintiffs must show that

10   they did not consent to the interception/transmittal, whereas the wireless carrier customer

11   agreements contain provisions which, at the very least, arguably indicate their consent.  For

12   example, Sprint's Ts&Cs provide:

13          Information that we automatically collect.  We automatically
            receive certain types of information whenever you use our Services.

14          *We may collect information about your device, your computer, and
            online activities.*  For example, we collect your device's and

15          computer's IP address, the date and time of your access and the type of
            browser you use.  We also collect information about your device's and

16          computer's operating system, your location, and the Web site from
            which you came and then went, and Web sites you visit on your

17          device.  We may link information we automatically collect with
            personal information, such as information you give us at registration or

18          check out.

19          Information we collect when we provide you with Services
            includes when your wireless device is turned on, how your device is

20          functioning, device signal strength, where it is located, what device
            you are using, what you have purchased with your device, how you are

21          using it, and what sites you visit.

22          We may use systems or tools to follow your use of our Services,
            including using cookies, web beacons and other tracking mechanisms.

23          For example, we allow collection by analytic service provider(s) of
            site click-stream and cookie data to help us track aggregate and

24          individual use of our Services.  We sometimes use cookies to enable
            features on our sites, like the ability to save your shopping cart or set

25          preferences. . . .

26                 . . . .

27          We may use your personal information for a variety of
            purposes, including providing you with Services.  We use your

28          personal information to do things like:

                                                15

United States District Court

For the Northern District of California

. . . .

    1.    *Monitor, evaluate or improve our Services, systems, or networks.*

Miller Decl., Ex. GGG (Sprint Privacy Policy at 1-2).

As noted above, even if Plaintiffs have the burden of proving lack of consent or authority as part of their statutory claims, they are not invoking the wireless carrier customer agreements to establish their case; rather, it is *Defendants* who are invoking the agreements to disprove Plaintiffs' factual assertions. *See Ehlen Floor Covering, Inc. v. Lamb*, No. 2:07-cv-666-FtM-29DNF, 2010 U.S. Dist. LEXIS 84120, at *8 (M.D. Fla. July 14, 2010) (stating that "[a]n issue raised as a defense . . . is not attributable to the non-party in determining whether the non-party may be compelled to arbitrate"); *see also Granite Rock Co. v. International Brotherhood of Teamsters*, 130 S. Ct. 2847, 2863 (2010) (stating that "[t]he mere fact that Local [the union] raised the formation date dispute as a defense to Granite Rock's suit does not make that dispute attributable to Granite Rock in the waiver or estoppel sense the Court of Appeals suggested, much less establish that Granite Rock agreed to arbitrate it by suing to enforce the CBA as to other matters"). Defendants have cited no case where *defendant's* reliance on a contract justifies the application of equitable estoppel against the *plaintiff* who does not rely on the contract. A contrary holding would be divorced from the basic principle underlying the equitable doctrine. *See Murphy*, 724 F.3d at 1229 (noting that equitable estoppel "reflects the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory'").

Furthermore, as made clear at the hearing, Plaintiffs are not suing Defendants for any conduct on the part of Defendants related to interception/transmittal to *the wireless carriers*. That being the case, the fact that the wireless carrier customer agreements contain provisions which allow *the wireless carriers* (or even others acting on their behalf) to collect certain information from their customers is irrelevant. Plaintiffs are charging misconduct by Defendants because the CIQ software was intercepting for and transmitting to persons or entities *other* than the wireless carriers.

To the extent Defendants contend the "rely" or "intertwined" test can be met where an agreement is simply referred in the complaint or the existence of the agreement is presumed, the Court does not agree. While some cases use language of "refer to" or "presume the existence of," that language must be taken in context. Defendants have not pointed to any case where the mere reference to an agreement (containing an arbitration clause) is adequate to demonstrate reliance. *See, e.g.*, *Amisil Holdings Ltd. v. Clarium Cap. Mgmt., LLC*, 622 F. Supp. 2d 825, 841 (N.D. Cal. 2007) (a pre-*Carlisle* case, stating that "each of the claims are related to the Agreement in a way that either refers to or presumes the existence of the Agreement" because "[a]bsent the Operating Agreement, *none of these claims would lie*"; adding that "Amisil cannot use the Agreement *as a sword* and at the same time choose to ignore it as a shield") (emphasis added).

Indeed, in *Murphy*, the Ninth Circuit (applying California law) expressly rejected an argument similar to that made by Defendants here. In *Murphy*, the plaintiffs sued Best Buy for making misrepresentations to customers at the point of sale that they were actually buying, rather than just leasing, certain DirecTV service equipment (*e.g.*, receivers and digital video recorders). Best Buy did not have any agreement with the plaintiffs containing an arbitration clause, but there was an arbitration clause in the customer agreements that plaintiffs had with DirecTV. Best Buy, as a nonsignatory to the customer agreements, tried to compel the plaintiff-signatories to arbitration on the basis of equitable estoppel. The Ninth Circuit rejected Best Buy's contention that the plaintiffs' fraud claims relied on or were intertwined with the DirecTV customer agreements.

> Even if Best Buy is correct that Plaintiffs' [fraud] claims on some abstract level require the existence of the Customer Agreement, the law is clear that this is not enough for equitable estoppel. In California, equitable estoppel is inapplicable where a plaintiff's "allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [customer] agreements." Applying this principle in *Kramer*, we held that Toyota could not compel arbitration of a consumer class action on the basis of arbitration clauses contained in the Purchase Agreements customers entered into with their dealerships. We expressly rejected Toyota's argument that the plaintiffs' claims were necessarily intertwined with the Purchase Agreements merely because the lawsuit was predicated on the bare fact that a vehicle purchase occurred. Rather, we held that the plaintiffs' causes of action, which, as here, largely arose under California consumer protection law, were not sufficiently intertwined with the Purchase Agreements to trigger equitable estoppel. Likewise, here, the Customer Agreement proves at most the existence of a

transaction; Plaintiffs' claims do not depend on the Agreement's terms.

*Murphy*, 724 F.3d at 1230-31. *See also Kramer*, 705 F.3d at 1129 (stating that "'[e]quitable estoppel applies only if the plaintiffs' claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory defendant'" and that "'[m]erely 'mak[ing] reference to' an agreement with an arbitration clause is not enough"); *Apple iPhone 3G*, 859 F. Supp. 2d at 1095 (indicating that a "but-for" connection between the agreement and the challenged conduct is not enough). Moreover, in *Murphy*, the Ninth Circuit indicated that "equitable estoppel is particularly inappropriate where plaintiffs seek the protection of consumer protection laws against misconduct that is unrelated to any contract except to the extent that a customer service agreement is an artifact of the consumer-provider relationship itself." *Murphy*, 724 F.3d at 1231 n.7. *See also Rajagopalan*, 718 F.3d at 847 (noting that plaintiff "does not contend that [defendant] or any other party breached the terms of the contract[;] [i]nstead, [plaintiff] has 'statutory claims that are separate from the [] contract itself'"); *Kramer*, 705 F.3d at 1130-32 (rejecting claim that plaintiffs relied on dealer purchase agreement in asserting claim against Toyota). Hence, the fact that the installation of the CIQ software might not have occurred absent a service agreement between the wireless carriers and Plaintiffs does not satisfy the test of reliance or intertwining anymore than did the DirecTV contract in *Murphy* or the dealer purchase agreement in *Kramer*. The wireless carrier customer agreement is merely "an artifact of the consumer-provider relationship itself." *Murphy*, 724 F.3d at 1231 n.7.

Finally, the Court notes that in applying the "intertwining" test, some courts have expressly required the claim be "'*intimately founded in and* intertwined with' the underlying agreement" before equitable estoppel can apply. *Kramer*, 705 F.3d at 1128 (emphasis added). Notably, the two main cases on which Defendants rely meet this criteria. In *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011), plaintiffs alleged that ATTM and Apple agreed, without plaintiffs' knowledge or consent, to make ATTM the exclusive provider of voice and data services for the iPhone for five years (instead of just two). When the nonsignatory Apple invoked equitable estoppel to get the benefit of an arbitration agreement in an ATTM contract, the court noted that, "as

United States District Court
For the Northern District of California

to the intertwining of the claims, Plaintiffs themselves have contended throughout this litigation that their antitrust and related claims against . . . ATTM and . . . Apple *arise from* their respective ATTM contracts." *Id.* at 1178 (emphasis added). In *Apple iPhone 3G*, plaintiffs' "core allegation [was] that the ATTM 3G network could not accommodate iPhone 3G users, and that Plaintiffs were deceived into paying higher rates for service which could not be delivered on the 3G network." *Apple iPhone 3G*, 859 F. Supp. 2d at 1096. When the nonsignatory Apple invoked equitable estoppel to get the benefit of an arbitration agreement in an ATTM contract, the court noted that plaintiffs' false advertising claims against Apple "*arise from* their service agreements with ATTM." *Id.* (emphasis added).

As noted above, the unlawful interception/transmittal claims herein against the non-carrier defendants herein did not arise from the wireless carrier customer agreements. Rather, they arise from alleged statutory violations (not breaches of contract) by CIQ and Defendants for conduct separate and distinct from the interception and transmission of information to wireless carriers. Defendants have failed to establish the "rely" and "intertwined" test applies under any of the applicable state laws.

3.    "Interdependent Misconduct" Test

Similar to above, the "interdependent misconduct" test, is framed variously from state to state. For example, a Connecticut state court has held that "equitable estoppel allows a nonsignatory to compel arbitration . . . when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Res. Servs., LLC v. Bridgeport Hous. Auth.*, No. HHDCV106020108S, 2011 Conn. Super. LEXIS 1487, at *21 (Conn. Super. Ct. June 13, 2011) (internal quotation marks omitted). In California, a nonsignatory can compel a signatory to arbitrate "'when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the 'allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer*, 705 F.3d at 1129.

United States District Court

For the Northern District of California

1    For the unlawful interception/transmittal claims, Defendants argue that equitable estoppel is

2    applicable under the "interdependent misconduct" test because Plaintiffs (signatories to the wireless

3    carrier customer agreements) have raised allegations of substantially interdependent and concerted

4    misconduct by Defendants (nonsignatories) and the wireless carriers (signatories).  According to

5    Defendants, "allegations that [CIQ and the Device] Defendants acted in concert with Plaintiffs'

6    Service Providers remain at the heart of Plaintiffs' claims."  Mot. at 32.  The Service Providers

7    required the Device Defendants to install the CIQ software on the mobile devices, specified the

8    types of data to be collected, and were the recipients of data transmitted off the mobile devices.  *See*

9    Mot. at 32.

10    Defendants acknowledge that, in the CAC, Plaintiffs have not sued the wireless carriers but

11    argue that Plaintiffs should not be able to avoid arbitration simply by taking the tactical strategy of

12    not naming the wireless carriers with whom they would clearly be required to arbitrate.  *See* Mot. at

13    36-37.  *See, e.g.*, *Morselife Found., Inc. v. Merrill Lynch Bank & Trust Co., FSB*, No. 09-81143-

14    CIV, 2010 U.S. Dist. LEXIS 83096, at *8, 10-11 (S.D. Fla. July 21, 2010) (agreeing that, by

15    dropping Merrill Lynch as the party defendant and filing an amended complaint solely against

16    Merrill Lynch Bank & Trust Co., "Plaintiff is engaging in a tactical ploy to avoid MorseLife's

17    binding agreement to arbitrate 'all controversies' with Merrill Lynch"; adding that allegedly tortious

18    acts of Merrill Lynch Bank & Trust Co. were inextricably interwoven with the conduct of employees

19    of Merrill Lynch); *see also Wells Enters., Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740, 798

20    (N.D. Ohio 2012) (predicting that the Iowa Supreme Court would recognize equitable estoppel

21    "when the relationship between the signatory and nonsignatory defendants is sufficiently close that

22    only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying

23    arbitration agreement between the signatories be avoided").  Defendants also point out that, in at

24    least some of the member cases, the plaintiffs did originally sue wireless carriers.[8]  *See, e.g.*, *Silvera*

25    *v. Carrier IQ, Inc.*, No. C-11-5821 EMC (Docket No. 1) (AT&T, Inc. and Sprint Communications

26    Co., L.P.); *Medine v. Carrier IQ, Inc.*, No. C-11-6178 EMC (Docket No. 1) (AT&T Inc.); *Pacilli v.*

27

28    [8] However, none of the *named* Plaintiffs appear to have sued any wireless carrier.  And at least the current CAC does not name any wireless carrier as a defendant.

United States District Court

For the Northern District of California

*Carrier IQ, Inc.*, No. C-12-2137 EMC (Docket No. 1) (AT&T Inc., Sprint Nextel Corp., T-Mobile USA, Inc.); *Howell v. Carrier IQ, Inc.*, No. C-12-2314 EMC (Docket No. 1) (AT&T, Inc.); *Kacmarcik v. Carrier IQ, Inc.*, No. C-12-2315 EMC (Docket No. 1) (Sprint Nextel Corp.); *Eakins v. Carrier IQ., Inc.*, No. C-12-2537 EMC (Docket No. 1) (Sprint Communications Co., L.P.); *Siegel v. Carrier IQ, Inc.*, No. C-12-2543 EMC (Docket No. 1) (Sprint-Nextel Corp.); *Cassine v. Carrier IQ, Inc.*, No. C-12-1890 EMC (Docket No. 1) (Sprint Nextel Corp. and AT&T, Inc.).

The problem here is that Plaintiffs' unlawful interception/transmission claims asserted herein are not predicated on allegations that Defendants colluded or otherwise acted in concert with the wireless carriers. Plaintiffs' claims are based on interception for and transmittal to persons or entities *other* than the wireless carriers, whether it is CIQ itself, the OEM Defendants, Google, or application vendors or developers. At the hearing, Plaintiffs emphasized that private information was being collected *beyond* the scope of what the wireless carriers wanted – such information was not needed in order for the wireless carriers to maintain service to their customers and diagnose problems in providing service. Thus, even under a broad understanding of the "interdependent misconduct" test,[9] that test is not satisfied as a factual matter here.

Moreover, at least some state courts that have adopted the "interdependent misconduct" test have clarified that the interdependent misconduct between the parties alone is not enough; that conduct must be "'founded in or intimately connected with the obligations of the underlying agreement.'" *Murphy*, 724 F.3d at 1229 (discussing California law). In other words, "'[m]ere allegations of collusive behavior between signatories and nonsignatories to a contract are not enough to compel arbitration between parties who have not agreed to arbitrate.'" *Id.* at 1231 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 92 Cal. Rptr. 3d 534, 545 (2009)). It is not so much the collusive behavior between the parties as it is "the relationship of the *claims*" that is key. *Id.* at

---

[9] At the hearing, Defendants suggested Iowa is one such state. In *Wells Enterprises, Inc. v. Olympic Ice Cream*, 903 F. Supp. 2d 740 (N.D. Ohio 2012), a federal court in Iowa predicted that the Iowa Supreme Court would recognize "two situations in which alternative estoppel may arise," one of which was "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *Id.* at 798 (internal quotation marks omitted). Defendants have not demonstrated this test is materially different from that applied in other states.

1231 (emphasis in original). "Even where a plaintiff alleges collusion, '[t]he *sine qua non* for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement containing the arbitration clause.'" *Id.* at 1232. This application of the "interdependent misconduct" test is faithful to the underlying rationale of the equitable estoppel doctrine discussed above. For the reasons discussed above in conjunction with the "rely"/"intertwined" test, there is no interdependence between Plaintiffs' statutory claims and the terms of the carriers' agreements.

Thus, Defendants have failed to establish the applicability of the interdependent misconduct.

### 4. Remaining Tests for Equitable Estoppel

Because Defendants cannot meet either the "intertwined" or "interdependent misconduct" test, the Court finds that Defendants are also incapable of meeting the various other tests under applicable state laws. As noted above, the remaining tests either require that the nonsignatory moving to compel arbitration meet *both* the "rely"/"intertwined" and "interdependent misconduct" tests or at least one of those tests. A *fortiori*, since neither element is satisfied in this case, equitable estoppel cannot be established under those state laws.

### D. Implied Warranty

Plaintiffs' implied warranty claims are asserted against the Device Defendants only and consist of two different theories:

(1)     The mobile devices are designed and marketed for communication purposes, including for the transmittal and receipt of private information, but Plaintiffs' devices are not performing as impliedly represented because they are intercepting and transmitting private information unbeknownst to them. *See, e.g.*, CAC ¶¶ 152, 167.

(2)     The mobile devices cannot fulfill their ordinary purposes because the CIQ software installed on them depletes the devices of their battery power and life. *See, e.g.*, CAC ¶¶ 155, 169.

In their papers, the Device Defendants base their invocation of arbitration solely on the "rely" or "intertwined" test. *See* Mot. at 30; Reply at 4. Accordingly, for those states that do not

allow for equitable estoppel based on the "rely" or "intertwined" test alone, there is no basis for compelling arbitration of those claims.

Even as to those states that allow for equitable estoppel based on the "rely" or "intertwined" test alone, Defendants may not compel arbitration here. According to the Device Defendants, the implied warranty claims against them are intertwined with the wireless carrier customer agreements (containing the arbitration clause) because an implied warranty of merchantability arises from a contract for sale, *see, e.g.*, Cal. Comm. Code § 2314(1) (providing that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"), and here the only contracts for sale of the mobile devices are the wireless carrier customer agreements. *See* Mot. at 30 (asserting that "Plaintiffs purchased their mobile devices *from the wireless Service Providers* and the contracts that govern Plaintiffs' purchase of the mobile device are the wireless service agreements"). The Device Defendants also argue that Plaintiffs must rely on the wireless carrier customer agreements in order to prove, *e.g.*, that they bought the bought the devices in the first place (which gives Plaintiffs standing) and that their damages are the sales prices for the devices.

But the Device Defendants fail to take into account the allegations in the CAC. Plaintiffs' implied warranty claims are not based on the wireless carrier customer agreements (indeed, Plaintiffs note in their opposition that the wireless carriers disclaimed any warranties in the agreements) but rather on written warranties provided by the Device Defendants themselves "in conjunction with the purchase [of] their mobile devices." CAC ¶ 165. The Device Defendants do not challenge that they extended warranties themselves independent of the wireless carriers.[10]

_____

[10] The Court also notes that Plaintiffs would not have to rely on the wireless carrier customer agreements to provide the contractual basis for their claim because they may rely on a contract for sale *other* than the wireless carrier customer agreements – for example, a contract sale between the Device Defendants and another person or entity in the distribution chain before the mobile devices get to the end consumer (with the end consumer being the intended third-party beneficiary). *Cf. Sheeskin v. Giant Food, Inc.*, 318 A.2d 874, 886 (Md. Ct. Spc. App. 1974) (stating that, "[w]hile privity between the bottler and the ultimate consumer is not required, a 'sale' or 'contract for sale' is required in order to make the warranty implied by § 2-314 applicable[;] [t]hus, there must be a sale or contract for sale from the bottler to some individual in the distributive chain in order for the implied warranties to arise in favor of the ultimate consumer"). While Plaintiffs have not expressly alleged that they are third-party beneficiaries of such a contract for sale, such a theory may fairly be implied; moreover, express allegations to that effect could easily be added to the operative

United States District Court

For the Northern District of California

1    While the Device Defendants suggest that Plaintiffs still have to rely on the wireless carrier

2 customer agreements to establish, *e.g.*, the fact that they purchased the mobile devices, *Murphy*

3 establishes that the mere fact that a contract proves the existence of a transaction is not enough to

4 establish equitable estoppel; there must be dependence on the contract's terms which is lacking here.

5 *See Murphy*, 724 F.3d at 1231; *Kramer*, 705 F.3d at 1131-32 (stating that, "[i]n order for Toyota's

6 equitable estoppel argument to succeed, Plaintiffs' claims themselves must intimately rely on the

7 existence of the Purchase Agreements, not merely reference them"); *see also Apple iPhone 3G*, 859

8 F. Supp. 2d at 1095 (stating that "but-for" connection was not sufficient to compel plaintiffs to

9 arbitrate).

10    Accordingly, the Court concludes that there is no basis for equitable estoppel to apply to

11 Plaintiffs' claims for breach of the implied warranty of merchantability.

### III.    CONCLUSION

13    For the foregoing reasons, the Court rejects Defendants' contention that they are entitled to

14 invoke the arbitration provisions in the wireless customer agreements. Equitable estoppel being

15 inapplicable, Defendants' motion to compel arbitration is therefore denied.

16    This order disposes of Docket No. 129.

18    IT IS SO ORDERED.

20 Dated: March 28, 2014

21 _____
EDWARD M. CHEN
22 United States District Judge

---

27 complaint. In any event, regardless of whether Plaintiffs ultimately state such a claim on the merits,
a matter that may be tested at another juncture, their implied warranty claim does not rely on the
28 carrier agreements and thus arbitration may not be compelled.

Exhibit B

**GREENBERG TRAURIG, LLP**
Ian C. Ballon (SBN 141819)
*Ballon@gtlaw.com*
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel:  650-328-8500; Fax: 650-328-8508

**GREENBERG TRAURIG, LLP**
Jeff E. Scott (SBN 126308)
*ScottJ@gtlaw.com*
Karin L. Bohmholdt (SBN 234929)
*BohmholdtK@gtlaw.com*
Lori Chang (SBN 228142)
*ChangL@gtlaw.com*
Rebekah S. Guyon (SBN 291037)
*GuyonR@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel:  310-586-7700; Fax: 310-586-7800

Attorneys for Defendant LG Electronics MobileComm U.S.A., Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE<br><br>CARRIER IQ, INC.,<br>CONSUMER PRIVACY LITIGATION<br><br>[This Document Relates to Referenced Related Cases] | Case No.:   3:12-md-02330-EMC<br><br>**REPRESENTATION STATEMENT**<br><br>Related Case Numbers:<br>CV-11 06160 (EMC ); CV 11-6199 (EMC);<br>CV-11-06641 (EMC); CV 12-1400 (EMC) |

LA131396009

The undersigned represents LG Electronics MobileComm U.S.A., Inc., defendant and appellant in this matter, and no other party.  Attached is a service list that shows all of the parties to the action below, and identifies their counsel by name, firm, address, and telephone number, where appropriate. This Statement is filed in compliance with Federal Rules of Appellate Procedure Rule 12(b), and Ninth Circuit Court of Appeals Local Rules Rule 3-2(b).

DATED:  April 28, 2014

GREENBERG TRAURIG, LLP
JEFF E. SCOTT
IAN C. BALLON
KARIN L. BOHMHOLDT
LORI CHANG
REBEKAH S. GUYON

By:  ___/s/  *Jeff E. Scott*_____
       Jeff E. Scott
Attorneys for Defendant LG Electronics MobileComm U.S.A., Inc.

## CERTIFICATE OF SERVICE

This is to certify that on April 28, 2014, a true and correct copy of the foregoing Representation

Statement, in the appeal from District Court Case No. 3:12-md-02330-EMC, was served by United

States Mail, first class, on counsel of record for all parties to the action below in this matter, as follows:

Interim Co-Lead Counsel for plaintiffs and Attorneys for plaintiffs *PATRICK KENNY, ERIC THOMAS,*
*COLLEEN FISCHER, LUKE SZULCZEWSKI,* and *BRIAN SANDSTROM*

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman
*steve@hbsslaw.com*
Robert F. Lopez
*robl@hbsslaw.com*
Thomas Eric Loeser
*toml@hbsslaw.com*
1918 Eighth Avenue, Suite 3300, Seattle, WA 98101
Tel: 206-623-7292; Fax: 206-623-0594

Shana E. Scarlett
*shanas@hbsslaw.com*
715 Hearst Avenue, Suite 202, Berkeley, CA 94710
Tel: 510-725-3000; Fax: 510-725-3001

Interim Co-Lead Counsel for plaintiffs and Attorneys for plaintiff *DANIEL PIPKIN*

PEARSON SIMON & WARSHAW LLP
Clifford H. Pearson
*cpearson@pswlaw.com*
Daniel L. Warshaw
*dwarshaw@pswlaw.com*
Bobby Pouya
*bpouya@pswlaw.com*
15165 Ventura Boulevard, Suite 400, Sherman Oaks, CA 91403
Tel: 818-788-8300; Fax: 818-788-8104

Bruce Lee Simon
*bsimon@pswlaw.com*
Aaron M. Sheanin
*asheanin@pswlaw.com*
Thomas Kay Boardman
*tboardman@pswlaw.com*
William James Newsom
*wnewsom@pswlaw.com*
44 Montgomery Street, Suite 2450, San Francisco, CA 94104
Tel: 415-433-9000; Fax: 415-433-9008

LA131396009

Attorneys for plaintiff *MATTHEW HILES*

ARIAS OZELLO GIGNAC LLP
J. Paul Gignac
*j.paul@aogllp.com*
Helen U. Kim
*helenk@kallawgroup.com*
115 South La Cumbre Lane, Suite 300, Santa Barbara, CA 93105
Tel: 805-683-7400; Fax: 805-683-7401

FOLEY BEZEK BEHLE & CURTIS LLP
Peter J. Bezek
*pbezek@foleybezek.com*
Robert A. Curtis
*rcurtis@foleybezek.com*
15 West Carrillo Street, Santa Barbara, CA 93101-8215
Tel: 805-962-9495; Fax: 805-962-0722

Attorneys for plaintiff *JENNIFER SUE PATRICK*

ROTHKEN LAW FIRM, LLP
Ira P. Rothken
*ndca@techfirm.com*
Jared Robinson Smith
*jared@techfirm.net*
3 Hamilton Landing, Suite 280, Novato, CA 94949-8248
Tel: 415 924-4250; Fax: 415-924-2905

KERSHAW CUTTER & RATINOFF, LLP
John R. Parker, Jr.
*jparker@kcrlegal.com*
401 Watt Avenue, Sacramento, CA 95864
Tel: 916-448-9800; Fax: 916-669-4499

Attorneys for plaintiff *LERON LEVY*

DOLAN LAW FIRM
Cameron Wayne Wilson
*cwilson@gaebemullen.com*
2665 South Bayshore Drive, Suite 609, Miami, FL 33133
Tel: 305-371-2692; Fax: 305-371-2691

HAGGARD PARKS HAGGARD & LEWIS
Daniel Dennis Dolan II
330 Alhambra Circle, 1st Floor, Coral Gables, FL 33134
Tel: 305-446-5700; Fax: 305- 446-1154

4

CERTIFICATE OF SERVICE

FREIDIN, DOBRINSKY, BROWN & ROSENBLUM P.A.
Manuel Dobrinsky
*MDobrinsky@fdlaw.net*
Eric Bluestein
*EBluestein@fdlaw.net*
One Biscayne Tower, Suite 3100. 2 South Biscayne Boulevard, Miami, FL 33131
Tel: 305-371-3666; Fax: 305-371-6725

LITIGATION PARTNERS, PL
Andrew Mitchell Moss
*moss@krmlegal.com*
2 South Biscayne Boulevard, Suite 3100, Miami, FL 33131
Tel: 305-371-3666

KAPLAN FOX & KILSHEIMER LLP
David A. Straite
*dstraite@kaplanfox.com*
850 Third Avenue, 14th Floor, New York, NY 10022
Tel: 212-687-1980; Fax: 212-687-7714

STEWARTS LAW US LLP
Ralph N. Sianni
*rsianni@stewartslaw.com*
1201 North Orange Street, Suite 740, Wilmington, DE 19801
Tel: 302-298-1200; Fax: 302-298-1222

ROSENBLUM & ROSENBLUM P.A.
Randy Rosenblum
*RRosenblum@fdlaw.net*
700 South Andrews Avenue, Suite 200, Fort Lauderdale, FL 33316
Tel: 954-524-9944; Fax: 954-524-6664

Attorneys for plaintiffs *CLARISSA PORTALES, MARK LANING,* and *JAMES DOUGLAS WHITE*

STRANGE & CARPENTER
Brian Russell Strange
*lacounsel@earthlink.net*
12100 Wilshire Boulevard, Suite 1900, Los Angeles, CA 90025
Tel: 310-207-5055; Fax: 310-826-3210

LAW OFFICE OF JOSEPH H. MALLEY, PC
Joseph H Malley
*malleylaw@gmail.com*
1045 North Zang Boulevard; Dallas, TX 75208
Tel: 214-943-6100

CERTIFICATE OF SERVICE

LA131396009

Case No. 3:12-md-02330-EMC

Attorneys for plaintiff *DAO PHONG*

PUNZALAN LAW, P.C.
Mark Punzalan
*mpunzalan@finkelsteinthompson.com*
600 Allerton St., Suite 201, Redwood City, CA 94063
Tel: 650-362-4150; Fax: 650-362-4151

FINKELSTEIN THOMPSON LLP
Danielle A Stoumbos
*dstoumbos@finkelsteinthompson.com*
Rosemary M. Rivas
*rrivas@finkelsteinthompson.com*
505 Montgomery Street, Suite 300, San Francisco, CA 94111
Tel: 415-398-8700; Fax: 415-398-8704

Attorneys for plaintiff *MICHAEL ALLAN*

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Michael W. Sobol
*msobol@lchb.com*
Embarcadero Center West
275 Battery Street, 29th Floor, San Francisco, CA 94111-3339
Tel: 415-956-1000; Fax: 415- 956-1008

Nicholas Diamand
*ndiamand@lchb.com*
250 Hudson St., 8th Floor, New York, NY 10013-1413
Tel: 212-355-9500

Attorneys for plaintiff *GARY CRIBBS*

CHAVEZ & GERTLER LLP
Mark Andrew Chavez
*mark@chavezgertler.com*
Nance Felice Becker
*nance@chavezgertler.com*
42 Miller Avenue, Mill Valley, CA 93941
Tel: 415-381-5599; Fax: 415-381-5572

Attorneys for plaintiff *RYAN MCKEEN*

EAGAN, DONOHUE, VAN DYKE & FALSEY, LLP
Peter M. Van Dyke
*pvd@eddf-law.com*
24 Arapahoe Road, West Hartford, CT 06107
Tel: 860-232-7200; Fax: 860-232-0214

6

CERTIFICATE OF SERVICE

Case No. 3:12-md-02330-EMC

Attorneys for plaintiffs *BOBBY CLINE* and *SHAWN GRISHAM*

CADDELL & CHAPMAN
Michael A. Caddell
*mac@caddellchapman.com*
Craig Carley Marchiando
*ccm@caddellchapman.com*
Cynthia B. Chapman
*cbc@caddellchapman.com*
1331 Lamar St., Suite 1070, Houston, TX 77010
Tel: 713-751-0400

Attorneys for defendant *CARRIER IQ, INC.*

FENWICK & WEST LLP
Rodger R. Cole
*rcole@fenwick.com*
Molly R. Melcher
*mmelcher@fenwick.com*
801 California Street, Mountain View, CA 94041
Tel: 650-988-8500; Fax: 650-938-5200

Tyler G. Newby
*tnewby@fenwick.com*
Jennifer J. Johnson
*jjjohnson@fenwick.com*
555 California Street, 12th Floor, San Francisco, CA 94104
Tel:  415-875-2300 Fax: 415- 281-1350
Attorneys for defendant *HTC AMERICA, INC.*

MUNGER, TOLLES & OLSON, LLP
Rosemarie T. Ring
*Rose.Ring@mto.com*
Jonathan H. Blavin
*Jonathan.Blavin@mto.com*
Bryan H. Heckenlively
*Bryan.Heckenlively@mto.com*
560 Mission Street
Twenty-Seventh Floor, San Francisco, CA  94105-2907
Tel: 415-512-4000; Fax:  415-512-4077

Henry Weissmann
*Henry.Weissmann@mto.com*
355 South Grand Avenue, Thirty-Fifth Floor, Los Angeles, CA  90071-1560
Tel: 213- 683-9100; Fax:  213-687-3702

Attorneys for defendant *HUAWEI DEVICES USA, INC.*

COVINGTON & BURLING LLP
Simon J. Frankel
sfrankel@cov.com
Matt Kellogg
mkellogg@cov.com
1 Front St., 35th Floor. San Francisco, CA 94111
Tel: 415-591-6000; Fax: 415-591-6091

Katherine  H. Gasztonyi
Kgasztonyi@cov.com
1201 Pennsylvania Avenue, NW, Washington D.C. 20004-2401
Tel: 202- 662-6000

Attorneys for defendant *PANTECH WIRELESS, INC.*

H.C. Park & Associates, PLC
Oluwaseun Ajayi
oajayi@park-law.com
Alan A. Wright
awright@park-law.com
Brendan O'Shea
boshea@park-law.com
1894 Preston White Drive, Reston, VA 20191
Tel:  703-288-5105; Fax: 703-288-5139

Attorneys for defendant *SAMSUNG TELECOMMUNICATIONS AMERICA, LLC*

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Lance A. Etcheverry
lance.etcheverry@skadden.com
300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071
Tel:  213-687-5000; Fax:  213- 687-5600

S. Sheryl Leung
sheryl.leung@skadden.com
525 University Ave. Suite 1400, Palo Alto, CA 94301
Tel: 650-470-4544; Fax: 650-798-6605
Attorneys for defendant *MOTOROLA MOBILITY LLC*

WINSTON & STRAWN LLP
Krista M. Enns
kenns@winston.com
101 California Street, 39th Floor, San Francisco, CA 94111
Tel: 415-591-1000; Fax: 415-591-1400

CERTIFICATE OF SERVICE
Case No. 3:12-md-02330-EMC
LA131396009

Peter Charles McCabe, III
pmccabbe@winston.com
Norman Kenneth Beck
nbeck@winston.com
Scott Tadashi Sakiyama
ssakiyama@winston.com
35 W. Wacker Drive, Chicago, IL 60601
Tel: 312- 558-5600; Fax: 312- 558-5700


DATED:  April 28, 2014          By:  ___/s/_ _Jeff E. Scott_____
                                        Jeff E. Scott

CERTIFICATE OF SERVICE

Case No. 3:12-md-02330-EMC

LA131396009