RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200


TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
JENNIFER J. JOHNSON (CSB No. 252897)
jjjohnson@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

*Attorneys for Defendant*
*Carrier IQ, Inc.*

*[Additional Counsel listed on Signature Page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Carrier IQ, Inc. Consumer Privacy Litigation,* <br><br> *[This Document Relates to All Cases]* | Case No.: 3:12-md-02330-EMC <br><br> **DEFENDANTS' CONSOLIDATED NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT** <br><br> Date:     September 18, 2014 <br> Time:     1:30 p.m. <br> Place:    Courtroom 5, 17th Floor <br> Judge:    The Hon. Edward M. Chen |

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on September 18, 2014, at 1:30 p.m., or as soon

4    thereafter as available, in the courtroom of the Honorable Edward M. Chen, located at 450

5    Golden Gate Avenue, Courtroom 5, 17th Floor, San Francisco, California 94102, Defendants HTC

6    America, Inc., HTC Corporation, Huawei Devices USA, Inc., LG Electronics MobileComm

7    U.S.A., Inc., Motorola Mobility LLC, Pantech Wireless, Inc., Samsung Electronics Co., Ltd. and

8    Samsung Telecommunications America, LLC (the "OEMs") and Carrier IQ, Inc. ("Carrier IQ")

9    (collectively, "Defendants") will and hereby do move for an order dismissing Plaintiffs' Second

10   Consolidated Amended Complaint (Dkt. No. 291) (the "SCAC" or the "Complaint").

11       All Counts of the Complaint should be dismissed with prejudice under Federal Rules of

12   Civil Procedure 12(b)(1), 12(b)(6), 9(b), and 8(a) for failure to satisfy the standing requirement of

13   Article III of the United States Constitution, failure to state a claim upon which relief may be

14   granted, failure to plead required claims with specificity, and failure to state facts sufficient to

15   show an entitlement to relief, as each purported cause of action fails to plead sufficient facts

16   constituting essential elements of that claim.  This Motion is based on this Notice of Motion and

17   Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the

18   Declaration of Tyler G. Newby, the pleadings and papers on file in this action, any other such

19   matters upon which the Court may take judicial notice, the arguments of counsel, and any other

20   matter that the Court may properly consider.

21   Dated: July 23, 2014                          FENWICK & WEST LLP

22

23                                                 By: */s/ Rodger R. Cole*
                                                       Rodger R. Cole
24
                                                   Attorneys for Defendant
25                                                 *Carrier IQ, Inc.*

26                                                 *[Additional Counsel listed on*
                                                   *Signature Page]*
27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

ISSUES TO BE DECIDED ..................................................................................................... 1

INTRODUCTION ................................................................................................................... 1

ALLEGATIONS OF THE SECOND CONSOLIDATED AMENDED COMPLAINT ............... 4

LEGAL STANDARD .............................................................................................................. 6

     A.    Fed. R. Civ. P. 12(b)(1) and Article III ................................................... 6

     B.    Fed. R. Civ. P. 12(b)(6) ......................................................................... 7

     C.    Fed. R. Civ. P. 9(b)'s Particularity Requirement ................................... 8

ARGUMENT .......................................................................................................................... 9

I.     PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER THE
     LAWS OF STATES IN WHICH THEY DO NOT RESIDE AND FOR
     PRODUCTS WITHOUT ACTIVATED CARRIER IQ SOFTWARE ........................ 9

     A.    Plaintiffs Lack Standing to Assert Claims Under the Laws of States
            in Which They Do not Reside ................................................................ 9

     B.    Plaintiffs' Claims Should be Narrowed to Their Respective States
            and Related OEM ................................................................................. 11

     C.    Plaintiffs Cribbs and Pipkin Fail to Allege any Injury ......................... 11

     D.    Plaintiffs Lack Article III Standing to Assert Their Claims Under
            California Penal Code Section 502 and State Consumer Protection
            Laws .................................................................................................... 12

            1.    Plaintiffs' "Diminished Battery Power and Life" Injury
                  Allegations Do not Establish any Injury ................................... 13

            2.    Defendants' Alleged Collection and Disclosure of Plaintiffs'
                  Personal Information Do not Establish Standing ...................... 14

            3.    Plaintiffs Cannot Tie Their Benefit of the Bargain Theory of
                  Injury to any Representations by Defendants ........................... 15

II.    PLAINTIFFS' FEDERAL WIRETAP CLAIM SHOULD BE DISMISSED
     UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ......................... 17

     A.    The Complaint Does not Allege Acquisition of the Contents of
            Electronic Communications Contemporaneous With Their
            Transmission ...................................................................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

|   |   | 1. | The Complaint Does not Allege Acquisition Contemporaneous With Transmission ................................................................. 18 |

1. The Complaint Does not Allege Acquisition Contemporaneous With Transmission ................................................................. 18

2. The Complaint Fails to State a Wiretap Claim for Alleged Acquisition of Data That Are not Contents of Communications ............. 21

B. The Complaint Fails to Allege the Carrier IQ Software Is a "Device" Under the Wiretap Act ............................................. 23

1. The Complaint Alleges the Carrier IQ Software Is a Component of a Telephone Instrument or Equipment ................................. 24

2. The Carrier IQ Software Was Embedded in the Mobile Devices Sold to Plaintiffs by Their Wireless Carriers in the Normal Course of Their Business and Used by Plaintiffs or the Wireless Carriers in the Normal Course of Their Businesses .......................... 24

C. The Complaint Fails to Plead any Unlawful Acquisition or Disclosure by the OEMs Under the Wiretap Act ........................... 26

1. The Deployment of Software to Facilitate Transmissions to Others Does not Constitute an "Acquisition" ........................... 26

2. Plaintiffs Fail to Allege an Intentional Interception by any OEM ............ 28

III. PLAINTIFFS' STATE PRIVACY LAW CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ...................................... 30

A. Plaintiffs' State Law Invasion of Privacy Claims Fail With Plaintiffs' Federal Wiretap Act Claim .................................... 30

B. Plaintiff Sandstrom Fails to State a Claim Under the Washington Privacy Act ..................................................................... 32

C. Plaintiff Szulcewski and Plaintiff Cline Fail to State Claims Under Illinois and Michigan's Eavesdropping Statutes ....................... 33

D. The Complaint Fails to Plead a Claim Under the California Comprehensive Data and Fraud Act ..................................... 35

1. Plaintiffs Fail to Allege the Provision of the CCDAFA They Claim Defendants Violated ................................................. 35

2. Plaintiffs Do not Allege Circumvention of any Technical or Code-Based Measure ....................................................... 36

IV. PLAINTIFFS' STATE CONSUMER PROTECTION ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM ........................................................... 37

A. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.* ............................................................ 37

1. Plaintiffs Do not Satisfy Rule 9(b) or Otherwise Adequately State a Claim That Defendants' Actions Were Fraudulent ............ 37

2.       Plaintiffs Fail to Sufficiently Allege Defendants Engaged in Unlawful Conduct ........................................................................... 39

3.       Plaintiffs Do not Adequately Allege Defendants' Conduct Was Unfair .......................................................................................... 40

B.      Connecticut Unlawful Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et. seq.* ....................................................................... 41

C.      Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et. seq.* .................................................................. 43

D.      Maryland Consumer Protection Act ("MCPA"), Md. Code Com. L. § 13-101, *et. seq.* ................................................................................. 44

E.      Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et. seq.* and New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:2, *et. seq.* ............................................................................ 45

1.       Plaintiff Cline Fails to Allege an Actionable Omission Under the Michigan Consumer Protection Act .................................... 45

2.       Plaintiff Cline Fails to Meet the New Hampshire Consumer Protection Act's Territoriality Requirement ............................... 47

F.      Texas Deceptive Trade Practices Act, Texas. Bus. & Prof. Code § 17.41, *et. seq.* ..................................................................................... 48

1.       Plaintiffs Fail to Allege That Defendants' Conduct was a Producing Cause of anyActual Damages .................................... 48

2.       Plaintiffs Fail to Allege a Cause Of Action Under the DTPA's Categories of Actionable Conduct ........................................... 49

G.      Washington Consumer Protection Act, Wash. Rev. Code 19.86.010, *et seq.*, ("WCPA") .................................................................................. 51

V.       THE COMPLAINT FAILS TO STATE CLAIMS AGAINST THE OEMS FOR BREACH OF IMPLIED WARRANTY .................................................. 52

A.      Plaintiffs Failed to Allege Pre-Suit Notice as Required Under the Laws of California, Maryland, Michigan, New Hampshire, Texas, and Washington ........................................................................................ 52

B.      Plaintiffs' Breach of Implied Warranty Claims Fail Because They Do not Adequately Allege Their Mobile Devices Were Unmerchantable ........................................................................................ 54

C.      Plaintiffs Claims Under California Commercial Code Section 2314 Fail Because the SCAC Does not Allege Plaintiffs Were in Vertical Privity With Defendants ......................................................................... 56

D.      Claims Under the Song-Beverly Act Fail Because the SCAC Does not Allege any Plaintiffs Purchased Their Mobile Devices in California ................................................................................................... 58

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

VI.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
       MAGNUSON-MOSS WARRANTY ACT ........................................................................ 59

VII.   CONCLUSION ............................................................................................................ 59

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Suzuki Motor Corp. v. Superior Court,*
  37 Cal. App. 4th 1291 (1995) ...................................................................................56

*Amstadt v. U.S. Brass Corp.,*
  919 S.W.2d 644 (Tex. 1996)................................................................................48, 49

*Anunziato v. eMachines, Inc.,*
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) .................................................................59

*Apache Transp., Inc. v. Texas Am. Express, Inc.,*
  No. 05-94-01176-CV, 1995 WL 155212 (Tex. Ct. App. Apr. 4, 1995)
  ....................................................................................................................................49

*Armstrong v. So. Bell Te. & Tel. Co.,*
  366 So.2d 88, 89 (Fla. Dist. Ct. App. 1979) ........................................................31

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................27

*Baba v. Hewlett-Packard Co.,*
  No. 09-5946, 2010 WL 2486353 (N.D. Cal. June 16, 2010)............................39, 41

*BAE Sys. Info. & Elecs. Sys. Integration Inc. v. SpaceKey Components, Inc.,*
  No. 10-CV-370-LM, 2011 WL 1705592 (D.N.H. May 4, 2011) ...........................47

*Bailey v. Bailey,*
  No. 07-11672, 2008 WL 324156 (E.D. Mich. Feb. 6, 2008)................................34

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007); *cf. Orchard Supply Hardware LLC v.*
  *Home Depot USA, Inc.*, 939 F.Supp.2d 1002 (N.D. Cal. 2013)...........................8, 27

*Berg v. Byrd,*
  124 Md. App. 208 (1992)........................................................................................44

*Betskoff v. Bank of Am., N.A.,*
  No. CCB-12-1998, 2012 WL 4960099 (D. Md. Oct. 15, 2012) ...........................44

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009).................................................................................9, 55

*Bohach v. City of Reno,*
  932 F. Supp. 1232 (D. Nev. 1996) .........................................................................27

*Bradford v. Vento,*
  48 S.W.3d 749 (Tex. 2001) ....................................................................................50

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*Brothers v. Hewlett-Packard Co.*,
  No. C-06-02254 RMW, 2006 WL 3093685
  (N.D. Cal. Oct. 31, 2006) (Whyte, J.) .................................................................10, 35

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007) ..............................................................18, 19, 20

*Butera & Andrews v. Int'l Bus. Machs. Corp.*,
  456 F. Supp. 2d 104 (D.D.C. 2006) .................................................................................28

*Castle v. Capital One, N.A.*,
  No. WMN-13-1830, 2014 WL 176790 (D. Md. Jan. 15, 2014) ........................................44, 45

*Chastain v. Koonce*,
  700 S.W.2d 579 (Tex. 1985)..............................................................................................50

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ........................................................................................3, 7, 15

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008)........................................................................................56, 59

*Cousineau v. Microsoft Corp.*,
  No. 11-1438, 2012 WL 10182645 (W.D. Wash. Jun. 22, 2012) ........................................33, 51

*Crowley v. CyberSource Corp.*,
  166 F. Supp. 2d 1263 (N.D. Cal. 2001) ..............................................................21, 28

*Cullen*,
  No. 5:11-CV-01199-EJD, 2013 WL 140103, at *4
  (N.D. Cal. Jan. 10, 2013) ("*Cullen II*")..............................................................................38

*Cullen v. Netflix, Inc.*,
  880 F. Supp. 2d 1017 (N.D. Cal. 2012) ("*Cullen I*") .............................................8, 38, 40, 41

*Deal v. Spears*,
  980 F.2d 1153 (8th Cir. 1992)..........................................................................................24

*Di Teresi v. Stamford Health System, Inc.*,
  142 Conn. App. 72 (2013) ..............................................................................................42

*Donohue v. Apple, Inc.*,
  871 F. Supp. 2d 913 (N.D. Cal. 2012) .............................................................10, 37, 39, 52

*Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*,
  64 Conn. App. 417 (2001) ..............................................................................................42

*Easter v. Am. W. Fin.*,
  381 F.3d 948 (9th Cir. 2004)........................................................................................6, 9, 10, 11

*Edwards v. First Am. Corp.*,
  610 F.3d 514 (9th Cir. 2010)..............................................................................................7

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. CV 11-9405 CAS, 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ................................38, 39

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................................58

*Exec. Sec. Mgmt., Inc. v. Dahl*,
   830 F. Supp. 2d 883 (C.D. Cal. 2011) ..............................................................19, 20

*Facebook, Inc. v. Power Ventures, Inc.*,
   No. 08-5780, 2010 WL 3291750 (N.D. Cal. July 20, 2010)...................................36

*Freeman v. DirecTV, Inc.*,
   457 F.3d 1001 (9th Cir. 2006)................................................................................28

*Frias v. Asset Foreclosures Servs., Inc.*,
   957 F. Supp. 2d 1264 (W.D. Wash. 2013) ............................................................51

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ................................................................................................7

*Garback v. Lossing*,
   No. 09-cv-12407, 2010 WL 3733971 (E.D. Mich. Sept. 20, 2010)........................21

*Gen. Motors Corp. v. Brewer*,
   966 S.W.2d 56 (Tex. 1998).....................................................................................56

*Gens v. Wachovia Mortg. Corp.*,
   No. 10-CV-01073-LHK, 2011 WL 1791601 (N.D. Cal. May 10, 2011) ................11

*Global Policy Partners, LLC v. Yessin*,
   686 F. Supp. 2d 631 (E.D. Va. 2009).....................................................................21

*Gorman v. Am. Honda Motor Co.*,
   302 Mich.App. 113 (2013)......................................................................................53

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) .................................................................................................6

*Griffith v. Centex Real Estate Corp.*,
   93 Wash. App. 202 (1998)......................................................................................52

*Hall v. EarthLink Network, Inc.*,
   396 F.3d 500 (2d Cir. 2005)...................................................................................26

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wash.2d 778, 719 P.2d 531 (1986)..................................................................51

*Haskins v. Symantec Corp.*,
   No. 13-CV-01834-JST, 2014 WL2450996
   (N.D. Cal. June 2, 2014) ........................................................................................38

*Hendricks v. DSW Shoe Warehouse, Inc.*,
   444 F. Supp. 2d 775 (W.D. Mich. 2006) ...............................................................46

*Hernandez v. Path, Inc.*,
   No. 12-cv-01515-YGR, 2012 WL 5194120
   (N.D. Cal. Oct. 19, 2012)..........................................................................13, 14, 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' MOT. TO DISMISS SECOND
CONSOLIDATED AMENDED COMPLAINT

vii

CASE NO. 3:12-MD-02330-EMC

*Hertzog v. WEBTV Networks, Inc.*,
   112 Wash. App. 1043 (2002) ...............................................................................56

*Hodges v. Apple, Inc.*,
   No. 12-cv-01128-WHO, 2013 WL 6698762
   (N.D. Cal. Dec. 19, 2013) ..............................................................................40, 41

*Hooksett Sch. Dist. v. W.R. Grace & Co.*,
   617 F. Supp. 126 (D.N.H. 1984) .........................................................................53

*Hord v. Envt. Research Inst.*,
   617 N.W. 2d 543 (Mich. 2000) ...........................................................................46

*In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*,
   No. 09 MDL 2007-GW PJWX, 2009 WL 9502003
   (C.D. Cal. July 6, 2009) ................................................................................9, 10

*In re Apple AT&T Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) ...............................................................10

*In re Application of U.S. for an Order Directing a Provider of
   Elec. Commc'n Serv. to Disclose Records to Gov't*,
   620 F.3d 304 (3d Cir. 2010) ................................................................................22

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
   Nos. 2:11-ML-02265-MRP, 2013 WL 5614294
   (C.D. Cal. Sept. 30, 2013) ...................................................................................12

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................................9

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) .................................................................36

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ...............................................................10

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005) ......................................................................11

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994)................................................................................38

*In re Google Android Consumer Privacy Litig.*,
   No. 11-MD-02264 JSW, 2013 WL 1283236
   (N.D. Cal. March 26, 2013) ................................................................14, 16, 36

*In re Google Inc., Cookie Placement Consumer Privacy Litig.*,
   MDL Civ. No. 12–2358, 2013 WL 5582866
   (D. Del. Oct. 9, 2013)..........................................................................................23

*In re Google, Inc. Privacy Policy Litig.*,
   No. C-12-01382-PSG, 2013 WL 6248499
   (N.D. Cal. Dec. 3, 2013) ..........................................................................7, 15, 30

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*In re Google Phone Litig.*,
   No. 10-cv-01177-EJD, 2012 WL 3155571
   (N.D. Cal. Aug. 2, 2012).................................................................55, 58

*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...........................................10

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ..............................................10

*In re Information Mgmt. Servs., Inc. Derivative Litig.*,
   81 A.3d 278 (Del. Ch. 2013).............................................................32

*In re iPhone 4S Consumer Litig.*,
   No. C 12-1127 CW, 2013 WL 3829653
   (N.D. Cal. July 23, 2013) ............................................................54, 55

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................22

*In re iPhone Application Litig.*,
   No. 11-2250, 2011 WL 4403963
   (N.D. Cal. Sept. 20, 2011) ................................................................36

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ......................................14, 15

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
   MDL No. 08-1904, 2009 WL 294353
   (D. Minn. Feb. 5, 2009) ....................................................................12

*In re Packaged Ice Antitrust Litig.*,
   779 F. Supp. 2d 642 (E.D. Mich. 2011)............................................39

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003) .................................................................29

*In re Pharmatrak, Inc. Privacy Litig.*,
   292 F. Supp. 2d 263 (D. Mass. 2003) ...............................................29

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection
   HDTV Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) .............................................59

*In re Sony PS3 Other OS Litig.*,
   No. C 10-1811 RS, 2011 WL 672637 (N.D. Cal. Feb. 17, 2011)..........57

*In re Toys R Us, Inc., Privacy Litig.*,
   2001 WL 34517252 (N.D. Cal. Oct. 9, 2001).....................................28

*In re Zynga Privacy Litig.*,
   750 F.3d 1098 (9th Cir. 2014)..............................................21, 22, 23

*Innovative Ventures, LLC v. N.V.E., Inc.,*
   747 F. Supp. 2d 853 (E.D. Mich. 2010),
   *aff'd in part and rev'd on other grounds,* 694 F.3d 723 (6th Cir. 2012) ................................45

*Johnson v. Capital Offset Co., Inc.,*
   No. 11-CV-459-JD, 2013 WL 5406619 (D.N.H. Sept. 25, 2013) ...........................................47

*K&M Joint Venture v. Smith Int'l, Inc.,*
   669 F.2d 1106 (6th Cir. 1982).................................................................................................53

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)...................................................................................8, 9, 37, 38

*Khoury v. Maly's of California, Inc.,*
   14 Cal. App. 4th 612 (1993) ....................................................................................................35

*Kirch v. Embarq Mgmt. Co.,*
   No. 10-2047-JAR, 2011 WL 3651359 (D. Kan. Aug. 19, 2011),
   *aff'd,* 702 F.3d 1245 (10th Cir. 2012). ..............................................................................26, 28

*Konop v. Hawaiian Airlines, Inc.,*
   302 F.3d 868 (9th Cir. 2002)............................................................................................. *passim*

*Krottner v. Starbucks Corp.,*
   628 F.3d 1139 (9th Cir. 2010)...................................................................................................7

*La Mar v. H&B Novelty & Loan Co.,*
   489 F.2d 461 (9th Cir. 1973)...................................................................................................11

*Lee v. Gen. Motors Corp.,*
   950 F. Supp. 170 (S.D. Miss. 1996).........................................................................................55

*Lewis v. Casey,*
   518 U.S. 343 (1996)...................................................................................................................9

*Lintz v. Bank of Am., N.A.,*
   No. 5:13-cv-01757-EJD, 2013 WL 5423873
   (N.D. Cal. Sept. 27, 2013)........................................................................................................57

*Lloyd v. Gen. Motors Corp.,*
   575 F. Supp. 2d 714 (D. Md. 2008) .........................................................................................53

*Loucks v. Ill. Inst. of Tech.,*
   No. 12 C 4148, 2012 WL 5921147 (N.D. Ill. Nov. 20, 2012) .................................................29

*Low v. Linkedin Corp.,*
   No. 11-cv-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)...................................14

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)...................................................................................................................7

*M&D, Inc. v. McConkey,*
   585 N.W.2d 33 (1998) ..............................................................................................................46

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*MacDonald v. Thomas M. Cooley Law Sch.*,
    724 F.3d 654 (6th Cir. 2013)......................................................................................46

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) .......................................................................38

*Martin v. Home Depot USA, Inc.*,
    369 F. Supp. 2d 887 (W.D. Tex. 2005).......................................................................53

*Massaro v. Allingtown Fire Dist.*,
    No. 3:02cv537, 2003 WL 23511732 (D. Conn. May 30, 2003) ..............................31

*Meyer v. State*,
    78 S.W.3d 505 (Tex. Ct. App. 2002) ........................................................................32

*Miller v. Cont'l Airlines, Inc.*,
    260 F. Supp. 2d 931 (N.D. Cal. 2003) .........................................................................8

*Minotty v. Baudo*,
    42 So.3d 824 (Fla. Dist. Ct. App. 2010) .............................................................31, 32

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
    906 F. Supp. 2d 1017 (C.D. Cal. 2012) ....................................................................19

*Mitchell v. Mitchell*,
    No. Civ. 07-0934-PHX-SMM, 2007 WL 2774460
    (D. Ariz. Sept. 24, 2007 ...........................................................................................31

*Montgomery v. Kraft Foods Global, Inc.*,
    No. 1:12-CV-00149, 2012 WL 6084167
    (W.D. Mich. Dec. 6, 2012) .......................................................................................55

*Mueller Co. v. U.S. Pipe & Foundry Co.*,
    No. Civ. 03-170-JD, 2003 WL 22272135
    (D.N.H. Oct. 2, 2003)...........................................................................................47, 48

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ....................................................................................................7

*Opperman v. Path, Inc.*,
    No. 13-CV-00453-JST, 2014 WL 1973378
    (N.D. Cal. May 14, 2014) ................................................................................ *passim*

*Paramount Farms, Int'l LLC v. Ventilex B.V.*,
    500 F. App'x. 586 (9th Cir. 2012) .............................................................................57

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2014) ..........................................................10

*Parola v. Citibank (South Dakota) N.A.*,
    894 F. Supp. 2d 188 (D. Conn. 2012) .......................................................................41

*Patel v. Holiday Hosp. Franchising, Inc.*
    172 F. Supp. 2d 821 (N.D. Tex. 2001)......................................................................39

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' MOT. TO DISMISS SECOND
CONSOLIDATED AMENDED COMPLAINT

xi

CASE NO. 3:12-MD-02330-EMC

*People v. Clark,*
    6 N.E. 3d 154 (Ill. 2014) ............................................................................................... 33

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    494 F.3d 788 (9th Cir. 2007) ...................................................................................... 8, 21

*Perkins v. LinkedIn Corp.,*
    No. 13-CV-04303-LHK, 2014 WL 2751053
    (N.D. Cal. June 12, 2014) ............................................................................................. 37

*Pirozzi v. Apple Inc.,*
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ............................................................... 8, 15, 16

*Postier v. Louisiana-Pacific Corp.,*
    No. C-09-3290-JCS, 2009 WL 3320470 (N.D. Cal. Oct. 13, 2009) .............................. 57

*Precourt v. Fairbank Reconstr. Corp.,*
    856 F. Supp. 2d 327 (D.N.H. 2012) ......................................................................... 47, 48

*Putnam Bank v. Ikon Office Solutions, Inc.,*
    No. 3:10-cv-1067, 2011 WL 2633658 (D. Conn. July 5, 2011) .................................... 42

*QSGI, Inc. v. IBM Global Fin.,*
    No. 11-80880-CIV, 2012 WL 1150402 (S.D. Fla. Mar. 14, 2012) ............................... 43

*Quon v. Arch Wireless Operating Co., Inc.,*
    445 F. Supp. 2d 1116 (C.D. Cal. 2006), *aff'd in part and*
    *rev'd in part on other grounds,* 529 F.3d 892 (9th Cir. 2008),
    *rev'd on other grounds sub. nom Ontario v. Quon,* 130 S. Ct. 2619 (2010) ............. 19

*Reed v. Wells Fargo Bank,*
    2012 WL 2061623 (N.D. Cal. June 7, 2012) ................................................................ 57

*Sams v. Yahoo!, Inc.,*
    No. 10-5897, 2011 WL 1884633 (N.D. Cal. May 18, 2011),
    *aff'd,* 713 F.3d 1175 (9th Cir. 2013) ........................................................................... 23

*Sanders v. Robert Bosch Corp.,*
    38 F.3d 736 (4th Cir. 1994) ..................................................................................... 25, 29

*Scott v. Pasadena Unified Sch. Dist.,*
    306 F.3d 646 (9th Cir. 2002) .......................................................................................... 7

*Simpson v. Standard Container Co.,*
    527 A.2d 1337 (Md. Ct. Spec. App. 1987) .................................................................... 57

*SmileCare Dental Grp. v. Delta Dental Plan, Inc.,*
    88 F.3d 780 (9th Cir. 1996) ............................................................................................. 8

*Soares v. Lorono,*
    No. 12-cv-05979-WHO, 2014 WL 723645 (N.D. Cal. Feb. 25, 2014) .......................... 60

*State v. House,*
    302 Wis. 2d 1(Wis. 2007) .............................................................................................. 32

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*State v. Roden*,
    179 Wash.2d 893 (Wash. 2014) ..................................................................................33

*State v. Spencer*,
    737 N.W.2d 124 (Iowa 2007) ....................................................................................32

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ......................................................................................................6

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
    36 F.3d 457 (5th Cir. 1994) .......................................................................................18

*Strauss v. Ford Motor Co.*,
    439 F. Supp. 2d 680 (N.D. Tex. 2006) ...........................................................51, 52, 55, 57

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    No. C-13-1803 EMC, 2014 WL 0148710 (N.D. Cal. Mar. 14, 2014) ...............58, 60

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ......................................................................19, 20, 21

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486
    (N.D. Cal. Oct. 13, 2009) ...........................................................................................57

*Tomek v. Apple, Inc.*,
    No 2:11-cv-02700-MCD-DAD, 2013 WL 394723
    (E.D. Cal. Jan. 30, 2013) .............................................................................40, 57, 58

*U.S. Tire–Tech. v. Boeran, B.V.*,
    110 S.W.3d 194 (Tex. Ct. App. 2003) .......................................................................54

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) .....................................................................................22

*United States v. Murdock*,
    63 F.3d 1391 (6th Cir. 1995) .....................................................................................25

*United States v. Reed*,
    575 F.3d 900 (9th Cir. 2009) ...............................................................................22, 23

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) .................................................................................19

*United States v. Townsend*,
    987 F.2d 927 (2d Cir. 1993) ......................................................................................29

*Vess v. Ciba-Geigy Corp. USA*,
    317 F. 3d 1097 (9th Cir. 2003) ..................................................................................40

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012) .................................................................................44

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .....................................................................................6

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' MOT. TO DISMISS SECOND
CONSOLIDATED AMENDED COMPLAINT

xiii

CASE NO. 3:12-MD-02330-EMC

*Wilcox Indus. Corp. v. Hansen*,
   870 F. Supp. 2d 296 (D.N.H. 2012) ...................................................................48

*Willard v. Park Indus., Inc.*,
   69 F. Supp. 2d 268 (D.N.H. 1999) ....................................................................57

*Williams v. Poulos*,
   11 F.3d 271 (1st Cir. 1993) ...............................................................................25

*Williamson v. Apple, Inc.*,
   No. 5:11-cv-00377 EJD, 2012 WL 3835104
   (N.D. Cal. Sept. 4, 2012) ..................................................................................56

*Wood v. Motorola Mobility, Inc.*,
   No. C-11-04409-YGR, 2012 WL 892166
   (N.D. Cal. Mar. 14, 2012) .................................................................................17

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*,
   No. 04cv1136 DMS (BLM), 2006 WL 6667002
   (S.D. Cal. Jan. 5, 2006) .....................................................................................12

*Yunker v. Pandora Media, Inc.*,
   No. 11-cv-03113-JSW, 2013 WL 1282980
   (N.D. Cal. Mar. 26, 2013) .................................................................................15

*Zine v. Chrysler Corp.*,
   236 Mich.App. 261 (1999) ................................................................................47

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .............................................................................5

**STATUTES**

18 U.S.C. § 2510 ......................................................................................18, 22, 24

18 U.S.C. § 2511(1) .......................................................................................*passim*

Ariz. Rev. Stat. § 12-731 .........................................................................................33

Cal. Bus. & Prof. Code § 17200 .............................................................................38

Cal. Civ. Code § 1791.1(a) ......................................................................................55

Cal. Civ. Code § 1798.80 ...................................................................................41, 42

Cal. Com. Code § 2314 ......................................................................................58, 59

Cal. Com. Code § 2134(2)(c) ..................................................................................55

Cal. Com. Code § 2607(3)(A) .................................................................................54

Cal. Penal Code § 502 .....................................................................................*passim*

Cal. Penal Code § 632.7 ...........................................................................................41

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Conn. Gen. Stat. Ann. § 54-41r ................................................................................33

Conn. Gen. Stat. § 42-110a (Connecticut Unlawful Trade Practices Act), *et. seq.* .......................42

Consumer Protection Act ................................................................................48

DTPA ...............................................................................................49, 50, 51, 52

ECPA ............................................................................................... *passim*

Section 2510(5)(a) of the Electronic Communications Privacy Act ................................18

Fla. Stat. § 501.201, *et. seq.* (Florida Deceptive and Unfair Trade Practices Act) .......................44

Fla. Stat. § 934.10 ...........................................................................................32

Ill. Comp. Stat. Ch. 720 § 5/14 .....................................................................33, 34

Iowa Code § 808B.8 ........................................................................................33

Magnuson-Moss Warranty Act ................................................................... *passim*

Md. Code Com. L. § 13-101, *et. seq.* ...............................................................45

Md. Code Ann. Com. Law §§ 2-314(2)(a) & (c) .................................................55

Md. Com. Code § 2-607(3)(a) ..........................................................................53

Mich. Comp. Laws. § 440.2314 .......................................................................55

Mich. Comp. Laws § 440.2607(3)(a) ...............................................................53

Mich. Comp. Laws § 445.901, *et. seq.* ........................................................46, 47

Mich. Comp. Laws § 445.903 ......................................................................46, 47

Michigan Comp. Laws §§ 750.539 ...........................................................34, 35, 36

Mich. Comp. Law § 750.540 ............................................................................35

Miss. Code Ann. § 75-2-314(2)(a) & (c) ...........................................................55

N.H. Rev. Stat. § 358-A:2 ........................................................................46, 48, 49

N.H. Rev. Stat. § 382-A:607(3)(a) ....................................................................53

N.H. Rev. Stat. § 382-A:2-314 .........................................................................55

N.H. Rev. Stat. § 570-A:11 ..............................................................................33

Wash. Rev. Code. 62A.2-607(3)(a) ..................................................................54

Tex. Bus. & Com. Code § 2.314(b)(3) ..............................................................55

Tex. Bus. & Com. Code § 2.607(c)(1) ..............................................................53

Tex. Bus. & Com. Code § 17.45(5) ...................................................................51

Tex. Bus. & Com. Code§ 17.50(a) ..................................................................50

Tex. Code Crim. Proc. Art. 18.20, Sec. 16(a) ..................................................33

Texas. Bus. & Prof. Code § 17.41, *et. seq.* ...............................................46, 49

Wash. Rev. Code. § 9.73.030(1) ......................................................................34

Wash. Rev. Code § 9.73.060 ...........................................................................34

Wash. Rev. Code § 62A.2-314(2)(c) ................................................................55

Wash. Rev. Code § 19.86.010, *et seq.* ............................................................52

Wisc. Stat. Ann. § 968.31 (2m) .......................................................................33

**RULES**

Fed. R. Civ. P. 8 ..............................................................................................37

Fed. R. Civ. P. 9(b) ...................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1)...............................................................................6, 13

Fed. R. Civ. P. 12(b)(6)..................................................................8, 17, 18, 38

**OTHER AUTHORITIES**

*American Heritage College Dictionary* (3d ed. 1993) ...................................24

S. Rep. 99-541, at 23 (1986) ..........................................................................29

U.S. Constitution, Art. III ........................................................................ *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ISSUES TO BE DECIDED**

1.      Whether Plaintiffs have alleged an "injury in fact" sufficient to establish standing under Article III of the U.S. Constitution for their state law claims.

2.      Whether the Second Consolidated Amended Complaint ("SCAC" or "Complaint") states a claim upon which relief may be granted.

**INTRODUCTION**

Carrier IQ designs software to help its wireless phone carrier customers ("Carriers") identify and correct problems with how mobile devices operate on their networks.  The software is integrated by the Original Equipment Manufacturer Defendants ("OEMs") —HTC America, Inc., HTC Corporation (collectively referred to as "HTC"), Huawei Devices USA, Inc., LG Electronics MobileComm U.S.A, Inc., Motorola Mobility LLC, Pantech Wireless, Inc., Samsung Electronics Co., Ltd. and Samsung Telecommunications America, LLC (collectively referred to as "Samsung")— onto mobile phones during the manufacturing process, which ultimately have been sold to customers of certain Carriers, namely AT&T, Sprint and Cricket.  In their Complaint, Plaintiffs acknowledge that the Carriers license and use Carrier IQ's software for network diagnostic purposes and do not allege that they use the software for any nefarious or unlawful purpose.  Instead, Plaintiffs assert that the Carrier IQ software is *capable* of being misused for improper collection of private data, and in the instance of one OEM's devices, contributed to the inadvertent printing of user data to a system log.

Plaintiffs had over one year to take "arbitration related discovery."  During that period, the Court ordered and each Defendant provided discovery into the categories of data sent (*e.g.* SMS text messages, URLs, user names, passwords, etc.) from Plaintiffs' phones by the Carrier IQ software, the identities of the recipients of that data, and the types of information—known as "metrics"— contained in that data.  (Dkt. 194, 9:20-25.)  Even after that substantial discovery, Plaintiffs are able to allege a transmission of data to parties other than the Carriers in only one instance.  As the SCAC implicitly acknowledges, however, the Federal Trade Commission thoroughly investigated that one issue and concluded it was a mistake resulting from a coding

1   error.  Nevertheless, based on the singular factual allegation of one mistake and scores of legal

2   conclusions, Plaintiffs assert claims under the Federal Wiretap Act, the Magnuson-Moss

3   Warranty Act  and ninety-one different state laws.  Each of these claims should be dismissed for

4   the reasons set forth below.

5          First, Plaintiffs do not allege Defendants "intercepted" the "contents" of electronic

6   communications as required by the Wiretap Act and as those terms have been interpreted by the

7   Ninth Circuit.  Although Plaintiffs repeat "intercept" more than 100 times, the Complaint is

8   devoid of any factual allegations that the Carrier IQ software acquired the contents of Plaintiffs'

9   electronic communications contemporaneously with their transmission—that is, while the

10  communications were "in flight" from sender to recipient.  Instead, Plaintiffs allege only that the

11  Carrier IQ software accessed Plaintiffs' text messages, location information, website URLs and

12  other data before the data was transmitted from Plaintiffs' devices or after they had been received

13  by the device.  Under well-established Ninth Circuit precedent, those allegations do not plead an

14  interception under the Wiretap Act, which excludes from its protections communications in

15  temporary electronic storage, no matter how ephemeral the storage may be.  *See Konop v.*

16  *Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-78 (9th Cir. 2002).  The Wiretap Act claim should

17  therefore be dismissed in its entirety.

18         Plaintiffs also improperly attempt to sweep within their Wiretap Act claim numerous

19  categories of data, such as location data, phone numbers dialed and received, and website URL

20  addresses that courts repeatedly have held are not the "contents" of electronic communications.

21  Because the Wiretap Act applies only to the substance, purport or meaning of communications,

22  Plaintiffs' Wiretap Act claim is impermissibly broad.

23         Finally, Plaintiffs fail to state a claim under the Wiretap Act against the OEMs for the

24  independent reason that they do not allege any OEM intentionally acquired Plaintiffs' electronic

25  communications.  At most, Plaintiffs allege the OEMs installed Carrier IQ software at the time of

26  manufacture on the mobile phones Plaintiffs ultimately bought.  The Complaint does not allege

27  the OEMs had any further involvement in the administration or operation of the software after the

28  manufacturing process.  As such, the Complaint fails to allege the OEMs "acquired" the contents

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

of Plaintiffs' electronic communication as required by the Wiretap Act.  To the extent Plaintiffs focus on the inadvertent error in the debug code that may have caused the transmission of some data to HTC, they cannot allege that was an *intentional* acquisition.

Plaintiffs' state law claims fare no better.  As an initial matter, Plaintiffs have not alleged any basis for standing to bring claims under the laws of the nearly three dozen states where no Plaintiff resides.  Accordingly, those claims should be dismissed with prejudice.

With respect to the states where at least one Plaintiff does reside, Plaintiffs have not alleged a factual basis to establish standing under Article III of the United States Constitution or the myriad state consumer protection statutes they invoke.  Instead, Plaintiffs follow the well-worn path taken in other privacy cases by alleging that the Carrier IQ software caused their devices to drain their batteries more quickly, that the security of Plaintiffs' personal information was put at risk, and that they were denied the benefit of the bargain they entered when they bought their devices.  But Plaintiffs' allegations under each of these theories of standing are vague and hypothetical.  First, no Plaintiff alleges any facts supporting the assertion that his or her phone suffered poor performance caused by the Carrier IQ software's alleged collection of their personal information for parties other than the Carriers.  Indeed, because Plaintiffs allege that the Carrier IQ software was integrated onto the device at the time of manufacture, the only reasonable inference to be drawn is that their devices operated precisely as designed.  Second, Plaintiffs' speculation that the Carrier IQ software put them at increased risk of data or identity theft is only that—speculation.  It is well established that speculative fear about future injury is insufficient to establish Article III standing.  *See Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1147 (2013).  Finally, Plaintiffs' benefit of the bargain theory cannot establish standing because Plaintiffs do not allege any statements that formed the basis of a bargain they made with the Defendants.

Even if Plaintiffs did have standing, the Complaint fails to state a claim under the various state privacy statutes they assert.  Plaintiffs' statutory claims under state wiretap and eavesdropping laws merely restate their federal Wiretap Act claim and fail for similar reasons.  And Plaintiffs' claim under the California Computer Data Access and Fraud Act (Cal. Pen. Code

§ 502) ("CCDAFA") fails because the Complaint nowhere alleges that the Carrier IQ software circumvented any technical or code-based measures to access information on Plaintiffs' mobile phones.  To the contrary, Plaintiffs allege the opposite—that Carrier IQ software was integrated on their devices at the time of manufacture.

Plaintiffs' claims under the various state consumer protection statutes also fail because the Complaint does not allege any cognizable damage or loss caused by the Carrier IQ software, as well as for a number of other reasons applicable in various states.  In particular, for their fraud-based claims, Plaintiffs do not identify with particularity any misrepresentations by any Defendant, let alone a representation upon which Plaintiffs relied when they purchased their phones.

Finally, Plaintiffs fail to state claims against the OEMs under the various state warranty laws they assert in their fourth and fifth claims for relief.  At the outset, Plaintiffs' failure to provide the requisite pre-suit notice to the OEMs is fatal to their warranty claims under California, Maryland, Michigan, New Hampshire, Texas, and Washington law.  In addition, the warranty claims fail in every state because Plaintiffs have not alleged, nor could they, that their phones were unfit for the ordinary purpose for which smartphones are used.  That is, no Plaintiff has alleged that his or her phone did not function as a phone or wireless Internet device.  Accordingly Plaintiffs' warranty claims should be dismissed.

## ALLEGATIONS OF THE SECOND CONSOLIDATED AMENDED COMPLAINT

Carrier IQ develops software for installation on mobile phones to provide diagnostics and troubleshooting data to Carriers, which are its primary customers.  SCAC ¶¶ 26, 40, 68.  The core allegations of the Complaint are that Carrier IQ designed and developed, and that the OEMs installed and wrote code to implement the Carrier IQ software on Plaintiffs' phones, and that the software subsequently collected and transferred sensitive data off those phones.  *Id.* at ¶¶ 1-2, 27-38, 40-41, 46, 61-64.  The data allegedly at issue includes: URLs, including those containing HTTP and HTTPS query strings embedded with information such as search terms, user names, passwords, and granular, GPS-based geo-location information; GPS-based geo-location information apart from that transmitted in URLs; SMS text messages; telephone numbers dialed

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

and attached to calls received; other dialer keypad presses/keystrokes; and application purchases and uses. *Id.* at ¶¶ 1, 65, 72.

The Complaint alleges the Carrier IQ software "sees and intercepts this data as part of its calls on the operating system for so-called metrics" (*id.* at ¶ 63)—that is, it collects certain data that is on the device, rather than while it is in transmission over the air. Software "profiles" are used to instruct the Carrier IQ software to collect device metrics specified by a Carrier IQ customer—typically Carriers—and set the frequency with which the metrics should be sent to the customer. *Id.* at ¶ 66.

The Complaint further alleges that in some deployments on HTC mobile phones, copies of the data collected by Carrier IQ's software were stored in the devices' system logs. In some circumstances, these system logs allegedly were transmitted in crash reports to HTC, to Google, the developer of the Android operating system, and potentially to app developers. *Id.* at ¶¶ 71-73.

The named Plaintiffs are eighteen individuals who bought phones manufactured by the OEMs and who reside in twelve states—Arizona, California, Connecticut, Florida, Iowa, Illinois, Kentucky, Maryland, Mississippi, New Hampshire, Texas, and Wisconsin.[1] *See* Exhibit A; SCAC at ¶¶ 8-25. These Plaintiffs allege that the Carrier IQ software has collected sensitive data from their own phones and millions of other devices, without consumers' knowledge or consent. *Id.* at ¶ 51. Plaintiffs seek to represent a putative nationwide class consisting of "[a]ll persons in the United States who owned or purchased HTC, Huawei, LG, Motorola, Pantech, and Samsung mobile devices on which Carrier IQ software is or was embedded or preloaded." *Id.* at ¶ 86.

---

[1]Plaintiff Cline purports to bring claims under Michigan law, even though he now resides in New Hampshire. *See* SCAC ¶ 19 ("Plaintiff Bobby Cline resides in Seabrook, New Hampshire, but at pertinent times to this matter, he resided in Oakland County, Michigan."). Similarly, Plaintiff Sandstrom purports to bring claims under Washington law, even though he now resides in California. *See* SCAC ¶ 24 ("Plaintiff Brian Sandstrom resides in San Francisco, California, but at pertinent times to this matter, he resided in Seattle, Washington."). Under California's choice of law rules, Plaintiffs Cline and Sandstrom will bear the burden of establishing the law that applies to their claims. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (a plaintiff seeking to "invoke the law of a jurisdiction other than California . . . bears the burden of proof"). Out of an abundance of caution, Defendants have briefed Plaintiff Cline's failure to state a claim under both Michigan and New Hampshire law and Plaintiff Sandstrom's failure to state a claim under both Washington and California law. Presumably, Plaintiffs Cline and Sandstrom will clarify in the consolidated opposition which law they contend applies and why.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Fenwick & West LLP
Attorneys at Law
Mountain View

1  Plaintiffs allege that, in addition to "intercepting" and distributing data from their phones,

2  the Carrier IQ software caused "diminished battery power and life, together with diminished

3  performance due to taxation of the devices' processors and memory caused by the constant

4  operation of the Carrier IQ Software."  *Id.* at ¶¶ 96, 147, 196.  Plaintiffs allege that they would not

5  have purchased their phones had they known that the Carrier IQ software was installed on them.

6  *Id.* at ¶¶ 75-92.

7  Based on these allegations, Plaintiffs assert the following claims against Carrier IQ and

8  the OEMs: (1) Violation of the Federal Wiretap Act (18 U.S.C. § 2511(1)); (2) Violation of State

9  Privacy Acts; and (3) Violation of State Consumer Protection Acts.  Plaintiffs assert the following

10  additional claims against only the OEMs: (4) Violation of the Magnuson-Moss Warranty Act; and

11  (5) Violation of the Implied Warranty of Merchantability.

12  <center>**LEGAL STANDARD**</center>

13  **A.**   **Fed. R. Civ. P. 12(b)(1) and Article III**

14  Unless a plaintiff establishes standing under Article III of the U.S. Constitution, a federal

15  court does not have subject matter jurisdiction to hear the case.  *See Steel Co. v. Citizens for a*

16  *Better Env't*, 523 U.S. 83, 101-02 (1998) (noting that standing is a jurisdictional requirement and

17  that "[f]or a court to pronounce upon the meaning or constitutionality of a state or federal law

18  when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires").

19  Challenges to standing under Article III are properly made in a motion to dismiss for insufficient

20  subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See White v. Lee*, 227

21  F.3d 1214, 1242 (9th Cir. 2000).  Because standing is a jurisdictional issue, a district court

22  properly addresses the "issue of standing before it addresse[s] the issue of class certification."

23  *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004).In putative class actions, a named

24  plaintiff must show he or she has standing; allegations of injury to the class are insufficient.

25  *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) (instructing that "named plaintiffs who represent a

26  class must allege and show that they *personally* have been injured, not that injury has been

27  suffered by other, unidentified members of the class to which they belong and which they purport

28  to represent") (emphasis added).  "[I]f none of the named plaintiffs purporting to represent a class

DEFENDANTS' MOT. TO DISMISS SECOND
CONSOLIDATED AMENDED COMPLAINT            6            CASE NO. 3:12-MD-02330-EMC

1    establishes the requisite of a case or controversy with the defendants, none may seek relief on

2    behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494, 497-

3    98 (1974) (holding complaint failed to satisfy threshold Article III requirement to invoke the

4    powers of federal courts where none of the named plaintiffs pled sufficiently real and immediate

5    injury from the allegedly wrongful conduct).

6              To establish Article III standing, a plaintiff bears the burden of alleging that he or she has

7    suffered:  (1) an injury in fact that is concrete and particularized, as well as actual and imminent;

8    (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is

9    likely (not merely speculative) that the injury will be redressed by a favorable decision.  *See*

10   *Clapper,* 133 S. Ct. at 1147 ("[W]e have repeatedly reiterated that 'threatened injury must be

11   *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury

12   are not sufficient.'") (citation omitted) (emphasis in original); *Lujan v. Defenders of Wildlife*, 504

13   U.S. 555, 560–61 (1992); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010)

14   (Plaintiff must allege facts that, if true, would show he "is *immediately* in danger of sustaining

15   some *direct* injury.") (quoting *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir.

16   2002) (emphasis in *Scott*); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528

17   U.S. 167, 180-81 (2000).  Although a Plaintiff may satisfy Article III's standing requirement by

18   alleging violation of a statutory right, that is only the case where the statute does not require the

19   proof of loss as an element.  *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010)

20   (recognizing that standing may be established by alleging violation of statutory right, but only

21   where the statute does not require proof of damages or loss); *In re Google, Inc. Privacy Policy*

22   *Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *8 (N.D. Cal. Dec. 3, 2013) ("Although

23   Article III always requires an injury, the alleged violation of a statutory right that does not

24   otherwise require a showing of damages is an injury sufficient to establish Article III standing.").

25        **B.      Fed. R. Civ. P. 12(b)(6)**

26              Dismissal is appropriate under Rule 12(b)(6) where a plaintiff fails to assert a cognizable

27   legal theory or allege sufficient facts under a cognizable legal theory.  *See*, *e.g.*, *SmileCare Dental*

28   *Grp. v. Delta Dental Plan, Inc.*, 88 F.3d 780, 782-83 (9th Cir. 1996).  Prior to "unlocking the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

DEFENDANTS' MOT. TO DISMISS SECOND
CONSOLIDATED AMENDED COMPLAINT

7

CASE NO. 3:12-MD-02330-EMC

1   doors of discovery," the complaint must include sufficient facts from which an inference of

2   wrongdoing may be drawn—facts that suggest that the right to relief is more than conceivable,

3   but also plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *cf. Orchard*

4   *Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F.Supp.2d 1002, 1007 (N.D. Cal. 2013)

5   ("The factual allegations that are taken as true must plausibly suggest an entitlement to relief,

6   such that it is not unfair to require the opposing party to be subjected to the expense of discovery

7   and continued litigation."). Conclusory allegations are insufficient; federal pleading standards

8   "are not so liberal as to allow purely conclusory statements to suffice to state a claim that can

9   survive a motion to dismiss." *Miller v. Cont'l Airlines, Inc.*, 260 F. Supp. 2d 931, 935 (N.D. Cal.

10  2003); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007) ("[T]he court

11  need not accept conclusory allegations of law or unwarranted inferences . . . .").

12      **C.    Fed. R. Civ. P. 9(b)'s Particularity Requirement**

13          When a cause of action alleges a course of fraudulent conduct as the basis of a claim, it

14  sounds in fraud, and the complaint "as a whole must satisfy the particularity requirement of Rule

15  9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding Rule 9(b) applies

16  to California UCL claims and affirming dismissal) (citation omitted). Under Rule 9(b), a party

17  must plead the "who, what, when, where, and how" of the alleged misconduct. *Id.* at 1124-25

18  (citation omitted); *see also Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1022 (N.D. Cal. 2012)

19  (citation omitted) (complaint must allege "precisely the time, place, and nature of the misleading

20  statements, misrepresentations, and specific acts of fraud."); *Pirozzi v. Apple Inc.*, 913 F. Supp.

21  2d 840, 849 (N.D. Cal. 2012) ("Particularity under Rule 9(b) requires that the complaint allege

22  specific facts regarding the fraudulent activity, such as the time, date, place, and content of the

23  alleged fraudulent representation, how or why the representation was false or misleading, and in

24  some cases, the identity of the person engag[ing] in the fraud."). This heightened standard

25  applies to all claims sounding in fraud, regardless of whether fraud is an essential element of the

26  underlying cause of action. *Kearns*, 567 F.3d at 1124.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**ARGUMENT**

2

**I.   PLAINTIFFS LACK STANDING TO ASSERT CLAIMS UNDER THE LAWS OF STATES IN WHICH THEY DO NOT RESIDE AND FOR PRODUCTS WITHOUT ACTIVATED CARRIER IQ SOFTWARE**

3

4

**A.   Plaintiffs Lack Standing to Assert Claims Under the Laws of States in Which They Do not Reside**

5

6          The eighteen Plaintiffs reside in twelve states, but they purport to bring claims under the

7     laws of forty-seven states.  *See* SCAC ¶¶ 8-25, at 3-8 (alleging that Plaintiffs reside in Arizona,

8     California, Connecticut, Florida, Iowa, Illinois, Kentucky, Maryland, Mississippi, New

9     Hampshire, Texas, and Wisconsin).  As a matter of law, Plaintiffs lack Article III standing to

10    assert claims under the laws of the thirty-five states in which no plaintiff resides.  *Birdsong v.*

11    *Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) (explaining that, in addition to statutory

12    standing, named representatives of a putative class "must meet the stricter federal standing

13    requirements of Article III" (internal quotations omitted)); *In re Aftermarket Automotive Lighting*

14    *Prods. Antitrust Litig.*, No. 09 MDL 2007-GW PJWX, 2009 WL 9502003, at *3 (C.D. Cal. July

15    6, 2009) ("Plaintiffs also have not alleged Article III standing because no representative resides in

16    many of the states whose laws they are seeking to enforce.").  This principle reflects the Supreme

17    Court's admonition that Plaintiffs must "*allege* and show that they personally have been injured,

18    not that injury has been suffered by other, unidentified members of the class to which they belong

19    and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 347 (1996) (emphasis

20    added; internal quotations omitted); *see also Easter*, 381 F.3d at 962 (a district court properly

21    addresses the "issue of standing before it addresse[s] the issue of class certification").

22          As a result, courts in this district and in others repeatedly have made clear that "[w]here . .

23    . a representative plaintiff is lacking for a particular state, all claims based on that state's laws are

24    subject to dismissal" at the pleading stage.  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d

25    1133, 1164 (N.D. Cal. 2009) (citation omitted) (dismissing class claims under all state laws

26    except Massachusetts's, because a named plaintiff purchased a product at issue in Massachusetts).

27    Under *Lewis* and *Easter*, courts in the Ninth Circuit "routinely dismiss claims where no plaintiff

28    is alleged to reside in a state whose laws the class seeks to enforce" for lack of standing.  *See In*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  *re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 2009 WL 9502003, at *6-7

2  (dismissing class claims under the laws of twenty states in which no named plaintiff resided or

3  purchased the products at issue); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048,

4  1061 (N.D. Cal. 2014) (where California plaintiff asserted violations of the consumer protection

5  laws of all fifty states, dismissing claims under the consumer protection laws of the other states);

6  *In re Apple AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (dismissing class

7  claims under consumer protection laws of forty-two other states and the District of Columbia,

8  where named plaintiffs resided in California, New York, and Washington); *In re Ditropan XL*

9  *Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing class claims under the

10  laws of twenty-four states in which plaintiffs did not reside and did not purchase the drugs at

11  issue); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026-1027 (N.D.

12  Cal. 2007) (dismissing class claims under the laws of seven states in which no named plaintiff

13  resided).[2]

14       Therefore, the Court should dismiss Plaintiffs' claims under the laws of Alaska, Arkansas,

15  Colorado, Delaware, District of Columbia, Hawaii, Idaho, Indiana, Kansas, Louisiana, Maine,

16  Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico,

17  North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South

18  Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wyoming for

19  lack of standing.[3]

20  ───────────────────

21  [2]The only district court decisions in the Ninth Circuit that have reached a different conclusion do
    not address *Easter*, 381 F.3d at 962, which is binding precedent. *See Donohue v. Apple, Inc.*, 871

22  F. Supp. 2d 913, 922-23 (N.D. Cal. 2012) (Whyte, J.) (declining to dismiss a Washington
    plaintiff's claims under California law on conflict of law grounds, but not addressing the

23  plaintiff's standing under California law as a non-resident, and not citing *Easter*); *In re
    Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1004-05 (S.D. Cal. 2011)

24  (relying on district court opinions from the Southern District of New York, Eastern District of
    New York, and District of New Jersey, and holding that standing under the laws of states in

25  which named plaintiffs did not reside need not be addressed at the pleading stage); *but see
    Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2006 WL 3093685, at *3 (N.D. Cal.

26  Oct. 31, 2006) (Whyte, J.) (citing *Easter*, 381 F. 3d at 962) (dismissing a plaintiff's claims for
    lack of standing, because, under *Easter*, "[i]n the Ninth Circuit, the issue of standing must be
    addressed before the issue of class certification").

27  [3]If Plaintiff Cline chooses to proceed under Michigan law, the New Hampshire claims should be
    dismissed for lack of standing; if he chooses to proceed under New Hampshire law, the Michigan

28  claims should be dismissed for lack of standing. Similarly, if Plaintiff Sandstrom chooses to

**B.** **Plaintiffs' Claims Should be Narrowed to Their Respective States and Related OEM**

In addition to the outright dismissal of the claims under the laws of the states identified above, Plaintiffs' claims—to the extent they survive at all—should be narrowed. Each Plaintiff lacks standing to assert a claim against any OEM other than the one that manufactured his or her phone. *See Easter*, 381 F.3d at 962 ("a plaintiff having a cause of action against one defendant [can] not represent a class with actions against defendants who had behaved similarly but had not injured the plaintiff"); *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 464-65 (9th Cir. 1973) (stating, in context of class certification, that class action plaintiffs "are not entitled to bring a class action against defendants with whom they had no dealing"). This is so because standing is decided on a claim-by-claim basis, and, in a class action, "a named plaintiff can bring suit against a party only if the plaintiff personally suffered an injury and that injury is traceable to that party. If a plaintiff cannot trace an injury to a defendant, the plaintiff lacks standing with regard to that defendant." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 460-61 (D.N.J. 2005). Thus, for example, claims under Illinois law can be brought only against HTC, and not the other OEMs, because Plaintiff Szulczewski, who alleges he owned an HTC phone, is the only plaintiff who alleges he resides in Illinois. *See* SCAC ¶ 15.

**C.** **Plaintiffs Cribbs and Pipkin Fail to Allege any Injury**

Each of Plaintiffs Cribbs and Pipkins' claims should be dismissed because they do not allege the Carrier IQ software was activated on their Samsung devices. Instead, they make contradictory allegations that the software was not activated yet was operating on their devices. In considering a motion to dismiss, courts need not accept as true internally inconsistent allegations. *Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, No. 04cv1136 DMS (BLM), 2006 WL 6667002, at *9 (S.D. Cal. Jan. 5, 2006) (dismissing plaintiffs' group boycott claim where plaintiffs' allegation that the defendant group limited the output of DVD players to eliminate price competition was internally inconsistent with plaintiffs' allegation that DVD player prices have fallen); *see also Gens v. Wachovia Mortg. Corp.*, No. 10-CV-01073-LHK, 2011 WL

proceed under California law, the Washington claims should be dismissed for lack of standing.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1791601, at *5 (N.D. Cal. May 10, 2011) (dismissing with prejudice Plaintiff's claims where her allegations were "internally inconsistent, conclusory, and insufficient to state a claim").

Here, Plaintiffs Pipkin and Cribbs' contradictory allegations fail to support a plausible claim for relief.  Both allege they purchased Samsung Galaxy S2 Skyrocket devices.  SCAC ¶¶ 9, 17.  They also allege that "[u]pon information and belief," "the Carrier IQ Software and related implementing or porting software was installed and operating on [their] device[s], and taxing [their] device[s'] battery, processor, and memory."  *Id.*  However, these allegations are directly undermined by Plaintiffs' allegation that the Carrier IQ "software also is embedded on the . . . Samsung Skyrocket devices, ***but has not been activated*** . . . ."  SCAC ¶ 53 (emphasis added).  Because Plaintiffs Pipkin and Cribbs' purported injuries from the operation of the Carrier IQ Software are internally inconsistent with their allegation that the Carrier IQ software had not been activated on their phones, they cannot establish any injury.  Accordingly, they have failed to plead a plausible claim for relief and all their claims should be dismissed.[4]

### D.   Plaintiffs Lack Article III Standing to Assert Their Claims Under California Penal Code Section 502 and State Consumer Protection Laws

California's Computer Data Access and Fraud Act prohibits "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems" without permission  Cal. Penal Code § 502(a).  Unlike federal and certain state wiretap laws, which create rights to relief regardless of actual injury, a civil action under the CCDAFA is available only to a person "who suffers damage or loss by reason of a violation."  *Id.* § 502(e).

_____

[4]Plaintiffs Pipkin and Cribbs may argue that their claims should not be dismissed because they need further discovery to "understand" the behavior of unactivated software.  *See* SCAC ¶ 53.  However, courts have repeatedly rejected this argument, holding that a plaintiff must *first* "allege a factual predicate concrete enough to warrant further proceedings" before being entitled to discovery.  *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, Nos. 2:11-ML-02265-MRP (MANx), 2013 WL 5614294, at *8 (C.D. Cal. Sept. 30, 2013) (rejecting plaintiff's argument that its otherwise deficient allegations of scienter should be deemed sufficient because it did not have discovery of the reports covering the deals at issue because "[t]his assert-first-discover later approach to litigation undermines the purpose of the pleading standards.").  This rule is particularly important in an MDL proceeding "where the cost of discovery and legal fees can quickly reach stratospheric levels."  *Id.* (citation omitted); *see also In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, MDL No. 08-1904 (RHK/JSM), 2009 WL 294353, at *2 (D. Minn. Feb. 5, 2009) (noting "particularly apt" concerns for potential abuse in multidistrict litigation where the "cost of the discovery on the horizon is substantial") (citation omitted).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Similarly, as set forth in detail in Section IV, *infra*, all of the relevant state consumer protection laws asserted by Plaintiffs require allegations, and ultimately proof, of loss by the consumer. Although the Complaint purports to allege injury, none of the allegations establish that Plaintiffs suffered any cognizable damage or loss as a result of Defendants' alleged violation of the CCDAFA and the consumer protection statutes. Those claims should therefore be dismissed for lack of Article III standing under Rule 12(b)(1).

### 1. Plaintiffs' "Diminished Battery Power and Life" Injury Allegations Do not Establish any Injury

Plaintiffs offer generalized allegations that the Carrier IQ software caused "diminished battery power and life, together with diminished performance due to taxation of the devices' processors and memory caused by the constant operation of the Carrier IQ Software." *See*, *e.g.*, SCAC ¶¶ 96, 147, 196. As other courts facing similarly generalized allegations of device resource usage have found, these allegations are too vague and speculative to establish Article III standing. In *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2014 WL 1973378 (N.D. Cal. May 14, 2014), for example, plaintiffs similarly alleged only that defendants' mobile device applications "diminished mobile device resources, such as storage, battery life, and bandwidth" when the applications surreptitiously accessed and uploaded plaintiffs' mobile data. *Id.* at *22 (quoting *Hernandez v. Path, Inc.*, No. 12-cv-01515-YGR, 2012 WL 5194120, at *1–2 (N.D. Cal. Oct. 19, 2012)). The court rejected this allegation as a basis for standing because it failed to quantify exactly how plaintiffs' device resources were depleted and how that depletion injured the plaintiffs, noting that "Plaintiffs have not quantified or otherwise articulated the alleged resource usage." *Opperman,* 2014 WL 1973378, at *22.

Plaintiffs' allegations here are similarly lacking in facts as to how the Carrier IQ software caused them to suffer damage or loss. No Plaintiff alleges that he or she was required to replace the battery, purchase additional memory or pay any other out-of-pocket costs due to the operation of the Carrier IQ software. To the contrary, since the Carrier IQ software was allegedly embedded on the device at the point of manufacture, SCAC ¶¶ 63-64, there is no factual basis for Plaintiffs' allegations that their mobile devices operated any differently or more deficiently than

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

they were designed to operate.  Indeed, by their own admission, "Plaintiffs' claims are based on interception for and transmittal to persons or entities other than the wireless carriers." Order Denying Motion to Compel Arbitration (Dkt. No. 251) at 20).  Plaintiffs do not allege how the Carrier IQ software's alleged "interception for transmittal" to third parties had any effect on their phones' performance, other than that incidental to the software in its ordinary functionality. Because the Complaint does not specify how any Plaintiff suffered any discernible injury due to the challenged design or installation of the Carrier IQ software, Plaintiffs' general allegations of resource depletion fail to establish Article III standing.  *See Hernandez*, 2012 WL 5194120, at *2, *7 (describing alleged injuries of "diminished mobile device resources, such as storage, battery life, and bandwidth," as "*de minimis*" and insufficient to support Article III standing).

### 2.   Defendants' Alleged Collection and Disclosure of Plaintiffs' Personal Information Do not Establish Standing

Plaintiffs next assert that the alleged collection and use of their personal information by the Carrier IQ software has caused them "harm and injury."  SCAC ¶ 96; *see also* ¶ 119.  But courts have repeatedly held that a defendant's alleged collection or use of a plaintiff's personal information does not establish standing under the CCDAFA and unfair competition laws that require proof of *monetary* loss.  *See, e.g., Opperman*, 2014 WL 1973378, at *23 n. 22 (dismissing claims that defendants accessed and uploaded consumers' mobile device address books, holding copying electronically stored personal information "without any meaningful economic injury to consumers is insufficient to establish standing on that basis"); *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *5 ("[P]laintiff must allege how the defendant's use of the information deprived the plaintiff of the information's economic value"); *Yunker v. Pandora Media, Inc.*, No. 11-cv-03113-JSW, 2013 WL 1282980, *3, 11 (N.D. Cal. Mar. 26, 2013) (allegations of access to plaintiffs' personal information on mobile device were insufficient to establish standing for non-Federal statutory claims); *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *4 (N.D. Cal. March 26, 2013) (same); *Low v. LinkedIn Corp.*, No. 11-cv-01468-LHK, 2011 WL 5509848, at *4-5 (N.D. Cal. Nov. 11, 2011) (allegation that LinkedIn's commercial use of plaintiff's personal information deprived

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

plaintiff of its economic value was too abstract and hypothetical to serve as basis for standing for

California UCL and common law claims).  Absent allegations of economic loss, Plaintiff's

allegations of Defendants' access to their information cannot confer Article III standing to

support these claims.

Nor are Plaintiffs' allegations that HTC put Plaintiffs' personal information at risk by

failing to identify security vulnerabilities on certain HTC devices sufficiently concrete to satisfy

Article III.  *See* SCAC ¶¶ 76-79.  Courts repeatedly have deemed allegations of potential future

identity theft from security vulnerabilities too hypothetical to establish standing.  *See, e.g.,*

*Clapper*, 133 S. Ct. at 1147; *Hernandez,* 2012 WL 5194120, at *2 ("The hypothetical threat of

future harm due to a security risk to Plaintiff's personal information is insufficient to confer

Article III standing." ) (citation omitted); *see also Pirozzi*, 913 F. Supp. 2d at 847 (plaintiff's

allegation that her personal information was at a greater risk of being misappropriated due to

allegedly lax security practices was insufficient to confer Article III standing); *Yunker*, 2013 WL

1282980, at *5 (plaintiff's allegations that he *could* be the victim of identity theft from mobile

application was insufficient to establish Article III standing); *In re LinkedIn User Privacy Litig.*,

932 F. Supp. 2d 1089, 1094-95 (N.D. Cal. 2013) (allegation that plaintiff's password was publicly

posted insufficient to show a legally cognizable injury).  As in those cases, Plaintiffs here allege

no present or imminently threatened harm to establish a concrete and particularized injury that

can serve as the basis for standing for their CCDAFA and consumer protection law claims.

### 3. Plaintiffs Cannot Tie Their Benefit of the Bargain Theory of Injury to any Representations by Defendants

Plaintiffs' final theory of injury is that they overpaid for their devices and did not receive

the benefit of their bargain.  *See*, *e.g.*, SCAC ¶¶ 8-25, 96, 139, 147.  This is also insufficient to

support standing because Plaintiffs do not allege they entered any bargain with the Defendants.

To establish standing under their "benefit of the bargain"/overpayment theory, Plaintiffs must

identify both contemporaneous misrepresentations or omissions *by the Defendant* that formed the

bargain, and their reliance on those misrepresentations when they purchased their mobile devices.

*See, e.g., In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d at 1093 (rejecting the "benefit of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

bargain" theory of standing where Plaintiffs did "not even allege that they actually read the alleged misrepresentation"); *Pirozzi*, 913 F. Supp. 2d at 846-47 (holding plaintiff did not suffer an injury-in-fact caused by her alleged overpaying or being induced to purchase an Apple Device because plaintiff failed to identify specifically which statements made by Apple she found material to her decision to purchase an Apple Device or App); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *6 (finding plaintiffs lacked standing to sue for alleged privacy abuses and risk in the Android operating system that Google allegedly had not disclosed and rejecting plaintiffs' argument that they had been injured by overpaying for their Android devices where plaintiffs failed to identify what statements were material to their decision to purchase an Android device).  The Complaint does neither.

Plaintiffs do attempt to allege some kind of reliance in asserting generally that Defendants failed to disclose the presence of the Carrier IQ software on the devices.  *See* SCAC ¶ 280.  The critical problem for Plaintiffs, however, is that they do not allege that they had any bargain with Carrier IQ for which any representation or omission by Carrier IQ could form a basis.  Indeed, Plaintiffs affirmatively allege they were not even aware of Carrier IQ.  *See* SCAC ¶¶ 8-25.  And, as the Complaint establishes, Carrier IQ did not manufacture Plaintiffs' mobile devices, nor did Plaintiffs purchase their mobile devices from Carrier IQ.  The Complaint mentions no representations by Carrier IQ to consumers about its software or about the phones on which its software was installed.  Absent any communications by Carrier IQ that Plaintiffs could have relied upon, there is no "bargain" that Plaintiffs could have entered into with Carrier IQ, nor is there any allegation that Carrier IQ contributed to the bargain that Plaintiffs entered with their Carriers when they purchased their devices from the Carriers.  *See*, *e.g.*, *Wood v. Motorola Mobility, Inc.*, No. C-11-04409-YGR, 2012 WL 892166, at *6-7 (N.D. Cal. Mar. 14, 2012) ("[I]t cannot be said that misrepresentations of which neither Plaintiff was aware could 'have become part of the purchase and sale agreement' such that Plaintiffs 'were deprived of the 'benefit of the bargain' when they purchased their phones") (citation omitted).

The same holds true for the OEMs.  Plaintiffs do not identify any representations by the OEMs that could form the basis of a bargain, nor do they even allege any dealings at all with the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

OEMs on which Plaintiffs might have relied in any way.  And, Plaintiffs do not allege that they purchased their phones from the OEMs.  At most, the Complaint alleges Plaintiffs' mobile phones were "marketed, in part, based on their speed, performance, and battery life."  SCAC ¶ 85.  But they do not identify a single such advertisement by any OEM.  Nor do Plaintiffs allege that the OEMs, as opposed to Plaintiffs' Carriers (from whom Plaintiffs *did* buy their phones), were the source of any such marketing.  Absent sufficient allegations tying the bargain Plaintiffs believed they were entering to the OEMs, Plaintiffs lack standing, and their CCDAFA and consumer protection claims should be dismissed.

## II.   PLAINTIFFS' FEDERAL WIRETAP CLAIM SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

Plaintiffs allege that Defendants intercepted the contents of electronic communications and disclosed intercepted communications in violation of the Wiretap Act.  *See* SCAC ¶¶ 93-99; 18 U.S.C. § 2511(1)(a) (prohibiting interception); § 2511(1)(c) (prohibiting disclosure of contents of intercepted communications).  With respect to all Defendants, these claims fail for several independent reasons.  First, the Complaint does not allege an interception of the *contents* of electronic communications *contemporaneous* with their transmission.  Second, it does not allege that the Carrier IQ software is a "device" as defined under Section 2510(5)(a) of the Electronic Communications Privacy Act ("ECPA").With respect to the OEMs, the claims fail for a third independent reason because Plaintiffs do not allege that the OEMs "acqui[red]" any electronic communications.  *See* 18 U.S.C. § 2510(4) (defining interception to require "acquisition").

### A.   The Complaint Does not Allege Acquisition of the Contents of Electronic Communications Contemporaneous With Their Transmission

To state a claim under the Wiretap Act, Plaintiffs must allege that Defendants "intercepted" their electronic communications, which the statute defines as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  18 U.S.C. § 2510(4) (emphasis added).  The Complaint does not allege either acquisition *contemporaneous with transmission* or the acquisition of *contents*.  The Wiretap Act claim should therefore be dismissed.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1. **The Complaint Does not Allege Acquisition Contemporaneous With Transmission**

It is well established that an acquisition of an electronic communication is an interception under the Wiretap Act only if that acquisition is "contemporaneous with transmission" of the communication. *Konop*, 302 F.3d at 876-78 ("in cases [dealing] with 'electronic communications'—the definition of which specifically includes 'transfer' and specifically excludes 'storage' . . . it is natural to except non-contemporaneous retrievals from the scope of the Wiretap Act") (citation omitted); *see also Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461-62 (5th Cir. 1994) (analyzing language of Wiretap statute and concluding that "Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in 'electronic storage.'"); *Opperman*, 2014 WL 1973378, at *29 (granting Rule 12(b)(6) motion to dismiss a Wiretap Act claim arising out of mobile applications' alleged copying and transmission of electronic address books stored on mobile devices).

As one court has described the requirement, to violate the Wiretap Act, an interception must take place "during 'flight'" of the communication. *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) (adopting the Ninth Circuit and Fifth Circuit's requirement that the acquisition be contemporaneous with transmission in finding that Trojan horse virus allowing access to data on computer did not acquire communications "in flight"). Courts within the Ninth Circuit have interpreted *Konop* to require that the defendant "halt the transmission of the messages to their intended recipients" and "stop or seize" the contents of a communication; merely making a copy of a communication on a device or server is insufficient to state a claim for interception. *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1153-54 (C.D. Cal. 2007) (dismissing wiretap claim on summary judgment because unauthorized, automatic copying and forwarding of email from intermediate storage on mail server was not an "interception"); *Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 904 (C.D. Cal. 2011) (same). Conversely, accessing electronic communications while they are stored in memory on a device or server, even if only for a fleeting moment as they are "en route" to another location, is not actionable under the Wiretap Act. *See Theofel v. Farey-Jones*, 359 F.3d 1066, 1077-78 (9th Cir. 2004) (unauthorized access to stored

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    emails does not violate the Wiretap Act); *Konop*, 302 F.3d at 877 (holding no interception

2    occurred in violation of Wiretap Act when employer gained unauthorized access to secure

3    website maintained by employee containing bulletins critical of employer because employer

4    acquired website's contents in their stored state, and not during transmission); *Mintz v. Mark*

5    *Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (dismissing Wiretap Act

6    claim where "[d]efendants did not access, disclose, or use any emails that had been acquired

7    during transmission. Rather, the emails Defendants viewed were stored on Gmail.").

8         Congress created this bright line between communications acquired contemporaneous

9    with transmission and those acquired from electronic storage by structuring the ECPA in two

10   separate parts—the Wiretap Act protects against interception whereas the Stored

11   Communications Act provides more limited protection for stored electronic communications.

12   The Ninth Circuit has expressly adopted this view:

13        Email and other electronic communications are stored at various junctures in
          various computers between the time the sender types the message and the
14        recipient reads it. . . . It is therefore argued that if the term 'intercept' does not
          apply to the ***en route storage of electronic communications***, the Wiretap Act's
15        prohibition against 'intercepting' electronic communications would have virtually
          no effect. While this argument is not without appeal, the language and structure of
16        the ECPA demonstrate that Congress considered and rejected this argument.

17   *Konop*, 302 F.3d at 878 n.6 (emphasis added); *see also Theofel*, 359 F.3d at 1077-78 (reaffirming

18   the distinction in *Konop* between communications in transmission and in electronic storage).

19        As a result, courts in the Ninth Circuit "have interpreted the federal wiretap statute to

20   exclude from its coverage the storage of electronic communications no matter how short that

21   storage may entail." *Quon v. Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116, 1134

22   (C.D. Cal. 2006), *aff'd in part and rev'd in part on other grounds*, 529 F.3d 892 (9th Cir. 2008),

23   *rev'd on other grounds sub. nom Ontario v. Quon*, 130 S. Ct. 2619 (2010). Thus, for example,

24   courts have consistently rejected Wiretap Act claims arising out of automatic email copying. *See*

25   *Bunnell*, 567 F. Supp. 2d at 1153-54; *Exec. Sec. Mgmt.*, 830 F. Supp. 2d at 904. In those cases,

26   plaintiffs generally have alleged that defendants "intercepted" emails they sent or received by

27   configuring email servers to automatically send to the defendant a copy of all emails sent or

28   received by the plaintiff. In each case, the court found that no interception had occurred because

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the emails were in memory on the email server—even if only for a fleeting moment—at the time

a copy was made and forwarded to the defendant. *See Bunnell,* 567 F. Supp. 2d at 1153-54; *Exec.*

*Sec. Mgmt.*, 830 F. Supp. 2d at 904.

What is more, a plaintiff does not state a claim for interception by alleging that software

moved communications from one area of memory to another on the same device. *See Opperman*,

2014 WL 1973378, at *29. Rather, the interception must occur when the transmission already is

"in flight" to, or from, the device at issue. *Id.* For this reason, in his recent decision in

*Opperman*, Judge Tigar dismissed a Wiretap Act claim alleging that several mobile applications

had intercepted users' personal contacts by causing their mobile devices to send users' digital

address book files from one portion of each device's memory to another. *See id.* (plaintiffs'

allegation that data was used by different memory components of the same device did not

sufficiently allege "interception" during "transmission" under ECPA claim). In reaching that

conclusion, the Court rejected "the tortured argument that the contemporaneous interception

requirement is met here because the apps in question caused [the devices] to 'send information

from the user's Contacts from the [the device's] storage memory to processors and active

memory being used by the app' and then 'simultaneously intercept[ed] that transmission.'" *Id.*

The *Opperman* court found *Konop* and *Theofel* "dispositive" and held that the plaintiffs'

allegations were "insufficient to give rise to an ECPA claim." *Id.*

Here, similarly, Plaintiffs allege the Carrier IQ software was integrated onto their phones

at the time of manufacture and acquired Plaintiffs' electronic communications only after the

communications had been received by or before they were transmitted from the phones. SCAC

¶¶ 29-33, 35, 61-65. Nowhere does the Complaint allege any interception *contemporaneous* with

the transmission of a communication. Indeed, because the communications necessarily resided in

memory on Plaintiffs' devices at the time of alleged acquisition—as opposed to being captured

while "in flight" between the device and cell tower (and thus other devices)—the communications

were in electronic storage and could not have been "intercepted." *See Konop,* 302 F.3d at 878.

As in *Opperman*, the Complaint alleges that the Carrier IQ software acquired certain data from

other components of the Plaintiffs' mobile devices, and so fails to state a claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Plaintiffs' repeated and conclusory use of the term "intercepted" throughout the Complaint is unsupported by any factual allegations that the Carrier IQ software acquired any communications contemporaneous with their transmission to or from Plaintiffs' mobile devices, and is insufficient to state a claim under the Wiretap Act. *See Perfect 10, Inc.*, 494 F.3d at 794 ("court need not accept conclusory allegations of law or unwarranted inferences"). Indeed, courts repeatedly have held that a plaintiff cannot simply parrot the language of the statute through conclusory allegations, but must allege with specificity an interception that, among other features, occurred contemporaneously with transmission. *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001) (courts should "not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act"); *Garback v. Lossing*, No. 09-cv-12407, 2010 WL 3733971, at *4 (E.D. Mich. Sept. 20, 2010) ("no allegation that any emails were 'intercepted' contemporaneously with transmission" and rejecting "conclusory allegation" of "intercept"); *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 639 (E.D. Va. 2009) (dismissing Wiretap claim and Virginia § 19.2-62 claim where plaintiffs did not meet their pleading burden despite using the word "intercepted" at least thirteen times in the complaint because "mere use of the word, even repeatedly, does not make it so"). In sum, the Complaint does not allege the Carrier IQ software acquired communications contemporaneously with their transmission. For this reason alone, the Wiretap Act claim should be dismissed.

## 2. The Complaint Fails to State a Wiretap Claim for Alleged Acquisition of Data That Are not Contents of Communications

Several of the categories of data Plaintiffs allege the Carrier IQ software acquired cannot support a Wiretap Act claim for the further reason that they are not "contents" of electronic communications, as required by the Wiretap Act. 18 U.S.C. § 2510(4). ECPA defines "contents" to mean "any information concerning the *substance, purport, or meaning* of that communication." 18 U.S.C. § 2510(8) (emphasis added). The Ninth Circuit recently explained that the definition refers to "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). By way of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

example, "contents" include the body of a text message or email, but *not* other information about such messages, such as the telephone number of the sender or recipient, the identity of the sender or recipients, or geo-location information about the sender's phone. *See, e.g., id.* at 1107 (URLs containing address information, user's Facebook ID, and prior webpage visited are not "contents"); *United States v. Reed*, 575 F.3d 900, 914 (9th Cir. 2009) (numbers dialed and time and length of telephone calls not "contents"); *United States v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008) (electronic address data, such as email and IP addresses, are not contents).

Under the statute and this precedent, nearly all of the data that Plaintiffs put at issue in the Complaint are not "contents" of communications. Plaintiffs allege, for example, that the Carrier IQ software received user names and geo-location information embedded in URLs, "geo-location information apart from that transmitted in URLs," "telephone numbers dialed and received; other keystrokes; and application purchases and uses."[5] SCAC ¶¶ 2, 9, 63, 70, 110, 112. Telephone numbers dialed and received are classic non-content routing information that is outside the scope of the Wiretap Act. *See, e.g., Reed*, 575 F.3d at 914. Similarly, geo-location data generated by mobile devices are not "contents" under the Wiretap Act because they do not convey the substance or meaning of a person's electronic communications. *See In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 305-06 (3d Cir. 2010) (cell phone users' location data is not content information under the Stored Communications Act), *cited with approval by In re Zynga Privacy Litig.*, 750 F.3d at 1106; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (holding that mobile device's automatically generated geo-location data are not contents of communication under the Wiretap Act); *Sams v. Yahoo!, Inc.*, No. 10-5897, 2011 WL 1884633, at *6-7 (N.D. Cal. May 18, 2011) (records identifying persons using Yahoo ID and email address, IP addresses, and login times were not contents), *aff'd*, 713 F.3d 1175 (9th Cir. 2013). And the Ninth Circuit recently held that the URLs of webpages that an individual has visited are not contents, even if they contain embedded user ID information—in that case a Facebook ID—or identify the website

---

[5] For the purpose of this Motion, Defendants do not contend that the body of a text message is not content.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

that directed the user to that URL.  *In re Zynga Privacy Litig.*, 750 F.3d at 1108-09; *see also In re Google Inc., Cookie Placement Consumer Privacy Litig.*, MDL Civ. No. 12–2358, 2013 WL 5582866, at *5 (D. Del. Oct. 9, 2013) ("While URLs may provide a description of the contents of a document, e.g., www.helpfordrunks.com, a URL is a location identifier and does not 'concern[] the substance, purport, or meaning' of an electronic communication.").  In *Zynga*, the court specifically rejected the argument that URLs are contents when they include information identifying the individual visiting the website, noting that "[t]here is no language in ECPA equating 'contents' with personally identifiable information," though it concluded that URLs may be "contents" to the extent they incorporate users' search queries.  750 F.3d at 1107.

Accordingly, Plaintiffs' Wiretap Act claim should be dismissed insofar as it alleges that the Carrier IQ software acquired any data other than the contents of text message communications or URLs incorporating users' search terms.

## B.    The Complaint Fails to Allege the Carrier IQ Software Is a "Device" Under the Wiretap Act

To state a claim under the Wiretap Act, Plaintiffs also must allege that Defendants intercepted the contents of electronic communications "through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).  The Act defines "device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication," but excludes three categories of devices, one of which is fatal to the Wiretap Act claim here.  18 U.S.C. § 2510(5).  Specifically, the Act provide that a device does *not* include

> (a) any *telephone or telegraph instrument*, *equipment* or facility, or *any component thereof*, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (2) being used by a provider of wire or electronic communication service in the ordinary course of its business . . . . ;

18 U.S.C. § 2510(5)(a)(i) (emphasis added).  Although the term "component" is not defined by the Act, its plain and ordinary meaning is "a constituent element, as of a system." *The American Heritage College Dictionary*, 285 (3d ed. 1993).  Based on the allegations in the Complaint, the Carrier IQ software falls within this statutory exclusion and cannot form the basis of a claim

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

under the Wiretap Act.

**1.    The Complaint Alleges the Carrier IQ Software Is a Component of a Telephone Instrument or Equipment**

Plaintiffs cannot seriously dispute that the Carrier IQ software is a "component" of their mobile devices.  Throughout the Complaint, Plaintiffs allege the OEMs collaborated with Carrier IQ to embed the Carrier IQ software on Plaintiffs' mobile phones before they were packaged and sold for use on the AT&T, Cricket, and Sprint networks, respectively.  *See, e.g.,* SCAC ¶¶ 61-64. The Complaint alleges the IQ Agent and interfaces between the operating system and IQ Agent were integrated into Plaintiffs' phones by the OEMs during the manufacturing process so that the Carrier IQ software could make certain "calls" to the mobile device operating system.  SCAC ¶¶ 29-33, 35, 65.  The Complaint also incorporates statements by each of Plaintiffs' Carriers— AT&T, Cricket, and Sprint—that the Carrier IQ software was integrated on devices to be used on their networks.  *See* SCAC ¶¶ 53-55; *see also* Defendants' Request for Judicial Notice ¶¶ 1-2 ("RFJN"); Declaration of Tyler Newby in Support of Defendants' Motion to Dismiss ("Newby Decl.") Exs. 1, 2.  The Carriers then sold Plaintiffs their phones with the software already embedded in the devices.  Thus, by any definition, the Carrier IQ software is a component of Plaintiffs' devices.[6]

**2.    The Carrier IQ Software Was Embedded in the Mobile Devices Sold to Plaintiffs by Their Carriers in the Normal Course of Their Business and Used by Plaintiffs or the Carriers in the Normal Course of Their Businesses**

The second and third elements of the "components" exception from the definition of the term "device" also are present here.  *First*, Plaintiffs cannot dispute that the Carrier IQ software

---

[6]In instances where courts have found recording devices not to be "components" of telephone equipment, they have done so because the recording equipment was *both* (1) added to the telephone equipment after sale by the phone service provider, *and* (2) external to the users' phones. *United States v. Murdock*, 63 F.3d 1391, 1395-96 (6th Cir. 1995) (external equipment purchased from Radio Shack and attached to phone was not a component of the phone); *Deal v. Spears*, 980 F.2d 1153 (8th Cir. 1992) (same); *Williams v. Poulos*, 11 F.3d 271, 280 (1st Cir. 1993) (aftermarket recording device attached to equipment by clipped on cables was not a "component" of the equipment); *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740 (4th Cir. 1994) (voice logging device attached to phone after sale by carrier was not a component of the phone). Neither of those two factors is present here, where the Carrier IQ software was *integrated* into the phones *before* the Carriers sold them to Plaintiffs.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

was embedded and used by Plaintiffs' Carriers in the normal course of the Carriers' business. The Complaint quotes from and incorporates by reference letters to Senator Al Franken from AT&T and Sprint affirming that the Carrier IQ software is installed on "AT&T wireless consumer devices" and "Sprint devices," specifically including the device models allegedly used by Plaintiffs, for the purpose of allowing the Carriers to troubleshoot their networks and improve the service they provide to their customers. *Supra* at II.B.1; *See* RFJN ¶¶ 1-2, Newby Decl. Exs. 1, 2. Similarly, Plaintiffs allege that they used their phones in the same way any user would be expected to use a mobile phone—to place and receive calls, send and receive text messages, and browse the Internet. *See* SCAC ¶¶ 8-25.

The Complaint also alleges that Plaintiffs' Carriers used the Carrier IQ software in order to better understand and resolve performance and service issues experienced by their subscribers in the normal course of their own businesses. *See* SCAC ¶¶ 53-54. In letters provided by AT&T and Sprint to Congress, and incorporated by reference in the Complaint, those Carriers affirmed that they contracted with Carrier IQ and directed the OEMs to install the Carrier IQ software to collect and provide information to the Carriers to improve the service they provide to subscribers, including to Plaintiffs. AT&T wrote that it uses Carrier IQ software "to collect diagnostic information about its network to improve the customer experience." RFJN ¶ 1, Newby Decl. Ex.1. Sprint similarly wrote that it has used Carrier IQ software "as a diagnostic tool on devices. The Carrier IQ diagnostic tool can help Sprint engineers understand the functionality (or not) of handset applications when connecting with the network and steps that Sprint might take to improve services and the customer experience, including network enhancements." RFJN ¶ 2; Newby Decl. Ex. 2 at 2. Contrary to Plaintiffs' allegation that the Carriers did not seek the data they allege the Carrier IQ software intercepted, including URLs and text messages, Sprint's letter to Congress confirmed that Sprint *did* use the Carrier IQ software to collect data on URLs visited by its subscribers so that it could "troubleshoot website loading latencies or errors." *Id.* at 3. In addition, as Plaintiffs acknowledge in the Complaint, the Carrier IQ software is designed to scan incoming text messages as part of its ordinary function because that is how the software receives instructions. *See* SCAC ¶ 67. Therefore, because Plaintiffs' Carriers used the Carrier IQ

software on the devices they furnished to their customers in the normal course of their businesses, the software cannot, as a matter of law, be a "device" that is capable of interception. *See, e.g., Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 505 (2d Cir. 2005) (finding that an ISP acted "in the ordinary course of its business" when it continued to receive messages sent to a user's deactivated email address). The Wiretap Act claim should be dismissed for this reason as well.

**C.      The Complaint Fails to Plead any Unlawful Acquisition or Disclosure by the OEMs Under the Wiretap Act**

**1.      The Deployment of Software to Facilitate Transmissions to Others Does not Constitute an "Acquisition"**

The Wiretap Act claim against the OEMs should be dismissed for another independent reason. As explained above, Plaintiffs can state a claim for interception under the Wiretap Act only if they allege "acquisition" of an electronic communication by a particular defendant. Plaintiffs fail to satisfy that requirement against the OEMs for the further reason that they do not allege any acquisition by the OEMs *at all.*

Plaintiffs do not allege that any of the OEMs was a customer of Carrier IQ or that the Carrier IQ software sent data to any of the OEMs as part of its ordinary operation. *See* SCAC ¶ 68.[7] Instead, Plaintiffs acknowledge that Carrier IQ's customers, who receive data from the Carrier IQ software, are "typically wireless carriers," and that the alleged "Profile-specified data is transmitted from the mobile device *to the requester.*" *Id.* (emphasis added). In short, the allegations against the OEMs are based not on their acquisition of any data, but rather on their *installation* of the Carrier IQ software on the devices they manufactured.

Courts have held that a defendant that simply implements a device on a system that collects data, where the defendant itself did not acquire any data obtained by the device, does not engage in interception. In *Kirch v. Embarq Mgmt. Co.*, for example, the defendant, an operator of an Internet service provider ("ISP"), "'furnished the connection to the NebuAd equipment, so, it essentially connected its users to the [data collection device], and it connected

---

[7] Although Plaintiffs allege that Carrier IQ customers are "sometimes device manufacturers" Plaintiffs do not allege that the specific OEMs named as Defendants in this lawsuit are customers of Carrier IQ that received data via Carrier IQ Profiles.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the [device] to the rest of its networks."  No. 10-2047-JAR, 2011 WL 3651359, at *4 (D. Kan.

Aug. 19, 2011), *aff'd*, 702 F.3d 1245 (10th Cir. 2012).  There was no other involvement by the

ISP, and it did not have access to the data collected or the user profiles developed by the NebuAd

equipment.  *Id.*  The court held that there was no interception by the ISP because there was no

"acquisition" by it:

> Although the term 'acquisition' is not defined by the statute, 'to acquire' commonly means 'to come into possession, control, or power of disposal.'  Thus, it follows that in order to 'intercept' a communication, one must come into possession or control of the substance, purport, or meaning of that communication.  The Court agrees with Embarq that regardless of what information the NebuAd System extracted from the communications traversing through the UTA, it is undisputed that Embarq had no access to that information or to the profiles constructed from that information. . . .  There is nothing in the record that Embarq itself acquired the contents of any communications as they flowed through its network; instead, plaintiffs' theory rests on the notion that the NebuAd System extracted the contents of the communications.  Plaintiffs' assertion that Embarq 'endeavored to intercept' communications falls short of creating civil liability under the ECPA, which creates liability for actual interception.

*Id.* at *6.  Similarly, courts have held that simply passing data on without storing or recording its

contents does not constitute an "interception."  *See Bohach v. City of Reno,* 932 F. Supp. 1232,

1236 (D. Nev. 1996) ("if the computer received an electronic communication from a terminal and

passed it on to the pager company, but did not store or otherwise record its contents, it would not

have acquired 'information concerning the [communication's] substance, purport, or meaning,'

and therefore no 'intercept' would have taken place. . . .").

Indeed, Plaintiffs implicitly admit that, except with respect to the allegations against HTC

regarding its failure to deactivate debug code, any OEM's *ability* to acquire communications is

purely speculative.  SCAC ¶ 67 ("Without their interception by the Carrier IQ software . . . other

content could not have been logged and sent off the devices to Google, HTC, and *perhaps*

application developers and other third-parties." (emphasis added)).  These unsupported

insinuations of *potential* acquisition fall "short of the line between possibility and plausibility of

'entitlement to relief'" and cannot support a claim under the Wiretap Act.  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 565-570.  Because the Complaint does not

allege that the OEMs "acquired" any communications, it fails to state a claim against them under

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

27

the Wiretap Act.[8]

### 2. Plaintiffs Fail to Allege an Intentional Interception by any OEM

Plaintiffs attempt to preserve their Wiretap Act claim against Defendant HTC by pointing to the FTC investigation into HTC's implementation of the Carrier IQ software, and in particular, the FTC's finding that HTC itself received certain data via its "Tell HTC" tool due to a failure to deactivate debug code. *See, e.g.,* SCAC ¶¶ 72, 77-81. These allegations fail on their face because, if anything, they establish that such transmissions were entirely inadvertent and unintentional.

The Wiretap Act proscribes "*intentionally* intercept[ing]" communications" (18 U.S.C. § 2511(1)(a) (emphasis added)), which requires a finding that "the defendant acted deliberately and purposefully; that is, defendant's act must have been the product of defendant's conscious objective rather than the product of a mistake or an accident." *United States v. Townsend*, 987 F.2d 927, 930 (2d Cir. 1993); *see also Butera & Andrews v. Int'l Bus. Machs. Corp.*, 456 F. Supp. 2d 104, 109-110 (D.D.C. 2006) (dismissing Wiretap Act because plaintiff failed to plead the requisite "intentional" misconduct by computer manufacturer). As the Senate Judiciary Committee explained in 1986 when inserting this requirement into the statute:

> [T]he term "intentional" [in this context] is narrower than the dictionary definition of "intentional." "Intentional" means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective. . . . The "intentional" state of mind is

---

[8]At best, Plaintiffs have sought to allege a theory of secondary liability by which the OEMs aided and abetted *others* in acquiring data through the deployment of the Carrier IQ software. However, courts repeatedly have held that there can be no aiding or abetting liability under the Wiretap Act for assisting in an interception such as through enabling the "deployment" of intercepting software. For example, in *In re Toys R Us, Inc., Privacy Litig.*, 2001 WL 34517252, at *6–7 (N.D. Cal. Oct. 9, 2001), the plaintiffs alleged that Toys R Us and other websites "authorized Coremetrics to use its technology with respect to such Web sites," but did "not allege that Toys R Us itself intercepted, disclosed, or used plaintiffs' electronic communications." On a motion to dismiss, the court held that the "plain language of § 2520(a) now limits its applicability to those who 'intercept,' 'disclose' or 'use' the communications at issue," and, because "§ 2520(a) does not provide a cause of action against aiders and abettors," the plaintiffs "may not proceed against Toys R Us on such theory."*Id.* at * 7; *see also Kirch*, 702 F.3d at 1246-47 (holding that section 2520 "does not impose civil liability on aiders or abettors."); *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1005-06 (9th Cir. 2006) (rejecting the argument that "a person or entity who aids and abets or who enters into a conspiracy is someone or something that is 'engaged' in a violation."); *Crowley*, 166 F. Supp. 2d at 1269 ("Section 2520, however, does not provide for a civil action against one who aids and abets a violation of the Wiretap Act.").

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    applicable only to conduct and results.  Since one has no control over the existence
2    of circumstances, one cannot "intend" them.

3    S. Rep. 99-541, at 23 (1986).  By using that language, "Congress made clear that the purpose of

4    the amendment was to underscore that inadvertent interceptions are not a basis for criminal or

5    civil liability under the ECPA.  An act is not intentional if it is the product of inadvertence or

6    mistake." *In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003); *see also Sanders*, 38 F.3d at

7    742-43 (same).

8        *Pharmatrak* is particularly instructive here.  In that case, the defendant sold a service

9    called "NETcompare" to pharmaceutical companies, which accessed information about Internet

10   users and collected certain information to permit the pharmaceutical companies to perform intra-

11   industry comparisons of website traffic and usage.  The defendant "recorded as a result of

12   software errors" personal information relating to certain users.  329 F.3d at 16.  On remand from

13   the First Circuit, the district court dismissed the Wiretap Act claim because the "programming

14   errors" at issue were not a sufficient basis to establish intent.  The court rejected the plaintiff's

15   argument that intent could be inferred because the defendant "did not implement certain

16   safeguards to prevent these sorts of transmissions," and thus "it must have intended to collect

17   personal data," noting that "[e]ven assuming that they did exist and could have been used,

18   Pharmatrak would at most be liable under a theory of negligence, or even gross negligence.

19   Neither is sufficient to satisfy the specific intent requirement under the EPCA." *In re*

20   *Pharmatrak, Inc. Privacy Litig.*, 292 F. Supp. 2d 263, 267-68 (D. Mass. 2003); *see also Loucks v.*

21   *Ill. Inst. of Tech.*, No. 12 C 4148, 2012 WL 5921147, at *2 (N.D. Ill. Nov. 20, 2012) (dismissing

22   Wiretap Act claim where "Plaintiff allege[d] that, prior to deploying Google Voice software, IIT

23   was not fully aware of its ability to record or log messages," and thus Plaintiff, "at most, allege[d]

24   a plausibly negligent act").

25       The allegations of the Complaint regarding the transmission of Carrier IQ data to HTC

26   mirror the claims found insufficient in *Pharmatrak*.  As the Complaint alleges, the FTC

27   concluded that HTC "failed to deactivate" debug code it wrote to test the Carrier IQ software

28   during production.  SCAC ¶ 77.  That debug code printed to the device's system log information

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    that was collected for the Carrier IQ software for which  HTC had written implementing software.

2    *Id.*; RFJN ¶ 3, Newby Decl. Ex. 3.  The FTC plainly noted that HTC's failure to deactivate the

3    debug code when testing ended was a mistake, concluding that HTC could have avoided any

4    problem by implementing better internal controls and security measures.  SCAC ¶ 81; RFJN ¶ 3,

5    Newby Decl. Ex. 3 ("FTC's investigation and findings focused in part on the security flaws

6    caused by HTC's failure to implement basic security measures");  RFJN ¶ 4, Newby Decl. Ex. 4

7    (FTC press release regarding complaint noting that "FTC says that when HTC installed Carrier

8    IQ on its Android devices, it shipped the devices for sale, but forgot to turn off the 'debug code'

9    used to test the logging application.  Because of that mistake, all of the sensitive user data logged

10   by Carrier IQ was also written to the device's system log, which was accessible to any third-party

11   app with permission to read it.").

12          In addition to dismissing the Wiretap Act claim against HTC for these reasons, the Court

13   also should dismiss the Wiretap Act claims against all the OEMs (including HTC) for the

14   additional reason that Plaintiffs' remaining allegations of intent to intercept are purely conclusory.

15   *See, e.g.*, SCAC ¶ 67 ("Device Manufacturers . . . intentionally designed and programmed the IQ

16   Agent so that it would intercept [users'] content.").  Courts regularly dismiss such conclusory

17   allegations of intent as insufficient to state a claim.  *See, e.g., In re Google Inc. Privacy Policy*

18   *Litig.*, 2013 WL 6248499, at *12 (dismissing ECPA claim where allegation of intentional

19   disclosure was "too conclusory to support a claim").  Accordingly, Plaintiffs fail to state a claim

20   against the OEMs because they allege intent in a conclusory fashion, and, even assuming

21   *arguendo* that HTC acquired electronic communications,[9] Plaintiffs' allegations and materials

22   incorporated by reference into the Complaint show that any such acquisition was not intentional.

23   **III.    PLAINTIFFS' STATE PRIVACY LAW CLAIMS SHOULD BE DISMISSED FOR
         FAILURE TO STATE A CLAIM**

24
         **A.    Plaintiffs' State Law Invasion of Privacy Claims Fail With Plaintiffs' Federal
25             Wiretap Act Claim**

26   Plaintiffs' claims for violation of various states' wiretap laws are indistinguishable from

27   _____

28   [9]Because the device's system log is a form of electronic storage, HTC cannot be liable for
     acquiring any communications from that log.  *See supra* Section II.A.1.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

their Federal Wiretap Act claim, and they allege no different facts.[10]  Each asserted state law

wiretap claim is patterned after the same elements of the Federal Wiretap Act, and Plaintiffs

incorporate by reference all of their Federal Wiretap Act allegations into their state wiretap

claims.  *See* SCAC ¶ 100.  Plaintiffs' state law wiretap claims should therefore be dismissed for

the same reasons set forth in Section II, above.  *See, e.g.*, *Opperman*, 2014 WL 1973378, at *30

(dismissing California Invasion of Privacy Act and Texas Wiretap Act claims for the same

reasons federal Wiretap Act claims were dismissed); *Mitchell v. Mitchell*, No. Civ. 07-0934-

PHX-SMM, 2007 WL 2774460, at *3 (D. Ariz. Sept. 24, 2007) (dismissing Arizona wiretap

claim where plaintiff alleged only non-contemporaneous email retrieval after the emails were

already sent or received and explaining that "A.R.S. § 13-3005 covers the same ground as the

Wiretap Act."); *Massaro v. Allingtown Fire Dist.*, No. 3:02cv537, 2003 WL 23511732, at *2 (D.

Conn. May 30, 2003) (explaining that Connecticut's wiretap law "is modeled after and closely

resembles" the Federal Wiretap Act and thus, in analyzing both federal and Connecticut wiretap

claims, "there is no basis for arriving at a different conclusion under state law"); *State v. Spencer*,

737 N.W.2d 124, 130 (Iowa 2007) ("[W]e can look to the federal [interception of

communications] act and interpretations . . . by the federal courts and assume the Iowa legislature

had the same objectives in mind and employed the statutory terms in the same sense as its federal

counterparts."); *State v. House*, 302 Wis. 2d 1, 11(Wis. 2007) ("Wisconsin's electronic

surveillance statutes are patterned after Title III. Our interpretation of the state statutes therefore

benefits from the legislative history and intent of Title III and from federal decisions considering

Title III.");  *Minotty v. Baudo*, 42 So.3d 824, 831 (Fla. Dist. Ct. App. 2010) ("Chapter 934 was

modeled after the Federal Wiretap Act . . . .  Florida follows federal courts as to the meaning of

---

[10]For example, Plaintiffs allege a violation of California's Invasion of Privacy Act, which prohibits the interception of "a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone."  Cal. Pen. Code. § 632.7(a).  But the Complaint alleges only that the Carrier IQ software accessed URLs containing HTTP and HTTPS query strings, text messages, and other keystrokes that were on Plaintiffs' devices.  SCAC ¶ 109.  The Complaint does not allege any interception while the communications were transmitted between Plaintiffs' phones and other communications equipment identified in the statute.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    provisions after which Chapter 934 was modeled."); *Armstrong v. So. Bell Te. & Tel. Co.*, 366

2    So.2d 88, 89 (Fla. Dist. Ct. App. 1979) (rejecting claim under Fla. Stat. § 934.10 because

3    allegation that device "only recorded electrical impulses, telephone numbers called from the

4    telephone to which attached" did not constitute interception of the "contents of any wire or oral

5    communication"); *In re Information Mgmt. Servs., Inc. Derivative Litig.*, 81 A.3d 278, 294 (Del.

6    Ch. 2013) (where plaintiffs alleged that employer accessed plaintiffs' stored emails after they had

7    been delivered, dismissing Maryland Wiretap claim because plaintiffs failed to allege

8    contemporaneous interception and "[t]he Maryland Wiretap Act generally parallels the Federal

9    Wiretap Act."); *Meyer v. State*, 78 S.W.3d 505, 509 (Tex. Ct. App. 2002) ("In interpreting the

10   Texas wiretapping statute, it is appropriate to consider the interpretation of the federal statute on

11   which it is modeled").[11]

12       **B.       Plaintiff Sandstrom Fails to State a Claim Under the Washington Privacy Act**

13           Plaintiff Sandstrom's claim under the Washington Privacy Act also fails for reasons

14   similar to those that bar the Wiretap Act claim.  He alleges that Defendants violated the Act

15   because they "intentionally intercepted" communications.  SCAC ¶ 113(ee).  The Washington

16   Supreme Court recently interpreted the term "intercept" in the statute to mean "to stop before

17   arrival or interrupt the progress or course."  *State v. Roden*, 179 Wash.2d 893, 904 (Wash. 2014).

18   In *Roden*, a police officer confiscated the mobile phone of a suspect and used it to receive and

19

20   ───────────────
     [11]In addition, to the extent Plaintiffs seek to pursue claims for Defendants' alleged "endeavor[s]
21   to intercept" communications, *see, e.g.*, SCAC ¶ 113, several states explicitly do not recognize a
     private right of action for "endeavoring" to intercept electronic communications, as alleged in the
22   Complaint.  *See Minotty*, 42 So.3d at 830 (noting that Florida's statute authorizes private rights of
     action only where a "communication *is intercepted, disclosed, or used*") (emphasis in original);
23   Ariz. Rev. Stat. § 12-731 (authorizing civil cause of action for any person whose "wire, oral or
     electronic communication *is intentionally intercepted, disclosed or used*") (emphasis added); Md.
24   Cts. & Jud. Pro. Code § 10-410(a) (authorizing a civil cause of action for "any person whose
     wire, oral or electronic communication *is intercepted, disclosed, or used*" in violation of
25   Maryland statute) (emphasis added); Conn. Gen. Stat. Ann. § 54-41r (same); Iowa Code § 808B.8
     (same); Tex. Code Crim. Proc. Art. 18.20, Sec. 16(a) (same); Wisc. Stat. Ann. § 968.31 (2m)
26   (same); *see also* Ill. Comp. Stat. Ch. 720 § 5/14-6 (authorizing civil action for "parties to any
     conversation or electronic communication upon which eavesdropping *is* practiced" in violation of
27   Illinois statute) (emphasis added); N.H. Rev. Stat. § 570-A:11 (authorizing civil recovery for any
     "person whose telecommunication or oral communication *is intercepted, disclosed, or used in
28   violation*" of New Hampshire statute); Cal. Penal Code § 502(e)(1) (authorizing civil remedy for
     an owner of a computer who suffers actual damage or loss by violation of the California statute).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    respond to text messages that, because of the officer's conduct, never reached the suspect.  *Id.*

2    The court held that the officer had intercepted the text messages, in violation of the Washington

3    Privacy Act.  *Id.*  Plaintiff Sandstrom, by contrast, does not, and cannot allege that the Carrier IQ

4    software interrupted any communications or stopped them from reaching him or the recipient to

5    whom he directed them.  And, for reasons discussed above, he cannot allege that HTC (his

6    alleged OEM) acquired any of his communications, much less that it did so *intentionally*.  *See*

7    *supra* Section II.C.  The Washington Privacy Act does not distinguish between communications

8    that are in electronic storage and those that are not, but that distinction is not material to the

9    dismissal of Plaintiff Sandstrom's claim because he does not allege any interception under the

10   statute.  *See id.*[12]

11       The claim under the Washington Privacy Act fails for an additional reason to the extent

12   that Plaintiff Sandstrom seeks relief for the interception of any data other than text messages.  The

13   statute applies only to a "communication … between two or more individuals."  Wash. Rev.

14   Code. 9.73.030(1).  None of the data alleged to be at issue other than text messages, such as

15   geolocation data and URLs, meet that description.  *See Cousineau v. Microsoft Corp.*, No. 11-

16   1438, 2012 WL 10182645,*10-11 (W.D. Wash. Jun. 22, 2012) (in case concerning geolocation

17   data on mobile phone, "[w]ithout an individual on the other end of her communication (other than

18   Microsoft), the transmission of Cousineau's data cannot be considered a communication under

19   the WPA").

20   **C.     Plaintiff Szulczewski and Plaintiff Cline Fail to State Claims Under Illinois
             and Michigan's Eavesdropping Statutes**

21

22       Plaintiff Szulczewski's claim under the Illinois eavesdropping law, Ill. Comp. Stat. 720

23   § 5/14-2(a)(1); *see* SCAC ¶ 113(g), also fails because the law has been invalidated by the

24   Supreme Court of Illinois as facially overbroad under the First Amendment.  *People v. Clark*, 6

25

26   ────────────────
     [12]As with the other states discussed in the prior footnote, Plaintiff Sandstrom cannot state a claim
27   under Washington law based on the allegation that Defendants "endeavored to intercept" his
     communications.  *See* Wash. Rev. Code § 9.73.060 (authorizing civil action for a person who
28   claims that the violation of Washington's privacy statute injured his business, person, or
     reputation).

1   N.E. 3d 154 (Ill. 2014).  Accordingly, that claim should be dismissed with prejudice.

2          Plaintiff Cline's claim under the Michigan Eavesdropping Statute, Michigan Compiled

3   Laws § 750.539a, *et seq.*, fails as a matter of law, because the Complaint does not allege

4   Defendants recorded an audible, "private conversation" as defined by the statute.

5   "Eavesdropping" is defined as to "overhear, record, amplify or transmit any part of the private

6   discourse of others without the permission of all persons engaged in the discourse."  Mich. Comp.

7   Laws § 750.539c(2).  "This statute was meant to prohibit eavesdropping in the traditional sense of

8   recording or secretly listening to audible conversation."  *Bailey v. Bailey*, No. 07-11672, 2008

9   WL 324156, at *8 (E.D. Mich. Feb. 6, 2008).  Plaintiff Cline asserts that Michigan has defined

10  "'eavesdropping' in such a manner as to encompass the communications here at issue, especially

11  the recording or transmitting of text messages."  SCAC ¶ 113(n) at 56.  However, no court in

12  Michigan has held that section 750.539c prohibits the transmission of an electronic

13  communication or a text message.  Rather, the Michigan legislature treats electronic

14  communications and text messages separately from the "private conversation" that section

15  750.539c(2) protects.  *Compare* Mich. Comp. Law §750.540 (prohibiting "read[ing] or copy[ing

16  of] any message from any telegraph, telephone line, wire, cable, computer network, computer

17  program, or computer system, or telephone or other electronic medium of communication that the

18  person accessed without authorization.")

19         Indeed, courts applying section 750.539c have held that the statute does *not* encompass

20  the information that Plaintiff Cline alleges the Carrier IQ Software intercepted, even the alleged

21  text messages.  In *Bailey*, the court held that key logger software that stored key strokes,

22  including "messages" and "emails," did not violate section 750.539c.  The court reasoned that the

23  Michigan legislature did not intend to prohibit the recording of key strokes—even those that

24  involved communications—under section 750.539c, because recording isolated emails and

25  messages was not the same as recording a "conversation."  *Bailey*, 2008 WL 324156, at *8 (using

26  the Merriam-Webster definition of a "conversation" as "(1) [an] oral exchange of sentiments,

27  observations, opinions, or ideas; (2) an instance of such exchange.").

28         Plaintiff Cline's allegations are similarly not actionable under section 750.539c.  Plaintiff

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Cline alleges that Carrier IQ and the Device Manufacturers violated section 750.539c by the alleged unauthorized interception of "SMS text messages, URLs and other inputs containing HTTP and HTTPs strings . . . . dialer-pad keypresses, . . . and geo-location information."  SCAC ¶ 102.  However, because Plaintiff Cline does not allege the interception of any "audible conversation," his allegations under section 750.539c fail.  *Bailey*, 2008 WL 324156, at *8 (recognizing that section 750.539c was not intended to create liability for the interception of messages and emails).

### D.   The Complaint Fails to Plead a Claim Under the California Comprehensive Data and Fraud Act

As explained above, the Complaint fails to state a claim under the CCDAFA because Plaintiffs lack Article III standing and because Plaintiffs have failed to allege that they have suffered any cognizable "damage or loss" caused by the operation of the Carrier IQ software.  The CCDAFA claim fails for two additional independent reasons.

### 1.   Plaintiffs Fail to Allege the Provision of the CCDAFA They Claim Defendants Violated

The CCDAFA proscribes nine different types of offenses including accessing computers without permission, damaging data on a computer or network without permission, using a computer's services without permission, and introducing a computer contaminant onto a computer or network.  *See* Cal. Pen. Code § 502(c)(1)-(9).  Each violation has separate elements that must be alleged and proved.  To state a claim for violation of California statutory law, a complaint must, at a minimum, identify the statutory provisions defendants are alleged to have violated or plead with reasonable particularity facts supporting a violation of a specific statutory provision.  *Brothers*, 2006 WL 3093685, at *7 (holding that claim for violation of California statute must identify the "particular section of the statutory scheme which was violated" and describe facts supporting the alleged violation with reasonable particularity) (citing *Khoury v. Maly's of California, Inc.,* 14 Cal. App. 4th 612, 619 (1993) (sustaining demurrer to claim for violation of the California Unfair Competition law where the complaint did not allege which section defendants had violated or describe with reasonable particularity facts supporting a

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   violation)).  The Complaint, however, alleges in omnibus fashion that Defendants violated

2   Section 502 of the California Penal Code.  *See* SCAC ¶ 105.  Further, Plaintiffs set forth no facts

3   showing how the alleged conduct gives rise to a particular statutory violation.  Plaintiffs allege

4   only that Defendants violated the statute by "knowingly accessing, copying, using, making use of,

5   interfering, and/or altering plaintiffs' and prospective class members' data."  *Id.*  Because

6   Plaintiffs do not set forth factual allegations that specify the particular statutory scheme that was

7   violated and how Defendants violated the statute, the Claim falls short of Rule 8's notice pleading

8   requirement and should be dismissed.

9               **2.      Plaintiffs Do not Allege Circumvention of any Technical or Code-Based Measure**

10

11          Even if the Complaint could be construed to allege a violation of a particular provision of

12   the CCDAFA, the claim should be dismissed for failure to allege that Defendants acted without

13   permission by circumventing a technical or code-based barrier to accessing Plaintiffs' devices.

14   Sections 502(c)(1)-(9) of the CCDAFA expressly, or by incorporation, require a showing that

15   Defendants acted "without permission."  *See* Cal. Pen. Code § 502(c)(1)-(9); *see also Opperman*,

16   2014 WL 1973378, at *20.  Courts have interpreted the "without permission" element to require

17   plaintiffs to allege and ultimately prove "access or use [of] a computer, computer network, or

18   website in a manner that overcomes technical or code-based barriers" to state a claim under the

19   CCDAFA.  *In re iPhone Application Litig.*, No. 11-2250, 2011 WL 4403963, at *12 (N.D. Cal.

20   Sept. 20, 2011) (internal quotation marks and alterations omitted); *see also Opperman*, 2014 WL

21   1973378, at *20 (same); *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at

22   *11 ("Courts within this District have interpreted 'without permission' to require that a defendant

23   access a network in a manner that circumvents technical or code based barriers in place to restrict

24   or bar a user's access." (internal quotation marks omitted)); *In re Facebook Privacy Litig.*, 791 F.

25   Supp. 2d 705, 715 (N.D. Cal. 2011) (same); *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-5780,

26   2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010) (same).

27          The Complaint alleges only that Defendants violated the CCDAFA by "knowingly

28   accessing, copying, using, making use of, interfering, and/or altering plaintiffs' and prospective

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

class members' data."  SCAC ¶ 105.  Plaintiffs do not allege that *any* technical or code-based barriers were in place or *how* Defendants accessed Plaintiffs' mobile devices in a manner that overcame technical or code-based barriers.  To the contrary, Plaintiffs allege that the Carrier IQ software was embedded on Plaintiffs' devices at the point of manufacture, leading to the only plausible inference that the software operated as part of the normal operation of Plaintiffs' phones.  Thus, Plaintiffs fail to state a claim under the CCDAFA.  *See, e.g.*, *Perkins v. LinkedIn Corp.*, No. 13-CV-04303-LHK, 2014 WL 2751053, at *17-18 (N.D. Cal. June 12, 2014) (dismissing CCDAFA claim where plaintiff failed to allege that LinkedIn circumvented a technical or code-based barrier).

## IV.   PLAINTIFFS' STATE CONSUMER PROTECTION ACT CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

### A.   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*

To state a claim under California's unfair competition law ("UCL") Plaintiffs Pipkin, Patrick, Phong and Sandstrom must allege an "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  In addition, when a UCL claim sounds in fraud, plaintiffs must plead the claim with sufficient particularity to satisfy Rule 9(b).  *See, e.g.*, *Kearns*, 567 F.3d at 1125; *Donohue*, 871 F. Supp. 2d at 923 (citations and internal quotations omitted); Section [Legal Standard] C, above.  Here Plaintiffs' UCL claim, (*see* SCAC ¶¶ 115-130 (Count III), lacks sufficient allegations of acts that are "unlawful," "unfair" or "fraudulent" under the UCL, and therefore fails to satisfy Rule 9(b).

#### 1.   Plaintiffs Do not Satisfy Rule 9(b) or Otherwise Adequately State a Claim That Defendants' Actions Were Fraudulent

Plaintiffs' UCL claim, as a whole, sounds in fraud, and must therefore satisfy Rule 9(b)'s heightened pleading requirements.  A UCL claim sounds in fraud where it "allege[s] a unified course of fraudulent conduct."  *Kearns*, 567 F.3d at 1125-26.  Here, Plaintiffs have alleged that Defendants knew the Carrier IQ software could collect Plaintiffs' sensitive personal information, "knew that consumers care deeply" about that information, and "hid software on their mobile devices."  SCAC ¶ 119.  Plaintiffs further allege Defendants "knew they were concealing the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1  material facts regarding Carrier IQ software . . . and intended to induce plaintiffs' reliance."

2  SCAC ¶ 123.  In short, Plaintiffs' UCL claim attempts to allege a fraudulent scheme—that

3  Defendants acted secretly and with the intent to deceive Plaintiffs.  Despite this, Plaintiffs' UCL

4  claim fails to satisfy Rule 9(b)'s particularity requirement by failing to identify misleading

5  statements that they relied upon.  *See, e.g., Cullen*, No. 5:11-CV-01199-EJD, 2013 WL 140103,

6  at *4 (N.D. Cal. Jan. 10, 2013) ("*Cullen II*") ("Because Plaintiff's claims 'sound in fraud' he must

7  plead with particularity 'actual reliance' on the allegedly deceptive, fraudulent, or misleading

8  statements.").  Accordingly, Plaintiffs' UCL claim should be dismissed in its entirety.

9        Plaintiffs' efforts to premise their UCL claim on supposed fraudulent omissions, namely

10  Defendants' alleged failure to disclose Carrier IQ's capabilities or presence on Plaintiffs' phones,

11  fares no better.*See, e.g.*, SCAC ¶ 120.  A non-disclosure claim "is a claim for misrepresentation in

12  a cause of action for fraud" and must satisfy Rule 9(b).  *Kearns*, 567 F.3d at 1127.  To satisfy

13  Rule 9(b), Plaintiffs "must describe the content of the omission and where the omitted

14  information should or could have been revealed, as well as provide representative samples of

15  advertisements, offers, or other representations that plaintiff[s] relied on to make [their]

16  purchase[s] and that failed to include the allegedly omitted information."  *Marolda v. Symantec

17  Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009); *see also Haskins v. Symantec Corp.*, No. 13-

18  CV-01834-JST, 2014 WL2450996, at *1-3 (N.D. Cal. June 2, 2014) (dismissing with prejudice

19  UCL claim alleging anti-virus software developer had failed to disclose security flaw in product

20  where Plaintiff failed to identify specific misrepresentations and omissions on which she relied*);

21  Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D.

22  Cal. Feb. 22, 2012) (same).  Under Rule 9(b), a plaintiff must, in the complaint, specify "why the

23  statement or omission complained of was false or misleading."  *In re GlenFed, Inc. Sec. Litig.*, 42

24  F.3d 1541, 1548 (9th Cir. 1994), superseded by statute on other grounds.  Here, Plaintiffs do not

25  advance *any* allegations as to representations that they relied on in purchasing their phones, who

26  made those representations or when and where those representations were made, and, thus, fail to

27  satisfy their Rule 9(b) obligations.  *See Kearns*, 567 F.3d at 1126-27 (upholding dismissal of UCL

28  claim where plaintiff failed to plead the who, what, when, where and how of the misconduct

alleged).[13]

Plaintiffs further run afoul of Rule 9(b) by failing to advance any allegations supporting a duty to disclose the allegedly omitted facts. For a fraudulent omission claim under the UCL to be actionable, Plaintiff "must allege specifically a representation actually made by the defendant that is contrary to the omission of a fact that the defendant was obliged to disclose." *Tomek v. Apple, Inc.*, No 2:11-cv-02700-MCD-DAD, 2013 WL 394723, at *3, *5-6 (E.D. Cal. Jan. 30, 2013) (dismissing UCL claim because plaintiff failed to demonstrate that defendant had a duty to disclose the alleged battery shutdown issue or that defendant actually concealed the purported defect from plaintiff at the time of purchase). "California courts have generally rejected a broad obligation to disclose." *Opperman*, 2014 WL 1973378, at *19 (dismissing UCL claim where plaintiff failed to satisfy the requirements for pleading a nondisclosure or concealment claim). Because Plaintiffs have not pled sufficient facts to establish the duty upon which their fraudulent non-disclosure claim is based, the fraudulent prong of their UCL claim must fail.[14]

## 2. Plaintiffs Fail to Sufficiently Allege Defendants Engaged in Unlawful Conduct

Plaintiffs allege that Defendants violated the UCL because they violated the Federal Wiretap Act, California Penal Code §§ 502, 631 and 632.7, and that Defendant HTC violated the FTC Act. SCAC ¶ 118. As an initial matter, Plaintiffs fail to state claims for violation of the

---

[13]Indeed, because Plaintiffs' Complaint sounds in fraud, their claims under *all* of the state consumer protection statutes are subject to Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1102-1005 (9th Cir. 2003) (holding that Rule 9(b) applies to all claims, state or federal, that are filed in federal court and "sound in fraud"); *see also, e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666 (E.D. Mich. 2011) (claims under the Michigan Consumer Protection Act for "fraud or mistake must state the circumstances with [the] particularity" that Rule 9(b) requires); *Patel v. Holiday Hosp. Franchising, Inc.* 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001) ("Claims alleging violations of the DTPA are subject to the requirements of Rule 9(b)."). The claims under all of the other state consumer protections statutes fall short of the heightened pleading standard in Rule 9(b) for the same reasons the California UCL claim does.

[14]To the extent Plaintiffs' claim under the fraudulent prong of the California UCL is based upon HTC's alleged failure to deactivate debug code, their claim should be dismissed because they do not, and cannot, allege that it was a known issue. *See Donohue*, 871 F. Supp. 2d at 927 (dismissing UCL where "plaintiff has not sufficiently establish that [defendant] knew of the alleged defect . . . at the time of purchase"); *Eisen*, 2012 WL 841019, at *3 (same); *Baba v. Hewlett-Packard Co.*, No. 09-5946, 2010 WL 2486353, at *5 (N.D. Cal. June 16, 2010) (same). Rather, as explained above, the FTC concluded that it was a mistake.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Wiretap Act and California Penal Code §§ 502 and 632.7.  *See supra* Section III.A, D.  Because

those underlying claims lack merit, Plaintiffs' "UCL claims premised on [those] 'unlawful acts

ha[ve] no basis and must also fail." *Cullen*, 880 F. Supp. 2d at 1028 (granting motion to dismiss

and holding that plaintiff's claim under the unlawful prong of the UCL must fail because the

underlying claims that constituted the "unlawful" acts for his UCL claim were dismissed).

With respect to Plaintiffs' UCL claims premised on California Penal Code section 632.7

and purported violations of the FTC Act, those UCL claims fail because they do not "plead with

particularity how the facts of this case pertain to that specific statute," and how Defendants

violated those statutes. *Hodges v. Apple, Inc.*, No. 12-cv-01128-WHO, 2013 WL 6698762, at *9

(N.D. Cal. Dec. 19, 2013) (dismissing UCL claim where plaintiff "fail[ed] to plead with

particularity how [defendant] violated any statute") (citation omitted).  Instead, Plaintiffs simply

accuse Defendants of violating those statutes without any explanation whatsoever.  Plaintiffs'

conclusory unlawful UCL claim should be dismissed.

### 3.    Plaintiffs Do not Adequately Allege Defendants' Conduct Was Unfair

Plaintiffs allege that Defendants' conduct was unfair because (1) "defendants have

benefited from such conduct and practices while plaintiffs . . . have been misled as to the nature

and integrity of defendants' goods and services;" and (2) defendants' conduct "offends California

public policy as reflected in the right to privacy enshrined in the state constitution; California

Penal Code §§ 502, 631 and 632.7; and California statutes recognizing the need for consumers to

safeguard their privacy interests, including California Civil Code § 1798.80."  SCAC ¶ 119.

Even if Plaintiffs' unfairness claim were not held to Rule 9(b)'s heightened pleading requirement,

as set forth above, it still fails to state a cognizable claim for an "unfair" practice.

To the extent Plaintiffs' unfairness UCL claim is tethered to alleged violations of

California Penal Code sections 502, 631 and 632.7, that claim fails because Plaintiffs do not

adequately allege that Defendants violated those statutes.  *Cullen*, 880 F. Supp. 2d at 1028

(dismissing unfairness UCL claim that "rel[ies] partly on allegations about [defendant's] . . .

statutory violations because the complaint "[did] not allege facts sufficient to state a plausible

claim that [defendant's] conduct was . . . unlawful"); *see also* Section III.A, D *supra*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

As for Plaintiffs' claims that Defendants' conduct was unfair because it offends "the right to privacy enshrined in the state constitution" and "California statutes recognizing the need for consumers to safeguard their privacy interests, including California Civil Code § 1798.80," (SCAC ¶ 119), those claims fail because Plaintiffs fail to allege sufficient facts to support a finding of unfairness under the UCL.  Courts consistently hold that the rote listing of constitutional rights and statutory claims without any explanation of how Defendants' alleged conduct runs afoul of those rights or claims is insufficient to state a claim under the UCL.  *See Hodges*, 2013 WL 6698762, at *9 (dismissing unfairness UCL claim where plaintiff made "vague allusions to deceit, consumer protection, and unfair competition"); *Baba*, 2010 WL 2486353, at *8 (same where plaintiff "cursorily list[ed] the same string of statutes as were associated with the 'unlawful' prong and alleg[ed] vaguely that [defendant's] conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated").

Finally, Plaintiffs have failed to allege sufficient facts to support a plausible claim that the gravity of harm outweighs the utility of the conduct because Plaintiffs only allege in conclusory fashion that "Defendants' conduct lacks reasonable and legitimate justification."[15] *See Cullen*, 880 F. Supp. 2d at 1028-29 (dismissing unfair prong of plaintiff's UCL claim because plaintiff did not allege any facts about the potential utility of the challenged conduct and therefore the court could not conclude that the challenged conduct was immoral or unscrupulous by weighing the utility of the defendant's conduct against the gravity of the harm to the alleged victim).

For all the foregoing reasons, Plaintiffs' California UCL claim must be dismissed.

**B.    Connecticut Unlawful Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, *et. seq.***

In order to "prevail on a CUTPA claim, the plaintiffs must prove that . . . the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce and plaintiff suffered ascertainable loss of money or property as a result of the defendant's acts or practices." *Parola v. Citibank (South Dakota) N.A.*, 894 F. Supp. 2d 188, 204 (D. Conn. 2012)

---

[15]SCAC ¶ 119.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

(citation and alterations omitted). Here, the gravamen of Plaintiff McKeen's CUTPA claim is that "[t]he presence and functionality of the Carrier IQ software on the mobile devices, including the interception and transmission of private information and data, was not disclosed to plaintiffs, but was information considered material by plaintiffs and the class." SCAC ¶ 146. However, Plaintiffs have failed to plead that Defendants had any duty in the first instance to disclose the presence or functionality of the Carrier IQ software, have not pleaded any basis to conclude such a duty ever existed, and so have not alleged the requisite "unfair or deceptive acts or practices" to state a claim under the CUTPA.

*Putnam Bank v. Ikon Office Solutions, Inc.,* No. 3:10-cv-1067, 2011 WL 2633658 (D. Conn. July 5, 2011), is on all fours. There, the plaintiff filed a putative class action against defendant Ikon, a manufacturer of photocopiers and other office equipment. Plaintiff alleged that "Ikon misrepresented or failed to disclose that the equipment contains automatic storage devices and that Ikon does not destroy the saved images when the equipment is returned to Ikon and then sold or leased to another customer." 2011 WL 2633658, at *1. The district court explained that under CUTPA, "[w]hen the disputed practice is a failure to disclose information, the issue is whether a duty to disclose exists." *Id.* (citations omitted); *see also Di Teresi v. Stamford Health System, Inc.*, 142 Conn. App. 72, 92 (2013) ("'When a plaintiff alleges that a defendant's *passive* conduct violates CUTPA, however, common sense dictates that a court should inquire whether the defendant was under any obligation to do what it refrained from doing.'") (emphasis in original; citation omitted); *Downes-Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 427 (2001) (noting "cases in which we have held that defendants did not violate CUTPA by failing to disclose information when they were under no legal obligation to disclose that information" and collecting cases).

In dismissing plaintiff's CUTPA claim, the *Putnam* court held that "*the essence of the transactions between Putnam and Ikon was the lease of office equipment, not the protection of data* that would be saved on the equipment," and therefore defendant did not owe a duty of disclosure to plaintiff. *Putnam Bank*, 2011 WL 2633658, at *3 (emphasis added). Similarly here, the essence of the alleged "transaction" between Plaintiff McKeen (from Connecticut) and

Samsung Telecommunications America, LLC was the sale of a Samsung mobile phone, not the handling of consumer data that would be saved on the mobile device. *See, e.g.*, SCAC ¶¶ 353-355 (alleging that plaintiffs bought mobile devices manufactured by the OEMs). Because Plaintiffs have pled no facts that even suggest that Defendants owed any duty of disclosure, or that Plaintiffs suffered any ascertainable loss of money or property resulting from the alleged nondisclosure, Plaintiff McKeen's claim under CUTPA fails.

## C.   Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et. seq.*

"A claim under FDUTPA has three elements: '(1) a deceptive or unfair practice; (2) causation; and (3) actual damages.'" *QSGI, Inc. v. IBM Global Fin.*, No. 11-80880-CIV, 2012 WL 1150402, at *4 (S.D. Fla. Mar. 14, 2012) (citation omitted). "'[A]ctual damages' under [the FDUTPA] is 'a term of art.' 'The measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties,' except that where a product is 'rendered valueless' as a result of a defect, 'purchase price is the appropriate measure of damages.'" *QSGI*, 2012 WL 1150402, at *4.

Under the FDUPTA, where the alleged deceptive act is a failure to disclose certain information, Plaintiffs must establish that a duty to disclose actually exists. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337-38 (11th Cir. 2012) (affirming district court's dismissal of FDUTPA claim based on defendant builder's failure to disclose the existence of adjacent former bombing range that remained laden with unexploded bombs because the court held that defendant had no such duty to disclose under Florida law). Here, Plaintiff Levy failed to allege facts sufficient to establish any duty by Defendants to disclose the existence of the Carrier IQ software.

Furthermore, the Complaint does not sufficiently allege actual damages because it merely states in conclusory fashion that "Plaintiffs overpaid for their mobile devices and did not receive the benefit of their bargain, and their mobile devices have suffered a diminution in value." SCAC ¶ 164. However, as set forth in Section I.D. above, Plaintiffs have "failed to plead any facts from which one could plausibly infer the degree to which, or even whether, the market value of any product has changed as a result of [defendants'] purported conduct." *QSGI*, 2012 WL 1150402,

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   at *5.  Nor have Plaintiffs pled that their phones "[have] been rendered valueless as a result of a

2   defect such that a purchase price (also not alleged) could stand in as the market value for purposes

3   of actual damages."  *Id.*  Plaintiff Levy's FDUTPA claim therefore should be dismissed.

4         **D.    Maryland Consumer Protection Act ("MCPA"), Md. Code Com. L. § 13-101,**
               **et. seq.**

5

6         "[T]o prevail on a damages action under the MCPA, 'consumers must prove that they

7   relied on the misrepresentation in question.' 'A consumer relies on a material omission under the

8   MCPA where it is substantially likely that the consumer would not have made the choice in

9   question had the commercial entity disclosed the omitted information.'" *Castle v. Capital One,*

10  *N.A.*, No. WMN-13-1830, 2014 WL 176790, at *7 (D. Md. Jan. 15, 2014) (dismissing plaintiff's

11  MCPA claim because she failed to allege facts that formed the basis for her reliance, or that she

12  would have been likely to do anything differently had she known of the alleged omission)

13  (citations omitted).  In order to recover under the MCPA for a material omission, a plaintiff must

14  establish that the defendant had a duty to disclose the omitted information. *See Betskoff v. Bank*

15  *of Am., N.A.*, No. CCB-12-1998, 2012 WL 4960099, at *3 (D. Md. Oct. 15, 2012) (dismissing

16  MCPA claim where plaintiff "has presented no case law establishing a bank's duty to inform

17  individuals" of the alleged wrongful practice).  "By its express terms," consumers may only

18  pursue a private action under the MCPA when they have incurred "actual injury or loss." *Berg v.*

19  *Byrd*, 124 Md. App. 208, 214-15 (1992) (citation omitted).

20        Here, Plaintiffs' allegations fall short.  First, Plaintiffs have pled no facts to establish the

21  existence of a duty of disclosure regarding Carrier IQ software.  Furthermore, Plaintiffs'

22  allegation that they "relied on the omissions of defendants with respect to the privacy and

23  functionality of the mobile devices" and claim that had they known about the Carrier IQ

24  Software's alleged functionality, "they would not have purchased or used their mobile devices"

25  are too conclusory to state a claim.  SCAC ¶ 280.[16]  Plaintiff Cribbs nowhere identifies any

26  _____

27  [16]Plaintiffs do not make any allegations concerning their reliance in the section of the Complaint addressing their Maryland consumer protection claim.  The allegation concerning their reliance comes from the allegations supporting Plaintiffs' claim under the Texas Deceptive Trade

28  Practices Act.

1   advertisement or statement by any Defendant upon which he claims to have relied. *See Castle*,

2   2014 WL 176790, at *7 (Plaintiff's "conclusory use of the term 'reliance' in [plaintiff's]

3   Complaint is insufficient to survive a motion to dismiss."). In fact, Plaintiffs undermine their

4   allegations of reliance because the Complaint alleges that, despite all their accusations, Plaintiffs

5   continue to use the mobile devices at issue. *See* SCAC ¶ 316 ("Plaintiffs currently own or use . . .

6   mobile devices that are defective and inherently lacking in privacy protections."). Finally,

7   Plaintiff Cribbs fails to allege any actual injury or loss as required under the statute, because, as

8   discussed *supra* at Section I.C., the Carrier IQ software on Plaintiff Cribbs' device was never

9   activated. Accordingly, Plaintiff Cribbs fails to state a claim under the MCPA.

10      **E.      Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et. seq.* and
                New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:2, *et. seq.*

11

12          **1.      Plaintiff Cline Fails to Allege an Actionable Omission Under the
                    Michigan Consumer Protection Act**

13      In addition to Plaintiff Cline's failure to allege fraud with the particularity Rule 9(b)

14  requires, *see supra* at 38, n.13, Plaintiff Cline's claims under the Michigan Consumer Protection

15  act fail for another independent reason. The Michigan Consumer Protection Act proscribes

16  thirty-six enumerated "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the

17  conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). Courts applying the statute to

18  claims of fraud hold that, at a minimum, a plaintiff must "identify which of the MCPA's

19  provisions its [] claim is asserted under." *Innovative Ventures, LLC v. N.V.E., Inc.*, 747 F. Supp.

20  2d 853, 867 (E.D. Mich. 2010), *aff'd in part and rev'd on other grounds*, 694 F.3d 723 (6th Cir.

21  2012). Plaintiff Cline has not alleged which section of the MCPA Defendants allegedly violated,

22  much less which enumerated unfair business practice Defendants have committed. The Michigan

23  Consumer Protection Act claim must be dismissed for this reason as well. *See Innovative*

24  *Ventures, LLC*, 747 F. Supp. 2d at 867 (dismissing claims of fraud under the Michigan Consumer

25  Protection Act for lack of particularity, because the plaintiff did not identify which enumerated

26  unfair conduct the defendant alleged committed).

27      Moreover, Plaintiff Cline fails to allege an actionable omission. Under Michigan law, an

28  omission is only actionable as an unfair business practice if a defendant made "some type of

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

representation that was false or misleading . . . and [] there was a legal or equitable duty of disclosure." *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 782-83 (W.D. Mich. 2006) (internal quotations omitted) (citing *M&D, Inc. v. McConkey*, 585 N.W. 2d 33, 39 (1998)); *see also MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665-66 (6th Cir. 2013) ("[T]o state a claim for the tort of silent fraud, a plaintiff must allege more than non-disclosure; a plaintiff must establish that the defendant had a 'legal duty to make a disclosure.'" (quoting *Hord v. Envt. Research Inst.*, 617 N.W. 2d 543, 550 (Mich. 2000)).  Courts have expressly rejected the theory that, in section 445.903(1)(s), the Michigan legislature rendered omissions actionable absent a duty to disclose.  *See* Mich. Comp. Laws § 445.903(1)(2) (creating liability for the unfair business practice of "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer").  Section 445.903(1) "does not impose any duty on sellers to provide data . . . to customers" absent a "duty to provide [] customers with such information." *Hendricks*, 444 F. Supp. 2d at 782-82.  Rather, courts distinguish the Michigan Consumer Protection Act from negligence law on the basis that the Michigan Consumer Protection Act does not create an independent duty to disclose. *Zine v. Chrysler Corp.*, 236 Mich.App. 261, 277 (1999) (holding that "the voluntary assumption of a duty [to disclose] is a concept applicable to negligence law," but the "principles relating to the imposition of a duty for purposes of negligence liability have little application" to section 445.903).

Plaintiff Cline does not allege any representation that was false or misleading, as is necessary to create liability for an omission.  *See* SCAC ¶¶ 120-122, 124-125, 196, 199, at 89-91, 101 (alleging various omissions but no affirmative representations relating to the Carrier IQ Software on Plaintiffs' phones).  Nor does he allege any plausible duty to disclose that could render any omissions actionable.  He therefore, alleges no "more than non-disclosure," which is not an actionable omission under the Michigan Consumer Protection Act. *MacDonald*, 724 F.3d at 665-66.  Thus, Plaintiff Cline fails to state a claim under the Michigan Consumer Protection Act, and the Court should therefore dismiss his claims in Count III on that basis.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

2

**2.      Plaintiff Cline Fails to Meet the New Hampshire Consumer Protection
Act's Territoriality Requirement**

3

The New Hampshire Consumer Protection Act, New Hampshire Statutes 348-A:2

4  ("NHCPA") prohibits "any unfair method of competition or any unfair or deceptive act or

5  practice in the conduct of any trade or commerce ***within this state***."  N.H. Rev. Stat. § 358-A:2

6  (emphasis added).  "In the context of misrepresentations allegedly made in violation of the

7  Consumer Protection Act, to be actionable under the Act, those misrepresentations must have

8  been made in New Hampshire." *Johnson v. Capital Offset Co., Inc.*, No. 11-CV-459-JD, 2013

9  WL 5406619, at *7 (D.N.H. Sept. 25, 2013).  Therefore, an alleged misrepresentation does not

10  violate the New Hampshire Consumer Protection Act unless it was made "to customers in New

11  Hampshire," or in connection with marketing "products or services to New Hampshire

12  customers." *Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 305-06 (D.N.H. 2012); *see*

13  *BAE Sys. Info. & Elecs. Sys. Integration Inc. v. SpaceKey Components, Inc.*, No. 10-CV-370-LM,

14  2011 WL 1705592, at *6 (D.N.H. May 4, 2011) ("[T]he locus of the conduct proscribed by RSA

15  358-A:2 . . . is the place where the misrepresentation is received.").  The "determinative question,

16  then, is whether" a plaintiff has alleged any conduct by a defendant "within New Hampshire."

17  *Precourt v. Fairbank Reconstr. Corp.*, 856 F. Supp. 2d 327, 343 (D.N.H. 2012).

18

The Complaint does not allege facts meeting the New Hampshire statute's territorial

19  requirement.  Plaintiff Cline fails to allege any omissions or unfair practices that allegedly

20  occurred in New Hampshire.  In fact, he ***disclaims*** any relevant conduct in New Hampshire, as he

21  alleges that he "resides in Seabrook, New Hampshire," but contends that, at all "pertinent times to

22  this matter," he resided in Michigan.  SCAC ¶ 19, at 6.

23

However, that a plaintiff  suffered "harm [] within the state does not state a claim under

24  RSA 358-A:2." *Mueller Co. v. U.S. Pipe & Foundry Co.,* No. Civ. 03-170-JD, 2003 WL

25  22272135, at *6 (D.N.H. Oct. 2, 2003).  Therefore, there is "no support for the proposition that a

26  seller may be liable for a misrepresentation about the quality of its goods not just in the place

27  where that seller's buyer receives the misrepresentation, but, also, in any location to which that

28  buyer may later send the goods it received." *Precourt*, 856 F. Supp. 2d at 344.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Even if Plaintiff Cline did not disclaim conduct in New Hampshire, his claims would still fail. Courts dismiss claims under the NHCPA based on unfair conduct in a "nationwide market" as insufficient to demonstrate an unlawful practice "within the state." *Mueller Co.*, 2003 WL 22272135, at *6 (dismissing claims of unfair business practices based upon a defendant's competitive conduct in a "nationwide market" for failure to meet the territoriality requirement, because a plaintiff did not allege that the defendant actually used an unfair method of competition "in New Hampshire"). Even allegations that a defendant knew its products would be sold in New Hampshire are insufficient to meet the Act's territoriality requirement, absent alleged misrepresentations within the State. *See Precourt*, 856 F. Supp. 2d at 343.

Because Plaintiff Cline not only fails to allege any unfair conduct or omissions that "took place in New Hampshire," such as advertisements he saw and relied on in the state, but also disclaims any conduct in the state, Cline can "prove no set of facts which would entitle [him] to relief on their statutory claim of unfair and deceptive trade practices." *Mueller Co.*, 2003 WL 22272135, at *6. The Court should dismiss Plaintiff Cline's claims under the NHCPA.

### F.   Texas Deceptive Trade Practices Act, Texas. Bus. & Prof. Code § 17.41, *et. seq.*

To recover under the Texas Deceptive Trade Practices Act ("DTPA"), Plaintiffs must establish that they were consumers of Defendants' goods or services; that Defendants violated a specific provision of the DTPA; and that Defendants' acts were a producing cause of actual damages to Plaintiffs. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). The DTPA proscribes four categories of actionable conduct: (1) a false, misleading, or deceptive act or practice; (2) any unconscionable action or course of action; (3) breach of an express or implied warranty; and (4) an act or practice in violation of the Insurance Code. Tex. Bus. & Com. Code Ann. § 17.50(a). Plaintiffs seek to allege claims under the first three categories, SCAC ¶¶ 280-282, but their claims fail for multiple reasons.

#### 1.   Plaintiffs Fail to Allege That Defendants' Conduct was a Producing Cause of anyActual Damages

As a threshold matter, Plaintiffs Laning, Portales, White, and Thomas fail to allege that

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Defendants' omissions were a producing cause of Plaintiffs' actual damages as required under the DTPA. *See Amstadt*, 919 S.W.2d at 649.  In *Amstadt*, the Court held that plaintiff homeowners did not have a viable DTPA cause of action against manufacturers of failed plumbing systems and components where the manufacturers' marketing efforts were directed to homebuilders and building officials. *Id.* at 650-52.  Because the homebuilders and building officials were capable of assessing the suitability of the plumbing products for use in the homes, the Court held that the alleged marketing misrepresentations by the manufacturers were not sufficiently connected with the plaintiffs' transactions. *Id*.  Here, Plaintiffs allege that they would not have purchased, or paid as much for, the devices had they known that the Carrier IQ software "was installed" and "its functionality."  SCAC ¶ 280.  However, Plaintiffs' conclusory allegation cannot substitute for the requisite factual allegations connecting Defendants' alleged omissions to Plaintiffs' transactions under the DTPA.  Because the mobile devices and Carrier IQ software at issue were marketed and sold to Carriers who were capable of assessing the suitability of the software's functionality for use in the mobile devices subsequently sold to Plaintiffs, Plaintiffs have failed to sufficiently allege a connection between Defendants' alleged omissions and Plaintiffs' transactions.  Accordingly, Plaintiffs Laning, Portales, White, and Thomas fail to sufficiently allege a DTPA claim under any category of actionable conduct.

### 2.    Plaintiffs Fail to Allege a Cause Of Action Under the DTPA's Categories of Actionable Conduct

Even if they could allege that Defendants' conduct was a producing cause of cognizable damages under the DTPA, Plaintiffs Laning, Portales, White and Thomas nonetheless fail to allege a cause of action under the first, second, and third categories of actionable conduct under the DTPA.

As discussed *supra* at IV(A)(1) & 39, n. 13, their claim under the first category fails because Plaintiffs have failed to plead any "false, misleading, or deceptive" act with the particularity required by Rule 9(b).

Plaintiffs Laning, Portales, White and Thomas also fail to allege an unconscionability claim under the second category of the DTPA.  SCAC ¶ 281. Under the Act, an unconscionable

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   action or course of action is one which "takes advantage of the lack of knowledge, ability,

2   experience, or capacity of a person to a grossly unfair degree." Tex. Bus. & Com. Code §

3   17.45(5).  To prove an unconscionable action or course of action, the Plaintiff must show the

4   resulting unfairness was "glaringly noticeable, flagrant, complete, and unmitigated." *Bradford v.*

5   *Vento*, 48 S.W.3d 749, 760 (Tex. 2001).

6       "[P]roving unconscionability in a []DTPA case is difficult." *Strauss v. Ford Motor Co.*,

7   439 F. Supp. 2d 680, 687 (N.D. Tex. 2006).  It is not enough to allege that a defendant "simply . .

8   . took unfair advantage" of the consumer. *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex. 1985).

9   Nor is it enough that there is "some evidence" that defendant "misrepresented the qualities or

10  uses" or "the quality or standards of its goods and services." *Apache Transp., Inc. v. Texas Am.*

11  *Express, Inc.*, No. 05-94-01176-CV, 1995 WL 155212, at *5-6 (Tex. Ct. App. Apr. 4, 1995) (not

12  designated for publication) (holding that, despite some evidence that the value of defendant's

13  repair services was less than price paid by plaintiff, transaction did not result in "glaring" and

14  "flagrant" gross disparity between the value received and consideration paid such that defendant

15  engaged in unconscionable conduct actionable under DTPA).

16      For instance, in *Chastain*, plaintiffs relied on defendants' misrepresentations that plots of

17  land would be restricted to residential use in their purchase of certain lots.  700 S.W.2d at 580.

18  Later, defendants allowed a plot to be used in a commercial manner and, when confronted by

19  plaintiffs, responded with a threat. *Id.*  Even so, the court did not find that defendants' conduct

20  rose to the level of unconscionability under the DTPA. *Id.* at 584.

21      The conduct alleged here does not rise to the level of the facts in *Chastain*.  Plaintiffs

22  allege only that Defendants failed to disclose that their mobile devices contained Carrier IQ

23  software and the software's functionality.  SCAC, ¶ 280.  Plaintiffs do not allege instances of

24  Defendants making affirmative misrepresentations, nor do Plaintiffs allege that Defendants

25  acknowledged such misrepresentations and responded threateningly.  Because Plaintiffs'

26  allegations of unconscionability do not even approach the required standard, they fail to allege a

27  claim under that prong of the DTPA. *See Strauss*, 439 F. Supp. 2d at 687-88 (dismissing DTPA

28  claim where the "allegations pale[d] in comparison to the facts in *Chastain*).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Finally, as discussed *infra* at Sections V-VI, Plaintiffs have failed to plead an underlying breach of express or implied warranty and, therefore, their claim under the third category of the DTPA also fails. Because Plaintiffs fail to state a claim under any of the categories of underlying conduct they have identified, their DTPA claim should be dismissed.

### G.   Washington Consumer Protection Act, Wash. Rev. Code 19.86.010, *et seq.*, ("WCPA")

Under the WCPA, "[a]ny person who is injured in his or her business or property" by "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" has a right to bring a civil action for damages. Wash. Rev. Code 19.86.020, 19.86.090. The elements of a WCPA claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) impacting the public interest, (4) causing injury to the plaintiff's business or property and (5) the injury is causally linked to the unfair or deceptive act. *Frias v. Asset Foreclosures Servs., Inc.*, 957 F. Supp. 2d 1264, 1270 (W.D. Wash. 2013) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 780, 719 P.2d 531 (1986)).

As an initial matter, Plaintiff Sandstrom's claim under the WCPA fails because he cannot allege injury to his business or property. Under the WCPA, the "injury involved need not be great, [but] it must be established." *Hangman*, 105 Wash.2d at 792. In *Cousineau*, 2012 WL 10182645, at *9-10 , the plaintiff alleged that Microsoft diminished the value of her mobile phone by collecting geolocation data and transmitting it to company servers using her data plan. The court held that was insufficient to state an injury to business or property under the WCPA. *Id.* Specifically, there was "no support for the assertion that the covert tracking diminished the phone's market value" and no allegation that the plaintiff had a plan allowing her only a finite amount of data. *Id.* Similarly, here, all Plaintiffs can allege is that they "overpaid for their mobile devices" and that their "mobile devices have suffered a diminution in value." SCAC ¶ 301. Not only are these assertions questionable for reasons already explained, but also they suffer from the same lack of support as did the assertions in *Cousineau*, and the WCPA claim should be dismissed here for the same reason.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    In addition, to the extent Plaintiff Sandstrom's WCPA claim is based on the theory that

2    HTC should have disclosed the alleged failure to deactivate debug code, which was investigated

3    by the FTC, that claim fails for the additional reason that Sandstrom cannot allege that HTC was

4    aware of that issue at the time he purchased his phone.  *See Griffith v. Centex Real Estate Corp.*,

5    93 Wash. App. 202, 214 (1998) (duty to disclose arises when "facts are known to the seller.").

6    **V.    THE COMPLAINT FAILS TO STATE CLAIMS AGAINST THE OEMS FOR**
     **BREACH OF IMPLIED WARRANTY**

7
         **A.    Plaintiffs Failed to Allege Pre-Suit Notice as Required Under the Laws of**
8            **California, Maryland, Michigan, New Hampshire, Texas, and Washington**

9            As an initial matter, Plaintiffs are precluded from asserting claims for breach of implied

10   warranty under the laws of California, Maryland, Michigan, New Hampshire, Texas, and

11   Washington because they do not allege they provided their respective device manufacturers (or in

12   the case of Maryland, the immediate seller) with notice of the alleged breach and an opportunity

13   to cure before filing suit.  Under those states' laws governing implied warranties, Plaintiffs must

14   provide reasonable notice of the alleged breach of implied warranty to the immediate seller of the

15   allegedly defective good "or be barred from any remedy."  Md. Comm. Code § 2-607(3)(a); *see*

16   *also* Mich. Comp. Laws 440.2607(3)(a) (a buyer "must within a reasonable time after he

17   discovers or should have discovered any breach notify the seller" of an alleged breach of an

18   implied warranty, "or be barred from any remedy"); N.H. Rev. Stat. 382-A:607(3)(a) (same);

19   Tex. Bus. & Com. Code § 2.607(c)(1) ("the *buyer must* within a reasonable time after he

20   discovers or should have discovered any breach *notify the seller* of breach or be barred from any

21   remedy") (emphasis added); *U.S. Tire–Tech. v. Boeran, B.V.*, 110 S.W.3d 194, 201 (Tex. Ct.

22   App. 2003) (A condition precedent to Plaintiffs' claim under the Texas DPTA's breach of express

23   or implied warranty category of actionable conduct is pre-suit notice); Rev. Code. Wash. 62A.2-

24   607(3)(a) (Under Washington law, "[t]he buyer must within a reasonable time after he or she

25   discovers or should have discovered any breach notify the seller of breach or be barred from any

26   remedy"); Cal. Comm. Code § 2607(3)(A) (requiring pre-suit notice for implied warranty claim

27   under California law); *Donohue*, 871 F. Supp. 2d at 929-30 (dismissing warranty claims under

28   California and Washington law for failure to give pre-suit notice).  Allowing suit without prior

notice would, as is the case here, "invite gamesmanship by plaintiffs who know they intend to

assert a warranty claim but want to avoid giving a defendant notice before filing suit." *Id.* at 929.

Nowhere in the Complaint is there any allegation that any Plaintiff contacted the OEMs or

the immediate sellers of their devices regarding the alleged problems with their mobile device

before filing this lawsuit.  Plaintiffs attempt to evade this requirement by alleging that the OEMs

had notice via other lawsuits "that preceded filing of either consolidated amended complaint,"

from publications and press reports and Senator Franken's letters to Carrier IQ and certain

Carriers and OEMs.  SCAC ¶¶ 342, 350.  Plaintiffs further claim that they are somehow excused

from the requirement to plead notice to direct sellers because "the direct sellers are not defendants

in this action." *Id.*  But courts have rejected these attempts to evade pre-suit notice requirements.

*See Lloyd v. Gen. Motors Corp.*, 575 F. Supp. 714, 723 (D. Md. 2008) (rejecting plaintiffs'

argument that similar lawsuits filed against manufacturer defendants in other jurisdictions

satisfied Maryland's notice requirement and dismissing implied warranty claim where plaintiffs

failed to provide notice to non-party immediate sellers); *K&M Joint Venture v. Smith Int'l, Inc.*,

669 F.2d 1106, 1115 (6th Cir. 1982) (A "notice" under Michigan law must inform a seller that a

"transaction was claimed to involve a breach," thereby opening "the way for normal settlement

through negotiation"); *Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 132 (D.N.H.

1984) (holding that the failure to provide pre-suit notice is a complete defense to breach of

implied warranty claims under New Hampshire law); *Gorman v. Am. Honda Motor Co.*, 302

Mich.App. 113, 122-123 (2013) (failure of plaintiff to provide pre-suit notice was not

reasonable); *Martin v. Home Depot USA, Inc.*, 369 F. Supp. 2d 887, 893 (W.D. Tex. 2005)

(dismissing Texas DTPA claim based on breach of warranty due to lack of pre-suit notice).  The

Sixth Circuit's decision in *K&M Joint Venture* is particularly instructive.  There, the plaintiff

made complaints to the seller over the course of several months.  The court still found there was

not sufficient pre-suit notice because the plaintiff never once claimed a breach or demanded that

the defendant "pay the cost of having it repaired."  *K&M Joint Venture*, 669 F.2d at 1114.  Here,

the Complaint does not allege any Plaintiff notified a Defendant or immediate seller of a breach

or demanded any repayment before filing suit.  Plaintiffs' failure to allege that they provided the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   necessary pre-suit notice cannot be cured, and their implied warranty claims should be dismissed

2   with prejudice.

3       **B.      Plaintiffs' Breach of Implied Warranty Claims Fail Because They Do not Adequately Allege Their Mobile Devices Were Unmerchantable**

4

5           Although different states analyze implied warranty claims differently, all of the relevant

6   states require—at a bare minimum—that plaintiffs asserting claims for breach of the implied

7   warranty of merchantability establish that the product at issue was unmerchantable, that is, not

8   "fit for the ordinary purposes for which such goods are used."  *In re iPhone 4S Consumer Litig.*,

9   No. C 12-1127 CW, 2013 WL 3829653, at *15 (N.D. Cal. July 23, 2013) (*citing* Cal. Civ. Code

10  § 1791.1(a) and Cal. Com. Code § 2134(2)(c)); *see also, e.g.*, Md. Code Ann. Com. Law §§ 2-

11  314(2)(a) & (c); Mich. Compl. Laws. § 440.2314; Miss. Code Ann. § 75-2-314(2)(a) & (c); N.H.

12  Rev. Stat. § 382-A:2-314; Tex. Bus. & Com. Code § 2.314(b)(3); *Strauss*, 439 F. Supp. 2d at 684

13  (under Texas law, "[a] product must be *unfit* for its ordinary purposes" to support a claim for

14  breach of warranty); Wash. Rev. Code § 62A.2-314(2)(c).  Because the Complaint fails to allege

15  Plaintiffs' phones were unfit for their ordinary purpose, their implied warranty claims should be

16  dismissed.

17          Courts consistently have held that the intended and ordinary use for a smartphone for

18  purposes of an implied warranty of merchantability claim is strictly limited to "functions like

19  making and receiving calls, sending and receiving text messages, or allowing for the use of

20  mobile applications."  *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *16 (dismissing

21  implied warranty claim because plaintiffs did not allege the iPhone 4S was deficient in any of

22  these functions but rather in providing the Siri feature in accessing these functions);[17] *Williamson*

23  *v. Apple, Inc.*, No. 5:11-cv-00377 EJD, 2012 WL 3835104, at *8-9 (N.D. Cal. Sept. 4, 2012)

24  (dismissing implied warranty claim based on plaintiff's allegation that his iPhone 4's glass

25  housing was defective because plaintiff did not allege his phone was deficient in making and

26

27  [17]Indeed, Plaintiffs' complaints regarding the mobile devices do not even involve a feature of the mobile devices themselves, but rather a service provided for Carrier IQ's customers, the Carriers.

28  SCAC ¶¶ 53-54.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

receiving calls, sending and receiving text messages or allowing for the use of mobile applications); *In re Google Phone Litig.*, No. 10-cv-01177-EJD, 2012 WL 3155571, at *6 (N.D. Cal. Aug. 2, 2012) (allegations of inconsistent 3G service did not sufficiently allege phone was unmerchantable, however, allegations that for some period of time phone could not obtain phone service or use any features of the phone were sufficient for unmerchantability claim). Here, Plaintiffs similarly failed to allege that the CIQ software prevented their phones from performing these basic functions.

Plaintiffs contend that their mobile devices were unfit for their ordinary use because the devices allegedly "intercept" certain information, "store most of this information in device memory," and "transmit[ ] such information . . . to Carrier IQ and/or wireless carriers and/or device manufacturers." SCAC ¶ 339; *see also* SCAC ¶ 324.  However, because the implied warranty of merchantability "arises by operation of law" to provide "for a minimum level of quality," courts from the relevant jurisdictions have all adopted a narrow reading of ordinary purpose.  *See In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *16; *Birdsong*, 590 F.3d at 958 (dismissing California implied warranty claim because allegation that iPods were capable of operating at volumes that could damage users' hearing did not constitute an allegation that the product lacked "*even the most basic degree of fitness*" for the ordinary purpose of listening to music) (emphasis added).[18]

_____

[18] *See also Montgomery v. Kraft Foods Global, Inc.*, No. 1:12-CV-00149, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012) (Michigan law) (a plaintiff's allegations that she is unable to use her Starbucks Tassimo coffee brewer because the "T-discs" designed to be used with the brewer had become scarce since the time she purchased the brewer did not state a claim for breach of the warranty of merchantability, because the plaintiff did not allege that brewer was defective in its ordinary purpose—brewing coffee); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009) (California law) (allegation of defective electrical control boards that caused machines to stop mid-cycle and required rebooting to complete a single load of laundry failed to adequately allege that machines were unfit for their ordinary purpose of cleaning clothes at all); *Strauss*, 439 F. Supp. at 684 (Texas law) (dismissing claim for breach of implied warranty of merchantability because allegation that plaintiff's car was sold without hardware required to attach the car's front license plate did not render the vehicle unfit for its ordinary purpose of providing transportation); *Willard v. Park Indus., Inc.*, 69 F. Supp. 2d 268, 274 (D.N.H. 1999) (New Hampshire law) (holding that a plaintiff failed to establish breach of the implied warranty of merchantability because the plaintiff failed to demonstrate how a conveyor system was "unfit for its ordinary and intended use"); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 174 (S.D. Miss. 1996) (Mississippi law) (dismissing plaintiffs' implied warranty of merchantability claim because plaintiffs failed to state a claim that car was not fit for the ordinary purpose of driving based on allegations regarding inferior quality of the

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    In short, the implied warranty of merchantability does not "impose a general requirement

2    that goods precisely fulfill the expectation of the buyer." *Am. Suzuki Motor Corp. v. Superior*

3    *Court*, 37 Cal. App. 4th 1291, 1296 (1995); *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56, 57

4    (Tex. 1998) (under Texas law, "a product which performs its ordinary function adequately does

5    not breach the implied warranty of merchantability merely because it does not function as well as

6    the buyer would like, or even as well as it could."). Allegations that a product did not perform to

7    the plaintiff's liking or expectations are insufficient to maintain a breach of warranty claim.

8    Accordingly, the SCAC fails to state a breach of implied warranty claim under the laws of

9    California, Maryland, Michigan, Mississippi, New Hampshire, Texas, and Washington because

10   Plaintiffs have failed to allege their mobile devices are unfit for ordinary purposes.[19]

11   **C.    Plaintiffs Claims Under California Commercial Code Section 2314 Fail
         Because the SCAC Does not Allege Plaintiffs Were in Vertical Privity With**

12       **Defendants**

13   An implied warranty claim under Cal. Com. Code section 2314 requires that the plaintiff

14   be in vertical privity with the defendant. A buyer and seller stand in vertical privity if they are in

15   adjoining links of the distribution chain. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

16   1023 (9th Cir. 2008). A complaint, such as this one, lacking sufficient allegations to establish

17   ─────────────────────────

18   car's fiberglass roof); *Simpson v. Standard Container Co.*, 527 A.2d 1337, 1342 (Md. Ct. Spec.
     App. 1987) (Maryland law) (affirming dismissal of implied warranty claim involving gasoline

19   container that did not contain childproof cap because plaintiffs failed to allege that it was "not fit
     for" its ordinary purpose of storing gasoline); *Hertzog v. WEBTV Networks, Inc.*, 112 Wash. App.

20   1043 (2002) (Washington law) (affirming dismissal of implied warranty of merchantability claim
     where Plaintiff alleged that a universal remote was "not compatible with each and every piece of

21   equipment manufactured" but could not allege that there was any defect that "causes it not to
     operate correctly").

22   [19] Nor can Plaintiffs' allegation that the Carrier IQ Software depletes the mobile devices battery
     power and life save their implied warranty claim. In particular, Plaintiffs allege that "[b]attery

23   power is the lifeblood of mobile devices; without it, devices cannot fulfill their ordinary
     purposes." SCAC ¶ 341. Courts have squarely rejected similar allegations as a basis for alleging

24   unmerchantability. In *Tomek*, Plaintiff argued that the MacBook he purchased was not fit for
     ordinary use because under certain conditions, the battery and charger failed to adequately charge

25   his computer such that "the battery cycle counts may be caused to increase" and "the system shuts
     down, rendering it unfit for any use, let alone ordinary use." *Tomek*, 2012 WL 2857035, at *1, 7.

26   The court dismissed the plaintiff's implied warranty claim because his allegation "that his
     computer shut down once over the course of a six month period was insufficient *as a matter of*

27   *law* to state a claim that the MacBook was not fit for ordinary use." *Id.* (emphasis added.) Here,
     none of the Plaintiffs have alleged that the Carrier IQ software drained battery power such that it

28   caused their mobile devices to shut down even once. This allegation is thus insufficient as a
     matter of law to support a claim that Plaintiffs' mobile devices are not fit for ordinary use.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

vertical privity must be dismissed. *Id.* at 1023-24 (affirming dismissal of implied warranty claim for lack of vertical privity where plaintiff did not plead any of the particularized exceptions[20] to the vertical privity rule); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 0148710 (N.D. Cal. Mar. 14, 2014) (*citing Paramount Farms, Int'l LLC v. Ventilex B.V.*, 500 F. App'x. 586 (9th Cir. 2012)).

Plaintiffs' conclusory allegations of vertical privity all fail.  First, Plaintiffs merely allege that they "purchased their mobile devices from actual or apparent agents of the Device Manufacturers, such as the Device Manufacturers' authorized dealers."  SCAC ¶ 336.  Such a naked allegation of agency is insufficient.  *See, e.g.,  Lintz v. Bank of Am., N.A.*, No. 5:13-cv-01757-EJD, 2013 WL 5423873, at *10 (N.D. Cal. Sept. 27, 2013) (Plaintiff had not pled sufficient facts to support her theory of agency where facts did not allege purported agent had authority to bind or represent purported principal); *Reed v. Wells Fargo Bank*, 2012 WL 2061623, at *3 (N.D. Cal. June 7, 2012) (dismissing complaint without prejudice and noting that if plaintiffs amend the complaint they must "take care to plead facts which, if true, would be sufficient to show" an agency relationship existed).  Thus, the SCAC does not contain factual allegations sufficient to establish an agency relationship that would put the Plaintiffs and Defendants in vertical privity.

Plaintiffs' further claim that written warranties provided by the Defendants establish vertical privity also fails.  *See* SCAC ¶ 337.  It is well established that the existence of an express warranty does not create privity.  *See In re Sony PS3 Other OS Litig.*, No. C 10-1811 RS, 2011 WL 672637, at *4 (N.D. Cal. Feb. 17, 2011) (noting "clear California precedent that privity remains a requirement in implied warranty claims" and dismissing implied warranty claims where plaintiff attempted to establish an "exception to the privity rule" by alleging reliance on an express warranty to the same effect) (citation omitted); *Postier v. Louisiana-Pacific Corp.*, No. C-09-3290-JCS, 2009 WL 3320470, at *6 (N.D. Cal. Oct. 13, 2009) (noting "the well-established

---

[20]The limited exceptions to vertical privity recognized under California law are:  plaintiff relied on written labels or advertisements of a manufacturer, the case involves foodstuffs, pesticides or pharmaceuticals or where the end user is an employee of the purchaser.  *Clemens*, 534 F.3d at 1023.  Plaintiffs do not plead these exceptions in the Complaint.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

principle under California law that privity is required in cases alleging breach of an implied warranty" and rejecting plaintiff's argument that privity is not required if a defendant provides an express warranty).  Accordingly, the OEMs' written warranties cannot be a basis to establish vertical privity.

Finally, Plaintiffs make the unsupported assertion that they were "intended third-party beneficiaries of the Device Manufacturers' contract for sale of devices to the persons or entities from whom [they] ultimately purchased their mobile devices."  SCAC ¶ 337.  To adequately plead vertical privity by virtue of status as a third-party beneficiary, however, Plaintiffs must "plead a contract which was made expressly for his or her benefit and one in which it clearly appears that he or she was the beneficiary."  *In re Google Phone Litig.*, 2012 WL 3155571, at *9 (citation omitted) (dismissing breach of implied warranty claim where plaintiffs failed to adequately plead their status as a third party beneficiary).  No such allegation can be (or could be) found in the SCAC.  For all these reasons Plaintiffs fail to state a claim under Cal. Com. Code section 2314 because they are not in privity with Defendants.

**D.     Claims Under the Song-Beverly Act Fail Because the SCAC Does not Allege any Plaintiffs Purchased Their Mobile Devices in California**

Plaintiffs' claims under the Song-Beverly Act also fail for the independent reason that Plaintiffs do not plead that they purchased their mobile devices in California.  "By its terms, the Song-Beverly Act applies only to goods sold in California."  *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005) ("The Song-Beverly Act only governs goods sold at retail in California").  Here, Plaintiffs do not allege that they purchased their mobile devices in California.  Accordingly, their claims under the Song-Beverly Act fail.[21]

---

[21]While Plaintiffs Phong, Pipkin and Patrick allege that they reside in California, SCAC ¶¶ 9-11, the Complaint does not allege that any of the Plaintiffs purchased their mobile devices in California.  Even if Plaintiffs Phong, Pipkin and Patrick can make this allegation, the Song-Beverly Act claim should be dismissed as to all the other named Plaintiffs (and any unnamed class members) who did not make their mobile device purchase in California.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT

Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claim fails for all the same reasons as their implied warranty claims.  Although the MMWA provides a federal cause of action for state warranty claims," it "does not expand the rights under those claims."  *Soares v. Lorono*, No. 12-cv-05979-WHO, 2014 WL 723645, * 5, n.3 (N.D. Cal. Feb. 25, 2014) (dismissing Plaintiff's MMWA claim because "failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnusson-Moss") (citation omitted).  Therefore, the Plaintiffs' "claims under the Magnuson-Moss Act stand or fall with [their] . . . implied warranty claims under state law."  *Clemens*, 534 F.3d at 1022; *see also Tasion,* 2014 WL 1048710, at *10 (holding that "Plaintiffs' MMWA claim fails insofar as all remaining state law warranty claims have been dismissed"); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1101 (S.D. Cal. 2010) (dismissing Plaintiffs' MMWA claim with prejudice "[b]ecause Plaintiffs have failed to state any valid claims under state law for breach of express or implied warranties.").  Because none of the Plaintiffs is able to state a valid claim for breach of implied warranty under the applicable states' laws, Plaintiffs' MMWA claim also fails.

## VII.   CONCLUSION

For the reasons stated above, the Court should dismiss the Second Consolidated and Amended Complaint in its entirety.

Dated: July 23, 2014

By: _/s/ Rodger R. Cole_____
    Rodger R. Cole (CSB No. 178865)
    rcole@fenwick.com
    Molly R. Melcher (CSB No. 272950)
    mmelcher@fenwick.com
    FENWICK & WEST LLP
    801 California Street
    Mountain View, CA 94041
    Ph:   (650) 988-8500
    Fax:  (650) 938-5200

    Tyler G. Newby (CSB No. 205790)
    tnewby@fenwick.com
    Jennifer J. Johnson (CSB No. 252897)

Fenwick & West LLP
Attorneys at Law
Mountain View

1  jjjohnson@fenwick.com
   FENWICK & WEST LLP
2  555 California Street, 12th Floor
   San Francisco, CA 94104
3  Ph: (415) 875-2300
   Fax: (415) 281-1350

4
   *Attorneys for Defendant Carrier IQ, Inc.*
5
   By: */s/ Rosemarie T. Ring*
6     Rosemarie T. Ring (SBN 220769)
      Rose.Ring@mto.com
7     Jonathan H. Blavin (SBN 230269)
      Jonathan.Blavin@mto.com
8     Bryan H. Heckenlively (SBN 279140)
      Bryan.Heckenlively@mto.com
9     MUNGER, TOLLES & OLSON, LLP
      560 Mission Street
10    Twenty-Seventh Floor
      San Francisco, CA  94105-2907
11    Phone: (415) 512-4000
      Fax: (415) 512-4077
12
      Henry Weissmann (SBN 132418)
13    Henry.Weissmann@mto.com
      MUNGER, TOLLES & OLSON, LLP
14    355 South Grand Avenue,
      Thirty-Fifth Floor
15    Los Angeles, CA  90071-1560
      Telephone:  (213) 683-9100
16    Facsimile:   (213) 687-3702

17    *Attorneys for Defendants HTC America, Inc. and HTC Corporation*

18
   By: */s/ Simon J. Frankel*
19    Simon J. Frankel
      sfrankel@cov.com
20    Katherine Gasztonyi
      kgasztonyi@cov.com
21    COVINGTON & BURLING LLP
      1 Front St., 35th Floor
22    San Francisco, CA 94111
      Phone:  (415) 591-6000
23    Fax: (415) 591-6091

24    *Attorneys for Defendant Huawei Devices USA, Inc.*
25
   By: */s/ Jeff E. Scott*
26    Jeff E. Scott (SBN 126308)
      ScottJ@gtlaw.com
27    Lori Chang (SBN 228142)
      ChangL@gtlaw.com
28    Rebekah S. Guyon (SBN 291037)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

GuyonR@gtlaw.com
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700
Fax: 310-586-7800

Ian C. Ballon (SBN 141819)
Ballon@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Tel: 650-328-8500
Fax: 650-328-8508

*Attorneys for Defendant LG Electronics
MobileComm U.S.A., Inc.*


By: */s/ Norman K. Beck*
Peter C. McCabe III
pmccabe@winston.com
Norman K. Beck
nbeck@winston.com
Christopher J. Letkewicz
cletkewicz@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Telephone:      (312) 558-5600
Facsimile:      (312) 558-5700

Krista M. Enns (SBN 206430)
kenns@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone:      (415) 591-1000
Facsimile:      (415) 591-1400

*Attorneys for Defendant
Motorola Mobility LLC*


By: */s/ Oluwaseun O. Ajayi*
Oluwaseun Ajayi (SBN 250903)
oajayi@park-law.com
Alan A. Wright
awright@park-law.com
H.C. Park & Associates, PLC
1894 Preston White Drive
Reston, VA 20191
Phone: (703) 288-5105
Fax: (703) 288-5139

1

*Attorneys for Defendant Pantech Wireless, Inc.*

2

By: */s/ Lance A. Etcheverry*
    Lance A. Etcheverry (SBN 199916)

3

    lance.etcheverry@skadden.com
    SKADDEN, ARPS, SLATE, MEAGHER &

4

    FLOM LLP
    300 South Grand Avenue, Suite 3400

5

    Los Angeles, California 90071
    Phone:  (213) 687-5000

6

    Fax: (213) 687-5600

7

    S. Sheryl Leung (SBN 238229)
    sheryl.leung@skadden.com

8

    SKADDEN, ARPS, SLATE, MEAGHER &
    FLOM LLP

9

    525 University Ave. Suite 1400
    Palo Alto, CA 94301

10

    Phone: (650) 470-4544
    Fax: (650) 798-6605

11

*Attorneys for Defendant Samsung*

12

*Telecommunications America, LLC*

13

14

### ATTESTATION PURSUANT TO LOCAL RULE 5-1(i)(3)

15

    I, Rodger R. Cole, am the ECF User whose identification and password are being used to

16

file this **DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFFS'**

17

**SECOND CONSOLIDATED AMENDED COMPLAINT**.  In compliance with Civil Local

18

Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.

19

20

Dated:   July 23, 2014         */s/ Rodger R. Cole*
                        Rodger R. Cole

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW