# Exhibit B

November 21, 2011

VIA EMAIL

Re: Carrier IQ's Cease-and-Desist Demand to Trevor Eckhart

Dear Mr. Dullea:

As you know, the Electronic Frontier Foundation represents Trevor Eckhart, the security researcher who published an analysis of Carrier IQ's software at http://androidsecuritytest.com/features/logs-and-services/loggers/carrieriq, and posted copies of Carrier IQ training materials at http://www.androidfilehost.com/main/.TrevE/CIQ/ and http://www.multiupload.com/BAAKNNSM3J. Prior to Mr. Eckhart's publication, these materials were freely available to the public on a Carrier IQ website, http://dis1.water.carrieriq.com.

We have now had a chance to review your allegations against our client, and have concluded that they are entirely baseless. Mr. Eckhart used and made available these materials in order to educate consumers and security researchers about the functionality of your software, which he believes raises substantial privacy concerns. Mr. Eckhart's legitimate and truthful research is sheltered by both the fair use doctrine and the First Amendment.

Copyright Issues

With respect to your allegations of copyright infringement, Mr. Eckhart's analysis and publication of Carrier IQ's training materials is a classic fair use and, therefore, non-infringing. 17 U.S.C. § 107 ("the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting . . . or research, is not an infringement of copyright."). Courts generally consider four factors in a fair use analysis: 1) the purpose and character of the use, 2) the nature of the copyrighted work, 3) the amount and substantiality of the portion used, and 4) the effect of the use on the potential market for the work. *Id.*; *Campbell v. Acuff-Rose Music,* 510 U.S. 569, 577 (1994). Each of these factors favors Mr. Eckhart.

*Purpose and character of the use.* Mr. Eckhart's copying of any Carrier IQ materials was intended not to replicate Carrier IQ's original purpose for the documents, but rather to facilitate research and critical commentary about Carrier IQ's software. It is therefore a highly transformative use. *See generally Campbell,* 510 U.S. at 579 (transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright"); *Castle Rock Ent. v. Carol Pub. Group, Inc.,* 150 F.3d 132, 141 (2d Cir. 1998) (a transformative work "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society."); *Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1201 (N.D. Cal. 2004) (finding students' publication of voting machine manufacturer's email archive to support public criticism of voting machines a transformative use).

*Nature of the copyrighted work.* The materials in question are factual rather than creative, and therefore subject to only the thinnest copyright protection. *See Harper & Row, Publrs., Inc. v. Nation Enters.,* 471 U.S. 539, 563 (1985) ("The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy.").

*Amount and substantiality used.* Mr. Eckhart has copied no more than necessary for purposes of his research. His analysis of Carrier IQ software was based in significant part on the training materials, which he provided to the public for the purpose of allowing others to independently verify his findings. As the Supreme Court has recognized, fair uses often involve substantial portions of an original work. *Campbell*, 510 U.S. at 588; *see also Mattel, Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 803 n.8 (9th Cir. 2003) (holding that "entire verbatim reproductions are justifiable where the purpose of the work differs from the original.").

*Effect of the use on the potential market for the work.* Critical transformative uses rarely—if ever—supplant markets for the original material. *Campbell*, 510 U.S. at 591-92; *Harper & Row*, 471 U.S. at 567-69. The training materials published by Mr. Eckhart plainly do not invade any licensing market for works that may be copyrighted by Carrier IQ.

More broadly, Mr. Eckhart published his analysis of Carrier IQ and the underlying training materials to educate the public about privacy concerns raised by your software, which is installed by default on many mobile devices, unbeknownst to most consumers. Dissemination of this information unquestionably serves the public interest. Nimmer on Copyright, § 13.05[B][4] ("the public interest is also a factor that continually informs the fair use analysis."); *see also Sony v. Universal*, 464 U.S. 417, 431-32 (1984) ("courts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest."); *Mattel*, 353 F.3d at 806 ("the public benefit in allowing . . . social criticism to flourish is great."); *Online Policy Group*, 337 F. Supp. 2d at 1203 (students' publication of voting machine manufacturer's emails to inform the public about problems in voting machines served the public interest).

"False Allegations" Issues

You also claim that Mr. Eckhart published "false allegations" that are "without substance," "untrue," and that Carrier IQ considers "damaging to [its] reputation and the reputation of [its] customers." We have repeatedly asked you to specify the statements you believe are actionable. You have failed to do so, and have instead merely repeated your broad accusations. We believe you are not able to substantiate your allegations because Mr. Eckhart's factual findings are true. If you are able to specify any statement that you believe is false, Mr. Eckhart will be happy to provide you with the documentation of that finding.

Moreover, your client is a public figure. Under well-established Supreme Court precedent, commentary and criticism regarding Carrier IQ's professional activities receive additional protections under the First Amendment, because there is a heightened public interest in facilitating such speech. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988).

Given that there is no basis for your legal claims, we must conclude that your threats are motivated by a desire to suppress Mr. Eckhart's research conclusions, and to prevent others from verifying those conclusions. Mr. Eckhart stands by his research and, accordingly, declines to meet your demands. We ask that you immediately withdraw your allegations in writing.

November 21, 2011
Page 3

Nothing in this letter shall be deemed to waive any of Mr. Eckhart's rights or remedies, all of which are expressly reserved.

If you have any further concerns, please do not hesitate to contact me.

Sincerely,

Marcia Hofmann, Esq.
Senior Staff Attorney