Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Bruce L. Simon (CSB No. 96241)
PEARSON SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Interim Co-Lead Counsel for Plaintiffs
and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>CARRIER IQ, INC. CONSUMER PRIVACY LITIGATION<br><br><br><br><br><br><br>This Document Relates to:<br><br>ALL CASES | No. C-12-md-2330-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**<br><br>Date: February 16, 2016<br>Time: 2:00 p.m.<br>Judge: Honorable Edward M. Chen<br>Dept.: Courtroom 5, 17th Floor |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 16, 2016, at 2:00 p.m., or as soon thereafter as may be heard in the courtroom of the Honorable Edward M. Chen, United States District Court for the Northern District of California, San Francisco Division, Plaintiffs Patrick Kenny, Jennifer Patrick, Dao Phong, Daniel Pipkin, Ryan McKeen, Leron Levy, Luke Szulczewski, Michael Allan, Gary Cribbs, Bobby Cline, Shawn Grisham, Mark Laning, Clarissa Portales, Eric Thomas, Douglas White, Brian Sandstrom, and Colleen Fischer will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an order:

1.  Preliminarily approving the Settlement they have reached on a nationwide basis with all Defendants in this matter;

2.  Granting provisional certification of the Settlement Class, and appointing the foregoing Named Plaintiffs as class representatives and Hagens Berman Sobol Shapiro LLP and Pearson, Simon & Warshaw, LLP as Class Counsel;

3.  Approving the Parties' proposed Notice Program, as set forth in the Settlement Agreement, and directing notice of the proposed Settlement to the Settlement Class;

4.  Appointing Gilardi & Co. LLC ("Gilardi") as the Settlement Administrator, and directing Gilardi to carry out the duties of the Settlement Administrator, including but not limited to the provision of notice, as set forth in the Settlement Agreement;

5.  Approving the Parties' proposed Claim Form, and approving the procedures set forth in the Settlement Agreement for Class Members to submit claims, exclude themselves from the Settlement Class, and object to the Settlement;

6.  Setting a schedule for the final approval process and for Plaintiffs' motion for service awards to Named Plaintiffs (and one former Named Plaintiff) and attorneys' fees and costs; and

7.  Staying all non-settlement-related proceedings in the this case pending final approval of the proposed Settlement.

The grounds for this motion are that the proposed Settlement is fair, adequate, and reasonable, and that the other requested relief is well-grounded in law and fact, as set forth in the

attached memorandum. This motion is based on the Declarations of Robert F. Lopez and Daniel L. Warshaw submitted herewith, with exhibits; the Declaration of Alan Vasquez, a representative of the proposed Settlement Administrator, with exhibits; the attached memorandum in support of Plaintiffs' motion; the pleadings and papers on file in this action; and the oral argument of counsel, if any, presented at the hearing on this motion.

Dated: January 22, 2016.

HAGENS BERMAN SOBOL SHAPIRO LLP


By ___*/s/ Steve W. Berman*_____
       Steve W. Berman
Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

PEARSON SIMON & WARSHAW, LLP


By ___*/s/ Daniel L. Warshaw*_____
       Daniel L. Warshaw
Bruce L. Simon (96241)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

Clifford H. Pearson (108523)
Daniel L. Warshaw (185365)
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8014
cpearson@pswlaw.com
dwarshaw@pswlaw.com

*Counsel for Select Plaintiffs and*
*Interim Co-Lead Counsel for the Proposed Class*

J. Paul Gignac
FOLEY, BEZEK, BEHLE & CURTIS, LLP
15 W. Carrillo Street, Suite 200
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
jpg@foleybezek.com

Rosemary M. Rivas
FINKELSTEIN THOMPSON LLP
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704
rrivas@finkelsteinthompson.com

Paul R. Kiesel
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
kiesel@kbla.com

Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN &
BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Counsel for Select Plaintiffs and Executive Committee Members for the Proposed Class*

## TABLE OF CONTENTS

I.     SUMMARY OF ARGUMENT ................................................................ 1

II.    STATEMENT OF ISSUES TO BE DECIDED ................................... 2

III.   STATEMENT OF RELEVANT FACTS ............................................... 3

      A.     Background facts ........................................................................ 3

      B.     Plaintiffs' claims ...................................................................... 3

      C.     Proceedings to-date .................................................................. 4

      D.     The Settlement .......................................................................... 6

           1.     Mediation ...................................................................... 6

           2.     Settlement class definition, class period, and claims period ........................... 6

           3.     Relief to the settlement class ....................................... 7

           4.     Notice, opt-out procedures, and release ..................... 8

           5.     Service awards and attorneys' fees, costs, and expenses ............................. 10

IV.   ARGUMENT ................................................................................... 10

      A.     The Court should grant preliminary approval of the Parties' negotiated Settlement. ........................................ 10

           1.     Negotiated class-action settlements are desirable. ..... 11

           2.     The Settlement meets the standards for preliminary approval. ................................................. 11

                a.     The Settlement is the product of well-informed, vigorous, and thorough arms'-length negotiation. ..... 13

                b.     The Settlement bears no obvious deficiencies. .......... 13

                c.     The Settlement falls within the range of possible approval. ............................................... 16

      B.     The proposed class should be certified for settlement purposes. ............................ 17

           1.     The proposed class meets the *Amchem* requirements for certification of a settlement class. ............................ 18

           2.     The Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy are met. ............................ 18

                a.     Numerosity .................................................... 18

b.  Commonality .................................................................. 19

c.  Typicality..................................................................... 19

d.  Adequacy .................................................................... 20

3.  Common questions predominate, and a class action is the
superior method to adjudicate Class Members' claims................. 21

a.  Common questions predominate. ..................................... 21

b.  Class treatment is the superior method for
adjudicating claims of members of the proposed
Settlement Class. ........................................................... 22

C.  The Court should approve the proposed forms and methods of
class notice.......................................................................... 23

D.  The Court should set a schedule for toward final approval of the
Parties' Settlement.................................................................. 24

V.  CONCLUSION ....................................................................... 25

**TABLE OF AUTHORITIES**

C<small>ASES</small>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...........................................................................................18

*Arnold v. Arizona Dep't of Pub. Safety*,
    2006 WL 2168637 (D. Ariz. July 31, 2006)......................................................12

*Barefield v. Chevron U.S.A., Inc.*,
    1987 WL 65054 (N.D. Cal. Sept. 9, 1987).........................................................19

*Bebchick v. Public Utils. Comm'n*,
    318 F.2d 187 (D.C. Cir. 1963)............................................................................15

*Boyle v. Giral*,
    820 A.2d 561 (D.C. 2003) ..................................................................................15

*Burden v. SelectQuote Ins. Servs.*,
    2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ........................................... *passim*

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005)..............................................................................19

*Chao v. Aurora Loan Servs., LLC*,
    2014 WL 4421308 (N.D. Cal. Sept. 5, 2014).....................................................14

*Chavez v. WIS Holding Corp.*,
    2010 U.S. Dist. LEXIS 56138 (S.D. Cal. June 7, 2010) ...................................11

*Chin v. RCN Corp.*,
    2010 WL 1257583 (S.D.N.Y. Mar. 12, 2010).....................................................16

*Churchill Village, L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004)..............................................................................11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...........................................................................................23

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012)............................................................................20

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989)............................................................................11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) .......................................................... *passim*

*In re Holocaust Victim Assets Litig.*,
    424 F.3d 132 (2d Cir. 2005) ................................................................................15

*In re HP Laser Printer Litig.*,
    2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ......................................................23

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*,
    306 F.3d 842 (9th Cir. 2002) ..........................................................................18, 19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund. v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................................22

*Marilley v. Bonham*,
    2012 WL 851182 (N.D. Cal. Mar. 13, 2012) .......................................................19

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. 2010) ..............................................................................25

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................15

*Nachsin v. A.O.L., LLC*,
    663 F.3d 1034 (9th Cir. 2011) ............................................................................14

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .....................................................15

*Norflet v. John Hancock Life Ins. Co.*,
    658 F. Supp. 2d 350 (D. Conn. 2009) .................................................................23

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................11

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ...........................................................................................23

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................................15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................................12, 23

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ..............................................................................22

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ..............................................................................11

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...............................................................16

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    2012 WL 5055810 (D. Minn. Oct. 18, 2012) ..........................................................14

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

**OTHER AUTHORITIES**

4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 3.5 (4th ed. 2002) ...................................19

4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) .......................12, 13

4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ............................12

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 ........................................................11

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.311 ......................................................23

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 ..................................................23, 24

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ..................................................12, 17

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.633 ......................................................17

# I.    SUMMARY OF ARGUMENT

This matter concerns Carrier iQ Software, a product that millions of U.S. mobile devices have borne over the years. Some, including the Defendants in this case, tout its abilities to aid wireless carriers in providing better service to their customers by, for example, helping to determine the cause of dropped calls. But to consumers' surprise and dismay, based on video-taped demonstrations and news reports in the technical and mainstream press that broke toward the end of 2011, the software seemed also to enable the interception and unauthorized re-transmittal of private electronic communications and data to unintended recipients. Following the dissemination of these demonstrations and reports, consumers with Carrier iQ-equipped mobile phones filed 70-plus lawsuits, including against the Defendants, in courts around the country. These suits ultimately were consolidated by the J.P.M.L. for coordinated pretrial proceedings before this Court.

Throughout the pendency of this case, the Defendants have adamantly denied liability, variously arguing that the software at issue is benign; that Plaintiffs misunderstood what they were seeing; that Plaintiffs authorized use of the software; and that in other instances, certain activity was inadvertent (and therefore unactionable) and had caused no harm. The Defendants also contended that in any event, Plaintiffs could not sue them in court because of arbitration provisions in the Plaintiffs' contracts with their wireless carriers that the Defendants claimed the right to invoke.

Since consolidation, the Parties have litigated this matter vigorously, and now, following intense and lengthy negotiations, including five all-day, in-person mediation sessions, the Parties have reached a nationwide Settlement of Plaintiffs' claims. The Parties' hard-fought Agreement, which includes a $9 million cash component, provides qualified Class Members presumptively with pro-rated cash awards via a simple claims process, or, if the Settlement fund is over-subscribed, donations to established guardians of privacy interests for the benefit of Class Members. It also provides for injunctive relief that Defendant Carrier iQ, Inc. implemented prior to the recent acquisition of its assets by AT&T Mobility IP, LLC.

Regarding notice, the Parties have agreed to a strong, multi-faceted publication program constructed with expert assistance for maximum reach. The Notice Program, designed to effect the

best notice practicable under the circumstances, includes print and intensive, targeted Internet advertising components; a dedicated Settlement website; references to that website on the websites of proposed Class Counsel; and a joint press release. As such, it comports with the law and due process.

As Plaintiffs demonstrate below, the Parties' Settlement is worthy of the Court's assent. Accordingly, Plaintiffs respectfully pray for: preliminary approval of the Parties' compromise Agreement; provisional certification of the requested nationwide Settlement Class, appointment of the Named Plaintiffs as class representatives, and appointment of Hagens Berman Sobol Shapiro LLP and Pearson, Simon & Warshaw, LLP as Class Counsel; approval of the Parties' Notice Program and an order directing notice accordingly; approval of Gilardi & Co. LLP as Settlement Administrator, whose duties shall include, *inter alia*, the provision of notice as directed; approval of the Parties' proposed claim form, and approval of the procedures set forth in the Settlement Agreement for Class Members to submit claims, exclude themselves from the Settlement Class, and, if any so choose, to object to the Settlement; and a schedule for the final approval process and for Plaintiffs' motion for attorneys' fees, costs, and expenses.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Should the Court preliminarily approve the Parties' nationwide settlement, which followed key discovery, expert consultation, litigation, and intense negotiations, including five in-person mediations in which the Parties were represented by well-experienced counsel and aided by a retired federal magistrate judge, the Hon. James Larson, and which provides to a nationwide class valuable monetary and injunctive benefits following implementation of a comprehensive Notice Program?

Further, should the Court provisionally certify a Settlement Class so that notice of the Settlement may be given to Class Members; should it order notice as proposed by the Parties; should it provisionally appoint the Named Plaintiffs as class representatives; should it provisionally appoint the Hagens Berman and Pearson Simon Warshaw firms as Class Counsel; should it approve Gilardi & Co. LLP as Settlement Administrator, whose duties include the provision of notice; should it approve the Parties' proposed Claim Form, and approve of the procedures set forth in the Settlement Agreement for Class Members to submit claims, exclude themselves from the

Settlement Class, and, if any so choose, to object to the Settlement; and should it schedule a hearing on the question of final approval of the Parties' Settlement as well as a motion for recovery of Plaintiffs' attorneys' fees, costs, and expenses?

## III.    STATEMENT OF RELEVANT FACTS

### A.    Background facts

In November 2011 news broke in the technical and mainstream press regarding the presence of Carrier iQ software and its apparent activity on mobile devices. (Second Consolidated Amended Complaint (Dkt. No. 291) ("SCAC"),[1] ¶ 40.) These reports centered on research and Internet videos published by an independent security researcher named Trevor Eckhart. (*Id.*, ¶ 41.) Mr. Eckhart's YouTube video, which to-date has received over 2 million views, focused on his HTC mobile telephone. (*Id.*, ¶ 46.) His video appeared to show troubling activity associated with Carrier iQ Software on his device, including the interception and logging of SMS text message content and Internet search terms, among other communications. (*Id.*)

Concerns arose that the content of consumers' private electronic communications was being captured and transmitted off users' devices to unintended third-party recipients. (*Id.*, ¶ 47.) Soon Congress, particularly U.S. Sen. Al Franken, became involved. (*Id.*, ¶ 48.) On December 1, 2011, Sen. Franken sent letters to Carrier iQ, certain wireless carriers, and three of the device manufacturers that are Defendants here. (*Id.*) All had responded by the end of that year, providing more insight into the design and workings of Carrier iQ Software. (*Id.*, ¶¶ 52-60.)

### B.    Plaintiffs' claims

By the end of 2011, consumers around the country had filed 70-plus proposed class-action suits, in multiple jurisdictions, against Carrier iQ and several device manufacturers. In April 2012

---

[1] Citations in this motion are largely to Plaintiffs' SCAC. On January 22, 2016, Plaintiffs filed their Third Consolidated Amended Complaint, which, as permitted by the Court in its order on Defendants' motion to dismiss, Dkt. No. 339 ("MTD Order"), includes an amended Federal Wiretap Act (sometimes "FWA") claim. As Plaintiffs have advised Defendants, they did not at this time amend or re-plead in the other manners permitted by the Court's MTD Order, or to account for other claims dismissed with or without prejudice in that order. If Plaintiffs' Settlement with the Defendants is not finally approved, or if it is otherwise terminated, respectfully, Plaintiffs will submit a further amended complaint taking into account all aspects of the Court's MTD Order, including other claims dismissed and the Court's leave to amend and re-plead as specified therein.

the J.P.M.L. consolidated all of the federal suits in the Northern District of California and appointed the Hon. Edward M. Chen as the MDL judge. In August 2012, Plaintiffs in the MDL proceedings, who hail from 13 states, filed their First Consolidated Amended Complaint, Dkt. No. 107, alleging six counts against the instant Defendants. They dropped one of these counts in their June 2014 Second Consolidated Amended Complaint. (Dkt. No. 291.) And, earlier on the date of the instant motion, Plaintiffs filed their Third Consolidated Amended Complaint, in which they amend and re-assert their Federal Wiretap Act claim against the Manufacturer Defendants.[2] The Court had dismissed this claim without prejudice in January 2015, as discussed below. (*See* MTD Order at 41-45.)

**C.     Proceedings to-date**

Following the filing of Plaintiffs' FCAC, the Parties exchanged initial disclosures in September 2012.

Thereafter, in November 2012, Defendants filed a motion to compel arbitration. (Dkt. No. 129.) Each Defendant (except for Motorola) sought to invoke the arbitration provisions in Plaintiffs' contracts with their wireless carriers AT&T, Cricket, and Sprint on a theory of equitable estoppel. (*See generally id.*)

The Court allowed arbitration-related discovery, which was contentious but productive. In addition to serving discovery on all moving Defendants, Plaintiffs sought discovery from their wireless carriers, as well as from Google. (*See* Declaration of Robert F. Lopez in Support of Motion for Preliminary Approval ("Lopez Decl."), ¶ 4.) Discovery proceedings involved motions to compel and follow-up efforts, including a detail-oriented, in-person meeting among counsel for all the Parties, designed to lessen the claimed undue burden on Defendants and third-parties. (*Id.*, ¶ 5.) Ultimately, all targets produced material to the Plaintiffs, the total of which was voluminous, and counsel reviewed and analyzed it with advice from their consultants. (*Id.*)

---

[2] *See* n.1, *supra*.

In February 2014, following the completion of arbitration-related discovery, briefing on Defendants' motion was completed. Following a lengthy and in-depth hearing, the Court, on March 28, 2014, denied Defendants' motion. (Dkt. No. 251.)

On April 28, 2014, Defendants filed a Notice of Appeal with respect to the order denying their motion to compel arbitration. (Dkt. No. 261.) Defendants then moved the Court for a stay pending disposition of their appeal. Following briefing and a hearing, the Court on June 13, 2014, denied Defendants' motion to stay without prejudice. (Dkt. No. 285.) In January 2015, Defendants-Appellants filed their 80-page opening brief. Further briefing on their appeal has been delayed by agreement of the Parties pending the outcome of mediation and other settlement negotiations, but the appeal remains pending. (Lopez Decl., ¶ 6.)

Following denial of their motion to stay, all Defendants in July 2014 moved to dismiss Plaintiffs' SCAC in its entirety. (Dkt. No. 304.) Briefing was completed in early September 2014, Dkt. Nos. 309 and 311, and a hearing was held later that month. In January 2015, the Court issued its order granting in part and denying in part Defendants' motion. (*See generally* MTD Order.)

Thereafter, the Parties agreed to private mediation. In advance of mediation, the Court permitted Plaintiffs ADR-related discovery. Plaintiffs propounded written discovery to all Defendants, and Plaintiffs' counsel reviewed and analyzed the answers and material that Defendants produced. (Lopez Decl., ¶ 7.)

In sum, during the pendency of this case, Interim Co-Lead Counsel have conferred with consulting experts; conducted extensive factual and legal research; and reviewed and analyzed discovery answers and responses, and documents, produced by the Defendants and by non-parties Google, AT&T Mobility, Cricket, and Sprint. (Lopez Decl., ¶ 8; Declaration of Daniel L. Warshaw in Support of Motion for Preliminary Approval ("Warshaw Decl."), ¶ 4.)

Additionally, Interim Co-Lead Counsel requested, and Defendant Carrier iQ provided, information regarding Carrier iQ's financial condition and its ability to satisfy a judgment in this case, as well as its ability to contribute funds to settle this matter. Interim Co-Lead Counsel reviewed and analyzed the financial data provided by Carrier iQ as part of the process of reaching the instant settlement. (Lopez Decl., ¶ 9.)

# D. The Settlement

## 1. Mediation

The Parties agreed to JAMS mediation before the Hon. James Larson (U.S.M.J. Ret.). The first all-day mediation occurred in San Francisco on November 12, 2014. (Lopez Decl., ¶ 10.) Four more all-day sessions occurred in San Francisco on December 16, 2014; March 17, 2015; April 27, 2015; and September 28, 2015. (*Id.*) These sessions were conducted with the aid of mediation briefing prepared by the Parties, including briefing and analyses submitted on behalf of the Plaintiffs, which was prepared by Interim Co-Lead Counsel. (*Id.*) Each mediation session was contentious,and several went well beyond eight hours. (*Id.*, ¶ 11.) Both sides held their ground, with all Parties strongly insisting on the righteousness of their positions. (*Id.*) The Parties continued their negotiations following each session, sometimes with the aid of Judge Larson. (*Id.*)

## 2. Settlement class definition, class period, and claims period

Plaintiffs first reached terms of a proposed nationwide settlement with Defendant Carrier iQ, and those Parties notified the Court of their agreement on November 3, 2014. (Dkt. No. 322.)

Plaintiffs and the remaining Defendants reached broad agreement on a proposed nationwide settlement at their September 28, 2015, mediation session. They advised the Court of their agreement on October 8, 2015. (Dkt. No. 391.)

The Parties' Agreement defines the Settlement Class as follows:

> All persons in the United States who, during the Class Period, purchased, owned, or were an Authorized User of, any Covered Mobile Device.[3]

---

[3] The Settlement Class definition in the Settlement Agreement differs slightly from the class definition in the SCAC because it includes Authorized Users, *i.e.*, users such as Plaintiffs Laning, Phong, and Sandstrom, who, according to records submitted by Defendants in support of their motion to compel arbitration, owned Carrier iQ-equipped mobile phones they were specifically authorized to use on someone else's account. (*See* Dkt. Nos. 132 (Cummings Decl.), ¶ 9 (addressing Plaintiff Laning) and 132-4 at 3; Dkt. No. 135 (Miller Decl.), ¶¶ 111-15 (addressing Plaintiff Phong); Dkt. Nos. 135 (Miller Decl.), ¶¶ 35-39 (addressing Plaintiff Sandstrom) and 135-15.) The Agreement defines "Authorized User" as "a person authorized by name on the Wireless Provider account for a Covered Mobile Device during the class period. (Lopez Decl. Ex. A, ¶ 2.d.) Also, the Settlement Class definition in the Settlement Agreement does not explicitly reference the embedded or pre-load methods of installation of Carrier iQ Software, *cf.* SCAC, ¶ 86, because Class Members with both types of installation are eligible for relief under the Settlement.

The Settlement Class definition in the TCAC squares with the Settlement Class definition in the Parties' Settlement Agreement.

1   (Lopez Decl. Ex. A, ¶ 2.oo.)  The Class Period is defined as "that period of time between

2   December 1, 2007 and the date of entry of the Court's order granting preliminary approval of the

3   Settlement." (*Id*., ¶ 2.o.)  The Agreement defines an Authorized User as "a person authorized by

4   name on the Wireless Provider account for a Covered Mobile Device during the Class Period."[4]

5   (*Id*., ¶ 2.d.)

6   The Claims Period is defined as "that period of time that expires 60 days from the date of

7   Class Notice." (*Id*., ¶ 2.i.)

8   ### 3.    Relief to the settlement class

9   Based on discovery and analysis, Plaintiffs estimate the nationwide settlement class to

10   consist of some 79 million members.  (Lopez Decl., ¶ 12.)  The Settlement provides for a Gross

11   Settlement Fund of $9 million in monetary relief to the proposed settlement class.  (*Id*., ¶ 13.)

12   Additionally, Carrier iQ agreed, prior to the acquisition of its assets by AT&T Mobility IP, LLC, to

13   provide certain injunctive relief to the proposed class.  (*Id*.; Lopez Decl. Ex. A, ¶¶ 18-21.)  As part

14   of the Settlement Agreement, Carrier iQ warrants that it performed as agreed prior to the asset sale.

15   (*Id.*, ¶¶ 18 and 67.b.)

16   Interim Co-Lead Counsel, in consultation with Plaintiffs' Executive Committee, endorse

17   the value of this settlement.  (Lopez Decl., ¶ 14; Warshaw Decl., ¶ 6.)  So do all Named Plaintiffs.

18   (Lopez Decl., ¶ 14; Warshaw Decl., ¶ 6.)

19   The Settlement Agreement provides that proceeds payable to the class are net of: the cost of

20   notice and administration; service awards to 17 Named Plaintiffs and one former Named Plaintiff

21   (if approved); attorneys' fees, costs, and expenses as specified (if approved); and any taxes.

22   (Lopez Decl. Ex. A, ¶¶ 25-27.)  Service awards and attorneys' fees and costs are discussed at Sec.

23   D.5 of this memorandum, *infra*.

24

25

26   _____

      [4] "Wireless Provider" means "AT&T Mobility, Cricket, Sprint, or T-Mobile." (*Id*., ¶ 2.qq.)
27   "Covered Mobile Device" means "a telephone or tablet manufactured or marketed by any
      Manufacturer Defendant that was equipped with Carrier IQ software at the time of sale to end users
28   of the Covered Mobile Device." (*Id*., ¶ 2.q.)

With respect to the funds directly available to Class Members, the proposed Settlement is claims-made in nature. (Lopez Decl. Ex. A, ¶ 28.) Class members may submit claims during the Claims Period for a pro-rated share of the Net Settlement Fund. (*Id.*)

The Agreement provides that in the event the Net Settlement Fund is subscribed to the point that qualified class-member claimants would receive less than approximately $4 per claimant, then, after consultation among the Class Counsel and Defendants' counsel, and after notice to, and approval by, the Court, the entire Net Settlement Fund shall be donated in three equal shares to three *cy pres* recipients with national reach and reputations – the Electronic Frontier Foundation ("EFF"), the Center for Democracy and Technology, and CyLab Usable Privacy and Security Laboratory at Carnegie Mellon University[5] – each of which is an established guardian of, and advocate for, consumer privacy interests such as those at stake in this litigation. (*Id.*, ¶ 28; *see also* Lopez Decl. Ex. B.) Notably, the EFF was involved in this matter from the outset; its counsel represented Mr. Eckhart early on, and it did much work to help consumers, *i.e.*, the proposed class, understand Carrier iQ Software. (*See* SCAC, ¶¶ 43-45.)

The Agreement also provides that in the event the Net Settlement Fund is *not* over-subscribed, then any leftover funds following payments to qualified claimants (*e.g.*, the value of uncashed checks), will be split among those three *cy pres* recipients. (Lopez Decl. Ex. A, ¶ 32.)

### 4. Notice, opt-out procedures, and release

The Parties' settlement provides for robust notice. (Warshaw Decl., ¶¶ 7-8; Declaration of Alan Vasquez Regarding Dissemination of Notice ("Vasquez Decl."), ¶¶ 13-28 and Ex. 4.) Given the size of the class; the fact that the Parties do not have access to direct contact information for Class Members; the inability to obtain direct confirmation; and the projected cost to notify Class Members directly even if direct contact information were available, the notice program upon which the Parties have agreed, with expert assistance and endorsement, not only comports with due process but is the best notice practicable under the circumstances. (Warshaw Decl., ¶¶ 7-8.)

---

[5] The Parties have not discussed the possibility of *cy pres* donations with any of these three potential recipients, nor do the Parties suggest that any of these three potential recipients endorse their Settlement.

The proposed Notice Program calls for intensive Internet notice via banner ads and search-related advertising, all selected and administered in consultation with Class Counsel by an expert notice provider, Gilardi & Co. LLC, which the Parties propose as overall Settlement Administrator. (Lopez Decl. Ex. A at Ex. B thereto; Warshaw Decl., ¶ 7.) Further, the Settlement Administrator will establish a Settlement website, where notice of the Settlement and key documents will be available, including the long- and short-form notices. (Warshaw Decl., ¶ 7; Vasquez Decl., ¶ 27 and Ex. 4.) Class counsel's websites will include links to this website. (Warshaw Decl., ¶ 7; Vasquez Decl., ¶ 27.) Also, the Parties will issue a joint press release advising of the Settlement. (Warshaw Decl., ¶ 7; Vasquez Decl., ¶ 26 and Ex. 8.)

To reiterate, costs of notice will be paid from the $9 million Gross Settlement Fund. Prior to the Final Approval Hearing, the Settlement Administrator will file an affidavit confirming that notice has been provided as set forth in the Settlement Agreement and ordered by the Court. (Lopez Decl. Ex. A, ¶ 38.)

The long-form notice describes the material terms of the Settlement and the procedures that Class Members must follow in order to receive Settlement benefits. (Vasquez Decl. Ex. 4 at 3-4.) The notice also describes the procedures for Class Members to exclude themselves from the Settlement or to provide comments in support of or in objection to it. (*Id.* at 4-5.) Any Class Member who wishes to be excluded from the Settlement need only opt-out by making a timely request. (*Id.*) The procedures for opting-out are those commonly used in class-action settlements; they are straightforward and plainly described in the class notice. The short-form notice provides a summary of the foregoing. (*Id.* Ex. 4 (including short- and long-form notices).) Additionally, the Settlement Agreement provides that if opt-outs exceed a confidential number, then any Defendant, with the agreement of two other Defendants, will have the option to terminate the Settlement or to continue under it with no variations to its terms. (Lopez Decl. Ex. A, ¶ 51.)

If the Court grants final approval of the Settlement following notice, and after the period for opt-out requests and objections expires, then all Class Members who have not excluded themselves from the Settlement Class will be deemed to have released all covered claims, as defined in the Settlement Agreement, against all Defendants. (Lopez Decl. Ex. A, ¶ 53.)

**5. Service awards and attorneys' fees, costs, and expenses**

The Parties have agreed that each Named Plaintiff (and one former Named Plaintiff) will receive, if Plaintiffs' request is approved by the Court, an award of no more than $5,000 for his or her service in this matter.  (*Id.*, ¶ 36.)  Named Plaintiffs variously have assisted counsel with the preparation of complaints in this matter; have consulted with counsel at various times throughout the pendency of this case; have monitored the proceedings on their own behalf and on behalf of the putative class; and have worked with counsel to prepare, review, and submit declarations in support of their claims and those of the proposed class. (Lopez Decl., ¶ 15.)  In addition, each worked with Plaintiffs' counsel in preparing initial disclosures.  (*Id.*)  Various Named Plaintiffs also have consulted on more than one occasion with Interim Co-Lead Counsel, with Executive Committee counsel, or with their own counsel (as requested by Interim Co-Lead Counsel) regarding the proposed terms of the settlement.  (*Id.*)  Finally, with respect to relief, none of the Plaintiffs will receive anything more from this Settlement than any other Class Member.  Instead, he or she will only be entitled to the same relief, subject to the same conditions, as any other Class Member.  (*Id.*)

As for Plaintiffs' attorneys' fees, costs, and expenses, the Parties addressed the recovery of these following negotiation of the substantive terms of the proposed class Settlement.  (*Id.*, ¶ 16.)  Regarding attorneys' fees specifically, the Parties have agreed that proposed Class Counsel may request (and distribute) the Ninth Circuit benchmark of 25% of the Net Settlement Fund by way of a separate motion to be filed prior to the Final Approval Hearing.  (Lopez Decl. Ex. A, ¶ 37.)

## IV.  ARGUMENT

### A.  The Court should grant preliminary approval of the Parties' negotiated Settlement.

Settlements are to be encouraged in class-action lawsuits.  The Court, however, must approve class settlements for them to become effective, and in so doing, it examines "whether a proposed settlement is 'fundamentally fair, adequate, and reasonable.'"  *Burden v. SelectQuote Ins. Servs.*, 2013 WL 1190634, at *2 (N.D. Cal. Mar. 21, 2013) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988)));  *see also* Fed. R. Civ. P. 23(e).  Approval of a class-action settlement proceeds through two stages: preliminary approval and final approval (with notice in-between).  Because the settlement in this

matter passes the standards set for this first step in the approval process, Plaintiffs ask the Court to grant their request for preliminary approval.

By way of this motion, Plaintiffs respectfully urge that the Court take the first step in the approval process and preliminarily approve the proposed Settlement.

### 1. Negotiated class-action settlements are desirable.

Negotiated settlements like the instant one are to be encouraged. As the Ninth Circuit has stated, "there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits…." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Settlement is desirable in class action suits because they are "an ever increasing burden to so many federal courts and [] frequently present serious problems of management and expense." *Van Bronkhorst*, 529 F.2d at 950.

Additionally, courts should give "proper deference" to negotiated compromises. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quotations omitted); *see also Chavez v. WIS Holding Corp.*, 2010 U.S. Dist. LEXIS 56138, at *4 (S.D. Cal. June 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair and reasonable.") (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

### 2. The Settlement meets the standards for preliminary approval.

The first step toward effecting a proposed class-wide settlement is preliminary approval. *See* MANUAL FOR COMPLEX LITIGATION § 13.14, at 173 (4th ed. 2004)[6] ("This [approval of a settlement] usually involves a two-stage procedure. First, the judge reviews the proposal

---

[6] Hereafter, MANUAL FOR COMPLEX LITIG.

preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."); *see also id.*, § 21.632, at 320 ("Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation....") (footnote omitted); Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.25, at 38-39 (4th ed. 2002) (discussing the two-step approval process).

At the preliminary approval stage, the Court asks whether "'[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval[7]....'" *See, e.g., Burden*, 2013 WL 1190634, at *3 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Put another way, the Court should "make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms ...." MANUAL FOR COMPLEX LITIG. § 21.632.

Because a preliminary evaluation of the instant Settlement will reveal no "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys," and because the settlement "appears to fall within the range of possible approval," Plaintiffs submit that the settlement passes this initial evaluation. *See* NEWBERG ON CLASS ACTIONS § 11.25; *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079-80. Accordingly, as demonstrated below, the Court should grant preliminary approval.

---

[7] Where, as here, the settlement was attained via "arms-length negotiations," following "meaningful discovery," in which the Parties were represented by "experienced, capable" counsel, the Court may afford to it "a presumption of fairness, adequacy, and reasonableness." *See, e.g., Arnold v. Arizona Dep't of Pub. Safety*, 2006 WL 2168637, at *11 (D. Ariz. July 31, 2006) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); NEWBERG ON CLASS ACTIONS § 11.41, at 90 ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval.").

### a. The Settlement is the product of well-informed, vigorous, and thorough arms'-length negotiation.

In contemplating preliminary approval, one of the Court's duties is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties …." *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted). As set forth above, the settlement in this matter was achieved only after: consolidation of 70-plus lawsuits and an investigation that resulted in Plaintiffs' FCAC; key discovery, including arbitration-related discovery not only from the Defendants but from third-party wireless carriers and Google, followed later by ADR-related discovery; review and analysis of the documents, declarations, and interrogatory answers produced, including with the aid of consulting experts; and much negotiation with the aid of a retired federal magistrate judge, who conducted five all-day, in-person mediations and additional follow-up calls with the Parties. (Lopez Decl., ¶¶ 2, 4-5, 7-8; Warshaw Decl., ¶ 4.) Further, the Plaintiffs and proposed class in this matter were represented throughout by dedicated counsel, including Interim Co-Lead Counsel and Plaintiffs' Executive Committee members with extensive experience in class-action and commercial litigation. (Lopez Decl., ¶ 17 and Ex. C; Warshaw Decl., ¶¶ 9-15 and Ex. B.)

Because of the foregoing, Plaintiffs' counsel were well-situated to evaluate the strength and weakness of Plaintiffs' case. Far from being the product of anything inappropriate, the Settlement at issue is the result of long, hard-fought, adversarial work, such that it is worthy of preliminary approval by the Court. *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no evidence suggesting that the settlement was negotiated in haste or in the absence of information).

### b. The Settlement bears no obvious deficiencies.

Furthermore, the Settlement bears no obvious deficiencies. *See Burden*, 2013 WL 1190634, at *3. There are no patent defects that would preclude its approval by the Court, such that notifying the class and proceeding to a formal fairness hearing would be a waste of time. *See* NEWBERG ON CLASS ACTIONS § 11.25 (referring to the Court's inquiry as to, *inter alia*, "obvious deficiencies"). Respectfully, an examination of the Settlement will reveal no apparent unfairness,

and no "unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys." *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) ("There are no grounds to doubt the fairness of the Settlement, or any other obvious deficiencies, such as unduly preferential treatment of a class representative or segments of the Settlement Class, or excessive compensation for attorneys.").

To the contrary, the Settlement provides cash relief to qualified Class Members on a claims-made, pro-rated basis. (Lopez Decl. Ex. A, ¶ 28.) Under the Parties' Agreement, there is no preferential treatment of Class Members or segments of the class. (*See id.*) All Class Members, including class representatives, are treated equally.[8] (*Id.*) If, however, it becomes economically unfeasible to distribute cash to qualified Class Members, the Agreement provides that, upon notice to and after approval by the Court, funds will be distributed equally to three established *cy pres* beneficiaries with national reach (corresponding to the nationwide character of the proposed class), each of which has made advocating for consumer privacy in the electronic sphere a part of its mission.[9] (*Id.*; Lopez Decl. Ex. B.) As stated above, the proposed, contingent recipients would include the EFF, which at the outset of this controversy played a key and vigorous role in this matter on behalf of the very consumers who are proposed Class Members. (SCAC, ¶¶ 43-45.)

---

[8] As for service awards of up to $5,000 for each of the Named Plaintiffs (and for one former Named Plaintiff), such awards are supported by precedent and also by the attention that these individuals have devoted to this matter, including, variously, by way of assisting with the drafting of complaints, helping to prepare initial disclosures, preparing declarations with counsel in opposition to Defendants' motion to compel arbitration, consulting with counsel during the course of this litigation, monitoring the course of this case, and consulting with counsel regarding proposed terms of settlement. *See, e.g., Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308, at *4 (N.D. Cal. Sept. 5, 2014) (noting that $5,000 incentive awards to representative plaintiffs are "presumptively reasonable" in this judicial district) (citing *Jacobs v. California State Auto. Ass'n Inter–Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009)).

[9] As the Ninth Circuit has stated:

> The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. *Cy pres* distributions must account for the nature of the plaintiffs' law suit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity.

*Nachsin v. A.O.L., LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (citing *Six (6) Mexican Workers*, 904 F.2d at 1307-08)).

1    To reiterate, *cy pres* distributions would only be requested here if, due to the number of

2    eligible claims, it would make no economic sense to distribute funds directly to Class Members.

3    Then the Net Settlement Fund would be distributed to institutions with a proven track record and

4    ability to advocate for the interests of consumers such as those who make up the proposed

5    settlement class in this case.  (*See* Lopez Decl. Ex. B.)  Courts have recognized that the inability to

6    award meaningful amounts in damages to class members justifies, in appropriate circumstances,

7    the use of *cy pres* to further the interests of the class.  *See, e.g.*, *Six (6) Mexican Workers v. Arizona*

8    *Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) (citations omitted) ("when a class action

9    involves a large number of class members but only a small individual recovery, the cost of

10   separately proving and distributing each class member's damages may so outweigh the potential

11   recovery that the class action becomes unfeasible …. *[C]y pres* distribution avoids these

12   difficulties ….  Federal courts have frequently approved this remedy in the settlement of class

13   actions where the proof of individual claims would be burdensome or distribution of damages

14   costly."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *11 (N.D. Cal. Mar. 18, 2013)

15   (granting final approval to class settlement, including as to *cy pres* component, where plaintiffs had

16   "made a sufficient showing that the cost of distributing the settlement to the 62 million individual

17   class members would exceed the size of the fund, thus making such a remedy cost-prohibitive and

18   infeasible.").[10]

19   Finally, as for attorneys' fees, Plaintiffs' recovery is capped at 25% of the Gross Settlement

20   Fund, *i.e.*, at the Ninth Circuit's benchmark for recovery in the class context.  Negotiations over

21   attorneys' fees were separate from, and took place after, negotiations regarding relief to the class.

22

23   [10] *See also In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d Cir. 2005) ("distribution
     would have resulted in the payment of literally pennies to each of the millions of individuals who
24   would fall into the Looted Assets Class … [W]e have previously affirmed the District Court's use
     of a *cy pres* remedy in this case"); *Bebchick v. Public Utils. Comm'n*, 318 F.2d 187 (D.C. Cir.
25   1963) (impossibility of individual refunds for train and bus tickets led to the creation of a fund to
     benefit transit riders); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 323 (E.D.N.Y.
26   2010) (*cy pres* allocation of $2.5 million where administrative costs of distributing it would reduce
     payments to $2.00 per claimant); *Boyle v. Giral*, 820 A.2d 561, 569 (D.C. 2003) (in antitrust case
27   concerning vitamin products, court approved a *cy pres* remedy only award to organizations
     promoting the health of District of Columbia residents where only $1 would have been available to
28   each class member).

NOTICE OF MOT. AND MOT. FOR PRELIMINARY APPROVAL – 15
Case No. C-12-md-2330-EMC
010285-11 843367 V1

(Lopez Decl., ¶ 16.)  The percentage negotiated for fees is fair in light of the years spent by counsel on this matter, their experience, and the results achieved for the class.  (*See id.*)  In fact, it will result in a negative multiplier to lodestar.  (Warshaw Decl., ¶ 19.)

c. **The Settlement falls within the range of possible approval.**

According to the Ninth Circuit, the Court should consider whether "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at 1027 (internal quotes and citations omitted).  Still, the Court at this point does not conduct the fuller analysis that occurs upon the motion for final approval.  *Chin v. RCN Corp.*, 2010 WL 1257583, at *2 (S.D.N.Y. Mar. 12, 2010) ("In fact, 'a full fairness analysis is neither feasible nor appropriate' when evaluating a proposed settlement agreement for preliminary approval.") (citation omitted).  Here, the Parties' Settlement, which resulted in a $9 million Gross Settlement Fund in compromise of hotly contested claims, falls within the range of possible approval, such that preliminary approval is warranted.  (*See* Warshaw Decl., ¶¶ 5-7.)

"To evaluate the 'range of possible approval' criterion, which focuses on 'substantive fairness and adequacy,' 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'"  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080).  In this case, while certain evidence pointed in Plaintiffs' view to violations of federal and state wiretapping and privacy laws, violations of various states' consumer fraud laws, and violation of the implied warranty of merchantability, Plaintiffs' success was not without doubt.  (Lopez Decl., ¶ 18.)

For example, the Plaintiffs faced another motion to dismiss with respect to the TCAC, including as to their re-pled FWA claim against the Manufacturer Defendants.  (*Id.*)  Also, had this Settlement not occurred, Plaintiffs would have amended as otherwise permitted by the Court, and Plaintiffs almost certainly would have a further motion to dismiss as to most, if not all, of these re-pled claims as well.  (*Id.*)  The Defendants would continue to have contested liability and damages, and Plaintiffs had to take into account the financial condition of Defendant Carrier iQ.  (*Id.*)

1   Additionally, the Defendants promised to contest class certification on grounds that Plaintiffs

2   necessarily took seriously. (*Id*.) Further, Plaintiffs faced Defendants' pending appeal. (*Id*.)

3          Still, at every stage of this case, Plaintiffs have pushed back, reminding the Defendants of

4   the strength of their own positions. (Lopez Decl., ¶ 19.) But ultimately, after taking into account

5   the risk, expense, complexity, and likely duration of further litigation, *see Burden*, 2013 WL

6   1190634, at *3 (citation omitted), Plaintiffs and their experienced counsel, with the aid of Judge

7   Larson, were able to achieve a settlement that allows for substantial monetary and injunctive relief

8   to the Settlement Class. (Lopez Decl., ¶ 19.)

9          With respect to the monetary component of the Settlement, $9 million is substantial in light

10  of the above-stated risks, together with the risk that, ultimately, a jury could find no liability or

11  award no damages, or less in damages, should the case have proceeded to trial. (Lopez Decl., ¶ 20;

12  Warshaw Decl., ¶ 6.) As for the non-monetary relief achieved, it included significant alterations to

13  the Carrier iQ Software, as well as changes to the porting guide to help prevent a debug error such

14  as that whose effects Mr. Eckhart pointed to in his widely seen video. (Lopez Decl., ¶ 20 and Ex.

15  A, ¶¶ 18-21.)

16         In sum, the Settlement at bar falls within the range of possible approval. For this reason,

17  too, the Court should grant preliminary approval.

18  **B.      The proposed class should be certified for settlement purposes.**

19         The Court has not yet granted class certification in this matter. Accordingly, Plaintiffs ask

20  that the Court certify provisionally a nationwide class for settlement purposes. Provisional

21  certification will permit notice of the proposed class to be issued to the class. Such notice will

22  inform Class Members of the existence and terms of the Settlement Agreement, of their right to be

23  heard regarding its fairness, of their right to opt-out, and of the date, time, and place of the fairness

24  hearing. *See* Manual for Complex Litig. §§ 21.632, 21.633. Here, where the Defendants have

25  waived their challenges to class certification for purposes of the Parties' Settlement, *Hanlon*

26  provides the roadmap for the Court's consideration of Plaintiffs' request.

27

28

**1.** **The proposed class meets the *Amchem* requirements for certification of a settlement class.**

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), the Supreme Court of the United States confirmed the propriety, and recognized the necessity, of Settlement Class certification in matters such as this one, where Class Members are identifiable, and where there are relatively small economic damages. As the court put it:

> [t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.* at 617 (internal quotes and citations omitted).

Here, there is one underlying type of product at issue – software, an alleged course of conduct common to all Class Members, and only economic damages at stake; thus, this is the kind of class action endorsed in *Amchem*. Without this class action and settlement, most Class Members would be "without effective strength to bring their opponents into court at all." *Id.* In a situation such as this, where the proposed class seeks only economic damages (as distinct a class or classes seeking individualized personal injury and future-injury damages), class certification is eminently proper. *E.g.*, *Hanlon*, 150 F.3d at 1019-23.

**2.** **The Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy are met.**

In order to merit class certification, Plaintiffs must show at the outset that the class is so numerous that joinder is impracticable; questions of law or fact are common to the class; the claims of the representative Plaintiffs are typical of the claims of the class; and the proposed class representatives will protect the interests of the class fairly and adequately. Fed. R. Civ. P. 23(a). Plaintiffs meet these prerequisites.

**a.** **Numerosity**

Based on discovery, there may be some 79 million Class Members. (Lopez Decl., ¶ 12.) On the basis of these numbers alone, "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Given these large numbers, the requirement of numerosity is easily satisfied here. *See, e.g.*, *Immigrant Assistance Project of the L.A. Cnty. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th

Cir. 2002) (noting that numerosity requirement has been satisfied in cases involving 39 class members); NEWBERG ON CLASS ACTIONS § 3.5 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

### b. Commonality

As one court summarized recently:

> Commonality requires the existence of questions of law or fact that are common to the class. Fed. R. Civ. P. 23(a)(2). Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.*, 1 William B. Rubenstein, *Newberg on Class Actions* § 3:19 (5th ed. 2011). Courts construe this requirement permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* In fact, it only takes one common question of fact or law shared between proposed class members to satisfy commonality. *Dukes*, 131 S. Ct. at 2556.

*Marilley v. Bonham*, 2012 WL 851182, at *4 (N.D. Cal. Mar. 13, 2012). The requirement of commonality is satisfied by Plaintiffs' allegations.

Among the common questions raised are whether the Defendants violated the Federal Wiretap Act and various state privacy laws via the Carrier iQ software installed on Plaintiffs' and proposed Class Members' mobile devices; whether the Defendants violated state consumer fraud laws in the marketing and sale of mobile devices onto which Carrier iQ software was installed; and whether any defect or defects in the Defendants' products caused breaches of the implied warranty of merchantability. (SCAC, ¶¶ 89.) The Ninth Circuit cited a list of common questions including ones similar to these in *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005), where it found commonality. Plaintiffs have identified numerous questions of law and fact common to the class, such that the requirement of commonality is met.

### c. Typicality

Typicality is met as well. Indeed, a finding of commonality ordinarily will satisfy the requirement of typicality, too. *Barefield v. Chevron U.S.A., Inc.*, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987).

1
2
3

> Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." [] "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 408 (9th Cir. 1992).

*Burden*, 2013 WL 1190634, at *5 (citation omitted). Here, the interests of the Named Plaintiffs and Class Members align neatly.

Plaintiffs have the same claims as members of the class they seek to represent, and they must satisfy the same legal elements that Class Members must satisfy, including with respect to their FWA claims as amended and re-pled in the TCAC. (*See* TCAC, ¶¶ 93-103.) They share identical legal theories with putative Class Members, based on allegations that the Defendants marketed and sold products that breached their privacy and that bore defects as identified by the Plaintiffs. (SCAC, ¶¶ 61-74.) Their injuries are the same, too; like others in the proposed class, Plaintiffs' privacy was breached, or their data and communications left susceptible to breach, leading to Plaintiffs' claims for statutory damages, and also, they overpaid for products that allegedly bore latent defects. (SCAC, ¶¶ 69-71, 139.) Thus, Rule 23(a)(3) is satisfied.

### d. Adequacy

Finally, it must be determined whether Plaintiffs "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4*).* "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). Plaintiffs meet this requirement as well.

First, Plaintiffs' claims are co-extensive with members of the putative class. All have an identical interest in establishing the Defendants' liability, and each has been injured in the same manner. All assert the same legal claims, and all seek identical relief. There is no conflict among them.

Also, each Named Plaintiff has agreed to assume the responsibility of representing the class, and each has made him- or herself available to do so, including by way of assisting with the drafting of complaints, helping to prepare initial disclosures, preparing declarations with counsel in

opposition to Defendants' motion to compel arbitration, consulting with counsel during the course of this litigation, monitoring the course of this case, and consulting with counsel regarding proposed terms of settlement. (*See* Lopez Decl., ¶ 15.)

Second, as discussed and referenced in the declarations of counsel and as illustrated in the resumes attached thereto, Plaintiffs' lawyers, including Interim Co-Lead (and proposed class) counsel have extensive experience and expertise in prosecuting complex class actions, including commercial, consumer, and product defect actions. (Lopez Decl., ¶¶ 16-17 and Ex. C; Warshaw Decl., ¶¶ 9-15 and Ex. A.) Counsel have pursued this litigation vigorously, and they remain committed to advancing and protecting the common interests of all members of the class. (Lopez Decl., ¶ 17; Warshaw Decl., ¶ 19.)

Rule 23(a)(4) is satisfied.[11]

### 3. Common questions predominate, and a class action is the superior method to adjudicate Class Members' claims.

Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) is also satisfied. Here, Rule 23(b)(3) is satisfied because questions common to Class Members predominate over questions affecting only individual Class Members, and the class action device provides the best method for the fair and efficient resolution of Class Members' claims. Furthermore, the Defendants do not oppose provisional class certification for the purpose of giving effect to the Parties' Settlement. When addressing the propriety of class certification, the Court should consider the fact that, in light of the Settlement, trial will now be unnecessary, such that the manageability of the class for trial purposes is not relevant to the Court's inquiry. *E.g.*, *Hanlon*, 150 F.3d at 1021-23.

### a. Common questions predominate.

Rule 23(b)(3) requires an examination of whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members …." "When common questions present a significant aspect of the case and they can be resolved for all

---

[11] And, for the reasons set forth herein, Plaintiffs ask that they be appointed class representatives for the requested class and that Hagens Berman Sobol Shapiro LLP and Pearson, Simon & Warshaw, LLP be appointed class counsel.

members of the class in a single adjudication," class treatment is justified. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund. v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Even one issue of central importance to the case and common to all class member claims can cause class litigation to be appropriate. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996). Here, common questions predominate.

Common questions include whether Defendants' software is a device used to intercept communications in violation of the Federal Wiretap Act; whether the Defendants have violated the privacy acts of various states as alleged in the operative complaint; whether the devices on which the software is installed are defective, such that they violate the federal Magnuson-Moss Warranty act and state warranty law as alleged in the complaint; and whether the Defendants, by way of the conduct alleged in the complaint, have violated the various state consumer fraud and protection acts identified in the complaint.[12] (SCAC, ¶ 89; TCAC, ¶ 89.) These numerous common questions at the heart of this matter predominate over any issues affecting only individuals. Predominance is established.

      **b.**    **Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class.**

As for the requirement in Fed. R. Civ. P. 23(b)(3) that the class action be "superior to other available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the fair and efficient resolution of all putative Class Members' claims. Given that Plaintiffs are aware of millions of Class Members sharing common issues, the class device is the most efficient and fair means of adjudicating all these many claims. Class treatment is far superior to thousands upon thousands of individual suits or piecemeal litigation; in this matter, it will fulfill its function of conserving scarce judicial resources and promoting the consistency of adjudication. Accordingly, the superiority aspect of Rule 23(b)(3) is readily met.

---

[12] These questions persist insofar as permitted by the Court in its MTD Order, and following Plaintiffs' amendment of the complaint to assert a revised FWA claim, as allowed by the Court.

1   **C.      The Court should approve the proposed forms and methods of class notice.**

2        "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class

3   members who would be bound by a proposed settlement, voluntary dismissal, or compromise ….'"

4   MANUAL FOR COMPLEX LITIG. § 21.312, at 293.  In order to protect the rights of absent Class

5   Members, the Court must direct the best notice practicable to Class Members.  *See, e.g., Phillips*

6   *Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

7   174-75 (1974).

8        Additionally, "Rule 23 … requires that individual notice in [opt-out] actions be given to

9   class members who can be identified through reasonable efforts.  Those who cannot be readily

10  identified must be given the 'best notice practicable under the circumstances.'"  MANUAL FOR

11  COMPLEX LITIG. § 21.311, at 287.  In this case, bearing in mind the large class size, Plaintiffs have

12  consulted with a notice expert to devise an intensive and best-notice-practicable Notice Program

13  including a strong Internet and print publication component to reach Class Members nationwide; a

14  settlement website; and plans to disseminate a press release regarding the settlement.  (*See* Vasquez

15  Decl., ¶¶ 17-31 and Exs. 5-8; Warshaw Decl., ¶¶ 7-8.)  Notice by publication is an acceptable

16  method of providing notice where, as here,[13] the identity of specific Class Members is not

17  reasonably available, and where the class size is as large as it is here.  *In re Tableware Antitrust*

18  *Litig.*, 484 F. Supp. 2d at 1080 (citing MANUAL FOR COMPLEX LITIG. § 21.311); *In re HP Laser*

19  *Printer Litig.*, 2011 WL 3861703, at *3 (C.D. Cal. Aug. 31, 2011) (approving a notice plan

20  utilizing direct email notice, publication of the summary notice in print publications, banner

21  advertisements on websites, and "providing a link on both notice forms to a settlement website");

22  *Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d 350, 352 (D. Conn. 2009) (approving a

23  notice plan utilizing Internet banner advertisements).

24        As for the settlement notice itself, it should:

25      •   define the class;

26      •   describe clearly the options open to class members and the deadlines for taking action;

27

28  ───────────────
    [13] *See* Warshaw Decl., ¶ 8.

- describe the essential terms of the proposed settlement;

- disclose any special benefits provided to the class representatives;

- provide information regarding attorney fees;

- indicate the time and the place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- describe the method for objecting to or opting out of the settlement;

- explain the procedures for allocating and distributing settlement funds and clearly set forth any variations among different categories of class members;

- explain the basis for valuation of non-monetary benefits;

- provide information that will enable class members to estimate their individual recoveries; and

- prominently display the address and phone number of class counsel and how to make inquiries.

MANUAL FOR COMPLEX LITIG. § 21.312, at 295 (citation omitted). Here, the notice forms attached to the Parties' Settlement satisfy these requirements. (*See* Vasquez Decl. Ex. 4 (short- and long-form notices).)

The Notice Program and documents are designed to afford notice in a comprehensive and reasonable manner. Plaintiffs respectfully ask the Court to approve them.

**D.      The Court should set a schedule toward final approval of the Parties' Settlement.**

If the Court grants preliminary approval and provisionally certifies the Settlement Class, respectfully, the Court then should set a schedule toward final approval of the Parties' Settlement. The Plaintiffs request the following schedule, which is incorporated in the proposed order submitted with this motion:

1.      The Notice Program shall commence no later than thirty-five (35) days after the entry of this Order ("Class Notice Date");

2.      Class Counsel's application for attorneys' fees, costs, and expenses shall be filed no later than forty-five (45) days after the Class Notice Date;

3. Class Members shall have until sixty (60) days after the Class Notice Date to file claims, opt-out, or exclude themselves, to object to the Stipulation of Settlement and Release ("Stipulation"), or to respond to Class Counsel's application for attorneys' fees, costs, and expenses;

4. Plaintiffs shall file their Motion for Final Approval no later than thirty-five (35) days before the Final Approval Hearing;

5. Plaintiff shall reply to any objection to the Stipulation and/or Class Counsel's application for attorneys' fees, costs, and expenses no later than seven (7) days before the Final Approval Hearing; and

6. The Final Approval Hearing shall be held on a date no earlier than 145 days from the date of the order granting preliminary approval.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs ask respectfully that the Court grant preliminary approval of the Parties' Settlement and the further relief requested herein.

Dated: January 22, 2016.

HAGENS BERMAN SOBOL SHAPIRO LLP

By     /s/ Steve W. Berman
     Steve W. Berman
Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

PEARSON SIMON & WARSHAW, LLP

By     /s/ Daniel L. Warshaw
     Daniel L. Warshaw
Bruce L. Simon (96241)
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

Clifford H. Pearson (108523)
Daniel L. Warshaw (185365)
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
cpearson@pswlaw.com
dwarshaw@pswlaw.com

*Counsel for Select Plaintiffs and*
*Interim Co-Lead Counsel for the Proposed Class*

J. Paul Gignac
FOLEY, BEZEK, BEHLE & CURTIS, LLP
15 W. Carrillo Street, Suite 200
Santa Barbara, CA 93101
Telephone: (805) 962-9495
Facsimile: (805) 962-0722
jpg@foleybezek.com

Rosemary M. Rivas
FINKELSTEIN THOMPSON LLP
505 Montgomery Street, Suite 300
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704
rrivas@finkelsteinthompson.com

Paul R. Kiesel
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
kiesel@kbla.com

Charles E. Schaffer
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Counsel for Select Plaintiffs and Executive Committee*
*Members for the Proposed Class*