Steve W. Berman (*pro hac vice*)
Robert F. Lopez (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
robl@hbsslaw.com

Bruce L. Simon (CSB No. 96241)
PEARSON SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re Carrier IQ, Inc. Consumer Privacy Litigation | No. 3:12-md-2330-EMC |
| | **DECLARATION OF ROBERT F. LOPEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL** |
| This Document Relates to: <br><br> ALL CASES | Date:    February 16, 2016 <br> Time:    2:00 p.m. <br> Place:   Courtroom 5, 17th Floor <br> Judge:   Hon. Edward M. Chen |

10285-11  847087 V1

1    I, Robert F. Lopez, declare as follows:

2    1.    I am one of the lawyers representing plaintiffs Fischer, Kenny, Sandstrom,

3    Szulczewski, and Thomas in this matter.  I also am a partner at Hagens Berman Sobol Shapiro LLP,

4    which this Court has appointed as interim-co lead counsel for plaintiffs and the proposed class in this

5    matter.  I make this declaration based upon personal knowledge, and I am otherwise competent to be

6    a witness in this matter.

7    2.    This matter concerns Carrier iQ Software, a product largely unknown before the

8    technical and mainstream press introduced the public to the work of Trevor Eckhart, an independent

9    security researcher, in and around November 2011.  As the public would learn, Mr. Eckhart had

10   become interested in the functions of the Carrier iQ Software installed on his HTC mobile phone.

11   He published the results of his research in compelling web and video posts.  These posts showed that

12   the software seemed to enable the interception and unauthorized re-transmittal of private electronic

13   communications and data to unintended recipients.  Some 70-plus suits, in addition to congressional

14   interest, would follow.  The first of those suits was filed in this judicial district by Patrick Kenny, one

15   of Hagens Berman's clients, and a named plaintiff in the instant matter.

16   3.    Following consolidation in this honorable MDL Court of the suits filed nationwide in

17   this matter, and following the plaintiffs' filing of their First Consolidated Amended Complaint (Dkt.

18   No. 107) and other preliminary matters, the defendants—except for Motorola—filed their motion to

19   compel arbitration against all plaintiffs (save for Jennifer Patrick).  (Dkt. No. 129.)  By way of this

20   motion, the moving defendants sought to refer this matter to arbitration by invoking the plaintiffs'

21   arbitration agreements with their wireless service providers AT&T, Cricket, and Sprint.

22   4.    Plaintiffs raised several defenses against this motion, including some (such as

23   unconscionability and scope defenses) that involved questions of fact.  Accordingly, the Court

24   permitted certain arbitration-related discovery.  Plaintiffs then served discovery requests on the

25   moving defendants, their wireless carriers, and Google Inc.  The latter is the owner and publisher of

26   the Android OS, which powered all of the plaintiffs' mobile devices, and which, based on our

27   investigation, might have received certain transmittals of electronic communications from plaintiffs'

28

DECL OF ROBERT F. LOPEZ IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL – Case No.: 3:12-md-2330-EMC - 1
10285-11  847087 V1

1    devices, unbeknownst to plaintiffs, in connection with the Carrier iQ software installed on those

2    devices.  Discovery proceedings were contentious but productive.

3        5.        More specifically, these discovery proceedings involved motions to compel before

4    Magistrate Judge Cousins and follow-up efforts, including a detail-oriented, in-person meeting in

5    San Francisco among counsel for all the Parties, designed to lessen the claimed undue burden on

6    defendants and third-parties.  Ultimately, all targets, including Google, produced material (variously

7    documents, interrogatory answers, and declarations) to the plaintiffs, the total of which was

8    voluminous, and we and our interim co-lead counsel, Pearson, Simon & Warshaw, LLP, reviewed

9    and analyzed it with advice from our consultants and in conjunction with information and material

10   that our investigations had produced.

11       6.        On April 28, 2014, defendants filed a notice of appeal with respect to the order

12   denying their motion to compel arbitration.  (Dkt. No. 261.)  Defendants then moved the Court for a

13   stay pending disposition of their appeal.  Following briefing and a hearing, the Court on June 13,

14   2014 denied defendants' motion to stay without prejudice.  (Dkt. No. 285.)  In January 2015,

15   defendants-appellants filed an 80-page opening brief.  Further briefing on their appeal has been

16   delayed by agreement of the parties pending the outcome of mediation and other settlement

17   negotiations, but the appeal remains pending.

18       7.        As for the continuing proceedings in this Court, following denial of defendants'

19   motion to stay, all of them in July 2014 moved to dismiss plaintiffs' SCAC in its entirety.  (Dkt. No.

20   304.)  Briefing was completed in early September 2014, Dkt. Nos. 309 and 311, and a hearing was

21   held later that month.  In January 2015, the Court issued its order granting in part and denying in part

22   defendants' motion.  (*See generally* Dkt. No. 339 (MTD Order).)  Thereafter, with the benefit of the

23   Court's initial rulings, the parties agreed to private mediation.  In advance of mediation, the Court

24   permitted plaintiffs ADR-related discovery.  Plaintiffs propounded written discovery to all

25   defendants, and plaintiffs' counsel reviewed and analyzed the detailed answers and materials,

26   including documents, that defendants produced.

27       8.        In sum, during the pendency of this case, interim co-lead counsel have conferred with

28   consulting experts formally and informally; conducted extensive factual and legal research and

DECL OF ROBERT F. LOPEZ IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL – Case No.: 3:12-md-2330-EMC - 2
10285-11  847087 V1

1    analysis; and reviewed and analyzed discovery answers and responses, and voluminous quantities of

2    documents, including those produced by the defendants and by non-parties Google, AT&T Mobility,

3    Cricket, and Sprint.

4          9.     Additionally, we and our interim co-lead counsel requested, and defendant Carrier iQ

5    provided, information regarding Carrier iQ's financial condition and its ability to satisfy a judgment

6    in this case, as well as its ability to contribute funds to settle this matter.  We and interim co-lead

7    counsel reviewed and analyzed the financial data provided by Carrier iQ as part of the process of

8    reaching the instant settlement.  Naturally, it was important to consider whether Carrier iQ had the

9    ability to satisfy a judgment had litigation gone forward, and had plaintiffs been successful.

10         10.    With respect to the private mediation to which they had agreed, the parties chose

11   JAMS mediation before the Hon. James Larson (U.S.M.J. Ret.).  The first all-day mediation occurred

12   in San Francisco on November 12, 2014.  Four more all-day sessions occurred in San Francisco on

13   December 16, 2014; March 17, 2015; April 27, 2015; and September 28, 2015.  These sessions were

14   conducted with the aid of mediation briefing prepared by the parties, including briefing and analyses

15   submitted on behalf of the plaintiffs, which was prepared by interim co-lead counsel.

16         11.    Each mediation session, several of which went well beyond eight hours, was

17   contentious.  Both sides held their ground, with all parties strongly insisting on the righteousness of

18   their positions.  The parties continued their negotiations following each session, sometimes with the

19   aid of Judge Larson.

20         12.    Based on discovery and analysis, plaintiffs estimate the nationwide settlement class to

21   consist of some 79 million members.

22         13.    Ultimately, the parties reached the settlement now before this Court.  The settlement

23   provides, *inter alia*, for a gross settlement fund of $9 million in monetary relief to the proposed

24   settlement class.  Additionally, Carrier iQ agreed, prior to the acquisition of its assets by AT&T

25   Mobility IP, LLC, to provide certain injunctive relief to the proposed class.  (*See* Ex. A hereto, ¶¶ 18-

26   21.)  As part of the settlement agreement, Carrier iQ warrants that it performed as agreed prior to the

27   asset sale. (*Id.*, ¶¶ 18 and 67.b.)

28

1    14.    Interim co-lead counsel, including lead trial attorneys Steve W. Berman and Bruce L.

2    Simon, in consultation with plaintiffs' executive committee members, all of whom are well-

3    experienced in class and consumer litigation, endorse the value of this hard-won and well-informed

4    settlement.  So do all named plaintiffs.

5    15.    As for the named plaintiffs, they variously have assisted counsel with the preparation

6    of complaints in this matter; have consulted with counsel at various times throughout the pendency

7    of this case; have monitored the proceedings on their own behalf and on behalf of the putative class;

8    and have worked with counsel to prepare, review, and submit declarations in support of their claims

9    and those of the proposed class.  In addition, each worked with plaintiffs' counsel in preparing initial

10   disclosures.  Various named plaintiffs also have consulted on more than one occasion with interim

11   co-lead counsel, with Executive Committee counsel, or with their own counsel (as requested by

12   interim co-lead counsel) regarding settlement efforts and the proposed terms of settlement.  None of

13   the named plaintiffs, however, will receive anything more from this  proposed settlement than any

14   other class member.  Instead, he or she will only be entitled to the same relief, subject to the same

15   conditions, as any other class member.  (But for their service on behalf of the proposed class, the

16   agreement provides that we may request service awards not to exceed $5,000 for each named

17   plaintiff (and one former named plaintiff).)

18   16.    As for plaintiffs' attorneys' fees, costs, and expenses, the parties addressed the

19   recovery of these following negotiation of the substantive terms of the proposed class settlement.

20   Regarding attorneys' fees specifically, the parties have agreed that proposed class counsel may

21   request (and distribute) the Ninth Circuit benchmark of 25% of the Net Settlement Fund by way of a

22   separate motion to be filed prior to the final approval hearing.  (*See* Ex. A hereto, ¶ 37.)  Of course,

23   this fee request will be subject to the approval of the Court.

24   17.    The plaintiffs and proposed class in this matter were represented throughout by

25   dedicated counsel, including interim co-lead counsel led by Steve W. Berman and Bruce L. Simon,

26   and plaintiffs' executive committee members, all of whom have extensive experience in class-action

27   and commercial litigation. As our attached firm resume and biographies show, Hagens Berman and

28   its attorneys, led by Mr. Berman, have extensive experience and expertise in prosecuting complex

DECL OF ROBERT F. LOPEZ IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL – Case No.: 3:12-md-2330-EMC - 4
10285-11  847087 V1

1   class cases, including commercial, consumer, and product liability actions.  We remain committed to

2   advancing and protecting the common interests of all members of the class, and so we respectfully

3   submit our application for appointment as class counsel.

4         18.    In this case, while certain evidence pointed in plaintiffs' view to violations of federal

5   and state wiretapping and privacy laws, violations of various states' consumer fraud laws, and

6   violation of the implied warranty of merchantability, plaintiffs' success was not without doubt.  For

7   example, the plaintiffs faced another motion to dismiss following amendment of their complaint,

8   including as to their re-pled Federal Wiretap Act claim against the manufacturer defendants.  Also,

9   almost certainly defendants would have moved to dismiss most if not all of the rest of the claims that

10  plaintiffs would have re-pled, too.  The defendants would continue to have contested liability and

11  damages, and plaintiffs had to take into account the financial condition of defendant Carrier iQ.

12  Additionally, the defendants promised to contest class certification on grounds that plaintiffs

13  necessarily took seriously.  Further, plaintiffs faced defendants' pending appeal to the Ninth Circuit,

14  which, if successful, could have resulted in all of their claims being referred to arbitration.

15        19.    Still, at every stage of this case, plaintiffs pushed back on the strength of their

16  research, investigation, results of discovery, and conviction, reminding the defendants of the strength

17  of their own positions.  But ultimately, after taking into account the risk expense, complexity, and

18  likely duration of further litigation, plaintiffs and their experienced counsel, with the aid and wisdom

19  of Judge Larson, were able to achieve a settlement that allows for substantial monetary and

20  injunctive relief to the settlement class.

21        20.    Specifically with respect to the monetary component of the Settlement, $9 million is

22  substantial in light of the above-stated risks, together with the risk that, ultimately, a jury could find

23  no liability or award no damages, or well less in damages, should the case have proceeded to trial.

24  There also was the matter of defendant Carrier iQ's financial condition.  As for the non-monetary

25  relief achieved, it included significant alterations to the Carrier iQ Software, as well as changes to the

26  porting guide to help prevent a debug error such as that whose effects Trevor Eckhart pointed to in

27  his widely seen YouTube video.

28

DECL OF ROBERT F. LOPEZ IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL – Case No.: 3:12-md-2330-EMC - 5
10285-11  847087 V1

1        21.      Attached as Exhibit A is a true and correct copy of the Parties' Stipulation and

2    Release, with its exhibits.

3        22.      Attached as Exhibit B are true and correct website materials retrieved on January 22,

4    2016 regarding the three potential, proposed *cy pres* recipients in the parties' settlement agreement:

5    the Electronic Frontier Foundation; the Center for Democracy and Technology; and the CyLab

6    Usable Privacy and Security Laboratory at Carnegie Mellon University.

7        23.      Attached as Exhibit C are copies of Hagens Berman's firm resume and biographies of

8    Steve W. Berman and Robert F. Lopez, the Hagens Berman attorneys who did the most work on this

9    matter for our firm.

10        I declare under penalty of perjury under the laws of the United States and the State of

11    Washington that the foregoing is true and correct.

12        Executed this 22nd day of January, 2016 at Seattle, Washington.

13

14                                              */s/ Robert F. Lopez*
                                                Robert F. Lopez
15

16

17

18

19

20

21

22

23

24

25

26

27

28