Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Bruce L. Simon (SBN 96241)
PEARSON SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone: 650.988.8500
Facsimile:  650.938.5200

TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ANNASARA G. PURCELL
(CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415.281.1350

*Attorneys for Defendant
Carrier iQ, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Carrier IQ, Inc. Consumer Privacy Litigation*<br><br>[This Document Relates to All Cases] | Case No. C-12-md-2330-EMC<br><br>**DECLARATION OF ALAN VASQUEZ REGARDING DISSEMINATION OF NOTICE** |

1.      I am a Vice President of Legal Notification Services at Gilardi & Co. LLC ("Gilardi"), a KCC Class Action Services ("KCC") company.  In my role, I oversee Gilardi's in-house advertising division specializing in the design and implementation of legal notice plans to reach unknown class members in class action litigation.

2.      Gilardi was established in 1984 and is one of the largest full service class action notice and claims administrators in the United States.  The in-house advertising division has specialized in designing, developing and implementing legal notification plans for more than 25 years. As such, we are familiar with, and guided by, Constitutional due process provisions, rules of states and local jurisdictions, and the relevant case law relating to legal notification.  Media plans designed and implemented by our group have included both domestic and international newspapers and magazines, Internet-based banners, notices and websites, wire service, radio, television, point of purchase displays and direct mail. As Vice President of Legal Notification Services, I oversee the advertising group's activities as they relate to these notice services.

3.      I have been involved in the development and implementation of media plans for class action notification for more than ten years. Prior to my engagement with Gilardi, I spent five years with another nationally recognized claims administrator serving in a similar capacity.

4.      For several years, courts have accepted my expert testimony regarding our firm's quantitative and qualitative evaluation of judicially approved notice plans. I have also testified in person and was acknowledged as an expert in Larson v. Sprint Nextel Corp., No. 07-cv-5325 (D. N.J.). Media campaigns for which I have been directly responsible include, but are not limited to, Pappas v. Naked Juice, No 11-cv-08276-JAK (C.D. Cal.), Mattel, Inc., Toy Lead Paint Prods. Liab. Litig., No. 07-ML-01897 (S.D. Cal.), Pecover, et al. v. Electronic Arts Inc., No. 08-cv-02820 (N.D. Cal.), New Motor Vehicles Canadian Export Antitrust Litig., No. MDL 03-1532 (D. Me.), and SRAM Antitrust Litig., No. 07-MD-01819 (N.D. Cal.). A more comprehensive list of notable matters for which I have been personally responsible for the notice planning and implementation services is attached as Exhibit 1.  I have also spoken as faculty on various CLE panels related to class action notice and related trends.

5.      I submit this declaration at the request of counsel in the above-referenced litigation in order to describe the proposed notice plan and notice services in this matter.  I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently thereto.

**CASE BACKGROUND**

6.      The lawsuit alleges mobile software developer Carrier IQ designed and developed the smartphone software that collected and transferred sensitive data off consumer's phones.  The Second Consolidated Amended Complaint ("SCAC"), which Plaintiffs filed on June 23, 2014, asserts claims against the Defendants for violation of the Federal Wiretap Act ("FWA"), various state privacy and wiretap acts, various state consumer protection acts, the Magnuson-Moss Warranty Act, and the implied warranty of merchantability under various state laws.  I understand that a Third Consolidated Amended Complaint ("TCAC") will be filed on January 22, 2016. While I am advised that the FWA claim was dismissed without prejudice in the order on Defendants' motion to dismiss, I also am advised that Plaintiffs have amended and re-asserted it in their TCAC.

7.      The Defendants have asserted numerous defenses to the claims alleged in Plaintiffs' SCAC, and they expressly deny each of the claims and allegations asserted against them and any and all liability arising out of the conduct alleged in this Action.

**CLASS DEFINITION**

8.      The objective of the proposed notice plan is provide the best notice practicable to the Class, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure and all applicable California state laws and court rules.

9.      Specifically, "the Settlement Class" is defined in the Settlement Agreement as:
> All persons in the United States who, during the Class Period, purchased, owned, or were an Authorized User of, any Covered Mobile Device.  The Class Period is defined as "that period of time between December 1, 2007 and the date of entry of the Court's order granting preliminary approval of the Settlement." The Settlement Agreement defines an Authorized User as "a person authorized by name on the Wireless Provider account for a Covered Mobile Device during the Class Period."

10.     Gilardi used the most recent 2015 Simmons Experian National Consumer Study[1] data to define the potential size of a Target Audience ("TA") inclusive of likely class members. Because the case involves a product that is ubiquitous to almost every U.S. adult and cell phone users are known to switch carriers and phones fairly often, Gilardi believes defining an audience of U.S. adult cell phone owners is the best approach to ensure broad reach inclusive of the class members.  Simmons data estimates that the number of individuals who fall within this group is approximately 221 million adults nationwide.

**CLASS DEMOGRAPHICS**

11.     After defining a TA inclusive of the class members, Gilardi examined demographics, geographic locations, lifestyles statements, and media preferences to determine the best mix of vehicles to notice the class members.  Simmons data reflects that over 65% of the TA is between the ages of 18 and 54, over 61% are employed full or part time, and over 90% are either white or Hispanic.  In addition to demographic information, Gilardi analyzed internet behavior and lifestyle statements related to media preferences.  Our analysis determined approximately 65% of the Audience agrees with the statement, "The internet has changed the way I get information about products and services" and nearly 60% agree with the statement, "When I need information, the first place I look is the internet."  Simmons data also indicates 91% of the TA uses the internet, 100% own a phone capable of accessing the internet, 77% identify as social media users, 77% have accessed the internet from home or work within the last 7 days (excluding email) and over 65% prefer Google.com as their favorite search engine.  Details and charts illustrating the Simmons National Consumer Survey data analysis are included in Exhibit 2.

12.     The audience data suggests that a notice plan comprised of significant online

---

[1]  The Simmons National Consumer Study brings consumer targets to life with vivid and complete profiles, including lifestyles, attitudes, brand preferences and media use. The high quality, nationally representative study is the result of a comprehensive, continuously fielded survey of approximately 25,000 U.S. adults, including both English and Spanish speakers.  The study, released quarterly, simplifies and enhances consumer and media research reporting on over 60,000 data elements, including all major media usage (including traditional and emerging digital platforms), over 1,000 distinct media properties, more than 500 product categories (over 8,000 brands), over 600 consumer attitudes and opinions, and in-depth demographic and lifestyle characteristics.

advertising, supplemented by print publication and social media outreach is the most appropriate method to reach the class members in this litigation.  Not only does an online campaign offer cost efficiency with the ability to scale expense up or down during the notice period, but it is the most effective means to reach the class members because the products involved in the litigation are products that allowed users to connect to the internet.   The internet is where users discuss technology and where many purchase the product.

**NOTICE PLAN**

13.     To reach the Class Members, Gilardi has developed a notice program consisting of efficient media vehicles that will ensure a large percentage of potential class members receive notice of their rights in the litigation. Specifically, the publication notice program relies on the following elements:

i.   Direct notice via email or USPS mail to all class members for whom an address is provided;

ii.   2x print publication of a 1/6 page (approximately 4.18" wide by 8" deep) insertion in the National edition of *USA Today* Newspaper;

iii.   1x print publication of a 1/2 page (approximately 3.375" wide by 10" deep) insertion in *People Magazine*;

iv.   Text Link search advertising on Google.com;

v.   Banner advertising targeting U.S. adult cell phone owners through Xaxis RON advertising

vi.   Banner advertising through the Facebook Exchange platform

vii.   Banner advertising through managed placements to Youtube.com;

viii.   A promoted Tweet campaign on Twitter.com targeting likely cell phone users;

ix.   Social media outreach through Twitter and Facebook; and

x.   A 1x National, party-neutral press release.

14.     Gilardi believes the plan summarized above satisfies due process standards given

the parameters of the settlement and information learned from our team's research.  The proposed notice plan provides the best practicable method to reach the potential class members and is consistent with other class action notice plans that have been approved by various federal courts for similarly situated matters.  A spreadsheet outlining the media vehicles is attached as Exhibit 3.

**NOTICE CONTENT**

15.     Prior to mailing or publication of the Full-length Notice and Summary Notice, Gilardi will review both formats to ensure compliance with the following guidelines outlined on the Federal Judicial Center's Class Action Notice website:

      i.   The nature of the action

      ii.   The definition of the Settlement Class

      iii.   The class claims, issues, and defenses

      iv.   The method by which one may exclude oneself

      v.   The timing and manner for requesting exclusion

      vi.   The timing and manner for objection

      vii.   The binding effect of the class judgment on the class members

      viii.   The manner by which to contact class counsel

      ix.   The manner by which to obtain copies of relevant documents

16.     Samples of the draft long and short form notices are attached as Exhibit 4.

**NOTICE PLAN**

17.     **Direct Notice.**  Whenever practicable, direct USPS mail or email is the preferred form of notice for class members in a class action.  For this plan, Gilardi understands that there are no addresses available for direct notice at this time.  If direct contact information becomes available for the entire class or a portion of the class, Gilardi suggests providing those class members with direct notice either by email or United States Postal Service ("USPS") first-class mail.

18.     For any USPS mailing addresses provided, Gilardi will run the records through the USPS National Change of Address system ("NCOA").  The NCOA system provides updated

addresses for all mail recipients who have filed a change of address with the post office within the past four years and helps to ensure that we have the most current address on file with the USPS. After the NCOA update, Gilardi will cause direct Notice to be sent via USPS mail to any and all database records associated with a mailing address.

19.     Any email records provided by counsel will be forwarded to a vendor for deliverability analysis and to analyze for potential spam traps.  After emails have been determined to be deliverable, Gilardi will execute an email blast of the Notice to each address provided.

20.     **Print Publication**. The notice plan contemplates inserting the Summary Notice in the print editions of *USA Today* and *People Magazine*.

    i.   *USA Today* is a national American daily middle-market newspaper published by the Gannett Company.  The newspaper has the highest daily print circulation of any newspaper in the United States at over 1.2 million.  USA Today is distributed in all 50 states, the District of Columbia, Guam, Puerto Rico, Canada, and the United Kingdom.

    ii.  *People Magazine* is a weekly American magazine of celebrity and human-interest stories, published by Time Inc.  With a readership of 46.6 million adults, People has the largest audience of any American magazine.

13.     **Search Advertising.**  Search advertising will provide a secondary channel for class members who receive notice directly or have seen the class notice in other media, to be directed to the case website.  The majority of class action websites are created just prior to the commencement of notice, making it difficult to garner high organic rankings on the search engines.  Search engines build indexes of Web pages using a Web crawler.  When the publisher of a web page arranges with a search engine firm to have ads served up on that page, the search engine applies their indexing technology to associate the content of that page with keywords.  In order to ensure a link to the case website for this matter is available within the top five sponsored

links of any search related to the case, Gilardi will develop a list of keywords related to the settlement and place bids likely to generate impressions from the search results.

14.    **Google Display Network Advertising.**  In addition to using Google Adwords for text link search advertisements, Gilardi will implement a portion of the budget to be dedicated to managed placements on **www.youtube.com** through the Google Display Network.  Placements are locations on the Google Display Network where your ads can appear. A placement can be a website or a specific page on a site, a mobile app, video content, or even an individual ad unit. What makes a placement a "managed placement" is that you've chosen to target a website, mobile app, or ad unit specifically, in this case YouTube.  Because many people look to YouTube for instruction on how to operate their mobile phones as well as for information about different functions and problems, Gilardi believes allocating impressions to a managed placement on YouTube would be an effective channel for directing potential class members to the case website.

21.    **Paid Banner Advertising:** The plan will further provide notice through banner advertising that utilizes Run of Network ("RON") targeting with a demographic data overlay to ensure the banners are served to individuals likely to own cell phones.  Because the litigation involves a product category that is inclusive of nearly every U.S. adult, Gilardi believes utilizing RON targeting with an age filter and third party data for cell phone ownership, is the most appropriate technique for reaching the largest possible volume of likely class members.  The majority of paid banner impressions will be served through Xaxis, a nationally recognized leader in online programmatic advertising, with 15% of the impressions served in Spanish.

i. Xaxis offers multiple ways to target audiences, including by geography, online behavior, and custom channels developed by connecting data points provided by clients and targeting groups that fit within the parameters of the data definition.

22.    In addition to banner advertising using Xaxis RON placements, Gilardi will work through Xaxis to serve impressions through the Facebook Ad Exchange ("FBX").  FBX is only available to agencies and reaches people who have expressed an interest in certain products or

topics through their online behavior.

> i.   For example, in this matter we are trying reach current and former owners of certain types and brands of mobile phones. Effective strategies to be implemented for targeting those who may be class members would be to show an ad with the case website link to someone who has visited a number of websites related to mobile phones over the past few weeks or perhaps someone who has visited websites where the topic of mobile phone tracking software is discussed. Through Facebook Exchange, individuals can be targeted based on these types of data points.

23.   To ensure a large majority of the class members have an opportunity to be exposed to the class notice, Gilardi will place a frequency cap on the banner ads to ensure that the ads are served no more than 2 to 3 times per unique IP address. Samples of potential banners to be implemented within the campaign are attached in Exhibit 5

24.   **Twitter Promoted Tweets.**   Gilardi staff will research Twitter handles and hashtags related to the smartphone industry and more specifically, the smartphones at issue within the litigation. Promoted Tweets are ordinary Tweets purchased by advertisers who want to reach a wider group of users or to spark engagement and drive traffic to a website. Gilardi's research will provide the basis for the promoted Tweet targeting. Promoted Tweets will be delivered in the Twitter feeds of influencers in industries related to the case complaint. In addition, keywords will be used to serve promoted Tweets impressions to accounts with Tweets containing the selected keywords. Gilardi's experience has found this is not only a cost effective approach to reach likely class members, but also very effective at driving appropriate traffic to the case website. Samples of promoted Tweets that could be implemented during the campaign are attached in Exhibit 6

25.   **Social Media Outreach.**   Outreach entails utilizing social media listening to identify conversations and twitter handles of influencers who may be discussing the case or issues involved in the case. Keywords related to the settlement are selected and Gilardi staff monitors

various social media outlets on a daily basis locating posts that include the selected keywords. Any misinformation communicated can be corrected by direct message or Tweeting to a case related hashtag.  Gilardi staff can also schedule Tweets on a daily basis using a unique hashtag related to the case and provide potential class members with a link to the website.  By using a unique hashtag, reach of the organic Tweets can be measured by using third party websites such as www.Tweetreach.com.  Gilardi's experience is that this is not only an effective means to correct misinformation about the class notice, but also helps to drive appropriate traffic to the case website.  Exhibit 7 includes a description of this approach along with samples of organic Tweets.

26.    **Press Release**. Gilardi will work with the parties to create a party-neutral press release with information about the litigation and the proposed settlements. A press release is one of the most cost-effective means of transmitting notice; once released, a release remains available for 30 days to over 200,000 news outlets for distribution.  A copy of the press release is attached hereto as Exhibit 8.

27.    **Website**. Gilardi will establish a case-dedicated website which will be a source of reliable and accurate information for class members and the general public. The paid media campaign and press release will direct individuals to the settlement website where they can file claims or obtain more information about the case, including the long and short forms of notice, the claim form and relevant court documents.  The websites of Class Counsel will also include links to the case-dedicated website.

28.    **Telephone Services**. Gilardi will establish and maintain a toll-free telephone number where class members and the general public can call in, listen to an interactive voice recording with information about the settlements and request a notice packet.

**SUMMARY**

30.    The objective of the proposed notice plan described above is to provide the best notice practicable, consistent with the requirements set forth in Rule 23 and other applicable State statutes, to reach a large percentage of class while meeting or exceeding the requirements of due process and all applicable state laws and court rules.  The foundation of the recommended plan is

centered on a large national online advertising campaign, print publication in newspapers and magazines likely read by class members, and social media outreach to aid in claims stimulation. The class Notice direct potential claimants to the case website where they can view a more detailed long form notice and file a claim.

31.     The total estimated cost of the notice plan is approximately $532,000.  Many courts have held that notice plans estimated to reach a minimum of 70% of the settlement class are adequate and sufficient and thus comply with Fed. R. Civ. P. 23.  The Notice Plan being contemplated here will exceed this standard of reach.  Beyond the reach standard, the plan also includes a strategy for claims stimulation utilizing the same media platforms and channels that likely class members use to discuss the products at issue in the litigation.  The approach provides multiple channels for class members to be directed to the settlement website, while also allowing the ability to scale up or reduce the budget for online media vehicles if the goals of the campaign are not being met.  It is Gilardi's opinion that the plan complies with requirements set forth in Rule 23 while making genuine effort to reach the class and provide them with their due process rights in the litigation.

32.     Prior to the final approval hearing, Gilardi will file a declaration confirming that notice has been provided as set forth in the Settlement Agreement and as ordered by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 22nd day of January, 2016 at San Rafael, California.

_____
ALAN VASQUEZ

867599.1 DECLARATION OF ALAN VASQUEZ
REGARDING DISSEMINATION OF NOTICE

10

Case No. C-12-md-2330-EMC