RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ANNASARA G. PURCELL
(CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
Carrier iQ, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Carrier IQ, Inc. Consumer Privacy Litigation* <br><br> [This Document Relates to All Cases] | Case No. C-12-md-2330-EMC <br><br> **DECLARATION OF TYLER NEWBY IN RESPONSE TO ORDER RE SUPPLEMENTAL BRIEFING AND/OR EVIDENCE** <br><br> Date: February 16, 2016 <br> Time: 2:00 p.m. <br> Judge: Honorable Edward M. Chen <br> Dept.: Courtroom 5, 17th Floor |

DECL. OF TYLER NEWBY IN RESP. TO
ORDER RE SUPP. BRIEFING AND/OR EVID.

Case No. C-12-md-2330-EMC

I, Tyler Newby, declare as follows:

1. I am an attorney admitted to practice before this Court and am a partner in the law firm of Fenwick & West LLP, which represents Defendant Carrier IQ, Inc. ("Carrier IQ") in this action. I submit this declaration to address questions regarding individual notice to class members posed in section B of the Court's January 26, 2016 Order Regarding Supplemental Briefing and Evidence. I have personal knowledge of the matters set forth in this Declaration.

2. In May and June of 2015, I had several discussions with Plaintiffs' counsel concerning how notice of a settlement would be given to class members if the parties were able to reach a global settlement agreement. Because neither Carrier iQ nor the handset manufacturer defendants had a means of identifying class members from their own business records, Plaintiffs' counsel asked that I inquire of Carrier iQ's wireless carrier customers whether the carriers had the means of identifying their subscribers who used devices that had Carrier iQ software installed.

3. In June and July 2015 I had several conversations with counsel for Sprint, AT&T and Cricket regarding those companies' respective abilities to identify and provide contact information for their subscribers who had used devices with Carrier iQ software installed. In each instance, I inquired whether the carrier could search its records to match devices known to have included Carrier iQ's software with the names and addresses of subscribers who used those devices on the carrier's network during the class period.

4. Sprint's counsel informed me that after investigating the request, Sprint determined it does not have an existing mechanism to determine the device account holders during the relevant period of time. Sprint does not have the ability to provide such information from an existing database. The primary customer database is designed to retrieve individual account information such as billing and usage. Sprint's counsel explained that to provide such information, Sprint would need to develop a new database that would allow Sprint to identify its subscribers and their contact information based on a query of device make and models that were known to have contained Carrier iQ software. Sprint's counsel further informed me that designing such a database would come at a substantial burden and cost to Sprint and its functionality was uncertain. Sprint's counsel also raised privacy concerns about providing

DECL. OF TYLER NEWBY IN RESP. TO
ORDER RE SUPP. BRIEFING AND/OR EVID.  1  Case No. C-12-md-2330-EMC

customer contact information to third parties.

5. AT&T and Cricket's counsel provided a similar response. AT&T's counsel explained that while providing such a list might well be technically possible, AT&T had determined that doing so would impose a substantial burden of time and cost for developing a database that could provide the names and addresses of subscribers who used devices with Carrier iQ software installed. Cricket, which was acquired by AT&T after this litigation began, also receives less reliable contact information from some of its subscribers because a large percentage of Cricket's customers pay for service on a pay-as-you-go or pre-paid plan, rather than receiving service under minimum term commitments.

6. Following the issuance of the Court's January 26 Order, I again contacted counsel for Sprint, AT&T and Cricket to inquire whether there had been any developments at these companies that would reduce or remove the burden and difficulty of identifying the names and contact information for subscribers who used devices with Carrier iQ software on their networks. Each confirmed to me that they are not aware of any such developments. I also spoke with counsel for T-Mobile on January 27, 2016 regarding T-Mobile's ability to identify the names and contact information of its customers who used devices on which Carrier iQ software was installed. T-Mobile's counsel later informed me that identifying T-Mobile customers who had purchased and used particular makes and phones would be "incredibly burdensome and difficult" for T-Mobile to do, and that it was not confident that it could identify a list of its customers who purchased and used devices with Carrier iQ software.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2016, in San Francisco, California.

/s/ Tyler G. Newby
Tyler G. Newby