1  Steve W. Berman (*pro hac vice*)
   HAGENS BERMAN SOBOL SHAPIRO LLP
2  1918 Eighth Avenue, Suite 3300
   Seattle, WA 98101
3  Telephone: (206) 623-7292
   Facsimile:  (206) 623-0594
4  steve@hbsslaw.com

5  Bruce L. Simon (SBN 96241)
   PEARSON SIMON & WARSHAW, LLP
6  44 Montgomery Street, Suite 2450
   San Francisco, CA 94104
7  Telephone: (415) 433-9000
   Facsimile:  (415) 433-9008
8  bsimon@pswlaw.com

9  *Plaintiffs' Interim Co-Lead Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Carrier IQ, Inc. Consumer Privacy Litigation*<br><br>[This Document Relates to All Cases] | Case No. C-12-md-2330-EMC<br><br>**DECLARATION OF ALAN VASQUEZ IN RESPONSE TO ORDER RE SUPPLEMENTAL BRIEFING AND/OR EVIDENCE** |

DECLARATION OF ALAN VASQUEZ IN
RESPONSE TO ORDER RE SUPPLEMENTAL
BRIEFING                                              Case No. C-12-md-2330-EMC

1. I am a Vice President of Legal Notification Services at Gilardi & Co. LLC ("Gilardi"), a KCC Class Action Services ("KCC") company. In my role, I oversee Gilardi's in-house advertising division specializing in the design and implementation of legal notice plans to reach unknown class members in class action litigation.

2. I submit this supplemental declaration at the request of counsel in the above-referenced litigation in order to clarify questions regarding the class notice program and to provide additional information regarding how the media vehicles being contemplated for notice are to be implemented. I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently thereto.

**EFFECTIVENESS OF NOTICE VEHICLES**

3. The parties have been asked to address how effective some of the forms of notice are expected to be, given that, arguably, they would require a class member to be looking for the specific problem addressed by the lawsuit (*e.g.*, tracking software on cell phones) in order to get notice. (Sec. B to Court's Order of January 26, 2016.)

4. The plan outlined in my Declaration Regarding Notice Dissemination dated January 22, 2016 includes several online media vehicles; targeting for only one of those vehicles—search ads—requires the audience's prior knowledge of the matter. The following paragraphs will provide more detail about how each of the online media vehicles will be implemented, including sample scenarios under which likely class members may be served an advertisement directing them to the case website.

5. **Paid Banner Advertising.** Paid banner impressions served to potential class members comprise the bulk of the notice program. Banner ads will be served using targeting strategies that do not require prior knowledge of the settlement for an individual to be exposed; the individual does not even need to be looking for information about phones or communication in general.

DECLARATION OF ALAN VASQUEZ IN RESPONSE TO ORDER RE SUPPLEMENTAL BRIEFING

1

Case No. C-12-md-2330-EMC

a. **National Run of Network ("RON")[1] Advertising.** Banner ads will be placed across private ad networks through our programmatic ad vendor, Xaxis. In this notice program, the ad targeting will include demographic, interest, and device filters to ensure ads are served to likely class members. An individual does not need to be looking for information about privacy or anything case-related in order to potentially be served an ad from this campaign. Ads placed using these tactics are targeted based on an individual's already-identified demographic and interest profile, not the websites he or she is visiting. Those people could be looking at fashion, bowling, or garden supply websites; it's the data that is already known about them that determines what type of ad they are served.

b. Data providers can link pieces of data together based on how and from where the internet is accessed, as well as what content is accessed. These data points can include internet provider information (potentially by service carrier, if accessing the internet through one's mobile device) and location data. All of this collected information is used to build a "profile" for serving ad impressions. This is why many people see the same advertisements across the websites they visit, regardless of website content. It isn't a case of the advertiser targeting all of those websites; it's the advertiser targeting the individual profile. This is the approach that Gilardi will utilize for the paid Xaxis banners being contemplated for this program.

6. **Google Display Network.** Gilardi will leverage the Google Display Network to place audience-targeted ads on Youtube.com. Audience-targeted placements are impressions served to specific people who fit within an advertiser-defined profile; they do not depend on a particular video's content. Specifically, we will define an audience of adults over the age of 18 who own cell phones and limit placements to Youtube.com. We believe Youtube.com is a

---

[1] RON refers to ad placement across a network (or networks) of websites. It is not analogous to run-of-press ("ROP") placement, where ad placement within a publication's layout is at the discretion of the publisher.

DECLARATION OF ALAN VASQUEZ IN RESPONSE TO ORDER RE SUPPLEMENTAL BRIEFING

2

Case No. C-12-md-2330-EMC

popular website among potential class members; our research turned up a number of popular videos related to phone privacy, including one with more than two million views.

7. **Search Advertising.** Gilardi will supplement the paid banner campaign with search advertising. These ads will be served to audience members who are searching for specified keywords relevant to the settlement. The purpose is twofold: to (1) "close the loop" for potential class members who may hear of the settlement then search for information later and (2) ensure the case website is easily accessible from the first page of results. Class action websites typically do not rank high in organic (non-paid) search results when first launched. Gilardi will create a list of keywords related to the case and place bids for those keywords through the search engine's ad platform. For searches performed using those keywords, a link to the case website will show up within the first page of search results, often in the top three positions above the organic rankings. Once the case website begins to rank high in organic search results without paid search ads, the search ads can be scaled back. Less than 1% of the overall notice budget has been allocated to the search-based ads.

8. **Twitter Promoted Tweets.** Similar to the targeting that will be utilized for the banner placements, Promoted Tweet targeting will not be limited to individuals whose Tweets include specific keywords. Rather, the campaign may include targeting based on demographic and other information. The image below illustrates some of the additional targeting options for Promoted Tweet. Gilardi suggests that the majority of the Promoted Tweet impressions be directed to devices and carriers included in the settlement (*i.e.*, "Covered Mobile Devices" used on the networks of the "Wireless Providers"), but also suggests including a limited number of impressions targeting devices and carriers not included in the settlement due to the fact that some class members may have switched devices or wireless carriers during the class period. By limiting exposure based on device and carrier, those impressions have a very high degree of probability of reaching known class members.

DECLARATION OF ALAN VASQUEZ IN RESPONSE TO ORDER RE SUPPLEMENTAL BRIEFING

3

Case No. C-12-md-2330-EMC



9. **Social Media Outreach.** Unlike banner advertising and Promoted Tweets, which are paid advertisements, social media outreach services involve Gilardi staff monitoring social media channels using what is often referred to as "social listening." Below is an image from a sample stream set up for phone privacy. Our media specialists will create a list of keywords and keyword terms related to data points known about class members. By searching Tweet streams

based on these keywords and keyword terms, potential class members as well as topic influencers can be identified. Outreach efforts will include sending Tweets with the case website URL and asking topic influencers to retweet the URL to their followers.



10. In addition to the tactics described above, our social monitoring platform allows us to schedule Tweets in advance. Gilardi will create a unique hashtag related to the case likely to be only used in the context of the notice program. During the notice period, staff will periodically review statistics related to the hashtag on Tweetreach.com, which measures the reach of Tweets related to specific hashtags. If results are not meeting expectations, revisions to content can be made to optimize the program as best possible.

11. The notice plan also includes creation of a Facebook page related to the settlement. Our experience has been that when implementing banner advertisements on Facebook, click rates are likely to be higher if the settlement has a corresponding Facebook page. Because the goal of both the paid social advertising and the outreach is to direct appropriate traffic to the case website where class members can file claims, only basic information about the case will be posted to the Facebook page with emphasis on clicking through to the website for further information.

12. Our experience with social outreach and targeted social advertisements has been

that they are some of the most effective channels at driving appropriate traffic to the case website. Average click-through rates for paid online media campaigns have a wide range, but more often than not .06% is cited as a benchmark across all industries and product types. In a recent promoted tweet program implemented by Gilardi, more than 300,000 clicks to the case website were generated from 12 million impressions served. The average click through rate for the program was well over 2%. In another program implemented for the NCAA and EA Video Game Likeness Settlements, the promoted tweet click through rate was well in excess of 2.5%. Both Facebook and Twitter have been consistently showing up in our server logs for case websites as the top two websites referring traffic.

## COST OF NOTICE

13.     The parties have been asked to address whether the cost of notice may legitimately be taken into account in assessing what the best notice practicable is.  (*See* Sec. B to Court's Order of January 26, 2016 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) (stating that "[t]here is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs")).

14.     Gilardi always looks at the totality of circumstances in evaluating the best notice practicable. As in all cases, Gilardi considers "price" but it is never by itself determinative. The statute does not reference practicality or whether the plan is sensible, it states the best plan practicable which means the best plan that can be done. In certain cases, appropriate notice may not be practicable depending on the amount of budget available.[2] Unlike *Eisen*, the addresses of class members are not available despite best efforts to obtain them. This, the issue here does not relate to the cost of individual notice, but rather the lack of contact information needed to provide direct notice. Absent such information, notice by publication satisfied due process.[3]

---

[2] "[W]hat is 'the best notice practicable under the circumstances' and what constitutes 'reasonable effort' is a determination of fact to be made in the individual litigation."  (See *In re "Agent Orange" Prod. Liab. Litig.*, 100 F.R.D. 718 (D.C.N.Y. 1983), cert. denied 100 F.R.D. 735, mandamus denied 725 F.2d 858, aff'd 818 F.2d 145, cert. denied 108 S. Ct. 695, and on remand, 689 F.Supp. 1250.)

[3] *E.g.*, *Pappas v. Naked Juice*, No. 11-cv-08276 (C.D. Cal) (final approval granted Jan. 2, 2014).

| | |
|---|---|
| DECLARATION OF ALAN VASQUEZ IN RESPONSE TO ORDER RE SUPPLEMENTAL BRIEFING | Case No. C-12-md-2330-EMC |

6

15. The total cost of the notice program is approximately $532,000. The total estimated cost of the required administration services is dependent on the number of claims filed, but ranges from approximately $350,000 (approx. 235,000 claims filed) to $784,000 (approx. 935,000 claims filed). Together, the overall cost of notice and administration is estimated to range from $889,000 to $1.3 million.

**SHORT FORM NOTICE CONTENT**

16. The Court has two concerns regarding the short form notice (Sec. M1 to Court's Order of January 16);

    i. The notice gives no indication that the cash payment may be minimal given the size of the class. Such notice should be given on the first page, as part of the bolded statement at the top of the page. (*Id.* at Subsection (1))

    ii. The notice does not make clear that an objector must still file a claim for payment or, otherwise, he/she will receive nothing if the settlement is approved. *Id.* at Subsection (2))

17. Gilardi has made revisions to the short form notice that address the Court's concerns. A draft copy of the revised short form notice is attached as Exhibit 1.

**LONG FORM NOTICE CONTENT**

18. The Court has several concerns regarding the long-form notice. (Sec. M2 to Court's Order of January 26, 2016.)

    iii. The notice gives no indication that the cash payment may be minimal given the size of the class. Such notice should be given on the first page, as part of the bolded statement at the top of the page. (*Id.* at Subsection (1))

    iv. The chart on page 1 of the notice is confusing. The basic options should be: (a) submit a claim, (b) exclude yourself, (c) object, and (d) do nothing. Within the "object" explanation, there should be a statement informing the objector that he/she must still file a claim for payment or, otherwise, he/she will receive nothing if the settlement is approved. There should further be a statement that

        the object may appear at the final approval hearing and ask to speak about the fairness of the settlement. (*Id.* at Subsection (2))

    v. Although the notice does refer a class member to a "Release of Claims" attached to the claim form, the notice should still describe the scope of the release. (*Id.* at Subsection (3))

    vi. The placement of the section "THE LAWYERS REPRESENTING YOU" is odd, inserted between the section on opting out and the section on objecting. (*Id.* at Subsection (4))

    vii. The section on objecting should include a statement that an objector must still file a claim for payment or, otherwise, he/she will receive nothing if the settlement is approved. (*Id.* at Subsection (5))

    viii. The placement of the section "THE COURT'S FAIRNESS HEARING" is odd, inserted between the section on objecting and the section on doing nothing. (*Id.* at Subsection (6))

19. Gilardi has made revisions to the Long form notice to address the Court's concerns. A draft copy of the revised long form notice is attached as Exhibit 2.

**BANNER CONTENT**

20. The Court expressed concern over the proposed banner advertising, promoted Tweets, etc. More specifically, the proposals refer only to owners and not authorized users. (Sec. M to Court's Order of January 26, 2016.)

21. Gilardi has made revisions to the banner forms and Promoted Tweets and text link advertising forms to address the Court's concerns. A draft copy of the revised materials is attached as Exhibit 3.

**PRESS RELEASE CONTENT**

22. The Court also expressed concern over the proposed press release and asked the parties to (1) indicate that the cash payment may be minimal given the size of the class and (2) describe, as one of the options, "do nothing," and the ramifications of doing nothing. (Sec. M to

the Court's Order of January 26, 2016.)

23. Gilardi has made revisions to the press release consistent with revisions for the forms of notice to address the Court's concerns. A draft copy of the revised release is attached as Exhibit 4.

**CLAIM FORM CONTENT**

24. The Court expressed two concerns with respect to the claim form: (1) the claim form did not appear to have as an attachment the "Release of Claims" referenced above; and (2) the claim form simply referred to an authorized user, and not, *e.g.*, an owner or purchaser. (Sec. M to Court's Order of January 26, 2016.)

25. Gilardi has made revisions to the Claim Form to address the Court's concerns. A draft copy of the revised form is attached as Exhibit 5.

**SUMMARY**

26. Experian Simmons Survey data reflects that 90%+ of cell phone owners use the internet, 77% identify as social media users, and 77% have used the internet from home or work within the last 7 days, non-email related. In addition, large percentages of the audience agree that the internet has changed the way they get information about products and agree that the internet is the first place they look when they need information. When contrasted against the consistently decreasing circulation of print media, we believe the plan being proposed utilizes the most effective media vehicles for communicating notice to the class. When an ad is placed in print, there is no guarantee that the subscription recipient will be home that day or even that he or she will turn to the right page, or even if he or she does get to the right page, whether he or she see the notice. With online advertising, we can ensure banners are served "above-the-line," meaning it is highly likely the ad impression was in front of an individual. We can also monitor and optimize content or remove ads that are not generating clicks or impressions.

27. Gilardi firmly believes that the best notice practicable should include a substantial online campaign. This is particularly true for an audience as widespread and broadly defined as the class definition in this matter. While nearly every business actively uses the internet to

DECLARATION OF ALAN VASQUEZ IN
RESPONSE TO ORDER RE
SUPPLEMENTAL BRIEFING

9

Case No. C-12-md-2330-EMC

communicate and serve its customers, the internet has traditionally been utilized in legal notification as a supplement. Given that Rule 23(c)(2) of the Federal Rules of Civil Procedure explicitly requires the **best notice practicable** under the circumstances, Gilardi believes the suggested plan meets that standard and will offer many advantages to the Class, including interactivity, high consumer acceptance, flexibility to adjust message during the campaign, excellent support, and detailed reporting. Class members will not have to be searching for the case to be exposed to the class notice. The foundation of the suggested program is centered on serving links to the case website to those pre-determined to have a high likelihood of being a class member, no matter what website they are viewing online.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 2nd day of February 2016 at San Rafael, California.

_____
ALAN VASQUEZ