Sam A. Miorelli, E.I., Esq. *(Pro Se)*
764 Ellwood Avenue
Orlando, FL 32804
Telephone: (321) 698-2776
E-Mail: sam.miorelli@gmail.com

*Pro Se Objector*

**FILED**

JUN – 6 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.: 3:12-md-2330-EMC |
| | ) |
| CARRIER IQ, INC. CONSUMER PRIVACY | ) **OBJECTION TO CLASS ACTION** |
| LITIGATION | ) **SETTLEMENT OF SAM A. MIORELLI,** |
| | ) **E.I., ESQ.** |
| This Document Relates to: | ) |
| | ) Date:      July 28, 2016 |
| ALL CASES | ) Time:      1:30 p.m. |
| | ) Judge:     Honorable Edwin M. Chen |
| | ) Dept:      Courtroom 5, 17th Floor |
| | ) |

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

# TABLE OF CONTENTS

I.    Mr. Miorelli is a class member, has timely filed his claim and this objection, and intends to appear at the fairness hearing through his counsel...................................1

     A.    This Objection is timely filed. ...................................1

II.    The Court has a fiduciary duty to the unnamed members of the class. ...................................2

III.    The existence of the Confidential Supplemental Agreement and Class Counsel's eagerness to hide material facts from the docket, and thus, absent class members, demonstrates his conflict of interest and requires his removal from the case and denial of final approval of the Settlement Agreement. ...................................4

     A.    The Side Deal renders the Class Notice inadequate. ...................................4

     B.    Class Counsel's engagement in the Side Deal demonstrates his conflict of interest with his supposed clients: the absent Class Members...................................7

     C.    Named Plaintiffs' agreement to the Side Deal demonstrates their breach of their duty to police the actions of Class Counsel and the terms of the Settlement Agreement to protect absent Class Members. ...................................8

IV.    The Settlement is a tiny percentage of the value of the Class' damages, demonstrating that Class Counsel and the Named Plaintiffs sold out the absent Class Members. ...................................9

     A.    The total recovery is a fraction of the class' injury. ...................................9

     B.    Even if there is not a *cy pres* distribution, the actual recovery of absent Class Members is even more miniscule. ...................................10

     C.    Named Plaintiffs will get almost-complete recovery while absent Class Members likely get nothing. ...................................10

     D.    This miniscule settlement is either a sellout by Class Counsel and the Named Plaintiffs or a nuisance settlement whose only purpose is the generation of legal fees and incentive awards...................................11

V.    The *Cy Pres* provision shows Class Counsel and Named Plaintiffs' indifference to the interests of absent Class Members, violate *Dennis*, and prevent final approval of the Settlement Agreement...................................12

     A.    The *cy pres* distribution is unfair. ...................................13

     B.    The *cy pres* beneficiaries do not meet the *Dennis* test...................................14

     C.    Mr. Miorelli should be permitted to conduct discovery regarding the selection of the *cy pres* beneficiaries. ...................................15

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

VI.    A class action settlement should not be approved when the primary beneficiaries are the class representatives and class counsel. .................................................. 16

      A.    A large disparity between the recovery of the Named Plaintiffs and the absent Class Members is not permitted under Ninth Circuit precedent. ............................ 17

VII.   Class Counsel should not receive a fee award or costs award when he has not provided sufficient evidence in the public record to prove such amounts would comply with Class Counsel's own guidelines to limit costs and expenses which was ordered by this Court. ........................................................................................ 19

      A.    Class Counsel's motion and declarations do not satisfy his burden under the Guidelines. ......................................................................................... 20

      B.    Class Counsel's ignorance of his own Guidelines sinks his motion for fees and likely requires new notice to the absent Class Members. ................... 21

VIII.  Class Counsel should not get more than the 25% benchmark attorneys' fee calculated on the basis of the benefit to the class, not the gross recovery, much of which is actually a benefit to the Defendant instead of the class. ....................................... 22

      A.    The basis for a contingent fee should exclude costs of class notice, Class Counsel's costs, and any incentive payments. .......................................... 22

      B.    Class Counsel's lodestar should be calculated using the *Laffey Matrix*. ................. 23

      C.    The value of a *cy pres* award should not be included in the calculation of an attorneys' fee. ..................................................................................... 23

IX.    CONCLUSION.......................................................................................................... 24

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).............................................2, 3

*Chanel, Inc. v. Doan*, 2007 WL 781976 (N.D. Cal. 2007)................................................23

*Coons v. Henry*, 186 Cal.App.2d 512, 9 Cal.Rptr. 258 (Cal.Ct.App. 1960).........................4

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)..........................................3, 12, 14

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002)........................................5

*Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989)..........................2

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000).........................6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).......................................3, 12

*Hecht v. United Collection Bureau*, 691 F.3d 218 (2d Cir. 2012).....................................22

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983)......................................18

*In re American Tower Corp. Securities Litig.*, 648 F.Supp.2d 223 (D.Mass. 2009)....................13

*In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011)...................................19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)......................3, 22

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).............................................23

*In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984).........................................6

*In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d.
Cir. 1995).............................................................................................2

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013).......................................23

*In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988 (9th Cir. 2010)....................16

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977)............................5

*In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1988)..............23

*In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166 (D. Mass. 2005)...............................2

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004).................................2

*In Re Washington Public Power Supply Syst. Lit.*, 19 F.3d 1291 (9th Cir. 1994)......................3

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983)..................................23

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1991).........................................7, 8

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1    *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) ................................... 5

2    *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2nd Cir. 1995) ......................... 8

3    *Merkeley v. Fisk*, 179 Cal. 748, 178 P. 945 (Cal. 1919) ........................................................ 4

4    *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) .......................................... 24

5    *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .................................................................. 3

6    *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .......................... 11, 12, 24

7    *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983) .......................................................... 6

8    *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) ................................................ 18

9    *Plummer v. Chemical Bank*, 91 F.R.D. 434 (S.D.N.Y. 1981) .......................................... 18

10    *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir.1984) ........................................ 5

11    *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013) ..................... 17, 18

12    *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) .......................................... 22

13    *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ..................................... 2

14    *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................ 5

15    *Rushford v. New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) ................................... 6

16    *Sanders v. John Nuveen & Co., Inc.*, 463 F.2d 1075 (7th Cir. 1972) .............................. 5

17    *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992) ................................................................. 2

18    *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .............. 14

19    *Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ................................................................ 3

20    *True v. American Honda Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................... 3, 14, 19

21    *Twigg v. Sears, Roebuck & Co.*, 153F.3d 1222 (11th Cir. 1998) .................................. 22

22    *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013) ............................. 17, 18

23    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................... 3

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................... 2, 4, 5

Federal Rule of Civil Procedure 6 ................................................................................. 2

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**Other Authorities**

"List of Progressive Organizations," Center for Media and Democracy SourceWatch,

    http://www.sourcewatch.org/index.php/List_of_progressive_organizations (accessed June

    3, 2016) ................................................................................................................. 15

A C. Wright, A. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1

    (1986) ...................................................................................................................... 8

American Bar Association, *Model Rules of Professional Conduct* (2016) .......................... 7

American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.05(c) (2010) ................. 3, 14

Conte, 1 Attorney Fee Awards § 2.05 ................................................................................ 23

Editorial, *When Judges Get Generous*, Wash. Post (Dec. 17, 2007) ................................. 13

Herbert Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002). ................................. 2, 3

Martin H. Redish, *et al., Cy Pres Relief and the Pathologies of the Modern Class Action: A*

    *Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) .................................... 13

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

# INTRODUCTION

**I.** **Mr. Miorelli is a class member, has timely filed his claim and this objection, and intends to appear at the fairness hearing through his counsel.**

Mr. Miorelli, who resides at 764 Ellwood Avenue, Orlando, FL 32804, is a Class Member (capitalized terms used in this Objection have the same meaning as used in the Settlement Agreement unless otherwise defined). Mr. Miorelli purchased his Samsung Galaxy S6, Model SMG-920A on May 13, 2015 for $425.99. (Declaration of Sam A. Miorelli, E.I., Esq. ("Miorelli Declaration") at ¶5). Due to warranty issues relating to extremely-poor performance and high battery drain, that device was replaced under warranty first on December 20, 2015 and again for the same problems it was replaced a second time on April 30, 2016. *Id.*

On information and belief that one or more of these phones had CarrierIQ installed on them and that one or more of the warranty replacements, which caused significant disruptions to Mr. Miorelli, were related to CarrierIQ, Mr. Miorelli filed a claim in the instant action. Mr. Miorelli's claim number is CIQ-40048045-0.

Mr. Miorelli hereby provides Notice of his Intent to Appear at the Fairness Hearing at 1:30 p.m. at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 5 – 17th Floor, San Francisco, CA 94102. To the extent that other Class Members file objections which are not inconsistent with the objections raised herein, Mr. Miorelli reserves the right to adopt those objections and address them at the Fairness Hearing as well. To the extent that any objector participates in discovery relating to the Settlement Agreement, Mr. Miorelli joins their motion to do so and requests equal access to such proceedings. Mr. Miorelli also hereby requests the opportunity to depose and cross-examine any witness presenting evidence in support of the Settlement Agreement.

A. This Objection is timely filed.

The Court's Order Preliminarily Approving Settlement; Appointing Class Representatives and Class Counsel; Appointing Claims Administrator; and Providing for Notice to Settlement Class Member sets the deadline to object as "no later than sixty (60) days after the Class Notice Date." (Dkt 421 at 7:21). That deadline falls on June 4, 2016, which is a Saturday. Pursuant to Federal Rule of

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Civil Procedure 6(a)(3)(A), the deadline is automatically extended to Monday, June 6, 2016 as the first subsequent day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(3)(A). Consequently, this Objection is timely filed.

## II.     The Court has a fiduciary duty to the unnamed members of the class.

A district court must act as a "fiduciary for the class who must serve as a guardian of the rights of absent class members." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). "Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D. Mass. 2005) (*citing, inter alia, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'")); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions").

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d. Cir. 1995) (*"GM Pickup Truck"*) (internal quotation and citation omitted). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, Newberg on Class Actions § 13:20 (4th ed. 2002). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1052, 1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.05(c) (2010) ("*ALI Principles*").

"Where the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (*quoting Amchem*, 521 U.S. at 620). "[S]ettlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953. "[P]re-certification settlement agreements require that we carefully review the entire settlement, paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (*quoting Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003)). "These concerns warrant special attention where the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties. *Bluetooth*, 654 F.3d at 948 (*quoting Staton*, 327 F.3d at 960). Because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. *Id.* "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (*quoting In Re Washington Public Power Supply Syst. Lit.*, 19 F.3d 1291 (9th Cir. 1994)). "Accordingly, fee applications must be closely scrutinized." *Id.*

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**III.    The existence of the Confidential Supplemental Agreement and Class Counsel's eagerness to hide material facts from the docket, and thus, absent class members, demonstrates his conflict of interest and requires his removal from the case and denial of final approval of the Settlement Agreement.**

The behavior of Class Counsel proves his interests intractably conflict with that of the absent Class Members and he must be removed from the representation.

Class Counsel and Defendants have admitted that they have a "Confidential Supplemental Agreement" which also affects the Settlement Agreement, Mr. Miorelli shall refer to this as the "Side Deal." (Dkt 410 at ¶8-10; 411 at 3:14-16; 419 at ¶51). The Side Deal apparently grants additional rights to Defendants on terms and conditions which Class Counsel, the Named Plaintiffs, and Defendants expressly agree to keep secret, including secret from the absent Class Members themselves! (Dkt 419 at ¶51). Among the rights granted in the Side Deal is at least, the right of Defendants to terminate the Settlement Agreement if a secret number of absent Class Members opt out of the Settlement Agreement. *Id.* There is no reason to believe from the record that this is the *only* additional right Defendants maintain in the Side Deal.

A.    The Side Deal renders the Class Notice inadequate.

The Settlement Agreement is an integrated agreement. (Dkt 419 at ¶65). While the Side Deal is secret, it appears from its mentions in the record that it addresses the same subject-matter as the Settlement Agreement, and presumably includes a cross-reference to the Settlement Agreement. *See* Dkt 419 at ¶51. That integration clause and the cross reference means that the Side Deal and the Settlement Agreement must be "considered and construed as one contract." *Coons v. Henry*, 186 Cal.App.2d 512, 517, 9 Cal.Rptr. 258, 261 (Cal.Ct.App. 1960) (quoting *Merkeley v. Fisk*, 179 Cal. 748, 178 P. 945, 948 (Cal. 1919)).

The Side Deal, being a part of the Settlement Agreement, must be available to the absent Class Members or the notice under Rule 23 will be insufficient and render any release ineffectual. The quality of notice required under Rule 23 has been a stable point of class action law for decades. As the Fifth Circuit held in 1977,

> Absentee class members will generally have had no knowledge of the suit until they receive the initial class notice. This will be their primary, if not exclusive, source of information for deciding how to exercise

-4-

their rights under rule 23. Although absentee class members are customarily encouraged to make inquiry of the clerk of the district court where the case is filed if they have further questions, this worthwhile advice cannot justify omitting material information. This is particularly plain in a case such as the one at bar where class members are numerous and widely dispersed. Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action. The standard then is that the notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). This rule has been adopted across the country and no Circuit Court of Appeal has ever disagreed with this formulation of the Rule 23 notice requirements. *See Sanders v. John Nuveen & Co., Inc.*, 463 F.2d 1075, 1082 (7th Cir. 1972) ("The purpose of the mandatory notice and disclosure requirements of Rule 23(c)(2) is to advise all class members of their rights and privileges under the close supervision of the court."); *Erhardt*, 629 F.2d at 846.

The Ninth Circuit has often approved settlement agreements over objections to the adequacy of notice, in part, due to the ready availability of the *entire* settlement agreement to curious absent Class Members. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (noting that "the settlement agreement and related documents were posted at [settlement website URL]"); .

Additionally, the Court has an obligation, pursuant to Rule 23(e) to conduct a hearing prior to granting final approval of the Settlement Agreement. Fed. R. Civ. P. 23(e)(2). In a case such as this, that hearing is the closest thing absent Class Members will get to a trial and it is their only substantive opportunity to be heard in the entirety of the litigation. Every Court of Appeal to consider the issue has ruled that the First Amendment protects the public's right to attend civil trials. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120, 124 (2d Cir. 2006) (noting that the public has a right to attend trials); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002) (concluding that "Deportation hearings, and similar proceedings, have traditionally been open to the public"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir.1984) ("We hold that the First

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Amendment does secure a right of access to civil proceedings."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (agreeing that "the policy reasons for granting public access to criminal proceedings apply to civil cases as well"); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (deciding that "civil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement are presumptively open to the press and public"). *See also Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that "the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) ("we allow parties to use pseudonyms in the 'unusual case' where nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule, or personal embarrassment." (internal citations and quotations omitted)).

If the public has a First Amendment right to attend a trial, it cannot stand to any logic that it would not also have a right to review the critical documents at issue in such a trial. Considering the unique nature of the pre-certification class action settlement, it is impossible to imagine that the same principle should not also apply to the public, let alone to the actual absent Class Members themselves. Even if the Court believes it is a close call whether or not to seal documents in this case, at this stage, when the Court owes a fiduciary duty to the absent Class Members, the presumption must be strongly, even overwhelmingly in favor of public disclosure.

Having not disclosed the Side Agreement, the absent Class Members have been unable to adequately consider the Settlement Agreement. Without this opportunity to consider the adequacy of the Settlement Agreement before deciding whether to file a claim, object, or opt-out, absent Class Members have had their due process rights in this case violated. Thus, the Settlement Agreement cannot be approved without disclosure of the Side Agreement and new notice drawing absent Class Members' attention to the additional terms and granting an additional opportunity to object and opt-out.

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**B.** Class Counsel's engagement in the Side Deal demonstrates his conflict of interest with his supposed clients: the absent Class Members.

The secrecy of the Side Deal is even more outrageous because it was expressly negotiated for and agreed-to by Class Counsel. Since the only available information suggests that the Side Deal only provides Defendants additional rights, there is no reason to believe that the secrecy of the Side Deal could have any purpose except to harm absent Class Members. What other purpose could there be to keep such an arrangement secret? By engaging in such activity, Class Counsel has shown a conflict which requires his dismissal.

The analysis of this argument should begin with the ABA Model Rules of Professional Conduct and Model Code of Professional Responsibility. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588-89 (3d Cir. 1991). Rule 1.7 of the ABA Model Rules of Professional Conduct requires "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]" American Bar Association, *Model Rules of Professional Conduct*, § 1.7 (2016). In this case, the combination of the existence of the Side Deal and its secrecy is directly adverse to the absent Class Members. Assuming the Named Plaintiffs knew the terms of the Side Deal and consented to it and its secrecy, then it becomes likely that Class Counsel negotiated the Settlement Agreement and the Side Deal in a manner which was beneficial to the Named Plaintiffs at the expense of the absent Class Members. Mr. Miorelli will discuss, *infra*, additional indicia of such a conflict of interest.

Immediately upon demonstrating this conflict of interest, Class Counsel should have been removed from the representation. The Third Circuit explained, citing its prior case law, why it removed a plaintiffs' counsel who found himself adverse to the interests of many of his supposed absent clients:

> We focused on the policies underlying the rules against an attorney representing a party in a matter in which a former client is now an adversary, including preventing "even the potential that a former client's confidences and secrets may be used against him"; maintaining

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

"public confidence in the integrity of the bar"; and upholding the duty of loyalty that a client has the right to expect.

*Lazy Oil*, 166 F.3d at 589. The Third Circuit then set forth their standard for maintaining class counsel in the face of objections,

> We therefore hold that, in the class action context, once some class representatives object to a settlement negotiated on their behalf, class counsel may continue to represent the remaining class representatives and the class, as long as the interest of the class in continued representation by experienced counsel is not outweighed by the actual prejudice to the objectors of being opposed by their former counsel.

*Id.* at 590. Put simply, once Class Members object, the Court must always be on alert for whether the interests of the absent Class Members are best protected by class counsel, or if the objections have shown Class Counsel to be adverse to the best interest of the class, he must be removed.

    C.  <u>Named Plaintiffs' agreement to the Side Deal demonstrates their breach of their duty to police the actions of Class Counsel and the terms of the Settlement Agreement to protect absent Class Members.</u>

As the Second Circuit held in *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2nd Cir. 1995), once a class action has been certified, the class representative "must be alert for, and report to the court, any conflict of interest on the part of class counsel, as for example, counsel's greater concern for receiving a fee than for pursuing the class claims." *Id.* at 1078 (*citing* A. C. Wright, A. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1, at 386–87 (1986)). While this case is a pre-certification settlement, the Settlement Agreement asks for the class to be certified for the purposes of effectuating the Settlement Agreement and the release. Consequently, the same duty applies to the Named Plaintiffs in policing the negotiation and approval of the Settlement Agreement.

Named Plaintiffs are each aware of the terms of the Side Deal and why it is being kept secret from their fellow Class Members. (Dkt 431 at ¶4; Dkt 432 at ¶4; Dkt 433 at ¶4; Dkt 434 at ¶4; Dkt 435 at ¶4; Dkt 436 at ¶4; Dkt 437 at ¶4; Dkt 438 at ¶4; Dkt 439 at ¶4; Dkt 440 at ¶4; Dkt 441 at ¶4; Dkt 442 at ¶4; Dkt 443 at ¶4; Dkt 444 at ¶4; Dkt 445 at ¶4; Dkt 446 at ¶4; Dkt 447 at ¶4). For each and every one of them, the secrecy of the Side Deal creates the strong impression that they approve of such additional benefits for Defendants (benefits that only they and their lawyers know about) expressly because of what they buy them: exorbitant incentive awards. This would also show exactly

1    why they would tolerate the conflict of interest which Class Counsel labors under: he's conflicted *in*

2    *their favor!*

3        Having proved themselves each incapable of policing Class Counsel, the Court should deny

4    final approval of the Settlement Agreement and order discovery and briefing as to whether all or any

5    of the Named Plaintiffs are adequate representation of the absent Class Members.

6    **IV.**    **The Settlement is a tiny percentage of the value of the Class' damages, demonstrating that Class Counsel and the Named Plaintiffs sold out the absent Class Members.**

7

8        A.  The total recovery is a fraction of the class' injury.

9        Even if the Court agrees with Class Counsel that the entire $9 million benefits absent Class

10   Members, that is a fraction of the damages to which they are entitled. Class Counsel and Defendants

11   believed this case was worth approximately $1 trillion. (Dkt 411 at 4:5-7:14). Mr. Miorelli believes

12   the value was lower as he does not believe the double-recovery under the Federal Wiretap Act would

13   have been likely, especially given the poor financial stature of CarrierIQ. Mr. Miorelli prefers to

14   evaluate the value of the claim on a per-average-class-member basis then multiply by the size of the

15   class to estimate the value of the damages foregone in the Settlement Agreement. According to Class

16   Counsel and Defendants, the FWA clam was worth $10,000 per Class Member in statutory damages.

17   (Dkt 411 at 4:5-18). Additionally, the state privacy/wiretap laws provide each Class Member about

18   $1,000 each in statutory damages (ranging from $100 per day to $10,000 depending on the state). *Id.*

19   at 5:2-20. Class Counsel and Defendants valued the Magnuson-Moss Warranty Act claims at the

20   value of a replacement phone, which Mr. Miorelli estimates to be about $600 and claims under state

21   consumer protection and fraud acts would have a similar base value (but to avoid double-counting

22   since double-recovery under both theories would have been unlikely, Mr. Miorelli only considers

23   both for a total of $600). *Id.* at 6:21-24 and 7:1-12. In total, each absent Class Member likely was

24   claiming about $11,600 each. Multiplied by 47,000,000 Class Members, the total damages for the

25   collective class was likely about $545.2 billion.

26       Recovery of Class Counsel and Defendants' estimate, which would be north of $1 trillion,

27   would have been unlikely as the total market capitalization of the Defendants is approximately

28

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

$198.12 billion. (Miorelli Declaration at ¶4). Clearly the recovery could not be more than that, which across 47,000,000 Class Members would be about $4,215.25 each in maximum theoretical recovery.

Using that math, the total $9 million recovery is 0.0045% of the class' maximum theoretical recovery. In other words, if the recovery was "a penny on the dollar," it would be over 200 times better than the recovery in the Settlement Agreement. Using Class Counsel and Defendants' estimate, which seems to be about $1 trillion, this settlement represents 0.0009% recovery for the absent Class Members. Either way, the recovery is miniscule compared to the damages which absent Class Members were entitled to at law.

      B.  Even if there is not a *cy pres* distribution, the actual recovery of absent Class Members is even more miniscule.

Under the Settlement Agreement there is a significant risk that there will be too many of the 77 million absent Class Members making a claim to have the *pro rata* distribution exceed $4 and avoid a 100% *cy pres* distribution. Nevertheless, even if a cash distribution is made, the amount to Class Members will be minute.

Of the $9 million common fund, Class Counsel would take $2.25 million in attorneys fees plus $108,933.72 in "costs and expenses," 17 Named Plaintiffs would take $5,000 each, and the settlement administrator will take $889,000 to $1.3 million. This will leave $5,256,066.28 to $5,667,066.28 for absent Class Members. Expressed as a percentage, the class will recover (if it recovers anything at all) only 58.4-63% of the headline $9 million settlement fund. Compare that to a trillion-dollar prayer for relief against companies collectively worth about $198.12 billion. A pittance.

      C.  Named Plaintiffs will get almost-complete recovery while absent Class Members likely get nothing.

While the absent Class Members have their claim discounted tremendously (likely to the point of having no recovery if the *pro rata* share goes below $4), the Named Plaintiffs are secure in a near-complete recovery. As described previously, each absent Class Member is likely entitled to approximately $11,600 each in statutory, actual, and punitive damages, plus attorney's fees and costs. However, due to the financial capability of the companies, it would likely be impossible to recover

more than their collective value of $198.12 billion. Named Plaintiffs will recover $5,000 each, or 43.1% of their damages at law and 118.6% of their maximum theoretical recovery of $4,215.25 each. Compared to Class Members who likely receive zero cash, but who would receive, on average $0.12 each if they all filed claims. Named Plaintiffs are 41,667X better off than absent Class Members even if absent Class Members' money was sent to them instead of its likely *cy pres* destination. While all 47 million absent Class Members will not file claims, even if the absent Class Members have a cash recovery, it is likely to be over 1000x less than that of the Named Plaintiffs.

> D. <u>This miniscule settlement is either a sellout by Class Counsel and the Named Plaintiffs or a nuisance settlement whose only purpose is the generation of legal fees and incentive awards.</u>

Basic economic theory teaches that rational actors settling litigation matters agree to an amount of money approximating their estimation of the amount of their damages discounted by their probability of success at trial. Either this Settlement Agreement is the veiled admission of Class Counsel that the case is frivolous, with 99.999% chance of failure at trial, or, more likely, Class Counsel seeks only a nuisance settlement to justify his outrageous fee and handsomely pay off the Named Plaintiffs.

The Seventh Circuit addressed a situation like this in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (Easterbrook, J.). In *Murray*, the defendant and class representative proposed to settle the case for single-digit percentage of the value of their damages in payments that were in the range of $1 per absent class member, while the lawyers received enormous fees and the representative plaintiff received thousands of times more money than the absent class members. *Id.* Judge Easterbrook said "[s]uch a settlement is untenable. We don't mean by this that all class members must receive [full compensation]; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty." *Id.* at 952. However,

> if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment [of an incentive award to representative plaintiff] Murray

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

> implies, then the failure to afford effectual relief to any other class member makes the deal look like a sellout.

*Id.* This Settlement Agreement is much the same as that rejected in *Murray*. Just as in *Murray*, here the lawyers will receive a huge fee while absent Class Members receive nothing (since the *cy pres* distribution is likely). Also, just as in *Murray*, the Named Plaintiffs will receive thousands of dollars each while absent Class Members get nothing.

It is impossible to imagine any rational actor pursuing millions of dollars in litigation which they and their lawyers all agreed had less than 1% chance of success on the merits. Defendants even today believe the claims in this case were of "nuisance value." (Dkt 411 at 8:6). Mr. Miorelli agrees with them and believes the statistics which show the enormous 99.999% discount they are being settled at also demonstrates they were claims of nuisance value. However, if Class Counsel was correct about their value, then this Settlement Agreement is an astounding sell out. For the purposes of this Objection, Mr. Miorelli believes it is unnecessary to take a position between Defendant's view of this as a nuisance case for the purpose of generating fees or to see it as a transparent Class Counsel sell out. It certainly must be one of the two, and whichever it is, it falls well outside the discretion of this Court to approve.

## V. The *Cy Pres* provision shows Class Counsel and Named Plaintiffs' indifference to the interests of absent Class Members, violate *Dennis*, and prevent final approval of the Settlement Agreement.

The purpose of *cy pres* in this case is transparent: Class Counsel and Defendants never intend money to be paid to absent Class Members, they expect $5.26-5.57 million to be split across three favored groups, only one of which has any discernable connection to the case. The Court cannot modify the Settlement Agreement to cure the *cy pres* problems either, it does

> not have the authority to strike down only the *cy pres* portions of the settlement. It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness and [it] cannot delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.

*Dennis v. Kellogg Co.*, 697 F.3d 858, 869 (9th Cir. 2012) (internal quotations omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

A. The *cy pres* distribution is unfair.

The *cy pres* award is yet another breach of Class Counsel's fiduciary duty to the absent Class Members. It gives the potential *cy pres* beneficiaries an unacceptable advantage in recovery over that of the actual injured absent Class Members. A *cy pres* is only appropriate where it is not economically viable to identify and pay the individuals directly, or where there are leftover funds. *ALI Principles*. Class Counsel owed the absent Class Members a fiduciary duty when negotiating the Settlement Agreement just like the Court owes them one now, yet he agreed to an ambiguous standard and unreasonably-high threshold for the entirety of the absent Class Members' recovery to be discarded in favor of three *cy pres* beneficiaries. That is a breach of his duty.

There is no reason to have a *cy pres* distribution in this case until the absent Class Members are completely compensated. Class Counsel and Defendants' desire to hand millions over to three organizations, presumably which they have a relationship with beyond this case, at the expense of nameless absent Class Members truly tells the story of this entire Settlement Agreement. The three *cy pres* beneficiaries are not Class Counsel's client, but yet they stand to profit handsomely from the absent Class Members' injuries. Further, one of the *cy pres* beneficiaries, EFF, once represented one of the Named Plaintiffs. The distastefulness of this has attracted the attention of commentators beyond the ALI as well. *See, e.g.*, Martin H. Redish, *et al., Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) ("the very possibility of a *cy pres* award threatens to undermine the due process rights of both defendants and absent class plaintiffs."); Editorial, *When Judges Get Generous*, Wash. Post (Dec. 17, 2007) ("Federal judges are permitted to find other uses for excess funds, but giving the money away to favorite charities with little or no relation to the underlying litigation is inappropriate and borders on distasteful . . . those funds should be made available to individual plaintiffs and not to outside organizations . . .").

A settlement where many absent Class Members get a small amount of money only should use *cy pres* where "the cost per class member of distributing the residual funds substantially outweighs the amount each class member would receive." *In re American Tower Corp. Securities Litig.*, 648 F.Supp.2d 223, 224 n.1 (D.Mass. 2009). No matter what the amount of the check is, the administrative

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

cost per-check is the same. Even if the check is only $1, that is likely still more than the cost to have an automated system print and mail the check. Consequently, the *cy pres* threshold of "about $4" is first too high, and second, too vague. The Court should deny final approval if it includes any *cy pres* with a per-class-member break point above the *actual cost* to provide checks to absent class members.

Finally, because Class Counsel, Named Plaintiffs, and Defendants have made no statement on the record regarding their personal and organizational connections to the *cy pres* beneficiaries, they have not met their burden for approval of the Settlement Agreement. "The proponents of a settlement bear the burden of proving its fairness." *True*, 749 F. Supp. 2d at 1080. "A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection of the recipient was made on the merits." *ALI Principles* at Comment b. In this case, absent Class Members like Mr. Miorelli are in the dark regarding the parties' relationships with the *cy pres* beneficiaries. All we know is that they were not consulted, but that says nothing about the potential personal affiliation conflicts of interest which could have contributed to their selection in the first place. The proponents of the Settlement Agreement have thus not met their burden for proving the independence of the *cy pres* beneficiaries and the Settlement Agreement cannot be approved on that basis.

B. The *cy pres* beneficiaries do not meet the *Dennis* test.

Even if the Court is persuaded that there could be a circumstance where *cy pres* is appropriate in this case, Class Counsel and Defendants have not satisfied the Ninth Circuit's requirement that a *cy pres* award be "the next best distribution to giving the funds directly to class members." *Dennis* 697 F.3d at 865 (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) (internal quotations omitted). There must be "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.*

The Settlement Agreement calls for a *cy pres* distribution (if the *pro rata* distribution to absent Class Members would be less than $4 each) in equal parts to the Electronic Frontier Foundation ("EFF"), the Center for Democracy and Technology ("CDT"), and CyLab Usable Privacy and Security Laboratory at Carnegie Mellon University ("CUPS"). While there is evidence in the record

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

of the important role EFF played in this case, there is no basis for *cy pres* awards to the other two organizations.

In fact, the evidence in the record suggests that an award to CDT and CUPS would be inappropriate. This was a case about secret software causing security and privacy problems with consumer cell phones. Yet CDT's mission says nothing on point to that problem and in fact is just a special interest group that lobbies for a particular tech-related political agenda. (Dkt 404-2 at 7). That agenda, which particularly includes "Preserving Net Neutrality," is often aligned with left-leaning politics. *See* "List of Progressive Organizations," Center for Media and Democracy SourceWatch, http://www.sourcewatch.org/index.php/List_of_progressive_organizations (accessed June 3, 2016). Obviously their agenda does not comport with the political views of all or perhaps even a majority of the absent Class Members. Even if a majority agreed, giving CDT *cy pres* money favors absent Class Members who agree with their political lobbying over those who disagree with it, creating immediate unfairness amongst the Class Members.

CUPS also apparently has nothing in its mission directly related to the injury suffered by the absent Class Members. CUPS's work appears to be focused on researching on the "factors that make creating and following appropriate password policies difficult," developing "a visualization technique for displaying [security and privacy] policies," and study of the effectiveness of security warning dialogs in operating systems and web browsers. (Dkt 404-2 at 16-19). Without commenting on the general value to society of a "visualization technique" for displaying privacy policies, clearly whatever that is, it's not related to a covertly-installed rootkit in consumer cell phones or of any particular value to the absent Class Members.

Neither CDT nor CUPS should receive any *cy pres* benefit and since the Court cannot modify the Settlement Agreement to remove them, final approval must be denied.

C.  Mr. Miorelli should be permitted to conduct discovery regarding the selection of the *cy pres* beneficiaries.

Whether or not the Court denies final approval due to the unacceptable *cy pres* beneficiaries, Mr. Miorelli requests leave of the Court to conduct discovery of Class Counsel, Named Plaintiffs, and Defendants as to why CDT and CUPS were selected. Since two of the three *cy pres* beneficiaries

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

have no discernable connection to the subject matter of the case, it raises the question of why they were selected by Class Counsel, Named Plaintiffs, and Defendants to potentially share in $5.26-5.67 million. As there is other evidence of a conflict of interest between Class Counsel and the absent Class Members, it stands to reason that the conflict may have infected the selection of *cy pres* beneficiaries as well. "A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection of the recipient was made on the merits." *ALI Principles* at Comment b.

Objectors such as Mr. Miorelli are entitled to "discovery relevant to the objections." *In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Clearly there was a reason why CDT and CUPS were selected (they are not, after all, the only organizations with missions similar to theirs)[1] but as with so much of this Settlement Agreement, the real reason is missing. Mr. Miorelli and the other absent Class Members are entitled to inquire further.

## VI.    A class action settlement should not be approved when the primary beneficiaries are the class representatives and class counsel.

Under the Settlement Agreement absent Class Members will likely get no recovery while the Named Plaintiffs will receive $5,000 cash and Class Counsel will receive $2.25 million.

While the absent Class Members have their claim discounted tremendously (likely to the point of having no recovery if the *pro rata* share goes below $4), the Named Plaintiffs are secure in a near-complete recovery. As described previously, each absent Class Member is likely entitled to approximately $11,600 each in statutory, actual, and punitive damages, plus attorney's fees and costs. However, due to the financial capability of the companies, it would likely be impossible to recover more than their collective value of $198.12 billion.

---

[1] For example, the Electronic Privacy Information Center "is a public interest research center in Washington, DC . . established in 1994 to focus public attention on emerging privacy and civil liberties issues and to protect privacy, freedom of expression, and democratic values in the information age." About EPIC, https://www.epic.org/epic/about.html (accessed June 3, 2016). Additionally, consider other organizations such as TechFreedom, whose mission is to "promote the progress of technology that improves the human condition and expands individual capacity to choose by educating the public, policymakers, and thought leaders about the kinds of public policies that enable technology to flourish." About, http://www.techfreedom.com/about (accessed June 3, 2016).

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Named Plaintiffs will recover $5,000 each, or 43.1% of their $11,600 each damages at law and 118.6% of their maximum theoretical recovery of $4,215.25 each. Compared to Class Members who would likely receive zero cash, but who would receive, on average $0.12 each if they all filed claims that were not blocked by the *cy pres* payment provision. In that situation, Named Plaintiffs are 41,667X better off than absent Class Members even if absent Class Members' money was sent to them instead of its likely *cy pres* destination. While all 47 million absent Class Members will not file claims, even if the absent Class Members have a $4 cash recovery, it is likely to be over 1000x less than that of the Named Plaintiffs.

These incentive awards are also purely conditional – they are only paid if the settlement with all of its many fatal defects is approved. (Dkt 419 at ¶ 36). That conditionality makes the incentive awards even more odious.

A. A large disparity between the recovery of the Named Plaintiffs and the absent Class Members is not permitted under Ninth Circuit precedent.

Courts around the country, including the Ninth Circuit, while often approving incentive awards to class representatives regularly reverse when those awards represent a large disparity when compared to the absent Class Members. In *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013), the Ninth Circuit reversed an approved settlement due to a 6.67-192.3 times disparity between class representatives' recovery and that of absent class members. The Ninth Circuit reasoned that "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 in incentive awards." *Id.*

The Sixth Circuit has also rejected a large disparity between the named plaintiffs and absent class members' treatment in *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013). In *Vassalle*, the settlement provided for absent class members to receive $17.38 each while the named plaintiffs would be paid $2,000 each plus, in the case of one named plaintiff, have $4,516.57 in debt forgiven. *Id.* at 755-56. In total, this resulted in named plaintiffs receiving approximately 374 times

-17-

as much benefit from the settlement as absent class members. The Sixth Circuit found the settlement was unfair and that the district court abused its discretion by approving it. *Id.* at 756.

The Second Circuit also is skeptical of the fairness of incentive payments. In *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982), the Second Circuit affirmed the Southern District of New York's denial of a proposed class action settlement where absent class members received $1,000 each while the four representative class members received between $8,500 and $17,500 each. The district court held that "where representative plaintiffs obtain more for themselves by settlement than they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as to the fairness of the settlement to the class." *Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-42 (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982).

The Eleventh Circuit directly cited that same district court language in *Plummer* when it rejected a class settlement which allocated approximately 6.25% of a lump sum settlement to the eight representative class members, while the absent class members each received, on average, approximately 0.42% of the settlement. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1146, 1148 (11th Cir. 1983). The court found the 14.75 times disparity between representative and absent class member recovery was facially unfair and reversed the district court's approval of the settlement. *Id.* at 1151.

In *Radcliffe* the disparity between the class representatives and the absent members of the class was about 6 to 192 times, in *Vassalle* it was 374 times, in *Plummer* it was 8.5 to 17.5 times, and in *Holmes* the disparity was 14.75 times. In each of those cases, the appellate court rejected the settlement as unfair.

This District has also expressed concern about other proposed settlement agreements recently before it which suggested large-multiple incentive awards. In *Lifelock*, this Court noted with caution that "Plaintiffs, thus far, have provided no explanation for why the named Plaintiffs deserve an award 100 times greater than the settlement value of the other Class Members." *Lifelock*, 2016 WL 234364 at *7.

In this case the disparity is either infinite if the absent Class Members make no recovery at all, or on the order of 1,000X depending on how many claims are made. That disparity is vastly above

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

the levels which the Ninth, Second, and Eleventh Circuits have all rejected. This Court would invite error to approve this much-worse disparity. Class certification is not appropriate when the class representative and class counsel bring a lawsuit to benefit not the class, but themselves. *See In re Aqua Dots Prod. Liab. Litig.,* 654 F.3d 748, 752 (7th Cir. 2011). This Settlement Agreement, with its enormous attorneys' fee and thousands of times difference in recovery between the class representative and absent Class Members appears to be just such a self-serving case and should be rejected.

**VII.    Class Counsel should not receive a fee award or costs award when he has not provided sufficient evidence in the public record to prove such amounts would comply with Class Counsel's own guidelines to limit costs and expenses which was ordered by this Court.**

As part of appointing Class Counsel, the Court ordered that he file proposed guidelines to limit costs and expenses, including attorney's fees. (Dkt 100 at 2:9-20). Class Counsel proposed a set of guidelines ("the Guidelines") and the Court adopted them and ordered that "[c]osts or expenses that do not fall within the limitations outlined in Docket No. 108 will be presumptively unreasonable and not compensable in any fee award." (Dkt 110). "That being said, the Court advises co-lead counsel that costs or expenses that do fall within the limitations in Docket No. 108 shall not be deemed presumptively reasonable." *Id.* The Order applies to both expenses and attorneys' billings. *Id.*

The Guidelines limit staffing at depositions to 1-2 attorneys and 1 paraprofessional; at court hearings only counsel making an appearance and also involved in the briefing or argument would have compensable time; non-dispositive motion hearings would be limited to two attorneys; conference calls and meetings would be limited; travel expenses would be limited to coach-class airfare, $250 per night hotel rooms, and $120 per diem meal expenses; expenditures for copies exceeding $5,000 required co-lead counsel's explicit authorization; and document review was to be done by a contracted vendor. (Dkt 108 at 1:17-5:4). As with all other parts of the Settlement Agreement and the award of class counsel fees, costs, and incentive awards, "[t]he proponents of a settlement bear the burden of proving its fairness." *True,* 749 F. Supp. 2d at 1080.

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

A. Class Counsel's motion and declarations do not satisfy his burden under the Guidelines.

Yet despite this extensive limitation on how Class Counsel would bill the class for services, there is no mention of the guidelines in the Motion for Fees, Costs, and Service Awards (Dkt 424 and exhibits). The Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives makes no mention of the Guidelines, makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 425 and exhibits). The Declaration of Daniel L. Warshaw in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives also makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 426 and exhibits). The Declaration of J. Paul Gignac in Support of Plaintiffs' Request for Attorneys' Fees, Costs, Expenses, and Service Awards also makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 427 and exhibits). The Declaration of Paul R. Kiesel in Support of Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards also provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 428 and exhibits). However, the Kiesel Declaration at least does itemize with sufficient particularity the non-Shared Cost Litigation Fund amounts, so Mr. Miorelli does not object, in the event the Court grants final approval to the Settlement Agreement, to $665.20 in costs from the Kiesel Declaration. (Dkt 428-3 at 2).

The Affidavit of Charles E. Schaffer in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses is in a scanned form, not a conversion of the word processing file to PDF, which makes text searches impossible. Consequently, that document violates Local Rule 5-1(e)(2) and

-20-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

should be struck as sanction for non-compliance. If the Court does consider the Schaffer Affidavit, it should note that it also makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 429 and exhibits). Finally the Declaration of Rosemary M. Rivas in Support of Final Approval and Plaintiffs' Request for Attorneys' Fees, Costs, Expenses, and Service Awards also makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 430 and exhibits).

        B.  Class Counsel's ignorance of his own Guidelines sinks his motion for fees and likely requires new notice to the absent Class Members.

Since only $665.20 of the costs requested are detailed in accordance with the Guidelines, those should be the only costs awarded if the Settlement Agreement is granted final approval. The remainder should be denied for lack of evidence to meet Class Counsel's burden in light of the Guidelines.

With regard to attorneys' fees, Class Counsel has also not met his burden. It is impossible on the basis of the filed documents to determine whether the billed time is in accordance with the Guidelines. There is also no mention of whether co-lead Class Counsel policed these bills as required by the Guidelines. Having not proven he did, the Court should assume he did not, in violation of the Guidelines. Because these bills would be critical to a lodestar cross-check, these deficiencies make granting final approval of the Settlement Agreement impossible if any attorneys' fee is to be awarded. Class Counsel's ignorance of his own Guidelines leaves the Court with only two options: either deny final approval or order additional briefing, new notice to the Class regarding the additional briefing, and a new period for opt out and objection.

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**VIII. Class Counsel should not get more than the 25% benchmark attorneys' fee calculated on the basis of the benefit to the class, not the gross recovery, much of which is actually a benefit to the Defendant instead of the class.**

### A. The basis for a contingent fee should exclude costs of class notice, Class Counsel's costs, and any incentive payments.

Mr. Miorelli believes that the baseline recovery to calculate any contingent fee should exclude the costs of class notice, any *cy pres* awards, and, to the extent they are awarded, any incentive payments.

While the Ninth Circuit does not require a net-based analysis, the Seventh Circuit does. *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) ("Those [administrative] costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.") Since the Ninth Circuit leaves the question of gross or net-based to the district court, the reasoning of the Seventh Circuit should be persuasive to the Court.

Additionally, there is no benefit to the absent Class Members in the class notice. In reality, notice costs are a benefit to *the defendant*, not the class, because in the event of insufficient notice, it is the defendant who bears the risk of the class action release being unenforceable as a due process violation. *Hecht v. United Collection Bureau*, 691 F.3d 218, 224 (2d Cir. 2012). In fact, the defendant has an incentive to spend additional amounts on notice as less expensive means of notice, such as constructive notice by a single publication, may be sufficient to satisfy due process only "as to persons whose whereabouts or interests cannot be determined through due diligence." *Id.* (quoting *In re Agent Orange*, 818 F.2d at 168). *See also, Redman*, 768 F.3d at 630, *Bluetooth*, 654 F.3d at 944, *and Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1228-9 (11th Cir. 1998).

In this case the Court has already shown concern that the various phone carriers' records are not being used to determine the membership of the class and send individualized notice. (Dkt 408 at 1:23-2:9). Class Counsel and Defendants respond that it would be too hard to dig through the data to determine class membership. (Dkt 411 at 2:10-3:13). Regardless of the veracity of that claim, the risk lies with Defendants if future absent Class Members come forward with claims of insufficient notice, and as such, the "value" of the cost of the notice should be assigned to Defendants' account, not the

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

class'. At most, the class should only count the value of the administrative costs of distributing payment from the Settlement Administrator's bills as a value to the class forming a basis for a percentage of the fund attorneys' fee. The Settlement Administrator has valued the cost of notice at $532,000, so the denominator of an attorneys' fee request should be reduced from $9 million to $8,468,000 for this issue alone.

B.  Class Counsel's lodestar should be calculated using the *Laffey Matrix*.

One of the most common ways to determine the reasonableness of an attorney's declared hourly rate is by comparison of it with that year's *Laffey* Matrix and then adjusted to local geographic cost of living. *See Chanel, Inc. v. Doan*, 2007 WL 781976, *6-7 (N.D. Cal. 2007) (citing *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984)). Following the *Chanel* method, the Court should use the Judicial Salary Plan's locality percentages to adjust the *Laffey Matrix* to the location of each of the attorneys claiming fees in this case, then adjust their hourly rate accordingly to recalculate the lodestar. Doing so would result in a significantly-reduced lodestar. Additionally, Class Counsel is not entitled to hide his bills from absent Class Members. The Court should order that Class Counsel's detailed billing records be unsealed and grant Mr. Miorelli leave to supplement this Objection on the basis of arguments regarding the excessiveness of Class Counsel's hours worked and hourly rate billed.

C.  The value of a *cy pres* award should not be included in the calculation of an attorneys' fee.

Finally, to the extent a *cy pres* award is made, that should also not be counted as a benefit to the class for the purpose of calculating an attorneys' fee. Class Counsel should only be able to claim against a portion of the money the class actually receives. "[N]umerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1988) (*quoting* Conte, 1 Attorney Fee Awards § 2.05, at 37). The "key consideration in determining the appropriate fees is reasonableness in light of the benefit actually achieved." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013). *See generally In re Cendant Corp. Litig.*, 264 F.3d 201, 254-60 (3d Cir. 2001) (the court should ensure that the incentives of class

-23-

counsel and class members are aligned). *See also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."). Since the *cy pres* will only recover if Class Counsel agrees that it would be uneconomic to make a distribution to the absent Class Members, allowing a percentage-of-the-recovery fee only on the basis of money distributed to the Class Members keeps Class Counsel's interests, at least at this point in the litigation, aligned with those of the absent Class Members.

The logical outcome of this is that, if the *cy pres* distribution is made, then the only basis for a percentage-of-the-fund recovery would be the money spent on distribution expenses from the Settlement Administrator. Since in that event the absent Class Members would have no actual recovery, the Named Plaintiffs should also not have any recovery, so there would be no amount of incentive awards to add to the class recovery either. In that event, class counsel's recovery should only be as a percentage of that estimated $350,000 to $784,000 amount, or a fee of $87,500 to $196,000, plus their approved expenses.

## IX.    CONCLUSION

For the reasons set forth herein, the Settlement Agreement is legally defective and also inadequate, unreasonable, and unfair to the absent Class Members. Therefore, Mr. Miorelli prays this honorable court:

(a) Sustain this Objection to Settlement Agreement and deny final approval; or,

(b) If the Court chooses to approve the Settlement Agreement, to:

    i.    Award no Attorneys' Fees due to Class Counsel's failure to comply with the Guidelines;

    ii.    Refuse to award any incentive payments; and

    iii.    Reserve jurisdiction to grant incentive awards to Mr. Miorelli and, to the extent Mr. Miorelli retains counsel to represent him subsequently in this matter, reasonable attorney's fees to his counsel.

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

DATED: June 4, 2016

Sam A. Miorelli, E.I., Esq. *pro se*

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Objection and the Miorelli Declaration were transmitted via FedEx Overnight Express on June 4, 2016 to the following:

Clerk of the Court
Office of the Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

The undersigned further certifies that the foregoing Objection and the Miorelli Declaration were transmitted via U.S. Certified Mail on June 4, 2016 to the following:

Daniel L. Warshaw
PEARSON SIMON & WASRHAW, LLLP
15165 Ventura Boulevard
Suite 400
Sherman Oaks, CA 91403

Tyler Newby
Fenwick & West LLP
555 California Street
12th Floor
San Francisco, CA 94104

Sam A. Miorelli, E.I., Esq. *pro se*

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Sam A. Miorelli, E.I., Esq. *(Pro Se)*
764 Ellwood Avenue
Orlando, FL 32804
Telephone: (321) 698-2776
E-Mail: sam.miorelli@gmail.com

*Pro Se Objector*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re | ) Case No.: 3:12-md-2330-EMC |
|---|---|
| CARRIER IQ, INC. CONSUMER PRIVACY LITIGATION | ) **DECLARATION OF** <br> ) **SAM A. MIORELLI, E.I., ESQ.** |
| This Document Relates to: | ) Date: July 28, 2016 |
| ALL CASES | ) Time: 1:30 p.m. <br> ) Judge: Honorable Edwin M. Chen <br> ) Dept: Courtroom 5, 17th Floor |

I, Sam Andrew Miorelli, declare as follows:

1.      I have researched the market capitalization of the Defendants in this case, the approximate market capitalization of the defendants is listed in the table below. The source for this information is Google Finance data as of June 2, 2016.

| Company | Stock Symbol | Market Capitalization |
|---|---|---|
| HTC Corporation | TPE: 2498 | 75.05 billion TWD (Appx US$2.3 billion) |
| LG Electronics, Inc. | KRX:066570 | 9.51 trillion KRW (Appx US$8.0 billion) |
| Motorola Mobility LLC (Purchased by Lenovo Group Ltd in 2004) | LNVGY:US | US$6.493 billion |
| Samsung Electronics Co., Ltd. | SMSN:LI | US$162.985 billion |

2.      Huawei Technologies Co. Ltd is privately owned and the parent company of Huawei Device USA, Inc. In its 2015 Annual Report, Huawei Technologies Co. Ltd reported its owner's equity as US$18.339 billion.

- 1 -

DECLARATION OF SAM A. MIORELLI, E.I., ESQ.

1    3.    Pantech Wireless, Inc. is the privately owned subsidiary of Pantech, a privately-owned

2  Korean company which was recently purchased but was reportedly near-bankruptcy at the time. I

3  assume it has zero value as a company.

4    4.    Adding the value of the amounts shown above, I estimate the total value of the

5  Defendants in this case to be approximately US$198.12 billion.

6    5.    I purchased a Samsung Galaxy S6 phone, model number SMG-920A, on May 13,

7  2015 at a total price of $425.99. That telephone was replaced under warranty due to battery drain,

8  extreme slowness, and other symptoms similar to those reported relating to CarrierIQ, under warranty,

9  on December 20, 2015 and again on April 30, 2016.

10    6.    I am over the age of 18 years old.

11    I declare under penalty of perjury under the laws of the United States, the State of California,

12  and the State of Florida that the foregoing is true and correct. Executed on June 4, 2016 at Orlando,

13  Orange County, Florida.

14

15                                          Sam A. Miorelli, E.I., Esq.

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SAM A. MIORELLI, E.I., ESQ.