Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Bruce L. Simon (SBN 96241)
PEARSON SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008
bsimon@pswlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:  650.938.5200

TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ANNASARA G. PURCELL
(CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:  415.875.2300
Facsimile:  415.281.1350

*Attorneys for Defendant
Carrier iQ, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| *In re Carrier IQ, Inc. Consumer Privacy Litigation*<br><br>[This Document Relates to All Cases] | Case No. C-12-md-2330-EMC<br><br>**DECLARATION OF ALAN VASQUEZ REGARDING IMPLEMENTATION OF NOTICE DISSEMINATION PLAN** |

1.      I am a Vice President of Legal Notification Services at Gilardi & Co. LLC ("Gilardi"), a KCC Class Action Services ("KCC") company.  In my role, I oversee Gilardi's in-house advertising division specializing in the design and implementation of legal notice plans to reach unknown class members in class action litigation.

2.      Gilardi was established in 1984 and is one of the largest full service class action notice and claims administrators in the United States.  The in-house advertising division has specialized in designing, developing and implementing legal notification plans for more than 25 years. As such, we are familiar with, and guided by, Constitutional due process provisions, rules of states and local jurisdictions, and the relevant case law relating to legal notification.  Media plans designed and implemented by our group have included both domestic and international newspapers and magazines, Internet-based banners, notices and websites, wire service, radio, television, point of purchase displays and direct mail. As Vice President of Legal Notification Services, I oversee the advertising group's activities as they relate to these notice services.

3.      I have been involved in the development and implementation of media plans for class action notification for more than ten years. Prior to my engagement with Gilardi, I spent five years with another nationally recognized claims administrator serving in a similar capacity.

4.      For several years, courts have accepted my expert testimony regarding our firm's quantitative and qualitative evaluation of judicially approved notice plans. I have also testified in person and was acknowledged as an expert in Larson v. Sprint Nextel Corp., No. 07-cv-5325 (D. N.J.). Media campaigns for which I have been directly responsible include, but are not limited to, Pappas v. Naked Juice, No 11-cv-08276-JAK (C.D. Cal.), Mattel, Inc., Toy Lead Paint Prods. Liab. Litig., No. 07-ML-01897 (S.D. Cal.), Pecover, et al. v. Electronic Arts Inc., No. 08-cv-02820 (N.D. Cal.), New Motor Vehicles Canadian Export Antitrust Litig., No. MDL 03-1532 (D. Me.), and SRAM Antitrust Litig., No. 07-MD-01819 (N.D. Cal.). A more comprehensive list of notable matters for which I have been personally responsible for the notice planning and implementation services is attached as Exhibit 1.  I have also spoken as faculty on various CLE panels related to class action notice and related trends.

DECLARATION OF ALAN VASQUEZ
REGARDING IMPLEMENTATION OF
NOTICE DISSEMINATION PLAN

1

Case No. C-12-md-2330-EMC

5.      I oversaw all of Gilardi's activity as it related to notice services in this matter, and I submit this declaration in order to provide the Court and parties in the above-captioned litigation the results of the notice campaign and support as to why the plan satisfied applicable due process requirements.

6.      In my opinion, the Notice Plan provided the best practicable notice to the Class Members.

**NOTICE PLAN**

7.      The parties represented to Gilardi that direct notice to all Class Members was not a viable option; thus, the Notice Plan was comprised of publication (indirect) notice through the following channels:

     i.  2x print publication of a 1/6 page (approximately 4.18" wide by 8" deep) insertion in the National edition of *USA Today* Newspaper;

     ii.  1x print publication of a 1/2 page (approximately 3.375" wide by 10" deep) insertion in *People Magazine*;

     iii.  Text Link search advertising on Google.com;

     iv.  Banner advertising targeting U.S. adult cell phone owners through Xaxis[1] Run of Network ("RON")[2] advertising;

     v.  Banner advertising through the Facebook Exchange platform;

     vi.  Banner advertising through managed placements to Youtube.com;

     vii.  A promoted Tweet campaign on Twitter.com targeting likely cell phone users;

     viii.  Social media outreach through Twitter and Facebook; and

---

[1] Xaxis is a global digital media platform that programmatically connects advertisers to audiences across all addressable channels. Through the expert use of proprietary data and advertising technology along with unparalleled media relationships, Xaxis delivers results for over 2,800 clients in 45 markets across North America, Europe, Asia Pacific, Latin America and the Middle East. Advertisers working with Xaxis achieve exceptionally high return on advertising spend through the company's proprietary media products
[2] Run of Network advertising is a form of internet marketing where an online advertising campaign is applied to a wide collection of websites.  In this case, a demographic overlay of cell phone users was applied to the RON buy.

DECLARATION OF ALAN VASQUEZ
REGARDING IMPLEMENTATION OF
NOTICE DISSEMINATION PLAN

2

Case No. C-12-md-2330-EMC

ix.   A 1x National, party-neutral press release.

8.      The Notice Plan strategy and approach is described in further detail in the Declaration of Alan Vasquez Re: Dissemination of Notice to Class Members, filed on January 26, 2016 ("January 2016 Vasquez Declaration").  The Court approved the Notice Plan on or about March 1, 2016.  The Notice Plan, as described in the January 2016 Vasquez Declaration, was implemented in full pursuant to its parameters and within the time frames approved by the Court. According to Paragraph 18(a) of the Court's Order Preliminarily approving the Settlement filed on March 1, 2016, Notice was to commence no later than 35 days after the Order's filing or on or before April 15, 2016.  Notice began on April 6, 2016, within the defined timeframe for commencement.  According to Paragraph 18(b), the deadline to file claims and requests for exclusion was 60 days from the Notice date or on June 5, 2016.  All media was ended on or before June 5, 2016.

9.      Gilardi believes the plan summarized in Paragraph 7 satisfied due process standards given the parameters of the settlement and information learned from our team's research.  The implemented notice plan is consistent with other class action notice plans that have been approved by various federal courts for similarly situated matters.  A spreadsheet outlining the media vehicles is attached as Exhibit 2.

**NOTICE CONTENT**

10.      Prior to publication of the Full-length Notice and Summary Notice, Gilardi reviewed both formats to ensure compliance with the following guidelines outlined on the Federal Judicial Center's Class Action Notice website:

i.   The nature of the action

ii.   The definition of the Settlement Class

iii.   The class claims, issues, and defenses

iv.   The method by which one may exclude oneself

v.   The timing and manner for requesting exclusion

vi.   The timing and manner for objection

vii.    The binding effect of the class judgment on the class members

viii.   The manner by which to contact class counsel

ix.    The manner by which to obtain copies of relevant documents

11.    Copies of the final long and short form notices are attached as Exhibit 3.

**NOTICE PLAN**

12.    **Print Publication**. The notice plan included insertions of the Summary Notice in the print editions of *USA Today* and *People Magazine*.

i.    *USA Today* is a national American daily middle-market newspaper published by the Gannett Company.  The newspaper has the highest daily print circulation of any newspaper in the United States at over 1.2 million.  USA Today is distributed in all 50 states, the District of Columbia, Guam, Puerto Rico, Canada, and the United Kingdom.

ii.    *People Magazine* is a weekly American magazine of celebrity and human-interest stories, published by Time Inc.  With a readership of 46.6 million adults, People has the largest audience of any American magazine.

13.    The *USA Today* insertions of the summary notice were published on April 14, 2016 and April 21, 2016.  A copy of the tearsheet is attached as Exhibit 4.

14.    The *People Magazine* insertion of the summary notice was published on April 8, 2016.  A copy of the tearsheet is attached as Exhibit 5.

13.    **Search Advertising.**  As mentioned in Paragraph 13 of the January 26, 2016 Vasquez Declaration, the majority of class action websites are created just prior to the commencement of notice, making it difficult to garner high organic rankings on the search engines at the onset of the Notice period.  In order to ensure that a link to the case website would appear high in search ranking at this time, Gilardi implemented Google Adwords search-based text link advertisements to direct class members to the case website.  As of June 5, 2016, the end

date of the Notice program, the search based text-link ads generated 2,225,707 impressions with 3,726 clicks to the case website, for a click through rate ("CTR") of .17%.

14. **Google Display Network Advertising.**  In addition to using Google Adwords for text link search-based advertisements, Gilardi implemented a portion of the budget to be dedicated to text-link ad placements on **www.youtube.com** through the Google Display Network. As of June 5, 2016, the Display Network based ads generated 5,448,789 impressions with 4,742 clicks to the case website for a click through rate ("CTR") of .09%.  The CTR is above typical benchmarks for these types of ads.

15. **Paid Banner Advertising:** The Notice campaign provided further notice through banner advertising that utilized RON advertising with a demographic data overlay to ensure banners were served only to individuals likely to own cell phones.  As of June 5, 2016, the banner ads generated 271,678,279 impressions, with 219,110 clicks to the case website for a click through rate ("CTR") of .08%.  Screenshots of sample banners as they would have appeared to potential class members are attached as Exhibit 6.

16. The goal of the banner campaign was to direct traffic to the case website where potential class members could view their due process rights and file a claim.  During the campaign, Gilardi shifted some budget allocated for standard RON banners, to RON mobile banners.  The initial goal was to generate a .10% overall CTR for banners run through Xaxis. Mobile impressions were being clicked at a rate .16%, while at the time standard RON banners were generating only .02% click through.  By shifting budget to mobile impressions, we were able to increase the overall CTR to .08% for all banner targeting in the campaign, which is consistent with industry average for these types of banners[3].

17. **Twitter Promoted Tweets**.  As described in paragraph 18 of the January 26, 2016 Vasquez Declaration, Gilardi staff researched Twitter handles and hashtags related to the

---

[3] *http://www.richmediagallery.com/tools/benchmarks,* the average Standard Media CTR in the United States is .08%

smartphone industry, data privacy, and other appropriate categories.  This research provided the basis for the promoted Tweet audience targeting, including limiting the tweets to within the United States.  User handles from staff research were imported into the campaign to reach other users with interests similar to followers of any of those accounts.  Behavior targeting audiences were also added for the promoted tweet targeting.  These audiences from Twitter partners are based on actual online and offline behaviors and characteristics. Users were eligible for targeting if they fit with any of the behaviors included in the categories outlined in Exhibit 7.

18.     On or before April 6, 2016 the promoted tweet campaign was launched using the targeting tactics described above.  Promoted Tweets were delivered in the Twitter feeds of influencers in industries related to the case complaint, and keywords were used to serve promoted Tweets impressions to accounts with Tweets containing those selected keywords.  Samples of promoted Tweets used during the campaign are attached in Exhibit 8.  As of June 5, 2016, the campaign generated approximately 1.83 million impressions, with 11,374 clicks to the case website for a CTR of .62%.  In addition, over 10,000 media engagements were generated as well as 327 retweets from member accounts.

19.     **Social Media Outreach.**  As described in paragraph 19 of the January 26, 2016 Vasquez Declaration, Outreach entailed Gilardi staff scheduling organic Tweets using hashtags related to the case in order to provide potential class members with a link to the website.  As of June 5, 2016, these tactics generated approximately 36,871 additional impressions from 143 organic tweets.  The impressions generated 531 engagements, including 54 views from media entities.  Attached as Exhibit 9 is a Twitter analytics report that provides samples and more detail regarding the organic tweets for the campaign.

20.     **Press Release**. Gilardi issued the party-neutral press release with information about the litigation and the proposed settlements on April 5, 2016. A copy of the press release is attached hereto as Exhibit 10 along with the corresponding view ability report.  For reference, examples of media articles including information about the settlement are attached as Exhibit 11.

21.     **Website**. Gilardi established the case-dedicated website on April 6, 2016.  All

DECLARATION OF ALAN VASQUEZ
REGARDING IMPLEMENTATION OF
NOTICE DISSEMINATION PLAN

6

Case No. C-12-md-2330-EMC

notice advertisements directed potential class members to the case-dedicated website where they could file claims or obtain more information about the case. Analytics from Gilardi's web server where the website was hosted indicate approximately 250,000 unique visitors to the website, with approximately 60,000 claims filed to date.

**SUMMARY**

22. The objective of the proposed notice plan described above was to provide the best notice practicable, consistent with the requirements set forth in Rule 23 and other applicable State statutes, to reach a large percentage of class while meeting or exceeding the requirements of due process and all applicable state laws and court rules. The foundation of the implemented plan was centered on a large national online advertising campaign, print publication in newspapers and magazines likely read by class members, and social media outreach to aid in claims stimulation.

23. Many courts have held that notice plans estimated to reach a minimum of 70% of the settlement class are adequate and sufficient and thus comply with Fed. R. Civ. P. 23. The Notice Plan as implemented exceeded this standard of reach. It is Gilardi's opinion that the plan as implemented, complies with requirements set forth in Rule 23.

24. This declaration is being filed to confirm that notice has been provided as set forth in my January 2016 Vasquez Declaration and as ordered by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 22th day of June, 2016 at San Rafael, California.

_____

ALAN VASQUEZ