Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Bruce L. Simon (SBN 96241)
PEARSON SIMON & WARSHAW, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

*Plaintiffs' Interim Co-Lead Counsel*

RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
ANNASARA G. PURCELL
(CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

*Attorneys for Defendant
Carrier iQ, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br>CARRIER IQ, INC. CONSUMER PRIVACY LITIGATION | Civil Action No. 3:12-md-02330-EMC<br><br>SUPPLEMENTAL DECLARATION OF KENNETH JUE ON BEHALF OF SETTLEMENT ADMINISTRATOR<br><br>Date: July 28, 2016<br>Time: 1:30 p.m.<br>Place: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

I, KENNETH JUE, declare:

1.     I am employed as a senior project manager by Gilardi & Co., a KCC Company ("Gilardi"), located at 3301 Kerner Blvd., San Rafael, California.  Gilardi was appointed by the Court to serve as the Settlement Administrator in this case.  As the senior project manager, I oversaw the administrative services provided.  I have personal knowledge of the facts set forth

herein and, if called as a witness, could and would testify competently thereto.  I am providing this declaration to update my declaration (Dkt. No. 458) with additional information regarding claim statistics, opt-outs, and objections.

2.       As described in my previous declaration, on April 5, 2016, Gilardi commenced the Notice Plan.  The Notice Plan consisted of a press release submitted through PR Newswire on April 5, 2016; online advertisements through June 4, 2016; print publication; and social media outreach.  Gilardi ran advertisements online via search advertising, the Google Display Network, banner advertising, and a Twitter promoted tweet campaign.  Further details of the Notice Plan are in my previous declaration.  As my colleague, Alan Vasquez, Gilardi's Vice President of Legal Notification Services, has advised the Court, it is our opinion that the Notice Plan as implemented exceeded reaching 70% of the settlement class and that the plan as implemented complies with the requirements set forth in Fed. R. Civ. P. 23.  (*See* Declaration of Alan Vasquez Regarding Implementation of Notice Dissemination Plan (Dkt. No. 457), ¶ 23).)

3.       On or before April 5, 2016, Gilardi established a toll free telephone number, 877-368-7154, that Class Members could call and listen to answers to Frequently Asked Questions and request a Claim Form to be mailed to them.  As of July 7, 2016 there have been a total of 674 calls and 224 claim requests.

4.       Class Members could submit Claim Forms by mail, fax, and email.  Class Members could also file electronic claims via the settlement website.  The submission deadline for submitting a claim was June 4, 2016.  As of July 7, 2016, Gilardi has received 57,266 timely online, faxed, emailed, and mailed claims and 4,212 untimely claims.

5.       As I indicated in my last declaration (Dkt. No. 458, ¶ 7), we were then in the process of examining and validating claims.  Of the timely claims received, we have, after examination, invalidated 187 claims for providing patently invalid telephone numbers claimed to correspond to Covered Devices, *i.e.*, numbers with invalid area codes, or series of consecutive numbers (*i.e.*, 123-456-7890), or series of the same numbers (*i.e.*, 555-555-5555).  Claimants were required in the claim form approved by the Court to include the telephone numbers of their

covered devices, and they were required to certify that they had done so.  (*See* Dkt. No. 458-2 (Ex. B) (claim form requiring "Mobile Phone Number of Device Claimed" and requiring certification as follows: "The information I have included on this Claim Form is complete and correct to the best of my knowledge."); *see also* Dkt. No. 421, ¶ 9 (order preliminarily approving settlement and claim form attached thereto as Ex. C) and ¶ 14 ("Class Members who wish to apply for a Settlement payment shall complete and return their Claim Form no later than sixty (60) days after the Class Notice Date and in accordance with the instructions contained therein. Any Class Member who does not timely and validly submit a Claim Form within the time provided shall be barred from receiving a Settlement payment, unless otherwise ordered by the Court, but shall nevertheless be bound by any Judgment entered by the Court.").)  Also, of the timely claims received, 39,458 are valid after removing ineligible and duplicate (claimants submitting multiple claims for the same device) claims.  There are 14 claims that are incomplete (*i.e.*, did not provide a mobile phone number or mobile device) and are being sent a notification requesting information to complete their claim.  These 14 claims are being considered valid for the purpose of this declaration.  Following the foregoing adjustments for invalid or ineligible claims, Gilardi estimates that the approximate dollar value per timely valid claim is $149.28.

6.     As of July 7, 2016, Gilardi has also received and processed 3,119 otherwise eligible late claim submissions.  Of the late claims received, 18 claims provided an invalid phone number as described in ¶ 5 above and are not eligible.  As with the timely claim submissions, there are an additional 3 late claims that are incomplete and are being sent a notification requesting information to complete their claim.  For the purpose of this declaration, they are considered valid late claims.  Including these valid, but untimely claims, the approximate dollar value per claim would be $138.35.

7.     As explained in my previous declaration (Dkt. No. 458), in our experience, the claims rate in this settlement is consistent with many other settlement administrations with similar case characteristics.  This is true even after removing the ineligible and duplicate claims. Assuming a class size of 30 million members—which, as explained in my previous declaration,

we estimated based on statistics regarding mobile phone ownership—the claims rate, when including only timely, valid claims, is approximately 0.13% of the estimated class size.  When including valid, but untimely claims, the claims rate increases to approximately 0.14% of the estimated class size.

8.      The estimated dollar values per claim in paragraphs 5 and 6 above is an approximation that assumes the $9 million settlement fund will be reduced by $2,250,000 in attorneys' fees, $108,933.72 in attorneys' costs, $85,000 for awards to class representatives, and $655,500 in estimated administrative fees. The $665,500 in estimated administrative fees is based on the costs incurred to date (including the cost of the Notice Plan), plus anticipated costs and fees through distribution of timely and untimely valid claims received by June 7, 2016 via standard business checks.  The estimated administrative cost amount is nearly ¼ less than Gilardi's proposal to class counsel for administering the settlement using indirect notice.

9.      The postmark deadline for submitting a Request for Exclusion was June 4, 2016. To date, Gilardi has received four Requests for Exclusion.  Attached as Exhibit A is a list of individuals requesting exclusion from the Settlement and copies of the Requests for Exclusion.

10.     The postmark deadline for submitting an Objection to the Settlement was June 4, 2016.  To date, Gilardi has received four Objections forwarded by counsel.  Attached as Exhibit B are copies of the Objections as filed with the Court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 11th day of July 2016, at San Rafael, California.

_Kenneth Jue_
Kenneth Jue

# EXHIBIT A

*In re Carrier IQ, Inc. Consumer Privacy Litigation*
**Requests for Exclusion**

| | FirstName | LastName |
|---|---|---|
| 1 | ARAINA | MCARTHUR |
| 2 | JAMES E | FELTON |
| 3 | GLENNA | GHOLSON O'DELL |
| 4 | JOSEPH J | ABERK II |

**Araina McArthur**
2826 S Bartell Drive F311
Houston, TX 77054
832-755-4678
E-mail: rainladvincharge@yahoo.com



April 29, 2016

In Reference to: Carrier IQ Class Settlement

Gilardi & Co. LLC
P.O. Box 6002
Larkspur CA 94977-6002

To Whom It May Concern,

I'm writing this letter because I want to be excluded from the Carrier IQ , Inc. Consumer Privacy Litigation settlement.  My Claim ID: CIQ-40019534-8.  Thank you.

Sincerely,

Araina McArthur



USA FOREVER

NORTH HOUSTON TX 773

04 MAY 2016 PM2 L

Arnina McArthur
2826 S Bartell Drive #311
Houston TX 77054

Carrier IQ Settlement Exclusions
c/o Gilardi & Co. LLC
P.O. Box 6002
Larkspur CA 94977-6002

RECEIVED EC

MAY 09 2016

CLAIMS CENTER

9497600202

CIQ

# James E. Felton

1812 Ozier Street
Van Buren, AR 72956

Phone: 501-349-4832
Fax: 501-638-1618
Email: jamesefelton@hotmail.com

April 29, 2016

Carrier IQ Settlement Exclusions
c/o Gilardi & Co. LLC
P.O. Box 6002
Larkspur CA 94977-6002

Dear Sirs,

Please exclude me from the In re Carrier IQ, Inc. Consumer Privacy Litigation settlement.

Sincerely,

James E. F

James E. Felton



1812 Dier St.
Van Buren, AR 72956

RECEIVED EC

MAY 13 2016

CLAIMS CENTER

9457785002

Carrier IQ Settlement Exclusions
C/o Gilardi & Co. LLC
P.O. Box 6002
Larkspur, CA 94977-6002

NORTHWEST AR PDOF
AR 727 ZL
10 MAY 2016 PM


FOREVER USA

Carrier IQ Settlement Exclusions
c/o Gilardi & Co. LLC.
P.O. Box 6002
Larkspur, CA 94977-6002

Settlement Administrator:

I wish to exclude myself from the In re Carrier
IQ Inc. Consumer Privacy Litigation Settlement.

Name: Glenna Gholson O'Dell

Address: 22148 Sherman Way #213
Canoga Park, CA 91303-1145

Telephone: (818) 746-0321
email: glennago@hotmail.com

June 4, 2016                    Glennay Gholson O'Dell
date                                   signature

Carrier IQ Settlement Exclusions
c/o Gilardi & Co. LLC
P.O. Box 6002
Larkspur, CA 94977-6002

RECEIVED EC

JUN 07 2016

CLAIMS CENTER



1000

94977

JUN 04 16
AMOUNT
$0.94
R2305H13008S-15

I wish to be excluded from the
In re CarrierIQ. Inc. Consumer Privacy Litigation
settlement.

Joseph J Aberk II
P.O. Box 9332
Missoula MT 59807

406-241-8664
nomessimerchs@gmail.com
jj@fuelmtmedia.com

June 3, 2016

* This letter has been filmed after writing &
for timely posting proof purposes. *

** I wish to pursue legal action against Verizon
for use of X-



Joseph Abele
PO Box 9332
Missoula MT 59807-9332

Carrier IQ Settlement Exclusion
c/o Gilardi & Co. LLC
PO Box 6002
Larkspur, CA 94977-6002

FOREVER USA

MISSOULA MT 598
03 JUN 16 PM 02 L

RECEIVED EC
JUN 08 2016
CLAIMS CENTER

9497736002

SUSTAINABLE FORESTRY INITIATIVE
Certified Fiber Sourcing
www.sfiprogram.org

THIS ENVELOPE IS RECYCLABLE AND MADE WITH 30% POST CONSUMER CONTENT

© USPS 2013

.IQ

# EXHIBIT B

12 - M D - 2330 Emc

05-03-2016

DEAR SIN

I'm writing to you About the
Cell-phone Settlement TODAY.
Asking For $5,000 REFUND check
AND To let you know About
AT AND T Crank calls occasionally.
I have Reported crank calls
Recently on my phones at home.
In the morning, the phone would
Ring About 8⁰⁰ Am then 12 noon
Then 9:00 pm And 12 midnight.
Many Times iT would be unlisted
or unknown callers. I want this
corrected and Stopped.
Thank you, thank you, Happy
Holiday. Thank you.
            Iris V. Campbell
            3496 LEE Road.
            Cleveland, OHIO 44128
            216-581-0433.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| IN RE | ) | No. 12-md-2330-EMC N |
| CARRIER IQ, INC., | ) | |
| CONSUMER PRIVACY LITIGATION | ) | |

## OBJECTIONS OF PATRICK SWEENEY TO PROPOSED SETTLEMENT

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Under penalty of perjury Patrick S. Sweeney (herein referred to as "Objector" or "Patrick") has reviewed the notice and believe that he is a member of the class as defined in that certain Notice of Class Action and Proposed Settlement which is not dated (herein referred to as the "Notice"). Patrick has filed two claims, one regarding his law firms ATT account and one for his personal account. His claim numbers are CIQ-40050759-5 AND CIQ-40050756-0. Patrick's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for July 28, 2016 at 1:30 p.m. PDT before

Honorable Judge Chen at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 5, 17th Floor San Francisco, CA 94102.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.  Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

    It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

    Objector is aware that this is not the "usual" procedure in Class Action proceedings. Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act") Rule 23 F.R.C.P.(the "Rule") nor the body of case law that has developed in the class action arena (all three collectively referred herein as "Class Action Policy") Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2. The Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3. No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4. Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

5. The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 25%, which is high, but if the percent is calculated by using monies actually awarded Class Members the percentage becomes much higher) By way of example: the Settlement Fund is $9 million dollars- attorney fees are $2.25 million; the cost of administration is already $1 million dollars; litigation expenses are $160,000 and Class Representative fees are $85,000. If all those sums are combined and subtracted from the $9 million Settlement Fund the amount left for distribution to Class Members is $5,505,000. $2.25 million of the actual dollars available to the Class Members represents a 40% attorney's fee.

The Objector hereby states that, of the 449 Docket Entries on PACER, very few entries were substantive in nature. The remaining entries were mostly procedural in nature. Although 449 is a fairly large number of Docket Entries it computes to an unfathomable $64,587 per Docket Entry.

6. The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

7. The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;
2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 2, 2016, I caused to be filed the foregoing with the Clerk of the Court of the United States District Court for the Northern District of California sending this document via U.S. First Class Mail Delivery at the address provided in the Notice.

Patrick S. Sweeney, Pro Se

**FILED**

JUN - 6 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Sam A. Miorelli, E.I., Esq. *(Pro Se)*
764 Ellwood Avenue
Orlando, FL 32804
Telephone: (321) 698-2776
E-Mail: sam.miorelli@gmail.com

*Pro Se Objector*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No.: 3:12-md-2330-EMC |
| | ) |
| CARRIER IQ, INC. CONSUMER PRIVACY | ) **OBJECTION TO CLASS ACTION** |
| LITIGATION | ) **SETTLEMENT OF SAM A. MIORELLI,** |
| | ) **E.I., ESQ.** |
| This Document Relates to: | ) |
| | ) Date:      July 28, 2016 |
| ALL CASES | ) Time:      1:30 p.m. |
| | ) Judge:     Honorable Edwin M. Chen |
| | ) Dept:      Courtroom 5, 17th Floor |
| | ) |

# TABLE OF CONTENTS

I.   Mr. Miorelli is a class member, has timely filed his claim and this objection, and intends to appear at the fairness hearing through his counsel..................................1

    A.   This Objection is timely filed. ................................................................1

II.  The Court has a fiduciary duty to the unnamed members of the class. ....................2

III. The existence of the Confidential Supplemental Agreement and Class Counsel's eagerness to hide material facts from the docket, and thus, absent class members, demonstrates his conflict of interest and requires his removal from the case and denial of final approval of the Settlement Agreement. ...............................................4

    A.   The Side Deal renders the Class Notice inadequate. ...................................4

    B.   Class Counsel's engagement in the Side Deal demonstrates his conflict of interest with his supposed clients: the absent Class Members....................7

    C.   Named Plaintiffs' agreement to the Side Deal demonstrates their breach of their duty to police the actions of Class Counsel and the terms of the Settlement Agreement to protect absent Class Members. ...........................8

IV.  The Settlement is a tiny percentage of the value of the Class' damages, demonstrating that Class Counsel and the Named Plaintiffs sold out the absent Class Members. ..............................................................................................................9

    A.   The total recovery is a fraction of the class' injury. ....................................9

    B.   Even if there is not a *cy pres* distribution, the actual recovery of absent Class Members is even more miniscule. ....................................................10

    C.   Named Plaintiffs will get almost-complete recovery while absent Class Members likely get nothing. .....................................................................10

    D.   This miniscule settlement is either a sellout by Class Counsel and the Named Plaintiffs or a nuisance settlement whose only purpose is the generation of legal fees and incentive awards.......................................................................11

V.   The *Cy Pres* provision shows Class Counsel and Named Plaintiffs' indifference to the interests of absent Class Members, violate *Dennis*, and prevent final approval of the Settlement Agreement............................................................................................12

    A.   The *cy pres* distribution is unfair. ..........................................................13

    B.   The *cy pres* beneficiaries do not meet the *Dennis* test..............................14

    C.   Mr. Miorelli should be permitted to conduct discovery regarding the selection of the *cy pres* beneficiaries. ...................................................................15

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

VI.  A class action settlement should not be approved when the primary beneficiaries are the class representatives and class counsel. ............................................................. 16

    A.  A large disparity between the recovery of the Named Plaintiffs and the absent Class Members is not permitted under Ninth Circuit precedent. ............................... 17

VII.  Class Counsel should not receive a fee award or costs award when he has not provided sufficient evidence in the public record to prove such amounts would comply with Class Counsel's own guidelines to limit costs and expenses which was ordered by this Court. ............................................................................................. 19

    A.  Class Counsel's motion and declarations do not satisfy his burden under the Guidelines. ................................................................................................... 20

    B.  Class Counsel's ignorance of his own Guidelines sinks his motion for fees and likely requires new notice to the absent Class Members. ................................... 21

VIII.  Class Counsel should not get more than the 25% benchmark attorneys' fee calculated on the basis of the benefit to the class, not the gross recovery, much of which is actually a benefit to the Defendant instead of the class. ......................................... 22

    A.  The basis for a contingent fee should exclude costs of class notice, Class Counsel's costs, and any incentive payments. ............................................................. 22

    B.  Class Counsel's lodestar should be calculated using the *Laffey Matrix*. .................. 23

    C.  The value of a *cy pres* award should not be included in the calculation of an attorneys' fee. ................................................................................................. 23

IX.  CONCLUSION ............................................................................................................. 24

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 2, 3

*Chanel, Inc. v. Doan*, 2007 WL 781976 (N.D. Cal. 2007) ................................................. 23

*Coons v. Henry*, 186 Cal.App.2d 512, 9 Cal.Rptr. 258 (Cal.Ct.App. 1960) ........................ 4

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ............................................. 3, 12, 14

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ............................................. 5

*Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989) ........................... 2

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) ....................... 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................... 3, 12

*Hecht v. United Collection Bureau*, 691 F.3d 218 (2d Cir. 2012) ...................................... 22

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) ...................................... 18

*In re American Tower Corp. Securities Litig.*, 648 F.Supp.2d 223 (D.Mass. 2009) ............. 13

*In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) ..................................... 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................... 3, 22

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ................................................. 23

*In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302 (7th Cir. 1984) ................................................. 6

*In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d.
Cir. 1995) ..................................................................................................................... 2

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) .......................................... 23

*In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988 (9th Cir. 2010) ............... 16

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) .......................... 5

*In re Prudential Ins. Co. America Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1988) ........ 23

*In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166 (D. Mass. 2005) ............................. 2

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .................................. 2

*In Re Washington Public Power Supply Syst. Lit.*, 19 F.3d 1291 (9th Cir. 1994) ................. 3

*Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983) .................................. 23

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1991) ............................................ 7, 8

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)................................... 5

2  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2nd Cir. 1995)...................... 8

3  *Merkeley v. Fisk*, 179 Cal. 748, 178 P. 945 (Cal. 1919)....................................................... 4

4  *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781 (7th Cir. 2004) ........................................ 24

5  *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .................................................................. 3

6  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)............................... 11, 12, 24

7  *Newman v. Graddick*, 696 F.2d 796 (11th Cir. 1983)......................................................... 6

8  *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982).................................................. 18

9  *Plummer v. Chemical Bank*, 91 F.R.D. 434 (S.D.N.Y. 1981) ............................................ 18

10  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir.1984)........................................... 5

11  *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013) ..................... 17, 18

12  *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ........................................... 22

13  *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ...................................... 2

14  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)..................................... 5

15  *Rushford v. New Yorker Magazine*, 846 F.2d 249 (4th Cir. 1988) ...................................... 6

16  *Sanders v. John Nuveen & Co., Inc.*, 463 F.2d 1075 (7th Cir. 1972) ................................... 5

17  *Silber v. Mabon*, 957 F.2d 697 (9th Cir. 1992)................................................................... 2

18  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)................................ 14

19  *Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ................................................................. 3

20  *True v. American Honda Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010)................................... 3, 14, 19

21  *Twigg v. Sears, Roebuck & Co.*, 153F.3d 1222 (11th Cir. 1998) ....................................... 22

22  *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013)............................... 17, 18

23  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)................................................ 3

24  **Rules**
   Federal Rule of Civil Procedure 23 .................................................................... 2, 4, 5

25
   Federal Rule of Civil Procedure 6 ............................................................................. 2
26

27

28

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**Other Authorities**

"List of Progressive Organizations," Center for Media and Democracy SourceWatch, http://www.sourcewatch.org/index.php/List_of_progressive_organizations (accessed June 3, 2016) ................................................................................................................................. 15

A.C. Wright, A. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1 (1986) ........................................................................................................................................ 8

American Bar Association, *Model Rules of Professional Conduct* (2016) ......................... 7

American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.05(c) (2010) ................. 3, 14

Conte, 1 Attorney Fee Awards § 2.05 ................................................................................. 23

Editorial, *When Judges Get Generous*, Wash. Post (Dec. 17, 2007) ................................. 13

Herbert Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2002). ............... 2, 3

Martin H. Redish, *et al., Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) ..................................... 13

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**INTRODUCTION**

I.     **Mr. Miorelli is a class member, has timely filed his claim and this objection, and intends to appear at the fairness hearing through his counsel.**

Mr. Miorelli, who resides at 764 Ellwood Avenue, Orlando, FL 32804, is a Class Member (capitalized terms used in this Objection have the same meaning as used in the Settlement Agreement unless otherwise defined). Mr. Miorelli purchased his Samsung Galaxy S6, Model SMG-920A on May 13, 2015 for $425.99. (Declaration of Sam A. Miorelli, E.I., Esq. ("Miorelli Declaration") at ¶5). Due to warranty issues relating to extremely-poor performance and high battery drain, that device was replaced under warranty first on December 20, 2015 and again for the same problems it was replaced a second time on April 30, 2016. *Id.*

On information and belief that one or more of these phones had CarrierIQ installed on them and that one or more of the warranty replacements, which caused significant disruptions to Mr. Miorelli, were related to CarrierIQ, Mr. Miorelli filed a claim in the instant action. Mr. Miorelli's claim number is CIQ-40048045-0.

Mr. Miorelli hereby provides Notice of his Intent to Appear at the Fairness Hearing at 1:30 p.m. at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 5 – 17th Floor, San Francisco, CA 94102. To the extent that other Class Members file objections which are not inconsistent with the objections raised herein, Mr. Miorelli reserves the right to adopt those objections and address them at the Fairness Hearing as well. To the extent that any objector participates in discovery relating to the Settlement Agreement, Mr. Miorelli joins their motion to do so and requests equal access to such proceedings. Mr. Miorelli also hereby requests the opportunity to depose and cross-examine any witness presenting evidence in support of the Settlement Agreement.

A.   This Objection is timely filed.

The Court's Order Preliminarily Approving Settlement; Appointing Class Representatives and Class Counsel; Appointing Claims Administrator; and Providing for Notice to Settlement Class Member sets the deadline to object as "no later than sixty (60) days after the Class Notice Date." (Dkt 421 at 7:21). That deadline falls on June 4, 2016, which is a Saturday. Pursuant to Federal Rule of

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Civil Procedure 6(a)(3)(A), the deadline is automatically extended to Monday, June 6, 2016 as the first subsequent day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(3)(A). Consequently, this Objection is timely filed.

## II.     The Court has a fiduciary duty to the unnamed members of the class.

A district court must act as a "fiduciary for the class who must serve as a guardian of the rights of absent class members." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). "Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit." *In re Relafen Antitrust Litigation*, 360 F.Supp.2d 166, 192-94 (D. Mass. 2005) (*citing, inter alia, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'")); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002) ("district judges [are] to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions").

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d. Cir. 1995) (*"GM Pickup Truck"*) (internal quotation and citation omitted). "A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is adequately protecting the interests of the class." Herbert Newberg & Alba Conte, Newberg on Class Actions § 13:20 (4th ed. 2002). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d

-2-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1052, 1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* American Law Institute, *Principles of the Law of Aggregate Litig.*, § 3.05(c) (2010) ("*ALI Principles*").

"Where the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (*quoting Amchem*, 521 U.S. at 620). "[S]ettlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953. "[P]re-certification settlement agreements require that we carefully review the entire settlement, paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (*quoting Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003)). "These concerns warrant special attention where the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties. *Bluetooth*, 654 F.3d at 948 (*quoting Staton*, 327 F.3d at 960). Because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. *Id.* "Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (*quoting In Re Washington Public Power Supply Syst. Lit.*, 19 F.3d 1291 (9th Cir. 1994)). "Accordingly, fee applications must be closely scrutinized." *Id.*

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**III.    The existence of the Confidential Supplemental Agreement and Class Counsel's eagerness to hide material facts from the docket, and thus, absent class members, demonstrates his conflict of interest and requires his removal from the case and denial of final approval of the Settlement Agreement.**

The behavior of Class Counsel proves his interests intractably conflict with that of the absent Class Members and he must be removed from the representation.

Class Counsel and Defendants have admitted that they have a "Confidential Supplemental Agreement" which also affects the Settlement Agreement, Mr. Miorelli shall refer to this as the "Side Deal." (Dkt 410 at ¶8-10; 411 at 3:14-16; 419 at ¶51). The Side Deal apparently grants additional rights to Defendants on terms and conditions which Class Counsel, the Named Plaintiffs, and Defendants expressly agree to keep secret, including secret from the absent Class Members themselves! (Dkt 419 at ¶51). Among the rights granted in the Side Deal is at least, the right of Defendants to terminate the Settlement Agreement if a secret number of absent Class Members opt out of the Settlement Agreement. *Id.* There is no reason to believe from the record that this is the *only* additional right Defendants maintain in the Side Deal.

A.    The Side Deal renders the Class Notice inadequate.

The Settlement Agreement is an integrated agreement. (Dkt 419 at ¶65). While the Side Deal is secret, it appears from its mentions in the record that it addresses the same subject-matter as the Settlement Agreement, and presumably includes a cross-reference to the Settlement Agreement. *See* Dkt 419 at ¶51. That integration clause and the cross reference means that the Side Deal and the Settlement Agreement must be "considered and construed as one contract." *Coons v. Henry*, 186 Cal.App.2d 512, 517, 9 Cal.Rptr. 258, 261 (Cal.Ct.App. 1960) (quoting *Merkeley v. Fisk*, 179 Cal. 748, 178 P. 945, 948 (Cal. 1919)).

The Side Deal, being a part of the Settlement Agreement, must be available to the absent Class Members or the notice under Rule 23 will be insufficient and render any release ineffectual. The quality of notice required under Rule 23 has been a stable point of class action law for decades. As the Fifth Circuit held in 1977,

> Absentee class members will generally have had no knowledge of the suit until they receive the initial class notice. This will be their primary, if not exclusive, source of information for deciding how to exercise

-4-

their rights under rule 23. Although absentee class members are customarily encouraged to make inquiry of the clerk of the district court where the case is filed if they have further questions, this worthwhile advice cannot justify omitting material information. This is particularly plain in a case such as the one at bar where class members are numerous and widely dispersed. Not only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action. The standard then is that the notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). This rule has been adopted across the country and no Circuit Court of Appeal has ever disagreed with this formulation of the Rule 23 notice requirements. *See Sanders v. John Nuveen & Co., Inc.*, 463 F.2d 1075, 1082 (7th Cir. 1972) ("The purpose of the mandatory notice and disclosure requirements of Rule 23(c)(2) is to advise all class members of their rights and privileges under the close supervision of the court."); *Erhardt*, 629 F.2d at 846.

The Ninth Circuit has often approved settlement agreements over objections to the adequacy of notice, in part, due to the ready availability of the *entire* settlement agreement to curious absent Class Members. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (noting that "the settlement agreement and related documents were posted at [settlement website URL]"); .

Additionally, the Court has an obligation, pursuant to Rule 23(e) to conduct a hearing prior to granting final approval of the Settlement Agreement. Fed. R. Civ. P. 23(e)(2). In a case such as this, that hearing is the closest thing absent Class Members will get to a trial and it is their only substantive opportunity to be heard in the entirety of the litigation. Every Court of Appeal to consider the issue has ruled that the First Amendment protects the public's right to attend civil trials. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120, 124 (2d Cir. 2006) (noting that the public has a right to attend trials); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 700 (6th Cir. 2002) (concluding that "Deportation hearings, and similar proceedings, have traditionally been open to the public"); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir.1984) ("We hold that the First

-5-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Amendment does secure a right of access to civil proceedings."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (agreeing that "the policy reasons for granting public access to criminal proceedings apply to civil cases as well"); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) (deciding that "civil trials which pertain to the release or incarceration of prisoners and the conditions of their confinement are presumptively open to the press and public"). *See also Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) (holding that "the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) ("we allow parties to use pseudonyms in the 'unusual case' where nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule, or personal embarrassment." (internal citations and quotations omitted)).

If the public has a First Amendment right to attend a trial, it cannot stand to any logic that it would not also have a right to review the critical documents at issue in such a trial. Considering the unique nature of the pre-certification class action settlement, it is impossible to imagine that the same principle should not also apply to the public, let alone to the actual absent Class Members themselves. Even if the Court believes it is a close call whether or not to seal documents in this case, at this stage, when the Court owes a fiduciary duty to the absent Class Members, the presumption must be strongly, even overwhelmingly in favor of public disclosure.

Having not disclosed the Side Agreement, the absent Class Members have been unable to adequately consider the Settlement Agreement. Without this opportunity to consider the adequacy of the Settlement Agreement before deciding whether to file a claim, object, or opt-out, absent Class Members have had their due process rights in this case violated. Thus, the Settlement Agreement cannot be approved without disclosure of the Side Agreement and new notice drawing absent Class Members' attention to the additional terms and granting an additional opportunity to object and opt-out.

B. **Class Counsel's engagement in the Side Deal demonstrates his conflict of interest with his supposed clients: the absent Class Members.**

The secrecy of the Side Deal is even more outrageous because it was expressly negotiated for and agreed-to by Class Counsel. Since the only available information suggests that the Side Deal only provides Defendants additional rights, there is no reason to believe that the secrecy of the Side Deal could have any purpose except to harm absent Class Members. What other purpose could there be to keep such an arrangement secret? By engaging in such activity, Class Counsel has shown a conflict which requires his dismissal.

The analysis of this argument should begin with the ABA Model Rules of Professional Conduct and Model Code of Professional Responsibility. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588-89 (3d Cir. 1991). Rule 1.7 of the ABA Model Rules of Professional Conduct requires "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client[.]" American Bar Association, *Model Rules of Professional Conduct*, § 1.7 (2016). In this case, the combination of the existence of the Side Deal and its secrecy is directly adverse to the absent Class Members. Assuming the Named Plaintiffs knew the terms of the Side Deal and consented to it and its secrecy, then it becomes likely that Class Counsel negotiated the Settlement Agreement and the Side Deal in a manner which was beneficial to the Named Plaintiffs at the expense of the absent Class Members. Mr. Miorelli will discuss, *infra*, additional indicia of such a conflict of interest.

Immediately upon demonstrating this conflict of interest, Class Counsel should have been removed from the representation. The Third Circuit explained, citing its prior case law, why it removed a plaintiffs' counsel who found himself adverse to the interests of many of his supposed absent clients:

> We focused on the policies underlying the rules against an attorney representing a party in a matter in which a former client is now an adversary, including preventing "even the potential that a former client's confidences and secrets may be used against him"; maintaining

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1      "public confidence in the integrity of the bar"; and upholding the duty
2      of loyalty that a client has the right to expect.

3   *Lazy Oil*, 166 F.3d at 589. The Third Circuit then set forth their standard for maintaining class counsel
4   in the face of objections,

5          We therefore hold that, in the class action context, once some class
           representatives object to a settlement negotiated on their behalf, class
6          counsel may continue to represent the remaining class representatives
           and the class, as long as the interest of the class in continued
7          representation by experienced counsel is not outweighed by the actual
           prejudice to the objectors of being opposed by their former counsel.
8

9   *Id.* at 590. Put simply, once Class Members object, the Court must always be on alert for whether the
10  interests of the absent Class Members are best protected by class counsel, or if the objections have
11  shown Class Counsel to be adverse to the best interest of the class, he must be removed.

12         C.  <u>Named Plaintiffs' agreement to the Side Deal demonstrates their breach of their duty
               to police the actions of Class Counsel and the terms of the Settlement Agreement to</u>
13             <u>protect absent Class Members.</u>

14         As the Second Circuit held in *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2nd
15  Cir. 1995), once a class action has been certified, the class representative "must be alert for, and report
16  to the court, any conflict of interest on the part of class counsel, as for example, counsel's greater
17  concern for receiving a fee than for pursuing the class claims." *Id.* at 1078 (*citing* A. C. Wright, A.
18  Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1769.1, at 386–87 (1986)). While this
19  case is a pre-certification settlement, the Settlement Agreement asks for the class to be certified for
20  the purposes of effectuating the Settlement Agreement and the release. Consequently, the same duty
21  applies to the Named Plaintiffs in policing the negotiation and approval of the Settlement Agreement.

22         Named Plaintiffs are each aware of the terms of the Side Deal and why it is being kept secret
23  from their fellow Class Members. (Dkt 431 at ¶4; Dkt 432 at ¶4; Dkt 433 at ¶4; Dkt 434 at ¶4; Dkt
24  435 at ¶4; Dkt 436 at ¶4; Dkt 437 at ¶4; Dkt 438 at ¶4; Dkt 439 at ¶4; Dkt 440 at ¶4; Dkt 441 at ¶4;
25  Dkt 442 at ¶4; Dkt 443 at ¶4; Dkt 444 at ¶4; Dkt 445 at ¶4; Dkt 446 at ¶4; Dkt 447 at ¶4). For each
26  and every one of them, the secrecy of the Side Deal creates the strong impression that they approve
27  of such additional benefits for Defendants (benefits that only they and their lawyers know about)
28  expressly because of what they buy them: exorbitant incentive awards. This would also show exactly

-8-

1  why they would tolerate the conflict of interest which Class Counsel labors under: he's conflicted *in*

2  *their favor!*

3  Having proved themselves each incapable of policing Class Counsel, the Court should deny

4  final approval of the Settlement Agreement and order discovery and briefing as to whether all or any

5  of the Named Plaintiffs are adequate representation of the absent Class Members.

6  **IV.   The Settlement is a tiny percentage of the value of the Class' damages, demonstrating that Class Counsel and the Named Plaintiffs sold out the absent Class Members.**

7

8  A.   The total recovery is a fraction of the class' injury.

9  Even if the Court agrees with Class Counsel that the entire $9 million benefits absent Class

10  Members, that is a fraction of the damages to which they are entitled. Class Counsel and Defendants

11  believed this case was worth approximately $1 trillion. (Dkt 411 at 4:5-7:14). Mr. Miorelli believes

12  the value was lower as he does not believe the double-recovery under the Federal Wiretap Act would

13  have been likely, especially given the poor financial stature of CarrierIQ. Mr. Miorelli prefers to

14  evaluate the value of the claim on a per-average-class-member basis then multiply by the size of the

15  class to estimate the value of the damages foregone in the Settlement Agreement. According to Class

16  Counsel and Defendants, the FWA clam was worth $10,000 per Class Member in statutory damages.

17  (Dkt 411 at 4:5-18). Additionally, the state privacy/wiretap laws provide each Class Member about

18  $1,000 each in statutory damages (ranging from $100 per day to $10,000 depending on the state). *Id.*

19  at 5:2-20. Class Counsel and Defendants valued the Magnuson-Moss Warranty Act claims at the

20  value of a replacement phone, which Mr. Miorelli estimates to be about $600 and claims under state

21  consumer protection and fraud acts would have a similar base value (but to avoid double-counting

22  since double-recovery under both theories would have been unlikely, Mr. Miorelli only considers

23  both for a total of $600). *Id.* at 6:21-24 and 7:1-12. In total, each absent Class Member likely was

24  claiming about $11,600 each. Multiplied by 47,000,000 Class Members, the total damages for the

25  collective class was likely about $545.2 billion.

26  Recovery of Class Counsel and Defendants' estimate, which would be north of $1 trillion,

27  would have been unlikely as the total market capitalization of the Defendants is approximately

28

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1  $198.12 billion. (Miorelli Declaration at ¶4). Clearly the recovery could not be more than that, which

2  across 47,000,000 Class Members would be about $4,215.25 each in maximum theoretical recovery.

3      Using that math, the total $9 million recovery is 0.0045% of the class' maximum theoretical

4  recovery. In other words, if the recovery was "a penny on the dollar," it would be over 200 times

5  better than the recovery in the Settlement Agreement. Using Class Counsel and Defendants' estimate,

6  which seems to be about $1 trillion, this settlement represents 0.0009% recovery for the absent Class

7  Members. Either way, the recovery is miniscule compared to the damages which absent Class

8  Members were entitled to at law.

9          B.  Even if there is not a *cy pres* distribution, the actual recovery of absent Class
               Members is even more miniscule.

10

11     Under the Settlement Agreement there is a significant risk that there will be too many of the

12 77 million absent Class Members making a claim to have the *pro rata* distribution exceed $4 and

13 avoid a 100% *cy pres* distribution. Nevertheless, even if a cash distribution is made, the amount to

14 Class Members will be minute.

15     Of the $9 million common fund, Class Counsel would take $2.25 million in attorneys fees

16 plus $108,933.72 in "costs and expenses," 17 Named Plaintiffs would take $5,000 each, and the

17 settlement administrator will take $889,000 to $1.3 million. This will leave $5,256,066.28 to

18 $5,667,066.28 for absent Class Members. Expressed as a percentage, the class will recover (if it

19 recovers anything at all) only 58.4-63% of the headline $9 million settlement fund. Compare that to

20 a trillion-dollar prayer for relief against companies collectively worth about $198.12 billion. A

21 pittance.

22         C.  Named Plaintiffs will get almost-complete recovery while absent Class Members
               likely get nothing.

23     While the absent Class Members have their claim discounted tremendously (likely to the point

24 of having no recovery if the *pro rata* share goes below $4), the Named Plaintiffs are secure in a near-

25 complete recovery. As described previously, each absent Class Member is likely entitled to

26 approximately $11,600 each in statutory, actual, and punitive damages, plus attorney's fees and costs.

27 However, due to the financial capability of the companies, it would likely be impossible to recover

28

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

more than their collective value of $198.12 billion. Named Plaintiffs will recover $5,000 each, or 43.1% of their damages at law and 118.6% of their maximum theoretical recovery of $4,215.25 each. Compared to Class Members who likely receive zero cash, but who would receive, on average $0.12 each if they all filed claims. Named Plaintiffs are 41,667X better off than absent Class Members even if absent Class Members' money was sent to them instead of its likely *cy pres* destination. While all 47 million absent Class Members will not file claims, even if the absent Class Members have a cash recovery, it is likely to be over 1000x less than that of the Named Plaintiffs.

> D. This miniscule settlement is either a sellout by Class Counsel and the Named Plaintiffs or a nuisance settlement whose only purpose is the generation of legal fees and incentive awards.

Basic economic theory teaches that rational actors settling litigation matters agree to an amount of money approximating their estimation of the amount of their damages discounted by their probability of success at trial. Either this Settlement Agreement is the veiled admission of Class Counsel that the case is frivolous, with 99.999% chance of failure at trial, or, more likely, Class Counsel seeks only a nuisance settlement to justify his outrageous fee and handsomely pay off the Named Plaintiffs.

The Seventh Circuit addressed a situation like this in *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) (Easterbrook, J.). In *Murray*, the defendant and class representative proposed to settle the case for single-digit percentage of the value of their damages in payments that were in the range of $1 per absent class member, while the lawyers received enormous fees and the representative plaintiff received thousands of times more money than the absent class members. *Id.* Judge Easterbrook said "[s]uch a settlement is untenable. We don't mean by this that all class members must receive [full compensation]; risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty." *Id.* at 952. However,

> if the chance of success really is only 1%, shouldn't the suit be dismissed as frivolous and no one receive a penny? If, however, the chance of success is materially greater than 1%, as the proposed payment [of an incentive award to representative plaintiff] Murray

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

implies, then the failure to afford effectual relief to any other class member makes the deal look like a sellout.

*Id.* This Settlement Agreement is much the same as that rejected in *Murray*. Just as in *Murray*, here the lawyers will receive a huge fee while absent Class Members receive nothing (since the *cy pres* distribution is likely). Also, just as in *Murray*, the Named Plaintiffs will receive thousands of dollars each while absent Class Members get nothing.

It is impossible to imagine any rational actor pursuing millions of dollars in litigation which they and their lawyers all agreed had less than 1% chance of success on the merits. Defendants even today believe the claims in this case were of "nuisance value." (Dkt 411 at 8:6). Mr. Miorelli agrees with them and believes the statistics which show the enormous 99.999% discount they are being settled at also demonstrates they were claims of nuisance value. However, if Class Counsel was correct about their value, then this Settlement Agreement is an astounding sell out. For the purposes of this Objection, Mr. Miorelli believes it is unnecessary to take a position between Defendant's view of this as a nuisance case for the purpose of generating fees or to see it as a transparent Class Counsel sell out. It certainly must be one of the two, and whichever it is, it falls well outside the discretion of this Court to approve.

**V.     The *Cy Pres* provision shows Class Counsel and Named Plaintiffs' indifference to the interests of absent Class Members, violate *Dennis*, and prevent final approval of the Settlement Agreement.**

The purpose of *cy pres* in this case is transparent: Class Counsel and Defendants never intend money to be paid to absent Class Members, they expect $5.26-5.57 million to be split across three favored groups, only one of which has any discernable connection to the case. The Court cannot modify the Settlement Agreement to cure the *cy pres* problems either, it does

> not have the authority to strike down only the *cy pres* portions of the settlement. It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness and [it] cannot delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety.

*Dennis v. Kellogg Co.*, 697 F.3d 858, 869 (9th Cir. 2012) (internal quotations omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1    A.   The *cy pres* distribution is unfair.

2    The *cy pres* award is yet another breach of Class Counsel's fiduciary duty to the absent Class

3   Members. It gives the potential *cy pres* beneficiaries an unacceptable advantage in recovery over that

4   of the actual injured absent Class Members. A *cy pres* is only appropriate where it is not economically

5   viable to identify and pay the individuals directly, or where there are leftover funds. *ALI Principles*.

6   Class Counsel owed the absent Class Members a fiduciary duty when negotiating the Settlement

7   Agreement just like the Court owes them one now, yet he agreed to an ambiguous standard and

8   unreasonably-high threshold for the entirety of the absent Class Members' recovery to be discarded

9   in favor of three *cy pres* beneficiaries. That is a breach of his duty.

10    There is no reason to have a *cy pres* distribution in this case until the absent Class Members

11   are completely compensated. Class Counsel and Defendants' desire to hand millions over to three

12   organizations, presumably which they have a relationship with beyond this case, at the expense of

13   nameless absent Class Members truly tells the story of this entire Settlement Agreement. The three

14   *cy pres* beneficiaries are not Class Counsel's client, but yet they stand to profit handsomely from the

15   absent Class Members' injuries. Further, one of the *cy pres* beneficiaries, EFF, once represented one

16   of the Named Plaintiffs. The distastefulness of this has attracted the attention of commentators beyond

17   the ALI as well. *See, e.g.*, Martin H. Redish, *et al., Cy Pres Relief and the Pathologies of the Modern*

18   *Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) ("the very possibility

19   of a *cy pres* award threatens to undermine the due process rights of both defendants and absent class

20   plaintiffs."); Editorial, *When Judges Get Generous*, Wash. Post (Dec. 17, 2007) ("Federal judges are

21   permitted to find other uses for excess funds, but giving the money away to favorite charities with

22   little or no relation to the underlying litigation is inappropriate and borders on distasteful . . . those

23   funds should be made available to individual plaintiffs and not to outside organizations . . .").

24    A settlement where many absent Class Members get a small amount of money only should

25   use *cy pres* where "the cost per class member of distributing the residual funds substantially outweighs

26   the amount each class member would receive." *In re American Tower Corp. Securities Litig.*, 648

27   F.Supp.2d 223, 224 n.1 (D.Mass. 2009). No matter what the amount of the check is, the administrative

28

-13-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1    cost per-check is the same. Even if the check is only $1, that is likely still more than the cost to have

2    an automated system print and mail the check. Consequently, the *cy pres* threshold of "about $4" is

3    first too high, and second, too vague. The Court should deny final approval if it includes any *cy pres*

4    with a per-class-member break point above the *actual cost* to provide checks to absent class members.

5           Finally, because Class Counsel, Named Plaintiffs, and Defendants have made no statement on

6    the record regarding their personal and organizational connections to the *cy pres* beneficiaries, they

7    have not met their burden for approval of the Settlement Agreement. "The proponents of a settlement

8    bear the burden of proving its fairness." *True*, 749 F. Supp. 2d at 1080. "A *cy pres* remedy should not

9    be ordered if the court or any party has any significant prior affiliation with the intended recipient that

10   would raise substantial questions about whether the selection of the recipient was made on the merits."

11   *ALI Principles* at Comment b. In this case, absent Class Members like Mr. Miorelli are in the dark

12   regarding the parties' relationships with the *cy pres* beneficiaries. All we know is that they were not

13   consulted, but that says nothing about the potential personal affiliation conflicts of interest which

14   could have contributed to their selection in the first place. The proponents of the Settlement

15   Agreement have thus not met their burden for proving the independence of the *cy pres* beneficiaries

16   and the Settlement Agreement cannot be approved on that basis.

17           **B.   The *cy pres* beneficiaries do not meet the *Dennis* test.**

18           Even if the Court is persuaded that there could be a circumstance where *cy pres* is appropriate

19   in this case, Class Counsel and Defendants have not satisfied the Ninth Circuit's requirement that a

20   *cy pres* award be "the next best distribution to giving the funds directly to class members." *Dennis*

21   697 F.3d at 865 (citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir.

22   1990) (internal quotations omitted). There must be "a driving nexus between the plaintiff class and

23   the *cy pres* beneficiaries." *Id.*

24           The Settlement Agreement calls for a *cy pres* distribution (if the *pro rata* distribution to absent

25   Class Members would be less than $4 each) in equal parts to the Electronic Frontier Foundation

26   ("EFF"), the Center for Democracy and Technology ("CDT"), and CyLab Usable Privacy and

27   Security Laboratory at Carnegie Mellon University ("CUPS"). While there is evidence in the record

28

-14-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1   of the important role EFF played in this case, there is no basis for *cy pres* awards to the other two

2   organizations.

3        In fact, the evidence in the record suggests that an award to CDT and CUPS would be

4   inappropriate. This was a case about secret software causing security and privacy problems with

5   consumer cell phones. Yet CDT's mission says nothing on point to that problem and in fact is just a

6   special interest group that lobbies for a particular tech-related political agenda. (Dkt 404-2 at 7). That

7   agenda, which particularly includes "Preserving Net Neutrality," is often aligned with left-leaning

8   politics. *See* "List of Progressive Organizations," Center for Media and Democracy SourceWatch,

9   http://www.sourcewatch.org/index.php/List_of_progressive_organizations (accessed June 3, 2016).

10  Obviously their agenda does not comport with the political views of all or perhaps even a majority of

11  the absent Class Members. Even if a majority agreed, giving CDT *cy pres* money favors absent Class

12  Members who agree with their political lobbying over those who disagree with it, creating immediate

13  unfairness amongst the Class Members.

14       CUPS also apparently has nothing in its mission directly related to the injury suffered by the

15  absent Class Members. CUPS's work appears to be focused on researching on the "factors that make

16  creating and following appropriate password policies difficult," developing "a visualization technique

17  for displaying [security and privacy] policies," and study of the effectiveness of security warning

18  dialogs in operating systems and web browsers. (Dkt 404-2 at 16-19). Without commenting on the

19  general value to society of a "visualization technique" for displaying privacy policies, clearly

20  whatever that is, it's not related to a covertly-installed rootkit in consumer cell phones or of any

21  particular value to the absent Class Members.

22       Neither CDT nor CUPS should receive any *cy pres* benefit and since the Court cannot modify

23  the Settlement Agreement to remove them, final approval must be denied.

24       C.  Mr. Miorelli should be permitted to conduct discovery regarding the selection of the

25         *cy pres* beneficiaries.

26       Whether or not the Court denies final approval due to the unacceptable *cy pres* beneficiaries,

27  Mr. Miorelli requests leave of the Court to conduct discovery of Class Counsel, Named Plaintiffs,

28  and Defendants as to why CDT and CUPS were selected. Since two of the three *cy pres* beneficiaries

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1    have no discernable connection to the subject matter of the case, it raises the question of why they

2    were selected by Class Counsel, Named Plaintiffs, and Defendants to potentially share in $5.26-5.67

3    million. As there is other evidence of a conflict of interest between Class Counsel and the absent

4    Class Members, it stands to reason that the conflict may have infected the selection of *cy pres*

5    beneficiaries as well. "A *cy pres* remedy should not be ordered if the court or any party has any

6    significant prior affiliation with the intended recipient that would raise substantial questions about

7    whether the selection of the recipient was made on the merits." *ALI Principles* at Comment b.

8         Objectors such as Mr. Miorelli are entitled to "discovery relevant to the objections." *In re*

9    *Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Clearly there was a

10   reason why CDT and CUPS were selected (they are not, after all, the only organizations with missions

11   similar to theirs)[1] but as with so much of this Settlement Agreement, the real reason is missing. Mr.

12   Miorelli and the other absent Class Members are entitled to inquire further.

13   **VI.   A class action settlement should not be approved when the primary beneficiaries are the class representatives and class counsel.**

14

15        Under the Settlement Agreement absent Class Members will likely get no recovery while the

16   Named Plaintiffs will receive $5,000 cash and Class Counsel will receive $2.25 million.

17        While the absent Class Members have their claim discounted tremendously (likely to the point

18   of having no recovery if the *pro rata* share goes below $4), the Named Plaintiffs are secure in a near-

19   complete recovery. As described previously, each absent Class Member is likely entitled to

20   approximately $11,600 each in statutory, actual, and punitive damages, plus attorney's fees and costs.

21   However, due to the financial capability of the companies, it would likely be impossible to recover

22   more than their collective value of $198.12 billion.

23

24

---

25   [1] For example, the Electronic Privacy Information Center "is a public interest research center in Washington, DC . . established in 1994 to focus public attention on emerging privacy and civil liberties issues and to protect privacy,

26   freedom of expression, and democratic values in the information age." About EPIC,

27   https://www.epic.org/epic/about.html (accessed June 3, 2016). Additionally, consider other organizations such as TechFreedom, whose mission is to "promote the progress of technology that improves the human condition and

28   expands individual capacity to choose by educating the public, policymakers, and thought leaders about the kinds of public policies that enable technology to flourish." About, http://www.techfreedom.com/about (accessed June 3, 2016).

-16-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

Named Plaintiffs will recover $5,000 each, or 43.1% of their $11,600 each damages at law and 118.6% of their maximum theoretical recovery of $4,215.25 each. Compared to Class Members who would likely receive zero cash, but who would receive, on average $0.12 each if they all filed claims that were not blocked by the *cy pres* payment provision. In that situation, Named Plaintiffs are 41,667X better off than absent Class Members even if absent Class Members' money was sent to them instead of its likely *cy pres* destination. While all 47 million absent Class Members will not file claims, even if the absent Class Members have a $4 cash recovery, it is likely to be over 1000x less than that of the Named Plaintiffs.

These incentive awards are also purely conditional – they are only paid if the settlement with all of its many fatal defects is approved. (Dkt 419 at ¶ 36). That conditionality makes the incentive awards even more odious.

A. <u>A large disparity between the recovery of the Named Plaintiffs and the absent Class Members is not permitted under Ninth Circuit precedent.</u>

Courts around the country, including the Ninth Circuit, while often approving incentive awards to class representatives regularly reverse when those awards represent a large disparity when compared to the absent Class Members. In *Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013), the Ninth Circuit reversed an approved settlement due to a 6.67-192.3 times disparity between class representatives' recovery and that of absent class members. The Ninth Circuit reasoned that "the significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 in incentive awards." *Id.*

The Sixth Circuit has also rejected a large disparity between the named plaintiffs and absent class members' treatment in *Vassalle v. Midland Funding, LLC*, 708 F.3d 747 (6th Cir. 2013). In *Vassalle*, the settlement provided for absent class members to receive $17.38 each while the named plaintiffs would be paid $2,000 each plus, in the case of one named plaintiff, have $4,516.57 in debt forgiven. *Id.* at 755-56. In total, this resulted in named plaintiffs receiving approximately 374 times

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1   as much benefit from the settlement as absent class members. The Sixth Circuit found the settlement

2   was unfair and that the district court abused its discretion by approving it. *Id.* at 756.

3       The Second Circuit also is skeptical of the fairness of incentive payments. In *Plummer v.*

4   *Chemical Bank*, 668 F.2d 654 (2d Cir. 1982), the Second Circuit affirmed the Southern District of

5   New York's denial of a proposed class action settlement where absent class members received $1,000

6   each while the four representative class members received between $8,500 and $17,500 each. The

7   district court held that "where representative plaintiffs obtain more for themselves by settlement than

8   they do for the class for whom they are obligated to act as fiduciaries, serious questions are raised as

9   to the fairness of the settlement to the class." *Plummer v. Chemical Bank*, 91 F.R.D. 434, 441-42

10   (S.D.N.Y. 1981), *aff'd*, 668 F.2d 654 (2d Cir. 1982).

11       The Eleventh Circuit directly cited that same district court language in *Plummer* when it

12   rejected a class settlement which allocated approximately 6.25% of a lump sum settlement to the eight

13   representative class members, while the absent class members each received, on average,

14   approximately 0.42% of the settlement. *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1146, 1148

15   (11th Cir. 1983). The court found the 14.75 times disparity between representative and absent class

16   member recovery was facially unfair and reversed the district court's approval of the settlement. *Id.*

17   at 1151.

18       In *Radcliffe* the disparity between the class representatives and the absent members of the

19   class was about 6 to 192 times, in *Vassalle* it was 374 times, in *Plummer* it was 8.5 to 17.5 times, and

20   in *Holmes* the disparity was 14.75 times. In each of those cases, the appellate court rejected the

21   settlement as unfair.

22       This District has also expressed concern about other proposed settlement agreements recently

23   before it which suggested large-multiple incentive awards. In *Lifelock*, this Court noted with caution

24   that "Plaintiffs, thus far, have provided no explanation for why the named Plaintiffs deserve an award

25   100 times greater than the settlement value of the other Class Members." *Lifelock*, 2016 WL 234364

26   at *7.

27       In this case the disparity is either infinite if the absent Class Members make no recovery at

28   all, or on the order of 1,000X depending on how many claims are made. That disparity is vastly above

-18-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

the levels which the Ninth, Second, and Eleventh Circuits have all rejected. This Court would invite error to approve this much-worse disparity. Class certification is not appropriate when the class representative and class counsel bring a lawsuit to benefit not the class, but themselves. *See In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011). This Settlement Agreement, with its enormous attorneys' fee and thousands of times difference in recovery between the class representative and absent Class Members appears to be just such a self-serving case and should be rejected.

## VII. Class Counsel should not receive a fee award or costs award when he has not provided sufficient evidence in the public record to prove such amounts would comply with Class Counsel's own guidelines to limit costs and expenses which was ordered by this Court.

As part of appointing Class Counsel, the Court ordered that he file proposed guidelines to limit costs and expenses, including attorney's fees. (Dkt 100 at 2:9-20). Class Counsel proposed a set of guidelines ("the Guidelines") and the Court adopted them and ordered that "[c]osts or expenses that do not fall within the limitations outlined in Docket No. 108 will be presumptively unreasonable and not compensable in any fee award." (Dkt 110). "That being said, the Court advises co-lead counsel that costs or expenses that do fall within the limitations in Docket No. 108 shall not be deemed presumptively reasonable." *Id.* The Order applies to both expenses and attorneys' billings. *Id.*

The Guidelines limit staffing at depositions to 1-2 attorneys and 1 paraprofessional; at court hearings only counsel making an appearance and also involved in the briefing or argument would have compensable time; non-dispositive motion hearings would be limited to two attorneys; conference calls and meetings would be limited; travel expenses would be limited to coach-class airfare, $250 per night hotel rooms, and $120 per diem meal expenses; expenditures for copies exceeding $5,000 required co-lead counsel's explicit authorization; and document review was to be done by a contracted vendor. (Dkt 108 at 1:17-5:4). As with all other parts of the Settlement Agreement and the award of class counsel fees, costs, and incentive awards, "[t]he proponents of a settlement bear the burden of proving its fairness." *True*, 749 F. Supp. 2d at 1080.

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

A. Class Counsel's motion and declarations do not satisfy his burden under the Guidelines.

Yet despite this extensive limitation on how Class Counsel would bill the class for services, there is no mention of the guidelines in the Motion for Fees, Costs, and Service Awards (Dkt 424 and exhibits). The Declaration of Robert F. Lopez in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives makes no mention of the Guidelines, makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 425 and exhibits). The Declaration of Daniel L. Warshaw in Support of Plaintiffs' Motion for Award of Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives also makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 426 and exhibits). The Declaration of J. Paul Gignac in Support of Plaintiffs' Request for Attorneys' Fees, Costs, Expenses, and Service Awards also makes no explanation of the expenses which would tend to show they were made within the Guidelines, and provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 427 and exhibits). The Declaration of Paul R. Kiesel in Support of Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards also provides such general total amounts in the hourly billing records as to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 428 and exhibits). However, the Kiesel Declaration at least does itemize with sufficient particularity the non-Shared Cost Litigation Fund amounts, so Mr. Miorelli does not object, in the event the Court grants final approval to the Settlement Agreement, to $665.20 in costs from the Kiesel Declaration. (Dkt 428-3 at 2).

The Affidavit of Charles E. Schaffer in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses is in a scanned form, not a conversion of the word processing file to PDF, which makes text searches impossible. Consequently, that document violates Local Rule 5-1(e)(2) and

-20-

1   should be struck as sanction for non-compliance. If the Court does consider the Schaffer Affidavit, it

2   should note that it also makes no explanation of the expenses which would tend to show they were

3   made within the Guidelines, and provides such general total amounts in the hourly billing records as

4   to make it impossible to determine if attorney time was used within the Guidelines. (Dkt 429 and

5   exhibits). Finally the Declaration of Rosemary M. Rivas in Support of Final Approval and Plaintiffs'

6   Request for Attorneys' Fees, Costs, Expenses, and Service Awards also makes no explanation of the

7   expenses which would tend to show they were made within the Guidelines, and provides such general

8   total amounts in the hourly billing records as to make it impossible to determine if attorney time was

9   used within the Guidelines. (Dkt 430 and exhibits).

10          **B.   Class Counsel's ignorance of his own Guidelines sinks his motion for fees and likely
11                 requires new notice to the absent Class Members.**

12          Since only $665.20 of the costs requested are detailed in accordance with the Guidelines, those

13   should be the only costs awarded if the Settlement Agreement is granted final approval. The

14   remainder should be denied for lack of evidence to meet Class Counsel's burden in light of the

15   Guidelines.

16          With regard to attorneys' fees, Class Counsel has also not met his burden. It is impossible on

17   the basis of the filed documents to determine whether the billed time is in accordance with the

18   Guidelines. There is also no mention of whether co-lead Class Counsel policed these bills as required

19   by the Guidelines. Having not proven he did, the Court should assume he did not, in violation of the

20   Guidelines. Because these bills would be critical to a lodestar cross-check, these deficiencies make

21   granting final approval of the Settlement Agreement impossible if any attorneys' fee is to be awarded.

22   Class Counsel's ignorance of his own Guidelines leaves the Court with only two options: either deny

23   final approval or order additional briefing, new notice to the Class regarding the additional briefing,

24   and a new period for opt out and objection.

25

26

27

28

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

**VIII. Class Counsel should not get more than the 25% benchmark attorneys' fee calculated on the basis of the benefit to the class, not the gross recovery, much of which is actually a benefit to the Defendant instead of the class.**

### A. The basis for a contingent fee should exclude costs of class notice, Class Counsel's costs, and any incentive payments.

Mr. Miorelli believes that the baseline recovery to calculate any contingent fee should exclude the costs of class notice, any *cy pres* awards, and, to the extent they are awarded, any incentive payments.

While the Ninth Circuit does not require a net-based analysis, the Seventh Circuit does. *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) ("Those [administrative] costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.") Since the Ninth Circuit leaves the question of gross or net-based to the district court, the reasoning of the Seventh Circuit should be persuasive to the Court.

Additionally, there is no benefit to the absent Class Members in the class notice. In reality, notice costs are a benefit to *the defendant*, not the class, because in the event of insufficient notice, it is the defendant who bears the risk of the class action release being unenforceable as a due process violation. *Hecht v. United Collection Bureau*, 691 F.3d 218, 224 (2d Cir. 2012). In fact, the defendant has an incentive to spend additional amounts on notice as less expensive means of notice, such as constructive notice by a single publication, may be sufficient to satisfy due process only "as to persons whose whereabouts or interests cannot be determined through due diligence." *Id.* (quoting *In re Agent Orange*, 818 F.2d at 168). *See also, Redman*, 768 F.3d at 630, *Bluetooth*, 654 F.3d at 944, *and Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1228-9 (11th Cir. 1998).

In this case the Court has already shown concern that the various phone carriers' records are not being used to determine the membership of the class and send individualized notice. (Dkt 408 at 1:23-2:9). Class Counsel and Defendants respond that it would be too hard to dig through the data to determine class membership. (Dkt 411 at 2:10-3:13). Regardless of the veracity of that claim, the risk lies with Defendants if future absent Class Members come forward with claims of insufficient notice, and as such, the "value" of the cost of the notice should be assigned to Defendants' account, not the

-22-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1    class'. At most, the class should only count the value of the administrative costs of distributing

2    payment from the Settlement Administrator's bills as a value to the class forming a basis for a

3    percentage of the fund attorneys' fee. The Settlement Administrator has valued the cost of notice at

4    $532,000, so the denominator of an attorneys' fee request should be reduced from $9 million to

5    $8,468,000 for this issue alone.

6           B.   Class Counsel's lodestar should be calculated using the *Laffey Matrix.*

7           One of the most common ways to determine the reasonableness of an attorney's declared hourly

8    rate is by comparison of it with that year's *Laffey* Matrix and then adjusted to local geographic cost

9    of living. *See Chanel, Inc. v. Doan*, 2007 WL 781976, *6-7 (N.D. Cal. 2007) (citing *Laffey v.*

10   *Northwest Airlines, Inc.*, 572 F.Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds,

11   746 F.2d 4 (D.C. Cir. 1984)). Following the *Chanel* method, the Court should use the Judicial Salary

12   Plan's locality percentages to adjust the *Laffey Matrix* to the location of each of the attorneys claiming

13   fees in this case, then adjust their hourly rate accordingly to recalculate the lodestar. Doing so would

14   result in a significantly-reduced lodestar. Additionally, Class Counsel is not entitled to hide his bills

15   from absent Class Members. The Court should order that Class Counsel's detailed billing records be

16   unsealed and grant Mr. Miorelli leave to supplement this Objection on the basis of arguments

17   regarding the excessiveness of Class Counsel's hours worked and hourly rate billed.

18          C.   The value of a *cy pres* award should not be included in the calculation of an

19              attorneys' fee.

20          Finally, to the extent a *cy pres* award is made, that should also not be counted as a benefit to

21   the class for the purpose of calculating an attorneys' fee. Class Counsel should only be able to claim

22   against a portion of the money the class actually receives. "[N]umerous courts have concluded that

23   the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable

24   common fund fee charge should be assessed." *In re Prudential Ins. Co. America Sales Practices*

25   *Litig.*, 148 F.3d 283, 338 (3d Cir. 1988) (*quoting* Conte, 1 Attorney Fee Awards § 2.05, at 37). The

26   "key consideration in determining the appropriate fees is reasonableness in light of the benefit actually

27   achieved." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013). *See generally In re Cendant*

28   *Corp. Litig.*, 264 F.3d 201, 254-60 (3d Cir. 2001) (the court should ensure that the incentives of class

-23-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1 counsel and class members are aligned). *See also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948,

2 952 (7th Cir. 2006); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no

3 indirect benefit to the class from the defendant's giving the money to someone else."). Since the *cy*

4 *pres* will only recover if Class Counsel agrees that it would be uneconomic to make a distribution to

5 the absent Class Members, allowing a percentage-of-the-recovery fee only on the basis of money

6 distributed to the Class Members keeps Class Counsel's interests, at least at this point in the litigation,

7 aligned with those of the absent Class Members.

8 The logical outcome of this is that, if the *cy pres* distribution is made, then the only basis for

9 a percentage-of-the-fund recovery would be the money spent on distribution expenses from the

10 Settlement Administrator. Since in that event the absent Class Members would have no actual

11 recovery, the Named Plaintiffs should also not have any recovery, so there would be no amount of

12 incentive awards to add to the class recovery either. In that event, class counsel's recovery should

13 only be as a percentage of that estimated $350,000 to $784,000 amount, or a fee of $87,500 to

14 $196,000, plus their approved expenses.

15 **IX.   CONCLUSION**

16 For the reasons set forth herein, the Settlement Agreement is legally defective and also

17 inadequate, unreasonable, and unfair to the absent Class Members. Therefore, Mr. Miorelli prays this

18 honorable court:

19 (a) Sustain this Objection to Settlement Agreement and deny final approval; or,

20 (b) If the Court chooses to approve the Settlement Agreement, to:

21      i.   Award no Attorneys' Fees due to Class Counsel's failure to comply with the

22         Guidelines;

23      ii.   Refuse to award any incentive payments; and

24      iii.   Reserve jurisdiction to grant incentive awards to Mr. Miorelli and, to the extent

25         Mr. Miorelli retains counsel to represent him subsequently in this matter,

26         reasonable attorney's fees to his counsel.

27

28

1  DATED: June 4, 2016

2

3                                          Sam A. Miorelli, E.I., Esq. *pro se*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1

**CERTIFICATE OF SERVICE**

2

The undersigned certifies that the foregoing Objection and the Miorelli Declaration were

3

transmitted via FedEx Overnight Express on June 4, 2016 to the following:

4

Clerk of the Court
Office of the Clerk

5

United States District Court

6

450 Golden Gate Avenue
San Francisco, CA 94102-3489

7

The undersigned further certifies that the foregoing Objection and the Miorelli Declaration

8

were transmitted via U.S. Certified Mail on June 4, 2016 to the following:

9

Daniel L. Warshaw

10

PEARSON SIMON & WASRHAW, LLLP

11

15165 Ventura Boulevard
Suite 400

12

Sherman Oaks, CA 91403

13

Tyler Newby
Fenwick & West LLP

14

555 California Street

15

12th Floor
San Francisco, CA 94104

16

17

18

Sam A. Miorelli, E.I., Esq. *pro se*

19

20

21

22

23

24

25

26

27

28

-26-

OBJECTION TO CLASS ACTION SETTLEMENT OF SAM A. MIORELLI, E.I., ESQ.

1   Sam A. Miorelli, E.I., Esq. *(Pro Se)*
   764 Ellwood Avenue
2   Orlando, FL 32804
   Telephone: (321) 698-2776
3   E-Mail: sam.miorelli@gmail.com

4   *Pro Se Objector*

5           UNITED STATES DISTRICT COURT

6         NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | )   Case No.: 3:12-md-2330-EMC |
| CARRIER IQ, INC. CONSUMER PRIVACY LITIGATION | )   **DECLARATION OF** <br> )   **SAM A. MIORELLI, E.I., ESQ.** |
| This Document Relates to: | ) |
| ALL CASES | )   Date:       July 28, 2016 <br> )   Time:      1:30 p.m. <br> )   Judge:     Honorable Edwin M. Chen <br> )   Dept:      Courtroom 5, 17th Floor |
| | ) |
| | ) |

I, Sam Andrew Miorelli, declare as follows:

    1.    I have researched the market capitalization of the Defendants in this case, the approximate market capitalization of the defendants is listed in the table below. The source for this information is Google Finance data as of June 2, 2016.

| Company | Stock Symbol | Market Capitalization |
|---|---|---|
| HTC Corporation | TPE: 2498 | 75.05 billion TWD (Appx US$2.3 billion) |
| LG Electronics, Inc. | KRX:066570 | 9.51 trillion KRW (Appx US$8.0 billion) |
| Motorola Mobility LLC (Purchased by Lenovo Group Ltd in 2004) | LNVGY:US | US$6.493 billion |
| Samsung Electronics Co., Ltd. | SMSN:LI | US$162.985 billion |

    2.    Huawei Technologies Co. Ltd is privately owned and the parent company of Huawei Device USA, Inc. In its 2015 Annual Report, Huawei Technologies Co. Ltd reported its owner's equity as US$18.339 billion.

DECLARATION OF SAM A. MIORELLI, E.I., ESQ.

3.     Pantech Wireless, Inc. is the privately owned subsidiary of Pantech, a privately-owned Korean company which was recently purchased but was reportedly near-bankruptcy at the time. I assume it has zero value as a company.

4.     Adding the value of the amounts shown above, I estimate the total value of the Defendants in this case to be approximately US$198.12 billion.

5.     I purchased a Samsung Galaxy S6 phone, model number SMG-920A, on May 13, 2015 at a total price of $425.99. That telephone was replaced under warranty due to battery drain, extreme slowness, and other symptoms similar to those reported relating to CarrierIQ, under warranty, on December 20, 2015 and again on April 30, 2016.

6.     I am over the age of 18 years old.

I declare under penalty of perjury under the laws of the United States, the State of California, and the State of Florida that the foregoing is true and correct. Executed on June 4, 2016 at Orlando, Orange County, Florida.

Sam A. Miorelli, E.I., Esq.

- 2 -

DECLARATION OF SAM A. MIORELLI, E.I., ESQ.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

IN RE                                              )           No. 12-md-2330-EMC N
CARRIER IQ, INC.,                                  )
CONSUMER PRIVACY LITIGATION )

---

## OBJECTIONS OF PATRICK SWEENEY TO PROPOSED SETTLEMENT

---

NOW COMES, Pro Se Objector PATRICK S. SWEENEY and hereby files these objections to the proposed settlement in this matter.

## PROOF OF MEMBERSHIP IN CLASS

Under penalty of perjury Patrick S. Sweeney (herein referred to as "Objector" or "Patrick") has reviewed the notice and believe that he is a member of the class as defined in that certain Notice of Class Action and Proposed Settlement which is not dated (herein referred to as the "Notice"). Patrick has filed two claims, one regarding his law firms ATT account and one for his personal account. His claim numbers are CIQ-40050759-5 AND CIQ-40050756-0. Patrick's address, e-mail addresses and telephone numbers are listed at the conclusion of this objection.

## NOTICE OF INTENT TO APPEAR

Objector hereby gives notice that he does **NOT** intend to appear at the Fairness Hearing presently scheduled for July 28, 2016 at 1:30 p.m. PDT before

Honorable Judge Chen at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 5, 17th Floor San Francisco, CA 94102.

## REASONS FOR OBJECTING TO THE SETTLEMENT

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable nor adequate:

1.    Claims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised. The proposed settlement orders no counsel, not various class counsel attorneys nor any defense attorney (notwithstanding the large amount of attorney fees to be earned by the numerous law firms involved in this case) to monitor the settlement process to its ultimate completion.

It would obviously be more prudent to withhold a portion of Class Counsel's fee until the entire distribution process is complete. Furthermore, it would also be judicious to require Class Counsel (and perhaps Defense Counsel as well) to report back to this Honorable Court with a final summary and accounting of the disbursement process (even if brief) in order to confirm that this matter has been successfully concluded and to allow this Honorable Court to "put its final stamp of approval" on the case.

Objector is aware that this is not the "usual" procedure in Class Action proceedings.  Nonetheless, Objector submits the suggested process is an improvement to the present procedure which is the status quo in Class Action cases. Also nothing in the above proposed procedure violates the letter or spirit of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715,(the "Act")  Rule 23 F.R.C.P.(the "Rule") nor the body of case law that has developed in the class action arena (all three collectively referred herein as "Class Action Policy") Objector hereby urges this Honorable Court to adopt such a procedure as a "best practice standard " for Class Action settlements.

2.  The Settlement Administrator is not held to any specific timeframe to complete the settlement process.

3.  No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing the settlement. Objector hereby contends that the withholding of a reasonable sum of awarded attorney's fees would alleviate the concerns raised herein regarding Paragraphs Nos. 1 & 2 above.

4.  Attorney fees do not depend upon how much relief is actually paid to the Class Members. It appears that the proposed settlement will award class counsel its fee notwithstanding the amount of relief actually achieved by the Class. This practice would be considered inequitable at best and excessive at worse in many other areas of the law when awarding attorney fees.

5.  The fee calculation is unfair in that the percentage of the settlement amount is far too high (it is stated in the Notice that it is 25%, which is high, but if the percent is calculated by using monies actually awarded Class Members the percentage becomes much higher) By way of example: the Settlement Fund is $9 million dollars- attorney fees are $2.25 million; the cost of administration is already $1 million dollars; litigation expenses are $160,000 and Class Representative fees are $85,000. If all those sums are combined and subtracted from the $9 million Settlement Fund the amount left for distribution to Class Members is $5,505,000. $2.25 million of the actual dollars available to the Class Members represents a 40% attorney's fee.

    The Objector hereby states that, of the 449 Docket Entries on PACER, very few entries were substantive in nature. The remaining entries were mostly procedural in nature. Although 449 is a fairly large number of Docket Entries it computes to an unfathomable $64,587 per Docket Entry.

6. The fee request is not reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, hours accumulated and reasonable costs incurred), which can be evaluated by Class Members and the Court to determine the reasonable nature (or not) of the fee request.

7. The Objector herein hereby adopts and joins in all other objections which are based on sufficient precedent and theories of equity and law in this case and hereby incorporates said objections by reference as if they were fully described herein.

## CONCLUSION

**WHEREFORE,** This Objector, for the foregoing reasons, respectfully requests that the Court, upon proper hearing:

1. Sustain these Objections;
2. Enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.
3. Award an incentive fee to this Objector for their role in improving the Settlement, if applicable.

Respectfully submitted by:

Patrick S. Sweeney, Pro Se
2590 Richardson Street
Madison, WI 53711
310-339-0548
patrick@sweeneylegalgroup.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 2, 2016, I caused to be filed the
foregoing with the Clerk of the Court of the United States District Court for the
Northern District of California sending this document via U.S. First Class Mail
Delivery at the address provided in the Notice.

Patrick S. Sweeney, Pro Se